IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

| | | |
|---|---|---|
| JOAN FAULK OWENS and KAREN LYNN HUBBARD, | ) ) ) | 2007 JUL 17  P 1: 21 |
| Plaintiffs, | ) ) ) | MIDDLE DISTRICT ALA |
| v. | ) ) | CASE NO- 2:07-cv- 650 - WHA |
| STATE OF ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION; JOHN HOUSTON, individually and in his official capacity as COMMISSIONER OF THE DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION; OTHA DILLIHAY, individually and in his official capacity as ASSOCIATE COMMISSIONER OF ADMINISTRATION OF THE DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION; HENRY R. ERVIN, individually and in his official capacity as DIRECTOR OF HUMAN RESOURCES OF THE DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION; and MARILYN BENSON individually and in her official capacity as the ASSISTANT PERSONNEL MANAGER OF HUMAN RESOURCES OF THE DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

1

## C O M P L A I N T

### INTRODUCTION

1.    This is an action for legal and equitable relief to redress unlawful discrimination on the basis of race against the Plaintiffs.  This suit is brought to secure the protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act, including the Civil Rights Act of 1991, codified at 42 U.S.C. § 2000e *et seq.* (hereinafter "ADEA"), and the Fourteenth Amendment of the United States Constitution, and ancillary state law claims.  The Plaintiffs request a trial by jury of all issues so triable.

### JURISDICTION

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202.  This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, including the Civil Rights Act of 1991, and 42 U.S.C. §§ 1981a and 1983. The jurisdiction of this Court is invoked to secure the protection of and redress the deprivation of civil rights secured by law and for relief against racial discrimination.

3.    Through supplemental jurisdiction, this Court's jurisdiction extends over the related state law claims of negligence, wanton and willful breach of duty, intentional interference with the contractual and business relationship, conspiracy and agency/respondent superior.

2

## ADMINISTRATIVE EXHAUSTION

4.    The Plaintiffs have fulfilled all conditions precedent to the institution of this action under Title VII. The Plaintiffs filed their charges of discrimination with the Equal Employment Opportunity Commission (the "EEOC") within 180 days of the occurrence of the last discriminatory act. The Plaintiffs have timely filed their lawsuit within 90 days of the receipt of their Notice of Right-To-Sue from the EEOC.

## STATEMENT OF THE PARTIES

5.    Plaintiff Joan Faulk Owens is a resident of Elmore County, Alabama and is over the age of nineteen (19) years. Plaintiff Owens is a resident of the State of Alabama and a citizen of the United States. At all times herein Plaintiff Owens was and still is employed by the State of Alabama.

6.    Plaintiff Karen Lynn Hubbard is a resident of Montgomery County, Alabama and is over the age of nineteen (19) years. Plaintiff Hubbard is a resident of the State of Alabama and is a citizen of the United States. At all times herein Plaintiff Hubbard was and still is employed by the State of Alabama.

7.    Defendant State of Alabama Department of Mental Health and Mental Retardation (hereinafter "ADMH") is an employer subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000 *et seq.* Defendant ADMH employs at least fifteen (15) people and conducts business in Montgomery, Alabama.

8.    Defendant John Houston, individually and in his official capacity as

3

Commissioner of ADMH, is a resident of the State of Alabama and conducts business in Montgomery, Alabama. At all times herein, Defendant Houston was and still is employed by the State of Alabama.

9.    Defendant Otha Dillihay, individually and in his official capacity as former Associate Commissioner of Administration of ADMH, is a resident of the State of South Carolina and at the time of the actions herein complained, conducted business in Montgomery, Alabama. At all times herein, Defendant Dillihay was employed by the State of Alabama.

10.    Defendant Henry E. Ervin, individually and in his official capacity as Director of Human Resources of ADMH, is a resident of the State of Alabama and conducts business in Montgomery, Alabama. At all times herein, Defendant Ervin was and still is employed by the State of Alabama.

11.    Defendant Marilyn Benson, individually and in her official capacity as Assistant Personnel Director of Human Resources of ADMH, is a resident of the State of Alabama and conducts business in Montgomery, Alabama. At all times herein, Defendant Benson was and still is employed by the State of Alabama.

## STATEMENT OF THE FACTS

12.    Plaintiffs re-allege paragraphs 1 through 11 as if set out here in full.

13.    Plaintiff Joan Faulk Owens, a white female, has been employed by Defendant ADMH for approximately 17 years, since December 31, 1990, to the present. Plaintiff Owens is presently classified as a Personnel Specialist III. Plaintiff Owens reports directly

4

to Defendant Henry E. Ervin as Director of Human Resources.

14.    Plaintiff Karen Lynn Hubbard, a white female, has been employed by Defendant ADMH for approximately 16 years, since December 31, 1991, to the present. Plaintiff Hubbard is presently classified as a Personnel Specialist III.   Plaintiff Hubbard reports directly to Defendant Henry E. Ervin as Director of Human Resources.

15.    Defendant Marilyn Benson, a black female, is an employee of the State of Alabama and at the time of the incident herein complained, was classified as a Personnel Specialist III.   Defendant Marilyn Benson reports directly to Defendant Henry E. Ervin as Director of Human Resources.

16.    Defendant Henry E. Ervin, a black male, is an employee of the State of Alabama and at the time of the incident herein complained, was and still is the Director of Human Resources of the ADMH.  As Director, Defendant Ervin oversees the management and operations of the personnel division of the ADMH, also known as the "Central Personnel Office."  At the time of the incident herein complained, Defendant Ervin reported directly to Otha Dillihay as Associate Commissioner for Administration of the ADMH.

17.    Defendant Otha Dillihay, a black male, was an employee of the State of Alabama and, at the time of the incident herein complained, was the Associate Commissioner for Administration of the ADMH.  As Associate Commissioner, Defendant Dillihay reported directly to Defendant John Houston as Commissioner of the ADMH.

