## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **JOAN FAULK OWENS and KAREN LYNN HUBBARD,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO- 2:07-cv-650** |
| | ) | |
| **STATE OF ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION; JOHN HOUSTON, individually and in his official capacity as COMMISSIONER OF THE DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION; OTHA DILLIHAY, individually and in his official capacity as ASSOCIATE COMMISSIONER OF ADMINISTRATION OF THE DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION; HENRY R. ERVIN, individually and in his official capacity as DIRECTOR OF HUMAN RESOURCES OF THE DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION; and MARILYN BENSON individually and in her official capacity as the ASSISTANT PERSONNEL MANAGER OF HUMAN RESOURCES OF THE DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

1

## SECOND AMENDED COMPLAINT

### INTRODUCTION

1.     This is an action for legal and equitable relief to redress unlawful discrimination against the Plaintiffs.  This suit is brought to secure the protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act, including the Civil Rights Act of 1991, codified at 42 U.S.C. § 2000e *et seq.* (hereinafter "ADEA"), and the Fourteenth Amendment of the United States Constitution, and ancillary state law claims. The Plaintiffs request a trial by jury of all issues so triable.

### JURISDICTION

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202.  This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, including the Civil Rights Act of 1991, and 42 U.S.C. §§ 1981a and 1983. The jurisdiction of this Court is invoked to secure the protection of and redress the deprivation of civil rights secured by law and for relief against racial discrimination.

3.     Through supplemental jurisdiction, this Court's jurisdiction extends over the related state law claims of negligence, wanton and willful breach of duty, intentional interference with the contractual and business relationship, conspiracy and agency/respondent superior.

_____

## ADMINISTRATIVE EXHAUSTION

4.      The Plaintiffs have fulfilled all conditions precedent to the institution of this action.  The Plaintiffs filed their charges of discrimination with the Equal Employment Opportunity Commission (the "EEOC") within 180 days of the occurrence of the last discriminatory act.  The Plaintiffs have timely filed their lawsuit within 90 days of the receipt of their Notice of Right-To-Sue from the EEOC.

## STATEMENT OF THE PARTIES

5.      Plaintiff Joan Faulk Owens is a resident of Elmore County, Alabama and is over the age of nineteen (19) years.  Plaintiff Owens is a resident of the State of Alabama and a citizen of the United States.  At all times herein Plaintiff Owens was and still is employed by the State of Alabama.

6.      Plaintiff Karen Lynn Hubbard is a resident of Montgomery County, Alabama and is over the age of nineteen (19) years.  Plaintiff Hubbard is a resident of the State of Alabama and is a citizen of the United States.  At all times herein Plaintiff Hubbard was and still is employed by the State of Alabama.

7.      Defendant State of Alabama Department of Mental Health and Mental Retardation (hereinafter "ADMH") is an employer subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000 *et seq.* Defendant ADMH employs at least fifteen (15) people and conducts business in Montgomery, Alabama.

8.      Defendant John Houston, individually and in his official capacity as

3

Commissioner of ADMH, is a resident of the State of Alabama and conducts business in Montgomery, Alabama. At all times herein, Defendant Houston was and still is employed by the State of Alabama.

9.     Defendant Otha Dillihay, individually and in his official capacity as former Associate Commissioner of Administration of ADMH, is a resident of the State of South Carolina and at the time of the actions herein complained, conducted business in Montgomery, Alabama. At all times herein, Defendant Dillihay was employed by the State of Alabama.

10.     Defendant Henry E. Ervin, individually and in his official capacity as Director of Human Resources of ADMH, is a resident of the State of Alabama and conducts business in Montgomery, Alabama. At all times herein, Defendant Ervin was and still is employed by the State of Alabama.

11.     Defendant Marilyn Benson, individually and in her official capacity as Assistant Personnel Director of Human Resources of ADMH, is a resident of the State of Alabama and conducts business in Montgomery, Alabama. At all times herein, Defendant Benson was and still is employed by the State of Alabama.

## STATEMENT OF THE FACTS

12.     Plaintiffs re-allege paragraphs 1 through 11 as if set out here in full.

13.     Plaintiff Joan Faulk Owens, a white female, has been employed by Defendant ADMH for approximately 17 years, since December 31, 1990, to the present. Plaintiff Owens is presently classified as a Personnel Specialist III. Plaintiff Owens reports directly

4

to Defendant Henry E. Ervin as Director of Human Resources.