18.    The management hierarchy within the Central Personnel Office begins with the Director of Human Resources, consisting of Defendant Ervin.  At all times relevant hereto,

5

the next management level immediately below the Director was Personnel Specialist III, with a total of three people holding such rank and title, the Plaintiffs and Defendant Benson. At all times relevant hereto, there were three Personnel Specialist III in Human Resources, consisting of the Plaintiffs and Defendant Benson.

19.     As Personnel Specialist III and long-time employees of Human Resources of the ADMH, the Plaintiffs have extensive professional personnel management and supervisory experience in and outside of the ADMH, as well as an in-depth knowledge of federal and state laws, rules and regulations pertaining to human resource management, recruitment, selection and placement, and state personnel policies, and rules and regulations. The "Specifications" used by ADMH to define and set forth the qualifications of Personnel Specialist III are attached as Exhibit A.

20.     In or about late 2004 or early 2005, Plaintiff Hubbard received a telephone call from a representative of the Alabama State Personnel Office who was seeking the "position control number" for the soon to be created position of "Departmental Assistant Personnel Manager" for Human Resources of ADMH. Plaintiff Hubbard was surprised to learn of the new position because all new Human Resources positions are discussed or made known in the Central Personnel Office's periodic staff meetings and the position of Departmental Assistant Personnel Manager had never been discussed or mentioned.

21.     Upon further inquiry with the Central Personnel Office, Plaintiff Hubbard learned that the new position of Departmental Assistant Personnel Manager was to be an advanced pay-grade position over her then current position of Personnel Specialist III, and

6

the person holding the position would be acting as the executive assistant to the Director of Human Resources, Defendant Ervin. Plaintiff Hubbard was told that Defendant Director Ervin had instructed the limited Central Office personnel with knowledge of the new position to "keep quiet" about it.

22.     Shortly thereafter, Plaintiff Hubbard learned that Defendant Assistant Commissioner Dillihay was proposing to change the "substitution" rule for department employment qualification purposes from one-to-one (i.e., one year's relevant work experience for one year's education) to two-to-one (i.e., two year's relevant work experience for one year's education). The substitution rule is a provision used for certain departmental employment positions whereby an applicant who lacks educational requirements for a certain employment position may substitute relevant work experience, or vice versa, to qualify for the job. If a candidate qualifies for a job, then the candidate's credentials are scored and the candidates with the highest scores are then interviewed for the position.

23.     Concerned over these events, Plaintiff Hubbard requested and received a meeting with Defendant Commissioner Houston. During the initial and/or subsequent meetings, Plaintiff Hubbard complained to Defendant Commissioner Houston that she believed that the new position of Departmental Assistant Personnel Manager was being created specifically for Defendant Benson based on past preferential treatment given to Defendant Benson by Defendant Director Ervin. Defendant Houston did not deny Plaintiff Hubbard's allegations.

24.     In or about May 2005, Plaintiff Hubbard learned that Defendant Commissioner

7

Houston had accepted the recommendations of Defendant Assistant Commissioner Dillihay and Defendant Director Ervin to modify the substitution rule. Plaintiff Hubbard again met with Defendant Commissioner Houston and complained about the modification. Defendant Commissioner Houston refused to act on her complaints.

25.    On or about September 15, 2005, Plaintiffs received the Announcement of Intent to Fill a Non-Merit Position Equal Opportunity Employer (i.e., "Announcement") issued by ADMH for the new position of Departmental Assistant Personnel Manager. A copy of the Announcement is attached as Exhibit B. This was Plaintiffs first notice of the qualifications for the new position since, contrary to accepted practice and procedure, a "Specification" sheet describing the position had never been circulated throughout the Central Office and departmental facility personnel offices beforehand as with all other jobs offered through the ADMH.

26.    The Announcement listed the qualifications for the new position as requiring a Bachelor's degree in Human Resource Management/Personnel Management, Business Administration, Public Administration, or related field, plus "[e]xtensive experience (72 months or more) working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity." In addition, the Announcement stated:

*Preference will be given to individuals with:*

➢ *Master's degree in any of the above specified fields of study.*

➢ *Work experience in the government/public sector*

➢ *Work experience in a healthcare setting*

8

27.    However, contrary to any open human resources' position announced by the ADMH either before or afterwards, the Announcement contained no substitution provision whatsoever.  Even positions higher than the position at issue here, including the Director of Human Resources position, have always and still do allow for substitutions.  In addition, the Announcement stated that a "Master's Degree" was preferred, which had previously never been done.

28.    Upon information and belief, the Announcement was prepared by Defendant Benson under the direction and/or with the advice, approval and/or guidance of Defendant Director Ervin and/or Defendant Assistant Commissioner Dillihay.

29.    Upon receiving the Announcement and failing to realize it contained no substitution provision, Plaintiff Owens announced to June Lynn, Executive Assistant to Defendant Assistant Commissioner Dillihay, that she intended to apply for the new position. June Lynn responded that Plaintiff Owens could not apply because the Announcement contained no substitution provision and Plaintiff Owens did not have a degree.  Plaintiff Owens immediately asked June Lynn to modify the Announcement to include a substitution provision and June Lynn responded that she could not, that Defendants Dillihay and Ervin had prepared the Specification for the position and they had not included a substitution provision.

30.    That same day or the following day, Plaintiff Owens approached Defendant Director Ervin, placed the Announcement on his desk and demanded that he put the substitution provision in the Announcement.  Defendant Ervin responded: "I'm so tired of

9

your shit!" Defendant Ervin then expressed surprise that "as uneducated as y'all are that you would expect me to do this." Plaintiff Owens then left Defendant Ervin's office visibly shaken.

31.     Because the Announcement required that an applicant have "[t]horough knowledge of Department of Mental Health and Mental Retardation rules and regulations," only an employee of the Department could realistically qualify to apply for the position. Moreover, Defendant Benson, who holds an undergraduate degree in Health Services Administration and a graduate degree in Public Administration, readily qualified to apply. However, because neither Plaintiff holds a college degree, the Plaintiffs did not qualify to apply and could not qualify without the substitution provision.