14.     Plaintiff Karen Lynn Hubbard, a white female, has been employed by Defendant ADMH for approximately 16 years, since December 31, 1991, to the present. Plaintiff Hubbard is presently classified as a Personnel Specialist III.   Plaintiff Hubbard reports directly to Defendant Henry E. Ervin as Director of Human Resources.

15.     Defendant Marilyn Benson, a black female, is an employee of the State of Alabama and at the time of the incident herein complained, was classified as a Personnel Specialist III.  Defendant Marilyn Benson reports directly to Defendant Henry E. Ervin as Director of Human Resources.

16.     Defendant Henry E. Ervin, a black male, is an employee of the State of Alabama and at the time of the incident herein complained, was and still is the Director of Human Resources of the ADMH.  As Director, Defendant Ervin oversees the management and operations of the personnel division of the ADMH, also known as the "Central Personnel Office."  At the time of the incident herein complained, Defendant Ervin reported directly to Otha Dillihay as Associate Commissioner for Administration of the ADMH.

17.     Defendant Otha Dillihay, a black male, was an employee of the State of Alabama and, at the time of the incident herein complained, was the Associate Commissioner for Administration of the ADMH.  As Associate Commissioner, Defendant Dillihay reported directly to Defendant John Houston as Commissioner of the ADMH.

18.     The management hierarchy within the Central Personnel Office begins with the Director of Human Resources, consisting of Defendant Ervin.  At all times relevant hereto,

the next management level immediately below the Director was Personnel Specialist III, with a total of three people holding such rank and title, the Plaintiffs and Defendant Benson. At all times relevant hereto, there were three Personnel Specialist III in Human Resources, consisting of the Plaintiffs and Defendant Benson.

19.    As Personnel Specialist III and long-time employees of Human Resources of the ADMH, the Plaintiffs have extensive professional personnel management and supervisory experience in and outside of the ADMH, as well as an in-depth knowledge of federal and state laws, rules and regulations pertaining to human resource management, recruitment, selection and placement, and state personnel policies, and rules and regulations.

20.    In or about late 2004 or early 2005, Plaintiff Hubbard received a telephone call from a representative of the Alabama State Personnel Office who was seeking the "position control number" for the soon to be created position of "Departmental Assistant Personnel Manager" for Human Resources of ADMH. Plaintiff Hubbard was surprised to learn of the new position because all new Human Resources positions are discussed or made known in the Central Personnel Office's periodic staff meetings and the position of Departmental Assistant Personnel Manager had never been discussed or mentioned.

21.    Upon further inquiry with the Central Personnel Office, Plaintiff Hubbard learned that the new position of Departmental Assistant Personnel Manager was to be an advanced pay-grade position over her then current position of Personnel Specialist III, and the person holding the position would be acting as the executive assistant to the Director of Human Resources, Defendant Ervin. Plaintiff Hubbard was told that Defendant Director

6

Ervin had instructed the limited Central Office personnel with knowledge of the new position to "keep quiet" about it.

22.    Shortly thereafter, Plaintiff Hubbard learned that Defendant Assistant Commissioner Dillihay was proposing to change the "substitution" rule for department employment qualification purposes from one-to-one (i.e., one year's relevant work experience for one year's education) to two-to-one (i.e., two year's relevant work experience for one year's education). The substitution rule is a provision used for certain departmental employment positions whereby an applicant who lacks educational requirements for a certain employment position may substitute relevant work experience, or vice versa, to qualify for the job. If a candidate qualifies for a job, then the candidate's credentials are scored and the candidates with the highest scores are then interviewed for the position.

23.    Concerned over these events, Plaintiff Hubbard requested and received a meeting with Defendant Commissioner Houston. During the initial and/or subsequent meetings, Plaintiff Hubbard complained to Defendant Commissioner Houston that she believed that the new position of Departmental Assistant Personnel Manager was being created specifically for Defendant Benson based on past preferential treatment given to Defendant Benson by Defendant Director Ervin. Defendant Houston did not deny Plaintiff Hubbard's allegations.