32.     Yet the Plaintiffs, who both wished to apply for the new position, had more extensive work experience than Defendant Benson, who has never worked with ADMH outside of the Central Office and, prior to working with ADMH, had only one year experience as an office manager for a physician's office.

33.     By contrast, between 1985 and 1990, Defendant Owens was the personnel director at Elmore Community Hospital in Wetumpka, Alabama. Between 1999 and 2003 Defendant Owens served intermittently as Personnel Manager at J. S. Tarwater Mental Health Facility in Wetumpka and oversaw the eventual closing of Tarwater while, all the time, continuing to hold and perform all her same functions as a Personnel Specialist III in the Central Office of Human Resources at ADMH in Montgomery. Plaintiff Owens was also the Personnel Manager for six months at Greil Psychiatric Hospital in Montgomery,

Alabama. In fact, Defendant Director Ervin periodically appointed Plaintiff Owens to oversee the Central Office in his absence.

34.     Plaintiff Hubbard, during her tenure as Personnel Specialist III, in addition to the duties of that position, served as the acting Personnel Manager for Greil Psychiatric Hospital for more than 3 years where she planned, organized, developed and coordinated a comprehensive personnel management program and successfully brought the hospital's personnel office through a JACHO survey, the most comprehensive licensure inspection and survey for hospital facilities in the United States. While serving in the Cental Office of Human Resources at ADMH, Plaintiff Hubbard wrote the Department's affirmative action plan and administered the Department's drug testing policy in addition to the various other executive management duties assigned to a Personnel Specialist III. Defendant Director Ervin also periodically appointed Plaintiff Hubbard to oversee the Central Office in his absence.

35.     The Announcement of Departmental Assistant Personnel Manager generated only a few applications. Therefore, Defendant Commissioner Houston had the new position re-announced, as shown by Exhibit C attached hereto. Subsequently, only three individuals, all black, were interviewed for the new position. The new position was thereafter given to Defendant Benson.

36.     Upon information and belief, the position of Departmental Assistant Personnel Manager was specifically created for Defendant Benson with the plan and expectation that Defendant Benson will replace Defendant Director Ervin upon his retirement and that a black

11

individual will continue to hold the position of Director of Personnel for ADMH.

37.    On or about March 3, 2006, the Plaintiffs filed a Charge of Discrimination

against ADMH with the EEOC.

38.    After conducting an investigation, the EEOC found that there was "reasonable

cause" to believe that a violation of Title VII had occurred.  The "Determination" letter

issued by the EEOC in response to the Plaintiffs' Charge of Discrimination states, in part:

> The investigation revealed that Respondent [i.e., ADMH] has not instituted a
> policy of omitting substitution clauses from all high level positions.  Evidence
> showed that many such positions were announced after the Departmental
> Assistant Personnel Manager position, but they included substitution clauses.
> Evidence showed that the omission favored the Black Personnel Specialist III,
> but is served to exclude Charging Party and the other Personnel Specialist III,
> who is White, from applying.  Evidence shows that Charging Party expressed
> interest in the job but the job announcement was not changed.  The evidence
> obtained during the investigation establishes reasonable cause to believe a
> violation of the statute has occurred.

Exhibit D.

39.    An EEOC Investigator also wrote to the ADMH, by and through its attorney,

Courtney W. Tarver, the following:

> As you know, the above-referenced charges were assigned to me for
> investigation.  This is to advise you that I have completed my analysis of the
> evidence obtained during the investigation of these charges.  The evidence
> indicates that the Charging Parties were discriminated against because of their
> race, White.
>
> The investigation revealed that Respondent permits directly-related education
> or experience to be substituted for all or part of basic job requirements for
> upper-level positions.  Evidence shows that when the position of Departmental
> Assistant Personnel Management was announced, no "substitution clause" was
> included in the announcement.  According to the evidence, the lack of a
> substitution clause placed the only Black candidate, Marilyn Benson, at a

distinct advantage over the two White candidates, the Charging Parties. Although Respondent maintains that substitutions are no longer permitted in upper level positions, evidence indicates that after the Departmental Assistant Personnel Management position was filled by Benson, Respondent continued to announce upper-level vacancies with substitution clauses.

Exhibit E.

40.    The ADMH thereafter refused to participate in conciliation discussions with Plaintiffs offered by the EEOC.  Accordingly, the EEOC submitted the complaint to the Department of Justice who subsequently issued a "Right to Sue" letter.  This Complaint is timely filed within 90 days thereof.

### COUNT I - TITLE VII EMPLOYMENT DISCRIMINATION

41.    Plaintiffs re-allege paragraphs 1 through 40 as if set forth here in full.

42.    The Defendant employer, the Alabama Department of Mental Health and Mental Retardation, by and through its agents, employees and officers named herein, wrongfully, recklessly and/or intentionally discriminated, with malice, against the Plaintiffs on account of their race.  As a result of the Defendants' actions, the Plaintiffs have suffered mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation.

43.    The discrimination violates the Plaintiffs' rights under the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, also known as Title VII, and as further secured by 42 U.S.C. § 1981a.  The Defendant Alabama Department of Mental Health and Mental Retardation is liable for damages and equitable relief relative to Plaintiffs' claims.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendant, Alabama Department of Mental Health and Mental Retardation, and ask the Court, after trial

by jury, to:

    a.    Issue a declaratory judgment that the employment acts, omissions, policies, practices, procedures, conditions, and customs of the Defendant are violative of the Plaintiffs' rights as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," 42 U.S.C. § 2000e *et seq.*, as amended, and the Plaintiffs' rights as secured by the Fourteenth Amendment to the United States Constitution.

    b.    Grant the Plaintiffs preliminary and permanent injunctive and equitable relief against the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate Title VII and the Fourteenth Amendment.

    c.    Enter an Order requiring the Defendant to make the Plaintiffs whole by requiring Defendants to: (i) demote Defendant Marilyn Benson to her prior position which is the same as the current position of the Plaintiffs; (ii) re-announce the position of Departmental Assistant Personnel Manager of the Central Office of Personnel to include a substitution provision the same as substitution provision generally and historically used by the Department immediately prior to the events alleged herein; and (iii) award the position of Departmental Assistant Personnel Manager to a qualified individual and without unlawful and/or illegal motive or pretext.

    d.    Enter a judgment awarding Plaintiffs' damages, including, but not

limited to, compensatory damages for mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation suffered by the Plaintiffs.

e.    Award Plaintiffs' costs, attorneys' fees, expenses and any other relief to which they may be entitled under the facts and law.