24.    In or about May 2005, Plaintiff Hubbard learned that Defendant Commissioner Houston had accepted the recommendations of Defendant Assistant Commissioner Dillihay and Defendant Director Ervin to modify the substitution rule. Plaintiff Hubbard again met

with Defendant Commissioner Houston and complained about the modification.  Defendant

Commissioner Houston refused to act on her complaints.

25.    On or about September 15, 2005, Plaintiffs received the Announcement of

Intent to Fill a Non-Merit Position Equal Opportunity Employer (i.e., "Announcement")

issued by ADMH for the new position of Departmental Assistant Personnel Manager. This

was Plaintiffs' first notice of the qualifications for the new position since, contrary to

accepted practice and procedure, a "Specification" sheet describing the position had never

been circulated throughout the Central Office and departmental facility personnel offices

beforehand as with all other jobs offered through the ADMH.

26.    The Announcement listed the qualifications for the new position as requiring

a Bachelor's degree in Human Resource Management/Personnel Management, Business

Administration, Public Administration, or related field, plus "[e]xtensive experience (72

months or more) working in a professional personnel management position, plus experience

(24 months or more) in a supervisory capacity."  In addition, the Announcement stated:

> *Preference will be given to individuals with:*
>
> ➢ *Master's degree in any of the above specified fields of study.*
>
> ➢ *Work experience in the government/public sector*
>
> ➢ *Work experience in a healthcare setting*

27.    However, contrary to any open human resources' position announced by the

ADMH either before or afterwards, the Announcement contained no substitution provision

whatsoever.  Even positions higher than the position at issue here, including the Director of

Human Resources position, have always and still do allow for substitutions. In addition, the Announcement stated that a "Master's Degree" was preferred, which had previously never been done.

28.    Upon information and belief, the Announcement was prepared by Defendant Benson under the direction and/or with the advice, approval and/or guidance of Defendant Director Ervin and/or Defendant Assistant Commissioner Dillihay and/or Defendant Commissoner Houston.

29.    Upon receiving the Announcement and failing to realize it contained no substitution provision, Plaintiff Owens announced to June Lynn, Executive Assistant to Defendant Assistant Commissioner Dillihay, that she intended to apply for the new position. June Lynn responded that Plaintiff Owens could not apply because the Announcement contained no substitution provision and Plaintiff Owens did not have a degree. Plaintiff Owens immediately asked June Lynn to modify the Announcement to include a substitution provision and June Lynn responded that she could not, that Defendants Dillihay and Ervin had prepared the Specification for the position and they had not included a substitution provision.

30.    That same day or the following day, Plaintiff Owens approached Defendant Director Ervin, placed the Announcement on his desk and demanded that he put the substitution provision in the Announcement. Defendant Ervin responded: "I'm so tired of your shit!" Defendant Ervin then expressed surprise that "as uneducated as y'all are that you would expect me to do this." Plaintiff Owens then left Defendant Ervin's office visibly

9

shaken.

31.    Because the Announcement required that an applicant have "[t]horough knowledge of Department of Mental Health and Mental Retardation rules and regulations," only an employee of the Department could realistically qualify to apply for the position. Moreover, Defendant Benson, who holds an undergraduate degree in Health Services Administration and a graduate degree in Public Administration, readily qualified to apply. However, because neither Plaintiff holds a college degree, the Plaintiffs did not qualify to apply and could not qualify without the substitution provision.

32.    Yet the Plaintiffs, who both wished to apply for the new position, had more extensive work experience than Defendant Benson, who has never worked with ADMH outside of the Central Office and, prior to working with ADMH, had only one year experience as an office manager for a physician's office.

33.    By contrast, between 1985 and 1990, Plaintiff Owens was the personnel director at Elmore Community Hospital in Wetumpka, Alabama.  Between 1999 and 2003 Plaintiff Owens served intermittently as Personnel Manager at J. S. Tarwater Mental Health Facility in Wetumpka and oversaw the eventual closing of Tarwater while, all the time, continuing to hold and perform all her same functions as a Personnel Specialist III in the Central Office of Human Resources at ADMH in Montgomery.  Plaintiff Owens was also the Personnel Manager for six months at Greil Psychiatric Hospital in Montgomery, Alabama.  In fact, Defendant Director Ervin periodically appointed Plaintiff Owens to oversee the Central Office in his absence.