### COUNT II - § 1981 DISCRIMINATION

Plaintiffs re-allege paragraphs 1 through 43 as if set forth here in full.

The Defendants, John Houston, Otha Dillihay, Henry Ervin and Marilyn Benson, have negligently, wantonly, willfully and/or intentionally wrongfully denied Plaintiffs the full and equal benefit of the laws and proceedings of the United States and the State of Alabama on account of their race. As a result of the Defendants' actions, the Plaintiffs have suffered mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation.

44.    The Defendants discriminatory acts and/or omissions violate the Plaintiffs' rights as secured by 42 U.S.C. § 1981 and Defendants John Houston, Otha Dillihay, Henry Ervin and Marilyn Benson are liable for damages and equitable relief relative to Plaintiffs' claims.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendants John Houston, Otha Dillihay, Henry Ervin and Marilyn Benson, and ask the Court, after trial by jury, to:

a.    Issue a declaratory judgment that the Defendants acts and/or omissions

15

are violative of the Plaintiffs' rights as secured by law.

b.      Grant the Plaintiffs preliminary and permanent injunctive and equitable relief against the Defendant, their agents and successors, and those acting in concert with them, from continuing to violate Plaintiffs' rights as alleged herein.

c.      Enter a judgment awarding Plaintiffs' damages, including, but not limited to, compensatory and punitive damages for mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation suffered by the Plaintiffs.

d.      Award Plaintiffs' costs, attorneys' fees, expenses and any other relief to which they may be entitled under the facts and law.

## COUNT III - FOURTEENTH AMENDMENT VIOLATION

45.    Plaintiffs re-allege paragraphs 1 through 43 as if set out forth in full.

46.    It is the policy of the State of Alabama Department of Mental Health and Mental Retardation to offer equal employment opportunities regardless of a person's race, religion, national origin, color, etc. The Department's policy specifically states:

"I.  Policy:

       The Alabama Department of Mental Health/Mental Retardation will recruit, employ, promote, remunerate, and conduct all personnel administrative practices without regard to race, religion, national origin, color, age, sex, or disability, except where sex or physical ability constitute a bona fine occupational qualification."

Exhibit F.

16

47.    The State of Alabama has certain policies and procedures concerning the establishment of new positions and the setting of specifications for such positions regardless of a person's race, religion, national origin, color, etc. These policies and procedures were wantonly, recklessly, wantonly, willfully and/or intentionally violated in the establishment and filing of the position of Assistant Personnel Manager of the Bureau of Human Resources.

48.    The Defendants John Houston, Otha Dillihay, Henry Ervin and Marilyn Benson, all acting under color of state law, have wrongfully, recklessly, wantonly, willfully and/or intentionally discriminated against the Plaintiffs on account of their race, in violation of the Due Process and Equal Protection provisions of the United States Constitution and in violation of Alabama law.

49.    Defendants Houston, Dillihay, Ervin, and Benson, acting in their official and individual capacities and under color of state law, have arbitrarily, capriciously, recklessly, wantonly, willfully, intentionally, and without justification deprived Plaintiffs of their federal statutory and constitutional rights, as described herein. The Defendants are liable for damages and equitable relief relative to Plaintiffs' claims.

50.    As a proximate result of such conduct and violations, the Plaintiffs have been damaged and have suffered mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, jointly and severally, ask the Court, after trial by jury, to:

17

a.    Issue a declaratory judgment that the alleged acts and/or omissions of the Defendants are violative of the Plaintiffs' rights as secured by law.

b.    Grant the Plaintiffs permanent injunctive relief against the Defendants, their agents, successors, employees, attorneys and those acting in concert with the Defendants and at the Defendants' request from continuing to violate the Plaintiffs' rights.

c.    Enter a judgment awarding Plaintiffs' damages, including, but not limited to, compensatory and punitive damages, mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation suffered by the Plaintiffs.

d.    Award Plaintiffs' costs, attorneys' fees, expenses and other relief to which they may be entitled under the facts and law.

## COUNT IV - NEGLIGENT BREACH OF DUTY

51.    Plaintiff re-alleges paragraphs 1 through 49 as if set forth here in full.

52.    The Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson had a duty to follow the rules, regulations and policies of the State of Alabama and the Alabama Department of Mental Health and Mental Retardation and to faithfully comply with the laws of the United States and the State of Alabama. The Defendants have negligently breached such duty and the Plaintiffs have been proximately damaged as a result thereof.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendants John

18

Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, jointly and severally, and ask the Court, after trial by jury, to award them compensatory damages and any and all additional relief to which they may be entitled under the facts and law.

## COUNT V - WANTON BREACH OF DUTY

53.     Plaintiff re-alleges paragraphs 1 through 51 as if set forth here in full.

54.     The Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson had a duty to follow the rules, regulations and policies of the State of Alabama and the Alabama Department of Mental Health and Mental Retardation and to faithfully comply with the laws of the United States and the State of Alabama. The Defendants have wantonly breached such duty and the Plaintiffs have been proximately damaged as a result thereof.

WHEREFORE, the Plaintiffs respectfully claim judgment against Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, jointly and severally, and ask the Court, after trial by jury, to award them compensatory and punitive damages and any and all additional relief to which they may be entitled under the facts and law.