10

34.    Plaintiff Hubbard, during her tenure as Personnel Specialist III, in addition to the duties of that position, served as the acting Personnel Manager for Greil Psychiatric Hospital for more than 3 years where she planned, organized, developed and coordinated a comprehensive personnel management program and successfully brought the hospital's personnel office through a JACHO survey, the most comprehensive licensure inspection and survey for hospital facilities in the United States.  While serving in the Cental Office of Human Resources at ADMH, Plaintiff Hubbard wrote the Department's affirmative action plan and administered the Department's drug testing policy in addition to the various other executive management duties assigned to a Personnel Specialist III.  Defendant Director Ervin also periodically appointed Plaintiff Hubbard to oversee the Central Office in his absence.

35.    The Announcement of Departmental Assistant Personnel Manager generated only a few applications.  Therefore, Defendant Commissioner Houston had the new position re-announced.  Subsequently, only three individuals, all black, were interviewed for the new position.  The new position was thereafter given to Defendant Benson.

36.    Upon information and belief, the position of Departmental Assistant Personnel Manager was specifically created for Defendant Benson with the plan and expectation that Defendant Benson will replace Defendant Director Ervin upon his retirement and that a black individual will continue to hold the position of Director of Personnel for ADMH.

37.    On or about March 3, 2006, the Plaintiffs filed a Charge of Discrimination against ADMH with the EEOC.

38.    After conducting an investigation, the EEOC found that there was "reasonable cause" to believe that a violation of Title VII had occurred.  The "Determination" letter issued by the EEOC in response to the Plaintiffs' Charge of Discrimination states, in part:

> The investigation revealed that Respondent [i.e., ADMH] has not instituted a policy of omitting substitution clauses from all high level positions.  Evidence showed that many such positions were announced after the Departmental Assistant Personnel Manager position, but they included substitution clauses. Evidence showed that the omission favored the Black Personnel Specialist III, but is served to exclude Charging Party and the other Personnel Specialist III, who is White, from applying.  Evidence shows that Charging Party expressed interest in the job but the job announcement was not changed.  The evidence obtained during the investigation establishes reasonable cause to believe a violation of the statute has occurred.

(Determination letter).

39.    An EEOC Investigator also wrote to the ADMH, by and through its attorney, Courtney W. Tarver, the following:

> As you know, the above-referenced charges were assigned to me for investigation.  This is to advise you that I have completed my analysis of the evidence obtained during the investigation of these charges.  The evidence indicates that the Charging Parties were discriminated against because of their race, White.
>
> The investigation revealed that Respondent permits directly-related education or experience to be substituted for all or part of basic job requirements for upper-level positions.  Evidence shows that when the position of Departmental Assistant Personnel Management was announced, no "substitution clause" was included in the announcement.  According to the evidence, the lack of a substitution clause placed the only Black candidate, Marilyn Benson, at a distinct advantage over the two White candidates, the Charging Parties. Although Respondent maintains that substitutions are no longer permitted in upper level positions, evidence indicates that after the Departmental Assistant Personnel Management position was filled by Benson, Respondent continued to announce upper-level vacancies with substitution clauses.

(Tarver letter).

40.    The ADMH thereafter refused to participate in conciliation discussions with Plaintiffs offered by the EEOC.  Accordingly, the EEOC submitted the complaint to the Department of Justice who subsequently issued a "Right to Sue" letter.  This Complaint is timely filed within 90 days thereof.

### COUNT I - TITLE VII EMPLOYMENT DISCRIMINATION

41.    Plaintiffs re-allege paragraphs 1 through 40 as if set forth here in full.

42.    The Defendant employer, the Alabama Department of Mental Health and Mental Retardation, by and through its agents, employees and officers named herein, wrongfully, recklessly and/or intentionally discriminated, with malice, against the Plaintiffs on account of their race.  As a result of the Defendants' actions, the Plaintiffs have suffered mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation.