## COUNT VI - WILLFUL BREACH OF DUTY

55.     Plaintiff re-alleges paragraphs 1 through 53 as if set forth here in full.

56.     The Defendants John Houston, Otha Dillihay, Henry Ervin and Marilyn Benson had a duty to follow the rules, regulations and policies of the State of Alabama and the Alabama Department of Mental Health and Mental Retardation and to faithfully comply with the laws of the United States and the State of Alabama. The Defendants have willfully breached such duty and the Plaintiffs have been proximately damaged as a result thereof.

19

WHEREFORE, the Plaintiffs respectfully claim judgment against Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, jointly and severally, and ask the Court, after trial by jury, to award them compensatory and punitive damages and any and all additional relief to which they may be entitled under the facts and law.

## COUNT VII - INTENTIONAL INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS

57.    Plaintiffs re-allege paragraphs 1 through 55 as if set forth here in full.

58.    At all times material hereto, the Plaintiffs had a contractual and business relationship with the Alabama Department of Mental Health and Mental Retardation, wherein the Plaintiffs were promised the opportunity for promotion and/or new job assignments irrespective of the Plaintiffs' race.

59.    The Defendants, John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, were aware of the Plaintiffs' contractual and business relations with the Department of Mental Health and Mental Retardation and did intentionally interfere therewith, resulting in an interference with such relationship and permanent damage to Plaintiffs flowing therefrom.

60.    As a proximate result of the alleged acts and/or omissions of the Defendants, Plaintiffs have suffered mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendants, John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, jointly and severally, and ask the Court, after trial by jury, to award them compensatory and punitive damages and any

20

and all additional relief to which they may be entitled under the facts and law.

## COUNT VIII - CONSPIRACY

61.    Plaintiffs re-allege paragraphs 1 through 59 as if set forth here in full.

62.    At all times material hereto, Defendants John Houston, Otha Dillihay, Henry Ervin and Marilyn Benson conspired to establish the heretofore unknown position of Assistant Personnel Manager of the Central Personnel Office for the sole benefit and placement of Defendant Marilyn Benson in violation of the laws of the United States and the State of Alabama, and the rules, procedures and policy of the State of Alabama Department of Mental Health and Mental Retardation.

63.    As a proximate result of the alleged acts and/or omissions of the Defendants, Plaintiffs have suffered mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendants, John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, jointly and severally, and ask the Court, after trial by jury, to award them compensatory and punitive damages and any and all additional relief to which they may be entitled under the facts and law.

## COUNT IX - AGENCY/RESPONDENT SUPERIOR

64.    Plaintiffs re-allege paragraphs 1 through 63 as if set forth here in full.

65.    At all times material hereto Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson were acted under color of state law and as agents and representatives, under the control and supervision, of the Alabama Department of Mental

Health and Mental Retardation.

66.    To the extent allowed by law, the Alabama Department of Mental Health and Mental Retardation is liable to Plaintiffs for the acts and omissions of Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendant Alabama Department of Mental Health and Mental Resources, and ask the Court, after trial by jury, to award them any and all damages and relief to which they may be entitled against this Defendant under the facts and law.

## THE PLAINTIFFS DEMAND A TRIAL BY JURY

J. Flynn Mozingo (MOZ003)
Attorney for Plaintiffs

OF COUNSEL:

Melton, Espy & Williams, P.C.
P. O. Drawer 5130
Montgomery, AL   36103-5130
Telephone:    (334) 263-6621
Facsimile:    (334) 263-7525
fmozingo@mewlegal.com

PLEASE SERVE THE DEFENDANTS VIA CERTIFIED MAIL
AT THE BELOW LISTED ADDRESSES:

**State of Alabama Department of Mental Health and Mental Retardation**
**c/o John Houston, Commissioner**
**RSA Tower**
**100 N. Union Street**
**Montgomery, AL 36104**

**John Houston**
**P.O. Box 65**
**Coosada, AL 36020**

**Otha Dillihay**
**210 Hampton Grant Court**
**Columbia, SC 29209**

**Henry Ervin**
**1600 Wakefield Drive**
**Tuscaloosa, AL 35405**

**Marilyn Benson**
**1078 16th Place**
**Alexander City, AL 35010**

**Honorable Troy King**
**Alabama Attorney General**
**Office of the Attorney General**
**Alabama State House**
**11 South Union Street, Third Floor**
**Montgomery, AL 36130**

# Personnel Specialist III

***Job Code: H3000***                               ***Pay Range: 75***

## Definition:

This is specialized administrative work assisting in the direction of human resource management activities for a mental health facility or at the Central Personnel Office.

Employees in this class assist in the direction of a human resource management program of extensive size, scope and complexity. Employees perform such responsible human resource management activities such as recruitment, selection, placement, and classification and pay, requiring close adherence to rules and regulations of the State Personnel Board and to special federal and state laws and regulations. Other employees participate in assigned phases of personnel work in the Central Personnel Office of the Department. Supervision is exercised over subordinate personnel assistants and/or clerical staff engaged in processing and handling a variety of personnel transactions. Employees work with relative independence making decisions on routine matters, but problems encountered or more difficult work are referred to the immediate supervisor or HR Director who makes assignments, and evaluates work through conferences and reviews of completed tasks.

## Examples of Work Performed: (Any one position may not include all of the duties listed, nor do the examples cover all of the duties, which may be performed.)