43.    The discrimination violates the Plaintiffs' rights under the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, also known as Title VII, and as further secured by 42 U.S.C. § 1981a.  The Defendant Alabama Department of Mental Health and Mental Retardation is liable for damages and equitable relief relative to Plaintiffs' claims.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendant, Alabama Department of Mental Health and Mental Retardation, and ask the Court, after trial by jury, to:

a.    Issue a declaratory judgment that the employment acts, omissions, policies, practices, procedures, conditions, and customs of the Defendant are

13

violative of the Plaintiffs' rights as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," 42 U.S.C. § 2000e *et seq.*, as amended, and the Plaintiffs' rights as secured by the Fourteenth Amendment to the United States Constitution.

b.      Grant the Plaintiffs preliminary and permanent injunctive and equitable relief against the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate Title VII and the Fourteenth Amendment.

c.      Enter an Order requiring the Defendant to make the Plaintiffs whole by requiring Defendants to: (i) demote Defendant Marilyn Benson to her prior position which is the same as the current position of the Plaintiffs; (ii) re-announce the position of Departmental Assistant Personnel Manager of the Central Office of Personnel to include a substitution provision the same as substitution provision generally and historically used by the Department immediately prior to the events alleged herein; and (iii) award the position of Departmental Assistant Personnel Manager to a qualified individual and without unlawful and/or illegal motive or pretext.

d.      Enter a judgment awarding Plaintiffs' damages, including, but not limited to, compensatory damages for mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation suffered by the Plaintiffs.

e.    Award Plaintiffs' costs, attorneys' fees, expenses and any other relief

to which they may be entitled under the facts and law.

## COUNT II - § 1981 DISCRIMINATION

44.    Plaintiffs re-allege paragraphs 1 through 43 as if set forth here in full.

45.    The Defendants, John Houston, Otha Dillihay, Henry Ervin and Marilyn

Benson, have negligently, wantonly, willfully and/or intentionally wrongfully denied

Plaintiffs the full and equal benefit of the laws and proceedings of the United States and the

State of Alabama on account of their race.  As a result of the Defendants' actions, the

Plaintiffs have suffered mental pain and anguish, financial disadvantage, embarrassment,

trauma and humiliation.

46.    The Defendants discriminatory acts and/or omissions violate the Plaintiffs'

rights as secured by 42 U.S.C. § 1981 and Defendants John Houston, Otha Dillihay, Henry

Ervin and Marilyn Benson are liable for damages and equitable relief relative to Plaintiffs'

claims.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendants John

Houston, Otha Dillihay, Henry Ervin and Marilyn Benson, and ask the Court, after trial by

jury, to:

a.    Issue a declaratory judgment that the Defendants acts and/or omissions

are violative of the Plaintiffs' rights as secured by law.

b.    Grant the Plaintiffs preliminary and permanent injunctive and equitable

relief against the Defendant, their agents and successors, and those acting in

concert with them, from continuing to violate Plaintiffs' rights as alleged herein.

c.      Enter a judgment awarding Plaintiffs' damages, including, but not limited to, compensatory and punitive damages for mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation suffered by the Plaintiffs.

d.      Award Plaintiffs' costs, attorneys' fees, expenses and any other relief to which they may be entitled under the facts and law.

### COUNT III - FOURTEENTH AMENDMENT VIOLATION

47.    Plaintiffs re-allege paragraphs 1 through 46 as if set out forth in full.

48.    The Alabama Department of Mental Health and Mental Retardation establishes and promulgates rules and  guidelines governing the selection of "exempt employees," i.e., employees that are not subject to the State Merit Personnel System.  By law, policy, and practice, the Alabama Department of Mental Health and Mental Retardation is required to conduct all personnel activities without regard to race, religion, national origin, color, sex, age, or disability, and to employ individuals to exempt positions only through an open and competitive process.  The Alabama Department of Mental Health represents that it will offer existing and prospective employees "fair employment" practices and that it will not pre-select or give selected or certain employees a competitive advantage in obtaining new jobs or promotional opportunities within the Department.

49.    The Alabama Department of Mental Health has established a classification

system whereby positions that are substantially similar with respect to difficulty, responsibility and character of work and require generally the same kind and amount of training and experience for proper performance, and merit approximately equal pay, are allocated to the same class.  Under such classification system discrimination against any person in recruitment, examination, appointment, training, promotion, retention or other personnel action due to a non-merit factor is prohibited.