- Supervises and coordinates recruitment, selection, and placement of personnel
- Supervises and coordinates the processing of various personnel actions to include appointments, demotions, promotions, reclassifications, retirements, transfers, reallocations, and pre-disciplinary hearings
- Provide technical assistance to department heads/facility directors, associate commissioners, the commissioner and/or HR director regarding various HR related matters
- Announces vacancies and determines if experience and education indicated on applicants meets minimum qualifications
- Confers with supervisors, managers, and other professionals in developing policies, programs, and procedures for effective coordination of HR services
- Schedules and conducts interviews of candidates



EXHIBIT

A

Personnel Specialist III  *Ranp 75*
Continued

- Confers with state personnel, other agencies within or out of state regarding activities as they relate to HR
- Represent HR and serve on various committees as assigned

## Knowledge, Skills, and Abilities:

- Knowledge of Federal and state Laws, rules, and regulations pertaining to human resource management
- Knowledge of State Personnel policies, rules, and regulations
- Knowledge of Federal rules and guidelines relating to recruitment, selection, and placement
- Knowledge of interviewing and counseling techniques
- Ability to plan, organize, direct, and evaluate the work of others
- Ability to read and interpret various federal and state guidelines and regulations
- Ability to communicate effectively both orally and in writing
- Ability to oversee, supervise, and/or coordinate various HR activities and functions
- Ability to work independently
- Ability to gather, correlate, and analyze facts and recommend solutions
- Ability to meet, interact, and effectively work with supervisors, associates, division heads, employees, state and local officials, and the general public

## Qualifications:

Graduation from a four-year college or university with a major in human resource management, business administration, public administration or a related field.    Must have **extensive** (72 months or more) professional personnel management experience in a state agency or equivalent professional personnel management experience.    Must also have **experience** (24 months or more) in a supervisory capacity.

Other directly related education and/or work experience may be substituted for all or part of these basic requirements.



9/06

2



STATE OF ALABAMA
## DEPARTMENT OF MENTAL HEALTH
## AND MENTAL RETARDATION
RSA UNION BUILDING
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410



JOHN HOUSTON
COMMISSIONER

BOB RILEY
GOVERNOR

# ANNOUNCEMENT OF INTENT TO FILL A NON-MERIT POSITION
## EQUAL OPPORTUNITY EMPLOYER

**JOB TITLE:**     Departmental Assistant
Personnel Manager

**NUMBER:**     05-27

**JOB CODE:**     H5500

**DATE:**     9/15/05

**SALARY RANGE:**     80 ($46,820- $71,380)

**POS#:**     8813339

**JOB LOCATION:**     **Department of Mental Health
And Mental Retardation
100 North Union Street
Montgomery, Ala. 36130**

**QUALIFICATIONS:** Bachelor's degree in Human Resource Management/Personnel Management, Business Administration, Public Administration, or related field. **Extensive experience (72 months or more)** working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity.
*Preference will be given to individuals with:*
> *Master's degree in any of the above specified fields of study.*
> *Work experience in the governmental/public sector*
> *Work experience in a healthcare setting*

**KIND OF WORK:**     Assists with day to day operation in planning, organizing, developing, coordinating, and implementing a comprehensive personnel management program for the Department of Mental Health and Mental Retardation. Coordinates efforts to include various personnel functions, such as recruitment, selection, job placement, position classification, employee training, performance appraisals, and affirmative action. Research and identify grant funding sources to assist coordinating efforts regarding Wage and Classification Studies. Maintains on-going classification and pay information from governmental agencies and private sector. Advises Director of Human Resources and assists in making recommendations to department heads, administrators, supervisors, and employees on rules, regulations, and proper personnel procedures concerning such matters as performance evaluations, promotions, demotions, transfers, and dismissals. Conducts and/or attends staff meetings, state personnel meetings, or personnel officer meetings. Gathers information and prepares budget for the Central Office Personnel Division and monitors expenditures. Coordinates various supervisory training for departmental Personnel Officers and makes oral presentations as needed.

**EXHIBIT**

*B*

Departmental Assistant
Personnel Manager
#05-27
Page 2

Serves in the absence of the Director of Human Resources by providing assistance regarding personnel and administrative functions and serves on various committees and task forces as assigned. Supervises clerical and para-professional staff assigned to Human Resources and conducts performance evaluations.

**REQUIRED KNOWLEDGE, SKILLS, AND ABILITIES:** Thorough knowledge of Department of Mental Health and Mental Retardation rules and regulations. Thorough knowledge of classification, recruitment, selection, placement, employee training, and staff development. Thorough knowledge of the principles and practices of public personnel administration, regarding applicable rules, regulations, policies, and ability to interpret state and federal rules and regulations. Ability to plan, organize, direct, and evaluate the work of others. Thorough knowledge of interviewing techniques. Ability to advise and make recommendations regarding employment selection procedures. Ability to make presentations and convey ideas and opinions effectively, both orally and in writing. Ability to gather, correlate, and analyze facts, and recommend solutions. Ability to provide technical assistance in the area of expertise. Ability to research and identify grants and funding resources. Ability to conduct and coordinate various meetings and chair committees. Ability to establish and maintain effective working relationships with departmental personnel at all levels and with employees in other departments as well as the general public.

**METHOD OF SELECTION:** Applicants will be rated on the basis of an evaluation of their training, experience and education, and should provide adequate work history identifying experiences related to the duties and minimum qualifications mentioned above. All relevant information is subject to verification.

**HOW TO APPLY:** Use an official application for Professional Employment (Exempt Application), which may be obtained from this office, other Department of Mental Health and Mental Retardation facility Personnel Offices, or at www.mh.state.al.us. **Only work experience detailed on the application form will be considered.** Additional sheets, if needed, should be in the same format as the application. **Resumes will not be accepted in lieu of an official application.**

## ALL APPLICATIONS SHOULD BE RETURNED TO:
**W.D. Partlow Developmental Center**
**Attention: Mr. Mike Mathis (Personnel Director)**
**1700 University Blvd.**
**Tuscaloosa, Ala. 35406-1730**
DEADLINE FOR SUBMITTING APPLICATIONS: September 30, 2005.

COPIES of licenses/certifications if applicable should be forwarded/furnished during interview, an official copy of your academic transcripts must be forwarded by the college or university to the personnel office at the above address.