     50.    The Alabama Department of Mental Health and Mental Retardation currently utilizes a classification system for Personnel Specialists, Personnel Managers, and Administrators, all of which utilize substitution provisions.  These classifications and other positions within the Alabama Department of Mental Health and Mental Retardation are substantially similar in difficulty, responsibility, pay and character of work to the position of Departmental Assistant Personnel Manager currently held by Defendant Marilyn Benson. However, the position of Departmental Assistant Personnel Manager, unlike the other positions, does not contain a substitution provision.

     51.    The Defendants John Houston, Otha Dillihay, Henry Ervin and Marilyn Benson, all acting under color of law, have wrongfully, recklessly, wantonly, willfully, arbitrarily and capriciously and/or intentionally discriminated against the Plaintiffs in the creation, establishment and hiring for the position of Departmental Assistant Personnel Manager, including omitting the use of the substitution provision, in violation of the Plaintiffs' Due Process and Equal Protection rights secured by the United States Constitution, and in further violation of Alabama law as well as the policies, rules, regulations and

practices of the Alabama Department of Mental Health and Mental Retardation.

52.     The Plaintiffs, Joan Owens and Lynn Hubbard, complained to the Defendants that their actions and conduct would discriminate against them and violate their constitutional rights. However, the Defendants, with wrongful, reckless, wanton, willful and/or intentional and deliberate indifference, refused to cease their conduct which has resulted in the deprivation of the constitutional and civil rights of the Plaintiffs as alleged herein.

53.     In addition or in the alternative thereto, the Defendants created, established the position of Departmental Assistance Personnel Manager, and selected Defendant Benson for such position on the basis of Benson's race or to otherwise give her a competitive and unfair advantage over the Plaintiffs and prohibit the Plaintiffs from competing for the position, although the Plaintiffs were fully capable and competent to compete for and be selected for such position.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, jointly and severally, ask the Court, after trial by jury, to:

a.     Issue a declaratory judgment that the alleged acts and/or omissions of the Defendants are violative of the Plaintiffs' rights as secured by law.

b.     Grant the Plaintiffs permanent injunctive relief against the Defendants, their agents, successors, employees, attorneys and those acting in concert with the Defendants and at the Defendants' request from continuing to violate the Plaintiffs' rights.

c.    Enter a judgment awarding Plaintiffs' damages, including, but not limited to, compensatory and punitive damages, mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation suffered by the Plaintiffs.

d.    Award Plaintiffs' costs, attorneys' fees, expenses and other relief to which they may be entitled under the facts and law.

## COUNT IV - NEGLIGENT BREACH OF DUTY

54.    Plaintiff re-alleges paragraphs 1 through 53 as if set forth here in full.

55.    The Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson had a duty to follow the rules, regulations and policies of the State of Alabama and the Alabama Department of Mental Health and Mental Retardation and to faithfully comply with the laws of the United States and the State of Alabama.  The Defendants have negligently breached such duty and the Plaintiffs have been proximately damaged as a result thereof.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, jointly and severally, and ask the Court, after trial by jury, to award them compensatory damages and any and all additional relief to which they may be entitled under the facts and law.

## COUNT V - WANTON BREACH OF DUTY

56.    Plaintiff re-alleges paragraphs 1 through 55 as if set forth here in full.

57.    The Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn

19

Benson had a duty to follow the rules, regulations and policies of the State of Alabama and the Alabama Department of Mental Health and Mental Retardation and to faithfully comply with the laws of the United States and the State of Alabama. The Defendants have wantonly breached such duty and the Plaintiffs have been proximately damaged as a result thereof.

WHEREFORE, the Plaintiffs respectfully claim judgment against Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, jointly and severally, and ask the Court, after trial by jury, to award them compensatory and punitive damages and any and all additional relief to which they may be entitled under the facts and law.

### COUNT VI - WILLFUL BREACH OF DUTY

58.    Plaintiff re-alleges paragraphs 1 through 57 as if set forth here in full.

59.    The Defendants John Houston, Otha Dillihay, Henry Ervin and Marilyn Benson had a duty to follow the rules, regulations and policies of the State of Alabama and the Alabama Department of Mental Health and Mental Retardation and to faithfully comply with the laws of the United States and the State of Alabama. The Defendants have willfully breached such duty and the Plaintiffs have been proximately damaged as a result thereof.