STATE OF ALABAMA



# DEPARTMENT OF MENTAL HEALTH
## AND MENTAL RETARDATION
### RSA UNION BUILDING
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410

BOB RILEY
GOVERNOR

JOHN M. HOUSTON
COMMISSIONER

## (EXTENDED DEADLINE)
## RE-ANNOUNCEMENT OF INTENT TO FILL A NON-MERIT POSITION
## EQUAL OPPORTUNITY EMPLOYER

| | | | |
|---|---|---|---|
| **JOB TITLE:** | Departmental Assistant Personnel Manager | **NUMBER:** | 05-27 |
| **JOB CODE:** | H5500 | **DATE:** | 9/15/05 |
| **SALARY RANGE:** | 80 ($46,820- $71,380) | **POS#:** | 8813339 |
| **JOB LOCATION:** | **Department of Mental Health And Mental Retardation 100 North Union Street Montgomery, Ala. 36130** | | |

**QUALIFICATIONS:** Bachelor's degree in Human Resource Management/Personnel Management, Business Administration, Public Administration, or related field. **Extensive experience (72 months or more)** working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity.
*Preference will be given to individuals with:*
> *Master's degree in any of the above specified fields of study.*
> *Work experience in the governmental/ public sector*
> *Work experience in a healthcare setting*

**KIND OF WORK:**    Assists with day to day operation in planning, organizing, developing, coordinating, and implementing a comprehensive personnel management program for the Department of Mental Health and Mental Retardation. Coordinates efforts to include various personnel functions, such as recruitment, selection, job placement, position classification, employee training, performance appraisals, and affirmative action. Research and identify grant funding sources to assist coordinating efforts regarding Wage and Classification Studies. Maintains on-going classification and pay information from governmental agencies and private sector. Advises Director of Human Resources and assists in making recommendations to department heads, administrators, supervisors, and employees on rules, regulations, and proper personnel procedures concerning such matters as performance evaluations, promotions, demotions, transfers, and dismissals. Conducts and/or attends staff meetings, state personnel meetings, or personnel officer meetings. Gathers information and prepares budget for the Central Office Personnel Division and monitors expenditures. Coordinates various supervisory training for departmental Personnel Officers and makes oral presentations as needed.



EXHIBIT

C

Departmental Assistant
Personnel Manager
#05-27
Page 2

Serves in the absence of the Director of Human Resources by providing assistance regarding personnel and administrative functions and serves on various committees and task forces as assigned. Supervises clerical and para-professional staff assigned to Human Resources and conducts performance evaluations.

**REQUIRED KNOWLEDGE, SKILLS, AND ABILITIES:** Thorough knowledge of Department of Mental Health and Mental Retardation rules and regulations. Thorough knowledge of classification, recruitment, selection, placement, employee training, and staff development. Thorough knowledge of the principles and practices of public personnel administration, regarding applicable rules, regulations, policies, and ability to interpret state and federal rules and regulations. Ability to plan, organize, direct, and evaluate the work of others. Thorough knowledge of interviewing techniques. Ability to advise and make recommendations regarding employment selection procedures. Ability to make presentations and convey ideas and opinions effectively, both orally and in writing. Ability to gather, correlate, and analyze facts, and recommend solutions. Ability to provide technical assistance in the area of expertise. Ability to research and identify grants and funding resources. Ability to conduct and coordinate various meetings and chair committees. Ability to establish and maintain effective working relationships with departmental personnel at all levels and with employees in other departments as well as the general public.

**METHOD OF SELECTION:** Applicants will be rated on the basis of an evaluation of their training, experience and education, and should provide adequate work history identifying experiences related to the duties and minimum qualifications mentioned above. All relevant information is subject to verification.

**HOW TO APPLY:** Use an official application for Professional Employment (Exempt Application), which may be obtained from this office, other Department of Mental Health and Mental Retardation facility Personnel Offices, or at www.mh.state.al.us. **Only work experience detailed on the application form will be considered.** Additional sheets, if needed, should be in the same format as the application. **Resumes will not be accepted in lieu of an official application.**

## ALL APPLICATIONS SHOULD BE RETURNED TO:
**W.D. Partlow Developmental Center**
**Attention: Mr. Mike Mathis (Personnel Director)**
**1700 University Blvd.**
**Tuscaloosa, Ala. 35406-1730**
DEADLINE FOR SUBMITTING APPLICATIONS: October 28, 2005.

COPIES of licenses/certifications if applicable should be forwarded/furnished during interview, an official copy of your academic transcripts must be forwarded by the college or university to the personnel office at the above address.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

Ridge Park Place
1130 22nd Street, Suite 2000
Birmingham, AL 35205
(205) 212-2100
TTY (205) 212-2112
FAX (205) 212-2105

EEOC Charge Number: 420-2006-01138

Karen Hubbard                                              Charging Party
2534 Poplar Street
Montgomery, AL 36107

       v.

Dept. of Mental Health and Mental Retardation             Respondent
P.O. Box 301410
Montgomery, AL 36130-1410

<u>DETERMINATION</u>

I issue the following determination on the merits of this charge.

Respondent is an employer within the meaning of Title VII of the Civil Right Act of 1964, as amended, 42 U.S.C. 2000e, et. seq. (Title VII). Timeliness and all other requirements for coverage have been met.

Charging Party alleges that she was denied the opportunity to apply for a promotion to the position of Departmental Assistant Personnel Director because of her race, White. Charging Party alleges that Respondent omitted a substitution clause from the job announcement for the position in order to preclude her from meeting the qualifications and favor the Black applicant. Respondent denies that Charging Party has been a victim of discrimination and contends that it now omits the substitution clause from all high level positions.

The investigation revealed that Respondent has not instituted a policy of omitting substitution clauses from all high level positions. Evidence showed that many such positions were announced after the Departmental Assistant Personnel Manager position, but they included substitution clauses. Evidence showed that the omission favored the Black Personnel Specialist III, but it served to exclude Charging Party and the other Personnel Specialist III, who is White, from applying. Evidence shows that Charging Party expressed interest in the job but the job announcement was not changed. The evidence obtained during the investigation establishes reasonable cause to believe that a violation of the statute has occurred.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. Please complete the enclosed Invitation to Conciliate and return it to the Commission at the above address no later than _02|23|2007_. You may fax your response directly to (205) 212-2105 to the attention of Sheri Guenster. Failure to respond by _02|23|2007_ will indicate that you are not interested in conciliating this matter and the Commission will determine that efforts to conciliate this charge as required by Title VII, Section 706(b), have been unsuccessful.