WHEREFORE, the Plaintiffs respectfully claim judgment against Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, jointly and severally, and ask the Court, after trial by jury, to award them compensatory and punitive damages and any and all additional relief to which they may be entitled under the facts and law.

### COUNT VII - INTENTIONAL INTERFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS

60.    Plaintiffs re-allege paragraphs 1 through 59 as if set forth here in full.

20

61.    At all times material hereto, the Plaintiffs had a contractual and business relationship with the Alabama Department of Mental Health and Mental Retardation, wherein the Plaintiffs were promised the opportunity for promotion and/or new job assignments irrespective of the Plaintiffs' race.

62.    The Defendants, John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, were aware of the Plaintiffs' contractual and business relations with the Department of Mental Health and Mental Retardation and did intentionally interfere therewith, resulting in an interference with such relationship and permanent damage to Plaintiffs flowing therefrom.

63.    As a proximate result of the alleged acts and/or omissions of the Defendants, Plaintiffs have suffered mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendants, John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, jointly and severally, and ask the Court, after trial by jury, to award them compensatory and punitive damages and any and all additional relief to which they may be entitled under the facts and law.

## COUNT VIII - CONSPIRACY

64.    Plaintiffs re-allege paragraphs 1 through 63 as if set forth here in full.

65.    At all times material hereto, Defendants John Houston, Otha Dillihay, Henry Ervin and Marilyn Benson conspired to establish the heretofore unknown position of Assistant Personnel Manager of the Central Personnel Office for the sole benefit and

placement of Defendant Marilyn Benson in violation of the laws of the United States and the State of Alabama, and the rules, procedures and policy of the State of Alabama Department of Mental Health and Mental Retardation.

66.     As a proximate result of the alleged acts and/or omissions of the Defendants, Plaintiffs have suffered mental pain and anguish, financial disadvantage, embarrassment, trauma and humiliation.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendants, John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson, jointly and severally, and ask the Court, after trial by jury, to award them compensatory and punitive damages and any and all additional relief to which they may be entitled under the facts and law.

## COUNT IX - AGENCY/RESPONDENT SUPERIOR

67.     Plaintiffs re-allege paragraphs 1 through 66 as if set forth here in full.

68.     At all times material hereto Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson were acted under color of state law and as agents and representatives, under the control and supervision, of the Alabama Department of Mental Health and Mental Retardation.

69.     To the extent allowed by law, the Alabama Department of Mental Health and Mental Retardation is liable to Plaintiffs for the acts and omissions of Defendants John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson.

WHEREFORE, the Plaintiffs respectfully claim judgment against the Defendant Alabama Department of Mental Health and Mental Resources, and ask the Court, after trial

by jury, to award them any and all damages and relief to which they may be entitled against this Defendant under the facts and law.

Respectfully submitted this the _27th_ day of June, 2008.

**THE PLAINTIFFS DEMAND A TRIAL BY JURY**

                                   s/J. Flynn Mozingo _____
                                  J. Flynn Mozingo (MOZ003)
                                  Attorney for Plaintiffs
                                  Melton, Espy & Williams, P.C.
                                  P. O. Drawer 5130
                                  Montgomery, AL   36103-5130
                                  Telephone:   (334) 263-6621
                                  Facsimile:   (334) 263-7525
                                  fmozingo@mewlegal.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have filed the foregoing electronically with Clerk of the Court using the ECF/CM system and a copy of the foregoing will be served on the below listed counsel of record via such system on this the _27th_ day of June, 2008:

| | |
|---|---|
| H.E. NIX, JR. | COURTNEY W. TARVER |
| Nix, Holtsford, Gilliland, | Deputy Atty. General and Gen. Counsel |
| Higgins & Hitson, P.C. | Bureau of Legal Services |
| Post Office Box 4128 | ADMH/MR |
| Montgomery, AL 36103-4128 | RSA Union Building |
| | 100 N. Union Street |
| | Montgomery, AL 36130 |

                                     s/J. Flynn Mozingo
                                     OF COUNSEL