If Respondent declines to participate in conciliation discussions or when, for any other reason, a Conciliation Agreement acceptable to the District Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the

**EXHIBIT**

D

Letter of Determination
420-2006-01138
Page 2 of 2

Commission.

On behalf of the Commission,

02/08/2007

Date

Delner Franklin-Thomas
District Director

Enclosure:     Invitation to Conciliate

Copy:          Mr. Courtney W. Tarver
               Deputy Attorney General and Counsel



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

Ridge Park Place
1130 22nd Street, Suite 2000
Birmingham, AL 35205
(205) 212-2100
TTY (205) 212-2112
FAX (205) 212-2105

EEOC Charge Number: 420-2006-01123

Joan E. Owens                                          Charging Party
319 Ross Road
Wetumpka, AL 36092

    v.

Dept. of Mental Health and Mental Retardation          Respondent
P.O. Box 301410
Montgomery, AL 36130-1410

<u>DETERMINATION</u>

I issue the following determination on the merits of this charge.

Respondent is an employer within the meaning of Title VII of the Civil Right Act of 1964, as amended, 42 U.S.C. 2000e, et. seq. (Title VII). Timeliness and all other requirements for coverage have been met.

Charging Party alleges that she was denied the opportunity to apply for a promotion to the position of Departmental Assistant Personnel Director because of her race, White. Charging Party alleges that Respondent omitted a substitution clause from the job announcement for the position in order to preclude her from meeting the qualifications and favor the Black applicant. Respondent denies that Charging Party has been a victim of discrimination and contends that it now omits the substitution clause from all high level positions.

The investigation revealed that Respondent has not instituted a policy of omitting substitution clauses from all high level positions. Evidence showed that many such positions were announced after the Departmental Assistant Personnel Manager position, but they included substitution clauses. Evidence showed that the omission favored the Black Personnel Specialist III, but it served to exclude Charging Party and the other Personnel Specialist III, who is White, from applying. Evidence shows that Charging Party expressed interest in the job but the job announcement was not changed.  The evidence obtained during the investigation establishes reasonable cause to believe a violation of the statute has occurred.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. Please complete the enclosed Invitation to Conciliate and return it to the Commission at the above address no later than 02|23|2007_____. You may fax your response directly to (205) 212-2105 to the attention of Sheri Guenster. Failure to respond by ___02|23|2007_____ will indicate that you are not interested in conciliating this matter and the Commission will determine that efforts to conciliate this charge as required by Title VII, Section 706(b), have been unsuccessful.

If Respondent declines to participate in conciliation discussions or when, for any other reason, a Conciliation Agreement acceptable to the District Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the

Letter of Determination
420-2006-01123
Page 2 of 2

Commission.

On behalf of the Commission,

02|08|2007
Date

Delner Franklin-Thomas
District Director

Enclosure:     Invitation to Conciliate

Copy:          Mr. Courtney W. Tarver
               Deputy Attorney General and Counsel



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

Ridge Park Place
1130 22nd Street, Suite 2000
Birmingham, AL 35205
(205) 212-2100
TTY (205) 212-2112
FAX (205) 212-2105

January 4, 2007

Mr. Courtney W. Tarver
Deputy Attorney General and Counsel
Bureau of Legal Services
State of Alabama
Department of Mental Health and Mental Retardation
P.O. Box 301410
Montgomery, AL 36130-1410

      Re:    Joan E. Owens v. Department of Mental Health and Mental Retardation
               Charge Number 420-2006-01123

               Karen Hubbard v. Department of Mental Health and Mental Retardation
               Charge Number 420-2006-01138

Dear Mr. Tarver:

As you know, the above-referenced charges were assigned to me for investigation. This is to advise you that I have completed my analysis of the evidence obtained during the investigation of these charges. The evidence indicates that the Charging Parties were discriminated against because of their race, White.

The investigation revealed that Respondent routinely permits directly-related education or experience to be substituted for all or part of basic job requirements for upper-level positions. Evidence shows that when the position of Departmental Assistant Personnel Management was announced, no "substitution clause" was included in the announcement. According to the evidence, the lack of a substitution clause placed the only Black candidate, Marilyn Benson, at a distinct advantage over the two White candidates, the Charging Parties. Although Respondent maintains that substitutions are no longer permitted in upper level positions, evidence indicates that after the Departmental Assistant Personnel Management position was filled by Benson, Respondent continued to announce upper-level vacancies with substitution clauses.

Based on the evidence provided by the Respondent and the Charging Party, I intend to recommend to the Director that a finding of reasonable cause be issued. If you wish to submit any additional evidence which has not already been submitted, you may do so by **Thursday, January 18, 2007**. If you fail to submit evidence which would alter the outcome of the investigation, I will forward the case to the District Director for appropriate action.

                          Sincerely,

                          Sheri Guenster
                          Federal Investigator

**EXHIBIT**

E

# State of Alabama
# Department of Mental Health and Mental Retardation

NUMBER:    60-20

SUBJECT:    Personnel/Payroll
TITLE:    Equal Employment Opportunity

EFFECTIVE: 4/4/88        REVIEWED: 8/7/2002        CHANGED: 10/1/2004

RESPONSIBLE
OFFICE:        Office of Personnel

APPROVED:

## I.    POLICY:

The Alabama Department of Mental Health/Mental Retardation will recruit, employ, promote, remunerate, and conduct all personnel administrative practices without regard to race, religion, national origin, color, age, sex, or disability, except where sex or physical ability constitute a bona fide occupational qualification.

## II.    STANDARDS

1.    The Department will maintain and implement an internal Affirmative Action Plan.

1 of 1


EXHIBIT
F