**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **JOAN FAULK OWENS and** | ) | |
| **KAREN LYNN HUBBARD,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **2:07-cv-650** |
| | ) | |
| **STATE OF ALABAMA DEPT. OF** | ) | |
| **MENTAL HEALTH AND MENTAL** | ) | |
| **RETARDATION, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' BRIEF IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

COME NOW the Defendants, the State of Alabama Department of Mental Health
and Mental Retardation (hereinafter "ADMH"), ADMH Commissioner John Houston
(hereinafter "Houston"), Associate Commissioner for Administration and Personnel Otha
Dillihay (hereinafter "Dillihay"), Personnel Manager IV, Director of Central Office Personnel
Henry Ervin (hereinafter "Ervin"), and Departmental Assistant Personnel Manager Marilyn
Benson (hereinafter "Benson"), and in support of their Motion for Summary Judgment filed
simultaneously herewith, submit this brief with exhibits.

**SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the *Federal Rules of Civil Procedure,* Summary Judgment is
appropriate "if the pleadings, depositions, answers to interrogatories and admissions on
file, together with the affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a Judgment as a matter of law." *Fed.*

R.Civ.P. 56(c). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*)(quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) [(internal quotation marks and citations omitted)].

The party seeking Summary Judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, *Rule* 56(e), "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid Summary Judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a Motion for Summary Judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255

(1986); *McCormick v. City of Fort Lauderdale,* 333 F. 3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant).  After the nonmoving party has responded to the Motion for Summary Judgment, the Court must grant Summary Judgment if there is no genuine issue of material fact and the moving party is entitled to Judgment as a matter of law.  *See Fed.R.Civ.P.* 56(c).

## GENERAL DESCRIPTION OF ALLEGATIONS OF COMPLAINT

This is a reverse race discrimination, disparate treatment case filed by two Caucasian employees of the Alabama Department of Mental Health and Mental Retardation who remain in the same positions they occupied when the alleged discriminatory treatment is said by them to have occurred.  The Complaint also contains certain State common law counts.

The Plaintiffs allege that discriminatory treatment occurred as to them on or about September 15, 2005, when a new job opening announcement was circulated for the first time on a general basis to fill a new position in the Personnel Department at the Central Montgomery Personnel Office.  This position had at one time been used by the Department but had been abolished and, therefore, had to be recreated to fill a need existing at the time of the September 15, 2005 announcement.  Neither Plaintiff has a college degree. The Plaintiffs allege that the "substitution" provision should have been included in the job qualification section of the announcement and that its absence (1) was intentional and malicious and specifically not included to assure that they could not apply for this job because they were the only two potential Caucasian applicants qualified to apply for the

position and (2) the only other person qualified to apply was Marilyn Benson, an African American female who worked with the Plaintiffs in this same office at the same classification. The Plaintiffs contend that this was done to keep an African American person in power in this office after Henry Ervin, the African American Personnel Director, either retired or otherwise left this job.

This job specification, which had been newly created, required a Bachelor's Degree. The substitution provision would have allowed the Plaintiffs herein to substitute a certain amount of job-related experience for and in the place of the Bachelor's Degree requirement.

This general description of the basic allegations in the case is provided for general background only.

## STATEMENT OF UNDISPUTED FACTS
### PARTIES
### (Defendants)

### STATE OF ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION

ADMH is a department or subdivision under the State of Alabama pursuant to § 22-50-2 *Code of Alabama* (1975). This section establishes the ADMH as a department of the state government. ADMH provides services to mentally ill and mentally retarded individuals throughout Alabama through the authority of §22-50-9, *Code of Alabama* (1975) and by way of its Commissioner pursuant to §22-50-16, *Code of Alabama* (1975).

### COMMISSIONER JOHN HOUSTON

Defendant John Houston is a Caucasian male, who served as Acting Commissioner of the ADMH beginning February 1, 2005 by appointment from Governor Bob Riley.

Governor Riley made the appointment regular or "permanent" in August 2005.  At all times since February 1, 2005, Commissioner Houston has served in the role of Commissioner of ADMH pursuant to   §22-50-16 *Code of Alabama* (1975) with all rights and responsibilities set forth therein.  (See Exhibit "10", Letter from Governor Riley appointing John Houston Interim Commissioner).   Prior to his appointment as Interim Commissioner, Commissioner Houston served as the Executive Assistant to the prior Commissioner of the ADMH for approximately ten years.   (See Exhibit "6", Interrogatory Responses of Commissioner John Houston, Resume', last 3 pages).  Commissioner Houston served as Executive Assistant to the Associate Commissioner/Mental Illness Division for approximately three years, as well as the Executive Assistant to the Associate Commissioner/Administrative Division prior to that position.  Additionally, Commissioner Houston served as Director of the Sunbelt Regional Center for the Alabama Institute for Deaf and Blind from 1984 until 1986.   Prior to that, Commissioner Houston was the Director of Student Services at E.H. Gentry Technical Facility for four years.  From 1979 until 1980, Commissioner Houston worked as a Research Associate for CETA Management Coordination Project, which was a federally funded program providing technical assistance to state agencies regarding employment training programs. Commissioner Houston served as the Director of Advocacy Services at Bryce Hospital from 1974 until 1977.  He began his employment as the Coordinator of Advocacy for the Mental Retardation Services of Alabama at the University of Alabama.  Commissioner Houston received his undergraduate degree from Auburn University in 1971 and a Master's Degree in Special Education and Social Work from the University of Alabama.  *Id.*

## OTHA DILLIHAY

Mr. Dillihay is an African-American male who served as Associate Commissioner for Administration and Personnel with the ADMH from June 1, 2004 until July 23, 2005, at which time he became Associate Commissioner of Mental Illness on a temporary basis. (Exhibit "5", Affidavit of June Lynn, p.6, ¶1).  On November 12, 2005, he returned to his former position as Associate Commissioner for Administration and Personnel.  (*Id.*)  In 2007, Mr. Dillihay served as a Program/Policy Analyst Consultant for the Department on Disabilities Services in Washington, D.C.  (Exhibit "7", Interrogatory Responses of Otha Dillihay, Resume', last 4 pages). From 2001 until 2004, he served as Director of the Board of Directors' Palmetto Health Alliance in Columbia, South Carolina.  Prior to that, Mr. Dillihay was the Deputy Director for Administration for the South Carolina Department of Juvenile Justice for four years.  Mr. Dillihay served as the Hospital Administrator of the South Carolina Department of Mental Health for five years.  He was the Director of the Hospital Mortgage Insurance Staff of the U.S. Department of Housing and Urban Development in Washington, D.C. for one year.  Mr. Dillihay served as the Business Manager/Chief Financial Officer of Crafts-Farrow State Hospital in Columbia, South Carolina from 1990 until 1993.  In 1991, he worked at the South Carolina Department of Mental Health as the Executive Assistant to the State Commissioner.  He began his career as a Project Coordinator/Director Continuity of Care at G. Werber Bryan Psychiatric Hospital in Columbia, South Carolina.  Mr. Dillihay received his undergraduate degree from South Carolina State University and a Master's Degree in Business Administration from Webster University.  *(Id.)*   Mr. Dillihay no longer works for the ADMH.  He resigned to

move back to Columbia, South Carolina and is currently employed with Richland One School District as Chief Human Resource Officer. (See Exhibit "11", Deposition of Otha Dillihay, 83:1-24).

## HENRY ERVIN

Mr. Ervin is an African-American male, who currently serves as Personnel Manager IV, Director of Central Office Personnel with ADMH in Montgomery, Alabama and has served in this position on two different occasions. (Exhibit "8", Interrogatory Responses of Henry Ervin, Resume', last 3 pages). His current tenure in this position began in October 1998. Mr. Ervin has served since that time as the direct supervisor to the Plaintiffs, as well as other employees of the ADMH in the Central Personnel Office, including the Defendant, Marilyn Benson. (Exhibit "12", Deposition of Henry Ervin, 265:17-21; 266:1-2 ). He began working as the Associate Director of Hospital Personnel at Ohio State University Hospitals & College of Medicine. (Exhibit "8", Interrogatory Responses of Henry Ervin, Resume', last 3 pages). In 1980, Mr. Ervin served as Director of Personnel and Support Services for ADMH. Then, he was employed as a Hearing Officer for ADMH in Thomasville, Alabama. Mr. Ervin became a Mental Health Family Advocate for ADMH. From 1990 until 1998, he was Director of Human Resource Management. Mr. Ervin received his undergraduate degree from Alabama State University and took a considerable number of courses in Public Administration at Nova Southeastern University. (*Id.*)

## MARILYN BENSON

Ms. Benson is an African-American female, who currently serves as Departmental Assistant Personnel Manager in ADMH Central Personnel. (See Exhibit "9", Interrogatory Responses of Marilyn Benson, Resume', last 3 pages). Ms. Benson began her career as

an Office Manager for Neuropsychiatry Associates and worked there for a little over one year. She began working with ADMH in August of 1983 as a Research Assistant. One year later, Ms. Benson was promoted to ADMH Planning Specialist, where she served for approximately three years. Ms. Benson was again promoted to Personnel Specialist III in December of 1987. She served as a Personnel Specialist III for approximately nineteen years before obtaining her most recent promotion. Ms. Benson was recently selected from among seven applicants to serve as Departmental Assistant Personnel Manager on March 4, 2006. In 1981, Ms. Benson received her undergraduate degree from Auburn University in Health Services Administration and earned her Master's Degree in Public Administration from Auburn University Montgomery in 1987. (*Id.*)

(Plaintiffs)

## JOAN FAULK OWENS

Ms. Owens is a Caucasian female, who began her employment with ADMH in 1990. (Exhibit "13", Deposition of Joan Owens, 69:8). Ms. Owens is a high school graduate, but does not have a degree from a four-year college or university. (Exhibit "14", Employment Application of Joan Owens). Ms. Owens is a Personnel Specialist, III, who performs various tasks in the Central Personnel Office. (Exhibit "13", Deposition of Joan Owens, 5:18). In 1990, Ms. Owens worked in the Personnel Department at Tarwater, which has now been closed. (Exhibit "13", Deposition of Joan Owens, 6:12-15). She also worked at Griel Hospital as Personnel Director from June 1999 to September 1999 at which time she left the position of Personnel Director and again took a job in the Central Personnel Office. (*Id.*)

## KAREN LYNN HUBBARD

Ms. Hubbard is a Caucasian female, who began her employment with ADMH on December 31, 1991 as a Clerk Typist. (Exhibit "15", Deposition of Lynn Hubbard, 16:4). She was then changed to Administrative Support Assistant in Mental Retardation. (Exhibit "15", Deposition of Lynn Hubbard, 16: 9-11). On October 11, 1997, Ms. Hubbard was promoted to Administrative Support Assistant III. Finally, on July 1, 2001, she was promoted to Personnel Specialist III performing various tasks and working in Central Office Personnel. (Exhibit "15", Deposition of Lynn Hubbard, 19:1-2). She is currently working in that same position. Ms. Hubbard is a high school graduate but does not have a degree from a four-year institution. (Exhibit"16", Employment Application of Lynn Hubbard).

## FACTS

In 1965, the Department of Mental Health was created and established as a department of the state government. §22-311 *Code of Alabama* (Supp. 1965). At that time, the governor and thirteen trustees and their successors were appointed to serve as the Mental Health Board. §22-312 *Code of Alabama (*Supp. 1965). This section gave the Mental Health Board control over Alabama state hospitals and Partlow state school and hospital. §22-318 *Code of Alabama* (Supp. 1965).

§22-321 *Code of Alabama* (Supp. 1965) gave the Mental Health Board the power to elect an executive officer, known as the State Mental Health Officer. This position allowed the State Mental Health Officer to appoint all officers and employees of the board and to select with his approval all staff members and employees under the direction of the Mental Health Board. *Id.* Additionally, the employees of ADMH were determined to be

governed under the personnel merit system rules and regulations, as other state employees.  §22-320(20) *Code of Alabama* (Supp. 1965).

In 1984, the Alabama Legislature changed the composition of ADMH to consist of the ADMH Commissioner and divisions and administrative sections as the ADMH Commissioner may direct.  §22-50-2 (1975).   The Governor was granted authority to appoint an ADMH Commissioner to serve at the pleasure of the Governor.  §22-50-16 *Code of Alabama* (1975).  Through this act, the Commissioner was granted the power to "appoint all officers and employees of the department or he may authorize any superintendent, division or bureau head, or other administrator to select with his approval all staff members and employees. . ." *Id.*  The Commissioner has the right to appoint officers and employees "without regard to any limitation established by law, unless such law passed hereafter shall refer to the particular officer or employee." *Id.*  Additionally, ADMH, through its Commissioner, was given the authority "to act in any prudent way to provide mental health services and mental retardation services for the people of Alabama." § 22-50-9(1975).  These statutory provisions give rise to their interpretation.

In 1989, a Job Evaluation Committee was established by the ADMH to make recommendations to the Commissioner concerning the exempt classification and pay structure.  This committee was established only to "<u>make recommendations</u>" to the Commissioner.  The JEC reviews matters regarding:

1.    Revisions to classification specifications;

2.    Establishment of new job classifications;

3.    Salary range adjustments in assigned classifications;

      4.      Substitution of training and experience for established minimum qualification requirements.   (Exhibit "17", Functions of JEC, pp.1,2 and Exhibit "5", Affidavit of June Lynn, attachment (5)).

The members of this Committee consisted of the following:

      1.      Henry Ervin, African-American male, Director, Bureau of Human Resources;

      2.      Otha Dillihay, African-American male, Associate Commissioner of the Division of Administration;

      3.      Susan Chambers, Caucasian female, Associate Commissioner of the Division of Mental Illness;

      4.      Eranell Wilson, African-American female, Associate Commissioner of the Division of Mental Retardation;

      5.      Kent Hunt, Caucasian male, Associate Commissioner of the Division of Substance Abuse;

      6.      John Zeigler, Caucasian male, Director of Public Information;

      7.      Paul Bisbee, Caucasian male, Director of Mental Illness Facilities;

      8.      Judith Johnston, Caucasian female, Director of Mental Retardation Facilities. (See Exhibit "18", July 22, 2005 JEC minutes and Exhibit "5", Affidavit of June Lynn, attachment (4)).

Plaintiffs Owens and Hubbard, as well as Defendant, Ms. Benson were employed as Personnel Specialist III in the Central Personnel Office. The duties of this position set forth in the job specification included:

      •      Supervises and coordinates recruitment, selection, and placement of personnel;

Page 11 of  45

- Supervises and coordinates the processing of various personnel actions to include appointments, demotions, promotions, reclassifications, retirements, transfers, reallocations, and pre-disciplinary hearings;

- Provide technical assistance to department heads/facility directors, associate commissioners, the commissioner and/or HR director regarding various HR related matters;

- Announces vacancies and determines if experience and education indicated on applicants meets minimum qualifications;

- Confers with supervisors, managers, and other professionals in developing policies, programs, and procedures for effective coordination of HR services;

- Schedules and conducts interviews of candidates;

- Confers with state personnel, other agencies within or out of state regarding activities as they relate to HR;

- Represent HR and serve on various committees as assigned. (Exhibit "19", Job Specification of Personnel Specialist III).

However, these specification duties are general statements and the Director of Personnel can assign specific duties generally within these categories to different Personnel Specialist IIIs. (Exhibit "12", Deposition of Henry Ervin, 37:1-23; 38:1-23: 39:1-18). Also, a spec can be modified to some extent when a job is announced to reflect the duties of the position being filled as long as the modifications are not too significant. (Exhibit "12",

Deposition of Ervin, 37:1-23).  Most of the specifications involved in this position require clerical duties.

When Otha Dillihay began his employment as Associate Commissioner for Administration and Personnel for ADMH in 2004, he believed the makeup and organization of the Central Personnel Office was lacking because of it not having the proper people trained in authority in times of emergencies or when Ervin was not present.  (Exhibit "11" Deposition of Otha Dillihay, 135:3-9).  Further, Mr. Dillihay researched the department's employees and realized that a large percentage of its employees were eligible for retirement.  (Exhibit "11", Deposition of Otha Dillihay, 135:10-19) One particular employee who was eligible to retire was Henry Ervin, the Personnel Manager IV, Director of Central Office Personnel with ADMH.  (Exhibit "11", Deposition of Otha Dillihay, 135:16-25; 136:103).  Mr. Dillihay believed by creating the position of Departmental Assistant Personnel Manager, he could "lay the groundwork for the efficient and continual management of personnel functions in the event  Mr. Ervin retired" until a permanent replacement could be found.    (Exhibit "11", Deposition of Otha Dillihay, 136:6-7).

Mr. Dillihay and Mr. Ervin discussed the general structure and efficiency of the Personnel Department.  Mr. Ervin worked on the creation of the Departmental Assistant Personnel Manager position in conjunction with these many discussions. (Exhibit "11", Deposition of Otha Dillihay, 143:1-25, 144:1-25; 145:1-5).  Since there was not an existing classification for this position, the class specification was sent to the State Personnel Department on February 3, 2005.  (Exhibit "20", February 17, 2005 letter from ADMH ).  The State Personnel Office accepted this position on February 17, 2005. (*Id.*)  Mr. Dillihay

and Commissioner Houston filled a request to fill this exempt position with the State Finance Director. (Exhibit "27", Request to Fill Exempt Position on Staffing Plan).

On June 14, 2005, Mr. Ervin prepared a memorandum to Commissioner Houston formalizing a request for permission to fill the Departmental Assistant Personnel Manager position.  A Wage and Classification Study proposal was also formalized in this memo. (Exhibit "21", June 14, 2005 Memorandum). In this memo, with regard to the wage and classification study, the following was stated by Mr. Ervin:

> "The current antiquated structure has been in place for the past twenty years and has far out lived it's ability to provide the necessary equity and consistency that our pay and classification system needs.  This is also an opportunity for us to completely over-haul existing class specifications." *Id.*

Further, Mr. Ervin demonstrates the fact that these matters had been previously discussed in the last line of the June 14, 2005 memo, as follows: "Let us know if you have additional questions or concerns."  *Id.*

The Job Evaluation Committee held a meeting on July 22, 2005.  The following members were present for this meeting: Henry Ervin, Kent Hunt, John Ziegler, Judith Johnston, Eranell Wilson, and June Lynn.  (Exhibit "18", Minutes of the July 22, 2005 JEC Meeting).  At that meeting, the JEC approved the position of Departmental Assistant Personnel Manager for recommendation to the Commissioner, an act that was actually unnecessary since the Commissioner had already approved the position.  However, the Committee agreed to delay posting this announcement until the beginning of the fiscal year.  (*Id.*)  Further, although Commissioner Houston's deposition testimony has not been

received from the Court Reporter yet (taken on 6/26), and this will have to be provided by supplementation when the transcript is received, the Commissioner testified that he would not have approved this position with a substitution provision and that it requires a Bachelor's Degree.

June Lynn, who had previously served as the Executive Assistant and Advisory Attorney to the Associate Commissioner for Administration at ADMH, assumed Mr. Dillihay's position when he transferred to Associate Commissioner of Mental Illness. (*Id.*) Ms. Lynn, a Caucasian, served in this position until November 12, 2005, when Mr. Dillihay re-assumed his previous position. (Exhibit "5," Affidavit of June Lynn, pp. 1-2, ¶1).

During Ms. Lynn's tenure as Acting Associate Commissioner, ADMH began to investigate the best alternative for conducting a wage and classification study. (Exhibit "5", Affidavit of June Lynn, p.3, ¶ 1). The last wage and classification study was performed in 1985. The 1985 study permitted substitution for some, but not all classifications. "Substitution" is the allowance of experience of a certain type and specified time as an alternative to meeting specified educational qualifications. ADMH used to permit one year of job-related experience to be substituted for one year of college. However, this was changed to permit two years of job-related experience to be substituted for one year of college. Mr. Dillihay expressed his concern about the year for year substitution. (*Id.*) On May 4, 2005, the Job Evaluation Committee adopted the two for one substitution allowance, where two years of job-related experience was substituted for one year of college. (Exhibit "22", Minutes of the May 4, 2005 JEC Meeting and Exhibit "5", Affidavit of June Lynn, attachment (1)).

ADMH met with Auburn University at Montgomery (AUM) to inquire about their services to conduct a wage and classification study. (Exhibit "5", Affidavit of June Lynn, p.4, ¶ 1). ADMH believed AUM gave them a high quote to conduct the study. (*Id.*) In an effort to lower its expenses, ADMH advertised a Request for Proposal to obtain this study. ADMH selected the Segal Group to conduct the wage and classification study. (*Id.* at p.4, ¶ 1). A contract for this study was executed between the parties on February 1, 2007. (*Id.* at p. 5, ¶5). The Segal Group presented its final report to ADMH in November 2007. To date, the Commissioner has continued to analyze the findings from the wage and classification study. According to Ms. Lynn, the new specifications will be released individually, as necessary, once the Commissioner has had an opportunity to study the new specifications and their impact. (*Id.*)

 During her time in this position, Ms. Lynn examined and approved the specification for the Departmental Assistant Personnel Manager. (Exhibit "5", Affidavit of June Lynn, p. 2, ¶1). Ms. Lynn agreed with the requirement of a Bachelor's Degree for the Departmental Assistant Personnel Manager position without any substitution. (*Id.*). Further, Susan Chambers, a Caucasian female who served as the Associate Commissioner for Mental Illness for ADMH, agrees this position should require a Bachelor's Degree. (Exhibit "2 ", Affidavit of Susan Chambers, p.3).

Commissioner Houston reviewed a copy of the specification and approved the position with the requirement of a Bachelor's Degree. (Exhibit "5", Affidavit of June Lynn, p.7, ¶3). Additionally, Commissioner Houston preferred to require that a person applying for this position possess a Master's Degree, but permitted a Bachelor's Degree only, without substitution. (*Id.*)

On September 15, 2005, an announcement was sent out for the position of Departmental Assistant Personnel Manager. (Exhibit "23", September 15, 2005 Announcement of Assistant Departmental Personnel Manager). Among the qualifications listed in this announcement were:

Bachelor's degree in Human Resource Management/Personnel Management, Business Administration, Public Administration, or related field. Extensive experience (72 months or more) working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity. Preference will be given to individuals with:

- Master's Degree in any of the above specified fields of study.

- Work experience in the governmental/public sector.

- Work experience in a healthcare setting.

Additionally, the job description for the Departmental Assistant Personnel Manager included:

- Plans, organizes, develops, coordinates, and implements a comprehensive personnel management program;

- Coordinates efforts to include various personnel functions, such as recruitment, selection, job placement, position classification, employee training, performance appraisals, and affirmative action;

- Maintains on-going classification and pay information from governmental agencies and the private sector;

- Consults with the Department of Human Resources, other department heads, administrators, supervisors and employees on rules,

regulations, and provides recommendations concerning such matters as performance evaluations, promotions, demotions, transfers and dismissals;

•     Conducts and/or attends staff meetings, state personnel meetings, or personnel officer meetings;

•     Gathers information and prepares budget for Central Office Personnel Division and monitors expenditures;

•     Coordinates various supervisory training for Departmental Personnel Officers and makes oral presentations as needed;

•     Supervises clerical and para-professional staff and conducts annual performance evaluations.  (*Id.*)

The job specifications for this position were approved by the Commissioner. (Exhibit "5", Affidavit of June Lynn, p.8, ¶ 12).  His testimony demonstrated that he had confidence in the selection process.  Commissioner Houston did speak with Lynn Hubbard concerning the job specification, but testified that the process was completely independent and objective.  Mike Mathis, a white male who is the Personnel Director at Partlow, received and graded the applications.  (Exhibit "1", Affidavit of Mike Mathis, p. 1 &2, ¶1&2).   There were two announcements of this job.  (Exhibit "4", Affidavit of Becky Burell, p.1&2, ¶1&2). The second announcement and an ad in the Tuscaloosa News were required after Ms. Benson had already applied.  (Exhibit "3", Affidavit of Betty Beck, p. 1, ¶ 1 and attachment). She applied in the first round on September 29, 2005, before the September 30, 2005 closing.  (Exhibit "30", Application of Marilyn Benson).

Shortly after this announcement was made, Plaintiff Owens informed Ms. Lynn that she intended to apply for the position.  (Exhibit "5", Affidavit of June Lynn, p. 8, ¶ 12).  Ms. Lynn told Ms. Owens she could not apply for the position since she did not have a four-year degree at a college or university.  Ms. Owens requested that a substitution provision be added to the announcement and Ms. Lynn told her that she could not add a substitution provision and that she agreed that the position required a Bachelor's Degree. (*Id.*)

In an effort to avoid any conflicts within the Central Office, Henry Ervin  had all applications sent to Mike Mathis, the Personnel Director at W.D. Partlow Developmental Center.  (Exhibit "1", Affidavit of Mike Mathis, p.2, ¶3 and attachments).  Becky Burell, a Caucasian female and Personnel Specialist II at the Central Personnel Office, sent out the first announcement for this position to all State facilities of the ADMH, as well as placing the position on the ADMH website.  (Exhibit "4", Affidavit of Becky Burell, p.1, ¶1-2 and attachments). Mr. Mathis, a Caucasian male, received five applications for the position on or before September 30, 2005.  (Exhibit "1",Affidavit of Mike Mathis "" p.2, ¶ 4 and attachments).  The following applicants were graded by Mr. Mathis:

1.    Marilyn Benson (an African-American female from Montgomery, Alabama);

2.    Commie Carter (an African-American female from Montgomery, Alabama);

3.    Danielle Coteat (an African-American female from Birmingham, Alabama);

4.    Tracey Bailey (a Caucasian female from Moundville, Alabama);

5.    Jessica Eiland (a Caucasian female from Brantley, Alabama).

Mr. Mathis graded these applications and forwarded the results in an email to Commissioner Houston.  (Exhibit "29", Mathis E-mail to Commissioner Houston and Exhibit

"1", Affidavit of Mike Mathis, attachment).  In regards to Mr. Mathis' role in grading the applications, Ms. Owens testified as follows:

Q.      Do you believe Mike Mathis is a good personnel director?

A.      Yes.

Q.      Do you believe he's qualified to grade applications for a job of this type?

A.      Yes.

Q.      Do you believe that he would honestly evaluate the applications for the job once they were received by him?

A.      Yes.  I'm not contending that the interview process was not done correctly. What I am contending, I was denied the opportunity to even apply, sir. (Exhibit "13", Deposition of June Owens, 67:2-18).

In order to obtain more applicants, a second announcement was sent and an ad was placed in the Tuscaloosa News. (Exhibit "3", Affidavit of Betty Beck, p.1, ¶1 and attachment)  Ms. Burell is unsure as to whether she is the person who sent this second announcement.  (Exhibit "4", Affidavit of Becky Burell, p.2, ¶ 2).  Betty Beck, a Caucasian female who worked under Mike Mathis at Partlow, was asked to place an advertisement in the classified section of the Tuscaloosa News.  (Exhibit "3", Affidavit of Betty Beck and attachment).  She placed this advertisement to run on October 23, 2005.  However, this advertisement was unable to run on that date due to a financial problem.  Exhibit "3", Affidavit of Betty Beck, pp. 1-2; ¶1).  Once this problem was corrected, the advertisement ran again.    (*Id.* at p.2)  Mr. Mathis obtained two additional applications from this subsequent announcement and ad.  These applicants were:

1.      Chadwick Bivins (an African-American male from Montgomery, Alabama);

2.      Arylin Jenkins (an African-American female from Tuscaloosa, Alabama).

Once again, Mr. Mathis graded the applications.  He forwarded them, with his grading sheet, to ADMH.  Three applicants, Ms. Benson, Ms. Carter, and Ms. Coteat, all African-Americans, qualified and more interviewed for this position.  (Exhibit "1", Affidavit of Mike Mathis, p. 3, ¶5.)  A five-person interview panel conducted the interview process for the Departmental Assistant Personnel Manager.  (Exhibit "2", Affidavit of Susan Chambers, p.1, ¶3).  The interview panel consisted of:

1.    Eranelle Wilson, African-American female, Associate Commissioner for Mental Retardation;

2.    Kent Hunt, Caucasian male, Associate Commissioner for Substance Abuse;

3.    Doug Lunsford, Caucasian male, Employee of the State Personnel Department; (Mr. Lunsford was not employed by ADMH, but instead, was independent of ADMH.)

4.    David Bennett, African-American male, Associate Commissioner for Administration and Personnel;

5.    Susan Chambers, Caucasian female, Associate Commissioner for Mental Illness.

The applicants were graded by each member of the interview panel.  (Exhibit "24", Assessment for Departmental Assistant Personnel Manager and Exhibit "2", Affidavit of Susan Chambers, attachment).  Defendant Benson received the highest score from every panel member. (*Id.*)  As a result, Commissioner Houston hired Ms. Benson as Departmental Assistant Personnel Manager on March 3, 2006.  (Exhibit "25", Appointment letter.)

On March 3, 2006, the same day Ms. Benson was hired, Plaintiffs filed their charge of discrimination with EEOC. (Exhibit "31", EEOC Initial Charge, pp. 1-2.)

## ARGUMENT

### PLAINTIFFS FAIL TO STATE A CLAIM AS A MATTER OF LAW FOR RACIAL DISCRIMINATION UNDER TITLE VII, § 1981 AND THE FOURTEENTH AMENDMENT.

"When §1981 is used as a remedy for employment discrimination, the elements required to establish a claim are the same as those required for a claim under Title VII of the Civil Rights Act of 1964. *Riley v. Emory University*, 136 Fed. Appx. 264, 266 (Ga. 2005), *Howard v. B.P. Oil Co.*, 32 F.3d 520, 524 (11th Cir. 1994). A violation of the Fourteenth Amendment, which is enforceable pursuant to 42 U.S.C. §1983, consists of the deprivation of a right or privilege secured by the Constitution or laws of the United States by a person acting under state law. *Douglas v. Evans*, 888 F. Supp. 1536, 1542 (M.D. Ala. 1995). The burden of proof and elements for each prima facie case are the same for all three claims. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). The 11th Circuit in *Bass v. Board of County Com'rs., Orange County Florida*, 256 F.3d 1095 (11th Cir. 2001), provided the framework through which to examine Title VII reverse discrimination claims. The Court found "discrimination is discrimination no matter what the race, color, religion, sex, or national origin of the victim." *Id.* at 1103; *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280 (1976). Additionally, the Court stated that Bass' Title VII reverse discrimination claim would be analyzed as any other discrimination claim. *Bass* at 1103.

Title VII claims against a state official in his or her official capacity are redundant. *See Blackledge v. Ala. Dep't. Of Mental Health & Mental Retardation*, 2007 WL 3124452 (M.D. Ala. Oct. 25, 2007), *Willis v. Ga. Dep't. Of Natural Resources*, 2007 WL 2908458 (M.D. Ga. Sept. 29, 2007). "Suits against an official in his or her official capacity are suits against the entity the individual represents." *Bennett v. Chatam County Sherif's Dep't.*, 2008 WL 628908 (S.D. Ga. 2008). As a result, the Title VII claims, as well as the 1981 and 1983 claims, should be dismissed against Commissioner John Houston, Otha Dillihay, Henry Ervin, and Marilyn Benson in their official capacities.

Further, the Eleventh Circuit has previously held that "[i]ndividual capacity suits under Title VII are ... inappropriate. *Busby v. City of Orlando*, 931 F. 2d 764 (11th Cir. 1991). The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." *Braden v. PigglyWiggly*, 4 F. Supp. 2d 1357, 1364 (M.D. Ala. 1998), quoting *Busby v. City of Orlando*, 931 F. 2d 764, 772 (11 th Cir. 1991). Therefore, the Title VII claims and the 1981 claims should be dismissed against Commissioner Houston, Mr. Dillihay, Mr. Ervin, and Ms. Benson in their individual capacities.

Title VII, specifically, 42 U.S.C.A. §§ 2000e-2(a)(1) provides, in part, as follows: "It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." To prove discrimination, a plaintiff must establish a prima-facie case of . . .disparate treatment . . . Establishing a prima-facie case "creates a presumption that the employer unlawfully discriminated against the employee." *Tex.*

*Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). The employee may meet this burden by persuading the fact finder either *directly* that a discriminatory reason more than likely motivated the employer or *indirectly* (circumstantially) that the proffered reason for the employment decision is not worthy of belief. *Id.* at 256.

Direct evidence consists of statements by a person with control over the employment decision "sufficient to prove discrimination without inference or presumption." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993). To constitute direct evidence, the statements must reflect a "discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee," *Caban-Wheeler v. Elsea,* 904 F.2d 1549, 1555 (11th Cir. 1990), and made "by a person involved in the challenged decision." *Trotter v. Bd. of Trustees of Univ. of Ala.*, 91 F.3d 1449, 1453-54 (11th Cir. 1996). Direct evidence does not consist of statements that "only suggest discrimination" or "is subject to more than one interpretation." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189-90 (11th Cir. 1997). *See Carter vs. Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989) ("[O]nly the most blatant remarks, whose intent would be nothing other than to discriminate constitute direct evidence of discrimination."). Stray remarks and statements by non-decision makers or statements by decision makers unrelated to the decision making process itself are not direct evidence of discrimination. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J. concurring).

If the plaintiff makes an adequate showing of direct evidence of discrimination, the burden of proof then shifts to the employer to prove by a preponderance of the evidence

that it would have made the same employment decision absent any discriminatory intent. *Wall v. Trust Co.,* 946 F.2d 805, 809-10 (11th Cir. 1991). **[Commissioner Houston testified he would not have hired a person who did not have a Degree and would not have used substitution.  The qualification had nothing to do with the Plaintiffs.]**

Direct evidence, when used in the context of discrimination claims, does not refer to whether evidence is direct or circumstantial in the ordinary evidentiary sense in which we normally think of those terms. Instead, direct evidence refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination. *Bass v. Board of County Comm'rs.* 256 F.3d 1095 (11th Cir. 2001).  Before a statement can be considered direct evidence of discrimination, it must be made by a person involved in the challenged decision.  *Trotter v. Bd. of Trustees of Univ. Ala.,* 91 F.3d 1449, 1453-54 (11th Cir. 1996).

Circumstantial evidence may be demonstrated through the framework established by the United States Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 801-05 (1973) and *Tex. Dep't. of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Under the *McDonnell Douglas* standard, the plaintiff has the initial burden of establishing a prima facie case of discrimination.[1] *Id.* at 411 U.S. at 802; *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 & n.6;  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir.1997), *cert. denied*, 522 U.S. 1045, 118 S.Ct. 685 (1997).  "Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence."

---

[1]  *See Anderson v. Twitchell-A Tyco Int'l Ltd.,* 76 F. Supp. 2d 1279, 1287 n. 9 (M.D. Ala.1999); *Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1180 (7th Cir.1997).

*Mathis v. Wachovia Bank, formerly known as Southtrust*, 509 F. Supp. 2d 1125, 1132 (N.D. Fla. 2007), quoting *E.E.O.C. v. Joe's Stone Crab*, 220 F. 3d 1263, 1286 (11th Cir. 2000). To prove a prima facie case of disparate treatment, a plaintiff must show: 1) she is a member of a protected class; 2) she was qualified for the job; 3) she suffered an adverse employment action; and 4) she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class. *Id.*

With regard to the above-numbered elements, please note: 2) In this case, the Plaintiffs were not qualified based upon the Commissioner's requirement of a Degree; 3) There was no adverse employment action because the Plaintiffs neither could nor did qualify for the job; 4) The Plaintiffs were not replaced at all. They hold the same job. Further, this job was applied for by two Caucasians, both of whom had college degrees and the announcements and the ad were such that any number of Caucasians could have applied if they had chosen to do so. Additionally, the Plaintiffs and Ms. Benson are not similarly situated in that (a) Ms. Benson has the longest tenure in Central Office Personnel and (b) Ms. Benson has both a Bachelor's and a Master's Degree in the required areas.

In order to establish a prima facie case, a plaintiff must present "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion...." *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312 (1996) (quoting *Int'l. Bhd. of Teamsters v. U.S.,* 431 U.S. 324, 358 (1977)). If the plaintiff successfully establishes a prima facie case, a legal presumption of unlawful discrimination arises and the burden shifts to the employer to articulate a legitimate, nondiscriminatory

reason for the challenged employment action.   *McDonnell Douglas*, 411 U.S. at 802;

*Burdine*, 450 U.S. at 254; *Combs*, 106 F.3d at 1528.

"To satisfy that burden of production, '[t]he defendant need not persuade the court

that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's

evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'"

*Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 254-55, 101 S.C.t at 1094).  The

burden on the employer is of production not persuasion, and is easily satisfied.  *Howard*

*v. B.P. Oil Co.*, 32 F.3d 520, 524 (11th Cir. 1994).  This intermediate burden is "exceedingly

light."  *Turnes v. AmSouth Bank, N.A.*, 36 F. 3d 1057, 1061 (11th Cir. 1994).

If the employer meets the burden of production, "[t]he presumption, having fulfilled

its role of forcing the defendant to come forward with some response, simply drops out of

the picture."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993);  *see also*

*Burdine*, 450 U.S. at 255 & n.10.  Still, the elements of the prima facie case remain.

*Combs*, 106 F.3d at 1528.  If the employer meets its burden of producing legitimate

nondiscriminatory reasons, the plaintiff must come forward with specific evidence

demonstrating that the employer's actions were chosen to purposefully discriminate against

the plaintiff.[2]  *Trotter v. Bd. of Trustees of Univ. of Ala.*, 91 F.3d 1449, 1453-54 (11th Cir.

1996).  The United States Supreme Court has stated exactly what a plaintiff must prove:

> "Discriminatory purpose ... implies more than intent as volition
> or intent as awareness of consequences.  It implies that the

---

[2]  If the employee does not offer sufficient evidence showing that each and
every proffered reason is pretextual, then summary judgment is mandatory. *See*
*Chapman v. AI Transp.*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc) (citing
*Combs*, 106 F.3d at 1543).

> decision-maker ... selected or reaffirmed a particular course of
> action at least in part because of, not merely in spite of, its
> adverse effects upon an identifiable group."

*Personnel Adm'r. v. Feeney*, 442 U. S. 256, 279 (1979).  The plaintiff may do this (1) by

showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by

showing that, in light of all of the evidence, discriminatory reasons more likely motivated

the decision than the proffered reasons.  *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371,

1376 (11th Cir. 1996) (quoting *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256

(1981)).

    If the employer produces sufficient evidence that it took the employment action for

one or more legitimate, non-discriminatory reasons, then the presumption of discrimination

drops from the case, and the burden shifts back to the plaintiff to discredit the proffered

non-discriminatory reasons by showing that the reasons were merely a pretext for unlawful

discrimination.  *See McDonell Douglas,* 411 U.S. at 802-05. In evaluating whether the

reasons provided by the defendant are pretextual, the Eleventh Circuit has stated that "our

precedent. . .requires a strong showing of a disparity in qualifications in order for an

inference of discrimination to arise.  *Denney v. City of Albany*, 247 F. 3d 1172, 1187 (11th

Cir. 2001).  "A plaintiff, however, only will be successful in establishing pretext if the

"disparities in qualifications [are] of such weight and significance that no reasonable

person, in the exercise of impartial judgment, could have chosen the candidate selected

over the plaintiff for the job in question."  *Puckett v. McPhillips Shinbaum*, 2008 WL 906569

(M.D. Ala. 2008), quoting *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006).

Of course, Ms. Benson, with more experience and a much better educational background, is clearly the better candidate. The Plaintiffs appear to say that because the wages and classification study is not finalized by way of the approval of the Commissioner, that the performance of such a study was either never intended or not significant. However, as shown by the affidavit of June Lynn, the wage and classification study went forward expeditiously, but hit a roadblock because of the initial price given to perform the study by Auburn University in Montgomery. For this reason, a Request for Proposal was necessary and the development and advertising of this Request took a great deal of time. After the advertisement of the Request, a number of proposals were provided to the ADMH which had to be analyzed. A contract was signed and the study went forward. The final report was provided to ADMH in November 2007. Meetings and additional analyses and discussions have taken place.

A specification or announcement for Mr. Ervin's position as Personnel Director has been released so this position can be filled and ADMH will release other specifications and, perhaps, all of them soon or as prudent and necessary (Exhibit "5", Affidavit of June Lynn, attachment (3)). Nevertheless, it is not the fault of or delay by ADMH that has caused the wage and classification study finalization to be delayed.

Commissioner Houston testified (and his testimony will be provided as soon as received) that he approved the qualifications in the announcement and the specification and would not have approved a substitution provision. The new wage and class study will allow ADMH to modernize and bring job qualifications to a level that is more consistent with the educational opportunities and realities of the day.

**A. Plaintiffs do not meet the minimum qualifications for the position of Departmental Assistant Personnel Manager.**

Plaintiffs fail to make an adequate showing of direct evidence of disparate treatment. In their Complaint, Plaintiff Owens alleges she approached June Lynn, who at the time was Acting Associate Commissioner for Administration and Personnel, and announced to Ms. Lynn that she intended to apply for the Departmental Assistant Personnel Manager. Ms. Lynn responded that the position required a Bachelor's Degree and contained no substitution provision. After Ms. Owens asked for a substitution provision in the announcement, Ms. Lynn responded that she could not and would not put one in and that she agreed with the Bachelor Degree minimum requirement. Following her conversation with Ms. Lynn, Ms. Owens spoke with Mr. Ervin regarding the newly created position. Ms. Owens stated that Mr. Ervin told her that he would not provide a substitution provision for them.

Plaintiffs are unable to show that they have ever heard any statements that reflect a discriminatory attitude by the ADMH. Additionally, they have not heard statements made by any person involved in the decision making process that were derogatory towards Caucasians. Instead, Ms. Owens' encounters with Ms. Lynn and Mr. Ervin merely suggest that they refused to permit a substitution provision in the announcement for the Departmental Assistant Personnel Manager position. Plaintiffs fail to show any direct evidence of racial discrimination in this case.

Using circumstantial evidence, based on the suggestion of Mr. Dillihay, ADMH decided to create a new position to assist Mr. Ervin, the Director of Central Office Personnel, and to otherwise serve Mr. Dillihay's purposes as set forth on pages 134

through 137 to the Deposition of Otha Dillihay.  Mr. Ervin prepared the job specification for this new position.  Mr. Ervin forwarded a copy of the job specification to the State Personnel Department.  Jackie Graham, the State Personnel Director, accepted the creation of this position.  (See Exhibit "26", February 3, 2005, memo from Ervin to Graham.)

On July 22, 2005, the Job Evaluation Committee approved the position for recommendation to the Commissioner to be announced at the beginning of the next fiscal year.  (See Exhibit "18", July 22, 2005, JEC minutes and Exhibit "5", Affidavit of June Lynn, attachment (4), pp. 1-3).

Commissioner Houston, pursuant to §22-50-9, §22-50-16, and §22-50-41, *Code of Alabama* (1975), reviewed the job specification and approved this position with the educational requirement and without any substitution provision.

In *Alford v. City of Montgomery*, 879 F. Supp 1143 (M.D. Ala. 1995), this Court found that the distinction between Center Director Level II and Center Director Level III prevented the claimant from being qualified.  If one cannot meet the requirements of the job, they are not qualified.  Furthermore, in *Alford*, the Court found that because the plaintiff in that case was not qualified and thus not considered for the job, she could not have been discriminated against.  *Supra*.

This job requires an individual with a Bachelor's Degree from a four-year college or university.  The Plaintiffs admitted they have never attended a university.  Using the reasoning previously stated in *Alford,* the Plaintiffs could not have been discriminated

against since they did not meet the minimum qualifications of the position. Therefore, Plaintiffs fail to prove a prima facie case of disparate treatment.

**B.    Joan Owens and Karen Hubbard were not similarly situated to Marilyn Benson.**

Prior to her employment with ADMH, Joan Owens worked as a Personnel Director of Elmore Community Hospital. She began with ADMH in 1990 as a Personnel Specialist. Then, she worked as a Personnel Director at Greil Hospital for six months and Susan Chambers, the former Administrator of Griel, in her affidavit testified that Ms. Owens could not perform the job adequately. (See Exhibit "2", Affidavit of Susan Chambers, pp. 2-3, ¶3). She was employed as a Personnel Specialist III in the Central Office. Ms. Owens never obtained a Bachelor's Degree from a four-year college or university.

Karen Hubbard began with ADMH in 1991 as a Clerk Typist in the Mental Retardation division. She was then transferred to the Central Personnel Office to work as clerical support to the Personnel Specialist. Then, she was promoted to Administrative Support Assistant III. In 2001, Ms. Hubbard obtained another promotion to serve as Personnel Specialist III. She has been in her current position for approximately seven years. Ms. Hubbard did not obtain a Bachelor's Degree from a four-year college or university.

Marilyn Benson graduated from Auburn University in 1981 with a Bachelor's Degree in Health Services Administration. She began her employment as an Officer Manager at Neuropsychiatry Associates in Montgomery, Alabama. Ms. Benson started working with ADMH in 1983 as a Research Assistant. In 1984, she served as a Planning Specialist for the department. In her positions as Research Assistant and Planning Specialist, Ms.

Benson worked directly with facilities. Ms. Benson was promoted to Personnel Specialist in 1987 and occupied that position until her most recent promotion in 2006. Currently, Ms. Benson is employed as the Departmental Assistant Personnel Manager.

Several factors indicate the Plaintiffs are not similarly situated to Ms. Benson. First, Ms. Benson has a Bachelor's Degree, as well as a Master's Degree. Neither Ms. Owens, nor Ms. Hubbard obtained a Bachelor's Degree. Therefore, the Plaintiffs lack the educational background of Ms. Benson.

Next, Ms. Benson began working with ADMH in 1983 as a Research Assistant. She has been employed as a Planning Specialist and Personnel Specialist during her time with ADMH. Ms. Owens began her employment with ADMH in 1990, seven years after Ms. Benson's date of hire. She has worked as a Personnel Specialist and Personnel Director at Greil Hospital and Assistant Personnel Director at Tarwater.

Susan Chambers, who supervised Ms. Owens at Greil Hospital described Ms. Owens as a task-oriented worker who was proficient in accomplishing tasks that were given to her to perform. (Exhibit "2," Affidavit of Susan Chambers, pp. 2-3, ¶3). However, Ms. Chambers further stated Ms. Owens did not know how to deal with merit registers or payroll. Further, she lacked the knowledge, experience or ability to serve as a manager who was capable of planning and being creative and imaginative in the management role. These observations from her previous supervisor show Ms. Owens was not a qualified candidate for the Departmental Assistant Personnel Manager for additional reasons other than her educational experience. (*Id.*)

Next, Ms. Benson was employed as a Personnel Specialist III for approximately eighteen years. By comparison, Ms. Owens has only served in this capacity for approximately seven years and Ms. Hubbard had been employed in this position for approximately four years at the time the Departmental Assistant Personnel Manager position was announced. Ms. Benson had a greater amount of experience than the Plaintiffs and a much greater amount of education.

## C.    ADMH had a legitimate, non-discriminatory reason for not hiring the plaintiffs as Departmental Assistant Personnel Manager.

Even if the Court were to find that the Plaintiffs have proven a prima facie case of discrimination, the Defendants have met their burden of producing non-discriminatory reasons for requiring the qualifications which happened to rule out these Plaintiffs as candidates.

The sole reason the Plaintiffs were not hired by ADMH is because they failed to qualify for the Departmental Assistant Personnel Manager position due to their lack of educational requirements. This newly created position was classified as an upper level management position. Due to this high level position, Commissioner Houston, within his authority as Commissioner, approved this position to require a four-year Bachelor's Degree from a college or university without any substitution provision and approved a wage and class study to move forward so classification qualifications could be brought current. Plaintiffs were unable to apply for this position. Seven applicants applied for the position. Of the seven applicants, two African-Americans and two Caucasians failed to meet the minimum qualifications for Departmental Assistant Personnel Manager. Three African-Americans who met the minimum qualifications for the position were interviewed.

Defendant Marilyn Benson, who scored the highest from the interview panel, was hired as Departmental Assistant Personnel Manager. After ADMH posted two separate announcements, as well as placing an advertisement in a newspaper, it is difficult to understand how anyone could prove a prima facie case of discrimination or an intent to discriminate with the broad array of applicants who responded to either the advertisement or the announcements. Many qualified people were allowed the opportunity to compete for this job.

In addition, Ms. Benson was far more qualified than the Plaintiffs. Ms. Benson not only had a Bachelor's Degree, she also obtained a Master's Degree in Public Administration. Ms. Benson was employed with ADMH since 1983, seven years prior to Ms. Owens' hiring and eight years before Ms. Hubbard was hired. Further, Ms. Benson had been employed in her position as a Personnel Specialist since 1987, well before the Plaintiffs were hired in this position. As a result of these differences, Ms. Benson was far more qualified for this position than the Plaintiffs.

As the Defendants have met their burden of producing a non- discriminatory reason for not hiring the Plaintiffs, the Plaintiffs must show this reason is simply a pretext to cover up the discrimination. As such, the Plaintiffs cannot meet this burden.

## THE STATE OF ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION, AN AGENCY OF THE STATE OF ALABAMA, IS PROTECTED FROM SUIT BY ABSOLUTE OR SOVEREIGN IMMUNITY

"The Eleventh Amendment bars suits directly against a State or its agencies, regardless of the relief sought." *Blackledge v. Ala. Dep't. Of Mental Health & Mental Retardation*, 2007 WL 3124452, (M.D. Ala.). ADMH is a department managed and

operated under the State of Alabama pursuant to §22-50-2 *Code of Alabama* (1975) through §22-50-42, *Code of Alabama* (1975).   ADMH is entitled to absolute immunity under Alabama law*, Blackledge v. Ala. Dep't. Of Mental Health & Mental Retardation*, 2007 WL 3124452, (M.D. Ala.); *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Pennehurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984).

Article I, Section 14, of the Alabama Constitution of 1901 provides that, "the State of Alabama shall never be made a defendant in any court of law or equity."  The Alabama Supreme Court has recognized that, "the wall of immunity erected by Section 14 is nearly impregnable and bars (1) claims against the State, (2) claims against a State agency, (3) claims against a State official or employee sued in his official capacity as agent for the State, and (4) claims against a State official or employee sued in his individual capacity." *Ex Parte Davis,* 930 So. 2d 497, 500 (Ala. 2005).  These four categories of application of Section 14, however, are stated quite broadly and require further explanation.  There is no doubt that the State of Alabama is absolutely immune from suit for any theory of action in tort or contract under State law.  There are four categories of matters, however, that have historically been listed as areas where the State is subject to suit.   None of those categories comport with the allegations in the instant case.  In *Milton v. Espey,* 356 So. 2d 1201 (Ala. 1978), the court discussed and quoted *Aland v. Graham,* 250 So. 2d 671 (Ala. 1971) which sets forth these four categories as follows:

> "Without professing to cover every situation that has arisen, there are four general categories of action that we have held do not come within the prohibition of Sec. 14. (1) Actions brought to compel State officials to perform their legal duties.  *Department of Industrial Relations v. West Boylston Manufacturing Co.,* 253 Ala. 67, 42 So. 2d 787; *Metcalf v. Department of Industrial Relations*, 245 Ala. 299, 16 So. 2d 787. (2) Actions brought to

enjoin State officials from enforcing an unconstitutional law. *Glass v. Prudential Insurance Co. Of America,* 246 Ala. 579, 22 So. 2d 13; *Southall v. Stricos Corp.,* supra. (3) Actions to compel State officials to perform ministerial acts. *Curry v. Woodstock Slag Corp.,* 242 Ala. 379, 6 So. 2d 479, and cases there cited. (4) Actions brought under the Declaratory Judgments Act, Tit. 7, §156 *et seq, Code* 1940, seeking construction of a statute and how it should be applied in a given situation. *Curry v. Woodstock Slag Corp.,* supra, and cases there cited." 287 Ala. at 229-230, 250 So. 2d at 679.

Generally, actions for money damages against state officials in their official capacity are barred by the Eleventh Amendment. *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989). However, claims seeking equitable relief against a state official in his or her official capacity survive. *Blackledge at 8.* Therefore, the plaintiffs' claims seeking equitable relief against the defendants in their official capacities will survive as an exception to the Eleventh Amendment, if there is otherwise validity in proof of a prima facie case.

The case law is clear, however, that the State does have absolute or sovereign immunity from suit, unless the suit is to obtain relief pursuant to the above exceptions, all of which are equitable in nature. The State cannot be sued in tort for damages, irrespective of allegations of malice or intent. Therefore, ADMH, being an agency of the State, should be granted Summary Judgment in this matter as to all claims.

## STATE OFFICIALS SUED IN THEIR INDIVIDUAL CAPACITY

The case of *Ex Parte Cranman*, 792 So. 2d 392 (Ala. 2000) has clarified the Rule with regard to the immunity of a State agent or officer who has been sued in a civil case in a personal capacity. The case makes the following statement,

"We therefore restate the rule governing State-agent immunity:

[4] A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

(1) formulating plans, policies, or designs; or

(2) **Exercising his or her judgment in the administration of a department or agency of government, including**, but not limited to, examples such as:

    (a)    making administrative adjudications;
    (b)    allocating resources;
    (c)    negotiating contracts;
    (d)    **hiring, firing, transferring, assigning, or supervising personnel**; or

(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

[5] Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity

(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."

Therefore, in accordance with the rules set forth above, Commissioner Houston, Mr. Dillihay, Mr. Ervin and Ms. Benson are entitled to State Agent immunity in accordance with the *Cranman* case, supra., for the following reasons:

    1.    They were <u>exercising their judgment</u> in the administration of a department or agency of government.

    2.    They were making administrative adjudications.

    3.    They were discharging their duties imposed on a department or agency by statute, rule or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the <u>State Agent performs the duties in that manner</u>.

4.      They were <u>exercising judgment in the discharge of their duties</u> imposed by statute, rule or regulation <u>in . . . hiring personnel</u>.

The exception to the applicability of State Agent immunity to these individuals in their personal capacities does not apply here.  The Plaintiff says that these Defendants fall within the exception below:

"When the State agent acts willfully, maliciously, fraudulently, in bad faith,

beyond his or her authority or under mistaken interpretation of law."

In no way, however, does the evidence in this case support a finding or create an issue of fact concerning conduct by the four individuals sued that would constitute willfulness, maliciousness, fraud, bad faith, action beyond authority or under mistaken interpretation of law.  The four individual Defendants in their individual capacity should be granted Summary Judgment as to the Plaintiffs' state law claims.

**PLAINTIFFS FAIL TO MEET THE ELEMENTS REQUIRED TO PROVE DEFENDANTS NEGLIGENTLY, WANTONLY, OR WILFULLY BREACHED ITS DUTY OF CARE TO THE PLAINTIFFS.**

In a negligence action, the plaintiff must prove: 1) the defendant owed the plaintiff a duty; 2) the defendant breached that duty; 3) the plaintiff suffered a loss or injury; and 4) the defendant's breach was the actual and proximate cause of the plaintiff's loss or injury.  *Dibiasi v. Joe Wheeler Electric Membership Corp.*, 2008 WL 110451 (Ala. 2008). Negligence is defined as an "inattention, thoughtlessness, or heedlessness, a lack of due care."  *Ex Parte McNeil*, 63 So. 992 (Ala. 1913).

Willful and wanton conduct is defined as a "reckless disregard of the safety of another."  *Phillips v. United Serv. Auto. Ass'n.*, 2008 WL 110475 (Ala.)This conduct imports

premeditation, or knowledge and consciousness that the injury is likely to result from the act done or from the omission to act. (*Id.*)

Plaintiffs have failed to meet this burden.  There is no evidence to suggest the Defendants acted with any lack of due care or reckless disregard of the Plaintiffs in filling this position.  Here, Defendants did not owe the Plaintiffs a duty to hire them as Assistant Department Personnel Manager.  Instead, Defendants owed a duty to ADMH to consider and hire the most qualified candidates to fill this newly created position.

The Defendants followed proper procedures in filling the requirements of the Departmental Assistant Personnel Manager position.  §22-50-9 *Code of Alabama* (1975) authorizes the Commissioner "to act in any prudent way to provide mental health services and mental retardation services for the people of Alabama."  § 22-50-16 *Code of Alabama* (1975) permits the Commissioner to "appoint all officers and employees of the department. . ."  This is so "without regard to any limitation established by law".  Mr. Ervin prepared a memorandum to Commissioner Houston explaining the need to create the Departmental Assistant Personnel Manager, an exempt position, and to conduct a Wage and Classification Study.  Of course, this memo was a formalization of prior discussions with the Commissioner. (Exhibit "29" was also a formalization of a prior oral discussion and approval.)  Jackie Graham, the State Personnel Director, accepted the creation of this position.  Acting within his full authority as provided by Alabama law, Commissioner Houston approved the job specification.

The announcement for the Departmental Assistant Personnel Manager  was sent out on September 15, 2005.  Five applicants submitted applications for this position prior

to September 30, 2005. ADMH re-announced the position and placed an ad in the Tuscaloosa News on October 30, 2005, which ran through November 5, 2005. (See Exhibit "28", the invoice from the Tuscaloosa News.) Two additional applications were received. These applications were fully considered and graded by Mike Mathis. However, neither of these applicants met the minimum qualifications.

Mike Mathis is a Caucasian male at Partlow Developmental Center in Tuscaloosa. Clearly, the Central Personnel Office did not grade the applications.

A five-person interview panel consisting of three Caucasians and two African-Americans conducted the interviews of the three prospective candidates. One of these individuals is employed at the Alabama Personnel Department. Each member of this panel rated Ms. Benson as the most qualified candidate. As a result, Commissioner Houston, within his authority as Commissioner of ADMH, hired Ms. Benson as Departmental Assistant Personnel Manager. The hiring of Ms. Benson was not a negligent, wanton/willful breach of duty performed by the Defendants.

**PLAINTIFFS FAIL TO MEET THE ELEMENTS REQUIRED TO PROVE INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS.**

In order to prevail on a claim for intentional interference with business or contractual relations, a plaintiff must prove: 1) the existence of a contract or business; 2) defendant's knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; and 4) damage to the plaintiff as a result of the interference. *Pouncy v. Vulcan Materials Co.*, 920 F.Supp. 1566 (N.D.Ala. 1996). To establish a claim for intentional interference with business relations, a plaintiff must show, *inter alia,* "that the defendant is a 'third party,' i.e., a 'stranger' to the contract with which

the defendant allegedly interfered." *Nimbus Tech., Inc. v. SunnData Products, Inc.*, 484 F. 3d 1305 (Ala. 2007).

Additionally, "neither a party to the contract nor an agent or employee of a party to the contract, if acting with the scope of authority, can be liable for tortious interference with the contract." *See Hickman v. Winston County Hosp.*, 508 So.2d 237, 239-40 (Ala. 1987); *Lolley v. Howell*, 504 So. 2d 253, 255-56 (Ala. 1987). The plaintiff must also produce evidence of fraud, force, or coercion on the defendant's part. *Joe Cooper & Assoc., Inc. v. Central Life Assurance Co.*, 614 So.2d 982 (Ala. 1992).

In this case, Plaintiffs fail to establish the elements required to prove a claim of Intentional Interference with Business Relations. First, the Plaintiffs are unable to prove the Defendants are a third party to the business with which the Defendants allegedly interfered. Instead, the business relationship only existed between the Plaintiffs and ADMH. There were only two parties involved in this process.

Additionally, the Defendants were acting within their scope of authority throughout the existence of their business relationship. Commissioner Houston, Mr. Dillihay and Mr. Ervin, as upper level management at ADMH, used their authority granted by their positions at ADMH to hire a Departmental Assistant Personnel Manager. Ms. Benson played no role in her hiring, other than applying and interviewing for the Departmental Assistant Personnel Manager. Therefore, Plaintiffs fail to meet their burden of proving their Intentional Interference with Business Relations claim.

**PLAINTIFFS ARE UNABLE TO PROVE THE STATE OF ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION IS LIABLE FOR THE ACTIONS OF THE DEFENDANTS UNDER RESPONDEAT SUPERIOR.**

The State cannot be held liable for the torts of its agents under the doctrine of respondeat superior. *Elmore v. Fields*, 153 Ala. 345 (1907), citing *U.S. v. Lee*, 106 U.S. 196 (1882). The Court additionally reasoned since the State can do no wrong, its agents, when committing a tort are not acting on behalf of the State within their authority. *Id.*

In their Complaint, Plaintiffs allege ADMH should be responsible for the actions of Commissioner Houston, Dillihay, Ervin and Benson. ADMH is a department managed and operated under the State of Alabama pursuant to § 22-50-2 *Code of Alabama* (1975). Since it operates as a division under the State of Alabama, it cannot be held liable for any alleged actions of its employees under a Respondeat Superior theory. As such, this count is due to be dismissed as to ADMH.

**PLAINTIFFS FAIL TO PROVE THEIR CONSPIRACY CLAIM SINCE THEY ARE UNABLE TO PROVE THEIR PREVIOUS TORT ACTIONS.**

"A conspiracy cannot exist in the absence of an underlying tort. "[L]iability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying provides no cause of action, then neither does the conspiracy." *Jones v. BP Oil Co.*, 632 So.2d 435, 439 (Ala. 1993). *Willis v. Parker*, 814 So.2d 857, 867 (Ala. 2001). *See also Beck v. Prupis*, 529 U.S. 790, 501 120 S.Ct. 1608, 1614 (2000) ("A plaintiff could bring suit for civil conspiracy only if he had been injured by an act that was itself tortuous"; "conspiracy fails as the basis for the imposition of civil liability absent the *actual commission* of some *independently recognized tort*....").

Without the commission of an actionable tort by the Defendants in this case, there can be no finding of a conspiracy involving Commissioner Houston, Dillihay, Ervin and Benson. All of the tort claims alleged by the Plaintiffs have been barred for the various reasons set forth *infra*.  Further, the Plaintiffs have produced no evidence that these Defendants participated in any fashion to negligently or wantonly deny the Plaintiffs an opportunity to be hired as Departmental Assistant Personnel Manager.  Accordingly, the claim asserted for conspiracy is due to be dismissed against Commissioner Houston, Dillihay, Ervin and Benson.

WHEREFORE, premises considered, Defendants respectfully request the Court to enter final Summary Judgment in their favor and against Plaintiffs as to each count designated in the Complaint.


                                           /s/H. E. Nix, Jr.                                    
                                          H.E. NIX, JR. (NIX007)
                                          Counsel for Defendants

OF COUNSEL:
*Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.*
P.O. Box 4128
Montgomery, AL 36103-4128
334-215-8585
334-215-7101 - facsimile
cnix@nixholtsford.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that an exact copy of the foregoing instrument has been served (a) through the Court's e-filing system; (b) by placing a copy of same in the United States Mail, postage prepaid and properly addressed; and/or (c) by e-mail to

| | |
|---|---|
| J. Flynn Mozingo<br>*Melton, Espy & Williams, P.C.*<br>P. O. Drawer 5130<br>Montgomery, AL 36103-5130 | Courtney W.Tarver<br>Deputy Atty. General and Gen. Counsel<br>Bureau of Legal Services<br>Dept. of Mental Health<br> and Mental Retardation<br>RSA Union Building<br>100 N. Union Street<br>Montgomery, AL 36130-1410 |

on this the 27th day of June, 2008.

/s/H. E. Nix, Jr._____
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOAN FAULK OWENS and )
KAREN LYNN HUBBARD, )
                   )
     Plaintiffs, )
                   )
v. )       2:07-cv-650
                   )
STATE OF ALABAMA DEPT. OF )
MENTAL HEALTH AND MENTAL )
RETARDATION, et al., )
                   )
     Defendants. )

## AFFIDAVIT OF MIKE MATHIS

STATE OF ALABAMA     )
                        )
COUNTY OF TUSCALOOSA  )

Before me, the undersigned notary public, personally appeared Mike Mathis, who, after having been sworn, identified himself to me and gave the following testimony:

"My name is Mike Mathis. I am a Caucasian male and I am the Personnel Director at W. D. Partlow Developmental Center, which is a mental retardation residential development center operated by the Alabama Department of Mental Health and Mental Retardation. I have been an employee of the Alabama Department of Mental Health and Mental Retardation since January 1976. I am a Personnel Manager III. I have personal knowledge of the testimony contained in this affidavit.

Partlow has approximately 575 employees at any given time. The Personnel Department that I manage at Partlow is responsible for performing all personnel functions with regard to Partlow employees. My Personnel Department performs a full range of

1



personnel functions, including, but not limited to, evaluations, the handling of raises, the handling of leave without pay, the processing of disciplinary requests, maintaining personnel files, filling employment positions, grading applications for employment, setting up interviews for employee candidates, sending out appointment letters and handling payroll. There are other functions that my department performs.

I received a telephone call from Henry Ervin at some point in time prior to the first announcement of the Departmental Assistant Personnel Manager's position. Two separate announcements or advertisements were sent with regard to this position called "Departmental Assistant Personnel Manager". This was a position for a person meeting the qualifications and recommended by an interview panel who would work at the Central Personnel Office in Montgomery, Alabama. Because I was asked to receive and grade the applications for this job, I did receive and grade seven different applications for the position of Departmental Assistant Personnel Manager. The following are the applicants whose applications I graded:

1. Marilyn Benson (an African-American female from Montgomery, Alabama);

2. Commie Carter (an African-American female from Montgomery, Alabama);

3. Danielle Coteat (an African-American female from Birmingham, Alabama);

4. Tracey Bailey (a Caucasian female from Moundville, Alabama);

5. Jessica Eiland (a Caucaian female from Brantley, Alabama).

These five applications were received by me at Partlow in Tuscaloosa, Alabama before September 30, 2005, which was the closing date for receipt of applications with regard to the first announcement of this position. After I graded the first five applications,

2

I sent an email to Commissioner Houston advising him as to the results of the application grading. Subsequently, I received two additional applications which I graded in the same manner I graded the first five applications. Neither of these two applicants qualified. These applicants were as follows:

6.    Chadwick Bivins (an African-American male from Montgomery, Alabama); and

7.    Arylin Jenkins (an African-American female from Tuscaloosa, Alabama).

I considered and graded all seven applications. All applications were returned with the Application Evaluation forms that were completed by me upon consideration of the applications. I had and referred to a copy of the job announcement for this position when I graded these seven applications. I graded the applications in accordance with the ADMH/MR rules regarding grading of applications that were in effect at the time I graded them. Prior to grading these applications, I was well experienced in grading applications. I had graded many applications prior to this time. I completed a form for each application, which is called Department of Mental Health/Mental Retardation Application Evaluation Form. In addition, with regard to some of the applications, I included with this form another document for the listing of work experience. I did not use this document with all of the application evaluations or grading because some of the applicants were clearly unqualified. There were three qualified applicants out of the seven applications that I received. Those qualified applicants were Marilyn Benson, Commie Carter and Danielle Coteat.

At no time did anyone ever express to me or indicate in any way that they had a preference or that they preferred to hire any particular person for this job. The application

3

grading process was handled by me objectively and in the same honest manner I always handle the grading of applications.

After I had graded the applications, I sent them or copies of them, with the grading documents, to the Alabama Department of Mental Health and Mental Retardation in Montgomery, but I have no recollection as to how or to whom I sent them.

Attached to this affidavit is a true and correct copy of documents that I had in my possession during the process of grading these applications which, of course, include the applications, the grading documents, and the announcement. There is also an email attached to this affidavit. I have examined these documents and know that they are true and correct copies of documents I had and used in the grading process. I no longer have a file. Any file material other than the material presented with this affidavit was destroyed. It is my practice after sending an application grading package to the appropriate person to destroy any documents that I might have because of space constraints. However, all of the documents presented and attached to this affidavit are true, correct and complete copies of documents that I had and used in the grading of these seven applications, except that document number "ADMH 04-00001" is an email to Commissioner John Houston conveying to him the results of the grading of the first five applications. The document numbered "ADMH 04-00016" is a plain piece of paper upon which I wrote, "Two - applications received after 9/30/05." The following other documents are also true, correct and complete copies of documents I had during the grading process as follows:

1.    ADMH 04-00004 and ADMH 04-0005 which is a copy of the announcement;

4

2.    ADMH 04-00017 through ADMH 04-00070 which include the documents previously described which relate to Chadwick Bivins, Arilyn Jenkins, Jessica Eiland and Tracey M. Bailey; and

3.    ADMH 04-00190 through ADMH 04-00236 which include the documents previously discussed which relate to Marilyn Benson, Commie Carter and Danielle Coteat.

Further, the Affiant sayeth not.

MIKE MATHIS

STATE OF ALABAMA          )
                          )
COUNTY OF TUSCALOOSA      )

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that Mike Mathis, whose name is signed to the foregoing, and who is known to me, acknowledged before me, on this day, that being informed of the contents of said document, he executed the same voluntarily on the day the same bears date.

Given under my hand and seal this _19th_ day of _June_____,
2008.

[SEAL]

NOTARY PUBLIC
My Commission Expires: _3/30/10_

5

## Mathis, Mike

**From:**  Mathis, Mike

**Sent:**  Wednesday, October 05, 2005 5:07 PM

**To:**  Houston, John

**Subject:** Dept. Assistant Personnel Manager, Application Assessments

Henry Ervin asked that I email you this information once I completed the assessment of the five applications I received for the aforementioned position. The applications received and assessment of the applications are listed below.

Sincerely,
Mike Mathis
Personnel Director
Partlow Development Center


Results:
Marilyn Benson -- Meets minimum qualification requirements
Commie Carter -- Meets minimum qualification requirements
Danielle Coteat -- Meets minimum qualification requirements
Tracey Bailey -- Does not meet minimum qualification requirements
Jessica Eiland -- Does not meet minimum qualification requirements

10/5/2005

ADMH 04-00001



STATE OF ALABAMA
# DEPARTMENT OF MENTAL HEALTH
## AND MENTAL RETARDATION
RSA UNION BUILDING
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410



JOHN HOUSTON
COMMISSIONER

BOB RILEY
GOVERNOR

## ANNOUNCEMENT OF INTENT TO FILL A NON-MERIT POSITION
## EQUAL OPPORTUNITY EMPLOYER

| | | | |
|---|---|---|---|
| **JOB TITLE:** | Departmental Assistant Personnel Manager | **NUMBER:** | 05-27 |
| **JOB CODE:** | H5500 | **DATE:** | 9/15/05 |
| **SALARY RANGE:** | 80 ($46,820- $71,380) | **POS#:** | 8813339 |

**JOB LOCATION:**    **Department of Mental Health**
**And Mental Retardation**
**100 North Union Street**
**Montgomery, Ala. 36130**

**QUALIFICATIONS:** Bachelor's degree in Human Resource Management/Personnel Management, Business Administration, Public Administration, or related field. **Extensive experience (72 months or more)** working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity.
*Preference will be given to individuals with:*
  - ➢ *Master's degree in any of the above specified fields of study.*
  - ➢ *Work experience in the governmental/public sector*
  - ➢ *Work experience in a healthcare setting*

**KIND OF WORK:**    Assists with day to day operation in planning, organizing, developing, coordinating, and implementing a comprehensive personnel management program for the Department of Mental Health and Mental Retardation. Coordinates efforts to include various personnel functions, such as recruitment, selection, job placement, position classification, employee training, performance appraisals, and affirmative action. Research and identify grant funding sources to assist coordinating efforts regarding Wage and Classification Studies. Maintains on-going classification and pay information from governmental agencies and private sector. Advises Director of Human Resources and assists in making recommendations to department heads, administrators, supervisors, and employees on rules, regulations, and proper personnel procedures concerning such matters as performance evaluations, promotions, demotions, transfers, and dismissals. Conducts and/or attends staff meetings, state personnel meetings, or personnel officer meetings. Gathers information and prepares budget for the Central Office Personnel Division and monitors expenditures. Coordinates various supervisory training for departmental Personnel Officers and makes oral presentations as needed.

ADMH 04-00004

Departmental Assistant
Personnel Manager
#05-27
Page 2

Serves in the absence of the Director of Human Resources by providing assistance regarding personnel and administrative functions and serves on various committees and task forces as assigned. Supervises clerical and para-professional staff assigned to Human Resources and conducts performance evaluations.

**REQUIRED KNOWLEDGE, SKILLS, AND ABILITIES:** Thorough knowledge of Department of Mental Health and Mental Retardation rules and regulations. Thorough knowledge of classification, recruitment, selection, placement, employee training, and staff development. Thorough knowledge of the principles and practices of public personnel administration, regarding applicable rules, regulations, policies, and ability to interpret state and federal rules and regulations. Ability to plan, organize, direct, and evaluate the work of others. Thorough knowledge of interviewing techniques. Ability to advise and make recommendations regarding employment selection procedures. Ability to make presentations and convey ideas and opinions effectively, both orally and in writing. Ability to gather, correlate, and analyze facts, and recommend solutions. Ability to provide technical assistance in the area of expertise. Ability to research and identify grants and funding resources. Ability to conduct and coordinate various meetings and chair committees. Ability to establish and maintain effective working relationships with departmental personnel at all levels and with employees in other departments as well as the general public.

**METHOD OF SELECTION:** Applicants will be rated on the basis of an evaluation of their training, experience and education, and should provide adequate work history identifying experiences related to the duties and minimum qualifications mentioned above. All relevant information is subject to verification.

**HOW TO APPLY:** Use an official application for Professional Employment (Exempt Application), which may be obtained from this office, other Department of Mental Health and Mental Retardation facility Personnel Offices, or at www.mh.state.al.us. **Only work experience detailed on the application form will be considered.** Additional sheets, if needed, should be in the same format as the application. **Resumes will not be accepted in lieu of an official application.**

## ALL APPLICATIONS SHOULD BE RETURNED TO:
**W.D. Partlow Developmental Center**
**Attention: Mr. Mike Mathis (Personnel Director)**
**1700 University Blvd.**
**Tuscaloosa, Ala. 35406-1730**
**DEADLINE FOR SUBMITTING APPLICATIONS:** September 30, 2005.

**COPIES** of licenses/certifications if applicable should be forwarded/furnished during interview, an official copy of your academic transcripts must be forwarded by the college or university to the personnel office at the above address.

2-Applications
Received after 9/30/05.

ADMH 04-00016

## DEPARTMENT OF MENTAL HEALTH / MENTAL RETARDATION
## APPLICATION EVALUATION FORM

*Chadwick Bivins*
Applicant Name

Departmental Assist Personnel Mgr / H5500
Position Title / Job Code

*05-27*
Announcement #

_____
Closing Date

*10/28/05*
Date Received

*8813339*
Positions #

*1/29/06*
Date Evaluated

*M. Matha*
Rater's Name

---

### MINIMUM QUALIFICATIONS REQUIREMENTS FOR POSITION

**Qualification:**

**Applicant's Training / Education:**    *Meets Requirements* *Yes*
Bachelor's degree in Human Resource Management / Personnel Management, Business Administration, Public Administration, or related field.

**Applicant's Experience:**    *Meets Requirements* *NO*
Extensive (72 months or more) working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity.

**Licensure / Certification:**    *Meets Requirements* _____    *Date Verified* _____

**Special Requirements:**    *Meets Requirements* _____    *Date Verified* _____

**Meets Minimum Qualification Requirements:** _____

**Preference Will Be Given To Individuals With:**
➤ Master's degree in any of the above specified fields of study.
➤ Work experience in the governmental / public sector.
➤ Work experience in a healthcare setting.

---

**Meets Minimum Qualification Requirements (1 point)**    _____
**Additional Specific / Related Education (2 points)**    _____
   Required Degree _____    Additional Related Degree _____

**Additional Specific / Related Experience (5 points)**    _____
   Total Related Experience – Required Experience =Additional Related Experience (/12)
   One Point For Each Full Year of Additional Related Experience Up to Maximum of 5

**Preference Points**
   Work experience in preferred area:   1 to 5 years = 1 point    6 to 10 years = 2 points    _____
   MS Degree = 2 points

**OVERALL RATING:**
=========

---

**Interview:**    Date: _____    Time: _____

# APPLICATION FOR EMPLOYMENT
## Exempt Classification



ADDRESS ON ANNOUNCEMENT

GENERAL INSTRUCTIONS
Complete all portions of this application that are applicable to you and the position for which you are applying. Failure to do so may result in your not being considered for the position for which you are applying Type or print clearly in ink.

## AN EQUAL OPPORTUNITY EMPLOYER

If you are applying for a specific current vacancy, please give position title and announcement # __Personnel Manager__

__Dept. #556 (#5500)__

Full Name __Bivins Chadwick Essium__

Social Security Number ████████

Address __2656 The Meadows__ Apt # ____
Street

__Montgomery AL 36116__
City State Zip Code

Telephone Home: (334) 372-3012
Number Office: (334) 229-4861

Legal Residence __Montgomery Montgomery AL__
City County State

Place of Birth __Troy Pike AL__
City County State

Minimum annual salary you would consider: __$48,000/year__

### LOCATIONS

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of non-merit vacancies at those facilities in which you express an interest. Please indicate below at which of our facilities you would consider employment. You will only be sent announcements of openings at facilities which you check. After one year and after each succeeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your application will be destroyed.

#### Mental Illness Facilities
- ( ) Bryce Hospital — Tuscaloosa, AL
- ( ) Searcy Hospital — Mt. Vernon, AL
- ( ) Harper Geriatric Psychiatry Center — Tuscaloosa, AL
- ( ) North Alabama Regional Hospital — Decatur, AL
- ( ) Thomasville MH Rehab Center — Thomasville, AL
- ( ) Hardin Secure Medical Facility — Tuscaloosa, AL
- ( ) Greil Psychiatric Hospital — Montgomery, AL

#### Mental Retardation Facilities
- ( ) William D. Partlow Developmental Center — Tuscaloosa, AL
- ( ) Albert P. Brewer Developmental Center — Mobile, AL
- ( ) Lurleen B. Wallace Developmental Center — Decatur, AL
- ( ) J. S. Tarwater Developmental Center — Wetumpka, AL

#### ICF Nursing Homes
- ( ) Alice Kidd — Tuscaloosa, AL
- ( ) S.D. Allen — Tuscaloosa, AL
- ( ) Claudette Box — Mt. Vernon, AL
- (√) Central Administrative Offices — Montgomery, AL

(See map on last page for locations of facilities)

### REFERRAL

Where did you learn about the job for which you applied, or about the Department's application procedure?

- ____ Voluntary Walk-in
- ____ State Employment Service
- ____ College Career Day
- ____ DMH/MR Employee
- ____ Newspaper Ad
- ____ Professional Journal Ad
- ____ Radio/TV Ad
- ____ Private Employment Agency
- ____ State Personnel Department
- ____ Professional Convention
- ____ Friend/Relative
- √ Responded to Announcement of Vacancy
- ____ Other — Please explain

Are you willing to accept shift work during evening and night hours? Yes (√) No ( )

Are you available to work √ Full Time ____ Part Time ____ Temporary?

The Alabama Department of Mental Health and Mental Retardation is an Equal Opportunity Employer. It does not discriminate with respect to race, color, religion, national origin, gender, age, or disability.

**PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION**

ADMH 04-00018

## EDUCATION

High school graduate or GED? ( ✓ ) Yes    ( ) No          Be as specific as possible about degree and major.

| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did You Graduate? | Degree and Date | Major |
|---|---|---|---|---|---|---|
| College Undergraduate | Troy State Uni University Avenue Troy, AL 36082 | 6/94 | 6/98 | Yes | 6-5-98 | Business |
| College Undergraduate | | | | | | |
| College Graduate | | | | | | |
| College Graduate | | | | | | |
| Vocational Business | | | | | | |

Circle Highest Grade Completed

High School   9   10   11   (12)   College   13   14   15   (16)   Graduate School   17   18   19

If you attended college in pursuit of either an under-graduate or graduate degree and did not obtain such, please indicate how many hours were received toward the degree:

Sem. Hrs. _____
Qtr. Hrs. _____

Please include the appropriate transcript with this application where applicable.

Please include copies of professional certificates/license, date, and state issued when applicable.

## EMPLOYER/PROFESSIONAL REFERENCES

List three reliable persons, not relatives, who know you well enough to give information about your professional/educational background.

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| Travis Lee | 2305 Family Drive Autangaville, AL 36003 | (334) 538-7351 | Counselor |
| Minnie Snell | 503 Galloway Rd Brundidge, AL 36010 | (334) 735-2104 | Pastor |
| Pessy Jones | 415 S. Jackson St Montgomery, AL 36114 | (334) 229-4194 | Director |

Have you ever been involuntarily terminated or forced to resign from a position?          ( ) Yes   (✓) No

Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment)          ( ) Yes   (✓) No

If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.

Have you filed an application with this Department before?  (✓) Yes   ( ) No.     If yes, give date and facility name:

Date  2003          Facility Name  N/A

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? ( ✓ ) Yes   ( ) No. If not a citizen of the U.S. give Visa type/status _____. (Proof of U.S. citizenship or Immigration status will be required upon employment.)

Date when you are available to begin work:  November 2005

ADMH 04-00019

## WORK HISTORY
### THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME IS ATTACHED

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

**1. Current or Last Employer** Alabama State Univ
**Your Official Job Title** Programmer

**Address/Zip Code** 915 South Jackson St Montg AL
**Telephone Number** (334)229-4860
**Type of Business** Academic

**FROM** Oct 21 99  **TO** 56/04  **Total Months**  **Fulltime (✓) Parttime ( )** Hours per week 40
**Name of Supervisor** Mr. Gibb
**Ending Salary** $____ per ____
**May we contact current employer?** (✓) Yes ( ) No
**Reason for Leaving**

**Number/Title of Employees you Supervised** 3 / Accountants, secretary
**Equipment you Operated** Computer, Fax Copier, Printers

**Describe your Duties in Detail:** I develop computer programs for the Faculty, Staff, and President. I manage the Administrative help desk and other duties such as train employees on software and other data.

**2. Employer** Express Personnel
**Your Official Job Title** Clerical Assistant

**Address/Zip Code** Vaughn Plaza Rd Montg AL 36116
**Telephone Number** (334)409-0198
**Type of Business** Staffing

**FROM** 5 1999  **TO** 10 99  **Total Months** 5  **Fulltime ( ) Parttime ( )** Hours per week 20
**Name of Supervisor** Mrs. McCullough
**Ending Salary** $____ per hr
**Reason for Leaving** Seek full-time work

**Number/Title of Employees you Supervised**
**Equipment you Operated** Fax, cash register, computer, Printer

**Describe your Duties in Detail:** I was a cashier, and processed customer surveys and transactions.

Oct-28-2005 02:22    From

**3. Employer** Troy State Upward Bound          Your Official Job Title Student Volunteer

Address/Zip Code Univ. Avenue Troy AL 36082     Telephone Number (334) 670-360    Type of Business Academic

FROM 9/94  TO 6/98  Total Months 45    Fulltime ( ) Partime (✓)    Name of Supervisor Mrs. Griffin    Ending Salary $ _____ per _____

Hours per week 12    Reason for Leaving I graduated

Number/Title of Employees you Supervised    Equipment you Operated Fax, copiers, computers

Describe your Duties in Detail:

I tutored high school Upward Bound students

---

**4. Employer** _____    Your Official Job Title _____

Address/Zip Code _____    Telephone Number _____    Type of Business _____

FROM ____ TO ____ Total Months ____    Fulltime ( ) Partime ( )    Name of Supervisor _____    Ending Salary $ ____ per ____

Hours per week ____    Reason for Leaving _____

Number/Title of Employees you Supervised    Equipment you Operated _____

Describe your Duties in Detail:

---

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release or copy thereof, within one year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization, and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME (Signature) Chadwick Essium Burns    SOCIAL SECURITY # ████████

FULL NAME (Typed or Printed Name) Chadwick Essium Burns    CURRENT ADDRESS 2656 The Meadows Montgomery AL 36116

DATE OF BIRTH 12/30/75    PLACE OF BIRTH Troy, AL    DATE 10/28/05

WITNESS C. Griffin    TITLE _____

## CERTIFICATE/SIGNATURE

### Must be signed in ink by applicant

I certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

Signed Chadwick E. Burns    DATE 10-28-05

2/01

# ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION

## APPLICANT DATA RECORD

DATE: 10-28-05

To help this Department evaluate our efforts as an Equal Opportunity Employer, we are requesting that you complete the following items of personal information. Your answers to these questions will be used only to study recruiting and employment patterns, and to furnish necessary information for government reports. We appreciate your cooperation.

This sheet will be separated from the employment application upon receipt, and will be maintained in a separate file. It will, in no way, affect consideration for possible employment with the Alabama Department of Mental Health and Mental Retardation.

## PLEASE PRINT

NAME: Bivins (Last) Chadwick (First) Essium (Middle)

ADDRESS: 2656 The Meadows (Street) Montgomery (City) AL (State) 36116 (Zip Code)

SOCIAL SECURITY NUMBER: ▓▓▓▓▓

TITLE OF POSITIONS APPLIED FOR AND DATE APPLIED:
Dept. Asst. Personnel Manager    10-28-05

RACE:
( ) Caucasian
( ✓ ) Black
( ) American Indian
( ) Asian/Pacific Islander
( ) Hispanic
( ) Non-Resident Alien
( ) Other

GENDER: ( ✓ ) Male ( ) Female
AGE: 29 Birthdate 12 / 30 / 75
VETERAN: ( ) Yes ( ✓ ) No

ADMH 04-00022

# CHADWICK BIVINS

2656 The Meadows Montgomery, AL 36116, (334) 372-3012 cbivins@alasu.edu

October 27, 2005

Attn: Human Resources
Department of Mental Retardation

Dear Selection Committee:

I would like to be considered for the Department Assistant Personnel Manager with the Alabama Department of Mental Health. I am currently a Computer Programmer at Alabama State University, and have several years experience assisting the Faculty, Staff, and President regarding information about students. In addition, I coordinate and participate in department meetings, and monitor all client support services for the University for Better Quality and service. Other related experiences include administering, supervising, and training departments and agencies about reports, and other important information that are maintained on our mainframe system database. I also resolve complaints and disputes from different departments, document procedures, and consult with departments regarding proper methods and techniques for better service. I establish and create working relationships with companies and other agencies that are off-campus about computers or other important information. For six years, I have provided student and customer service satisfaction, supervision, and computer assistance. In closing, I have received tremendous recognition from my supervisors and other employees regarding my work.

You may reach me at (334)229-4561 during business hours and at (334)372-3012 on evenings. Thank you for your time and consideration; I look forward to meeting with you to discuss this position.

Very truly yours,

Chadwick Essium Bivins

OCT 28 2005 16:06                                                                PAGE.07

ADMH 04-00023

# CHADWICK E. BIVINS

2656 The Meadows Montgomery, Alabama 36116 (334) 372-3012   Email: cbivins@alasu.edu

## PROFESSIONAL OBJECTIVE

To obtain a position as a Department Assistant Personnel Manager with the Alabama Department of Mental Health.

## EDUCATION

Bachelor of Science in Business Adminstration, Troy State University, Troy, AL, June 1998

## PROFESSIONAL EXPERIENCE

**Applications Programmer**      Alabama State University, Montgomery, AL    10/99-Present
- Develop Programs for the President, Faculty, Staff, and Companies.
- Create Reports for various Departments about employee and student information.
- Analyze data and communicate with organizations and businesses.
- Perform service-oriented tasks by assisting the faculty and staff with their computers.
- Provide assistance with other Departments relating to specific reports or requests.
- Participate in department meetings to improve the effectiveness of our duties.
- Organize meetings with other departments about the status of projects.
- Monitor, train, and supervise all mainframe client/support services for the university.
- Manage, train, and supervise all client-users about administrative and computer issues.

**Clerical Assistant**      Express Personnel Services, Montgomery, AL    5/99-10/99
- Assisted in clerical duties such as answering phones, computer transactions, and filing documents.
- Processed customer information as a cashier.
- Provided customer service satisfaction through surveys, communicated with others, and also solved the needs and wants of the individual.

**Student Volunteer**      Troy State University Upward Bound, Troy, AL    9/94-5/98
- Provided assistance with students concerning their academics.
- Administered students on educational field trips while serving as a chaperone.

## PROFESSIONAL SKILLS

Computer Skills, MSWord, MSExcel, MSAccess, DOS, XP, Focus, FTP software
Communication Skills, Sales and Organizing and Managing Department Meetings

## COMMUNITY AFFILIATIONS

Phi Gamma Nu Business Fraternity          Phi Beta Sigma Fraternity Inc.
Troy University Upward Bound Mentor    Troy University (Trojan All-Star) Athletic Recruiter

## REFERENCES      Available upon request

ADMH 04-00024

RECEIVED

NOV - 2005

PERSONNEL OFFICE

915 South Jackson Street
Montgomery, AL 36101
Phone:  (334) 229-4560
Fax:     (334) 229-4170

## Alabama State University



**OFFICE OF INFORMATION SYSTEMS AND TECHNOLOGY**



# Fax

To: _Human Resources_      From: _Chad Bivins_

Fax: _(334) 240-3144_      Pages: _8_

Phone: _(334) 229-4561_      Date: _10-28-05_

Re: _Dept. Asst. Personnel Mgr._      CC:

☐ Urgent      ☐ For Review      ☐ Please Comment      ☑ Please Reply      ☐ Please Recycle

● Comments:



RECEIVED
OCT 28 2005
HUMAN RESOURCES
BUREAU

ADMH 04-00025

# APPLICATION FOR EMPLOYMENT
## Exempt Classification



ADDRESS ON ANNOUNCEMENT

**GENERAL INSTRUCTIONS**
Complete all portions of this application that are applicable to you and the position for which you are applying. Failure to do so may result in your not being considered for the position for which you are applying. Type or print clearly in ink.

## AN EQUAL OPPORTUNITY EMPLOYER

Full Name **Bivins    Chadwick Essium**

Social Security Number ~~_____~~

Address **2656 The Meadows**
**Montgomery AL 36116**

If you are applying for a specific current vacancy, please give position title and announcement # **Dept. A556 Personnel Manager (H 5500)**

Telephone Number   Home: (334) 372-3012   Office: 004) 229-4861

Legal Residence **Montgomery Montgomery Al**

Place of Birth **Troy    Pike    AL**

Minimum annual salary you would consider: **$48,000/year**

## LOCATIONS

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of non-merit vacancies at those facilities in which you express an interest. Please indicate below at which of our facilities you would consider employment. You will only be sent announcements of openings at facilities which you check. After one year and after each succeeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your application will be destroyed.

### Mental Illness Facilities
( ) Bryce Hospital — Tuscaloosa, AL
( ) Searcy Hospital — Mt. Vernon, AL
( ) Harper Geriatric Psychiatry Center — Tuscaloosa, AL
( ) North Alabama Regional Hospital — Decatur, AL
( ) Thomasville MH Rehab Center — Thomasville, AL
( ) Hardin Secure Medical Facility — Tuscaloosa, AL
( ) Greil Psychiatric Hospital — Montgomery, AL

### Mental Retardation Facilities
( ) William D. Partlow Developmental Center — Tuscaloosa, AL
( ) Albert P. Brewer Developmental Center — Mobile, AL
( ) Lurleen B. Wallace Developmental Center — Decatur, AL
( ) J. S. Tarwater Developmental Center — Wetumpka, AL

### ICF Nursing Homes
( ) Alice Kidd — Tuscaloosa, AL
( ) S.D. Allen — Tuscaloosa, AL
( ) Claudette Box — Mt. Vernon, AL

(✓) Central Administrative Offices — Montgomery, AL

(See map on last page for locations of facilities)

### REFERRAL
Where did you learn about the job for which you applied, or about the Department's application procedure?

_____ Voluntary Walk-in
_____ State Employment Service
_____ College Career Day
_____ DMH/MR Employee
_____ Newspaper Ad
_____ Professional Journal Ad
_____ Radio/TV Ad
_____ Private Employment Agency
_____ State Personnel Department
_____ Professional Convention
_____ Friend/Relative
✓ Responded to Announcement of Vacancy
_____ Other — Please explain:

Are you willing to accept shift work during evening and night hours?  Yes (✓)  No ( )

Are you available to work ✓ Full Time _____ Part Time _____ Temporary?

The Alabama Department of Mental Health and Mental Retardation is an Equal Opportunity Employer. It does not discriminate with respect to race, color, religion, national origin, gender, age, or disability.

**PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION**

ADMH 04-00026

## WORK HISTORY
### THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME IS ATTACHED

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

**Current or Last Employer:** Alabama State Univ
**Your Official Job Title:** Programmer
**Address/Zip Code:** 915 South Jackson Montgomery AL
**Telephone Number:** (334) 229-4860
**Type of Business:** Academic
**FROM** 11/1/99 **TO** 36/04
**Name of Supervisor:** Mr. Gibb
**May we contact current employer?** Yes
**Equipment you Operated:** Printers, Fax Copier
**Number/Title of Employees you Supervised:** 3 / Accountants, Secretary

**Describe your Duties in Detail:** I develop computer programs for the Faculty, staff, and Resident. I manage the Administrative help desk and other duties such as train employees on software and other data.

**Employer:** Express Personnel
**Your Official Job Title:** Clerical Assistant
**Address/Zip Code:** Vaughn Plaza Rd Mont AL 36116
**Telephone Number:** (334) 409-0118
**Type of Business:** Staffing
**FROM** 5/1999 **TO** 10/1999
**Name of Supervisor:** Mrs. McCullough
**Reason for Leaving:** Seek full-time work
**Equipment you Operated:** Fax, cash register, computer, printer

**Describe your Duties in Detail:** I was a cashier, and processed customer surveys and transactions.

ADMH 04-00027

3. Employer Troy State Upward Bound    Your Official Job Title Student Volunteer

Address/Zip Code Troy Avenue Troy, AL 36082 (334) 670-3465    Telephone Number    Type of Business Academic

| FROM | | TO | | Total Months | Fulltime ( ) Partime (✓) | Name of Supervisor Mrs. Griffin | Ending Salary $ per |
| Month | Year | Month | Year | | Hours per week 12 | | Reason for Leaving I graduated |
| 9 | 94 | 6 | 98 | 45 | | | |

No. and Title of Employees you Supervised    Equipment you Operated Fax copiers, computers

Describe your Duties in Detail: I tutored high school Upward Bound students

4. Employer    Your Official Job Title

Address/Zip Code    Telephone Number    Type of Business

| FROM | | TO | | Total Months | Fulltime ( ) Partime ( ) | Name of Supervisor | Ending Salary $ per |
| Month | Year | Month | Year | | Hours per week | | Reason for Leaving |

Number/Title of Employees you Supervised    Equipment you Operated

Describe your Duties in Detail:

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release or copy thereof, within one year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME (No Initials) (Signature) Chadwick Essien Biong    SOCIAL SECURITY #

FULL NAME (Typed or Printed Name) Chadwick Essien Biong    CURRENT ADDRESS 2656 The Meadows

DATE OF BIRTH 12/30/75    PLACE OF BIRTH Troy, AL    Montgomery, AL 36116    DATE 10/28/05

WITNESS C. Griffin    TITLE

## CERTIFICATE/SIGNATURE

**Must be signed in ink by applicant**

I Certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.    DATE 10-28-05

Signed Chadwick E. Biong    2/01

## EDUCATION

High school graduate or GED? (✓) Yes  ( ) No          Be as specific as possible about degree and major.

| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did You Graduate? | Degree and Date | Major |
|---|---|---|---|---|---|---|
| College Undergraduate | Troy State Uni university Avenue Troy, AL 36082 | 6/94 | 6/98 | Yes | 6-5-98 | Business |
| College Undergraduate | | | | | | |
| College Graduate | | | | | | |
| College Graduate | | | | | | |
| Vocational Business | | | | | | |

Circle Highest Grade Completed

High School  9  10  11  (12)    College  13  14  15  (16)    Graduate School  17  18  19

If you attended college in pursuit of either an under-graduate or graduate degree and did not obtain such, please indicate how many hours were received toward the degree:

Sem. Hrs. _____
Qtr. Hrs. _____

Please include the appropriate transcript with this application where applicable.

Please include copies of professional certificates/license, date, and state issued when applicable.

## EMPLOYER/PROFESSIONAL REFERENCES

List three reliable persons, not relatives, who know you well enough to give information about your professional/educational background.

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| Travis Lee | 2305 Family Drive Autaugaville, AL 36003 | (334) 538-7351 | Counselor |
| Minnie Snell | 503 Calloway Rd Prandisget, AL 36001 | (334) 215-2104 | Pastor |
| Pessy Jones | 615 S. Jackson St Montgomery, AL 36114 | (334) 229-4194 | Director |

Have you ever been involuntarily terminated or forced to resign from a position?          ( ) Yes  (✓) No

Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment)          ( ) Yes  (✓) No

**If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.**

Have you filed an application with this Department before?  (✓) Yes    ( ) No.          If yes, give date and facility name:

Date **2003**          Facility Name          **N/A**

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? (✓) Yes    ( ) No. If not a citizen of the U.S. give Visa type/status _____ . (Proof of U.S. citizenship or Immigration status will be required upon employment.)

Date when you are available to begin work: **November 2005**

ADMH 04-00029

# ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION

### APPLICANT DATA RECORD

DATE: _10-28-05_

To help this Department evaluate our efforts as an Equal Opportunity Employer, we are requesting that you complete the following items of personal information. Your answers to these questions will be used only to study recruiting and employment patterns, and to furnish necessary information for government reports. We appreciate your cooperation.

This sheet will be separated from the employment application upon receipt, and will be maintained in a separate file. It will, in no way, affect consideration for possible employment with the Alabama Department of Mental Health and Mental Retardation.

## PLEASE PRINT

NAME  _Bivins_   _Chadwick_   _Essium_
        Last         First        Middle

ADDRESS  _2656   The Meadows Montgomery AL    36116_
          Street          City          State      Zip Code

SOCIAL SECURITY NUMBER

TITLE OF POSITIONS APPLIED
FOR AND DATE APPLIED:

_Dept. Asst. Personnel_
_Manager_        _10-28-05_

RACE:

( ) Caucasian          ( ✓ ) Black

( ) American Indian    ( ) Asian/Pacific Islander

( ) Hispanic           ( ) Non-Resident Alien

( ) Other _____

GENDER: ( ✓ ) Male   ( ) Female

AGE: _29_  Birthdate _12/30/7_

VETERAN: ( ) Yes  ( ✓ ) No

ADMH 04-00030

# CHADWICK BIVINS

2656 The Meadows Montgomery, AL 36116, (334) 372-3012 cbivins@alasu.edu

October 27, 2005

Attn: Human Resources
Department of Mental Retardation

Dear Selection Committee:

I would like to be considered for the Department Assistant Personnel Manager with the Alabama Department of Mental Health. I am currently a Computer Programmer at Alabama State University, and have several years experience assisting the Faculty, Staff, and President regarding information about students. In addition, I coordinate and participate in department meetings, and monitor all client support services for the University for Better Quality and service. Other related experiences include administering, supervising, and training departments and agencies about reports, and other important information that are maintained on our mainframe system database. I also resolve complaints and disputes from different departments, document procedures, and consult with departments regarding proper methods and techniques for better service. I establish and create working relationships with companies and other agencies that are off-campus about computers or other important information. For six years, I have provided student and customer service satisfaction, supervision, and computer assistance. In closing, I have received tremendous recognition from my supervisors and other employees regarding my work.

You may reach me at (334)229-4561 during business hours and at (334)372-3012 on evenings. Thank you for your time and consideration; I look forward to meeting with you to discuss this position.

Very truly yours,

Chadwick Essium Bivins

# CHADWICK E. BIVINS

2656 The Meadows Montgomery, Alabama 36116  (334) 372-3012   Email:  cbivins@alasu.edu

## PROFESSIONAL OBJECTIVE

To obtain a position as a Department Assistant Personnel Manager with the Alabama Department of Mental Health.

## EDUCATION

Bachelor of Science in Business Adminstration,  Troy State University,  Troy, AL,  June 1998

## PROFESSIONAL EXPERIENCE

**Applications Programmer**       Alabama State University, Montgomery, AL    10/99-Present
- Develop Programs for the President, Faculty, Staff, and Companies.
- Create Reports for various Departments about employee and student information.
- Analyze data and communicate with organizations and businesses.
- Perform service-oriented tasks by assisting the faculty and staff with their computers.
- Provide assistance with other Departments relating to specific reports or requests.
- Participate in department meetings to improve the effectiveness of our duties.
- Organize meetings with other departments about the status of projects.
- Monitor, train, and supervise all mainframe client/support services for the university.
- Manage, train, and supervise all client-users about administrative and computer issues.

**Clerical Assistant**       Express Personnel Services, Montgomery, AL    5/99-10/99
- Assisted in clerical duties such as answering phones, computer transactions, and filing documents.
- Processed customer information as a cashier.
- Provided customer service satisfaction through surveys, communicated with others, and also solved the needs and wants of the individual.

**Student Volunteer**       Troy State University Upward Bound, Troy, AL   9/94-5/98
- Provided assistance with students concerning their academics.
- Administered students on educational field trips while serving as a chaperone.

## PROFESSIONAL SKILLS

Computer Skills, MSWord, MSExcel, MSAccess, DOS, XP, Focus, FTP software
Communication Skills, Sales and Organizing and Managing Department Meetings

## COMMUNITY AFFILIATIONS

Phi Gamma Nu Business Fraternity       Phi Beta Sigma Fraternity Inc.
Troy University Upward Bound Mentor    Troy University (Trojan All-Star) Athletic Recruiter

## REFERENCES       Available upon request

ADMH  04-00032

915 South Jackson Street
Montgomery, AL 36101
Phone: (334) 229-4500
Fax:    (334) 229-4170

**Alabama State University**



## OFFICE OF INFORMATION SYSTEMS AND TECHNOLOGY

# Fax

Mr. Mathi'S

| To: Human Resources | Phone: Chad Bivins |
| Fax: (334) 242-3144 | Pages: 8 |
| Phone: (334) 229-4561 | Date: 10-28-05 |
| Re: Dept. Asst. Personel Mgr. | CC: |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☑ Please Reply    ☐ Please Recycle

● Comments:

ADMH 04-00033

## DEPARTMENT OF MENTAL HEALTH / MENTAL RETARDATION
## APPLICATION EVALUATION FORM

*Arylin Jenkins*
Applicant Name

Departmental Assist Personnel Mgr / H5500
Position Title / Job Code

*05-27*
Announcement #

Closing Date

*11/2/05*
Date Received

*8813339*
Positions #

*1/29/06*
Date Evaluated

*M. Mathis*
Rater's Name

---

### MINIMUM QUALIFICATIONS REQUIREMENTS FOR POSITION

**Qualification:**

**Applicant's Training / Education:**    *Meets Requirements* ___*yes*___
Bachelor's degree in Human Resource Management / Personnel Management, Business Administration, Public Administration, or related field.

**Applicant's Experience:**    *Meets Requirements* ___*No*___
Extensive (72 months or more) working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity.

**Licensure / Certification:**    *Meets Requirements* _____    **Date Verified** _____

**Special Requirements:**    *Meets Requirements* _____    **Date Verified** _____

   **Meets Minimum Qualification Requirements:** _____

**Preference Will Be Given To Individuals With:**
   ➢ Master's degree in any of the above specified fields of study.
   ➢ Work experience in the governmental / public sector.
   ➢ Work experience in a healthcare setting.

---

**Meets Minimum Qualification Requirements (1 point)**    _____
**Additional Specific / Related Education (2 points)**    _____
   Required Degree _____    Additional Related Degree _____

**Additional Specific / Related Experience (5 points)**    _____
   Total Related Experience – Required Experience =Additional Related Experience (/12)
   One Point For Each Full Year of Additional Related Experience Up to Maximum of 5

**Preference Points**    _____
   Work experience in preferred area:    1 to 5 years = 1 point    6 to 10 years = 2 points
   MS Degree = 2 points

   **OVERALL RATING:**
   =========

---

**Interview:**    Date: _____    Time: _____

# APPLICATION FOR EMPLOYMENT
## Exempt Classification

RETURN TO

William D. Partlow Developmental Center
P.O. Box 1730, 1700 University Blvd. East
Tuscaloosa, Alabama 35403-1730

(205) 553-4550

**GENERAL INSTRUCTIONS**
Complete all portions of this appli
cation that are applicable to you and
the position for which you are apply
ing. Failure to do so may result in you
not being considered for the position
for which you applying Type or prin
clearly in ink.

## AN EQUAL OPPORTUNITY EMPLOYER

Full Name: Jenkins Arylin D
Last First Middle

Social Security Number: ~~[redacted]~~

Address: 5751 25th Avenue East ___ Apt
Street

Tuscaloosa, AL 35405
City State Zip Code

### LOCATIONS

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of non-merit vacancies at those facilities in which you express an interest. Please indicate below at which of our facilities you would consider employment. You will only be sent announcements of openings at facilities which you check. After one year and after each succeeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your application will be destroyed.

**Mental Illness Facilities**

( ) Bryce Hospital — Tuscaloosa, AL
( ) Searcy Hospital — Mt. Vernon, AL
( ) Harper Geriatric Psychiatry Center — Tuscaloosa, AL
( ) North Alabama Regional Hospital — Decatur, AL
( ) Thomasville MH Rehab Center — Thomasville, AL
( ) Hardin Secure Medical Facility — Tuscaloosa, AL
( ) Greil Psychiatric Hospital — Montgomery, AL

**Mental Retardation Facilities**

(✓) William D. Partlow Developmental Center — Tuscaloosa, AL
( ) Albert P. Brewer Developmental Center — Mobile, AL
( ) Lurleen B. Wallace Developmental Center — Decatur, AL
( ) J. S. Tarwater Developmental Center — Wetumpka, AL

**ICF Nursing Homes**

( ) Alice Kidd — Tuscaloosa, AL
( ) S.D. Allen — Tuscaloosa, AL
( ) Claudette Box — Mt. Vernon, AL

(✓) Central Administrative Offices— Montgomery, AL

(See map on last page for locations of facilities)

---

If you are applying for a specific current vacancy, please give position title and annoucement #_____
Department Assistant, Personnel Manager

Telephone Number: Home: (205) 507-1416
Office: ( ) N/A

Legal Residence: Tuscaloosa AL
County State

Place of Birth: Tuscaloosa AL
County State

Minimum annual salary you would consider: 46,820

### REFERRAL

Where did you learn about the job for which you applied, or about the Department's application procedure?

_____ Voluntary Walk-in
_____ State Employment Service
_____ College Career Day
_____ DMH/MR Employee
✓ Newspaper Ad
_____ Professional Journal Ad
_____ Radio/TV Ad
_____ Private Employment Agency
_____ State Personnel Department
_____ Professional Convention
✓ Friend/Relative
_____ Responded to Announcement of Vacancy
_____ Other — Please explain:

Are you willing to accept shift work during evening and night hours? Yes (✓) No ( )

Are you available to work ✓ Full Time _____ Part Time _____ Temporary?

The Alabama Department of Mental Health and Mental Retardation is an Equal Opportunity Employer. It does not discriminate with respect to race, color, religion, national origin, gender, age, or disability.

**PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION**

ADMH 04-00035

Arylin Jenkins
Department Assistant  Personnel Manager

Explanation of *"Have you ever been involuntarily terminated or forced to resign from a position?"*

Yes. I worked as a Disability Specialist for the Disability Determination Services from August 2004 until November 2004. My employment was contingent upon me passing a series of test with 80% or better. I passed all of the test except the Vocational Test. I made 77.5%. At the time, the policy was "any employee not making 80% or better be terminated". The Disability Determination Services has since changed this policy.

# EDUCATION

| High school graduate or GED? (✓) Yes    ( ) No | | Be as specific as possible about degree and major. | | | | |
|---|---|---|---|---|---|---|

| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did You Graduate? | Degree and Date | Major |
|---|---|---|---|---|---|---|
| College Undergraduate | University of Alabama Tuscaloosa, AL 35401 | 8/82 | 8/87 | Yes | B.S. | HRM |
| College Undergraduate | | | | | | |
| College Graduate | Webster University Columbia, SC 29207 | 5/99 | 12/00 | Yes | M.A. | HRM |
| College Graduate | | | | | | |
| Vocational Business | | | | | | |

Circle Highest Grade Completed

High School    9    10    11    12    College 13    14    15    16    Graduate School 17    (18)    19

| If you attended college in pursuit of either an undergraduate or graduate degree and did not obtain such, please indicate how many hours were received toward the degree;<br><br>Please include the approriate transcript with this application where applicable. | Sem. Hrs. _____<br><br>Qtr. Hrs. _____ | Please include copies of professional certificates/license, date, and state issued when applicable<br>_____<br>_____<br>_____<br>_____ |
|---|---|---|

# EMPLOYER/PROFESSIONAL REFERENCES

List three reliable persons, not relatives, who know you well enough to give information about your professional/educational background.

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| Donald Pifer | 201 Executive Center Drive Ste 300, Columbia SC 29210 | 800-868-6734 | V.P. Insurance Network Mgmt |
| Ellen Synovec | Blue Cross + Blue Shield Columbia SC 29223 | (803) 788-0222 | Director, Quality Improvement |
| Susan Simons | Moncrief Army Cmty Hospital Amrt @ Hill Street Fort Jackson, SC 29207 | (803) 751-7812 | Director Quality Improvement |

Have you ever been involuntarily terminated or forced to resign from a position?    (✓) Yes    ( ) No

Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment)    ( ) Yes    (✓) No

**If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.**

Have you filed an application with this Department before?    (✓) Yes    ( ) No.    If yes, give date and facility name:

Date  6/11/04    Facility Name  W. D. Partlow Development Center

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? (✓) Yes    ( ) No. If not a citizen of the U.S. give Visa type/status _____ . (Proof of U.S. citizenship or Immigration status will be required upon employment.)

Date when you are available to begin work: _ASAP_

ADMH 04-00037

## WORK HISTORY
### THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME IS ATTACHED

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

Current or Last Employer: Temporary Placement Agencies (multiple)
Your Official Job Title: Temporary Employee
Address/Zip Code:
Telephone Number: Varied
Type of Business: Placement Agency

FROM: Year 03 Month present Year
TO: Month present
Total Months: 26
Fulltime ( ✓ ) Partime ( )
Hours per week: 40+
Name of Supervisor: Varied
Ending Salary: $ ___ per he
May we contact current employer? ( ) Yes ( ) No

Number/Title of Employees you Supervised: 0
Equipment you Operated: Computer, copier, etc.
Reason for Leaving: still listed w/ agency

Describe your Duties in Detail:
performed clerical and administrative duties throughout the Tuscaloosa area.

---

Employer: Atlanta Technical College
Your Official Job Title: Institutional Effectiveness Specialist
Address/Zip Code: 1560 Metropolitan Pkwy SW, Atlanta GA 30310
Telephone Number: (404) 756-4769
Type of Business: Technical College

FROM: Year 02 Month 06 Year
TO: Year 03
Total Months: 12
Fulltime ( ✓ ) Partime ( )
Hours per week: 40
Name of Supervisor: Rodney Ellis
Ending Salary: $ ___ per ye.

Number/Title of Employees you Supervised: 0
Equipment you Operated: computer, copier, etc.
Reason for Leaving: relocated to Alabama

Describe your Duties in Detail:
analyzed and assessed the effectiveness of existing programs; responsible for designing and executing a plan for maintaining accredited status for the academic program by accreditation agencies; maintained the components of the Performance Accountability System (PAS); maintained the knowledge of current trends and development in the field by reading appropriate literature; created and maintained a high performance environment characterized by positive leadership and strong team building; developed a process for applicants to evaluate admissions, registration, etc.; performed other quality initiatives as assigned.

"see additional pages"

ADMH 04-00038

**3. Employer**
Your Official Job Title: Credentialing Coordinator
Childrens Healthcare of Atlanta

Address/Zip Code: 1677 Tullie Circle, Atlanta GA 30329

Telephone Number: unknown

Type of Business: Healthcare

| FROM | | TO | | Total Months | Fulltime ( ) Partime (✓) | Name of Supervisor | Ending Salary |
|------|------|------|------|------|------|------|------|
| Month | Year | Month | Year | | Hours per week 40+ | Ann Collins | $ ___ per hr. |
| 9 | 01 | 3 | 02 | 6 | | | |

Reason for Leaving: temporary position

Number/Title of Employees you Supervised: Ø

Equipment you Operated: computer, telephone, copier, etc.

Describe your Duties in Detail: Tracked & assured the proper recredentialing of over 1,400 participating healthcare providers working w/in the hospital by verifying background & personal information to include education, references, work history, licenses, hospital privileges etc. Assisted with auditing credentialing files and preparing reports in preparation for JCAHO accreditation; corrected & inputted information into the credentialing database; served as point of contact for providers w/ medical specialties designation such as pediatric cardiologist etc...

**4. Employer**
Your Official Job Title: Credentialing Coordinator, Sr Credentialing
United Healthcare / Physicians Health Plans Coordinator, Credentialing Liaison, Credentialing Supervisor

Address/Zip Code: 201 Executive Center Drive Ste 300, Columbia SC 29210

Telephone Number: (800) 868-6734

Type of Business: Managed Care/ Insurance

| FROM | | TO | | Total Months | Fulltime (✓) Partime ( ) | Name of Supervisor | Ending Salary |
|------|------|------|------|------|------|------|------|
| Month | Year | Month | Year | | Hours per week 40+ | Dan LaVoyter | $37,000 per year |
| 6 | 97 | 8 | 01 | 50 | | | |

Reason for Leaving: relocated to Georgia.

Number/Title of Employees you Supervised: 4-6

Equipment you Operated: computer, telephone, fax, copier, etc.

Describe your Duties in Detail: Over two & half years of experience supervising and providing direction to staff members, interview, selected & trained staff members how to verify background & personal information to include education, references, work history, licenses, hospital privileges etc. Served as subject matter expert during preparation and actual NCQA survey; maintained and updated three credentialing databases; ensuring information is stored between databases; assisted w/ combining multiple databases into one main database and reduced tracking periods by at least 60% ...

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release or copy thereof, within one year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME (No Initials): Angela Diann Jenkins (Signature)

FULL NAME: Angela Diann Jenkins (Typed or Printed Name)

DATE OF BIRTH 5/9/64   PLACE OF BIRTH Alabama

SOCIAL SECURITY # ___

CURRENT ADDRESS 5751 25th Avenue East, Tuscaloosa, Alabama 35405

WITNESS _____   TITLE _____   DATE _____

## CERTIFICATE/SIGNATURE

### Must be signed in ink by applicant

I Certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

Signed _Angela Jenkins / Angela Jenkins_   DATE 10/31/05

2/01

ADMH 04-00039

# ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION

### APPLICANT DATA RECORD

DATE: 10-31-05

To help this department evaluate our efforts as an Equal Opportunity Employer, we are requesting that you complete the following items of personal information. Your answers to these questions will be used only to study recruiting and employment patterns and to furnish necessary information for government reports. We appreciate your cooperation.

This sheet will be separated from the employment application upon receipt and will be maintained in a separate file. It will in no way affect consideration for possible employment with the Alabama Department of Mental Health and Mental Retardation.

## PLEASE PRINT

NAME    Jenkins                Anylin              Diann
        Last                   First               Middle

ADDRESS  5451    25½ Avenue East, Tuscaloosa  AL  35405
         Street        City                  State   Zip Code

SOCIAL SECURITY NUMBER ████████████████

TITLE OF POSITIONS APPLIED
FOR AND DATE APPLIED:

Personnel Manager 6/11/04

Dept. Assistant - 10/31/05

RACE:

( ) Caucasian                ( ✓) Black

( ) American Indian          ( ) Asian/Pacific Islander

( ) Hispanic                 ( ) Non-Resident Alien

( ) Other _____

GENDER: ( ) Male  ( ✓) Female

AGE: 41   Birthdate 5/9/6

VETERAN: ( ) Yes  ( ✓) No

ADMH 04-00040

**Arylin Jenkins**
**5751 25th Avenue East**
**Tuscaloosa, Alabama 35405**
**(205) 556-5979**

Organized, computer literate professional with over 16 years of human resource management and assessment experience seeking a position where present skills can be utilized to accomplish organizational objectives.

## Professional Experience

*Temporary Employee*, performed clerical and administrative duties for various agencies throughout Tuscaloosa with brief periods of unemployment between assignments (08/2003 to present).

*Atlanta Technical College, Institutional Effectiveness Specialist,* assisted with implementing and developing institutional wide long and short range strategic planning ideas/strategies for the college; utilized knowledge of regulatory compliance, auditing standards and techniques to monitor and maintain federal compliance; analyzed and assessed the effectiveness of existing programs by providing data analysis in response to specific surveys/questions; prepared and interpreted compliance report; ensuring all activities were in compliance with established policies and procedures, monitored and reconciled Carl Perkins budgetary expenditures totaling over $642,000; coordinated and implemented institutional development activities such as the Integrated Post Secondary Educational Data System reports, Performance Accountability Review audits, strategic planning sessions, designed and executed a plan for maintaining accredited status for academic programs by accreditation agencies to include the Council of Occupational Education (COE) and Commission on Colleges (SACS) audits (06/2002 – 06/2003).

*Childrens' Healthcare of Atlanta, Credentialing Coordinator,* tracked and assured the proper recredentialing of over 1,400 participating healthcare providers working with the hospital by verifying education, licensure, training, work history; hospital privileges, etc.; audited files and prepared reports in preparation for Joint Commission Accreditation for Healthcare Organization audit; reduced physician credentialing backlog 20% by reorganizing and streamlining the credentialing process (09/2001 to 03/2002).

*Credentialing Supervisor, Physicians Health Plan, Inc.,* supervised and provided direction/training to four staff members that verified education, licensure, training, work history; hospital privileges, etc. for over 6,000 associated medical practitioners, served as the liaison between seven delegated entities, revised and wrote over thirteen credentialing policies; served as subject matter expert during preparation and actual NCQA survey; maintained triple databases and shared information between them; combined multiple databases into one, reducing tracking errors by at least 60%; decreased the amount of time it took providers to be recredentialed from six months to providers being recredentialed within 30 days of the actual due date (May 2000 to August 2001).

**Willing to Travel**

ADMH 04-00041

*Credentialing Liaison, United Healthcare/Physicians Health Plan, Inc.,* supervised four credentialing coordinators who were responsible for credentialing network providers and other ancillary facilities/providers; managed the activities of three credentialing committees, including timely and accurate receipt/communication of necessary information to make decisions regarding new and ongoing contract participation; receipt and coordination of provider file changes integrating interactive information sharing process within the Credentialing department (January 1999 to April 2000).

*Senior Credentialing Coordinator, United Healthcare/Physicians Health Plan, Inc.,* provided direction and training to four staff members; managed activities of three credentialing committees, including timely and accurate receipt/communication of necessary information to make decisions regarding new and ongoing contract participation and served as department manager in her absence (July 1998 to January 1999).

*Credentialing Coordinator, United Healthcare/Physicians Health Plan, Inc.* tracked and assured the proper credentialing of newly appointed providers entering the managed care network (June 1997 to June 1998).

*Quality Improvement Departmental Secretary, Moncrief Army Community Hospital,* provided clerical and administrative support to four department chiefs; verified credentials such as education, licensure, training, work history; hospital privileges, etc for network providers; utilized knowledge of assessment tools and localized organizational development solutions; coordinated over 70 classes/information sessions for JCAHO survey; utilized skills in collecting and analyzing data, report writing, and project presentations; ability to communicate effectively both orally and in writing, with special emphasis on customer service and diplomatic problem solving (01/1994 to 06/1997).

## COMPUTER EXPERIENCE

Microsoft Word, Microsoft Excel, Microsoft Access, Microsoft Power Point, Microsoft Publisher, SPSS, Internet Explorer, Lotus-Notes, Scantron, Flips-OMR, PageMaker, Printmaster Plus, DOS

## EDUCATION

Masters of Arts, Human Resource Development          Webster University
Bachelor of Science, Human Resource Management       University of Alabama

**Willing to Travel**

October 31, 2005

Mr. Mike Mathis
Personnel Director
Partlow Development Center
1700 University Blvd East
Tuscaloosa, Alabama 35401

RECEIVED

NOV 2 – 2005

PERSONNEL OFFICE

Dear Mr. Mathis:

I am submitting my resume expressing an interest in the Department Assistant Personnel Manager's position. Let me highlight specific skills, which I would bring to this position.

- ➢ Possess over nine years of experience in designing and implementing company-wide performance improvement and organizational development solutions

- ➢ Assisted with coordinating the strategic planning process for Atlanta Technical College by demonstrating an understanding of the purpose and process of strategic planning, including new methodologies which included training staff members as necessary

- ➢ Developed, coordinated and monitored a system of Institutional Effectiveness and Evaluation that included input from students, parents, staff and business representatives

- ➢ Participated in the design and implementation of the evaluation, planning, and budgeting system that Atlanta Technical College used to ensure quality programs and services, planned and budgeted for improvement and applied for federal and state funding

- ➢ Worked closely with instructors, student services personnel (Registrar, Job Placement Coordinator, Special Needs and Retention Coordinator, and Enrollment Management Director) and Economic Development Personnel (Economic Analyst, New Connection to Work Coordinator and Continuing Education Director) to coordinate information submitted to Integrated Post Secondary Data System (IPEDS), college board and various reports

- ➢ Maintained the components of the Performance Accountability System (PAS) including the Local Application and Capital Outlay reports in accordance with state and federal guidelines

- ➢ Attended PAS conferences as requested and served as point of contact with Department of Technical and Adult Education staff

- ➢ Developed and maintained professional expertise by attending appropriate professional workshops and training as schedule permits and with approval of supervisor

- ➢ Served as lead facilitator for six quality teams within Atlanta Technical College

ADMH 04-00043

➢ Analyzed and assessed the effectiveness of existing programs by collecting, analyzing and organizing data for input into planning and evaluation activities so that changes may be anticipated and adapted

➢ Evaluated policies, procedures and processes on a continual basis and recommended/implemented changes

➢ Used available computer resources, compiled data in ways useful to department personnel in decision-making such as new program approvals, personnel and facility requests, budget development and allocation of funds

➢ Produced written reports, presentations, and procedures to assist Atlanta Technical College in the performance of local responsibilities to board members, foundation members, school and community officials

➢ Continually coordinated institutional resources needed to systematically evaluate the technical college's effectiveness, provided technical assistance and monitored federal programs for compliance with regulations

➢ Provided interpretation and guidance to Atlanta Technical College personnel to ensure compliance with state and federal regulation

➢ Designed and executed a plan for maintaining accreditated status for the academic programs by accreditation agencies and prepared accreditation files for reaccreditation audits

➢ Coordinated with employees to obtain all required documentation to demonstrate continued compliance with accreditation standards, processes and provided training, as required

➢ Compiled and submitted annual reports during the period of the accreditation award, as required, and provided ongoing guidance to administration on accreditation matters

You will find that I am a hands on contributor possessing the skills, knowledge and experience to immediately add value to the Alabama Department of Mental Health and Mental Retardation. Thanking you in advance for your time and consideration. I look forward to hearing from you soon.

Cordially,

Arylin Jenkins
5751 25th Avenue East
Tuscaloosa, Alabama 35405

## DEPARTMENT OF MENTAL HEALTH / MENTAL RETARDATION
## APPLICATION EVALUATION FORM

_Jessica Eiland_
Applicant Name

Departmental Assist Personnel Mgr / H5500
Position Title / Job Code

_05-27_
Announcement #

_9/30/05_
Closing Date

_9/28/05_
Date Received

_88 13.3.39_
Positions #

_10/4/05_
Date Evaluated

_M. Mathis_
Rater's Name

---

## MINIMUM QUALIFICATIONS REQUIREMENTS FOR POSITION

**Qualification:**

**Applicant's Training / Education:**   *Meets Requirements*   _yes_
Bachelor's degree in Human Resource Management / Personnel Management, Business Administration, Public Administration, or related field.

**Applicant's Experience:**   *Meets Requirements*   _no_   _12 months_
Extensive (72 months or more) working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity.

**Licensure / Certification:**   *Meets Requirements*  _N/A_   **Date Verified** _____

**Special Requirements:**   *Meets Requirements*  _N/A_   **Date Verified** _____

**Meets Minimum Qualification Requirements:**  _NO_

**Preference Will Be Given To Individuals With:**
- Master's degree in any of the above specified fields of study.
- Work experience in the governmental / public sector.
- Work experience in a healthcare setting.

---

**Meets Minimum Qualification Requirements (1 point)**     _0 (NO)_

**Additional Specific / Related Education (2 points)**
  Required Degree _____   Additional Related Degree _____

**Additional Specific / Related Experience (5 points)**
  Total Related Experience – Required Experience =Additional Related Experience (/12)
  One Point For Each Full Year of Additional Related Experience Up to Maximum of 5

**Preference Points**
  Work experience in preferred area:   1 to 5 years = 1 point    6 to 10 years = 2 points
  MS Degree = 2 points

**OVERALL RATING:**

=========

---

**Interview:**   Date: _____   Time: _____

ADMH 04-00045

CLASS TITLE: *Dept Asst Per Mgr*    CODE: *H5500*

NAME: *Jessica Eiland*

DEGREE SUBJECT: ~~MBA~~ *Bus Adm* ) / *Acct.*

DEGREE LEVEL / DATE RECEIVED: *MBA / 8/99* — ( *BS / 8/97*

TOTAL QUALIFIED, POST DEGREE WORK EXPERIENCE: *12 M*

PROFESSIONAL LICENSURE: *N/A*

## WORK EXPERIENCE WORKSHEET:

1.) QUALIFIED = Y -- (N)   YRS/MON = *7m*    *Office Mgr / Controller*
*Ken Cop Ford*    *02/05 – current*
*Troy, AL*

2.) QUALIFIED = (Y) - N   YRS/MON = *12 m*    *02/04 – 02/05*
*5 AL Skills Training – (Career Link Facilitator )*
*Luverne, AL*    *Career Center*

3.) QUALIFIED = Y -- (N)   YRS/MON = *1 M*    *01/04 – 01/04*
*Family Guidance Center of AL (Non-Profit Child Care Mgmt)*
*Dothan, AL*    *( Eligibility Specialist )*

4.) QUALIFIED = Y -- (N)   YRS/MON = *76 M*    *05/93 – 12/03*
*South Central AL Childcare Mgmt*    ( *Received BS*
*Luverne, AL*    *( Eligibility Supv )*    *in 8/97* )
*( Non-Profit Childcare Mgmt Agency )*

5.) QUALIFIED = Y -- N   YRS/MON = _____

ADMH 04-00046

**APPLICATION FOR EMPLOYMENT**
Exempt Classification



ADDRESS ON ANNOUNCEMENT

RECEIVED
SEP 28 2005
HUMAN RESOURCES BUREAU

GENERAL INSTRUCTIONS
Complete all portions of this application that are applicable to you and the position for which you are applying. Failure to do so may result in your not being considered for the position for which you applying Type or print clearly in ink.

## AN EQUAL OPPORTUNITY EMPLOYER

| Full Name | *Eiland* *Jessica,* *C.* |
|---|---|
| | Last       First       Middle |

Social Security Number ▓▓▓▓▓▓▓▓▓▓▓

Address *3094 Georgiana Hwy.*
Street                                        Apt. #
*Brantley     AL     36009*
City              State          Zip Code

If you are applying for a specific current vacancy, please give position title and annoucement #_____
*C5-27*
*Dept. Asst. Personnel Mgr.*

| Telephone Number | Home: (*334*) *527-3758* |
|---|---|
| | Office: (*334*) *566-7350* |

Legal Residence *Brantley    Crenshaw    AL*
City          County          State

Place of Birth *Montgomery   Montgomery   AL*
City          County          State

Minimum annual salary you would consider: _____

### LOCATIONS

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of non-merit vacancies at those facilities in which you express an interest. Please indicate below at which of our facilities you would consider employment. You will only be sent announcements of openings at facilities which you check. After one year and after each succeeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your application will be destroyed.

**Mental Illness Facilities**
( ) Bryce Hospital — Tuscaloosa, AL
( ) Searcy Hospital — Mt. Vernon, AL
( ) Harper Geriatric Psychiatry Center — Tuscaloosa, AL
( ) North Alabama Regional Hospital — Decatur, AL
( ) Thomasville MH Rehab Center — Thomasville, AL
( ) Hardin Secure Medical Facility — Tuscaloosa, AL
( ) Greil Psychiatric Hospital — Montgomery, AL

**Mental Retardation Facilities**
( ) William D. Partlow Developmental Center — Tuscaloosa, AL
( ) Albert P. Brewer Developmental Center — Mobile, AL
( ) Lurleen B. Wallace Developmental Center — Decatur, AL
( ) J. S. Tarwater Developmental Center — Wetumpka, AL

**ICF Nursing Homes**
( ) Alice Kidd — Tuscaloosa, AL
( ) S.D. Allen — Tuscaloosa, AL
( ) Claudette Box — Mt. Vernon, AL

(X) Central Administrative Offices— Montgomery, AL

(See map on last page for locations of facilities)

### REFERRAL

Where did you learn about the job for which you applied, or about the Department's application procedure?

_____ Voluntary Walk-in
_____ State Employment Service
_____ College Career Day
_____ DMH/MR Employee
_____ Newspaper Ad
_____ Professional Journal Ad
_____ Radio/TV Ad
_____ Private Employment Agency
__X__ State Personnel Department
_____ Professional Convention
_____ Friend/Relative
_____ Responded to Announcement of Vacancy
_____ Other — Please explain:

Are you willing to accept shift work during evening and night hours?  Yes ( )   No (X)

Are you available to work __X__ Full Time _____ Part Time _____ Temporary?

**The Alabama Department of Mental Health and Mental Retardation is an Equal Opportunity Employer. It does not discriminate with respect to race, color, religion, national origin, gender, age, or disability.**

**PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION**

ADMH 04-00047

## WORK HISTORY
### THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME IS ATTACHED

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

**1. Current or Last Employer** Ken Cox Ford, Inc.
**Your Official Job Title** Office Manager/Controller
**Address** 1270 Hwy. 231 South, Troy, AL 36081
**Type of Business** Automobile Dealership

| FROM Month | Year | TO Month | Year | Total Months | Number of Hours Per Week | Beginning Salary | Ending Salary | May we contact your employer? |
|---|---|---|---|---|---|---|---|---|
| 02 | 2005 | | | 7 | 40 | $ Per Year | $ Per Year | ( ) Yes (X) No |

**Number/Title of Employees You Supervised On a Continuing Basis** 8 – Rental Manager/Title Clerk/Sales Consultants
**Equipment You Operated** All office equipment
**Name, Title and Telephone Number of Supervisor** Mike Kilcrease, General Manager (334)566-7350
**Reason for Leaving**

**Describe Your Duties in Detail**

Responsible for all financial activities and daily operations.
Conduct analyses and make recommendations to improve the operational efficiency and financial success of the dealership.
Work closely with the General Manager and fill in upon his absence.
Supervise sales and office personnel including the accounts payable, accounts receivable, title and rental departments.
Oversee the preparation of financial reports, direct investment activities, and implement cash management strategies.
Perform all HR functions including recruitment and administration of all benefits and policies.

**2. Employer** South Alabama Skills Training Consortium (Luverne CareerLink)
**Your Official Job Title** CareerLink Facilitator (Specialist I)
**Address** 77 S. Forest Avenue, Luverne, AL 36049
**Type of Business** Career Center

| FROM Month | Year | TO Month | Year | Total Months | Number of Hours Per Week | Beginning Salary | Ending Salary | May we contact your employer? |
|---|---|---|---|---|---|---|---|---|
| 02 | 2004 | 02 | 2005 | 12 | 40 | Per Year | $ Per Year | (X) Yes ( ) No |

**Number/Title of Employees You Supervised On a Continuing Basis**
**Equipment You Operated** All office equipment
**Name, Title and Telephone Number of Supervisor** Gaye Shipes, Coordinator (334)566-9030
**Reason for Leaving** Contract with State of Alabama was ending June, 2005.

**Describe Your Duties in Detail**

Conducted employability assessment process to include: orientation; evaluation of interests, aptitudes, and academic achievement; and a structured interview.
Prepared individual employment plans based upon assessment results.
Conducted interviews to assess client needs, disseminated information regarding employment programs, explained available program services, and facilitated client access to all employment programs.
Assisted in the selection and referral of participants to program activities and employers.
Provided ongoing case management functions for assigned individuals.
Accepted, processed, screened, and selected applications for employment program services.
Completely set up new office, independently.

**3. Employer** Family Guidance Center of Alabama, Inc.
**Your Official Job Title** Eligibility Specialist
**Address** 2431 West Main Street, Suite 1102, Dothan, AL 36301
**Type of Business** Non-Profit Child Care Management Agency

| FROM Month | Year | TO Month | Year | Total Months | Number of Hours Per Week | Beginning Salary | Ending Salary | May we contact your employer? |
|---|---|---|---|---|---|---|---|---|
| 01 | 2004 | 01 | 2004 | 1 | 40 | $ Per Year | $ Per Year | ( ) Yes (X) No |

**Number/Title of Employees You Supervised On a Continuing Basis**
**Equipment You Operated** All Office Equipment
**Name, Title and Telephone Number of Supervisor**
**Reason for Leaving** To obtain job with benefits/retirement.

**Describe Your Duties in Detail**

Acted as consultant in transition process.

ADMH 04-00048

| 4. Employer | Eligibility/Overpayment Supervisor |
|---|---|
| South Central Alabama Childcare Management Agency, Inc. | Type of Business |
| Address | Non-Profit Child Care Management Agency |
| P.O. Box 610, Luverne, AL 36049 | |

| FROM | | TO | | Total Months | Number of Hours Per Week | Beginning Salary | Ending Salary | May we contact your employer? |
|---|---|---|---|---|---|---|---|---|
| Month | Year | Month | Year | 128 | 40 | $ ▓ Per Year | $ ▓ Per Year | (X) Yes  ( ) No |
| 05 | 1993 | 12 | 2003 | | | | | |

| Number/Title of Employees You Supervised On a Continuing Basis | 7 | Equipment You Operated All Office Equipment |
|---|---|---|

| Name, Title and Telephone Number of Supervisor | Janice Carter, Executive Director (334)335-3095 | Reason for Leaving State Contract Ended 12/31/03 |
|---|---|---|

Describe Your Duties in Detail

***Eligibility and Overpayment Supervisor/Counselor, LAN Server Administrator, Assistant Fiscal Officer***
August, 1999 – December, 2003

Planned, supervised and determined eligibility for subsidized childcare.
Supervised and determined overpayment claims for subsidized childcare clients, which included assessing and collecting monetary claims.
Wrote winning proposals for State/Federal (CCDBG/CCDF) funds.
Administered LAN (Local Area Network) for Management Agency.
Collected and computed payroll timesheets, and processed and wrote payroll and provider checks.
Assisted Fiscal Officer with accounting and bookkeeping duties.
Designed and updated all agency forms.
Acted as Director in the absence of the Executive Director.

***Eligibility Counselor*** – September, 1997 – August, 1999

Determined eligibility for subsidized childcare, which included working closely with and counseling low-income parents. This also included intensive daily computer work.
Responsible for eligibility casework within a five county region.
Responsible for collecting and computing payroll timesheets and processing and writing payroll and provider checks, as well as assisting the fiscal officer with accounting and bookkeeping duties.

***Fiscal Clerk*** – May, 1993 – August, 1997 (while attending college)

Designed and prepared application forms as well as other necessary forms used in determining eligibility for child care financial assistance.
Responsible for collecting and computing payroll timesheets and processing and writing payroll and provider checks.
Daily duties included typing, filing, answering the phone, and assisting the fiscal officer.

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release or copy thereof, within one year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME *Jessica C. Eiland* (Signature)
SOCIAL SECURITY # ▓

FULL NAME Jessica C. Eiland (Typed or Printed Name)
CURRENT ADDRESS 3044 Georgiana Hwy Brantley, AL 36009

DATE OF BIRTH 10/06/75  PLACE OF BIRTH Montgomery, AL
WITNESS *Anne Mitchell*  TITLE Title Clerk  DATE 9/19/05

## CERTIFICATE/SIGNATURE

Must be signed in ink by applicant

I Certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

Signed *Jessica C. Eiland*  DATE 9/19/05
2/01

ADMH 04-00049

# ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION

## APPLICANT DATA RECORD

DATE: _9/19/05_

To help this Department evaluate our efforts as an Equal Opportunity Employer, we are requesting that you complete the following items of personal information. Your answers to these questions will be used only to study recruiting and employment patterns, and to furnish necessary information for government reports. We appreciate your cooperation.

This sheet will be separated from the employment application upon receipt, and will be maintained in a separate file. It will, in no way, affect consideration for possible employment with the Alabama Department of Mental Health and Mental Retardation.

## PLEASE  PRINT

NAME: _Eiland_ (Last)   _Jessica_ (First)   _Carter_ (Middle)

ADDRESS: _3094 Georgiana Hwy_ (Street)   _Brantley_ (City)   _AL_ (State)   _36009_ (Zip Code)

SOCIAL SECURITY NUMBER: ▮▮▮▮▮▮▮

TITLE OF POSITIONS APPLIED FOR AND DATE APPLIED: _05-27 - Dept. Asst. Personnel Mgr._

RACE:

( X ) Caucasian    ( ) Black

( ) American Indian    ( ) Asian/Pacific Islander

( ) Hispanic    ( ) Non-Resident Alien

( ) Other _____

GENDER: ( ) Male  ( X ) Female

AGE: _29_  Birthdate _10/10/75_

VETERAN: ( ) Yes  ( Y ) No

ADMH  04-00050

## STATE FACILITIES



★ 4. North Alabama
■ 10. Wallace

● 12. Alice Kidd
★ 1. Bryce   ● 13. S.D. Allen
★ 3. Harper
★ 6. Secure Medical
■ 8. Partlow   ■ 11. Tarwater
★ 7. Greil
▲ Central Office

★ 5. Thomasville

● 14. Claudette Box
★ 2. Searcy

■ 9. Brewer

★ **MENTAL ILLNESS FACILITIES**
1. Bryce Hospital — Tuscaloosa, AL
2. Searcy Hospital — Mt. Vernon, AL
3. Harper Geriatric Psychiatry Center — Tuscaloosa, AL
4. North Alabama Regional Hospital — Decatur, AL
5. Thomasville MH Rehab Center — Thomasville, AL
6. Hardin Secure Medical Facility — Tuscaloosa, AL
7. Greil Psychiatric Hospital — Montgomery, AL

■ **MENTAL RETARDATION FACILITIES**
8. William D. Partlow Developmental Center — Tuscaloosa, AL
9. Albert P. Brewer Developmental Center — Mobile, AL
10. Lurleen B. Wallace Developmental Center — Decatur, AL
11. J. S. Tarwater Developmental Center — Wetumpka, AL

● **ICF NURSING HOMES**
12. Alice Kidd — Tuscaloosa, AL
13. S.D. Allen — Tuscaloosa, AL
14. Claudette Box — Mobile, AL

▲ **CENTRAL ADMINISTRATIVE OFFICES** — Montgomery, AL

CONTINUE ON TO BACK PAGE ——————————————————————————————→

**PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION**

ADMH  04-00051

## EDUCATION

High school graduate or GED? (X) Yes    ( ) No    Be as specific as possible about degree and major.

| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did You Graduate? | Degree and Date | Major |
|---|---|---|---|---|---|---|
| College Undergraduate | Troy University, Troy, AL | 8/93 | 8/97 | Yes | BS - 8/97 | Acctg |
| College Undergraduate | | | | | | |
| College Graduate | Troy University, Troy, AL | 8/97 | 8/99 | Yes | MBA - 8/99 | Bus. Admin. |
| College Graduate | | | | | | |
| Vocational Business | | | | | | |

Circle Highest Grade Completed

High School    9    10    11    12    College    13    14    15    16    Graduate School    17    (18)    19

If you attended college in pursuit of either an undergraduate or graduate degree and did not obtain such, please indicate how many hours were received toward the degree:

Sem. Hrs. _____
Qtr. Hrs. _____

Please include the appriorate transcript with this application where applicable.

Please include copies of professional certificates/license, date, and state issued when applicable

CCE - Global Career Development Facilitator    GCDF07685    10/24/04

## EMPLOYER/PROFESSIONAL REFERENCES

List three reliable persons, not relatives, who know you well enough to give information about your professional/educational background.

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| John D. Harrison, Superintendent | 401 Adams Avenue, Suite 680 Montgomery, AL 36104 | (334) 242-3452 | Superintendent, AL State Banking Dept. |
| William Petrey, President | 105 S. Woodford Ave. Luverne, AL 36049 | (334) 335-3346 | President, First Citizens Bank |
| Marlene Pinckard, Controller | P.O. Box 543 Brantley, AL 36009 | (334) 527-3019 | Controller, Cox Container |

Have you ever been involuntarily terminated or forced to resign from a position?    ( ) Yes  (X) No

Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment)    ( ) Yes  (X) No

**If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.**

Have you filed an application with this Department before?    ( ) Yes    (X) No.    If yes, give date and facility name:

Date _____    Facility Name _____

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? (X) Yes    ( ) No. If not a citizen of the U.S. give Visa type/status _____ . (Proof of U.S. citizenship or Immigration status will be required upon employment.)

Date when you are available to begin work: 10/1/2005 _____

## Jessica C. Eiland
### 3094 Georgiana Highway
### Brantley, AL 36009
### (334) 527-3758 (H)    (334) 303-8794 (C)
email: jessicaeiland@hotmail.com

**Objective:** To obtain a challenging position with the opportunity to utilize my education and experience, along with creative and interpersonal skills, to facilitate the growth of my employer.

**Education:**

**Kennasaw State University,** Kennasaw, Georgia 30144
*Career Development Facilitator Certification, May, 2004*

**Troy State University,** Troy, Alabama 36082
*Master of Science in Business Administration, August, 1999, GPA: 3.9*

**Troy State University,** Troy, Alabama 36082
*Bachelor of Science (Cum Laude) in Accounting, August, 1997, GPA: 3.5*

**Brantley High School,** Brantley, Alabama 36009
*Advanced High School Diploma (Salutatorian), 1993*

**Experience:**

02/21/05
- Present

**Ken Cox Ford, Inc.**
1270 Highway 231 South, Troy, Alabama 36081

*Office Manager/Controller*

- Responsible for all financial activities and daily operations.
- Conduct analyses and make recommendations to improve the operational efficiency and financial success of the dealership.
- Work closely with the General Manager and fill in upon his absence.
- Supervise sales and office personnel including the accounts payable, accounts receivable, rental and title departments.
- Oversee the preparation of financial reports, direct investment activities, and implement cash management strategies.
- Perform all HR functions including recruitment and administration of all benefits and policies.

02/01/04
- 02/18/05

**South Alabama Skills Training Consortium (Luverne CareerLink)**
77 S. Forest Avenue, Luverne, Alabama 36049

*CareerLink Facilitator*

- Conducted employability assessment process to include: orientation; evaluation of interests, aptitudes, and academic achievement; and a structured interview.
- Prepared individual employment plans based upon assessment results.
- Conducted interviews to assess client needs, disseminated information regarding employment programs, explained available program services, and facilitated client access to all employment programs.
- Assisted in the selection and referral of participants to program activities and employers.
- Provided ongoing case management functions for assigned individuals.
- Accepted, processed, screened, and selected applications for employment program services.

# Jessica C. Eiland

| | |
|---|---|
| 01/01/04<br>- 01/31/04 | **Family Guidance Center of Alabama, Inc.**<br>2431 West Main Street, Suite 1102, Dothan, Alabama 36301 |

*Eligibility Specialist*

♦ Acted as consultant in transition process.

| | |
|---|---|
| 05/01/93<br>- 12/31/03 | **South Central Alabama Childcare Management Agency, Inc.**<br>P.O. Box 610, Luverne, Alabama 36049    *(State contract ended 12/31/03)* |

*Eligibility and Overpayment Supervisor/Counselor, LAN Server Administrator, Assistant Fiscal Officer* – August, 1999 – December, 2003

♦ Designed, interpreted and implemented policies and regulations on state and local levels.
♦ Planned, supervised and determined eligibility for subsidized childcare.
♦ Supervised and determined overpayment claims for subsidized childcare clients, which included assessing and collecting monetary claims.
♦ Wrote winning proposals for State/Federal (CCDBG/CCDF) funds.
♦ Administered LAN (Local Area Network) for Management Agency.
♦ Collected and computed payroll timesheets, and processed and wrote payroll and provider checks.
♦ Assisted Fiscal Officer with accounting and bookkeeping duties.
♦ Designed and updated all agency forms.
♦ Acted as Director in the absence of the Executive Director.

*Eligibility Counselor* – September, 1997 – August, 1999

♦ Determined eligibility for subsidized childcare, which included working closely with and counseling low-income parents. This also included intensive daily computer work.
♦ Responsible for eligibility casework within a five county region.
♦ Responsible for collecting and computing payroll timesheets and processing and writing payroll and provider checks, as well as, assisting the fiscal officer with accounting and bookkeeping duties.

*Fiscal Clerk* – May, 1993 – August, 1997 (while attending college)

♦ Designed and prepared application forms and other necessary forms used in determining eligibility for child care financial assistance.
♦ Responsible for collecting and computing payroll timesheets, and processing and writing payroll and provider checks.
♦ Daily duties included typing, filing, answering the phone, and assisting the fiscal officer.

| | |
|---|---|
| Skills: | **Special Skills:** Administration, Analysis, Supervision, Communication, Facilitation, Organization, Planning, Multi-tasking, Problem Identification and Resolution, and Training.<br>**Computer Skills:** Autosoft, GMS Accounting Software, Dac Easy Accounting Software, Extensive Unix Data Base Software designed for Child Care Management Agencies, Microsoft Works, Microsoft Word, Microsoft Excel, Microsoft Outlook, Lotus, Print Shop Deluxe and Ensemble, Microsoft Publisher, PowerPoint, Internet Search Skills, Job Search Skills, WPM>50. |
| References: | Available upon request. |

ADMH 04-00054

# THE
# TROY STATE UNIVERSITY
## SYSTEM



**TROY STATE UNIVERSITY**
UNIVERSITY RECORDS
TROY, ALABAMA 36082
(334)-670-3170/3164

WARNING: Original document has an artificial watermark on reverse side.

28 Feb 2000

Jessica Leighe Eiland

5183 Springhill Road

Brantley, AL 36009

Graduate Transcript

Business Admin

Master in Bus Admin        AUG 1999

ID. NO. : 0242620     GECE Taken: Y
SS# :

| Term | Course Title | Dept | Num | Sec | Grd | Rpt Crs | Hrs Att | Hrs Ernd | Qual Pts | Term GPA | Cum GPA |
|------|--------------|------|-----|-----|-----|---------|---------|----------|----------|----------|---------|
| 97/SU | Bus Law For Accountants | LAW | 600 | GG | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | | 5.0 | 5.0 | 20.0 | 4.000 | 4.000 |
| 97/FA | Income Tax Research | ACT | 693 | EE | DP | | | 0.0 | 0.0 | | |
| | Managerial Economics | ECO | 651 | GG | A | | 5.0 | 5.0 | 20.0 | | |
| | Financial Management | FIN | 631 | XK | B | | 5.0 | 5.0 | 15.0 | | |
| | | | | | | | 10.0 | 10.0 | 35.0 | 3.500 | 3.667 |
| 98/WN | Managerial Accounting | ACT | 691 | JJ | A | | 5.0 | 5.0 | 20.0 | | |
| | Adv Auditing | ACT | 698 | GG | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | | 10.0 | 10.0 | 40.0 | 4.000 | 3.800 |
| 98/SP | Acct Res & Comm | ACT | 695 | GG | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | | 5.0 | 5.0 | 20.0 | 4.000 | 3.833 |
| | Unconditional | | | | | | | | | | |
| 98/SU | Adv Accounting Theory | ACT | 699 | FF | A | | 5.0 | 5.0 | 20.0 | | |
| | Business Strategy | BUS | 611 | JJ | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | | 10.0 | 10.0 | 40.0 | 4.000 | 3.875 |
| 98/FA | Income Tax Research | ACT | 693 | JJ | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | | 5.0 | 5.0 | 20.0 | 4.000 | 3.889 |
| 99/SP | Adv Accounting Problems | ACT | 690 | GG | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | | 5.0 | 5.0 | 20.0 | 4.000 | 3.900 |

99/SU  Jessica Leighe Eiland
       DEGREE EARNED        08/99
       Master in Bus Admin
       Major: Bus Adm/Accounting

|  |  |  |  |  |
|--|--|--|--|--|
| 50.0 | 50.0 | 195.0 | 3.900 | 3.900 |

99/CV
******TSU converted to the semester system Fall 1999.******

    TOTALS   CRED.ATT = 50.00   CRED.CPT = 50.00   GRADE.PTS = 195.00   GPA = 3.900

*Vickie M. Miles*

This transcript is printed on secured paper and does not require a raised seal. Transcript valid only when it bears the signature of the Registrar.

ADMH 04-00055

THE
**TROY STATE UNIVERSITY**
SYSTEM



**TROY STATE UNIVERSITY**
UNIVERSITY RECORDS
TROY, ALABAMA 36082
(334)-670-3170/3164

WARNING: Original document has an artificial watermark on reverse side

28 Feb 2000

Jessica Leighe Eiland

5183 Springhill Road

Brantley, AL 36009

Undergraduate Transcript

Business Admin

Bachelor of Science        AUG 1997

ID. NO. : 0242620        GECE Taken: Y
SS# :

| Term | Course Title | Dept | Num | Sec | Grd | Rpt Crs | Hrs Att | Hrs Ernd | Qual Pts | Term GPA | Cum GPA |
|------|--------------|------|-----|-----|-----|---------|---------|----------|----------|----------|---------|
| 93/FA | Transfer Credit | | | | | | 0.0 | 10.0 10.0 | 0.0 | 0.000 | 0.000 |
| | | | | | | | | | | | |
| 93/FA | World Regional Geography | GEO | 210 | CC | B | | 5.0 | 5.0 | 15.0 | | |
| | Western Civilization I | HIS | 101 | BB | B | | 5.0 | 5.0 | 15.0 | | |
| | College Algebra | MTH | 111 | AA | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | | 15.0 | 15.0 | 50.0 | 3.333 | 3.333 |
| | | | | | | | | | | | |
| 94/WN | Personal Finance & Eco | ECO | 270 | CC | A | | 5.0 | 5.0 | 20.0 | | |
| | Western Civilization Ii | HIS | 102 | BB | C | | 5.0 | 5.0 | 10.0 | | |
| | Music For Individual Dev | MUS | 131 | DD | A | | 3.0 | 3.0 | 12.0 | | |
| | Ethics & Modern World | PHI | 204 | AA | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | | 18.0 | 18.0 | 62.0 | 3.444 | 3.394 |
| | | | | | | | | | | | |
| 94/SP | Prins Of Accounting I | ACT | 291 | CC | A | | 5.0 | 5.0 | 20.0 | | |
| | Principles Of Biology | BIO | 100 | AA | D | | 5.0 | 5.0 | 5.0 | | |
| | Prins Macro-economics | ECO | 251 | BB | B | | 5.0 | 5.0 | 15.0 | | |
| | | | | | | | 15.0 | 15.0 | 40.0 | 2.667 | 3.167 |
| | | | | | | | | | | | |
| 94/FA | Prins Of Accounting Ii | ACT | 292 | CC | A | | 5.0 | 5.0 | 20.0 | | |
| | Intro Computer Applicatn | CIS | 200 | DW | B | | 3.0 | 3.0 | 9.0 | | |
| | Prins Micro-economics | ECO | 252 | AA | C | | 5.0 | 5.0 | 10.0 | | |
| | Business Statistics | QM | 241 | BB | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | | 18.0 | 18.0 | 59.0 | 3.278 | 3.197 |
| | | | | | | | | | | | |
| 95/WN | Intermediate Acctg I | ACT | 391 | AA | B | | 5.0 | 5.0 | 15.0 | | |
| | Mgmt Information Systems | CIS | 241 | KK | A | | 5.0 | 5.0 | 20.0 | | |
| | Legal Environment | LAW | 221 | GM | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | | 15.0 | 15.0 | 55.0 | 3.667 | 3.284 |
| | | | | | | | | | | | |
| 95/SP | Intermediate Acctg Ii | ACT | 392 | AA | C | | 5.0 | 5.0 | 10.0 | | |
| | Visual Arts | ART | 133 | DD | A | | 3.0 | 3.0 | 12.0 | | |
| | World Literature I | ENG | 205 | CT | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | | 13.0 | 13.0 | 42.0 | 3.231 | 3.277 |
| | | | | | | | | | | | |
| 96/WN | Cost Accounting I | ACT | 395 | AA | B | | 5.0 | 5.0 | 15.0 | | |
| | Pr Mgmt & Org Beh | MGT | 371 | CC | A | | 5.0 | 5.0 | 20.0 | | |
| | Intro Operation Res | QM | 342 | DD | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | | 15.0 | 15.0 | 55.0 | 3.667 | 3.330 |
| | | | | | | | | | | | |
| 96/SP | Intermediate Acctg Iii | ACT | 393 | AA | A | | 5.0 | 5.0 | 20.0 | | |

*** CONTINUED ***

ADMH 04-00056

# THE TROY STATE UNIVERSITY SYSTEM



**TROY STATE UNIVERSITY**
UNIVERSITY RECORDS
TROY, ALABAMA 36082
(334)-670-3170/3164

WARNING: Original document has an artificial watermark on reverse side

28 Feb 2000

Jessica Leighe Eiland

5183 Springhill Road

Brantley, AL 36009

Undergraduate Transcript

Business Admin

Bachelor of Science          AUG 1997

ID. NO. : 0242620          GECE Taken: Y
SS# :

| Term | Course Title | Dept | Num Sec | Grd | Rpt Crs | Hrs Att | Hrs Ernd | Qual Pts | Term GPA | Cum GPA |
|------|--------------|------|---------|-----|---------|---------|----------|----------|----------|---------|
| | Corporation Finance | FIN | 331 AB | A | | 5.0 | 5.0 | 20.0 | | |
| | Bowling | HPR | 103 CM | A | | 1.0 | 1.0 | 4.0 | | |
| | Prins Of Marketing | MKT | 361 CC | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | 16.0 | 16.0 | 64.0 | 4.000 | 3.416 |
| 96/SU | World Literature Ii | ENG | 206 AA | B | | 5.0 | 5.0 | 15.0 | | |
| | Operations Management | MGT | 373 BB | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | 10.0 | 10.0 | 35.0 | 3.500 | 3.422 |
| 96/FA | Governmental Accounting | ACT | 394 AA | A | | 5.0 | 5.0 | 20.0 | | |
| | Income Tax Account I | ACT | 494 GG | A | | 5.0 | 5.0 | 20.0 | | |
| | Golf | HPR | 104 CT | A | | 1.0 | 1.0 | 4.0 | | |
| | Fundamentals Of Speech | SPH | 241 JJ | A | | 5.0 | 5.0 | 20.0 | | |
| | | | | | | 16.0 | 16.0 | 64.0 | 4.000 | 3.483 |
| 97/WN | Income Tax Accounting II | ACT | 495 GG | A | | 5.0 | 5.0 | 20.0 | | |
| | Auditing | ACT | 497 AA | B | | 5.0 | 5.0 | 15.0 | | |
| | Strategic Management | MGT | 476 EE | B | | 5.0 | 5.0 | 15.0 | | |
| | | | | | | 15.0 | 15.0 | 50.0 | 3.333 | 3.470 |
| 97/SP | Advanced Accounting 1 | ACT | 491 GG | A | | 5.0 | 5.0 | 20.0 | | |
| | Bus Comm & Report Writing | BAN | 382 AA | A | | 5.0 | 5.0 | 20.0 | | |
| | Aerobic Dance I | HPR | 139 EE | A | | 1.0 | 1.0 | 4.0 | | |
| | Physical Science | SCI | 233 KK | B | | 5.0 | 5.0 | 15.0 | | |
| | | | | | | 16.0 | 16.0 | 59.0 | 3.688 | 3.489 |
| 97/SU | Basic Study Techniques | ENG | 150 BB | A | | 2.0 | 2.0 | 8.0 | | |
| | Intermed Golf | HPR | 204 BB | A | | 1.0 | 1.0 | 4.0 | | |
| | International Marketing | MKT | 468 AA | B | | 5.0 | 5.0 | 15.0 | | |
| | | | | | | 8.0 | 8.0 | 27.0 | 3.375 | 3.484 |

97/SU Jessica Leighe Eiland
      DEGREE EARNED    08/97
      Bachelor of Science
      Cum Laude
      Major: Accounting
      Major: Business Admin

                                        190.0 200.0 662.0 3.484 3.484

99/CV
      *** CONTINUED ***

This transcript is printed on secured paper and does not require a raised seal. Transcript valid only when it bears the signature of the Registrar.

ADMH 04-00057

# THE
# TROY STATE UNIVERSITY
## SYSTEM



**TROY STATE UNIVERSITY**
UNIVERSITY RECORDS
TROY, ALABAMA 36082
(334)-670-3170/3164

WARNING: Original document has an artificial watermark on reverse side.

28 Feb 2000

Jessica Leighe Eiland                    Undergraduate Transcript

5183 Springhill Road                        Business Admin

                              Bachelor of Science          AUG 1997

Brantley, AL 36009              ID. NO. : 0242620      GECE Taken: Y
                                SS#    :

| Term | Course Title | Dept | Num | Sec | Grd | Rpt Crs | Hrs Att | Hrs Ernd | Qual Pts | Term GPA | Cum GPA |
|------|-------------|------|-----|-----|-----|---------|---------|----------|----------|----------|---------|

*****TSU converted to the semester system Fall 1999.******

        TOTALS    CRED.ATT = 190.00    CRED.CPT = 200.00    GRADE.PTS = 662.00    GPA = 3.484

*Vickie M. Miles*

# LBW COLLEGE

LURLEEN B. WALLACE JUNIOR COLLEGE
P.O. BOX 1418
ANDALUSIA, AL 36420-1418

**PERMANENT ACADEMIC RECORD**

EILAND JESSICA CARTER
Route 1 Box 7 B
Brantley                AL 36009

| DEPT | COURSE | COURSE DESCRIPTION | GRADE | HOURS | HOURS | QUALITY |
|---|---|---|---|---|---|---|
| | | - Summer 1994 - | | | | |
| ENG | 101 | English Composition I | A | 5 | 5 | 20 |
| ENG | 102 | English Composition II | A | 5 | 5 | 20 |
| | | Quarter GPA   4.00 | | 10 | 10 | 40 |
| | | Cumulative GPA   4.00 | | 10 | 10 | 40 |

ISSUED TO STUDENT

**PRINT DATE** 5/21/98

ADVISOR Thomasson

DATE OF BIRTH 10/06/1975

EILAND JESSICA CARTER
Route 1 Box 7 B
Brantley                AL 36009

COLLEGE OFFICIAL AND SEAL
DATE 5/21/98

ADMH 04-00059

# DEPARTMENT OF MENTAL HEALTH / MENTAL RETARDATION
## APPLICATION EVALUATION FORM

*Tracey Bailey*
Applicant Name

Departmental Assist Personnel Mgr / H5500
Position Title / Job Code

*05-27*
Announcement #

*9/30/05*
Closing Date

*9/28/05*
Date Received

*88 13339*
Positions #

*10/5/05*
Date Evaluated

*M. Mathis*
Rater's Name

---

## MINIMUM QUALIFICATIONS REQUIREMENTS FOR POSITION

**Qualification:**

**Applicant's Training / Education:**     *Meets Requirements*  *Yes*
Bachelor's degree in Human Resource Management / Personnel Management, Business Administration, Public Administration, or related field.

**Applicant's Experience:**     *Meets Requirements*  *NO*
Extensive (72 months or more) working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity.

**Licensure / Certification:**     *Meets Requirements*  *N/A*     **Date Verified** _____

**Special Requirements:**     *Meets Requirements*  *N/A*     **Date Verified** _____

**Meets Minimum Qualification Requirements:**  *NO*

**Preference Will Be Given To Individuals With:**
- Master's degree in any of the above specified fields of study.
- Work experience in the governmental / public sector.
- Work experience in a healthcare setting.

---

**Meets Minimum Qualification Requirements (1 point)** _____
**Additional Specific / Related Education (2 points)** _____
  Required Degree _____     Additional Related Degree _____

**Additional Specific / Related Experience (5 points)** _____
  Total Related Experience – Required Experience =Additional Related Experience (/12)
  One Point For Each Full Year of Additional Related Experience Up to Maximum of 5

**Preference Points** _____
  Work experience in preferred area:   1 to 5 years = 1 point     6 to 10 years = 2 points
  MS Degree = 2 points

**OVERALL RATING:** ========

---

**Interview:**   Date: _____     Time: _____

ADMH 04-00060

CLASS TITLE: _Dept asst Personnel Mgr_    CODE: _H5500_

NAME: _Tracey Bailey_

DEGREE SUBJECT: _BS - Bus Adm_    _MS - Mgmt -_

DEGREE LEVEL / DATE RECEIVED: _BS 1/99_    _MS 12/05_

TOTAL QUALIFIED, POST DEGREE WORK EXPERIENCE: _27 Months_

PROFESSIONAL LICENSURE: _N/A_

## WORK EXPERIENCE WORKSHEET:

1.) QUALIFIED = Y - (N)  YRS/MON = _10 M_    _11/04 - Present_
_Bryce Hospital_ _Develope/Instruct staff education/_
_Staff Development_ _training classes._

2.) QUALIFIED = Y - (N)  YRS/MON = _14 M_    _8/03 - Oct /04_
_West AL Mental Health Centers_
_Demopolis, AL_
_Medical Records Supv_    _Adm Records Review_
_HIPAA Compliance Officer_    _PC Software Training_
_Physician Management_

3.) QUALIFIED = (Y) N  YRS/MON = _27 M_    _05/01 - 8/03_
_West AL Mental Health Centers_
_Human Resource Coor / Admin Assistant_

4.) QUALIFIED = Y - N  YRS/MON = _____    _____

5.) QUALIFIED = Y - N  YRS/MON = _____    _____

ADMH 04-00061

# APPLICATION FOR EMPLOYMENT
## Exempt Classification



ADDRESS ON ANNOUNCEMENT



RECEIVED

GENERAL INSTRUCTIONS
Complete all portions of this application that are applicable to you and the position for which you are applying. Failure to do so may result in your not being considered for the position for which you applying Type or print clearly in ink.

HUMAN RESOURCES
BUREAU

## AN EQUAL OPPORTUNITY EMPLOYER

| | |
|---|---|
| **Full Name** Bailey    Tracey    M | If you are applying for a specific current vacancy, please give position title and annoucnent # H-5500 |
| | Department Assistant |
| **Social Security Number** _____ | Personnel Manager |
| **Address** 3114 2 Hwy 25 | **Telephone Number** Home: (334) 624-1828  Office: (225) 759-0745 |
| Moundville AL 35474 | **Legal Residence** Moundville Hale Alabama |
| | **Place of Birth** Selma Dallas Alabama |

---

### LOCATIONS

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of non-merit vacancies at those facilities in which you express an interest. Please indicate below at which of our facilities you would consider employment. You will only be sent announcements of openings at facilities which you check. After one year and after each succeeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your application will be destroyed.

**Mental Illness Facilities**

( ) Bryce Hospital — Tuscaloosa, AL
( ) Searcy Hospital — Mt. Vernon, AL
( ) Harper Geriatric Psychiatry Center — Tuscaloosa, AL
( ) North Alabama Regional Hospital — Decatur, AL
( ) Thomasville MH Rehab Center — Thomasville, AL
( ) Hardin Secure Medical Facility — Tuscaloosa, AL
( ) Greil Psychiatric Hospital — Montgomery, AL

**Mental Retardation Facilities**

( ) William D. Partlow Developmental Center — Tuscaloosa, AL
( ) Albert P. Brewer Developmental Center — Mobile, AL
( ) Lurleen B. Wallace Developmental Center — Decatur, AL
( ) J. S. Tarwater Developmental Center — Wetumpka, AL

**ICF Nursing Homes**

( ) Alice Kidd — Tuscaloosa, AL
( ) S.D. Allen — Tuscaloosa, AL
( ) Claudette Box — Mt. Vernon, AL

( ) **Central Administrative Offices— Montgomery, AL**

(See map on last page for locations of facilities)

---

**Minimum annual salary you would consider:** _____

### REFERRAL

Where did you learn about the job for which you applied, or about the Department's application procedure?

_____ Voluntary Walk-in
_____ State Employment Service
_____ College Career Day
_____ DMH/MR Employee
_____ Newspaper Ad
_____ Professional Journal Ad
_____ Radio/TV Ad
✓ Private Employment Agency
✓ State Personnel Department
_____ Professional Convention
_____ Friend/Relative
_____ Responded to Announcement of Vacancy
_____ Other — Please explain:

---

Are you willing to accept shift work during evening and night hours? Yes ( )  No (✓)

Are you available to work ✓ Full Time _____ Part Time
_____ Temporary?

---

**The Alabama Department of Mental Health and Mental Retardation is an Equal Opportunity Employer. It does not discriminate with respect to race, color, religion, national origin, gender, age, or disability.**

---

**PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION**

# ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION

## APPLICANT DATA RECORD

DATE: _9/24/05_

> To help this Department evaluate our efforts as an Equal Opportunity Employer, we are requesting that you complete the following items of personal information. Your answers to these questions will be used only to study recruiting and employment patterns, and to furnish necessary information for government reports. We appreciate your cooperation.
>
> This sheet will be separated from the employment application upon receipt, and will be maintained in a separate file. It will, in no way, affect consideration for possible employment with the Alabama Department of Mental Health and Mental Retardation.

## PLEASE   PRINT

NAME   _Bailey_ (Last)   _Tracey_ (First)   _Marie_ (Middle)

ADDRESS   _31142 Hwy 25_ (Street)   _Moundville_ (City)   _Alabama_ (State)   _35474_ (Zip Code)

SOCIAL SECURITY NUMBER   ███████████

TITLE OF POSITIONS APPLIED
FOR AND DATE APPLIED:

RACE:

( ✓ ) Caucasian    ( ) Black

( ) American Indian    ( ) Asian/Pacific Islander

( ) Hispanic    ( ) Non-Resident Alien

( ) Other _____

GENDER: ( ) Male  ( ✓ ) Female

AGE: _34_  Birthdate _8, 7, 71_

VETERAN: ( ) Yes  ( ✓ ) No

ADMH  04-00063

## EDUCATION

| High school graduate or GED? ( ✓Yes ) ( ) No | Be as specific as possible about degree and major. | | | | | |
|---|---|---|---|---|---|---|
| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did You Graduate? | Degree and Date | Major |
| College Undergraduate | Shelton State C.C. Tuscaloosa AL | 1/90 | 5/96 | yes | Associate 5/96 | Bus. Adm. |
| College Undergraduate | University of Montana Missoula, Montana | 1/98 | 1/99 | yes | Bachelors 1/99 | Bus. Adm/Mktg |
| College Graduate | Troy University Montgomery, AL | 8/04 | 8/05 | yes | Masters 12/05 | Management |
| College Graduate | | | | | | |
| Vocational Business | | | | | | |

Circle Highest Grade Completed

High School   9   10   11   12   College   13   14   15   16   Graduate School  (17)  18   19

| If you attended college in pursuit of either an under-graduate or graduate degree and did not obtain such, please indicate how many hours were received toward the degree: Please include the appropriate transcript with this application where applicable. | Sem. Hrs. _____ Qtr. Hrs. _____ | Please include copies of professional certificates/license, date, and state issued when applicable. _____ _____ _____ |
|---|---|---|

## EMPLOYER/PROFESSIONAL REFERENCES

List three reliable persons, not relatives, who know you well enough to give information about your professional/educational background.

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| Kelley Barnes | WAMHC, Demopolis | 334-289-2410 | Exec. Director |
| Susan Lott | WAMHC, Demopolis | 334-289-2410 | Coordinator |
| Angelyn Lamb | TVAMC, Tuscaloosa | 205-554-2000 | Nursing Dir. |

| Have you ever been involuntarily terminated or forced to resign from a position? | ( ) Yes | ( ✓ No |
|---|---|---|
| Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment) | ( ) Yes | ( ✓ No |

**If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.**

Have you filed an application with this Department before? ( ✓Yes ) ( ) No.    If yes, give date and facility name:

Date ___9/05___   Facility Name  Central Office

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? ( ✓Yes ) ( ) No. If not a citizen of the U.S. give Visa type/status _____ . (Proof of U.S. citizenship or Immigration status will be required upon employment.)

Date when you are available to begin work: ___11/1/05___

## WORK HISTORY
### THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME IS ATTACHED

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

| 1. Current or Last Employer | Your Official Job Title |
|---|---|
| Bryce Hospital | Staff Development Spec. I |

**Address/Zip Code** 200 Univ. Blvd, Tusc. AL 35401
**Telephone Number** 205 759 0745
**Type of Business** Mental Health

| FROM Month 11 Year 04 | TO Month 04 Year Present | Total Months 10 | Fulltime (✓) Parttime ( ) Hours per week 40 | Name of Supervisor Lesa Prewitt | Ending Salary $ per | May we contact current employer? (✓) Yes ( ) No |
|---|---|---|---|---|---|---|

**Number/Title of Employees you Supervised** 0
**Equipment you Operated** see resumé
**Reason for Leaving** still there

Describe your Duties in Detail:

see resumé

| 2. Employer | Your Official Job Title |
|---|---|
| WAM HC | Health Info Mgr / Adm Asst / HR Coor |

**Address/Zip Code** 1215 S. Walnut, Demopolis, AL 36832
**Telephone Number** 334 289 2410
**Type of Business** Mental Health

| FROM Month 5 Year 01 | TO Month 10 Year 04 | Total Months 41 | Fulltime (✓) Parttime ( ) Hours per week 45+ | Name of Supervisor Kelley Barnes | Ending Salary $ per year | Reason for Leaving relocation |
|---|---|---|---|---|---|---|

**Number/Title of Employees you Supervised** 10
**Equipment you Operated** See Resume
**Reason for Leaving** relocation

Describe your Duties in Detail:

See Resumé

**3. Employer**

Your Official Job Title

Address/Zip Code

Telephone Number    Type of Business

| FROM Month Year | TO Month Year | Total Months | Fulltime ( ) Parttime ( ) Hours per week _____ | Name of Supervisor | Ending Salary $ _____ per _____ |

Number/Title of Employees you Supervised    Equipment you Operated

Reason for Leaving

Describe your Duties in Detail:

**4. Employer**

Your Official Job Title

Address/Zip Code

Telephone Number    Type of Business

| FROM Month Year | TO Month Year | Total Months | Fulltime ( ) Parttime ( ) Hours per week _____ | Name of Supervisor | Ending Salary $ _____ per _____ |

Number/Title of Employees you Supervised    Equipment you Operated

Reason for Leaving

Describe your Duties in Detail:

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release or copy thereof, within one year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME (No Initials) *Tracey Bailey* (Signature)

FULL NAME *Tracey Bailey* (Typed or Printed Name)

DATE OF BIRTH  8 / 7 / 71    PLACE OF BIRTH  Selma, AL

SOCIAL SECURITY #  ▓▓▓▓▓▓▓

CURRENT ADDRESS  3142 Hwy 25  Moundville, AL 35474

WITNESS    TITLE    DATE

## CERTIFICATE/SIGNATURE

**Must be signed in ink by applicant**

I Certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

Signed *Tracey Bailey*    DATE  9/26/05

2/01

ADMH 04-00066

# TRACEY M. BAILEY

Home Phone:   334-624-1828
Cell Phone:    205-792-3698

31142 Alabama Highway 25
Moundville, Alabama 35474
Email: thestarrlady@aol.com

## Summary of Qualifications

- Exceptionally skilled in using computer systems and software including: Microsoft Products (Word, Excel, PowerPoint, Access, Publisher), Corel WordPerfect. Building and maintaining websites, use of email and the Internet.
- Very organized and detail oriented, meticulous with each step of a project.
- Highly articulate, self-motivated and self-disciplined.
- Excellent verbal and written communication skills; especially skilled at public speaking to any number of people including presentations, trainings and speeches.
- Notary Public

## Education

**Master of Science, Management**

Troy University                    Montgomery, Alabama              2004-2005

**Bachelor of Science, Marketing**

University of Montana              Missoula, Montana                1998-1999

**Associate of Science, Business Administration**

Shelton State Community College    Tuscaloosa, Alabama              1994-1996

## Professional Experience

**Staff Development Specialist/Instructor**

**Bryce Hospital**                                                 Tuscaloosa, Alabama

*November 2004 — Present*

- <u>Management Trainings:</u>  Develop and instruct a variety of management related modules/classes.  All of the modules below had not been developed or taught previous to my employment with the hospital and department, when I developed and began instruction on them.  I am currently the only qualified instructor to teach these modules for the hospital.
    - Microsoft PowerPoint   *(basic and advanced)*
    - Microsoft Excel        *(basic and advanced)*
    - Microsoft Outlook

ADMH 04-00067

- Cardiopulmonary Resuscitation    *(Heart Saver and Health Care Provider)*
- Effective Team Building        - Time and Stress Management
- Effective Communication Skills     - Motivational Skills and Techniques
- Conflict and Change Management    - Goal Setting and Achievement
- Telephone Etiquette               - Effective Working Habits
- Other business management related modules are currently in development.

- <u>Mandatory Trainings:</u> Develop and instruct modules for the following mandatory modules required every year for each employee per state department standards. These modules were previously in "poster board" form, and are now in housed in binders for ease of use and portability. These modules received extremely high marks from a recent review by hospital staff:

  - HIPAA Policies               - Incident Management
  - Fire and Safety                - Infection Control
  - Patient Rights                 - Sexual Harassment

- Attend designated committee meetings to determine necessary training for all staff.

- <u>Coordination of Trainings:</u> Coordinate with all hospital departments to assess training needs, develop, implement and instruct necessary classes to achieve training objectives. The above management modules were developed based on suggestions from the hospital's staff and departments. Determine trainings to be developed each year according to the Annual Hospital and Staff Development Plans.

- <u>Department Publications:</u> Redesigned monthly newsletter for better functionality including information necessary for staff to make plans to attend trainings offered by our department each month. Design flyers for specific trainings each month to ensure that particular applicable staff are notified well in advance of a training in order to ensure attendance at the trainings.

## Health Information Manager
**West Alabama Mental Health Center**            Demopolis, Alabama
*August 2003 – October 2004*

- <u>Medical Records Supervision</u>: Supervised and managed the medical records departments for seven different facilities in five different counties, including ten office managers and a clinical records coordinator.

- <u>HIPAA Compliance</u>: Served as organizations HIPAA compliance officer. Ensured all staff were properly trained in HIPAA policies and procedures annually. Set up a monitoring system to determine which staff members required access to medical records offices; ensured that access to medical records was tracked on a daily basis to prevent unnecessary access and to maintain confidentiality and security of medical records.

- <u>Medical Records Processes and Procedures</u>: Reorganized and redesigned the medical records offices and procedures to ensure compliance to state and federal confidentiality rules and laws. Before my tenure in this position all center records departments operated below par. All departments were reorganized both physically and functionally to improve performance.
  - ➢ Improved the client no-show percentage for the center by 50%
  - ➢ Improved the error rates for medical records, resulting in a 2 year, rather than 1 year, certification from the Alabama State Department of Mental Health.
  - ➢ Received an exceptional review from the Federal Medicaid Program after review of all

ADMH 04-00068

records in each facility.

- <u>Administrative Record Reviews:</u>  Sole designee to performed administrative reviews on all records in each facility to ensure compliance with State and Federal standards along with internal compliance to ensure continuity of care.
  - ➤ Revised the administrative review form to track errors and deficiencies.
  - ➤ Reviews required extensive documentation of errors by all staff including office managers, clinicians, and psychiatrists.  This documentation was used to prepare error reports for the executive director's review for determination of the center's overall productivity and error rates each month, these reports were ultimately sent to the board of directors as a gauge of the center's monthly performance.
- <u>Computer Software Training:</u>  Created and put into place and computer software program for Front Desk and Medical Records departments.  Developed manuals for each of these programs that were created by CMHC.  Trained all office managers and clinical staff on usage of the CMHC computer programs.  These programs are used to schedule appointments, track no-shows, enter client data, and manage fiscal information.
- <u>Physician Management:</u>  Communicated with all center psychiatrists to manage their client appointments.  Trained all office managers on the correct management of doctor's schedules to maintain continuity with appointments and continuity of care.  One-on-one work with all physicians before and during each clinic day in all counties to monitor compliance with appointments, determine physician needs, and manage medication pick-up.
- <u>Committee Appointments:</u>  Appointed to the following committees for two consecutive years:
  - ➤ Management of Information Committee
  - ➤ Performance Improvement Committee
  - ➤ Chair the Staff Advisory Committee:  responsible for coordination and leadership of the annual company meeting, including coordination of funds, supplies, allocation of employees, determination of annual staff awards, as well as speaking to the entire organization on behalf of the executive director; also responsible for coordination of annual staff satisfaction survey, which for the first time in 2004 was conducted online; coordinated annual blood drives with United Blood Services and the American Red Cross.

## Human Resource Coordinator / Administrative Assistant
## West Alabama Mental Health Center                    Demopolis, Alabama
*May 2001 – August 2003*

- <u>Human Resource Duties:</u>  Performed background checks, drug screens, orientation of new staff, telephone interviews, set up and conducted face to face interviews, recruitment, employee relations, personnel filing, workers compensation claims, unemployment compensation claims, employee benefits and compensation, family and medical leave act regulations, turnover tracking and control.
- <u>New Employee Orientation and Training:</u>  Performed all new employee training and orientation as well as restructuring of training programs and initiatives to bring all mandatory trainings up-to-date.  New employee training included fire and safety, infection control, policies and procedures,
- <u>Administrative and Human Resource Processes and Forms:</u>  Drew up annual contracts between state departments, hospitals and consultants; executed administrative documents and agreements for the

Executive Director and Board of Directors; extensive administrative and human resource filing and archiving.

- Organizational Communication: Coordinated communication on a regular basis with the Board of Directors on behalf of the Executive Director and the organization. Performed any and all tasks assigned by the Executive Director or per the Board of Directors. Performed public speaking at choice appointments on behalf of executive director. Coordinated press releases with regional newspapers and radio stations on behalf of the organization and Board of Directors regarding monthly board meetings, job openings and special events. Typed up all board of director meeting minutes, including committee meeting minutes.

- Computer Program Use: Intensive use of computer, software and hardware on a daily basis. Performed onsite and telephone computer troubleshooting for the center's offices.

- Organizational Publications: Designed and published the quarterly newsletter for the company including coordinating with other departments for information. Redesigned employee handbook, including updating information according to new policies, procedures and guidelines, as well as coordinated with all departments to include accurate information regarding their programs.

## DEPARTMENT OF MENTAL HEALTH / MENTAL RETARDATION
## APPLICATION EVALUATION FORM

*Marilyn Benson*

Applicant Name

Departmental Assist Personnel Mgr / H5500

Position Title / Job Code

*05-27*

Announcement #

*9/30/05*

Closing Date

*9/29/05*

Date Received

*88/3339*

Positions #

*10/5/05*

Date Evaluated

*M. Mathis*

Rater's Name

### MINIMUM QUALIFICATIONS REQUIREMENTS FOR POSITION

**Qualification:**

**Applicant's Training / Education:**     **Meets Requirements** (*yes*)
Bachelor's degree in Human Resource Management / Personnel Management, Business Administration, Public Administration, or related field.

**Applicant's Experience:**     **Meets Requirements** (*yes*)
Extensive (72 months or more) working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity.

**Licensure / Certification:**     **Meets Requirements** *N/A*     **Date Verified** _____

**Special Requirements:**     **Meets Requirements** *N/A*     **Date Verified** _____

**Meets Minimum Qualification Requirements:** _(*yes*)_

**Preference Will Be Given To Individuals With:**
➢ Master's degree in any of the above specified fields of study.
➢ Work experience in the governmental / public sector.
➢ Work experience in a healthcare setting.

---

**Meets Minimum Qualification Requirements (1 point)**     *1*

**Additional Specific / Related Education (2 points)**     *2*

Required Degree _*BS yes*_     Additional Related Degree _*MS yes*_

**Additional Specific / Related Experience (5 points)**     *5*

Total Related Experience – Required Experience =Additional Related Experience (/12)
One Point For Each Full Year of Additional Related Experience Up to Maximum of 5

**Preference Points**     *2*

Work experience in preferred area:     1 to 5 years = 1 point     6 to 10 years = 2 points
MS Degree = 2 points

**OVERALL RATING:**     *10*

---

**Interview:**     Date: _____     Time: _____

ADMH 04-00190

CLASS TITLE: *Dept Assist Personnel Mgr*     CODE: *H 5500*

NAME: *Marilyn Benson*

DEGREE SUBJECT: *BS - Hos/Health Admin     MS - Public Admin*

DEGREE LEVEL / DATE RECEIVED: *BS/81     MS/87*

TOTAL QUALIFIED, POST DEGREE WORK EXPERIENCE: ~~214 M~~ *214 M*

PROFESSIONAL LICENSURE: _____

## WORK EXPERIENCE WORKSHEET:

1.) QUALIFIED = Y – N   YRS/MON = *214 M     Personnel Spec III*
   *DMH/MR CO               12/87 – Current*
   *(assists coor of Personnel Mgmt activities for DMH CO,)*
   *facilities & Com Programs in state –*

2.) QUALIFIED = Y – N   YRS/MON = *39     8/84 – 11/87*
   *DMH/MR CO          Planning Spec*
   *Conducted Mgmt studies & super Training*

3.) QUALIFIED = Y – N   YRS/MON = _____   _____

4.) QUALIFIED = Y – N   YRS/MON = _____   _____

5.) QUALIFIED = Y – N   YRS/MON = _____   _____

# APPLICATION FOR EMPLOYMENT
## Exempt Classification



ADDRESS ON ANNOUNCEMENT

**GENERAL INSTRUCTIONS**
Complete all portions of this application that are applicable to you and the position for which you are applying. Failure to do so may result in your not being considered for the position for which you applying. Type or print clearly in ink.

## AN EQUAL OPPORTUNITY EMPLOYER

If you are applying for a specific current vacancy, please give position title and announcement # **05-27**

Full Name **BENSON        MARILYN        B.**

DEPARTMENTAL ASSISTANT
PERSONNEL MANAGER

Social Security Number **XXX-X**

Address **1078 16TH PLACE**

**ALEXANDERCITY AL.    35010**

Telephone Number — Home: **256 409-1992**   Office: **334 242-3120**

Legal Residence **ALEXANDER CITY TALLAPOOSA AL**

Place of Birth **ALEXANDER CITY TALLAPOOSA AL.**

Minimum annual salary you would consider: **NEGOTIABLE**

### LOCATIONS

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of non-merit vacancies at those facilities in which you express an interest. Please indicate below at which of our facilities you would consider employment. You will only be sent announcements of openings at facilities which you check. After one year and after each succeeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your application will be destroyed.

### REFERRAL
Where did you learn about the job for which you applied, or about the Department's application procedure?

_____ Voluntary Walk-in
_____ State Employment Service
_____ College Career Day
_____ DMH/MR Employee
_____ Newspaper Ad
_____ Professional Journal Ad
_____ Radio/TV Ad
_____ Private Employment Agency
_____ State Personnel Department
_____ Professional Convention
_____ Friend/Relative
_____ Responded to Announcement of Vacancy
_____ Other — Please explain:

**Mental Illness Facilities**
( ) Bryce Hospital — Tuscaloosa, AL
( ) Searcy Hospital — Mt. Vernon, AL
( ) Harper Geriatric Psychiatry Center — Tuscaloosa, AL
( ) North Alabama Regional Hospital — Decatur, AL
( ) Thomasville MH Rehab Center — Thomasville, AL
( ) Hardin Secure Medical Facility — Tuscaloosa, AL
( ) Greil Psychiatric Hospital — Montgomery, AL

**Mental Retardation Facilities**
( ) William D. Partlow Developmental Center — Tuscaloosa, AL
( ) Albert P. Brewer Developmental Center — Mobile, AL
( ) Lurleen B. Wallace Developmental Center — Decatur, AL
( ) J. S. Tarwater Developmental Center — Wetumpka, AL

**ICF Nursing Homes**
( ) Alice Kidd — Tuscaloosa, AL
( ) S.D. Allen — Tuscaloosa, AL
( ) Claudette Box — Mt. Vernon, AL
(X) **Central Administrative Offices— Montgomery, AL**

(See map on last page for locations of facilities)

Are you willing to accept shift work during evening and night hours? Yes ( )   No (X)

Are you available to work   (X) Full Time   _____ Part Time   _____ Temporary?

The Alabama Department of Mental Health and Mental Retardation is an Equal Opportunity Employer. It does not discriminate with respect to race, color, religion, national origin, gender, age, or disability.

**PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION**

ADMH 04-00192

## EDUCATION

High school graduate or GED? (X) Yes   ( ) No

Be as specific as possible about degree and major.

| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did You Graduate? | Degree and Date | Major |
|---|---|---|---|---|---|---|
| College Undergraduate | CENTRAL ALA. COMMUNITY COLLEGE ALEXANDER CITY, AL. | 76 | 78 | YES | ASSOCIATE DEGREE '78 | HOSPITAL HEALTH |
| College Undergraduate | AUBURN UNIVERSITY AUBURN, ALABAMA | 78 | 81 | YES | BACHELORS '81 | ADMINISTRATION |
| College Graduate | AUM AT MONTGOMERY, AL. | 85 | 87 | YES | MASTER'S '87 | PUBLIC ADMINISTRATION |
| College Graduate | | | | | | |
| Vocational Business | | | | | | |

Circle Highest Grade Completed

High School   9   10   11   (12)   College   13   14   15   (16)   Graduate School   17   (18)   19

If you attended college in pursuit of either an under-graduate or graduate degree and did not obtain such, please indicate how many hours were received toward the degree:

Sem. Hrs. _____
Qtr. Hrs. _____

Please include the apprepriate transcript with this application where applicable.

Please include copies of professional certificates/license, date, and state issued when applicable.
_____
_____
_____

## EMPLOYER/PROFESSIONAL REFERENCES

List three reliable persons, not relatives, who know you well enough to give information about your professional/educational background.

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| ARMARENEA BROCK | 4212 BEARDSLEY DR. MONTGOMERY, AL 36109 | 244-9935 | RETIRED STATE EMPLOYEE |
| ETHEL OLDHAM | 5739 PINEBROOK MONTGOMERY, AL 36117 | 274-9806 | MICROBIOLOGIST |
| HENRY ERVIN | 100 N. UNION STREET MONTGOMERY, AL | 242-3112 | HR DIRECTOR DMH/MR |

Have you ever been involuntarily terminated or forced to resign from a position?     ( ) Yes   (X) No

Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment)     ( ) Yes   (X) No

**If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.**

Have you filed an application with this Department before?   (X) Yes   ( ) No.     If yes, give date and facility name:

Date _____ Facility Name _____

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? (X) Yes   ( ) No. If not a citizen of the U.S. give Visa type/status _____ . (Proof of U.S. citizenship or Immigration status will be required upon employment.)

Date when you are available to begin work: _____ IMMEDIATELY _____

ADMH 04-00193

**WORK HISTORY**
THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME IS ATTACHED

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

**1. Current or Last Employer**
DMH/MR

Address/Zip Code
100 N. UNION ST.

Your Official Job Title
PERSONNEL SPECIALIST III

Telephone Number
242-3112

Type of Business

Name of Supervisor
HENRY ERVIN

Ending Salary

May we contact current employer?
(X) Yes ( ) No

FROM 12/87  TO CURRENT  Total Months 214  Fulltime (X) Parttime ( )  Hours per week 40

Reason for Leaving
N/A

Number/Title of Employees you Supervised
(2) PERSONNEL ASST II's (1) ASA I

Equipment you Operated
COMPUTER/FAX/COPIER

Describe your Duties in Detail:
ASSIST IN RECRUITMENT, SELECTION, AND PLACEMENT OF DIRECT CARE, ADMINISTRATIVE, TECHNICAL, AND SERVICE PERSONNEL AT CENTRAL OFFICE, SEVEN FACILITIES, AND FIVE REGIONAL OFFICES.

PLEASE SEE ATTACHED RESUME FOR DETAILED WORK EXPERIENCE ——→

**2. Employer**
DMH/MR

Address/Zip Code
800 INTERSTATE PARK

Your Official Job Title
PLANNING SPECIALIST

Telephone Number

Type of Business

Name of Supervisor
PHILLIP JOHNSON

Ending Salary

FROM 8/84  TO 11/87  Total Months 39  Fulltime (X) Parttime ( )  Hours per week

Reason for Leaving
PROMOTION

Number/Title of Employees you Supervised

Equipment you Operated
COMPUTER

Describe your Duties in Detail:
RENDERED TECHNICAL ASSISTANCE TO COMMUNITY MENTAL HEALTH CENTERS BY CONDUCTING MANAGEMENT STUDIES AND SUPERVISORY TRAINING.

PLEASE SEE ATTACHED RESUME FOR DETAILED WORK EXPERIENCE ——→

ADMH 04-00194

| 3 Employer | DMH/MR | | Your Official Job Title RESEARCH ASSISTANT |
|---|---|---|---|

Address/Zip Code **200 INTERSTATE PARK**

FROM 8 83 TO 8 84 Total Months 12 — Fulltime (X) Parttime ( ) — Hours per week **40**

Telephone Number — Type of Business

Name of Supervisor **INGRAM GOMILLION**

Ending Salary $ per

Reason for Leaving **PROMOTION**

Number/Title of Employees you Supervised **N/A**

Equipment you Operated **COMPUTER/COPIER**

Describe your Duties in Detail:

**PROVIDED CONSULTATIVE SERVICES TO COMMUNITY MENTAL HEALTH CENTERS; CONDUCTED INTERVIEWS, WROTE AND AMENDED POLICIES AND PROCEDURES.**

**PLEASE SEE ATTACHED RESUME FOR DETAILED WORK EXPERIENCE ⟶**

4. Employer **NEUROPSYCHIATRY ASSOCIATES**

Your Official Job Title **OFFICE MANAGER**

Address/Zip Code **OPELIKA & MONTG. OFFICE (PINES?)**

Type of Business **PSYCHIATRIC CLINIC**

FROM 83 TO 8 84 — Fulltime (X) Parttime ( )

Name of Supervisor **DR. CHESTER JENKINS**

Ending Salary $ per MO

Reason for Leaving **MOVED**

Number/Title of Employees you Supervised

Equipment you Operated **COMPUTER/COPIER**

Describe your Duties in Detail: **COORDINATED OFFICE FUNCTIONS FOR PSYCHIATRIC CLINIC.**

**⟶ PLEASE SEE ATTACHED RESUME ⟶**

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release or copy thereof, within one year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME (No Initials) _Marilyn Benson_

SOCIAL SECURITY XXX-XX-

FULL NAME **MARILYN B. BENSON**

CURRENT ADDRESS **1078 16th Place**

DATE OF BIRTH **7/18/59** PLACE OF BIRTH **TALLAPOOSA CTY.**   **Alexander City, AL.**

WITNESS ___ TITLE **Director, DD Council** DATE **9/29/05**

## CERTIFICATE/SIGNATURE

Must be signed in ink by applicant

I certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

Signed ___ DATE **9/29/05**

ADMH 04-00195

# ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION

### APPLICANT DATA RECORD

DATE: _9/27/05_

To help this Department evaluate our efforts as an Equal Opportunity Employer, we are requesting that you complete the following items of personal information. Your answers to these questions will be used only to study recruiting and employment patterns, and to furnish necessary information for government reports. We appreciate your cooperation.

This sheet will be separated from the employment application upon receipt, and will be maintained in a separate file. It will, in no way, affect consideration for possible employment with the Alabama Department of Mental Health and Mental Retardation.

## PLEASE PRINT

NAME    _BENSON_            _MARILYN_            _B._
           Last                         First                  Middle

ADDRESS    _1078 16TH PLACE_    _ALEXANDER CITY_    _AL._    _35010_
              Street                 City                 State          Zip Code

SOCIAL SECURITY NUMBER

TITLE OF POSITIONS APPLIED
FOR AND DATE APPLIED:

RACE:

( ) Caucasian          (X) Black

( ) American Indian    ( ) Asian/Pacific Islander

( ) Hispanic           ( ) Non-Resident Alien

( ) Other _____

GENDER: ( ) Male   (X) Female

AGE: _46_    Birthdate _7 /18 /59_

VETERAN: ( ) Yes   (X) No

SEP 29 2005 12:16  FR DMH-MR HUMAN RESOURCE334 242 3144 TO 812055544130    P.07/12

## STATE FACILITIES

★ 4. North Alabama
■ 10. Wallace

● 12. Alice Kidd
★ 1. Bryce     ● 13. S.D. Allen
★ 3. Harper
★ 6. Secure Medical
■ 8. Partlow     ■ 11. Tarwater
★ 7. Greil
▲ Central Office

★ 5. Thomasville

● 14. Claudette Box
★ 2. Searcy

■ 9. Brewer

**★ MENTAL ILLNESS FACILITIES**
1. Bryce Hospital — Tuscaloosa, AL
2. Searcy Hospital — Mt. Vernon, AL
3. Harper Geriatric Psychiatry Center — Tuscaloosa, AL
4. North Alabama Regional Hospital — Decatur, AL
5. Thomasville MH Rehab Center — Thomasville, AL
6. Hardin Secure Medical Facility — Tuscaloosa, AL
7. Greil Psychiatric Hospital — Montgomery, AL

**■ MENTAL RETARDATION FACILITIES**
8. William D. Partlow Developmental Center — Tuscaloosa, AL
9. Albert P. Brewer Developmental Center — Mobile, AL
10. Lurleen B. Wallace Developmental Center — Decatur, AL
11. J. S. Tarwater Developmental Center — Wetumpka, AL

**● ICF NURSING HOMES**
12. Alice Kidd — Tuscaloosa, AL
13. S.D. Allen — Tuscaloosa, AL
14. Claudette Box — Mobile, AL

**▲ CENTRAL ADMINISTRATIVE OFFICES** — Montgomery, AL

CONTINUE ON TO BACK PAGE ─────────────────────►

PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION

SEP 29 2005 12:16   FR DMH-MR HUMAN RESOURCE334 242 3144 TO 812055544130   P.08/12

ADMH 04-00197

# Marilyn B. Benson
1078 16th Place
Alexander City, AL. 35010
Home: (256) 409-1992   Cell: (334) 303-4134

## EDUCATION

**1987**  Master's Degree In Public Administration
*(Concentration In Personnel)*
(Auburn University at Montgomery)

**1981**  Bachelor's Degree in Health Services Administration
(Auburn University, Auburn, AL)

## EMPLOYMENT

**12/87-Present**  Personnel Specialist, *Alabama Department of Mental Health/Mental Retardation, Montgomery, Alabama*

Assists with coordinating Personnel management activities for DMH/MR Central Office, seven facilities, and five Community Programs throughout the state. Responsibilities include coordinating recruitment, selection, and placement of direct care, administrative, technical, and service personnel. Responsibilities include examining positions, establishing, revising, deleting, combining classes, and making recommendations in order to comply with federal, state, and local guidelines of employment; also coordinate wage and salary information for non-merit classes, conduct surveys, analyzing positions and pay relationships, collecting, and ensuring the Department remains competitive in its development of solid wage, salary, and benefit schedules; attend career fairs and conventions to recruit the most qualified individuals to fill vacancies, conduct job analysis, gather subject matter experts, announce job vacancies, develop KSA's and conduct interviews.   Other responsibilities include supervising and evaluating the work of clerical and technical support staff. Also provide technical assistance to department heads, and supervisors regarding personnel related matters on departmental employees.   Responsible for carrying out functions of Human Resource Management in the absence of the Director.

**08/84-11/87**  Planning Specialist, *Alabama Department of Mental Health/Mental Retardation, Montgomery, Alabama*

Rendered technical services to mental health centers by conducting personnel and management studies to include developing complete personnel action plans.   Conducted interviews with employees, developed and revised job descriptions.   Also examined current classification system to determine if employees were appropriately classified. Developed policies and procedures, to include recruitment and affirmative action plans.   Also responsible for conducting supervisory training for both performance appraisals and the employee assistance program; Assisted with identifying federal funding availability through grant resources and provided technical assistance by compiling information needed in order to meet deadlines.

ADMH 04-00198

Marilyn B. Benson
Page 2

08/83-
08/84

*Research Assistant, Alabama Department of Mental Health/Mental
Retardation, Montgomery, Alabama*

Provided consultative services to various mental health centers throughout the
state of Alabama. Responsible for writing, revising, and coordinating the
development of various personnel policies and procedures, conducting
performance appraisal training sessions and supervisory training for the
Employee Assistance Program.

01/83-
08/84

*Office Manager, Neuropsychiatry Associates, Montgomery, Alabama*

Supervised the overall operation of a psychiatric clinic. Was responsible for
maintaining financial reports, accounts receivable, purchasing of supplies and
equipment, client billing, processing insurance claims, purchase orders, as well
as the supervision to clerical and technical support staff.

# HUMAN RESOURCE TRAINING ACTIVITIES & EXPERIENCE

- Developed performance appraisal systems and conducted management studies for
seven different Mental Health Centers in five locations throughout the state of Alabama.
Activities included:
 1) Disseminating questionnaires
 2) Conducting interviews
 3) Reviewing job descriptions
 4) Compiling draft descriptions
 5) Providing overview of Performance Appraisal System
 6) Training of Supervisors
 7) Project implementation

July 1983, Central Alabama Comprehensive Health Center, Tuskegee, AL
 Developed Performance Appraisal Instrument to be utilized and incorporated into
 their supervisory training program.

October 1983, Jefferson Blount-St. Clair County Mental Health Center, Birmingham, AL
 Established a Performance Appraisal Project Flow for JBS. Trained supervisors in
 the overview of the Performance Appraisal Instrument and legal implications by
 conducting interviews with employees, writing job descriptions and task
 statements.

Jan-March 1984, Chilton-Shelby Mental Health Center, Calera, AL
 Established Performance Appraisal Training Program for Center Supervisors by
 reviewing existing appraisal instrument, establishing weights for Primary Job
 Functions, conducting appraisal interviews, and providing instructions for scoring
 appraisals.

April 1984, Mobile Community Mental Health Center, Mobile, AL
 Administered Employee Attitude Surveys in order to recognize employee attitudes
 or problems that may have a bearing on productivity, absenteeism, turnover, and
 other related employee issues. After correlating and compiling data,

ADMH 04-00199

Marilyn B. Benson
    Page 3

recommendations were made for improving overall staff morale and motivation.

May 1984, Mobile Community Mental Health Center, Mobile, AL
    Established Performance Appraisal Instrument to be used at the Center. Trained
    supervisors in performance appraisal techniques and utilization.

August 1984, Mobile Association for Retarded Citizens, Mobile, AL
    Analyzed current organizational structure by disseminating questionnaires and
    conducting interviews to determine whether jobs were appropriately classified
    and made recommendations accordingly.

August 1984, Cahaba Regional Mental Health Center, Selma, AL
    Developed a performance appraisal system for supervisors at the Center.
    Interviewed employees, compiled questionnaires and conducted supervisory
    training.

September 1984, Cherokee, Etowah, Dekalb County Mental Health Center, Gadsden, AL
    Participated in Staff Development Consultation with supervisors of Cherokee,
    Etowah, Dekalb County Mental Health Facility to implement a Performance
    Appraisal System.

September 1985, The Bridge Alert Center, Gadsden, AL
    Conducted workshop on FES (Factor Evaluation System) training and utilization of
    Training and Experience Crediting. Supervisors were trained in the area of job
    analysis. The information was utilized in developing more accurate position
    descriptions.

October 1985, Northwest Alabama Mental Health Center, Jasper, AL
    Developed a complete Personnel Action Plan by reviewing selection procedures,
    staff recruitment, evaluation of policies, and providing FES training for supervisors.

## EMPLOYEE ASSISTANCE PROGRAM TRAINING AND EXPERIENCE

This training involved visiting various Community Mental Health Centers, State Facilities,
and private industries to provide technical assistance in areas as:    1) Marketing
presentation, 2) Specific employee problems, 3) Program design, 4) Program problem
resolution, 5) Contract negotiations, and 6) Management Training.

August 1985, Cahaba Mental Health Center, Selma, AL
    Conducted training workshops to educate supervisors about the Employee
    Assistance Program, what it involved, who was eligible and the role they played.

September 1987, Auburn University, Auburn, AL
    Conducted 15 supervisory training sessions that included 219 participants to
    include the President and Vice-President of the University. Supervisors were
    acquainted with troubled employees, how to recognize them and the roles they
    were responsible for playing in the referral process.

ADMH 04-00200

** TOTAL PAGE.12 **

Marilyn B. Benson
Page 4

October 1987, Alabama Criminal Justice Information Center, Montgomery, AL.

Conducted a one-day workshop for supervisors by giving an overview of the
program, identification of problem employees, and the referral process.

November 1987, Fourth Annual Conference for Personnel Administration, Auburn
University at Montgomery, Montgomery, AL
Made Conference presentation on the Employee Assistance Program for
Participants of the Personnel Administration Conference. An overview of EAP was
given as well as how to identify workers with personal problems that could
possibly affect their on the job performance.

## PROFESSIONAL ACTIVITIES

- Facilitator/planner for Governor's Task Force on Domestic Violence and Abuse
- Licensed and Ordained Baptist Minister
- Co-Pastor of GAP Fellowship Church, Inc in Alexander City, AL

## REFERENCES

Available Upon Request

ADMH 04-00201

## DEPARTMENT OF MENTAL HEALTH / MENTAL RETARDATION
## APPLICATION EVALUATION FORM

*Commie Carter*
Applicant Name

Departmental Assist Personnel Mgr / H5500
Position Title / Job Code

*05-27*
Announcement #

*9/30/05*
Closing Date

*9/26/05*
Date Received

*88/3339*
Positions #

*10/5/05*
Date Evaluated

*M. Mathe*
Rater's Name

---

## MINIMUM QUALIFICATIONS REQUIREMENTS FOR POSITION

**Qualification:**

**Applicant's Training / Education:** *Meets Requirements* *yes*
Bachelor's degree in Human Resource Management / Personnel Management, Business Administration, Public Administration, or related field.

**Applicant's Experience:** *Meets Requirements* *yes* *(74 m)*
Extensive (72 months or more) working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity.

**Licensure / Certification:** *Meets Requirements* *N/A*  *Date Verified* _____

**Special Requirements:** *Meets Requirements* *N/A*  *Date Verified* _____

**Meets Minimum Qualification Requirements:** *yes*

**Preference Will Be Given To Individuals With:**
- Master's degree in any of the above specified fields of study.
- Work experience in the governmental / public sector.
- Work experience in a healthcare setting.

---

**Meets Minimum Qualification Requirements (1 point)** — *1*

**Additional Specific / Related Education (2 points)** — *2*
Required Degree *yes*   Additional Related Degree *MS -yes*

**Additional Specific / Related Experience (5 points)** — *0*
Total Related Experience – Required Experience =Additional Related Experience (/12)
One Point For Each Full Year of Additional Related Experience Up to Maximum of 5

**Preference Points** — *2*
Work experience in preferred area:   1 to 5 years = 1 point     6 to 10 years = 2 points
MS Degree = 2 points

**OVERALL RATING:** *5*

---

**Interview:**  Date: _____     Time: _____

ADMH 04-00202

CLASS TITLE: _Dept Assistant Personnel Mgr_    CODE: _H 5500_

NAME: _Commie Carter_

DEGREE SUBJECT: _BS/ Bus Admin      MS) Human Resource Mgmt_

DEGREE LEVEL / DATE RECEIVED: _BS/ 6/84       MS 3/92_

TOTAL QUALIFIED, POST DEGREE WORK EXPERIENCE: _____

PROFESSIONAL LICENSURE: _N/A_

## WORK EXPERIENCE WORKSHEET:

1.) QUALIFIED = Y – N   YRS/MON = _55 M_    _03/01 – Present_
_ACDMH/MR CO_
_Staff Development Spec V (Director)_    _Plan/organize/coor/implement comprehensive staff Development Program –_

2.) QUALIFIED = (Y) – N   YRS/MON = _9 M_    _7/00 – 3/01_
_AC DMH/MR_
_Personnel Spec III acting Per Mgr (Rutlaw)_

3.) QUALIFIED = (Y) – N   YRS/MON = _13 M_    _6/99 – 7/2000_
_AC DMH/MR CO_
_Personnel Spec III / Admin Coor_
_(Personnel Dept)_

4.) QUALIFIED = (Y) – N   YRS/MON = _4 M_    _7/98 – 10/98_
_AC DMH/MR CO_
_Personnel Spec III / acting Dept Per Mgr._
_Human Resource_

5.) QUALIFIED = (Y) – N   YRS/MON = _48 M_    _8/94 – 7/98_
_DMH/MR CO_
_Personnel Spec III w Human Resources_
_(Performed HR / Personnel mgmt functions )_

ADMH 04-00203

CLASS TITLE: _____ CODE: _____

NAME: *Commie Carter* _____

DEGREE SUBJECT: _____

DEGREE LEVEL / DATE RECEIVED: _____

TOTAL QUALIFIED, POST DEGREE WORK EXPERIENCE: _____

PROFESSIONAL LICENSURE: _____

## WORK EXPERIENCE WORKSHEET:

1.) QUALIFIED = Y -(N)   YRS/MON = 58 M   10/89 - 8/94

AC DMHRM CO
Staff Development Spec III     coor/provided training
Staff Development Dept        & development programs
                             for staff.

2.) QUALIFIED = Y -(N)   YRS/MON = 21 M   1/88 - 10/89

AL DMH/MR CO                  scheduled/coor
Staff Devel Spec II           training programs
                             maintained HR data

3.) QUALIFIED = Y -(N)   YRS/MON = 27   10/85 - 1/88

AL DMH/MR CO
Data Coor / Inservice Instructor
Staff Development

4.) QUALIFIED = Y -- N   YRS/MON = _____ _____

5.) QUALIFIED = Y -- N   YRS/MON = _____ _____

ADMH 04-00204

# APPLICATION FOR EMPLOYMENT
## Exempt Classification



ADDRESS ON ANNOUNCEMENT

**GENERAL INSTRUCTIONS**

Complete all portions of this application that are applicable to you and the position for which you are applying. Failure to do so may result in your not being considered for the position for which you are applying. Type or print clearly in ink.

## AN EQUAL OPPORTUNITY EMPLOYER

Full Name: Carter Commie W.
Last / First / Middle

Social Security Number: ~~——————~~

Address: 515 Stakely Drive
Street / Apt #

Montgomery AL 36111
City / State / Zip Code

If you are applying for a specific current vacancy, please give position title and announcement # 05-27
Departmental Assistant
Personnel Manager

Telephone Number — Home: (334) 284-0196
Office: (334) 242-3133

Legal Residence: Montg / Montg / AL
City / County / State

Place of Birth: Troy / Pike / AL
City / County / State

Minimum annual salary you would consider: _____

### LOCATIONS

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of non-merit vacancies at those facilities in which you express an interest. Please indicate below at which of our facilities you would consider employment. You will only be sent announcements of openings at facilities which you check. After one year and after each succeeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your application will be destroyed.

**Mental Illness Facilities**

(   ) Bryce Hospital — Tuscaloosa, AL
(   ) Searcy Hospital — Mt. Vernon, AL
(   ) Harper Geriatric Psychiatry Center — Tuscaloosa, AL
(   ) North Alabama Regional Hospital — Decatur, AL
(   ) Thomasville MH Rehab Center — Thomasville, AL
(   ) Hardin Secure Medical Facility — Tuscaloosa, AL
(   ) Greil Psychiatric Hospital — Montgomery, AL

**Mental Retardation Facilities**

(   ) William D. Partlow Developmental Center — Tuscaloosa, AL
(   ) Albert P. Brewer Developmental Center — Daphne, AL
(   ) Lurleen B. Wallace Developmental Center — Decatur, AL
(   ) J. S. Tarwater Developmental Center — Wetumpka, AL

**ICF Nursing Homes**

(   ) Alice Kidd — Tuscaloosa, AL
(   ) S.D. Allen — Tuscaloosa, AL
(   ) Claudette Box — Mt. Vernon, AL

( ✓ ) Central Administrative Offices— Montgomery, AL

(See map on last page for locations of facilities)

### REFERRAL

Where did you learn about the job for which you applied, or about the Department's application procedure?

_____ Internet
_____ Voluntary Walk-in
_____ State Employment Service
_____ College Career Day
_____ DMH/MR Employee
_____ Newspaper Ad
_____ Professional Journal Ad
_____ Radio/TV Ad
_____ Private Employment Agency
_____ State Personnel Department
_____ Professional Convention
_____ Friend/Relative
___✓__ Responded to Announcement of Vacancy
_____ Other — Please explain:

Are you willing to accept shift work during evening and night hours? Yes ( ✓ )   No (   )

Are you available to work ___✓___ Full Time _____ Part Time _____ Temporary?

The Alabama Department of Mental Health and Mental Retardation is an Equal Opportunity Employer. It does not discriminate with respect to race, color, religion, national origin, gender, age, or disability.

**PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION**

ADMH 04-00205

## EDUCATION

| High school graduate or GED? ( ) Yes   ( ) No | | Be as specific as possible about degree and major. | | | | | |

| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did You Graduate? | Degree and Date | Major |
|---|---|---|---|---|---|---|
| College Undergraduate | Troy University Montgomery, AL | 3/79 | 6/84 | Yes | B.S. 6/1984 | Business Administration |
| College Undergraduate | Tuskegee University Tuskegee Institute, AL | 1/70 | 6/71 | No | | English |
| College Graduate | Troy University Montgomery, AL | 3/84 | 3/92 | Yes | MS 3/1992 | Human Resources Management |
| College Graduate | | | | | | |
| Vocational Business | | | | | | |

Circle Highest Grade Completed

High School   9   10   11   (12)   College   13   14   15   (16)   Graduate School   17   18   (19)

| If you attended college in pursuit of either an undergraduate or graduate degree and did not obtain such, please indicate how many hours were received toward the degree. Please include the appropriate transcript with this application where applicable. | Sem. Hrs. _____ Qtr. Hrs. _____ | Please include copies of professional certificates/license, date, and state issued when applicable _____ _____ _____ |

## EMPLOYER/PROFESSIONAL REFERENCES

List three reliable persons, not relatives, who know you well enough to give information about your professional/educational background.

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| Ella B. Bell | Alabama State University P.O. Box 183, Mntg. AL 06104 | (334) 229-6866 | Administrator |
| Carl H. Nowell | 2129 E. South Blvd Mntg, AL | (334) 613-2211 | Administrator |
| Helen P. Brignet Thompson | 1916 Hull Street Mntg, AL 36104 | (334) 264-6164 | Ret Administrator |

Have you ever been involuntarily terminated or forced to resign from a position?          ( ) Yes   (✓) No

Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment)          ( ) Yes   (✓) No

**If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.**

Have you filed an application with this Department before?   (✓) Yes   ( ) No.   If yes, give date and facility name:

Date _____ Facility Name _Various throughout the Department since 1984_

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? (✓) Yes   ( ) No. If not a citizen of the U.S. give Visa type/status _____ (Proof of U.S. citizenship or Immigration status will be required upon employment.)

Date when you are available to begin work: _Following at least 2 weeks notice_

ADMH 04-00206

## WORK HISTORY
### THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME IS ATTACHED

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

---

**1. Current or Last Employer**
AL DMH/MR

**Your Official Job Title**
Staff Development Specialist V (Director)

**Address/Zip Code** RSA Union Bldg
100 N. Union Street, Montgomery, AL 36130

**Telephone Number** (334) 242-3133

**Type of Business** State Government

| FROM | | TO | | Total Months | Fulltime (✓) Parttime ( ) | Name of Supervisor | Ending Salary | May we contact current employer? |
|---|---|---|---|---|---|---|---|---|
| Month 3 | Year 2001 | Month Present | Year | 55 | Hours per week 40 | June Lynn | ▓▓▓ BW | (✓) Yes ( ) No |

**Number/Title of Employees you Supervised**
1 SDSI; 1 ASA III

**Equipment you Operated**
PC, FAX, Copier, Telephone, AV Equipment

**Reason for Leaving**
Current Employment

**Describe your Duties in Detail:**

Responsible for Planning, organizing, coordinating, and implementing a comprehensive staff development program, including Continuing Education

Continued on Attached Sheets

---

**2. Employer**
AL DMH/MR

**Your Official Job Title**
Personnel Specialist II / Acting Personnel Manager (Partm)

**Address/Zip Code** RSA Union Bldg
100 N. Union Street, Mntg. AL 36130

**Telephone Number** (334) 242-3133

**Type of Business** State Government

| FROM | | TO | | Total Months | Fulltime (✓) Parttime ( ) | Name of Supervisor | Ending Salary |
|---|---|---|---|---|---|---|---|
| Month 7 | Year 2000 | Month 3 | Year 2001 | 9 | Hours per week 40 | Henry Ervin | $ _____ per _____ |

**Number/Title of Employees you Supervised**
1 ASA III / 2 Personnel Specialists, 2 Payroll Clerks; 1 ASA

**Equipment you Operated**
PC, FAX, Copier, Telephone,

**Reason for Leaving**
Promotion

**Describe your Duties in Detail:**

Acted as assistant to the department's Personnel Manager; served in his absence by performing administrative functions and providing technical assistance

Continued on Attached Sheets

---

# ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION

### APPLICANT DATA RECORD

DATE: _9/22/05_

To help this Department evaluate our efforts as an Equal Opportunity Employer, we are requesting that you complete the following items of personal information. Your answers to these questions will be used only to study recruiting and employment patterns, and to furnish necessary information for government reports. We appreciate your cooperation.

This sheet will be separated from the employment application upon receipt, and will be maintained in a separate file. It will, in no way, affect consideration for possible employment with the Alabama Department of Mental Health and Mental Retardation.

## PLEASE PRINT

NAME _Carter_ / _Commie_ / _W._
      Last                 First                Middle

ADDRESS _515 Stakely Drive_ _Montgomery_ _AL_ _36111_
        Street               City            State         Zip Code

SOCIAL SECURITY NUMBER ████████████████

TITLE OF POSITIONS APPLIED
FOR AND DATE APPLIED: _Various_

RACE:

( ) Caucasian        ( ✓ ) Black

( ) American Indian     ( ) Asian/Pacific Islander

( ) Hispanic         ( ) Non-Resident Alien

( ) Other _____

GENDER: ( ) Male  ( ✓ ) Female

AGE: _53_  Birthdate _5,31,52_

VETERAN: ( ) Yes  ( ✓ ) No

ADMH 04-00208

3. Employer
AL DMH/MR

Your Official Job Title
Personnel Specialist III / Administrative Coordinator

Address/Zip Code RSA Union Bldg
100 N. Union Street, Montg. AL 36130

Telephone Number

Type of Business
State Government

FROM Month 6 Year 1999 TO Month 7 Year 200 Total Months 13

Fulltime ( ✓ ) Parttime ( )
Hours per week 40

Name of Supervisor
Ross Hart / Henry Ervin

Ending Salary $ _____ per _____

Number/Title of Employees you Supervised
1 ASA III, 1 Stock Clerk, 1 Printing Coordinator

Equipment you Operated
PC, FAX, Copiers, Telephone

Reason for Leaving
Change in job duties

Describe your Duties in Detail:

Coordinated and monitored special projects including Personnel functions
for the associate Commissioner for Administration

Continued on attached Sheets

4. Employer
AL DMH/MR

Your Official Job Title
Personnel Specialist III / Acting Dept Personnel Manager

Address/Zip Code RSA Union Bldg
100 N. Union Street, Montg. AL 36130

Telephone Number
(334) 242-3133

Type of Business
State Government

FROM Month 7 Year 1998 TO Month 10 Year 1998 Total Months 4

Fulltime ( ✓ ) Parttime ( )
Hours per week 40

Name of Supervisor
Dr. Edward Kamniker

Ending Salary $ _____ per _____

Number/Title of Employees you Supervised
3 Personnel Specialists, 2 Personnel Assistants, 1 Professional Trainee

Equipment you Operated
PC, FAX, Copier, Telephone

Reason for Leaving
Change in job duties

Describe your Duties in Detail:

Served as interim Dept Personnel Manager

Continued on attached Sheets

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release or copy thereof, within one year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME (No Initials) _Connie Whatley Carter_ (Signature)

SOCIAL SECURITY # ███████████

FULL NAME _Connie Whatley Carter_ (Typed or Printed Name)

CURRENT ADDRESS 515 Stakely Drive

DATE OF BIRTH 5/31/52 PLACE OF BIRTH Troy, AL

Montgomery, AL 36111

WITNESS _Karlee E. Taylor_ TITLE Continuing Ed Coordinator DATE 9/21/05

## CERTIFICATE/SIGNATURE

### Must be signed in ink by applicant

I certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

Signed _Connie W. Carter_ DATE 9/22/05

ADMH 04-00209

# APPLICATION FOR EMPLOYMENT
## Exempt Classification



ADDRESS ON ANNOUNCEMENT

**GENERAL INSTRUCTIONS**
Complete all portions of this application that are applicable to you and the position for which you are applying. Failure to do so may result in your not being considered for the position for which you are applying. Type or print clearly in ink.

## AN EQUAL OPPORTUNITY EMPLOYER

Full Name: **Carter** (Last) **Commie** (First) **W.** (Middle)

Social Security Number: ~~[redacted]~~

Address: **5/5 Stakely Drive** (Street) ___ (Apt #)
**Montgomery AL 36111** (City) (State) (Zip Code)

---

### LOCATIONS

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of non-merit vacancies at those facilities in which you express an interest. Please indicate below at which of our facilities you would consider employment. You will only be sent announcements of openings at facilities which you check. After one year and after each succeeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your application will be destroyed.

**Mental Illness Facilities**

( ) Bryce Hospital — Tuscaloosa, AL
( ) Searcy Hospital — Mt. Vernon, AL
( ) Harper Geriatric Psychiatry Center — Tuscaloosa, AL
( ) North Alabama Regional Hospital — Decatur, AL
( ) Thomasville MH Rehab Center — Thomasville, AL
( ) Hardin Secure Medical Facility — Tuscaloosa, AL
( ) Greil Psychiatric Hospital — Montgomery, AL

**Mental Retardation Facilities**

( ) William D. Partlow Developmental Center — Tuscaloosa, AL
( ) Albert P. Brewer Developmental Center — Daphne, AL
( ) Lurleen B. Wallace Developmental Center — Decatur, AL
( ) J. S. Tarwater Developmental Center — Wetumpka, AL

**ICF Nursing Homes**

( ) Alice Kidd — Tuscaloosa, AL
( ) S.D. Allen — Tuscaloosa, AL
( ) Claudette Box — Mt. Vernon, AL

(✓) Central Administrative Offices— Montgomery, AL

(See map on last page for locations of facilities)

---

If you are applying for a specific current vacancy, please give position title and announcement # **05-27**
**Departmental Assistant**
**Personnel Manager**

Telephone Number: Home: **(334) 284-0196** Office: **(334) 242-3133**

Legal Residence: **Montg** (City) **Montg** (County) **AL** (State)

Place of Birth: **Troy** (City) **Pike** (County) **AL** (State)

Minimum annual salary you would consider: ___

### REFERRAL

Where did you learn about the job for which you applied, or about the Department's application procedure?

___ Internet
___ Voluntary Walk-in
___ State Employment Service
___ College Career Day
___ DMH/MR Employee
___ Newspaper Ad
___ Professional Journal Ad
___ Radio/TV Ad
___ Private Employment Agency
___ State Personnel Department
___ Professional Convention
___ Friend/Relative
✓ Responded to Announcement of Vacancy
___ Other — Please explain:

Are you willing to accept shift work during evening and night hours? Yes (✓) No ( )

Are you available to work ✓ Full Time ___ Part Time ___ Temporary?

**The Alabama Department of Mental Health and Mental Retardation is an Equal Opportunity Employer. It does not discriminate with respect to race, color, religion, national origin, gender, age, or disability.**

---

**PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION**

ADMH 04-00210

## EDUCATION

High school graduate or GED? ( ) Yes ( ) No | Be as specific as possible about degree and major.

| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did You Graduate? | Degree and Date | Major |
|---|---|---|---|---|---|---|
| College Undergraduate | Troy University Montgomery, AL | 3/79 | 6/84 | Yes | B.S. 6/1984 | Business Administration |
| College Undergraduate | Tuskegee University Tuskegee Institute, AL | 1/70 | 6/71 | No | | English |
| College Graduate | Troy University Montgomery, AL | 3/84 | 3/92 | Yes | MS 3/1992 | Human Resources Management |
| College Graduate | | | | | | |
| Vocational Business | | | | | | |

Circle Highest Grade Completed

High School   9   10   11   (12)   College   13   14   15   (16)   Graduate School   17   18   (19)

If you attended college in pursuit of either an undergraduate or graduate degree and did not obtain such, please indicate how many hours were received toward the degree;

Sem. Hrs. _____
Qtr. Hrs. _____

Please include the appropriate transcript with this application where applicable.

Please include copies of professional certificates/license, date, and state issued when applicable
_____
_____
_____

## EMPLOYER/PROFESSIONAL REFERENCES

List three reliable persons, not relatives, who know you well enough to give information about your professional/educational background.

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| Ella B. Bell | Alabama State University, P.O. Box 183, Mntg, AL 06104 | (334) 229-6866 | Administrator |
| Carl H. Nowell | 2129 E. South Blvd Mntg, AL | (334) 613-2211 | Administrator |
| Helen P. Brignet Thompson | 1916 Hull Street Mntg, AL 36104 | (334) 264-6164 | Ret. Administrator |

Have you ever been involuntarily terminated or forced to resign from a position?   ( ) Yes   (✓) No

Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment)   ( ) Yes   (✓) No

**If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.**

Have you filed an application with this Department before?   (✓) Yes   ( ) No.   If yes, give date and facility name:

Date _____ Facility Name _Various throughout the Department since 1984_

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? (✓) Yes ( ) No. If not a citizen of the U.S. give Visa type/status _____. (Proof of U.S. citizenship or Immigration status will be required upon employment.)

Date when you are available to begin work: _Following at least 2 weeks notice_

ADMH 04-00211

**WORK HISTORY**
**THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME IS ATTACHED**

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

| 1. Current or Last Employer | Your Official Job Title |
|---|---|
| AL DMH/MR | Staff Development Specialist II (Director) |

Address/Zip Code RSA Union Bldg
100 N. Union Street, Montgomery, AL 36130     Telephone Number (334) 242-3133     Type of Business State Government

| FROM Month 3 Year 2001 | TO Month Present | Total Months 55 | Fulltime (✓) Parttime ( ) Hours per week 40 | Name of Supervisor June Lynn | Ending Salary ~~$~~ | May we contact current employer? (✓) Yes ( ) No |

Number/Title of Employees you Supervised
1 SDSI; 1 ASA III

Equipment you Operated
PC, FAX, Copier, Telephone, AV Equipment

Reason for Leaving
Current Employment

Describe your Duties in Detail:

Responsible for Planning, organizing, coordinating, and implementing a comprehensive staff development program, including Continuing Education

Continued on attached Sheets

| 2. Employer | Your Official Job Title |
|---|---|
| AL DMH/MR | Personnel Specialist II / Acting Personnel Manager (Partime) |

Address/Zip Code RSA Union Bldg
100 N. Union Street, Mmtg. AL 36130     Telephone Number (334) 242-3133     Type of Business State Government

| FROM Month 7 Year 2000 | TO Month 3 Year 2001 | Total Months 9 | Fulltime (✓) Parttime ( ) Hours per week 40 | Name of Supervisor Henry Ervin | Ending Salary $ _____ per _____ |

Number/Title of Employees you Supervised
1 ASA III / 2 Personnel Specialists, 2 Payroll Clerks; 1 ASA

Equipment you Operated
PC, FAX, Copier, Telephone,

Reason for Leaving
Promotion

Describe your Duties in Detail:

Acted as assistant to the department's Personnel Manager; served in his absence by performing administrative functions and providing technical assistance

Continued on attached Sheets

ADMH 04-00212

# ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION

### APPLICANT DATA RECORD

DATE: _9/22/05_

To help this Department evaluate our efforts as an Equal Opportunity Employer, we are requesting that you complete the following items of personal information. Your answers to these questions will be used only to study recruiting and employment patterns, and to furnish necessary information for government reports. We appreciate your cooperation.

This sheet will be separated from the employment application upon receipt, and will be maintained in a separate file. It will, in no way, affect consideration for possible employment with the Alabama Department of Mental Health and Mental Retardation.

## PLEASE PRINT

NAME _Carter_ _Commie_ _W._
         Last          First          Middle

ADDRESS _515 Stakely Drive_ _Montgomery_ _Al_ _36111_
          Street             City        State   Zip Code

SOCIAL SECURITY NUMBER ▬▬▬▬▬▬▬▬▬▬▬

TITLE OF POSITIONS APPLIED
FOR AND DATE APPLIED: _Various_

RACE:

( ) Caucasian              ( ✓ ) Black

( ) American Indian        ( ) Asian/Pacific Islander

( ) Hispanic               ( ) Non-Resident Alien

( ) Other _____

GENDER: ( ) Male  ( ✓ ) Female

AGE: _53_ Birthdate _5,31,52_

VETERAN: ( ) Yes  ( ✓ ) No

ADMH 04-00213

3. Employer
AL DMH/MR
Your Official Job Title
Personnel Specialist III/Administrative Coordinator

Address/Zip Code RSA Union Bldg
100 N. Union Street, Montg. AL 36130
Telephone Number
Type of Business State Government

| FROM | TO | Total Months | | |
|---|---|---|---|---|
| 6 1999 | 7 2000 | 13 | Fulltime (✓) Parttime ( ) Hours per week 40 | Name of Supervisor Ross Hart/Henry Ervin |

Ending Salary $_____ per _____

Number/Title of Employees you Supervised
1 ASA III; 1 Stock Clerk; 1 Printing Coordinator; 1 Copier

Equipment you Operated
PC, FAX, Copiers, Telephone

Reason for Leaving
Change in job duties

Describe your Duties in Detail:

Coordinated and monitored special projects including Personnel functions for the associate commissioner for Administration

Continued on attached Sheets

4. Employer
AL DMH/MR
Your Official Job Title
Personnel Specialist III/Acting Dept Personnel Manager

Address/Zip Code RSA Union Bldg
100 N. Union Street, Montg. AL 36130
Telephone Number (334) 242-3133
Type of Business State Government

| FROM | TO | Total Months | | |
|---|---|---|---|---|
| 7 1998 | 10 1998 | | Fulltime (✓) Parttime ( ) Hours per week 40 | Name of Supervisor Dr. Edward Kamniker |

Ending Salary $_____ per _____

Number/Title of Employees you Supervised
3 Personnel Specialists; 1 Professional Trainee; 2 Personnel Assistants

Equipment you Operated
PC, FAX, Copier, Telephone

Reason for Leaving
Change in job duties

Describe your Duties in Detail:

Served as interim Dept Personnel Manager

Continued on attached Sheets

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release or copy thereof, within one year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME (No Initials) _(Signature)_
FULL NAME Commie Whatley Carter (Typed or Printed Name)

SOCIAL SECURITY # _____
CURRENT ADDRESS 515 Stakely Drive

DATE OF BIRTH 5/31/52 PLACE OF BIRTH Troy, AL
WITNESS _____ TITLE Continuing Ed Coordinator DATE 9/21/05

Montgomery, AL 36111

## CERTIFICATE/SIGNATURE
Must be signed in ink by applicant

I certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

Signed _____ DATE 9/22/05

ADMH 04-00214

# Addendum to Assistant Personnel Manager Application

| 1. Current or Last Employer<br>Alabama Department of Mental Health and Mental Retardation | | | | | Your Official Job Title<br>Director, Staff Development<br>(Staff Development Specialist V) | | |
|---|---|---|---|---|---|---|---|
| **Address**<br>100 N. Union Street, Montgomery, AL 36130 | | | **Telephone Number**<br>(334) 242-3133 | | **Type of Business**<br>State Government | | |

| FROM | | TO | | Total Months | Fulltime ( ) PartTime ( ) | Name of Supervisor | Ending Salary | May we contact your employer? |
|---|---|---|---|---|---|---|---|---|
| Month | Year | Month | Year | 55 | Hours Per Week  40 | June Lynn, Acting Assoc<br>Commissioner | Per BW | ( X ) Yes  ( ) No |
| March | 2001 | Present | | | | | | |

| Number/Title of Employees You Supervised<br>) Staff Development Specialist I; 1 ASA III | Equipment You Operated<br>Personal Computer, Fax, Copier, Telephone | Reason for Leaving<br>Current |
|---|---|---|

**Describe Your Duties in Detail**

Responsible for planning, organizing, coordinating, and implementing a comprehensive human resource/staff development program; coordinating a Continuing Education program to provide accredited training for mental health system employees, including nurses, counselors, social workers, and psychologists, and other healthcare professionals. Developing and conducting employee orientation programs and job-specific training. Supervision and evaluation of Staff Development Office staff.

Preparing and conducting assessments of employee training needs through a variety of data gathering techniques. Formulating conclusions from such data and discussing findings with appropriate staff. Coordinating and/or designing training programs adequate to meet identified needs. Searching for resources to support the identified training needs. Preparing grant requests and monitoring progress through various action levels. Personally designing content of an employee training programs or negotiate contractual assistance in actual program development and presentation. Personally participating in the delivery of training exercises and monitoring delivery of training activity by contractual parties.

Consulting with program manages on program plans, operational procedures, and training issues in order to develop programs and/or enhance program results. Working with appropriate staff to design and implement related staff development programs, and to provide technical assistance as appropriate; developed the department's Cultural Competency Plan, as well as responsibility for coordinating the department's Cultural Competency committee; activities.

Responsible for meeting with supervisors to discuss planned activities and outcomes; as well as providing technical assistance. Soliciting supervisor's cooperation in providing an atmosphere to facilitate operational changes and implementation of skills and behaviors communicated by employee development exercises. Continually updating assessment of employee training needs, strategies to meet that need, actual training plans, and delivery methods. Preparing announcements and/or notices of training events and soliciting participants for specific offerings. Arranging space and equipment for specific events, preparing notices, and maintaining records of completed training. Approving invoices and letters of agreement for training or other training funds. Evaluating section activities and goal setting for the future.

Coordinate and/or conduct personnel-related training, such as Performance Appraisal, and Personnel for New Personnel Managers. Coordinate supervisory training offered through the State Personnel Department for departmental employees and community appropriate providers.

Assisted Human Resources in recruitment efforts by providing resources for job fairs and career day activities (provided 10 personal CD players to be used for recruitment.) Currently working on workforce succession plan for the department.

1

ADMH 04-00215

| 2. Last Employer<br>Alabama Department of Mental Health and Mental Retardation | | | | Your Official Job Title<br>Personnel Specialist III (Acted as assistant to<br>Departmental Personnel Manager)<br><br>Acting Personnel Manager<br>(W. D. Partlow Developmental Center) | | |
|---|---|---|---|---|---|---|
| Address<br>100 N. Union Street, Montgomery, AL 36130 | | | Telephone Number<br>(334) 242-3133 | Type of Business<br>State Government | | |
| FROM<br>Month    Year<br>July      2000 | TO<br>Month    Year<br>March    2001 | Total<br>Months<br>9 | Fulltime ( ) PartTime ( )<br><br>Hours Per Week  40 | Name of Supervisor<br>Henry Ervin | Ending Salary<br><br>$           Per | May we contact<br>your employer?<br>( X ) Yes  ( ) No |
| Number/Title of Employees You Supervised<br>1 ASA III in Central Office;<br>Supervised 1 ASA III, 2 Personnel Specialists, 2 Payroll<br>Clerks at W. D. Partlow Developmental Center | | | | Equipment You Operated<br>Personal Computer, Fax, Copier,<br>Telephone | | Reason for Leaving<br>Promotion |

**Describe Your Duties in Detail**

Acted as assistant to the department's Personnel Manager; served in the absence of the Department Personnel Manager performing administrative functions, and other technical assistance, as needed. Assisted in day to day operation with planning, organizing, and developing the department's human resources management program, including various functions such as responsibility for revising and updating the DMH/MR Human Resources policies and procedures; reviewing and monitoring department HRM programs; interviewing and selection, processing personnel requests, monitoring facility functions, including staffing requirements. Training, managing, and coordinating the GHRS system and providing technical assistance as and where needed.

Coordinating and monitoring contract employee system through GHRS. Writing job specifications; monitoring facilities for rules compliance and coordinating data for employee disciplinary actions. Research, monitoring, and writing department's Affirmative Action Plan.

Updating and monitoring position classifications, and performance appraisals processing.

Participated in the department's recruitment efforts by attending onsite career days and job fairs; provided timely information to prospective employees and interested persons.

Reviewing requests for reallocations and reclassifications, etc.; conducting job audits and reviews.

Providing technical assistance to facility and Central Office divisions, bureaus, and offices interpreting rules, regulations, and proper personnel procedures concerning such matters as performance evaluations and personnel actions; conducting PDCs and associated actions.

Conducting and attending meetings, including monthly state personnel meetings, personnel officer meetings, and office staff meetings.

Monitoring expenditures and preparing budget for the Central Office Personnel.

Serving on various committees, teams, and task forces, as assigned.

## W. D. PARTLOW DEVELOPMENTAL CENTER

Worked directly with the facility director and facility executive staff in performing duties at interim Personnel Manger upon retirement of previous manager.

Served as acting Personnel Manager for W. D. Partlow Development Center in Tuscaloosa, AL. Traveled to facility 2 to 3 times weekly to perform administrative functions as acting director, including processing personnel actions, conducting

2

and participating in PDC's, disciplinary procedures, recruitment, interviewing and selection, job placements, training employees on policies, and performance appraisals.

Conducted investigations of hostile work environment complaints. Participated in staff meetings. Advised facility managers and assisted employees with personnel related needs.

Coordinated Personnel and Payroll functions; approved leave and performed budget management, and other special projects.

*Performed personnel duties functions related to closures, including calculating retention scores and conducting job placement interviews with displaced employees at the following DMH/MR facilities over the course of work in Human Resources Management: Eufaula Adolescent Center, Glenn Ireland Developmental Center, A. P. Brewer Developmental Center, J. S. Tarwater Developmental Center, Thomasville Rehabilitation Center.

3

ADMH 04-00217

| 3. Last Employer | | | | | Your Official Job Title | | |
|---|---|---|---|---|---|---|---|
| Alabama Department of Mental Health and Mental Retardation | | | | | Personnel Specialist III /Administrative Coordinator | | |

| Address | | | | Telephone Number | Type of Business | | |
|---|---|---|---|---|---|---|---|
| 100 N. Union Street, Montgomery, AL  36130 | | | | (334) 242-3133 | State Government | | |

| FROM | | TO | | Total Months | Fulltime ( ) PartTime ( ) | Name of Supervisor | Ending Salary | May we contact your employer? |
|---|---|---|---|---|---|---|---|---|
| Month | Year | Month | Year | | Ross Hart/Henry | $ ____ Per ____ | ( X ) Yes  ( ) No |
| June | 1999 | July | 2000 | | Hours Per Week  40 | Ervin | | |

| Number/Title of Employees You Supervised | Equipment You Operated | Reason for Leaving |
|---|---|---|
| 1 ASA III, 1 Stock Clerk I, 1 Printing Coordinator, 1 Contract Laborer | Personal Computer, Fax, Copier, Telephone | Current |

**Describe Your Duties in Detail**

Coordinated and monitored special projects as assigned for meeting planning and program objectives under the supervision of the Associate Commissioner for Administration.  This included the Departmental Cultural Diversity training, monitoring the Aboud labor relations recommendations, development of specifications for the improvement of the contract system, training, and implementation functions, and the development of specifications for a personnel requests tracking system.  Assisted with the notification and settlement agreement documents for Wyatt by providing printing and publications services, and worked with Data Management with the formatting for web publication, and other associated tasks.

Served as secretary to the Management Steering Committee and Rapid Response Team so that organizational tasks are performed and accurate information is recorded and made available to the appropriate parties.  This also involved the coordination of meetings.

Performed various assigned personnel tasks, provided technical assistance on various personnel and administrative issues, and training where necessary for continued services considering program objectives, guidelines, and implementation schedules are met, and insuring compliance with departmental policies and procedures, rules, and regulations, state and federal laws and regulations as assigned by the Associate Commissioner.

Monitored and maintained the Division of Administration and Support Services budgets.

Directed, supervised, monitored, and evaluated administrative support staff and services for duties and responsibilities as performed by functions of the mail services, printing and publications services, and warehouse inventory and supplies services to assure that services were ongoing with maximum departmental utilization of services achieved.

Interfaced with internal, external, and other appropriate sources in order to give, receive, and disseminate information to facilitate the accomplishment of the Division of Administration's  mission and goals; provided appropriate response to information and requests in a manner appropriate to the type of information requested or received with reports.

Developed and wrote specifications and procedures for the Contract and Personnel Request systems and monitored programs so that documents are processed appropriately; developed specifications for TermTrak departmental separations and dismissals system, including compiling, recording, and responding to request for verifications

Accepted and performed special assignments within and in addition to regular job duties to meet departmental objectives, mission, and goals under the supervision of the Associate Commissioner for Administration.

4

| 4. Last Employer Alabama Department of Mental Health and Mental Retardation | | | | Your Official Job Title Personnel Specialist III (Acting Director, Bureau of Human Resources Management) | | |
|---|---|---|---|---|---|---|
| **Address** 100 N. Union Street, Montgomery, AL  36130 | | | **Telephone Number** (334) 242-3133 | **Type of Business** State Government | | |
| **FROM** Month    Year July      1998 | **TO** Month    Year October  1998 | **Total Months** | **Fulltime ( ) PartTime ( )** Hours Per Week  40 | **Name of Supervisor** Dr. Edward Kamnikar, Assoc Commissioner | **Ending Salary** $_____ Per____ | **May we contact your employer?** (X) Yes ( ) No |
| **Number/Title of Employees You Supervised** 2 Personnel Specialist III, 1 Professional Trainee, 2 Personnel Assistants | | | | **Equipment You Operated** Personal Computer, Fax, Copier, Telephone | | **Reason for Leaving** Current |

**Describe Your Duties in Detail**

Served as the Department's Personnel Manager.  In the interim, performed managerial, administrative and consultative work in planning, directing, and monitoring Human Resources Management operations for Central Office and providing support for facility personnel operations.

Duties included supervision of Personnel Office support staff, tracking and responding to various issues related to the administration of personnel programs affecting the assigned area. Representation on various groups and committees within the department.

Actively participating and providing quality control for payroll and personnel actions involving the application and interpretation of Personnel Administration, applicable labor relations, and other areas of administration including the assurance of the enforcement of State and Federal rules and regulations within the limits of applicable statutes, policies, labor relations, both State and Federal, departmental policy and procedures.

Interim Department Personnel Director; performed managerial, administrative, and consultative work in planning, directing, and monitoring HRM operations at Central office and provide technical support to 14 departmental facility personnel operations.

5

ADMH 04-00219

| 5. Last Employer |||| Your Official Job Title |||
|---|---|---|---|---|---|---|
| Alabama Department of Mental Health and Mental Retardation |||| Personnel Specialist III |||
| Address |||| Telephone Number | Type of Business ||
| 100 N. Union Street, Montgomery, AL 36130 |||| (334) 242-3133 | State Government ||

| FROM || TO || Total Months | Fulltime ( ) PartTime ( ) | Name of Supervisor | Ending Salary | May we contact your employer? |
|---|---|---|---|---|---|---|---|---|
| Month | Year | Month | Year | | Hours Per Week  40 | Thomas | $        Per____ | (X) Yes ( ) No |
| August | 1994 | July | 1998 | | | King/Anthony Dykes | | |

| Number/Title of Employees You Supervised | Equipment You Operated | Reason for Leaving |
|---|---|---|
| 1 ASA III | Personal Computer, Fax, Copier, Telephone | Current |

**Describe Your Duties in Detail**

Reviewed personnel forms and applies second level approval on Employee Status Maintenance Screen (ESMT) for all Central Office personnel transactions and personnel actions which involve the transfer of employees between facilities. Monitors personal actions for fourth level approval through State Personnel Department. Indirect supervision of Personnel Office clerical and support assistants.

Provided technical assistance system-wide to employees, prospective applicants, personnel officers, general public and employees of other State agencies on personnel matters and issues using State Personnel Rules and Regulations and departmental policies and procedures to answer questions, advise on appropriate actions, interpret rules and regulations, and receive information.

Maintained departmental position history control. Compared staffing plans submitted by facilities to position status records to ensure that only budgeted positions are authorized to fill. Updates Position Status Maintenance (PSMT) and Position Authorization Maintenance (PAMT) tables as personnel and staffing changes occur. Applied fourth level approval on all DMH/MR exempt classification positions and budget authorization; monitor and request State Personnel approval for all State merit system positions. Requested to fill vacant positions through the State Finance Director.

Maintained and researched applicant tracking system; researches repository of applicants using qualifications for Department of Mental Health exempt specifications and/or announcements to select qualified applicants to be notified for exempt job vacancies. Reviewed applications currently on file, completed data sheets and codes for computer application.

Coordinated and implemented the 1998 Performance Appraisal System changes department wide, and provided training to all Central Office supervisors and interested employees.

Prepared and monitored Personnel Section budget. Provided data to Finance Office on Section's performance indicators. Liaison to State Personnel, Divisions of Administration, Mental Illness, Mental Retardation, and facility personnel offices in personnel matters associated with employment and pay involving the GHRS system. Reviewed contracts, entered, applied fourth level approval for all DMH/MR contract employees; maintains department file of all contractors entered in the GHRS system. Performed personnel administrative duties as assigned by department personnel director.

6

| 6. Last Employer | | | | | | Your Official Job Title | | | |
|---|---|---|---|---|---|---|---|---|---|
| Alabama Department of Mental Health and Mental Retardation | | | | | | Staff Development Specialist III | | | |
| Address | | | | Telephone Number | | Type of Business | | | |
| 100 N. Union Street, Montgomery, AL 36130 | | | | (334) 242-3133 | | State Government | | | |
| FROM | | TO | | Total Months | Fulltime ( ) PartTime ( ) | Name of Supervisor | | Ending Salary | May we contact your employer? |
| Month | Year | Month | Year | | Hours Per Week 40 | Paulette Brignet/ | | | (X) Yes ( ) No |
| October | 1989 | August | 1994 | | | George Bretherick | | $ ___ Per ___ | |
| Number/Title of Employees You Supervised | | | | | | Equipment You Operated | | Reason for Leaving | |
| 1 Temporary Clerical Worker | | | | | | Personal Computer, Fax, Copier, Telephone | | Current | |

**Describe Your Duties in Detail**

Coordinated, scheduled, and provided training and development programs for central office staff, state facilities, and community mental health centers using internal or external resources and also includes preparing correspondence, assigning dates, locations, and other necessary arrangements; assisting in advising training consultants in development of outlines of course objectives; contact with internal and external training and education personnel; researching and obtaining resources, i.e., facilities, equipment, personnel.

Planned, developed and instructed participants in courses; preparation of evaluation tests; administering and scoring tests. Served as liaison to various educational institutions and private organizations in coordination of training using instructors obtained through contract or agreement. Scheduled and coordinated personal computer training programs; developed and administered data collection instruments (questionnaires, needs assessments).

Indirect supervision of office clerical and support assistants, and supervision of one temporary clerical worker.

Developed and maintained contracts negotiated with universities and private agencies for the purpose of providing training, education, and development programs for department employees and community mental health program personnel not otherwise available through internal resources. Responsible for providing continuous status reports of contracts, as requested. Served as liaison with university and agency staff in maintenance of contracts and coordination of programs.

Prepared budget for HRD section. Maintained ledgers of section budget and all funds in training contracts; verified and coded contract vouchers; compiled status reports for budget purpose; reviewed budget analysis reports, purchase orders; reviews and maintains training contracts, letters of agreement, contract vouchers, budget requests.

Developed, scheduled, coordinated, and provided (teach) computer training programs for mainframe computer system, including GHRS, GHRS report writer; provides state-wide departmental/system training on the state-wide Government Human Resource System (GHRS) and report generator; analyzes participant evaluations and distributes results to appropriate destination.

Coordinated and provided technical assistance for conferences, workshops, training sessions, and individual troubleshooting for personal computer problems; provided technical assistance on GHRS in field, as needed, based on individual preference; individual problem solving and suggestions on GHRS.

All training coordinated or presented by HRD is made available to all DMH/MR system employees and conducted statewide. Prepared HRD reports and annual documents (i.e., HRD Annual Report, HRD EEO Training Report to Central Office Personnel). Assisted in the development of the facility Core Curriculums.

7

ADMH 04-00221

| 7. Last Employer Alabama Department of Mental Health and Mental Retardation | | | | | Your Official Job Title Staff Development Specialist II | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Address 100 N. Union Street, Montgomery, AL 36130 | | | | Telephone Number (334) 242-3133 | Type of Business State Government | | | | |
| FROM | | TO | | Total Months | Fulltime ( ) PartTime ( ) Hours Per Week 40 | Name of Supervisor Paulette Brignet | | Ending Salary $           Per | May we contact your employer? (X) Yes ( ) No |
| Month January | Year 1988 | Month October | Year 1989 | | | | | | |
| Number/Title of Employees You Supervised | | | | | Equipment You Operated Personal Computer, Fax, Copier, Telephone | | | Reason for Leaving Current | |

**Describe Your Duties in Detail**

Scheduled and coordinated training programs with concentration in personal computer training; composed, wrote, and distributed documents such as letters, memos, reports, training brochures, proposals, training manuals, training records, research materials, training announcements, needs assessments and surveys; attended and conducted meetings such as staff meetings, staff development officers meetings, and other meetings, as needed; provided training and consultation with concentration in personal computers; obtained resources, i.e., training facilities, equipment and personnel, by coordinating with others to facilitate the purpose/situation; maintained training records.

Coordinated and maintained human resource database for purpose of management decision-making; developed and prepared staff training policies and procedures; liaison to Auburn University in Montgomery, Center for Government and Public Affairs in coordination of personal computer training programs. (These duties provided for statewide services to DMH/MR facilities.)

8

ADMH 04-00222

| 8. Last Employer | | | | | Your Official Job Title | | | |
| Alabama Department of Mental Health and Mental Retardation | | | | | Data Coordinator/Inservice Instructor | | | |
| Address | | | | Telephone Number | Type of Business | | | |
| 100 N. Union Street, Montgomery, AL 36130 | | | | (334) 242-3133 | State Government | | | |
| FROM | | TO | | Total Months | Fulltime ( ) PartTime ( ) | Name of Supervisor | | Ending Salary | May we contact your employer? |
| Month | Year | Month | Year | | | Paulette Brignet | | | |
| October | 1985 | January | 1988 | | Hours Per Week 40 | | | $ ___ Per ____ | ( X ) Yes ( ) No |
| Number/Title of Employees You Supervised | | | | | Equipment You Operated | | Reason for Leaving | |
| | | | | | Personal Computer, Fax, Copier, Telephone | | Current | |

Describe Your Duties in Detail

Coordinated and trained Departmental employees in use of personal computers and software, including DOS, word processing using DisplayWrite, Lotus 1-2-3, and dBase.

Coordinated and maintained Staff Development grant and human resource database for purpose of management decision-making. Supervised and trained office technology trainees provided through an internship program from a local technical college.

9

ADMH 04-00223

# SPECIALIZED TRAINING AND EXPERIENCE

**September, 1997 – Present     1997 NEW PERFORMANCE APPRAISAL TRAINING – TRAIN-THE-TRAINER**

Coordinated Performance Appraisal efforts for DMH/MR; Completed the train-the-trainer program; Coordinated department-wide training; Partnered to conduct training for Central Office supervisors and support staff; Provided documentation to State Personnel and provided technical assistance.

Developed curriculum based on training and materials provided by State Personnel to conduct training for Central Office. Currently provide on-going training and technical assistance as needed or requested.

Provided technical assistance on a continuous basis by (1) reviewing responsibilities and results for accuracy; (2) communicating procedures department-wide; (3) discussing forms; (4) distribution of training manuals; (5) design and production of MH exempt working test period (probationary) form.

**March, 1990 – Present     GOVERNMENT HUMAN RESOURCE SYSTEM (GHRS)**

Participated in three-month training program on the GHRS Personnel and Payroll System. Served on Implementation Team; Developed DMH/MR-specific Personnel and Payroll training curriculum based on training materials provided by FRMS Implementation Team. Assisted with implementation of GHRS at DMH/MR in two phases:

Coordinated and trained employees department-wide – trained over 500 employees on the GHRS system. Updated mainframe training environment with assistance of Data Management Division. Currently provide ongoing training and technical assistance as needed or requested.

| | |
|---|---|
| **July 1999 And August 1999** | **Cultural Diversity – "Affirming Diversity for the 21st Century"** And Train-the-Trainer |
| **February 1998** | **Family Medical Leave Act Statewide Policy Training** Montgomery, AL |
| **December 1997** | **State Employee Injury Compensation Trust Fund (SEITCF) Supervisory Training** Montgomery, AL |
| **September 1997** | **Performance Appraisal Train-the-Trainer** Certified by State Personnel |
| **June 1997** | **Orientation to State Government** State Personnel Training Division Montgomery, AL |
| **May 1997** | **Positive Discipline** State Personnel Training Division Montgomery, AL |
| **February 1997** | **Employment Law for State Supervisors** State Personnel Training Division Montgomery, AL |

10

| January 1995 | **Employment Interviewing and Selection**<br>State Personnel Training Division<br>Montgomery, AL |
|---|---|
| January 1995 | **Employment Interviewing and Selection**<br>Auburn University at Montgomery<br>A professional development program – The Alabama Society<br>of Certified Public Managers |
| January 1995 | **Target Interviewing**<br>State Personnel Department |
| October 1994 | **Effective Supervision**<br>State Personnel Department |
| October 1994 | **Selection Procedure**<br>State Personnel Department |
| January 1994 | **Instructional Systems Development**<br>Train-the-Trainer<br>Montgomery, AL |
| March 1993 | **Certified Public Manager Training – Level II**<br>Auburn University at Montgomery |
| October 1992 | **Effective Supervision**<br>State Personnel Training Division<br>Montgomery, AL |
| March 1992 | **Certified Public Manager Training – Level I**<br>Auburn University at Montgomery |
| October 1991 | **Americans With Disabilities Training**<br>Montgomery, AL |
| August 1990 | **Minority Issues Conference**<br>(Program co-sponsored by DMH/MR and the Alliance for the Mentally Ill in<br>Alabama; assisted in coordination of conference)<br>Tuskegee Institute, AL |
| September 1988 | **Manager Interpersonal Skills – Train-the-Trainer**<br>(Training program coordinated by the Department of Mental Health and Mental<br>Retardation through the Division of Continuing Education at the University of<br>Alabama – Birmingham)<br>Birmingham, AL |

## SPECIAL SKILLS

Computer literate in Widows environment; Word for Windows word processing; Lotus and Excel spreadsheets; PowerPoint presentation software; dBase and Access database; Internet; DMH/MR mainframe report writer.

11

ADMH 04-00225

**DEPARTMENT OF MENTAL HEALTH / MENTAL RETARDATION**
**APPLICATION EVALUATION FORM**

_Danielle Coteat_

Applicant Name

Departmental Assist Personnel Mgr / H5500

Position Title / Job Code

05-27

Announcement #

9/30/05

Closing Date

9/29/05

Date Received

88/3339

Positions #

10/5/04

Date Evaluated

_M. Mathis_

Rater's Name

---

## MINIMUM QUALIFICATIONS REQUIREMENTS FOR POSITION

**Qualification:**

**Applicant's Training / Education:**    *Meets Requirements*  _yes_
Bachelor's degree in Human Resource Management / Personnel Management, Business Administration, Public Administration, or related field.

**Applicant's Experience:**    *Meets Requirements*  _yes_
Extensive (72 months or more) working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity.

**Licensure / Certification:**    *Meets Requirements*  _N/A_    *Date Verified* _____

**Special Requirements:**    *Meets Requirements*  _N/A_    *Date Verified* _____

**Meets Minimum Qualification Requirements:**  _yes_

**Preference Will Be Given To Individuals With:**
➢ Master's degree in any of the above specified fields of study.
➢ Work experience in the governmental / public sector.
➢ Work experience in a healthcare setting.

---

**Meets Minimum Qualification Requirements (1 point)**    _1_

**Additional Specific / Related Education (2 points)**    _0_
    Required Degree _yes_    Additional Related Degree _no_

**Additional Specific / Related Experience (5 points)**    _0_
    Total Related Experience – Required Experience =Additional Related Experience (/12)
    One Point For Each Full Year of Additional Related Experience Up to Maximum of 5

**Preference Points**    _1_
Work experience in preferred area:    1 to 5 years = 1 point    6 to 10 years = 2 points
MS Degree = 2 points

**OVERALL RATING:**    _2_

---

**Interview:**    Date: _____    Time: _____

ADMH  04-00226

CLASS TITLE: _Dept. Asst Personnel Mgr._    CODE: _H5500_

NAME: _Danielle Coteat_

DEGREE SUBJECT: _BS Human Resource Mgat_

DEGREE LEVEL / DATE RECEIVED: _BS 8/97_

TOTAL QUALIFIED, POST DEGREE WORK EXPERIENCE: _75 Months / Supv = 24_

PROFESSIONAL LICENSURE: _____

## WORK EXPERIENCE WORKSHEET:

1.) QUALIFIED = (Y) N    YRS/MON = _12 M_    _10/04 - Present_
_UAB Benefits Counselor for Human Resource_
_Supv = 0 ( HR general clerical work )_

2.) QUALIFIED = (Y) N    YRS/MON = _34 M_    _11/01 - 9/04_
_Childrens Hospital    Human Resource Assistant_
_B'ham    New Hire orientation ; Background_
_Supv. = 0    checks . (Personnel Clerical work)_

3.) QUALIFIED = (Y) N    YRS/MON = _12 M_    _8/99 - 9/99_
_Teletech    Human Resource Assistant_
_Conduct new hire orientation, Process_
_Supv = 0    new hires, answer questions (Personnel Clerical work_

4.) QUALIFIED = Y (N)    YRS/MON = _24 M_
_Investigations Corp - of AL    9/99 - 8/01_
_B'ham - Conduct employment verifications_
_Supv = 2-5    Research Specialist_

5.) QUALIFIED = Y (N)    YRS/MON = _6 M_    _1/98 - 6/98_
_Regions Bank    Developed PC Training_
_Computer - Based_

2/2

CLASS TITLE: _____ CODE: _____

NAME: *Danielle Coteal* _____

DEGREE SUBJECT: _____

DEGREE LEVEL / DATE RECEIVED: _____

TOTAL QUALIFIED, POST DEGREE WORK EXPERIENCE: _____

PROFESSIONAL LICENSURE: _____

**WORK EXPERIENCE WORKSHEET:** *17 M with BS degree 8/97 BS completed*

1.) QUALIFIED = *Y* – N   YRS/MON = *26M   11/96 – 1/98*

*Human Resources assist  (General clerical work*
*Regions Bank    (  specific to Personnel mgmt.)*

2.) QUALIFIED = _Y -- N_   YRS/MON = _____   _____

3.) QUALIFIED = _Y -- N_   YRS/MON = _____   _____

4.) QUALIFIED = _Y -- N_   YRS/MON = _____   _____

5.) QUALIFIED = _Y -- N_   YRS/MON = _____   _____

ADMH 04-00228

# APPLICATION FOR EMPLOYMENT
### Exempt Classification

RECEIVED



RECEIVED

OCT 04 2005
ADDRESS ON ANNOUNCEMENT
PERSONNEL OFFICE

SEP 29 2005

HUMAN RESOURCES
BUREAU

GENERAL INSTRUCTIONS
Complete all portions of this application that are applicable to you and the position for which you are applying. Failure to do so may result in your not being considered for the position for which you are applying. Type or print clearly in ink.

## AN EQUAL OPPORTUNITY EMPLOYER

Full Name **Coteat, Danielle, Moniquie**
Last / First / Middle

Social Security Number ~~████████~~

Address **2749 Temple Crest Drive**
Street / Apt. #
**Birmingham, AL    35209**
City / State / Zip Code

### LOCATIONS

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of non-merit vacancies at those facilities in which you express an interest. Please indicate below at which of our facilities you would consider employment. You will only be sent announcements of openings at facilities which you check. After one year and after each succeeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your application will be destroyed.

**Mental Illness Facilities**

( ) Bryce Hospital — Tuscaloosa, AL
( ) Searcy Hospital — Mt. Vernon, AL
( ) Harper Geriatric Psychiatry Center — Tuscaloosa, AL
( ) North Alabama Regional Hospital — Decatur, AL
( ) Thomasville MH Rehab Center — Thomasville, AL
( ) Hardin Secure Medical Facility — Tuscaloosa, AL
( ) Greil Psychiatric Hospital — Montgomery, AL

**Mental Retardation Facilities**

( ) William D. Partlow Developmental Center — Tuscaloosa, AL
( ) Albert P. Brewer Developmental Center — Mobile, AL
( ) Lurleen B. Wallace Developmental Center — Decatur, AL
( ) J. S. Tarwater Developmental Center — Wetumpka, AL

**ICF Nursing Homes**

( ) Alice Kidd — Tuscaloosa, AL
( ) S.D. Allen — Tuscaloosa, AL
( ) Claudette Box — Mt. Vernon, AL

(X) Central Administrative Offices— Montgomery, AL

(See map on last page for locations of facilities)

---

If you are applying for a specific current vacancy, please give position title and announcement #**05-27**
**Dept. Asst. Personnel Manager**
**Job Code: H5500**

Telephone Number    Home: **(205) 941-9942**
                    Office: **(205) 934-4051**

Legal Residence **Birmingham, Jefferson, AL**
City / County / State

Place of Birth **Birmingham, Jefferson, AL**
City / County / State

Minimum annual salary you would consider: **Negotiable**

### REFERRAL

Where did you learn about the job for which you applied, or about the Department's application procedure?

_____ Voluntary Walk-in
_____ State Employment Service
_____ College Career Day
_____ DMH/MR Employee
_____ Newspaper Ad
_____ Professional Journal Ad
_____ Radio/TV Ad
_____ Private Employment Agency
_____ State Personnel Department
_____ Professional Convention
_____ Friend/Relative
_____ Responded to Announcement of Vacancy
__X__ Other — Please explain: **Internet DMH/MR website.**

Are you willing to accept shift work during evening and night hours?  Yes ( )  No ( )

Are you available to work __X__ Full Time _____ Part Time _____ Temporary?

The Alabama Department of Mental Health and Mental Retardation is an Equal Opportunity Employer. It does not discriminate with respect to race, color, religion, national origin, gender, age, or disability.

**PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION**

ADMH 04-00229

## EDUCATION

| High school graduate or GED? (X) Yes    ( ) No | Be as specific as possible about degree and major. | | | | | |
|---|---|---|---|---|---|---|
| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did You Graduate? | Degree and Date | Major |
| College Undergraduate | Talladega College 627 West Battle Street Talladega, AL 35160 | 8/92 | 5/93 | N/A | N/A | Business |
| College Undergraduate | University of Alabama at Birmingham 1530 – 3rd Avenue South Birmingham, AL 35294 | 9/93 | 8/97 | Yes | B.S. 8/97 | Human Resource Management |
| College Graduate | | | | | | |
| College Graduate | | | | | | |
| Vocational Business | | | | | | |

Circle Highest Grade Completed

High School   9   10   11   12      College   13   14   15   (16)      Graduate School   17   18   19

| If you attended college in pursuit of either an undergraduate or graduate degree and did not obtain such, please indicate how many hours were received toward the degree; Please include the appropriate transcript with this application where applicable. | Sem. Hrs. _____ Qtr. Hrs. _____ | Please include copies of professional certificates/license, date, and state issued when applicable _____ _____ _____ _____ |
|---|---|---|

## EMPLOYER/PROFESSIONAL REFERENCES

List three reliable persons, not relatives, who know you well enough to give information about your professional/educational background.

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| Berthetta Wilson | 1600 – 5th Avenue South Birmingham, AL 35233 | (205)939-5194 | Human Resource Consultant |
| Sonya Green | 7000 Jefferson Metropolitan Pkwy, McCalla, AL 35444 | (205)499-6390 | Human Resource Assistant |
| Teresa Edwards | 1600 – 5th Avenue South Birmingham, AL 35233 | (205)939-5859 | Nurse Recruiter |

Have you ever been involuntarily terminated or forced to resign from a position?    ( ) Yes   (X) No

Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment)    ( ) Yes   (X) No

**If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.**

Have you filed an application with this Department before?    ( ) Yes   (X) No.    If yes, give date and facility name:

Date _____   Facility Name _____

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? (X) Yes    ( ) No. If not a citizen of the U.S. give Visa type/status _____ . (Proof of U.S. citizenship or Immigration status will be required upon employment.)

Date when you are available to begin work: Current employer requires 1 month notice.

## WORK HISTORY
### THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME' IS ATTACHED

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

| 1. Current or Last Employer | Your Official Job Title |
|---|---|
| University of Alabama at Birmingham | H.R.M. Benefits Counselor |

Address/Zip Code: AB 270-1530 Third Ave. South 35294

Telephone Number: (205) 934-4408

Type of Business: University and Hospital

FROM: 10/04  TO: —

Total Months:

Fulltime (X) Parttime ( )  Hours per week 40

Name of Supervisor: Michael Boyd

Ending Salary: $ ___ per ___

May we contact current employer? ( ) Yes (X) No

Number/Title of Employees you Supervised: None

Equipment you Operated: Computer, Fax and Copier Machine

Reason for Leaving:

Describe your Duties in Detail: Conduct the Benefits presentation to new hires during orientation. Enroll employees in the TIAA-CREF (403b) and RSA-1 retirement programs. Meet with prospective retirees to facilitate the retirement process by completing the required forms for the Teacher's Retirement System of Alabama. Calculate vacation and unused sick days for retirement purposes. Enter all new hires benefits into ORACLE. Process all new hire and status change paperwork for hospital personnel. Generate the appropriate correspondence regarding benefits for new hire and employee status changes for hospital employees including leave of absences. Process insurance changes for employees and enters the refunds and special inputs to reflect the changes due to the qualifying life event.

| 2. Employer | Your Official Job Title |
|---|---|
| Children's Hospital | Human Resources Assistant |

Address/Zip Code: 1600 - 5th Ave. South Birmingham, AL 35233

Telephone Number: (205) 939-

Type of Business: Hospital

FROM: 11/01  TO: 09/04

Total Months:

Fulltime (X) Parttime ( )  Hours per week 40

Name of Supervisor: Suzanne Thorn

Ending Salary: $ ___ per year

Reason for Leaving: New Job

Number/Title of Employees you Supervised: None

Equipment you Operated: Computer, Fax and Copier Machines, Switchboard, Scanner

Describe your Duties in Detail: Assisted with new hire orientation and benefits fair open enrollment. Assisted employees with benefits questions regarding medical, vision, and dental insurance, flexible spending, tuition reimbursement, 401K, and life insurance. Assisted in Recruitment process by screening applications/resumes and conducted phone screenings. Entered applicant data information into Peoplesoft. Managed background check process. Scheduled applicants for drug screenings. Administered pre-employment tests. Sent out offer and rejection letters including applicant post cards. Processed RN referrals. Entered disciplinary actions into Peoplesoft. Maintained HRIS records. Scheduled Administrative Reviews for grievances filed by former employees. Established peer panels for employees to settle a disciplinary action. Processed unemployment claims. (See Resume)

ADMH 04-00231

3. Employer Security Engineers- Owner of Investigations Corporation of Alabama

Your Official Job Title Research Specialist/ H.R. Coordinator

Address/Zip Code 272 Snow Drive, Homewood, AL 35209

Telephone Number (205) 251-0566

Type of Business Background Check Services

| FROM Month 9 Year 1998 | TO Month 8 Year 2001 | Total Months | Fulltime (X) Partime ( ) Hours per week 40 |
|---|---|---|---|

Name of Supervisor Ben Shelton; Perry Martin

Ending Salary $ _____ per year

Number/Title of Employees you Supervised 2-5

Equipment you Operated Computer, Copier & Fax machines

Reason for Leaving new job in H.R.

Describe your Duties in Detail: Conducted interviews. Cross trained all employees on current procedures. Acknowledged and serviced clients in a timely manner. Provided additional help to Research Specialists when client requests increase. Corresponded with clients on both positive and negative feedback. Developed current associates in order to promote associates. Conducted annual performance appraisals and monthly status checks. Maintained all records in database and hard copies. Ensured that accurate background checks were performed.

4. Employer Teletech

Your Official Job Title Human Resources Assistant

Address/Zip Code E. J. Oliver Blvd. Fairfield, AL 35064

Telephone Number (205) 714-7566

Type of Business Call Center

| FROM Month 8 Year 1998 | TO Month 9 Year 1998 | Total Months | Fulltime (X) Partime ( ) Hours per week 40 |
|---|---|---|---|

Name of Supervisor Angela Bailey

Ending Salary $ _____ per year

Number/Title of Employees you Supervised None

Equipment you Operated Computer, Copier, Fax machine

Reason for Leaving Position Eliminated

Describe your Duties in Detail: Conducted new hire orientation. Processed new hire paperwork. Updated termination database. Assisted employees with any questions ranging from benefit information to other human resources related issues. Assisted prospective new hires for employment with application process. Administered assessment test. Handled internal job posting system. Merged COBRA letters. Generated & maintained employee files.

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release or copy thereof, within one year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME (No Initials) (Signature) Danielle Moniquie Coteat

SOCIAL SECURITY # _____

FULL NAME (Typed or Printed Name) Danielle Moniquie Coteat

CURRENT ADDRESS 2749 Temple Crest Drive

DATE OF BIRTH 10 / 09 / 13   PLACE OF BIRTH Birmingham, AL

Birmingham, AL 35209

WITNESS          TITLE          DATE

## CERTIFICATE/SIGNATURE

**Must be signed in ink by applicant**

I certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

Signed Danielle M Coteat          DATE 9/26/05

2/01

# ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION

## APPLICANT DATA RECORD

DATE: 9|26|05

To help this Department evaluate our efforts as an Equal Opportunity Employer, we are requesting that you complete the following items of personal information. Your answers to these questions will be used only to study recruiting and employment patterns, and to furnish necessary information for government reports. We appreciate your cooperation.

This sheet will be separated from the employment application upon receipt, and will be maintained in a separate file. It will in no way affect consideration for possible employment with the Alabama Department of Mental Health and Mental Retardation.

## PLEASE PRINT

NAME  Coteat, Danielle, Moniquie
Last            First          Middle

ADDRESS  2749 Temple Crest Drive Birmingham, AL 35209
Street          City          State      Zip Code

SOCIAL SECURITY NUMBER  ▓▓▓▓▓▓▓▓▓

TITLE OF POSITIONS APPLIED
FOR AND DATE APPLIED:
Dept. Asst. Personnel Mgr.

RACE:

( ) Caucasian            (X) Black

( ) American Indian      ( ) Asian/Pacific Islander

( ) Hispanic             ( ) Non-Resident Alien

( ) Other _____

GENDER: ( ) Male  (X) Female

AGE: 31   Birthdate 10/09/73

VETERAN: ( ) Yes  (X) No

ADMH 04-00233

# DANIELLE M. COTEAT
2749 Temple Crest Drive
Birmingham, Alabama 35209
(205) 941-9942

## OBJECTIVE

To obtain a position that will enhance my present skills and abilities while providing an opportunity for advancement and stability

## RELEVANT EDUCATION

**Bachelor of Science in Human Resource Management,** August 1997
University of Alabama at Birmingham, Birmingham, Alabama

## EXPERIENCE

**H.R.M. Benefits Counselor,** October 2004 to Present
UNIVERSITY OF ALABAMA AT BIRMINGHAM, Birmingham, Alabama

Conduct the Benefits presentation to new hires during orientation. Enroll employees in the TIAA-CREF (403b) and RSA-1 retirement programs by scheduled appointments. Meet with prospective retirees to facilitate the retirement process by completing the required forms for the Teacher's Retirement System of Alabama. Calculate vacation and unused sick days for retirement purposes. Enter all new hires benefits into ORACLE. Process all new hire and status change paperwork for hospital personnel. Generate the appropriate correspondence regarding benefits for new hire and employee status changes for hospital employees including leave of absences. Process insurance changes for employees and enters the refunds and special inputs to reflect the changes due to the qualifying life event. Verify and research information for vendors such as Viva, UCC, TIAA-CREF etc. Answer questions for employees regarding their benefits and retirement programs. Provide phone coverage and assist walk-ins as needed. Research any problems regarding employee's benefits by retrieving documentation from the records department or OPTI-DOC. Assist employees to complete benefit forms including medical insurance, life and AD& D insurance, and Teacher's Retirement and other required forms as it relates to the benefits they are eligible for according to their employment status. Make sure employees are current on their deductions when they return from leave of absences and if not adjust the arrears accordingly. Log all refunds in the refund logbook Excel spreadsheet. Enter all new hires into the Access spreadsheet including whether they turned in the required forms. Make copies of all Teachers' retirement enrollment forms, retirement applications, TIAA-CREF applications, and correspondence and forward to Records to be put into the employee's personnel file. Set up employee's contributions for 403b and RSA-1 when they originally enroll in either retirement program. Adjust employee's TIAA-CREF and RSA-1 contributions in ORACLE according to change on the employee's salary authorization form. Coordinate employee's maximum IRS federal contributions for 403b between UAB and HSF. Calculate the maximum monthly contributions over 12 months period or prorated months for employees to reach the annual limit if desired. Conduct exit interviews regarding the cancellation of benefits, COBRA, and transferring or withdrawing retirement contributions. Assist employee's to enter into and come out of the DROP program after the minimal three commitments. Enter refunds after biweekly and monthly payrolls for any over deductions on medical and dental premiums. Restarting benefits when employee terminations are reversed.

ADMH 04-00234



**Human Resources Assistant,** November 2001 to October 2004
CHILDREN'S HEALTH SYSTEM, Birmingham, Alabama

Assisted with new hire orientation and benefits fair open enrollment. Assist employees with benefits questions regarding Medical, Vision, and Dental Insurance, Flexible Spending, Tuition Reimbursement, 401K, and Life Insurance. Assisted in Recruitment process by prescreening applications/resumes and conducting phone screenings. Entered applicant data information into Peoplesoft. Managed the background check process. Scheduled applicants for drug screenings. Administered pre-employment tests. Sent out offer and rejection letters including applicant postcards. Processed RN referrals. Entered disciplinary actions into PeopleSoft. Maintained HRIS records. Scheduled Administrative Reviews for grievances filed by former employees. Established peer panels for employees to settle a disciplinary action. Gathered employee information for subpoena purposes. Processed unemployment claims. Scanned, linked, and routed performance appraisals in IMAGE NOW. Registered new hires for orientation in the CHEX system. Handled travel arrangements and relocation. Edited and submitted employment ads.

**Human Resources Quality Assurance Coordinator,** September 1999 to August 2001
INVESTIGATIONS CORPORATION OF ALABAMA, Birmingham, Alabama

Conducted interviews. Cross-trained all employees on current procedures. Acknowledge and serviced clients in a timely manner. Provided additional help to Research Specialists when client requests increase. Corresponded with clients on both positive and negative feedback. Developed current associates in order to promote associates to management positions. Conducted annual performance appraisals and monthly status checks. Maintained all records in the database and hard copies. Ensured that accurate background checks were being performed. Made sure requests were processed in a timely manner and that deadlines were met. Followed up on overdue reports and searches.

**Human Resources Assistant,** August 1999 to September 1999
TELETECH, Birmingham, Alabama

Conducted new hire orientation. Processed new hire paperwork. Updated termination database. Assisted employees with any questions ranging from benefit information to other human resources related issues. Assisted prospective new hires for employment with application process. Administered assessment test. Handled internal job posting system. Merged COBRA letters. Generated and maintained employee files. Assembled benefit packets for orientation. Entered new hires, terminations, benefits, and employee data changes into the HR database.

**Research Specialist,** June 1998 – August 1999
INVESTIGATIONS CORPORATION OF ALABAMA, Birmingham, Alabama

Conducted employment verifications on prospective new employees for several companies. Researched each applicant's criminal background record. Verified educational requirements and professional licenses that are prerequisites for the specific professional jobs. Acquired social security traces, credit reports, and motor vehicle reports. Obtained character references, if needed. Created and maintained all applicant records for the clients. Provided quality customer service to the clients by answering any questions about our services or their request. Performed numerous administrative duties. Routed incoming calls to the appropriate person.

ADMH 04-00235

**Computer-Based Training Author (CBT),** January 1998 – June 1998
REGIONS BANK, Birmingham, Alabama

Developed computer based educational and training courses for internal employees. Maintained the existing courseware by updating any changes in the information and correcting any problems that were experienced by the users of the courseware. Communicated with users concerning problems experienced with courseware and answered any questions that aroused regarding the course. Recorded course grades into the Millennium database and employee's personnel files.

**Human Resources Assistant,** November 1996 – January 1998
REGIONS BANK, Birmingham, Alabama

Assisted the Employment Manager with daily duties of recruitment. Performed recruitment duties by attending job fairs and submitting ads to the local newspaper. Conducted interviews on perspective new employees for teller positions. Screened applications and resumes. Scheduled appointments for Employment Manager. Performed reference checks on candidates. Created and merged letters of correspondence regarding the status of applications and resumes that were submitted. Administered and graded test including, but not limited to, typing test and Hay Aptitude Battery test. Logged the results of the test in a spreadsheet. Acquired and interpreted credit reports. Handled internal job posting system process. Kept an account of external applicants for EEOC purposes. Calculated and entered payroll special pays. Relieved switchboard operator, as needed. Performed numerous clerical duties such as faxing, filing, and copying. Assisted on special projects as needed.

### COMPUTER SKILLS

| Microsoft Word | Microsoft Outlook | WordPerfect | CHEX |
|---|---|---|---|
| Microsoft Excel | Lotus 1-2-3 | Image Now | |
| Microsoft Access | Registrar | | Horizons |
| PeopleSoft | ORACLE | | OPTI-DOC |

### HONORS & ACTIVITIES

Who's Who Among Students in American Universities and Colleges
Society for Human Resource Management (Secretary)
Order of Omega Fraternal Honor Society

### REFERENCES

Furnished upon request

ADMH 04-00236

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOAN FAULK OWENS and<br>KAREN LYNN HUBBARD, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:07-cv-650 |
| | ) | |
| STATE OF ALABAMA DEPT. OF<br>MENTAL HEALTH AND MENTAL<br>RETARDATION, *et al.*, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF SUSAN P. CHAMBERS

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF MONTGOMERY | ) |

Before me, the undersigned notary public, personally appeared Susan Chambers, who, after having been sworn, identified herself to me and gave the following testimony:

"My name is Susan P. Chambers and I am the Associate Commissioner for Mental Illness, Alabama Department of Mental Health and Mental Retardation. My office is in Montgomery, Alabama. I am a white female. I hold a Bachelor's Degree in Sociology and a Master's Degree in Public Administration. I have served as Associate Commissioner for Mental Illness since November 2005. Prior to serving as Associate Commissioner for Mental Illness, I was the Director of Greil Hospital in Montgomery for eight (8) years. I have personal knowledge of the testimony contained in this affidavit.

I was a member of the five-person interview panel with respect to the job of Departmental Assistant Personnel Manager. The panel interviewed three applicants who

Page 1 of 3



DEFENDANT'S
EXHIBIT
2

met the minimum qualifications.  Those applicants were Marilyn Benson, Commie Carter and Danielle Coteat.  The panel members were Eranelle Wilson, a black female, Associate Commissioner for Mental Retardation, Kent Hunt, a white male, Associate Commissioner for Substance Abuse, Doug Lunsford, a white male who is an employee of the State Personnel Department, not the Alabama Department of Mental Health, and David Bennett, a black male, Associate Commissioner for Administration and Personnel.  The attached documents are to the best of my knowledge a true, accurate and complete copy of the interview file with regard to this position.  The interviews were, to my knowledge, conducted objectively and without preference to any candidate.  There was no discussion in the interview process with regard to any predetermined preference by any person relative to the scoring of the individual candidates.  There was no discussion of any kind whatsoever among the interview panel members regarding a predetermined favored applicant.  The process was fair and objective.  As can be observed from the summary of scoring by the panel, "ADMH 04-00076," Marilyn Benson received the highest score from every panel member.

While I was the Director at Greil Hospital in Montgomery, Joan Owens worked as my Personnel Manager for a period of time that, I believe, was less than one year.  Ms. Owens was a task-oriented worker who was proficient in accomplishing tasks that were given to her to perform.  At the time Ms. Owens worked as Personnel Manager at Greil, we had approximately 130 employees.  Ms. Owens knew how to deal with merit registers, payroll and other technical tasks.  However, she lacked the knowledge, experience or ability to capably manage a personnel office in a hospital setting.  Ultimately, Ms. Owens was transferred to the Central Office at a time when the handling of some of the personnel

functions of Tarwater and Greil were combined in that office. However, Ms. Owens did not perform as Personnel Manager for Greil after she went back to the Central Personnel Office.

As Associate Commissioner for Mental Illness and as the prior Director of Greil Hospital, it is my opinion that the position of Departmental Assistant Personnel Manager is a position which requires a Bachelor's Degree.

Further, the Affiant sayeth not.

_Susan P. Chambers_
SUSAN P. CHAMBERS

STATE OF ALABAMA                    )
                                    )
COUNTY OF MONTGOMERY                )

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that Susan P. Chambers, whose name is signed to the foregoing, and who is known to me, acknowledged before me, on this day, that being informed of the contents of said document, she executed the same voluntarily on the day the same bears date.

Given under my hand and seal this _25th_ day of _June  2008_, 2008.

[SEAL]

_Virginia A. Brantley_
NOTARY PUBLIC
My Commission Expires: _8/15/10_

Page 3 of 3

ASSESSMENT FOR
DEPARTMENTAL ASSISTANT PERSONNEL MANAGER
February 28, 2006

Panelists: Eranell Wilson, Susan Chambers, Kent Hunt,
& David, Bennett, Doug Lunsford

|  | Marilyn Benson | Commie Carter | Danielle Coteat |
|---|---|---|---|
| Wilson | 32 | 24 | 7 |
| Chambers | 27 | 21 | 10 |
| Hunt | 32 | 26 | 8 |
| Lunsford | 35 | 27 | 6 |
| Bennett | 38 | 28 | 10 |
| Total | 164 | 126 | 41 |
| Average | 32.8 | 25.2 | 8.2 |

Ranking of Candidates:
1. Marilyn Benson
2. Commie Carter
3. Danielle Coteat

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOAN FAULK OWENS and<br>KAREN LYNN HUBBARD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:07-cv-650 |
| | ) | |
| STATE OF ALABAMA DEPT. OF<br>MENTAL HEALTH AND MENTAL<br>RETARDATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF BETTY BECK

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF TUSCALOOSA | ) |

Before me, the undersigned notary public, personally appeared Betty Beck, who, after having been sworn, identified herself to me and gave the following testimony:

My name is Betty Beck. I am a Caucasian female. I work in the Personnel Department at Partlow, under Mike Mathis, who is our Personnel Director. I am a Personnel Specialist II. I have personal knowledge of the testimony contained in this affidavit. I perform a variety of personnel transactions in the Personnel Office. In October, 2005, I was asked to put an ad in the classified section of the Tuscaloosa News providing application information for an open position called Departmental Assistant Personnel Manager for the Central Personnel Office in Montgomery, Alabama. I placed the ad to run October 23, 2005 and provided the Tuscaloosa News with information for the purpose of running the ad. I saw that the Tuscaloosa News did not run the ad on that date and I, therefore, either inquired as to why they had not run the ad or

1



therefore, either inquired as to why they had not run the ad or I received a call from the

Tuscaloosa News on or about October 24, 2005, advising me that they could not place the ad

until an account balance had been paid. I, therefore, contacted the Partlow Financial Services

Office to advise them of this problem. After advising the Partlow Financial Services Office of the

problem, I was advised that the Montgomery office of the Alabama Department of Mental Health

and Mental Retardation would have to resolve the balance due before the ad could be placed.

After that point in time, I did not have anything else to do with placing the ad. However, I have

reviewed a document which is numbered "ADMH 08-00004" and which is attached hereto.

This document is a classified ad section from the Tuscaloosa News. This document contains

the same information that I provided to the Tuscaloosa News for the purpose of advertising this

job. I do not know when this ad ran in the Tuscaloosa News from personal knowledge, but the

ad does appear to be the ad that I sent to the Tuscaloosa News for them to run with regard to

the open position of Departmental Assistant Personnel Manager.


        Further, the Affiant sayeth not.

                                        _Betty Beck_____
                                        BETTY BECK

STATE OF ALABAMA           )
                           )
COUNTY OF TUSCALOOSA       )

        I, the undersigned authority, a Notary Public in and for said County in said State,
hereby certify that Betty Beck, whose name is signed to the foregoing, and who is known
to me, acknowledged before me, on this day, that being informed of the contents of said
document, she executed the same voluntarily on the day the same bears date.


        Given under my hand and seal this 26ᵗʰ day of _June_____,
2008.

                                        _Euna L. Gahnson_____
                                        NOTARY PUBLIC
        {SEAL}                          My Commission Expires: 3/30/2010.

                                    2



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOAN FAULK OWENS and )
KAREN LYNN HUBBARD, )
                           )
    Plaintiffs, )
                           )
v. )     2:07-cv-650
                           )
STATE OF ALABAMA DEPT. OF )
MENTAL HEALTH AND MENTAL )
RETARDATION, *et al.*, )
                           )
    Defendants. )

## AFFIDAVIT OF BECKY BURELL

STATE OF ALABAMA    )
                           )
COUNTY OF TUSCALOOSA   )

    Before me, the undersigned notary public, personally appeared Becky Burell, who, after having been sworn, identified herself to me and gave the following testimony:

    "My name is Becky Burell. I am a Caucasian female and I am employed in the Partlow Developmental Center Personnel Office. I am a Personnel Specialist II. Prior to working in the Partlow Personnel Department, I worked in the Central Personnel Office in Montgomery, Alabama. One of my duties was assigning position numbers for various positions that were going to be announced or filled. Another one of my jobs was to send out the job announcements. I have received and reviewed the attached document numbered "ADMH 08-00001". This is a true and correct copy of the number assignment log that I kept while I worked at the Central Personnel Office in Montgomery. Someone asked me for a job number for the classification called Departmental Assistant Personnel

Page 1 of 3


DEFENDANT'S
EXHIBIT
4

Manager. On the log, this entry appears in my handwriting as "Asst. Dept. Personnel Manager." The number given to that position was 8813339. I would have sent out the announcement for this job the first time it was announced. Announcements of this type were sent to the addresses on the lists that I have seen and reviewed and that are attached hereto as "ADMH 08-00002" and "ADMH 08-00003". Further, this announcement would have been sent to all State facilities of the Alabama Department of Mental Health and Mental Retardation and it would have been posted on the website. I was the one who sent out this announcement.

I do not recall whether I sent a second announcement. If I did send a second announcement, it would have been sent to the same places to which the first announcement was sent.

As I have said, I do not recall who asked for this position number. However, I do recall that, at a later time, Henry Ervin asked me to type a document of interview questions that were in a format that he did not want to use. He asked me to retype the questions in a different format. At that time, Mr. Ervin told me something like, "Keep this confidential," or "Don't say anything about this," or something else to that effect. This was not unusual for Mr. Ervin to say about any position in process.

The documents which are attached to this affidavit and which are numbered "ADMH 08-00001" through "ADMH 08–00003" are true and correct copies of the number assignment log ("ADMH 08-00001") and the list used to send announcements to entities appearing on that list.

Further, the Affiant sayeth not.

_Becky Burell_
BECKY BURELL

STATE OF ALABAMA            )
                            )
COUNTY OF TUSCALOOSA        )

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that Becky Burell, whose name is signed to the foregoing, and who is known to me, acknowledged before me, on this day, that being informed of the contents of said document, she executed the same voluntarily on the day the same bears date.

Given under my hand and seal this _18th_ day of _June_ ,
2008.

_Betty Beck_
NOTARY PUBLIC
My Commission Expires: _3|30|10_

[SEAL]

Page 3 of 3

## Central Office - Administration

| PCQ ASSIGNMENT | JOB TITLE |
|---|---|
| 404E  8813336 | Interpreter II  B7000  Not yet established in St. Pers. System    Enter i |
| 404E  8813337 | Pharmacist III X3000  Not yet established  Enter in System  St Pers |
| 404E  8813338 | Health Facilities Manager  "  "  Job codes? |
| 404E  8813339 | Asst. Dept. Personnel Manager  "  " |
| 404E  8813340 | MH Spec. III  (8005) mental Illness 4-16-2005 |
| 404E  8813341 | MH Spec. II  (8005) mental Illness  4-16-2005 |
| 404E  8813342 | Interpreter I  (8005) MI  4-16-2005 |
| 404E  8813343 | Interpreter I  (8005) MI  4-16-2005 |
| 404E  8813344 | Interpreter I  (8005) MI  4-16-2005 |
| 404E  8813345 | Temp Administrator VII  *Enter in System |
| 404E  8813346 | Fiscal Manager IV  6-25-05 |
| 404E  8813347 | Legal Assistant |
| 404E  8813348 | MH Spec. IV |
| 404E  8813349 | MH Spec. IV |
| 404E  8813350 | Administrator V |
| 8813351 - 8813355 | MH Spec. III |
| 8813356 | Administrator III |
| 8813357 - 8813358 | Data Op. Tech  II |
| 8813359 | Accounting Assistant I  10-1-2005 |
| 8813360 | MH Spec. I  12-24-2005 |
| 8813361 | Staff Dev. Spec. IV  (4140) 2-18-2006 |
| 8813362 | Attorney IV |
| 8813363 | Planning & Quality Assurance Spec. II  May 1, 2006  4780-08?A |
| 8813364 | Fiscal Manager III  5-1-2006  4035 - Finance |
| 8813365 | IT Systems Management Spec. I - D7000 - 8-16-2006 |
| 8813366  313E | Comm. Serv. Spec. III - 8207  9-1-2006 |
| 8813367 | Coding Compliance DRG Spec. Y1500 - 8-16-2006 |
| 8813368  313E | Comm. Serv. Spec. III - 8207 - 9-1-2006 |
| 8813369  313E | KN III  8207  9-1-2006 |
| 8813370  404E | Administrator I  12-1-2006 |
| 8813371  404E | Mental Health Svr. IV  3-1-2007  806? |
| 8813372  404E | Mental Health I  3-1-2007  8060 |

8-23-05

Not in JSK? yet 8-16-06?

DIRECTOR
CALHOUN-CLEBURNE MH CENTER
P O BOX 2205
ANNISTON, AL 36202

DIRECTOR
CHEAHA MH CENTER
P O BOX 1248
SYLACAUGA, AL 35150

DIRECTOR
CHEROKEE-ETOWAH-DEKALB MH CTR
901 GOODYEAR AVENUE
GADSDEN, AL 35903

DIRECTOR
CHILTON-SHELBY MH CENTER
P O DRAWER 689
CALERA, AL 35040

DIRECTOR
EAST ALABAMA MH CENTER
2506 LAMBERT DR
OPELIKA, AL 36801

DIRECTOR
EAST CENTRAL MH/MR CENTER
200 CHERRY STREET
TROY, AL 36081

DIRECTOR
EASTSIDE MH CENTER INC
129 E PARK CIRCLE
BIRMINGHAM, AL 35235

DIRECTOR OF PERSONNEL
GREATER MOBILE MH/MR BD  INC
5750A SOUTHLAND DRIVE
MOBILE, AL 36693-3316

DIRECTOR
HUNTSVILLE-MADISON CO MH CTR
4040 MEMORIAL PKWY SW
HUNTSVILLE, AL 35802-4364

DIRECTOR
INDIAN RIVERS MH CENTER
P O BOX 2190
TUSCALOOSA, AL 35403

DIRECTOR
JBS MH/MR AUTHORITY
940 MONTCLAIR ROAD SUITE 200
BIRMINGHAM, AL 35213

DIRECTOR
MARSHALL-JACKSON MH CENTER
2409 HOMER CLAYTON DRIVE
GUNTERSVILLE, AL 35976

DIRECTOR
MOBILE MENTAL HEALTH CENTER
5750A SOUTHLAND DRIVE
MOBILE, AL 36693-3316

DIRECTOR
M H CENTER OF N. CENTRAL AL, INC
4110 HWY 31 SOUTH
DECATUR, AL 35603

DIRECTOR
NORTHWEST ALABAMA MH CENTER
1100 7TH AVENUE
JASPER, AL 35501

DIRECTOR
RIVERBEND CENTER FOR MH
P O BOX 941
FLORENCE, AL 35631

DIRECTOR
SOUTH CENTRAL ALABAMA MH CTR
P O BOX 1028
ANDALUSIA, AL 36420

DIRECTOR
SOUTHWEST ALABAMA MH/MR CTR
P O BOX 964
MONROEVILLE, AL 36461

DIRECTOR
UAB COMPREHENSIVE COMMUNITY MH
P O BOX 314 UNIV STATION
BIRMINGHAM, AL 35294

DIRECTOR
WEST ALABAMA MH CENTER
P O DRAWER J
DEMOPOLIS, AL 36732

DIRECTOR
WESTERN MENTAL HEALTH CENTER
1701 AVENUE D
BIRMINGHAM, AL 35218

DIRECTOR
DOTHAN SPECTRACARE
P O DRAWER 1245
DOTHAN, AL 36302

PLACEMENT OFFICE
OAKWOOD COLLEGE
BLAKE CENTER ROOM 109
HUNTSVILLE, AL 35896

PLACEMENT OFFICE
ALABAMA STATE UNIVERSITY
MONTGOMERY, AL 36195

PLACEMENT OFFICE
ALABAMA A & M UNIVERSITY
P O BOX 997
NORMAL, AL 35762

SHARON BROOKS
CAREER DEVELOPMENT DIRECTOR
P.O. BOX 244023
MONTGOMERY, ALABAMA 36124-4023

PLACEMENT OFFICE
MILES COLLEGE
5500 AVENUE G
BIRMINGHAM, AL 35208

PLACEMENT OFFICE
TUSKEGEE UNIVERSITY
TUSKEGEE, AL 36088

STILLMAN COLLEGE
STUDENT DEVELOPMENT CENTER
P O BOX 1430
TUSCALOOSA, AL 35403

PLACEMENT OFFICE
TALLADEGA COLLEGE
627 WEST BATTLE STREET
TALLADEGA, AL 35160

ATHENS STATE COLLEGE
300 NORTH BEATY STREET BX 246
ATHENS, AL 35611

DIRECTOR
MACON CO COUNCIL ON
RETARDATION
405-A MACON DRIVE
TUSKEGEE, AL 36083

DIRECTOR
COFFEE COUNTY TRAINING CENTER
P O BOX 1343
ENTERPRISE, AL 36331

DEPT OF HUMAN RESOURCES
BIRMINGHAM REGIONAL OFFICE
85 BAGBY DRIVE ROOM 301
BIRMINGHAM, AL 35209

BUREAU OF SPECIAL INVESTIGATION
C/O PARTLOW DEVELOPMENTAL
CENTER
P O BOX 1730
TUSCALOOSA, AL 35403

MS CYNTHIA YANCEY
VOCATIONAL REHAB SERVICE
1100 GEORGE WALLACE DRIVE
GADSDEN, AL 35999

JIM KELLEN
UNV OF ALABAMA CAREER CENTER
BOX 870293
TUSCALOOSA, AL 35487

DIRECTOR
CULLMAN AREA MH AUTHORITY
PO BOX 2186
CULLMAN, AL 35056-2186

ROSEMARY HARMON
STATE PERSONNEL

BETTY DAVIS
STATE PERSONNEL

CAP
BOX 9269
MONTGOMERY, AL 36108

PATTI N MARTIN
C/O VIVIAN B ADAMS SCHOOL
2047 STUART TARTER RD
OZARK, AL 36360

DIRECTOR
MONTGOMERY AREA MH AUTHORITY
P O BOX 3223
MONTGOMERY, AL 36107

JESSE STINSON
THE SHARING GROUP
1241 51ST ST S
BIRMINGHAM, AL 35222

MR TOMMY W COLEMAN
ADULT VOCATIONAL REHAB SERVICE
P O DRAWER 1610
TUSCALOOSA, AL 35403

MS SHERRILL MITCHELL ROBINSON
CAREER FOCUS PROG 42 MSS/DPF
55 S MITCHELL ST BLDG 677
MAXWELL AFB, AL 36112

DIRECTOR
CAHABA CENTER FOR MH/MR
417 MEDICAL CENTER PARKWAY
SELMA, AL 36701

MARK SPURLOCK
THE BRIDGE
3232 LAYSPRINGS RD
GADSDEN, AL 35904

BARON K OWES
DEPT OF REHABILITATION SERVICES
2129 EAST BOULEVARD
MONTGOMERY, AL 36116-2456

MANAGEMENT TRAINING PROGRAM
1945 HOOVER COURT
BIRMINGHAM, AL 35226

MS MARTHA SANDERS
PROFESSIONAL PLACEMENT
SERVICES
649 MONROE STREET
MONTGOMERY, AL 36131

JAMES MYRICK
STATE VOCATIONAL REHABILITATION
2127 EAST SOUTH BLVD
MONTGOMERY, AL 36199

KALAMAZOO REG PSYCHIATRIC HOS
1312 OAKLAND DRIVE BOX A
KALAMAZOO, MI 49008

DAWN HUNTZINGER
VOCATIONAL REHABILITATION SERV
1450 EAST AVALON AVENUE
MUSCLE SHOALS, AL 35662

EDDIE SAMMONS
COORDINATOR/CHOICES PROJECT
111 COLISEUM BLVD
MONTGOMERY, AL 36109

DIRECTOR
BALDWIN CO MH/MR CENTER
372 SOUTH GREENO ROAD
FAIRHOPE, AL 36532

LEE YOUNT
GLENWOOD MENTAL HEALTH
SERVICES
150 GLENWOOD LN
BIRMINGHAM, AL 35242

DEBORAH MARKS
BRYCE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOAN FAULK OWENS and KAREN LYNN HUBBARD, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )      2:07-cv-650 |
| STATE OF ALABAMA DEPT. OF MENTAL HEALTH AND MENTAL RETARDATION, *et al.*, | ) ) ) ) ) |
| Defendants. | ) |

## AFFIDAVIT OF JUNE LYNN

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF MONTGOMERY | ) |

Before me, the undersigned notary public, personally appeared June Lynn, who, after having been sworn, identified herself to me and gave the following testimony:

"My name is June Lynn and I am the Executive Assistant and Advisory Attorney to the Associate Commissioner for Administration at the Alabama Department of Mental Health and Mental Retardation ("ADMH"). I have personal knowledge of the testimony in this affidavit. I have served in this capacity for a number of years. I am a Caucasian female. During the time Otha Dillihay was the Associate Commissioner for Administration, he was temporarily transferred within the ADMH to serve as the Associate Commissioner of Mental Illness. Effective July 23, 2005, I was appointed Acting Associate Commissioner for Administration. At that same time, Mr. Dillihay's appointment as the Associate Commissioner for Mental Illness became effective. I served as Acting Commissioner for

1



Administration through November 12, 2005, at which time Mr. Dillihay returned to the position of Associate Commissioner for Administration. While I was Acting Associate Commissioner for Administration from July 23, 2005 through November 12, 2005, I performed the duties of the Associate Commissioner and had the authority of the Associate Commissioner during that time. In this time frame and before, while serving as Mr. Dillihay's Executive Assistant and Advisory Attorney, I examined and approved of the specification and announcements for the Departmental Assistant Personnel Manager. I agreed with and still agree with the requirement of a Bachelor Degree for this position without substitution.

At a point in time during my tenure as Acting Associate Commissioner for Administration at ADMH, Joan Owens, one of the Plaintiffs in the above-styled case, came to me and asked that I include the "substitution clause" in the specification for Departmental Assistant Personnel Manager. At that time, Ms. Owens wanted the "substitution clause" included in the specification so she could apply for this job because she did not have a Bachelor Degree. I told her that I could not and would not change the specification as written, particularly with regard to the qualifications. I told her that, not only had my former boss, Otha Dillihay, participated to an extent in the drafting of the specification, but also that I agreed with the specification and announcement regarding the qualifications and the requirement of a Bachelor's Degree as a minimum qualification. A Bachelor's Degree should be a qualification for the work of the Departmental Assistant Personnel Manager.

Further, during my tenure as Acting Associate Commissioner, ADMH started the process of investigating the best alternative for conducting a wage and classification study. Before undertaking changes regarding all or the majority of ADMH higher level positions to require, as a minimum qualification, a four-year college degree, ADMH needed the benefit of a new wage and class study. The only wage and class study available at that time was a study performed in 1985. This 1985 study was quite old and needed updating. This study did allow for some substitution regarding some, but not all, classifications. "Substitution" is a term frequently used for the allowance of experience of a certain type and specified time as an alternative to meeting specified educational qualifications. For example, a position specification that sets forth a qualification requirement of a Bachelor Degree, but allows for the use of job-related experience of a certain amount and type to serve as or in the place of this Bachelor Degree requirement, is said to allow "substitution". "Substitution" may also be used where a person has a degree, but not in the specified field. There are a number of ways "substitution" might be used. At one time, the Department allowed one year of job-related experience to be substituted for one year of college. This allowance has been changed so that two years of job-related experience are required to substitute for one year of college. This change was made for the purpose of valuing education to a greater degree than experience. Exhibit 1 to this affidavit is a true and correct copy of the May 4, 2005 Job Evaluation Committee minutes adopting the two for one "substitution" allowance. Exhibit 2 to this affidavit is a true and correct copy of the prior February 24, 2005 JEC minutes where Associate Commissioner for Administration and

3

Personnel, Otha Dillihay, expressed concern about the "year for year substitution devaluating the earned degree".

In trying to get the wage and classification study started, we met with Auburn University at Montgomery. Auburn University had performed the wage and classification study for the Department in 1985 and AUM had performed a further study in 1989 on 25 direct care exempt classifications. Auburn University at Montgomery had to spend a good bit of time reviewing records and asking questions of certain employees of the Department before the AUM team could give us a price for performing the wage and classification study. The price that the Department was given by AUM for this study was considered to be too high, so a decision was made to develop a Request for Proposal and to advertise this Request for Proposal in an effort to obtain a wage and classification study proposal that would meet the ADMH need, while at the same time, requiring a smaller monetary expenditure. I do not recall the date we first met with AUM to begin discussions regarding the wage and classification study, but I do know that the AUM proposal that the Department received after AUM's work-up was dated December 20, 2005.

Thereafter, our efforts to develop the Request for Proposal began. Developing a Request for Proposal takes time, as does the advertising of the Request for Proposal. Further, time must be allowed for any individual or entity wishing to submit a proposal for the wage and classification study to gain an understanding of the size and scope of the project and to develop a price for the purpose of submitting a proposal for consideration by ADMH. The Request for Proposal was advertised widely. The Request for Proposal was released and advertised on May 28 and 29, 2006. Numerous proposals were received

4

by ADMH which had to be analyzed. ADMH selected The Segal Group for the purpose of conducting the wage and classification study after due consideration of the various proposals. A contract for this wage and classification study was executed between the Department and The Segal Group on February 1, 2007. The wage and classification study was performed. The wage and classification study process is a cooperative process. This process was engaged in between ADMH and Segal. A large amount of information must be provided to Segal by numerous individuals within the ADMH which must then be analyzed by Segal. After all of this work, The Segal Group completed and presented its final report on the study to ADMH in November 2007. After the submission of this report to ADMH, the report was distributed to the various Personnel Managers within the Mental Health and Mental Retardation facilities around the state and to others. The facilities' personnel representatives and Central Office participants spent several months studying and discussing the Segal report before making a recommendation and submitting the specifications to the Commissioner. It is my understanding that the Commissioner has been studying the recommendations and specifications submitted to him and that he has been analyzing the costs to ADMH of paying salaries with regard to and commensurate with the wage and classification study. It is my understanding that new specifications will be released individually as necessary and as soon as the Commissioner has had adequate opportunity to study the new specifications and their impact on the Department from a financial standpoint. However, some specifications from the study will be released if a need arises to fill certain important positions.

During the time that Mr. Dillihay was Associate Commissioner for Administration, which was from June 1, 2004 up to July 23, 2005, when he was temporarily transferred to serve as Associate Commissioner for Mental Illness, and from November 12, 2005, when he returned to his former role as Associate Commissioner for Administration and Personnel, through his resignation effective April 2, 2007, I served as his Executive Assistant and Advisory Attorney. As part of my duties in Mr. Dillihay's absence and in my capacity as Acting Associate Commissioner, I attended Job Evaluation Committee meetings. Otha Dillihay, the Associate Commissioner for Administration and Personnel, also attended Job Evaluation Committee meetings when it was possible for him to attend. In the event I did not attend the meetings, I did review the minutes. I reviewed the minutes attached as Exhibit 2 in which Judith Johnston, another JEC member, agreed that it was important to look at the qualifications and credentials of persons who have earned degrees before persons without earned degrees.

Mr. Dillihay and Mr. Ervin had periodic meetings because Mr. Dillihay was Mr. Ervin's boss. Mr. Dillihay held the opinion that a Bachelor's Degree was important to higher level job positions, which included Managers' and Assistant Managers' positions. I am aware, also, that Commissioner Houston held the opinion that Bachelor Degrees were important to higher level job positions.

Exhibit 4 is a true and correct copy of the July 22, 2005 Job Evaluation Committee meeting minutes. At the bottom of page 2, a note appears in dark letters that states:

"Central Office positions were all approved. There was discussion regarding the Fiscal Manager IV (Budget Officer), the Administrator VII and the Assistant Departmental Personnel Manager positions."

6

Then in regular print, the note states:

"There was discussion about announcing the Assistant Departmental Personnel Manager position until the beginning of the fiscal year. Due to the nature of these positions, there was concern about how the facilities would perceive announcing new positions at a time when new hiring restrictions are being imposed."

"A motion was made and a vote was taken to approve announcing the positions. The discretion on when to announce the Fiscal Manager IV and the Administrator VII would be left up to the Commissioner. It was voted to delay announcing the Assistant Personnel Director until the beginning of the fiscal year."

I attended this meeting. I do not recall the specific discussion concerning the position of Assistant Departmental Personnel Manager. However, I did know at the time of this meeting that a Bachelor's Degree was required for this position and that no substitution provision would be included or allowed in the specification or the announcement. It is certainly possible that this was discussed in the meeting, but I just do not recall specifically the nature of the discussion.

Additionally, at the time this meeting was held, I knew that Commissioner Houston required that the position of Assistant Departmental Personnel Manager be filled by a person with at least a Bachelor's Degree and that substitution of experience would not be allowed to take the place of a Bachelor's Degree.

The Job Evaluation Committee, pursuant to State of Alabama Department of Mental Health and Mental Retardation Policy is a Division of Administration/Personnel. Exhibit 5 hereto is a true and correct copy of the Joint Evaluation Committee Policy. The Standards Section of this document which is Part II, item number 1, states as follows: "The Committee

7

will be responsible for making recommendations to the Commissioner on the following issues:

    a.      Revisions to classification specifications.

    b.      Establishment of new job classifications.

    c.      Salary range adjustments in assigned classifications.

    d.      Substitution of training and experience for established minimum qualification requirements.

The JEC is responsible for making recommendations only. The JEC has no authority of approval. Prior to the July 22, 2005 Job Evaluation Committee meeting, the Commissioner had approved the creation of the Departmental Assistant Personnel Manager position as an exempt position and he had set forth and required that the qualifications for this position, at the least, must constitute a Bachelor's Degree as a minimum, ruling out the possibility of the substitution of experience for the Degree.

When Ms. Owens came to me asking that substitution be added to the specification for the Departmental Assistant Personnel Manager position, or at a later time not long afterward, she told me that Mr. Ervin had a History Degree and that he did not qualify to be the Director of Personnel without having been allowed substitution of some kind to compensate for his not having a degree in the required subject matter. I tried to explain to Ms. Owens that, even though this might be correct, Mr. Ervin had been Personnel Director for a long time and that it was not the practice of the Department to fire someone who had been allowed substitution to initially obtain a job simply to hire someone else and fire the incumbent in order to satisfy the requirements of a more stringent qualification

8

standard. The Department will hire a person to replace Mr. Ervin who meets a new qualification requirement that is more stringent than the one under which Mr. Ervin was hired and no substitution will be allowed.

Henry Ervin has now accepted a different position with ADMH. Mr. Ervin applied for and was interviewed for this job. He was ultimately offered this job. His effective date for the purpose of beginning work in this job is July 1, 2008. Associate Commissioner for Administration and Personnel, David Bennett, either has already or soon will be releasing the new specification for the purpose of announcing the opening of the job that Mr. Ervin will vacate, which is Central Office Personnel Director. An announcement for the filling of Mr. Ervin's job as Central Office Personnel Director will be released and advertised. Attached hereto as Exhibit 3 is a true and correct copy of the specification for that position.

Further, the Affiant sayeth not.

_____
JUNE LYNN

STATE OF ALABAMA            )
                            )
COUNTY OF MONTGOMERY        )

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that June Lynn, whose name is signed to the foregoing, and who is known to me, acknowledged before me, on this day, that being informed of the contents of said document, she executed the same voluntarily on the day the same bears date.

Given under my hand and seal this _27th_ day of _June_,
2008.

[SEAL]

_Elizabeth P. Sievers_
NOTARY PUBLIC
My Commission Expires: _5/31/09_

9

**MINUTES OF THE
JOB EVALUATION COMMITTEE MEETING
HELD MAY 4, 2005**

**May 4, 2005**

Members Present:    Henry Ervin
                    Paul Bisbee
                    Kent Hunt
                    John Zeigler
                    Judith Johnston
                    Eranell Wilson

Henry began the meeting with the request from Partlow requesting reallocation of Harry Vance, Psychological Assistant, Johnny Bodiford, Psychological Assistant, and Susan Davis, Psychological Assistant to Habilitation Treatment Coordinator I. After a discussion of the duties of Habilitation Treatment Coordinator I, Kent Hunt questioned why the Committee had been ask to do a reallocation. Kent said the Committee has not been doing reallocations in the past. Henry asked everyone to look at the agenda, Item III "Modification of JEC Policy "to reflect reallocation as part of the Committees' responsibilities. Henry said he wants all reallocations to be brought before the JEC. Kent Hunt made the motion to reallocate the Psychological Assistants to the classification of Habilitation Treatment Coordinator I. Paul Bisbee seconded and the Committee approved the item.

Henry requested the reallocation of Catheryn Townsend, Mental Health Specialist III to Fiscal Manager III. Henry reported that a desk audit had been completed and her classification warranted it to be changed to Fiscal Manager III. Paul Bisbee and Eranell Wilson said Fiscal Manager III's in the Facilities are much more complex than the duties of the Contract Office. Judith said Fiscal Manager III in Facilities deal with much more than contracts. Kent Hunt asked if another classification would be more appropriate. Henry concurred that the audit did not reflect a Fiscal Manager III.

Henry requested the reallocation of Sheila Grant, Administrator III and Joe Stringer, Administrator III to Administrator IV. Eranell asked whom they reported to, and their job description. After a discussion, Kent made the motion to reallocate and Eranell seconded, the item passed.

Henry recommended to the Committee that substitution of experience for education in the exempt hiring process be change. Presently the substitution is 1 year of work experience for 1 year of education. The recommended change would be: a. Recommend 2 years of work related experience for 1 year of education earned/achieved b. 8 years of

**EXHIBIT**

**(1)**

directly related work experience for required 4 year degree (Bachelor's) Henry said it was the right thing to do. Judith Johnston asked if it would be the same for a Masters. Henry said it would be the same. Eranell made a motion and Paul seconded, the Committee approved the change.

Paul Bisbee brought up the problem of finding Psychological Associates I's. Judith Johnston said we need to look at the series and re-do like the Quality Assurance classification was changed. Paul Bisbee said he would have some one work on changes.

John Zeigler moved to adjourn, Committee adjourned.

Minutes submitted by: _____
                                Joan Owens

Minutes approved by: _____
                                Henry E. Ervin

**Minutes of the Job Evaluation Committee Meeting**
**Held Thursday, February 24, 2005**

<u>**Members Present**</u>

Judith Johnston
Paul Bisbee
Otha Dillihay
Eranell McIntosh-Wilson
John Zeigler
Henry Ervin

<u>**Members Absent**</u>

Kent Hunt

Due to a quorum not being met at the meeting scheduled for Friday, February 18th, a meeting was called on February 24th to discuss additional items of importance.

First item addressed was the revision of the Community Relations Specialist I job specification. John Zeigler expressed his concern about the quality of applicants who recently submitted applications for the recently advertised position in his area. His intentions for this job is for it to be an entry level position which may not necessarily require a person to have a degree if they had some experience in the area of public relations.      *It was voted and approved that the specification be amended by removing the 12-month experience requirement and also allowing the substitution clause to remain.*

John also mentioned that he was seeking approval for Grace Russell to receive an exceptional raise. He said her hard work was evidenced by the increased quality of marketing efforts put forth by the department for example; annual reports, etc.... The committee obviously agreed, however, it was noted by Chairman Henry Ervin that exceptional raises did not have to be approved by the Job Evaluation Committee. It was necessary to complete the appropriate form and documentation and have final approval by the Commissioner.

There was discussion regarding the substitution of required degrees and lowering the qualification requirements. Dillihay expressed concern about the year for year substitution and the possibility of devaluating the "earned degree." He also suggested that we review the selection procedure to reflect more adequate qualifiers for substitution. It was noted that the Job Evaluation Committee does have the flexibility to do that.

Judith Johnston added that she feels it is important the we look at the qualification and credentials of persons who have earned degrees first.    If no applicants meet the

**EXHIBIT**

(2)

tabbies'

ADMH 05-00206

educational requirements, then of course those individuals with experience but no degree would be considered.

*Dillihay made a motion that HR review the exempt selection procedure and prepare a draft to review the matter of substitution. The motion was seconded and approved.*

Another item of discussion was the conversion of merit system positions over to the exempt system. Dillihay stated that Commie Carter recently made a request to change one of her positions (ASA) over to an Administrator I. While he feels that the position needs to be replaced, he did not feel there was sufficient justification to support it being reclassified to the Administrator I. He further added that the committee has the responsibility to look at the functionality of positions. There was discussion regarding the evolution of the entire Staff Development Section as it relates to their interaction with facilities.

*A motion was introduced to disapprove the request to reclassify the position and any future requests of this nature should be reviewed by the Job Evaluation Committee. It was seconded and approved.*

Another item of discussion was the substitution of experience for the degree on Jim Elliott at Bryce Hospital Personnel. While Mr. Elliott did not have a related degree, it was clearly noted that he had sufficient experience to substitute. The second candidate, Ms. Debra Marks, who is African American, had not only a bachelor's but a master's degree in a directly related field. Dillihay brought to the attention of the committee that it must be mindful of the litigious society in which we live. The objective in filling any position should be to hire the "most qualified candidate," not necessarily the "best candidate."

There was discussion regarding Ms. Marks' experience. It was noted that the interview panel confirmed a 6 point difference in the scoring. Even though Ms. Marks has come up in the ranks of the department, her experience in the area of personnel has not been to the overall scope and complexity from a managerial standpoint as compared to Mr. Elliott, nor has it been department wide.

*A motion was made to approve the request for substitution, it was seconded and approved.*

Other requests included substitution of experience (Habilitation Treatment Coordinator) for the required degree on Sandranetta Hanks and Teresa Harris, both at Partlow. After reviewing the job specification, Judith Johnston recommended that all the specs be reviewed from a system wide standpoint.

*A motion was made and all the requests were approved.*
*It was also motioned and seconded that the Job Evaluation Committee Chairman send a memo to the Commissioner regarding future recommendations for re-allocation of positions.*

2

The Committee agreed to get back on track with having quarterly meetings. The meeting was then adjourned.

Minutes Submitted by:

_Marilyn B. Benson_

Minutes Approved by:

_Henry E. Ervin_

3

ADMH 05-00208



STATE OF ALABAMA
# DEPARTMENT OF MENTAL HEALTH
## AND MENTAL RETARDATION
RSA UNION BUILDING
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410



BOB RILEY
GOVERNOR

JOHN M. HOUSTON
COMMISSIONER

## ANNOUNCEMENT OF INTENT TO FILL A NON-MERIT POSITION
## EQUAL OPPORTUNITY EMPLOYER

**ANNOUNCEMENT NUMBER:** 08-14

**JOB TITLE:**      **HUMAN RESOURCES DIRECTOR**

**JOB CODE:**    **H7000**              **DATE:**    6/27/08

**SALARY RANGE:** (85)$71,961 - $109,641    **PCQ#:**    8812351

**JOB LOCATION:**    **Department of Mental Health and**
**Mental Retardation**
**100 North Union St.**
**Montgomery, Al.  36130-1410**

**QUALIFICATIONS:**   Bachelor's degree in Personnel/Human Resource Management, Business Administration, Public Administration, Law, Labor Relations, or other related fields.  Progressively responsible experience (96 months or more) in the field of human resource management, including considerable  (48 months or more) experience in  a supervisory capacity in human resources.
*Preference will be given to individuals with:*
> * *Master's degree in any of the above specified fields of study*
> * *Work experience in the governmental/public sector*
> * *Work experience in a healthcare setting*

**KIND OF WORK:**     This is highly responsible professional personnel management of extensive scope and complexity.  This position is located at the Central Office and is responsible for planning, organizing, developing, coordinating, and implementing a comprehensive personnel management program not only affecting Central Office, but all facilities in the Department of Mental Health and Mental Retardation.  Various aspects of personnel include recruitment, selection and placement, position classification, personnel transactions, employee relations, performance appraisal, employee counseling/discipline, affirmative action, and employment records.  Supervision is exercised over a professional



EXHIBIT
(3)

staff. Work is assigned with general instructions and objectives by the Associate Commissioner for Administration and/or Commissioner.

## KNOWLEDGE, SKILLS, AND ABILITIES:

- ➢ Extensive knowledge of Personnel Board rules, policies, and procedures
- ➢ Knowledge of principles of public administration, including classification, recruitment, selection, placement, and employee training
- ➢ Knowledge of Mental Health programs, services, rules, and regulations
- ➢ Knowledge of management principles and practices, and of the budgeting process
- ➢ Knowledge of interviewing and counseling techniques
- ➢ Knowledge of principles and practices of public personnel administration, regarding applicable rules, regulations, policies, and State and Federal legislation
- ➢ Ability to interpret, and apply local, state, and federal laws, regulations, and policies relating to personnel
- ➢ Ability to plan, assign, and direct the work of others
- ➢ Ability to communicate ideas effectively both orally and in writing
- ➢ Ability to collect, compile, and evaluate statistical data and other administrative data
- ➢ Ability to establish and maintain effective working relationships with employees, department heads, other state agency officials, professional groups/individuals, and the general public

**METHOD OF SELECTION:** Applicants will be rated on the basis of an evaluation of their training, experience, and education and should provide adequate work history identifying experiences related to the duties and minimum qualifications as above mentioned. All relevant information is subject to verification.

**HOW TO APPLY:** Use an official *Application for Employment,* which may be obtained from this office, at any Department of Mental Health and Mental Retardation facility personnel office, or by visiting the website at: www.mh.alabama.gov    Resumes will not be accepted in lieu of an official application. **ONLY WORK EXPERIENCE DETAILED ON THE APPLICATION FORM WILL BE CONSIDERED. ADDITIONAL SHEETS, IF NEEDED, SHOULD BE IN THE SAME FORMAT AS THE APPLICATION. PLEASE INDICATE THE TITLE AND ANNOUNCEMENT NUMBER OF THE VACANCY FOR WHICH YOU ARE APPLYING ON THE APPLICATION.** The application should be returned to the Department of Mental Health and Mental Retardation P.O. Box 301410 100 No. Union Street Montgomery, Al. 36130-1410 in order to be considered. Please have an official copy of transcript(s) forwarded to the personnel office at the above address:**DEADLINE: Until Filled.**

*Joe Houston*

6-27-08

# MINUTES OF THE
## JOB EVALUATION COMMITTEE MEETING
### HELD
#### July 22, 2005

| | |
|---|---|
| Members Present: | Henry Ervin |
| | Kent Hunt |
| | John Zeigler |
| | Judith Johnston |
| | Eranell Wilson |
| | June Lynn |
| Also Attending: | Kathleen Brantley |
| | |
| Members Absent: | Otha Dillihay |
| | Paul Bisbee |

Committee chairman began the meeting by noting this was the first meeting since the committee has been charged with additional responsibilities of reviewing all positions announced since the implementation of new hiring guidelines.

**The first item to be considered was a substitution of experience** on **Kathy Cason (Rec. Activity Specialist I – North Ala. Regional).** There was also an additional request to hire Ms. Cason beyond the minimum steps allowed. It was noted that the Committee does not have that responsibility; it is done solely at the approval of the Commissioner.

**The second item: Review of the revised job specifications for the Community Service Specialist series.** Old and new specs were handed out for Committee members to compare. It was noted that no change in salary range recommendations were made on the CSS I and CSS II series, however the new qualifications for the CSS III now allow a bachelor's level individual to qualify with experience. Recommendations were made to increase the ranges for the CSS III from range 72 to 74, the CSS IV from range 77 to 78 and the CSS V from 80 to 82. These recommendations were made based upon when funding becomes available. A motion was made to approve the specs as revised. Another motion was made to approve the pay ranges when funding is available. Both motions were seconded and approved. It was also noted that if anyone is hired in the interim, they would be hired at the current pay range.

There was discussion about whether or not a financial analysis had been done before making the proposed salary range increases. It was noted that because these positions are so unique, there are no positions in which to make a comparison.

EXHIBIT

tabbies

(4)

1

Commissioner Houston addressed the group and thanked everyone for their willingness to accept the added responsibility of reviewing all the new positions under the new hiring guidelines.    He mentioned two positions that he would like to fill, Fiscal Mgr. IV, and Administrator VII, but he stated that he did not have any intentions of acting on either one of them in the immediate future. He really wanted to get input from the Committee as to what their recommendations would be regarding both positions.

There was discussion about filling any new positions until the beginning of the fiscal year. Eranell Wilson recommended that there be no additions to the already existing deficit.

**Each Committee member was given a list of positions to be considered.  Requests were reviewed by facility, starting with Bryce:**
All Bryce requests were approved with the exception of the Plant Maintenance Worker. The committee voted and approved to hold this position until the next meeting.

There was discussion about many security officers getting their certifications and leaving the department as soon as they are certified.  It was suggested that we come up with a policy that would require them to stay a certain length of time before they were able to transfer somewhere else.

Judith recommended that the facilities provide more detailed information when submitting letters of justification for their positions.  She volunteered to work on outlining more specific details which would be useful in helping the committee.    It was also noted that it might be necessary to get the facility director on the phone during the actual meetings to answer additional questions that the committee may have regarding the need to replace their positions, particularly if they have been vacant for some time.

**The request from Griel  for a MH Security Officer I was withdrawn from consideration.**

**North Alabama Regional' s request for a Plant Maintenance Worker was approved.**

**Partlow's requests were all approved.**

**Searcy's requests were all approved with the exception of (2) ASA I's, Material Manager II, and  (2) Staff Development Specialist I's that were put on hold.  There was discussion regarding the Staff Development Specialist positions, and the Staff Dev. Spec. IV was approved.**

**Taylor Hardin Secure Medical's positions were all approved with the exception of (2) Security Officer positions:  (Don Fowler & Roy Swartz).**

**Central Office positions were all approved.  There was discussion regarding the Fiscal Manager IV (Budget Officer), the Administrator VII, and the Assistant Dept.**

2

ADMH 02-00178

**Personnel Manager positions.** There was discussion about announcing the Assistant Dept. Personnel Manager position until the beginning of the fiscal year. Due to the nature of these positions, there was concern about how facilities would perceive announcing new positions at a time when new hiring restrictions are being imposed.

A motion was made and a vote was taken to approve announcing the positions. The discretion on when to announce the Fiscal Mgr. IV and Administrator VII would be left up to the Commissioner. It was voted to delay announcing the Asst. Dept. Personnel Director until the beginning of the fiscal year.

There was discussion about the Contract Office position (Accounting Assistant). Kathleen expressed her concern about whether an individual in this position would be qualified to do fiscal inventory.

**There were 12 new positions in Substance Abuse to be considered.** Kent mentioned that his entire office was being restructured. Some of the current staff would be able to qualify for the newly created positions. If the individuals were selected to fill the positions, their old positions would be abolished. After lengthy discussion, all the positions were approved.

There was a motion to adjourn until the August meeting.

Minutes submitted by: _____
                            Marilyn B. Benson

Minutes approved by: _____
                            Henry E. Ervin

3

ADMH 02-00179



# State of Alabama
# Department of Mental Health and Mental Retardation

NUMBER:     60-22

SUBJECT:     Personnel/Payroll
TITLE:       Job Evaluation Committee

EFFECTIVE: 4/7/89          REVIEWED:          CHANGED: 3/5/05

RESPONSIBLE
OFFICE:      Division of Administration/Personnel

APPROVED:    *John H. Houston*

## I.   POLICY:

The Department of Mental Health/Mental Retardation will establish a Job Evaluation Committee to maintain its exempt classification and pay structure.

## II.   STANDARDS:

1.   The Committee will be responsible for making recommendations to the Commissioner on the following issues:
     a.   Revisions to classification specifications.
     b.   Establishment of new job classifications.
     c.   Salary range adjustments in assigned classifications.
     d.   Substitution of training and experience for established minimum qualification requirements.

2.   The Committee will consist of nine members. Membership shall include:
     a.   The Department's Personnel Director who shall Chair the committee.
     b.   One member appointed by the Associate Commissioner for Administration or designee.
     c.   One member appointed by the Associate Commissioner for Mental Illness.
     d.   One member appointed by the Associate Commissioner for Mental Retardation.
     e.   One member appointed by the Associate Commissioner of Substance Abuse Services.

EXHIBIT

(5)

Page 1 of 2

ADMH 04-00078



DMH/MR Policy 60-22

    f.   One member appointed by the Commissioner for the Office of the Commissioner.

    g.   The Associate Commissioner for Mental Illness Services or designee

    h.   The Associate Commissioner for Mental Retardation Services or designee

    i.   The Associate Commissioner for Substance Abuse Services or designee

3.   The job evaluation committee shall be appointed or re-appointed for two (2) year terms.

4.   The committee shall meet at least quarterly or as necessary.

5.   Issues to be reviewed by the Committee will be submitted by the Commissioner or by an Appointing Authority through the appropriate Associate Commissioner.

6.   Issues to be reviewed shall be submitted at least two (2) weeks prior to a scheduled meeting.

7.   Minutes of the Job Evaluation Committee meeting will be distributed to the Commissioner, Associate Commissioners, and Facility/Office Directors.

8.   Exempt Classification Pay Distribution Notices will be distributed to Associate Commissioners, Facility Directors, and Facility Personnel Managers upon approval by the Commissioner.

ADMH 04-00079

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOAN FAULK OWENS and                     )
KAREN LYNN HUBBARD,                      )
                                          )
        Plaintiffs,                       )
                                          )
v.                                        )        2:07-cv-650
                                          )
STATE OF ALABAMA DEPT. OF                 )
MENTAL HEALTH AND MENTAL                  )
RETARDATION, *et al.*,                    )
                                          )
        Defendants.                       )

## DEFENDANT JOHN HOUSTON'S RESPONSES TO
## PLAINTIFFS' FIRST CONSOLIDATED DISCOVERY

COMES NOW Defendant John Houston, by and through counsel, and responds to the

Plaintiff's First Consolidated Discovery as follows:

## OBJECTIONS TO
## DEFINITIONS

(B)    "You" - Counsel for Defendant objects to this definition as being overly broad and unduly
       burdensome and including descriptions of persons who could not or would not generally be
       considered within the definition of the word "you". The terms "agent," "experts," "witnesses
       at trial," "attorneys," and "people who have access to information" are all terms that are
       overly broad in this definition and that create a near impossibility of responding to discovery
       with the word "you" in that discovery as defined.  The term "you" should be used in its
       common sense and Counsel respectfully states that any answer or response to any discovery
       item that contains the word "you" would include the party itself to whom the discovery is
       addressed and if the party to whom the discovery is addressed is the ADMH/MR, any
       employee of the party who could reasonably be expected to be included in that term.

(C)    "Document" and "documents" - Counsel for Defendant objects to the terms "document" and
       "documents" as defined in item (C) in these definitions and asserts that the definition as set
       forth in item (C) is overly broad and unduly burdensome.  This definition calls for
       information that is irrelevant and not calculated to lead to the discovery of relevant
       information or evidence.  The definition in item (C) would call for documents that are

Page 1 of 25



protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. The term as defined would cause this Defendant to spend such an inordinate amount of money and time and would otherwise confuse the discovery process to the extent that the discovery itself would be fundamentally flawed and unfair. The terms "electronic, photographic or mechanical means" are vague and ambiguous and numerous other terms in this definition are vague and ambiguous to the extent that compliance with the definition would become intolerably burdensome, expensive and time-consuming and the production of information subject to this definition would be overly broad and would call for information that is not discoverable. Any attempt to separate, parse out or search for "documents" using each individual term in the definition would be unduly burdensome and extraordinarily time-consuming and expensive and would cause the response to discovery to be nearly impossible. Additionally, the use of this definition would not be possible with respect to numerous requests and would put the Defendant at an unfair disadvantage in attempting to respond to the discovery as submitted using this definition.

(D)     "Identify," "identity" or "identification" - (5). This Defendant objects to Definition (D)(5). There are terms in Definition (D)(5) which are ambiguous and vague and require clarification. The definition calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. The definition in (D)(5) might call for information that is subject to the attorney-client privilege, the executive privilege or the work product exception to the Rules of Discovery. The term "nature of the act" is vague and ambiguous. The term "joining in the act" is vague and ambiguous.

## OBJECTIONS TO
## INSTRUCTIONS

(A)     Counsel for Defendant objects to Instruction (A) to the extent that it seeks a reason for the inability to provide a complete answer. To the best of this Defendant's ability, a complete answer will be provided, however, the term "complete" can sometimes be a subject of controversy or concerning which there is a difference of opinion or an answer may be given by the Defendant in good faith believing it is complete which must be supplemented based upon newly remembered or discovered information. This instruction is inconsistent with the *Federal Rules of Civil Procedure* which considers and provides for the question of "completeness."

(B)     Counsel for Defendant objects to Instruction (B) to the extent that it seeks supplementation up until the time a Final Judgment is rendered in the case. If information is found which would be appropriate for supplementation of a prior response, then supplementation would be made, if possible, however, there could be times when supplementation would not be possible prior to the issuance of a Final Judgment. For example, counsel should not be required to supplement in the middle of the trial of a case when time is precious, even though, of course, in many situations informal supplementation can be and to the extent possible will be provided by way of advising counsel of the substance of newly discovered

information and/or the providing of a newly found document. Nevertheless, to the extent that this instruction provides that supplementation should be made up until the time of Final Judgment, this Defendant objects.

## RESPONSES TO INTERROGATORIES

**Interrogatory No. 1:** Please identify every individual who provided any answers or assistance for your response to these Interrogatories, including the individual's address, telephone number and, if applicable, position with the Alabama Department of Mental Health and Mental Retardation.

**Response:**     My lawyer assisted me in the process of answering by reviewing the questions with me and providing a legal explanation to any questions I may have had.

**Interrogatory No. 2:** Please state your correct name, date of birth, social security number, driver's license number, residence address and work address.

**Objection:**     Counsel for Defendant objects to this interrogatory to the extent it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. Moreover, Defendant specifically objects to providing his Social Security Number and Driver's License Number in that provision of such information is or could lead to an invasion of privacy. His Social Security Number and Driver's License Number are confidential. Subject to and without waiving the foregoing objections, please see Response.

**Response:**     My correct name is John Houston. I am currently employed by the State of Alabama, Department of Mental Health and Mental Retardation located at 100 North Union Street, Montgomery, Alabama.

**Interrogatory No. 3:** Please provide a summary of your educational background including the names and addresses of all schools you have attended, the dates of attendance, all degrees awarded and areas of study or major.

**Response:**     Please see my resumé which is being produced by my lawyers.

**Interrogatory No. 4:** Please provide a summary of your employment history as an adult, including the names and addresses of the place of employment, the dates of employment, your immediate supervisor, and job positions held or areas of responsibility, or both.

**Response:**     Please see my resumé which is being produced by my lawyers.

**Interrogatory No. 5:** Have you ever been a plaintiff or defendant in another lawsuit, whether civil, criminal, divorce, family, etc.? If so, please state the style of the case, including the court where filed, the substance of the claims, and the final outcome, if any.

**Objection of Counsel:**    Counsel for defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope including, a reasonable definition of similarity. Moreover, Counsel for Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. Further, any such information is a matter of public record and equally available to the plaintiffs. Subject to and without waiving the foregoing objections, please see Response.

**Response:**    I have been listed as a party in previous litigation due to my position as Commissioner of the Department of Mental Health and Mental Retardation. It is my understanding from my attorney that any lawsuit filed is a matter of public record.

**Interrogatory No. 6:** Please identify all communications between you and Plaintiff Joan Faulk Owens concerning the incident and events made the basis of the Complaint, the date of such communications, the substance of such communications and all witnesses thereto.

**Objection of Counsel:** Counsel for Defendant objects to Interrogatory No. 6 on the basis that it is overly broad, unduly burdensome, not limited in time nor scope and requests information that is equally available and in possession of plaintiff Joan Faulk Owens. Moreover, Counsel objects in that Plaintiffs have not sufficiently narrowed their definition of "incident and event". Subject to and without waiving the stated objections, please see the Response.

**Response:**    To the best of my knowledge and recollection at this time, I have not had any communications with the Plaintiff Joan Faulk Owens concerning the incident and events alleged in her complaint.

**Interrogatory No. 7:** Please identify all communications between you and Plaintiff Karen Lynn Hubbard concerning the incident and events made the basis of the Complaint, the date of such communications, the substance of such communications and all witnesses thereto.

**Objection of Counsel:** Counsel for Defendant objects to Interrogatory No. 6 on the basis that it is overly broad, unduly burdensome, not limited in time nor scope and requests information that is equally available and in possession of Plaintiff Karen Lynn Hubbard. Moreover, Counsel objects in that Plaintiffs have not sufficiently narrowed their definition of "incident and event". Subject to and without waiving the stated objections, please see the Response.

**Response:**    To the best of my knowledge and recollection at this time, I did have a couple of conversations with Ms. Lynn Hubbard. I believe that one of these conversations took place before the position in question was brought before the JEC for approval. To the best of my recollection, Ms. Hubbard expressed her concerns regarding the changes generally in the substitution policy. At that time, my best recollection is that I did not understand how the issue related to her. At another point in time, she also commented that the substitution provision was being taken out of the

specifications for this job and that the job was bing developed for Marilyn. I told Lynn that this was going to be an open process; it will be fair, not predetermined.

**Interrogatory No. 8:** Please identify all communications between you and anyone other than Joan Owens and Lynn Hubbard, concerning either Joan Owens or Karen Lynn Hubbard, or both, and the incident and events made the basis of the Complaint, giving the

**Objection of Counsel: Counsel for Defendant objects to Interrogatory No. 8 on the basis that it is overly broad, unduly burdensome, and not reasonably limited in time or scope. The Interrogatory is so broad that it is vague. Moreover, Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information which is relevant and/or admissible regarding the claims and defenses presented in this action. Specifically, Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the stated objections, please see the Response.**

**Response:**    As Commissioner for the Alabama Department of Mental Health and Mental Retardation, I am responsible for the overall operation of the Department. To carry out my duties, I often meet with various individuals on a weekly basis and attend a number of meetings wherein various topics related to the allegations made by the Plaintiffs in this case were and are discussed like substitution, creation of new exempt positions and whether certain or specific job classifications should require the person filling the job to have a Bachelor's Degree or other identifiable qualifications. I do not at this time remember "all" conversations I had regarding these things. I have listed in my response to Interrogatory Nos. 6 and 7 my recollection of specific conversations with Ms. Hubbard. Regarding conversations with other individuals, I believe that none of these topics were discussed specifically regarding Ms. Owens or Ms. Hubbard in connection with the job of Departmental Assistant Personnel Manager or any other job. Your question, however, is very broad and the Complaint contains numerous allegations. Therefore, if you could make your question more specific, I will then attempt to make appropriate responses to that question.

I do remember speaking with Henry Ervin, June Lynn and Associate Commissioner Otha Dillihay regarding the creation and establishment of the exempt position of Departmental Assistant Personnel Manager. As Commissioner, I have made it a priority to strengthen the Department of Mental Health and Mental Retardation as a whole which includes the strengthening of the Personnel Department. The organizational structure of Central Personnel and obtaining qualified employees generally, was often a topic of discussion with one or more of the above individuals. There was discussion regarding the progress that was needed in the Central Personnel Department and the need to improve the overall effectiveness of the department as well as the quality of the individuals we were hiring. None of these discussions dealt with Ms. Owens or Ms. Hubbard.

As Commissioner, I met with Associate Commissioner Otha Dillihay on a regular basis. We discussed numerous issues regarding the Department of Mental Health and Mental Retardation. In

Page 5 of 25

Mr. Dillihay's absence, I met with June Lynn, who was appointed Temporary Associate Commissioner during Mr. Dillihay's brief assignment as the Associate Commissioner for Mental Illness. In these meetings with either Mr. Dillihay and/or Ms. Lynn, we would at times, discuss the Central Personnel Office. I do not remember specifically when the establishment and process for filling of the Departmental Assistant Personnel Manager's position was discussed, but I know that it was discussed. We did not speak about Ms. Owens or Ms. Hubbard in the context of the establishment or filling of this position. The matters we discussed related to obtaining the best person for the job. Because of remarks made by Ms. Hubbard, I did say that in no event would anyone be handpicked for this job.

Also, I weekly met with Mr. Ervin regarding the Central Personnel Office and its activities. In meetings, we discussed some of the concerns I had regarding the effectiveness of the Central Personnel Office. We discussed increasing its effectiveness. In conjunction with this goal, although I do not remember each and every specific conversation, I do know that we discussed the establishment and process for filling of the exempt position of Departmental Assistant Personnel Manager. I do not remember specifically speaking to Mr. Ervin regarding Ms. Owens or Ms. Hubbard in connection with this position, but, because of remarks made by Ms. Hubbard, I did mention that in no event would anyone be handpicked for this position.

Also, the position of the Departmental Assistant Personnel Manager would have been discussed in the Job Evaluation Committee. I was not a member of the committee, but would at times sit in on the meetings or participate by giving opening remarks at these meetings. I do not remember being at any meeting where Ms. Owens or Ms. Hubbard were discussed in connection with this position. Further, I do not recall any JEC meeting that I attended where this position was discussed.

**Interrogatory No. 9:** Please provide a detailed list of your job responsibilities as Commissioner of the Department of Mental Health and Mental Retardation of the State of Alabama.

**Response:**    Please refer to Alabama Code Sections 22-50-9, 22-50-11 and 22-50-16 which lists my general duties as Commissioner of the Department of Mental Health and Mental Retardation.

**Interrogatory No. 10:**    Please describe in detail your meetings or communications, or both, with either Plaintiff Joan Faulk Owens and/or Plaintiff Karen Lynn Hubbard, concerning the creation of the specifications for the non-merit position of Departmental Assistant Personnel Manager, and any objection(s) made by Owens or Hubbard thereto.

**Objection of Counsel:**    **Counsel for Defendant objects to Interrogatory No. 10 on the basis that it is overly broad, unduly burdensome and requests information that is equally available and in possession of plaintiff Joan Faulk Owens and Karen Lynn Hubbard. Moreover, due to the passage of time, this Defendant may not remember the date and exact subject matter of all communications with Ms. Owens and Ms. Hubbard concerning the creation of the**

specifications for the non-merit position of Departmental Assistant Personnel Manager, and any objection(s) made by Owens or Hubbard. Subject to and without waiving the stated objections, please see the Response.

**Response:**     Please see my previous responses to Interrogatory Nos. 6 and 7.

**Interrogatory No. 11:**     Please describe in detail any meetings, conversations, e-mails, correspondence, telephone conversations or any other methods of communication whatsoever, you had with any and all Defendants concerning the creation of the position of Departmental Assistant Personnel Manager, and the development of specifications and hiring process for filling such position.

**Objection of Counsel:**     Counsel for Defendant objects to Interrogatory No. 11 because it is overly broad, unduly burdensome, and not reasonably limited in time or scope including a reasonable definition of similarity. Moreover, Counsel for Defendant objects to this request to the extent this request is not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. Counsel for Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, please see the Response.

**Response:**     Please refer to my response to Interrogatory No. 8 above regarding meetings and/or conversations that I had with any of the other Defendants in this matter regarding the creation of the position of Departmental Assistant Personnel Manager and the development of specifications and hiring process for filling such position. I did receive the specification from Mr. Ervin and approved the specification after reviewing it.

Specifically, regarding the creation and development of specifications and qualifications for this particular position, I do know that I did discuss with Mr. Ervin, Mr. Dillihay and Ms. Lynn that a Departmental Assistant Personnel Manager for an agency division, particularly one of the size and complexity as the Department of Mental Health and Mental Retardation, should be filled by an individual with at least a Bachelor's Degree and that substitution of experience for education regarding the Bachelor's Degree should not be allowed. Further, we discussed the fact that a Master's Degree would be preferable. I was not involved in the application review process or the selection of the particular persons on the Interview Committee. I did not participate in the interviews themselves. I did recommend to both Associate Commissioner Dillihay and Henry Ervin that the interview committee should include at least one individual from Outside the Department of Mental Health and Mental Retardation. Also, after the initial advertisement, I requested that it be advertized again to a larger applicant pool and that the time period for submission of applications be extended.

**Interrogatory No. 12:**     Please describe in detail any meetings, conversations, e-mails, correspondence, telephone conversations or any other methods of communication whatsoever, you had with any individual not a defendant in this case, concerning the creation of the position of

Departmental Assistant Personnel Manager, and the development of specifications and hiring process for filling such position.

**Objection of Counsel:**    Counsel for Defendant objects to Interrogatory No. 12 on the basis that it is overly broad, unduly burdensome, not reasonably limited in time or scope. Moreover, Counsel for Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information which is relevant to and/or admissible regarding the claims and/or defenses presented in this action. Specifically, Counsel for Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, please see the Response.

**Response:**    Please refer to the responses to Interrogatory Nos. 8 and 11.

**Interrogatory No. 13:**    Have you ever been warned, reprimanded, disciplined or otherwise subjected to any adverse employment action for any reason? If so, please state the following:

　　a.　the type of adverse employment action taken, i.e., reprimand, warning, discipline, involuntary leave, etc.;
　　b.　the date of such action; and
　　c.　the reason for such action.

**Objection of Counsel:**    Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope including a reasonable definition of similarity. Moreover, Defendant objects to this request to the extent it not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will appropriately narrow their request for information to a specific time frame and to information relevant to this claims and/or defenses presented in this litigation as set forth in this objection, this Defendant will respond.

**Interrogatory No. 14:**    Identify the factual basis for any and all defenses you have asserted in your Answer to the Complaint filed by Joan Owens and Lynn Hubbard.

**Objection of Counsel:**    Counsel for Defendant objects to this Interrogatory in that discovery has not been completed and this response cannot be fully made at this time.

**Interrogatory No. 15:**    Have you ever been accused of discrimination by anyone, whether employment or race related or otherwise? If your answer is affirmative, then state the following:

　　a.　The name and address of the person making the accusation;
　　b.　The date, nature and substance of the accusation;
　　c.　Whether the accusation was investigated by anyone; and
　　d.　The results of the investigation or resolution of the accusation, or both.

**Objection of Counsel:**    Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope, including a reasonable definition of similarity. Moreover, Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific reasonable time frame and to information relevant to the claims and/or defenses presented in this litigation as set forth above in this objection, this Defendant will respond.

**Interrogatory No. 16:**    Have you ever been terminated, asked to resign or otherwise been compelled to leave (if not otherwise asked to leave) any past employment? If your answer is affirmative, please give the name of the employer and explain the basis for the termination, resignation, etc.

**Objection of Counsel:**    Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope including a reasonable definition of similarity. Moreover, Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific reasonable time frame and to information relevant to the claims and/or defenses presented in this litigation as set forth above in this objection, this Defendant will respond.

**Interrogatory No. 17:**    State the name, address, background training and work experience, including any specialties, of each person you intend to call or may call as a witness in the trial of this case.

a.    State the substance of the testimony you expect to be given by each such witness; and
b.    State on which claim(s) or issue(s) you propose to call each such witness.

**Objection of Counsel:**    Counsel for Defendant objects to Interrogatory No. 17 because it is overly broad, unduly burdensome, and not reasonably limited in time or scope including a reasonable definition of similarity. Moreover, Counsel for Defendant objects to this request to the extent this request is not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. Counsel for Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, please see the Response.

**Response:**    Other than myself and the other defendants listed in this action, as this time, I believe the following individuals may be called as witnesses in this matter:

a.    June Lynn
Ms. Lynn is Executive Assistance to the Associate Commissioner for Administration, David Bennett. At relevant time periods to this litigation, Ms. Lynn was the

Executive Assistant to the Associate Commissioner of Administration, Otha Dillihay. Also, she was at one time acting Associate Commissioner for Administration of the ADMH/MR.

b.   David Bennett.
Mr. Bennett is the Associate Commissioner for Administration of the Alabama Department of Mental Health and Mental Retardation. Mr. Bennett was a member of the interview committee that evaluated and interviewed candidates for the position of ADMH/MR Assistant Personnel Director.

c.   Paul Bisbee
Mr. Bisbee was a member of the Job Evaluation Committee for the ADMH/MR. He was the Director of the Mental Health Facilities until his retirement.

d.   Susan Chambers
Ms. Chambers was a member of the Job Evaluation Committee for the ADMH/MR. Ms. Chambers was also Facilities Director for Greil Memorial Psychiatric Hospital. She is currently Associate Commissioner for Mental Illness.

e.   Charles Day
Mr. Day was a member of the Job Evaluation Committee for the ADMH/MR. Mr. Day is currently at Bryce Hospital Adolescent Unit.

f.   Jackie Graham
Ms. Graham was the Deputy Director of the State Personnel Department at all times relevant to the Plaintiffs' Complaint. Ms. Graham is currently the Director of the State Personnel Department.

g.   Kent Hunt
Mr. Hunt is the Associate Commissioner of the ADMH/MR Substance Abuse Division. Mr. Hunt is a member of the ADMH/MR Job Evaluation Committee and was also a member of the interview committee that evaluated and interviewed candidates for the position of ADMH/MR Assistant Personnel Director.

h.   Judith Johnston
Ms. Johnston was a member of the Job Evaluation Committee. She was Director of Mental Retardation facilities until her retirement.

i.   Doug Lunsford

Mr. Lunsford was a member of the interview committee that evaluated and interviewed candidates for the position of ADMH/MR Assistant Personnel Director. Mr. Lunsford is the Manager of Special Projects for the State Personnel Department.

j.    Mike Mathis
Mr. Mathis is the Personnel Director for the Partlow Center in Tuscaloosa, Alabama which is a facility of the ADMH/MR. Mr. Mathis was responsible for advertising the position of Assistant Personnel Manager and responsible for evaluating applications.

k.    Eranell McIntosh-Wilson
Ms. Wilson was the Associate Commissioner of the Division of Mental Retardation of the ADMH/MR. She was also a member of the Job Evaluation Committee during times relevant to this litigation at ADMH and was also member of the interview committee that evaluated and interviewed candidates for the position of of ADMH/MR Assistant Personnel Director.

Please note that all individuals listed above are or were employees of the Department of Mental Health and Mental Retardation or another State agency. As such, contact information has not been provided for these individuals. Any contact of the above listed individuals should be accomplished through counsel of record, Chip Nix and/or Brandy Price. Additionally, I do reserve the right to supplement this witness list as discovery in this matter is ongoing.

**Interrogatory No. 18:**    If you expect to call or may call an expert witness in the trial of this case, state with respect to each such expert the following:

a.    His or her name, residence address, telephone number and employer;
b.    The subject matter to which he or she is expected to testify;
c.    The substance of the facts and opinions to which he or she is expected to testify;
d.    A summary of the grounds for each opinion;
e.    His or her education and experience or other background which you contend qualifies such person to testify as an expert witness on the matters referred to in your answers to this Interrogatory; and
f.    List all publications, speeches, presentations, articles, or similar material ever made or written by said expert or experts.

**Response:**    My lawyers will provide a list of expert witnesses and expert information in accordance with the Federal Rules of Civil Procedure and/or any scheduling order entered in this action.

**Interrogatory No. 19:**    Please identify all communications you have had with any representative of the Equal Employment Opportunity Commission ("EEOC") regarding the matter alleged in the Complaint, giving the date of the communication, the nature and substance of the

communication, and the name and telephone number of the representative(s) with whom you communicated.

**Objection of Counsel:**    Counsel for Defendant objects to Interrogatory No. 19 because it is overly broad, unduly burdensome, and not reasonably limited in time or scope including a reasonable definition of similarity. Moreover, Counsel for Defendant objects to this request to the extent this request is not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. Counsel for Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, please see the Response.

**Response:**    I did not have any communications with EEOC regarding the matters alleged in the Complaint.

**Interrogatory No. 20.**    Please identify all witnesses to any and all events alleged in the Complaint, and your defenses thereto, giving the name and the address of the witness, and the event or matter witnessed by each person identified.

**Objection of Counsel:**    Counsel for Defendant objects to Interrogatory No. 20 because it is overly broad, unduly burdensome, and not reasonably limited in time or scope including a reasonable definition of similarity. Moreover, Counsel for Defendant objects to this request to the extent this request is not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. Counsel for Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, please see the Response.

**Response:**    I have previously provided a list of witnesses with knowledge and/or information relevant to the claims in Plaintiffs' Complaint through my counsel of record in the Initial Disclosures filed in this matter. Additionally, I previously provided a list of witnesses in response to Interrogatory No. 17. As previously stated, I do reserve the right to supplement my witness list as discovery is ongoing.

**Interrogatory No. 21:**    Please identify all persons who you believe may have any knowledge whatsoever regarding the claims made the basis of the Complaint or your defenses thereto, or both, giving the name and address of the person and the nature or extent of his or her knowledge.

**Objection of Counsel:**    Counsel for Defendant objects to Interrogatory No. 21 because it is overly broad, unduly burdensome, and not reasonably limited in time or scope including a reasonable definition of similarity. Moreover, Counsel for Defendant objects to this request to the extent this request is not reasonably calculated to lead to the discovery of information

relevant to the claims and/or defenses presented in this action. Counsel for Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, please see the Response.

**Response:** I have previously provided a list of witnesses with knowledge and/or information relevant to the claims in Plaintiffs' Complaint through my counsel of record in the Initial Disclosures filed in this matter. Additionally, I previously provided a list of witnesses in response to Interrogatory No. 17. As previously stated, I do reserve the right to supplement my witness list as discovery is ongoing.

## RESPONSES TO REQUESTS FOR PRODUCTION

**Request No. 1:** All documents which pertain to or reference Joan Owens or Lynn Hubbard, or both.

**Objection of Counsel:** Counsel for Defendant objects to Request No. 1 in that it is overly broad and unduly burdensome and calls for documents which are irrelevant or that are not calculated to lead to the discovery of relevant information or evidence. Further, Request No. 1 calls for documents that are protected by the attorney-client privilege, executive privilege and the work product exception to the Rules of Discovery.

**Response:** Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 2:** All documents which pertain to any and all events, matters and allegations made the basis of the Complaint.

**Objection of Counsel:** Counsel for Defendant objects to Request No. 2 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 2 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.

**Response:** Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 3:** All documents which support or reference any and all defenses asserted by you or your Co-Defendants to the Complaint.

**Objection of Counsel:** Counsel for Defendant objects to Request No. 3 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are

not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 3 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Additionally, discovery has only just begun and this request cannot be responded to until discovery is complete. Further, this request calls for documents that are potentially only in the possession of a Co-Defendant. Further, numerous documents of the ADMH/MR have been produced.

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 4:**    All audiotapes, videotapes, or other recordings of any conversation which pertain to or reference Joan Owens or Lynn Hubbard, or both.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 4 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 4 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 5:**    All audiotapes, videotapes, or other recordings of any conversation which pertain to or reference any and all events, matters and allegations made the basis of the Complaint.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 5 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 5 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 6:**    All audiotapes, videotapes, or other recordings of any conversation which pertain to or reference any and all defenses asserted by you or your Co-Defendants to the Complaint.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 6 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 6 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.

Additionally, discovery has only just begun and this request cannot be responded to until discovery is complete. Further, this request calls for documents that are potentially only in the possession of a Co-Defendant and, while this Defendant will produce documents that are not objectionable in this Defendant's possession or control that are responsive to this request, if any, this Defendant objects to producing or attempting to produce the described documents in the possession or control of any Co-Defendant.

**Response:** Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 7:** All documents which relate to or reference the creation and development of specifications for non-merit or merit employee positions, or both, with the Alabama Department of Mental Health and Mental Retardation.

**Objection of Counsel:** Counsel for Defendant objects to Request No. 7 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 7 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Additionally, this Request calls for documents concerning the "creation and development of specifications for non-merit or merit employee positions or both" which have no reference or relevance to the position in question in this case. Further, the request calls for the production of information that has no relationship to similar jobs to the one that is the subject of this case and said request has no time frame or time limitation with regard to it.

**Response:** Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 8:** All documents which relate to or reference the creation, development of specifications and filling of the position of Departmental Assistant Personnel Manager.

**Objection of Counsel:** Counsel for Defendant objects to Request No. 8 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 8 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Additionally, this Request calls for documents concerning the "creation and development of specifications for non-merit or merit employee positions or both" which have no reference or relevance to the position in question in this case. Further, the request calls for the production of information that has no relationship to similar jobs to the one that is the subject of this case and said request has no time frame or time limitation with regard to it.

**Response:**     Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 9:**     Any document relied upon, referred to, or identified in your Answers to Interrogatories served simultaneously herewith.

**Objection of Counsel:**     Counsel for Defendant objects to Request No. 9 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 9 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.

**Response:**     Subject to and without waiving the foregoing, please see my resume which has been produced. I did review a number of documents, all of which I understand from Counsel have been produced.

**Request No. 10:**     A copy of all documents that substantiate, concern or are related to your response to Plaintiffs' Interrogatories.

**Objection of Counsel:**     Counsel for Defendant objects to Request No. 10 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 10 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Further, because of the extreme breadth of the request for documents that substantiate, concern or relate to answers a response would require overly burdensome document review by counsel.

**Response:**     Subject to and without waiving the foregoing, please see my resume which has been produced. Further, I understand a substantial number of other documents have been produced.

**Request No. 11:**     All documents referenced, viewed, or relied upon in any way in the preparation of your answers to these Interrogatories.

**Objection of Counsel:**     Counsel for Defendant objects to Request No. 11 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 11 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.

**Response:**     Please see previous responses.

**Request No. 12:**    All documents which relate to or reference Marilyn Benson.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 12 in that it is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Further, this request calls for documents that are protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. Additionally, this request contains no time restriction and no subject matter restriction or limitation. Further, this request is so broad that this Defendant could not respond because a search for any such information would involve so many employees of the Department and so many offices and divisions of the Department that it would be unduly burdensome to attempt to respond to the request as framed.

**Response:**    Subject to and without waiving the foregoing objections, I do not personally have any documents which relate to or reference Marilyn Benson. I understand numerous ADMH/MR documents have been produced.

**Request No. 13:**    All documents which relate to or reference Otha Dillihay.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 13 in that it is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Further, this request calls for documents that are protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. Additionally, this request contains no time restriction and no subject matter restriction or limitation. Further, this request is so broad that this Defendant could not respond because a search for any such information would involve so many employees of the Department and so many offices and divisions of the Department that it would be unduly burdensome to attempt to respond to the request as framed.

**Response:**    Subject to and without waiving the foregoing objections, I do not personally have any documents which relate to or reference Otha Dillihay. I understand numerous ADMH/MR documents have been produced.

**Request No. 14:**    All documents which relate to or reference Henry Ervin.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 14 in that it is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Further, this request calls for documents that are protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. Additionally, this request contains no time restriction and no subject matter restriction or limitation. Further, this request is so broad that this Defendant could not respond because a search for any such information would

involve so many employees of the Department and so many offices and divisions of the Department that it would be unduly burdensome to attempt to respond to the request as framed.

**Response:**    Subject to and without waiving the foregoing objections, I do not personally have any documents which relate to or reference Henry Ervin. I understand numerous ADMH/MR documents have been produced.

**Request No. 15:**    All documents which relate to or reference any and all personnel decisions and actions you have taken concerning the Department of Human Resources of the Alabama Department of Mental Health and Mental Retardation.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 15 in that it is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Further, this request calls for documents that are protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. Additionally, this request contains no time restriction and no subject matter restriction or limitation. Further, this request is so broad that this Defendant could not respond because a search for any such information would involve so many employees of the Department and so many offices and divisions of the Department that it would be unduly burdensome to attempt to respond to the request as framed.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 16:**    All job specifications and job opening notices regarding positions with the Department of Human Resources of the Alabama Department of Mental Health and Mental Retardation for the past ten (10) years.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 16 in that this request is overly broad and unduly burdensome. This request calls for irrelevant information that is not calculated to lead to the discovery of relevant information or evidence. Further, this request is not limited to a reasonable time and seeks specifications that are not similar to the specifications for the job in question in this case.

**Response:**    Subject to and without waiving the foregoing objections, I have none personally. I understand numerous ADMH/MR documents have been produced.

**Request No. 17:**    Your most recent resume or curriculum vitae.

**Response:**    Please see my resume which has been produced.

**Request No. 18:**    All documents submitted to or received from the Equal Employment Opportunity Commission.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 19:**    A copy of your file concerning the Equal Employment Opportunity Commission's investigation of the matters alleged in the Complaint.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 19 in that this request is overly broad and unduly burdensome. It calls for information that is not relevant and not calculated to lead to the discovery of relevant or admissible information. Additionally, this request calls for the production of material that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 20:**    Any and all reports, correspondence or documents which have been prepared by any person in connection with or relating to this lawsuit or the alleged incident(s) giving rise to this lawsuit.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 20 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 21:**    All documents reflecting communications between you and any person concerning or relating to the claims alleged in this action, including, without limitation, communications with any parties to this action, any governmental employees or agency representatives, media outlets, family members, business colleagues, your co-workers at the Alabama Department of Mental Health and Mental Retardation, or any representatives of such persons.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 21 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that

is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:** Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 22:** Any written statements taken by you, your attorneys or your investigators from any and all witnesses to the events, matters and claims in the Complaint.

**Objection of Counsel:** Counsel for Defendant objects to Request No. 22 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:** Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 23:** Any and all photographs or videotapes of any alleged incident(s) or circumstances(s) giving rise to this lawsuit or relating to the events, matters and claims in the Complaint.

**Objection of Counsel:** Counsel for Defendant objects to Request No. 23 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:** Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 24:** Copies of any and all tape recordings, video cassette recordings or other magnetic media that may contain recordings of statements or accounts made by any person, including parties, pertaining or relating in any way to the events, matters and claims in the Complaint.

**Objection of Counsel:** Counsel for Defendant objects to Request No. 24 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**     Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 25:**     Any and all documents that were referenced, viewed, identified, or relied upon in anyway in the preparation of your answers to this Discovery, or that relate to the allegations in the Complaint and/or your defenses thereto.

**Objection of Counsel:**     Counsel for Defendant objects to Request No. 25 in that this request is duplicative. Additionally, this request is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Further, this request calls for information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. Additionally, this request calls for information that can only be provided at the conclusion of discovery.

**Response:**     Subject to and without waiving the foregoing objections, please see my resume which has been provided. I understand numerous ADMH/MR documents have been produced.

**Request No. 26:**     Copies of any curriculum vitae of any expert witnesses you plan to call at the trial of this case.

**Response:**     My lawyers will provide a list of expert witnesses and any information regarding expert witnesses in accordance with the Federal Rules of Civil Procedure and/or any scheduling order entered in this action.

**Request No. 27:**     Copies of any and all reports rendered by any expert whom you have consulted or whom you expect to call as an expert witness at the trial of this case.

**Response:**     My lawyers will provide a list of expert witnesses and any information regarding expert witnesses in accordance with the Federal Rules of Civil Procedure and/or any scheduling order entered in this action.

**Request No. 28:**     A copy of all textbooks, journal articles, treatises, etc., being used in support of any opinions expressed in this case regarding the events, matters and allegations in the Complaint and/or your defenses thereto.

**Response:**     My lawyers will provide a list of expert witnesses and any information regarding expert witnesses in accordance with the Federal Rules of Civil Procedure and/or any scheduling order entered in this action.

**Request No. 29:**     A copy of all documents or other tangible items that you intend or expect to use as an exhibit at the trial of this matter.

**Objection of Counsel:**    Counsel for Defendant objects to this Request. At this time, discovery has only just begun. As such, it would be impossible to designate what exhibits I shall use at the trial of this matter at this time. A list of exhibits will be provided in accordance with the Federal Rules of Civil Procedure and/or any scheduling order entered in this action.

**Request No. 30:**    All documents from any Defendant in this case, regarding any events, matters and claims made the basis of the Complaint and/or your defenses thereto.

**Objection of Counsel:**    Discovery has only just begun and this request cannot be responded to until discovery is complete. Further, this request calls for documents that are potentially only in the possession of a Co-Defendant and, while this Defendant will produce documents that are not objectionable in this Defendant's possession or control that are responsive to this request, if any, this Defendant objects to producing or attempting to produce the described documents in the possession or control of any Co-Defendant.

**Request No. 31:**    All documents which refer, relate to or pertain to your employment with the Alabama Department of Mental Health and Mental Retardation.

**Response:**    I have none personally. I do not know who keeps my personnel file.

**Request No. 32:**    All diaries, calendars, memos or other chronologies or summaries of events, written or otherwise, maintained by you or in your possession, relating or referring to any parties and/or events, matters or claims in the Complaint.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 32 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**    Subject to and without waiving the foregoing objection, none.

**Request No. 33:**    All court orders, complaints, petitions, judgments, releases, settlement agreements, or covenants asserting, disposing of, resolving or referring to any legal claim, or potential claim, made by or against you, or on behalf of you.

**Objection of Counsel:**    Counsel for Defendant objects to Interrogatory No. 33 in it is vague and ambiguous. Additionally, the request for production seeks information concerning "any legal claim". Specifically, Counsel for Defendant objects in that the interrogatory calls for information that is not relevant and not calculated to lead to the discovery of relevant or admissible information or evidence. The question makes no reference to any specific type of discrimination or discrimination claim and does not confine the question to similar suits or

claims. Similarity is not defined in the question. Further, the use of the terms "complaint" and "claims" are vague, ambiguous and overly broad and are so broad that ostensibly even a casual or purely oral "accusation" or informal writing might qualify as an complaint or claim. It would be impossible for this Defendant to respond to such a vague, ambiguous and broad question. Additionally, the question seeks information for an infinite period of time. This is excessive and not narrowly tailored, as such it is overly broad and unduly burdensome. Additionally, this question calls for information that is protected by the attorney-client and executive privilege and by the work product exception to discoverable information. Moreover, the request seeks information that is potentially confidential. Finally, any formal lawsuit filed is a matter of public record and equally available to plaintiffs.

**Request No. 34:**      All documents received by or given to you from any local, state, or federal agency, office, department or official which refer, relate or pertain to any matter set forth in the Complaint, the allegations made therein and/or your defenses thereto.

**Objection of Counsel:**      Counsel for Defendant objects to Request No. 34 in that this request is overly broad and unduly burdensome. This request calls for irrelevant information that is not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents that are protected by the attorney-client privilege, executive privilege and the work product exception to the Rules of Discovery. Additionally, this request cannot be responded to until discovery is completed in the case.

**Response:**      Subject to and without waiving the foregoing objections, I have none personally. I understand numerous ADMH/MR documents have been produced.

**Request No. 35:**      All documents which refer, relate or pertain to any and all charges, petitions, grievances, complaints or lawsuits ever filed by or against you concerning any alleged discrimination.

**Objection of Counsel:**      Counsel for Defendant objects to Request No. 35 in that this request is overly broad and unduly burdensome. This request calls for irrelevant information that is not calculated to lead to the discovery of relevant information or relevant evidence. This request calls for documents that are protected by the attorney-client privilege, executive privilege and the work product exception to the Rules of Discovery. Additionally, this request does not limit the production to a reasonable time and does not describe what counsel for the Plaintiffs considers similar and does not limit the request to similar complaints or lawsuits within a reasonable period of time. Further, the terms "charges, petitions and grievances" may or may not relate to purely oral matters not put in writing or may relate to matters not kept for any length of time by this Defendant. Additionally, assuming the request were limited to similar complaints or lawsuits within a reasonable time or similar charges, petitions or grievances within a reasonable time, said items could possibly exist in personnel files or in other places that would require this Defendant to make an effort to locate said items that would be unduly burdensome.

**Response:**    Subject to and without waiving the foregoing objections, I have none personally.

**Request No. 36:**    Please produce all of your personnel files and personnel records concerning your employment with any and all employers during the last twenty (20) years.

**Response:**    I personally do not have a copy of my personnel file.

**Request No. 37:**    Please produce your driver's license or a photocopy of same.

**Objection of Counsel:**    **Confidential.**

**Request No. 38:**    Please produce all forms, applications, questionnaires, complaints, letters, filings or other documents you completed or provided to the EEOC regarding any claim of discrimination filed by or against you, and all documents which you received from the EEOC regarding same.

**Response:**    None.

_B. J. Price_
_____
H.E. NIX, JR. (NIX007)
BRANDY F. PRICE (PRI079)
Counsel for Defendants


OF COUNSEL:
*Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.*
P.O. Box 4128
Montgomery, AL 36103-4128
334-215-8585
334-215-7101 - facsimile
cnix@nixholtsford.com
bprice@nixholtsford.com

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing instrument has been served (a) through the Court's e-filing system; (b) by placing a copy of same in the United States Mail, postage prepaid and properly addressed; and/or (c) by personal/firm e-mail to

| | |
|---|---|
| J. Flynn Mozingo, Esq.<br>*Melton, Espy & Williams, P.C.*<br>P. O. Drawer 5130<br>Montgomery, AL 36103-5130 | Courtney W.Tarver, Esq.<br>Deputy Atty. General and Gen. Counsel<br>Bureau of Legal Services<br>ADMH/MR<br>RSA Union Building<br>100 N. Union Street<br>Montgomery, AL 36130-1410 |

on this the 15th day of April, 2007.

B. J. Price
OF COUNSEL

## VERIFICATION

STATE OF <u>ALABAMA</u>

COUNTY OF _Montgomery_

PERSONALLY appeared before me, the undersigned authority in and for the said county and state, the within named John Houston, who states upon his oath that he is duly authorized to execute Responses to Plaintiff's Interrogatories, in the matter styled *Joan Owens and Karen Lynn Hubbard v. State of Alabama Department of Mental Health and Mental Retardation, et al.* and being **2:07-cv-650**, in the United States District Court for the Middle District of Alabama, Northern Division. These responses are based upon and are limited by the records and information still in existence and located in the course of preparing of these answers. Upon information and belief and subject to the limitations set forth herein, the answers are true and correct as therein stated.

This the _11th_ day of _April_, 200_8_.

_John Houston_

John Houston

SWORN TO and SUBSCRIBED before me this the _11th_ day of _April_, 200_8_.

[Seal]

_Elizabeth P. Sievers_
NOTARY PUBLIC
My commission expires: _05/31/09_

John M. Houston
Commissioner, Alabama Department
of Mental Health/Mental Retardation


## EDUCATION

| | | | |
|---|---|---|---|
| 1971 | Auburn University | BA | |
| 1975 | University of Alabama | MSW | (Planning/Administration) |
| 1975 | University of Alabama | MA | (Special Education/Mental Retardation) |

## EXPERIENCE

**1986-PRESENT**      STATE DEPARTMENT OF MENTAL HEALTH/MENTAL RETARDATION

<u>Commissioner</u> (May 2005-Present) Responsible for the overall administration and management of the Department of Mental Health and Mental Retardation, including all state in-patient facilities and community contracted and certified programs.

<u>Executive Assistant to the Commissioner</u> (1995-Present)
Responsibilities include: serving as Departmental liaison to other state and federal agencies, including representing the Commissioner on councils, boards, or interagency committees; assisting the Commissioner in managing administrative assignments to appropriate department staff; negotiation or mediation activities with other agencies or community providers; providing assistance, as needed, on legislative activities and departmental and interagency planning activities; performing various administrative assignments such as general oversight of routine transactions with other executive branch offices; and serving as contact person for the Commissioner's Office with human services agencies, juvenile and other state court personnel, families, clients, advocates, and others who have complaints or concerns related to Departmental operations or services. Typicaly responsible for handling functions of the Commissioner's Office in the absence of the Commissioner.

During this time, assisted the Associate Commissioner for Administration with a review of essential functions and staffing needs in the Central Office. Served as the Public Information Officer for the Department on a temporry basis when that position was vacated and continue to handle media contacts when needed. Assumed responsibility for coordination of administrative functions of the Office of the Associate Commissioner for Mental Retardation Services when the Associate Commissioner was assigned to Partlow during the recent consolidation of MR facilities.

Interagency responsibilities include serving as the Commissioner's proxy on the *Alabama Children's Policy Council* (2000–present), *Department of Youth Services Board* (1987-1998, 1999-present), the *Child Abuse and Neglect Prevention Board (Children's Trust Fund)* (1995-present), the *Alabama Child Death Review Team* (2000-2003), the *State Children's Services Facilitation Team* (1993- present), and the *Governor's Interagency Coordinating Council for Early Intervention Services* (1986- present). Also served as Department's representative on the *Children's Health Insurance Program (CHIP) Work Group*, the *Joint Legislative Committee on Children in State Care/Interagency Subcommittee*, the *Family and Children Training System (FACTS)* and the *Interagency Subcommittee of the Joint Legislative Committee on Rural Transportation*.


<u>Acting Associate Commissioner for Administration</u>  (March 1999 – June 1999)

ADMH  01-08-00001

General oversight and supervision of all organizational units of the Division of Administrative Services including Budget/Finance, Data Management, Technical Services/Certification, Personnel, and OBRA Screening. Provides assistance to the Commissioner with special projects, legislative activities, public speaking engagements, and representing the Commissioner at Executive or Legislative activities in the Commissioner's absence.

**State Children Services Facilitation Team (SCSFT)** (1993-Present) Appointed by the Commissioner as the DMH/MR representative of the *State Children Services Facilitation Team* (SCSFT). Elected to serve as Chairperson of the SCSFT in 1993-1994, 1996-1998, and 1999-2001. Responsibilities of the SCSFT include working with the Departments of Youth Services, Human Resources, Education, Public Health, Mental Health/Mental Retardation and representatives of the Association of Chief Juvenile Probation Officers regarding planning for and developing services for Multiple Needs Children (MNC) *(i.e., "children requiring services from two or more agencies and at risk of out-of-home placement or movement to a more restrictive placement")*.

The State CSFT is responsible for developing policies and procedures for state and county SFTs, working with juvenile courts and county SFTs to plan for and coordinate services to MNC, and for securing and coordinating funding from various state and federal sources to provide needed services to these children. Responsibilities of the Chairperson include: presiding at monthly meetings of the SCSFT; providing general supervision of the State Multiple Needs Child Coordinator and SCSFT functions such as fiscal management of interagency accounts with contributions from five child-serving agencies; negotiation of collaborative interagency service and funding agreements to provide services to multiple needs children; representing the SCSFT on occasions such as collaborative planning or training activities, and in juvenile court proceedings or related activities.

**Executive Assistant to Associate Commissioner/Mental Illness Division** (1991-1994) In general, responsibilities in this position were very similar to those enumerated above with administrative responsibilities focused on MI Division activities and liaison responsibilities approximately equally divided between MI and Department wide concerns.

**Executive Assistant to Associate Commissioner/Administrative Division** (1986-1991)
Again, responsibilities in this position were very similar to those enumerated above. I was directly involved in Divisional planning, budget preparation and management, policy development and implementation, personnel and related matters and gained a detailed knowledge of all bureaus and offices in the Administrative Division. I was responsible for managing the Administrative Division in the Associate Commissioner's absence. During this time, I also coordinated an organizational review of all units (Bureaus, Sections, and Offices) within the Administrative Division to review essential functions, staffing requirements, and organizational relationships.

**1980-1986**      ALABAMA INSTITUTE FOR DEAF AND BLIND

**Director, Sunbelt Regional Center:** (1984-1986) Multi-state federally funded program providing technical assistance and fiscal management to state agencies providing services to multi-handicapped sensory impaired children. Negotiated technical assistance and service contracts with state agencies and prepared and submitted federal grant applications. Contract manager/fiscal administrator for 40+ programs in ten states. Served as liaison to program and agency finance staff in each state to assure implementation of program activities and monitor fund utilization. Utilization of federal funding increased from 72% to 98% during the first year.

**Director, Student Services, E. H. Gentry Technical Facility.** (1980-1984) Education/Rehabilitation facility for adult (16+) sensory impaired.   Student Services Department included social services, case management, dormitory/residential programs, recreation/extended day programs and management of all student financial accounts in adult programs.   Responsibilities included supervision of 20+ professional and clerical staff, program design and development, budget development and control, and grant development and management. Significant accomplishments included design and implementation of a facility wide case management system, and substantial expansion of extended day programs and recreational activities.

1979-1980        CETA MANAGEMENT COORDINATION PROJECT

**Research Associate** of a federally funded program providing technical assistance to state agencies, educational institutions regarding employment training programs. My responsibilities focused on programs serving individuals with disabilities.

1977-1979        CHATTANOOGA-HAMILTON CO. ASSN. FOR RETARDED CITIZENS

**Executive Director** for private non-profit community based program providing services and advocacy for persons who are mentally retarded and for their families. Administrator/supervisor of program staff performing functions of public information/education, advocacy, individual and family counseling, crisis intervention, and emergency shelter.

1974  1977        BRYCE HOSPITAL, DEPARTMENT OF MH/MR

**Advocate/Director of Advocacy Services** for internal advocacy program for Bryce patients.   This position functioned under the supervision of the Hospital Director. Investigated patient complaints and/or supervised other advocacy staff in investigation of complaints regarding alleged abuse or other patient or family concerns; prepared reports of incident investigation and/or program review activities; developed data base of patient complaints and concerns and conducted analysis of issues by program area.

1971  1973        MENTAL RETARDATION SERVICES OF AL./UNIVERSITY OF ALABAMA

**Advocate/Coordinator of Advocacy** for clients in 60 bed residential MR program on campus of the University of Alabama. Clients were residents of Partlow.    Investigated patient complaints and/or supervised other advocacy staff in investigation of complaints regarding alleged abuse or other patient or family concerns; performed program review activities; monitored caseload of individual client program plans.

*References furnished upon request.*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOAN FAULK OWENS and | ) | |
| KAREN LYNN HUBBARD, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | 2:07-cv-650 |
| | ) | |
| STATE OF ALABAMA DEPT. OF | ) | |
| MENTAL HEALTH AND MENTAL | ) | |
| RETARDATION, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANT OTHA DILLIHAY'S RESPONSES TO PLAINTIFFS' FIRST CONSOLIDATED DISCOVERY

COMES NOW Defendant Otha Dillihay, by and through counsel, and responds to the

Plaintiff's First Consolidated Discovery as follows:

### OBJECTIONS TO DEFINITIONS

(B)    "You" - Counsel for Defendant objects to this definition as being overly broad and unduly burdensome and including descriptions of persons who could not or would not generally be considered within the definition of the word "you". The terms "agent," "experts," "witnesses at trial," "attorneys," and "people who have access to information" are all terms that are overly broad in this definition and that create a near impossibility of responding to discovery with the word "you" in that discovery as defined. The term "you" should be used in its common sense and Counsel respectfully states that any answer or response to any discovery item that contains the word "you" would include the party itself to whom the discovery is addressed and if the party to whom the discovery is addressed is the ADMH/MR, any employee of the party who could reasonably be expected to be included in that term.

(C)    "Document" and "documents" - Counsel for Defendant objects to the terms "document" and "documents" as defined in item (C) in these definitions and asserts that the definition as set forth in item (C) is overly broad and unduly burdensome. This definition calls for information that is irrelevant and not calculated to lead to the discovery of relevant information or evidence. The definition in item (C) would call for documents that are

Page 1 of 20


DEFENDANT'S EXHIBIT 7

protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. The term as defined would cause this Defendant to spend such an inordinate amount of money and time and would otherwise confuse the discovery process to the extent that the discovery itself would be fundamentally flawed and unfair. The terms "electronic, photographic or mechanical means" are vague and ambiguous and numerous other terms in this definition are vague and ambiguous to the extent that compliance with the definition would become intolerably burdensome, expensive and time-consuming and the production of information subject to this definition would be overly broad and would call for information that is not discoverable. Any attempt to separate, parse out or search for "documents" using each individual term in the definition would be unduly burdensome and extraordinarily time-consuming and expensive and would cause the response to discovery to be nearly impossible. Additionally, the use of this definition would not be possible with respect to numerous requests and would put the Defendant at an unfair disadvantage in attempting to respond to the discovery as submitted using this definition.

(D)    "Identify," "identity" or "identification" - (5). This Defendant objects to Definition (D)(5). There are terms in Definition (D)(5) which are ambiguous and vague and require clarification. The definition calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. The definition in (D)(5) might call for information that is subject to the attorney-client privilege, the executive privilege or the work product exception to the Rules of Discovery. The term "nature of the act" is vague and ambiguous. The term "joining in the act" is vague and ambiguous.

## OBJECTIONS TO INSTRUCTIONS

(A)    Counsel for Defendant objects to Instruction (A) to the extent that it seeks a reason for the inability to provide a complete answer. To the best of this Defendant's ability, a complete answer will be provided, however, the term "complete" can sometimes be a subject of controversy or concerning which there is a difference of opinion or an answer may be given by the Defendant in good faith believing it is complete which must be supplemented based upon newly remembered or discovered information. This instruction is inconsistent with the *Federal Rules of Civil Procedure* which considers and provides for the question of "completeness."

(B)    Counsel for Defendant objects to Instruction (B) to the extent that it seeks supplementation up until the time a Final Judgment is rendered in the case. If information is found which would be appropriate for supplementation of a prior response, then supplementation would be made, if possible, however, there could be times when supplementation would not be possible prior to the issuance of a Final Judgment. For example, counsel should not be required to supplement in the middle of the trial of a case when time is precious, even though, of course, in many situations informal supplementation can be and to the extent possible will be provided by way of advising counsel of the substance of newly discovered

information and/or the providing of a newly found document. Nevertheless, to the extent that this instruction provides that supplementation should be made up until the time of Final Judgment, this Defendant objects.

## RESPONSES TO INTERROGATORIES

**Interrogatory No. 1:**    Please identify every individual who provided any answers or assistance for your response to these Interrogatories, including the individual's address, telephone number and, if applicable, position with the Alabama Department of Mental Health and Mental Retardation.

**Response:**    My lawyer assisted me in the process of answering by reviewing the questions with me and providing legal explanation to any questions I may have had.

**Interrogatory No. 2:**    Please state your correct name, date of birth, social security number, driver's license number, residence address and work address.

**Objection of Counsel:**    Counsel for Defendant objects to this interrogatory to the extent it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. Moreover, Defendant specifically objects to providing his Social Security Number and Driver's License Number in that provision of such information is or could lead to an invasion of privacy. My Social Security Number and Driver's License Number are confidential. Subject to and without waiving the foregoing objections, please see Response.

**Response:**    Subject to the foregoing objections, my correct name is Otha R. Dillihay, Sr., my current address is 210 Hamptons Grant Court, Columbia, South Carolina. I am currently employed by the Richland County, South Carolina School District as their Human Resource Director.

**Interrogatory No. 3:** Please provide a summary of your educational background including the names and addresses of all schools you have attended, the dates of attendance, all degrees awarded and areas of study or major.

**Response:**    Please see my resume which is being produced by my lawyers.

**Interrogatory No. 4:** Please provide a summary of your employment history as an adult, including the names and addresses of the place of employment, the dates of employment, your immediate supervisor, and job positions held or areas of responsibility, or both.

**Response:**    Please see my resume. Please also see the following:

    April 2007 to August 2007
        Program / Policy Analyst Consultant
        D.C. Government Department on Disabilities Services

Washington, D.C.

Responsible for directing and coordinating projects and work functions on behalf of the Director; developing special projects and programs for the purpose of improving agency program operation and services to customers; identifying actual or potential problem areas and developing corrective actions to remedy deficiencies in program areas; acting as a liaison between the Director, agency management and human resource staff; and providing training technical assistance, and guidance in operations, information systems, policy and budgetary preparations.

June 2004 - April 2007
    Associate Commissioner, Division of Administration
    Alabama Department of Mental Health and Mental Retardation
    Montgomery, Alabama

    I was responsible for the management and supervision of a division which included finance, Medicaid administration, human resources, information technology, contracts, staff development and training, residential facility licensing and certification and real estate.

January 2001 - January 2004
    Director, Board of Directors Palmetto Health Alliance
    Corporate Office Taylor and Sumter Streets
    Columbia, South Carolina

    I was responsible for developing policy for the hospital system in the area of corporate and audit compliance; leading the strategic planning efforts for the Board and participating as a member of the Executive Compensation, finance and Community Services Committees.

August 1999 - March 2003
    Deputy Director for Administration
    South Carolina Department of Juvenile Justice
    101 Executive Center Drive
    Columbia, South Carolina

    I directed an administrative infrastructure to support the agency's mission and ensure accountability. I was responsible for setting administrative policy and efficiently managed administrative systems including: budget, finance, medicaid, administration, contracts, grants administration, engineering, physical plant and support service, finance, information resource technology and human resources. I was responsible for managing the oversight, design and construction of three

evaluation centers and two school projects. I was also responsible for managing the agency's $100 million dollar budget and developed the agency's HIPAA and corporate compliance programs. I also served as the agency's legislative liaison to the South Carolina legislature.

November 1994 - August 1999
       Hospital Administrator
       South Carolina Department of Mental Health
       2414 Bull Street
       Columbia, SC

In my capacity as Hospital Administrator, I was responsible for the management and operation for a 288-bed psychiatric hospital and a 166-bed medical/surgical hospital. In my capacity as Hospital Administrator, I was responsible for redesigning the hospitals JCAHO, HIPAA, and corporate compliance programs. I also directed the hospital's licensure, Medicare, and Medicaid surveys, and led efforts to close warehouse operations and convert the delivery system for hospital supplies.

November 1993 - October 1994
       Director of Hospital Mortgage Insurance
       U.S. Department of Housing and Urban Development
       451 7th Street
       Washington, D.C.

In my capacity as Director of Hospital Mortgage Insurance I was responsible for developing new agency policy and directing the activities for a broad insurance program for hospitals and other health care facilities.

January 1990 - November 1993
       Business Manager/Chief Financial Officer
       Crafts-Farrow State Hospital
       4900 Farrow Road
       Columbia, SC

I was responsible for managing the business office and serving as assistant hospital administrator for a 600-bed hospital. Also, I managed the construction for new inpatient unit.

1991

      Executive Assistant to the State Commissioner
      South Carolina Department of Mental Health
      Columbia, SC

August 1988 - December 1989

      Project Coordinator/ Director to Continuity of Care
      G. Werber Bryan Psychiatric Hospital
      Columbia, SC

      In my responsibilities as Project Coordinator/Director of Continuity Care I was
      responsible for developing a patient management system for the hospital and to
      improve service delivery.

**Interrogatory No. 5:** Have you ever been a plaintiff or defendant in another lawsuit, whether civil, criminal, divorce, family, etc.? If so, please state the style of the case, including the court where filed, the substance of the claims, and the final outcome, if any.

**Objection of Counsel:**     **Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope. Moreover, Defendant objects to this request to the extent it not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific time frame and to information relevant to this claims and/or defenses presented in this litigation, this Defendant will respond to this request at that time.**

**Interrogatory No. 6:** Please identify all communications between you and Plaintiff Joan Faulk Owens concerning the incident and events made the basis of the Complaint, the date of such communications, the substance of such communications and all witnesses thereto.

**Response:**    To the best of my knowledge and recollection at this time, I have not had any communications with the Plaintiff Joan Owens concerning the incident and events alleged in her Complaint.

**Interrogatory No. 7:** Please identify all communications between you and Plaintiff Karen Lynn Hubbard concerning the incident and events made the basis of the Complaint, the date of such communications, the substance of such communications and all witnesses thereto.

**Response:**    To the best of my knowledge and recollection at this time, I have not had any communications with the Plaintiff Karen Lynn Hubbard concerning the incident and events that are the basis of her Complaint.

**Interrogatory No. 8:** Please identify all communications between you and anyone other than Joan Owens and Lynn Hubbard, concerning either Joan Owens or Karen Lynn Hubbard, or both, and the incident and events made the basis of the Complaint, giving the date of such communications, the substance of such communications and all witnesses thereto.

**Objection of Counsel:**    **Counsel for Defendant objects to Interrogatory No. 8 on the basis that it is overly broad, unduly burdensome, and not reasonably limited in time or scope. The Interrogatory is so broad that it is vague. Moreover, Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information which is relevant and/or admissible regarding the claims and defenses presented in this action. Specifically, Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the stated objections, please see the Response.**

**Response:**    As Assistant Commissioner for Administration of the Alabama Department of Mental Health and Mental Retardation, I was involved in and generally served on a number of committees and attended meetings wherein topics like substitution, creation of new exempt positions and the value of having obtained a Bachelor's Degree for persons serving in certain jobs were discussed. I do not at this time remember "all" conversations I had regarding these things. I believe that none of these topics were discussed specifically regarding Ms. Owens or Ms. Hubbard in connection with the job of Departmental Assistant Personnel Manager or any other job for that matter. Your question is broad and your Complaint contains many allegations. Therefore, if you could make the question more specific, I will make appropriate responses to the question.

I do remember that I spoke with Henry Ervin, June Lynn and Commissioner John Houston regarding creation and establishment of the exempt position of Departmental Assistant Personnel Manager. The organizational structure of the Central Personnel Department was a topic of discussion with one or more of the above. There was discussion about progress needed in the Central Personnel Department. Both Commissioners, Kathy Sawyer and John Houston, raised the need to improve the overall effectiveness of the Central Personnel Department. I believe that none of these discussions dealt with Ms. Owens or Ms. Hubbard.

In my duties as Associate Commissioner for Administration, I routinely met with Mr. Ervin regarding the organization and functioning of the Central Personnel Department. In our many meetings, we at times, discussed the strategic planning element of the Personnel Department and the needs of the Department as well as the staff's ability to meet those needs. I do not remember specifically when the creation, establishment and filling of the Departmental Assistant Personnel Manager's position was discussed in our many meetings although this was discussed in conjunction with the general structure that was at that time in place in the Personnel Department. It is possible we discussed each person working in Personnel, including Ms. Owens and Ms. Hubbard in conjunction with the overall structure and efficiency of the Personnel Department, but I have no recollection at this time of discussing either Ms. Owens or Ms. Hubbard in conjunction with the issues raised in their Complaint.

During my tenure as Associate Commissioner, my Assistant was June Lynn. Although, I do not specifically remember each and every conversation I had with Ms. Lynn regarding the Personnel Department, I do recall that we did speak regarding the Department. I have no recollection at this time of speaking with her about Ms. Owens or Ms. Hubbard regarding the matters alleged in the Complaint.

Additionally, I routinely met with Commissioner Houston in my duties as Associate Commissioner. As I indicated earlier, we generally discussed the need to increase the effectiveness of the Personnel Department. Although I do not remember each and every specific conversation with Commission Houston, I do know that we discussed the creation, establishment and filling of the exempt position of Departmental Assistant Personnel Manager. To the best of my recollection at this time, I do not recall speaking to him about Ms. Owens or Ms. Hubbard in connection with this position or regarding any other matter that they raise in their Complaint.

Additionally, the position of Departmental Assistant Personnel Manager, as well as the substitution policy and requirements for degrees, were discussed in Job Evaluation Committee meetings. I was a member of the JEC. In JEC meetings, many topics like substitution, college degrees and matters of this type were discussed, but I do not recall discussing Ms. Owens or Ms. Hubbard regarding these things in these meetings. These issues were discussed in relation to serving the best interests of the Alabama Department of Mental Health and Mental Retardation and, thereby, to serving the best interests of the Department's patients and the people of the State. At this time I cannot recall other topics of note or other persons I spoke with, but if I do remember any, I will advise my lawyer so he may take whatever action is appropriate.

**Interrogatory No. 9:** Please provide a detailed list of your job responsibilities as Associate Commissioner of Administration of the Department of Mental Health and Mental Retardation of the State of Alabama.

**Response:** In a general sense, my job responsibilities as Associate Commissioner were as follows:

a. Develops, plans, implements, and directs functions of the Administrative Service Division.
b. Directs, supervises, and evaluates division and bureau staff.
c. Prepares division's budget.
d. Administers and monitors division's budget.
e. Monitors and ensures department/divisional compliance with applicable laws.
f. Develops, implements and ensures compliance with policies and procedures.
g. Interfaces with other state and federal agencies.
h. Advises the Commissioner so that maximum resources, services, and information are provided.
i. Conducts, attends and participates in divisional and staff committees, etc.

j.    Manages and coordinates divisional/departmental functions related to performance based budget.

**Interrogatory No. 10:**    Please describe in detail your meetings or communications, or both, with either Plaintiff Joan Faulk Owens and/or Plaintiff Karen Lynn Hubbard, concerning the creation of the specifications for the non-merit position of Departmental Assistant Personnel Manager, and any objection(s) made by Owens or Hubbard thereto.

**Response:**    To the best of my recollection at this time, I did not have any meetings or communications with either Ms. Joan Faulk Owens or Ms. Karen Lynn Hubbard concerning the creation of the specifications for the non-merit position of Departmental Assistant Personnel Manager or any objection(s) made by Owens or Hubbard.

**Interrogatory No. 11:**    Please describe in detail any meetings, conversations, e-mails, correspondence, telephone conversations or any other methods of communication whatsoever, you had with any and all Defendants concerning the creation of the position of Departmental Assistant Personnel Manager, and the development of specifications and hiring process for filling such position.

**Objection of Counsel:**    **Counsel for Defendant objects to Interrogatory No. 11 on the basis it is overly broad, unduly burdensome, not reasonably limited in time or scope. Moreover, Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information which is relevant and/or admissible regarding the claims and defenses presented in this action. Specifically, Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the stated objections, please see the Response.**

**Response:**    My lawyer has advised me that my responses to this question should not include privileged information. Therefore, following my lawyer's instructions, I have made these answers. Please refer to my response to Interrogatory No. 8 above regarding meetings and/or conversations, including telephone conversations, that I had with any of the other Defendants in this matter regarding the creation of the position of Departmental Assistant Personnel Manager, and the development of specifications and hiring process for filling such position. I believe I did receive the specification draft from Henry Ervin. I may have reviewed more than one draft. I would have made comments back to Henry Ervin, but at this time, I do not recall the specifics of the comments. I approved the specification when Mr. Ervin completed it.

Specifically regarding the creation and development of specifications of the position, I do know that I did discuss with Mr. Ervin, Commissioner Houston and June Lynn that an Assistant Manager position for any agency division, particularly in an agency the complexity and size of the Department of Mental Health and Mental Retardation, should be filled by an individual with a Bachelor's Degree, but that a Master's Degree would be preferred. I was not involved in the application review process, the selection of the Interview Committee or the interviews themselves,

although I did recommend in general with both Commissioner Houston and Henry Ervin that the interview committee should contain an individual from outside the Department of Mental Health and Mental Retardation.

**Interrogatory No. 12:**    Please describe in detail any meetings, conversations, e-mails, correspondence, telephone conversations or any other methods of communication whatsoever, you had with any individual not a defendant in this case, concerning the creation of the position of Departmental Assistant Personnel Manager, and the development of specifications and hiring process for filling such position.

**Objection of Counsel:**    **Counsel for Defendant objects to Interrogatory No. 12 on the basis it is overly broad, unduly burdensome, not reasonably limited in time or scope. Moreover, Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information which is relevant and/or admissible regarding the claims and defenses presented in this action. Specifically, Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, please see the Response.**

**Response:**    Please refer to my responses to Interrogatories Nos. 8 and 11 which are incorporated herein by reference.

**Interrogatory No. 13:**    Have you ever been warned, reprimanded, disciplined or otherwise subjected to any adverse employment action for any reason? If so, please state the following:

      a.    the type of adverse employment action taken, i.e., reprimand, warning, discipline, involuntary leave, etc.;
      b.    the date of such action; and
      c.    the reason for such action.

**Objection of Counsel:**    **Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope. Moreover, Defendant objects to this request to the extent it not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific time frame and to information relevant to this claims and/or defenses presented in this litigation, this Defendant will respond to this request at that time.**

**Interrogatory No. 14:**    Identify the factual basis for any and all defenses you have asserted in your Answer to the Complaint filed by Joan Owens and Lynn Hubbard.

**Objection of Counsel:**    **Counsel objects to this Interrogatory in that discovery has not been completed and this response cannot be fully made at this time.**

**Interrogatory No. 15:**    Have you ever been accused of discrimination by anyone, whether employment or race related or otherwise? If your answer is affirmative, then state the following:

  a.   The name and address of the person making the accusation;
  b.   The date, nature and substance of the accusation;
  c.   Whether the accusation was investigated by anyone; and
  d.   The results of the investigation or resolution of the accusation, or both.

**Objection of Counsel:**    **Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope. Moreover, Defendant objects to this request to the extent it not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific time frame and to information relevant to this claims and/or defenses presented in this litigation, this Defendant will respond to this request at that time.**

**Interrogatory No. 16:**    Have you ever been terminated, asked to resign or otherwise been compelled to leave (if not otherwise asked to leave) any past employment? If your answer is affirmative, please give the name of the employer and explain the basis for the termination, resignation, etc.

**Objection of Counsel:**    **Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope. Moreover, Defendant objects to this request to the extent it not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific time frame and to information relevant to this claims and/or defenses presented in this litigation, this Defendant will respond to this request at that time.**

**Interrogatory No. 17:**    State the name, address, background training and work experience, including any specialties, of each person you intend to call or may call as a witness in the trial of this case.

  a.   State the substance of the testimony you expect to be given by each such witness; and
  b.   State on which claim(s) or issue(s) you propose to call each such witness.

**Objection of Counsel:**    **Counsel for Defendant objects to Interrogatory No. 17 because it is overly broad, unduly burdensome, and not reasonably limited in time or scope including a reasonable definition of similarity. Moreover, Counsel for Defendant objects to this request to the extent this request is not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. Counsel for Defendant objects to this request in that it seeks information which is protected by the attorney client privilege**

**and/or work product doctrine. Subject to and without waiving the foregoing objections, please see the Response.**

**Response:**    Other than myself and the other defendants listed in this action, I believe the following individuals may be called as witnesses in this matter:

a.    June Lynn
Ms. Lynn is Executive Assistance to the Associate Commissioner for Administration, David Bennett. At relevant time periods to this litigation, Ms. Lynn was the Executive Assistant to the Associate Commissioner of Administration Otha Dillihay. Also, she was at one time acting Associate Commissioner for Administration of the ADMH/MR. Ms. Lynn is an attorney and, in my view, her role at ADMH/MR while working with me included rendering legal advice to the Associate Commissioner of Administration. Therefore, some of Ms. Lynn's knowledge may fall within the scope of various privileges, including, without limitation, the attorney client and work product privileges and potentially others. These privileges are not waived by listing Ms. Lynn as a potential witness herein but to the contrary, these privileges are specifically reserved.

b.    David Bennett.
Mr. Bennett is the Associate Commissioner for Administration of the Alabama Department of Mental Health and Mental Retardation. Mr. Bennett was a member of the interview committee that evaluated and interviewed candidates for the position of ADMH/MR Departmental Assistant Personnel Manager.

c.    Paul Bisbee
Mr. Bisbee was a member of the Job Evaluation Committee for the ADMH/MR.

d.    Susan Chambers
Ms. Chambers was a member of the Job Evaluation Committee for the ADMH/MR. Ms. Chambers was also Facilities Director for Greil Memorial Psychiatric Hospital.

e.    Charles Day
Mr. Day was a member of the Job Evaluation Committee for the ADMH/MR.

f.    Jackie Graham
Ms. Graham was the Deputy Director of the State Personnel Department.

g.    Kent Hunt
Mr. Hunt is the Associate Commissioner of the ADMH/MR Substance Abuse Division. Mr. Hunt is a member of the ADMH/MR Job Evaluation Committee and was also a member of the interview committee that evaluated and interviewed

candidates for the position of ADMH/MR Departmental Assistant Personnel Manager.

h.    Judith Johnston
Ms. Johnston was a member of the Job Evaluation Committee.

i.    Doug Lunsford
Mr. Lunsford was a member of the interview committee that evaluated and interviewed candidates for the position of ADMH/MR Departmental Assistant Personnel Manager. Mr. Lunsford is the Manager of Special Projects for the State Personnel Department.

j.    Mike Mathis
Mr. Mathis is the Personnel Director for the Partlow Center in Tuscaloosa, Alabama which is a facility of the ADMH/MR. Mr. Mathis was responsible for advertising the position of Departmental Assistant Personnel Manager and responsible for evaluating applications.

k.    Eranell McIntosh-Wilson
Ms. Wilson was the Associate Commissioner of the Division of Mental Retardation of the ADMH/MR. She was also a member of the Job Evaluation Committee at ADMH and was a member of the interview committee that evaluated and interviewed candidates for the position of ADMH/MR Departmental Assistant Personnel Manager.

Please note that all individuals listed above are employees of the Department of Mental Health and Mental Retardation or another State agency. As such, contact information has not been provided for these individuals. Any contact of the above listed individuals should be done through my counsel of record, Chip Nix and/or Brandy Price. Additionally, I do reserve the right to supplement this witness list as discovery in this matter is ongoing.

**Interrogatory No. 18:**    If you expect to call or may call an expert witness in the trial of this case, state with respect to each such expert the following:

a.    His or her name, residence address, telephone number and employer;
b.    The subject matter to which he or she is expected to testify;
c.    The substance of the facts and opinions to which he or she is expected to testify;
d.    A summary of the grounds for each opinion;
e.    His or her education and experience or other background which you contend qualifies such person to testify as an expert witness on the matters referred to in your answers to this Interrogatory; and

f.      List all publications, speeches, presentations, articles, or similar material ever made or written by said expert or experts.

**Response:**      My lawyers will provide a list of expert witnesses in accordance with the Federal Rules of Civil Procedure and/or any scheduling order entered in this action.

**Interrogatory No. 19:**      Please identify all communications you have had with any representative of the Equal Employment Opportunity Commission ("EEOC") regarding the matter alleged in the Complaint, giving the date of the communication, the nature and substance of the communication, and the name and telephone number of the representative(s) with whom you communicated.

**Response:**      I have not personally had any communications with anyone at the EEOC.

**Interrogatory No. 20.**      Please identify all witnesses to any and all events alleged in the Complaint, and your defenses thereto, giving the name and the address of the witness, and the event or matter witnessed by each person identified.

**Response:**      I have previously provided a list of witnesses through my counsel of record in the Initial Disclosures filed in this matter. Additionally, I provided information in response to Interrogatory No. 17. As previously stated, I do reserve the right to supplement my witness list as discovery is ongoing.

**Interrogatory No. 21:**      Please identify all persons who you believe may have any knowledge whatsoever regarding the claims made the basis of the Complaint or your defenses thereto, or both, giving the name and address of the person and the nature or extent of his or her knowledge.

**Response:**      I have previously provided list of witnesses through my counsel of record in the Initial Disclosures filed in this matter. Additionally, I previously provided a list of witnesses in response to Interrogatory No. 17. As previously stated, I do reserve the right to supplement my witness list as discovery is ongoing.

## RESPONSES TO REQUESTS FOR PRODUCTION

**General Response:**      I am no longer an employee of the ADMH/MR. I have no documents responsive to these requests.

**Request No. 1:**      All documents which pertain to or reference Joan Owens or Lynn Hubbard, or both.

**Response:**      None.

**Request No. 2:**     All documents which pertain to any and all events, matters and allegations made the basis of the Complaint.

**Response:**     None.

**Request No. 3:**     All documents which support or reference any and all defenses asserted by you or your Co-Defendants to the Complaint.

**Response:**     None.

**Request No. 4:**     All audiotapes, videotapes, or other recordings of any conversation which pertain to or reference Joan Owens or Lynn Hubbard, or both.

**Response:**     None.

**Request No. 5:**     All audiotapes, videotapes, or other recordings of any conversation which pertain to or reference any and all events, matters and allegations made the basis of the Complaint.

**Response:**     None.

**Request No. 6:**     All audiotapes, videotapes, or other recordings of any conversation which pertain to or reference any and all defenses asserted by your or your Co-Defendants to the Complaint.

**Response:**     None.

**Request No. 7:**     All documents which relate to or reference the creation and development of specifications for non-merit or merit employee positions, or both, with the Alabama Department of Mental Health and Mental Retardation.

**Response:**     None.

**Request No. 8:**     All documents which relate to or reference the creation, development of specifications and filling of the position of Departmental Assistant Personnel Manager.

**Response:**     None.

**Request No. 9:**     Any document relied upon, referred to, or identified in your Answers to Interrogatories served simultaneously herewith.

**Response:**     None.

**Request No. 10:**     A copy of all documents that substantiate, concern or are related to your response to Plaintiffs' Interrogatories.

**Response:**    None.

**Request No. 11:**    All documents referenced, viewed, or relied upon in any way in the preparation of your answers to these Interrogatories.

**Response:**    None.

**Request No. 12:**    All documents which relate to or reference Marilyn Benson.

**Response:**    None.

**Request No. 13:**    All documents which relate to or reference Henry Ervin.

**Response:**    None.

**Request No. 14:**    All documents which relate to or reference John Houston.

**Response:**    None.

**Request No. 15:**    All documents which relate to or reference any and all personnel decisions and actions you have taken concerning the Department of Human Resources of the Alabama Department of Mental Health and Mental Retardation.

**Response:**    None.

**Request No. 16:**    All job specifications and job opening notices regarding positions with the Department of Human Resources of the Alabama Department of Mental Health and Mental Retardation [for] the past ten (10) years.

**Response:**    None.

**Request No. 17:**    Your most recent resume or curriculum vitae.

**Response:**    See my personnel file.

**Request No. 18:**    All documents submitted to or received from the Equal Employment Opportunity Commission.

**Response:**    None.

**Request No. 19:**    A copy of your file concerning the Equal Employment Opportunity Commission's investigation of the matters alleged in the Complaint.

**Response:**    None.

**Request No. 20:**   Any and all reports, correspondence or documents which have been prepared by any person in connection with or relating to this lawsuit or the alleged incident(s) giving rise to this lawsuit.

**Objection of Counsel:**   **Counsel for Defendant objects to this request in that it calls for the production of privileged documents.  Subject to and without waiving the foregoing objection, please see the response.**

**Response:**   None.

**Request No. 21:**   All documents reflecting communications between you and any person concerning or relating to the claims alleged in this action, including, without limitation, communications with any parties to this action, any governmental employees or agency representatives, media outlets, family members, business colleagues, your co-workers at the Alabama Department of Mental Health and Mental Retardation, or any representatives of such persons.

**Objection of Counsel:**   **Counsel for Defendant objects to this Request in that it calls for the production of privileged documents.  Subject to and without waiving the foregoing objection, please see the response.**

**Response:**   None.

**Request No. 22:**   Any written statements taken by you, your attorneys or your investigators from any and all witnesses to the events, matters and claims in the Complaint.

**Objection of Counsel:**   **Counsel for Defendant objects to this Request in that it calls for the production of privileged documents.  Subject to and without waiving the foregoing objection, please see the response.**

**Response:**   None.

**Request No. 23:**   Any and all photographs or videotapes of any alleged incident(s) or circumstances(s) giving rise to this lawsuit or relating to the events, matters and claims in the Complaint.

**Response:**   None.

**Request No. 24:**   Copies of any and all tape recordings, video cassette recordings or other magnetic media that may contain recordings of statements or accounts made by any person, including parties, pertaining or relating in any way to the events, matters and claims in the Complaint.

**Response:**   None.

**Request No. 25:**   Any and all documents that were referenced, viewed, identified, or relied upon in anyway in the preparation of your answers to this Discovery, or that relate to the allegations in the Complaint and/or your defenses thereto.

**Response:**    None.

**Request No. 26:**    Copies of any curriculum vitae of any expert witnesses you plan to call at the trial of this case.

**Response:**    None.

**Request No. 27:**    Copies of any and all reports rendered by any expert whom you have consulted or whom you expect to call as an expert witness at the trial of this case.

**Response:**    None.

**Request No. 28:**    A copy of all textbooks, journal articles, treatises, etc., being used in support of any opinions expressed in this case regarding the events, matters and allegations in the Complaint and/or your defenses thereto.

**Response:**    None.

**Request No. 29:**    A copy of all documents or other tangible items that you intend or expect to use as an exhibit at the trial of this matter.

**Response:**    None.

**Request No. 30:**    All documents from any Defendant in this case, regarding any events, matters and claims made the basis of the Complaint and/or your defenses thereto.

**Response:**    None.

**Request No. 31:**    All documents which refer, relate to or pertain to your employment with the Alabama Department of Mental Health and Mental Retardation.

**Response:**    None.

**Request No. 32:**    All diaries, calendars, memos or other chronologies or summaries of events, written or otherwise, maintained by you or in your possession, relating or referring to any parties and/or events, matters or claims in the Complaint.

**Response:**    None.

**Request No. 33:**    All court orders, complaints, petitions, judgments, releases, settlement agreements, or covenants asserting, disposing of, resolving or referring to any legal claim, or potential claim, made by or against you, or on behalf of you.

**Response:**    None.

**Request No. 34:**    All documents received by or given to you from any local, state, or federal agency, office, department or official which refer, relate or pertain to any matter set forth in the Complaint, the allegations made therein and/or your defenses thereto.

**Response:**    None.

**Request No. 35:**    All documents which refer, relate or pertain to any and all charges, petitions, grievances, complaints or lawsuits ever filed by or against you concerning any alleged discrimination.

**Response:**    None.

**Request No. 36:**    Please produce all of your personnel files and personnel records concerning your employment with any and all employers during the last twenty (20) years.

**Response:**    None.

**Request No. 37:**    Please produce your driver's license or a photocopy of same.

**Objection of Counsel:**    Counsel for Defendant objects to this request in that it seeks Confidential information.

**Request No. 38:**    Please produce all forms, applications, questionnaires, complaints, letters, filings or other documents you completed or provided to the EEOC regarding any claim of discrimination filed by or against you, and all documents which you received from the EEOC regarding same.

**Response:**    None.

_____
H.E. ~~NIX, JR. (NIX007)~~
BRANDY F. PRICE (PRI079)
Counsel for Defendants

OF COUNSEL:
*Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.*
P.O. Box 4128
Montgomery, AL 36103-4128
334-215-8585
334-215-7101 - facsimile
cnix@nixholtsford.com
bprice@nixholtsford.com

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing instrument has been served (a) through the Court's e-filing system; (b) by placing a copy of same in the United States Mail, postage prepaid and properly addressed; and/or (c) by personal/firm e-mail to

J. Flynn Mozingo, Esq.
*Melton, Espy & Williams, P.C.*
P. O. Drawer 5130
Montgomery, AL 36103-5130

Courtney W. Tarver, Esq.
Deputy Atty. General and Gen. Counsel
Bureau of Legal Services
ADMH/MR
RSA Union Building
100 N. Union Street
Montgomery, AL 36130-1410

on this the 2ᵈ day of _April_ , 2007.

_B. J. Price_
OF COUNSEL

## VERIFICATION

STATE OF _South Carolina_

COUNTY OF _Richland_

PERSONALLY appeared before me, the undersigned authority in and for the said county and state, the within named Otha Dillihay, who states upon his oath that he is duly authorized to execute Responses to Plaintiff's Interrogatories, in the matter styled *Joan Owens and Karen Lynn Hubbard v. State of Alabama Department of Mental Health and Mental Retardation, et al.*, and being 2:07-cv-650, in the United States District Court for the Middle District of Alabama, Northern Division. These responses are based upon and are limited by the records and information still in existence and located in the course of preparing of these answers. Upon information and belief and subject to the limitations set forth herein, the answers are true and correct as therein stated.

This the 25 day of _March_, 2008.

_Otha Dillihay_

Otha Dillihay

SWORN TO and SUBSCRIBED before me this the 25TH day of _MARCH_, 2008.

[Seal]

NOTARY PUBLIC
My commission expires: 9-12-2015

**Otha R. Dillihay, Sr.**
**210 Hamptons Grant Ct.**
**Columbia, SC 29209**
**(803) 776-2651 (Home)**
**(334) 669-3694 (Cell)**

## WORK EXPERIENCE

2007 to Present

**Program/Policy Analyst Consultant, DC Government**
**Department on Disabilities Services**
**Washington, DC**

Direct and coordinate Human Resource and Information Technology projects and work functions on behalf of the Director. Develop special projects and programs for the purpose of improving agency program operation, and services to customers. Identifies actual or potential problems areas and develops corrective actions to remedy deficiencies in program areas. Provide extensive liaison responsibilities between the Director, agency management and human resources staff. Assist in providing technical assistance and guidance in operations, policy and budgetary preparations.

2004 to 2007

**Associate Commissioner, Division of Administration**
**Alabama Department of Mental Health and Mental Retardation**
**Montgomery, Alabama**

Responsible for all aspects of administration, finance, Medicaid administration, human resources information technology, certification and support for a state agency that provides mental health services through a statewide delivery system. Develop administrative policy and provide management and oversight of contracts for community-based services, residential care, facility physical plant maintenance and support, child and adolescent programs and educational and treatment services. The agency employs approximately 3000 individuals and has a budget of $700 million dollars. Responsibilities include dealing effectively with boards and commissions, community based advocacy groups, organized labor, state, federal and local governments. Supervise the Departments of Finance, procurement Human Resources, Staff Development and Training, Information Systems, Certification, Contract Administration, and Capital improvement. I am knowledgeable of all federal and state regulations governing the operations of health facilities and of the JCAHO and CARF accreditation process.

2001 to 2004

**Director, Board of Directors Palmetto Health Alliance**
**Columbia, South Carolina**

Developed policy and directed the strategic planning, corporate and audit compliance for the largest hospital system in South Carolina. Member of the Executive Compensation, Finance and Community Services Committees.

| 1999 to 2003 | **Deputy Director for Administration,**<br>**SC Dept. of Juvenile   Justice**<br>**Columbia, South Carolina** |
|---|---|

Responsible for the efficient management and supervision of all Department of Juvenile Justice's administrative systems including: Budget, Finance, Medicaid, Administration, Contracts, Grants Administration, Engineering Physical Plant and Support Services, Finance, Information Resource Technology, and Human Resources. I directed an administrative infrastructure to support the agency's mission to ensure accountability.  I also managed the agency's $100 million budget and $13 million Medicaid Program.  Directed the agency's HIPAA compliance program and served as agency's legislative liaison.

| 1994 - 1999 | **Hospital Administrator**<br>South Carolina Department of Mental Health<br>Columbia, South Carolina |
|---|---|

Chief Operating Officer for a 288 bed psychiatric hospital and a 166 bed medical/surgical hospital.  Supervised the following departments: Budget/Finance, Human Resources Medicaid Administration, Health Information Services, Outpatient Clinics, Supply and Services, Safety/Risk Management, Computer Services.  Directed the hospitals' JCAHO, HIPAA and corporate compliance programs.

| 1993 - 1994 | **Director Hospital Mortgage Insurance Staff**<br>U.S. Department of Housing and Urban Development<br>Washington, D.C. |
|---|---|

Developed policy and directed the activities for a bond insurance program for hospitals and other health care facilities.  Responsible for the management of a five billion dollar bond portfolio for the US government.  Bonds issued under the program enabled the construction or renovation for health care facilities in the U.S. and Puerto Rico.

| 1990 – 1993 | **Business Manager/Chief Financial Officer**<br>Crafts-Farrow State Hospital<br>Columbia, South Carolina |
|---|---|

| 1991 | **Executive Assistant to the State Commissioner**<br>South Carolina Department of Mental Health<br>Columbia, South Carolina |
|---|---|

| 1988 – 1989 | **Project Coordinator/Director Continuity of Care**<br>G. Werber Bryan Psychiatric Hospital Columbia, South Carolina. |
|---|---|

ADMH 01-05-00071

## EDUCATION

**Webster University,** St. Louis, Missouri, 1990
Masters Degree Business Administration

**South Carolina State University,** Orangeburg, South Carolina, 1988
Bachelor of Science Degree Business Administration

**University of South Carolina School of Law,** 1983-1985
Columbia, South Carolina

**Morehouse College,** Atlanta, Georgia, 1975
Economics

## LEADERSHIP TRAINING

**Leadership South Carolina,** 2003
University of South Carolina

**South Carolina Executive Institute,** 2001
South Carolina Budget and Control Board

**Executive Leadership Institute,** National Forum for Public Administrators, 1992
Harvard University

## BOARD SERVICE AND VOLUNTEER ACTIVITIES

- Director, Board of Directors, Palmetto Health Alliance, 2000-2004
- Trustee, Board of Trustees, Richland Memorial Hospital, 1999-2004
- Director, Board of Directors, Hospital Services Industries, Inc., 2000-2004
- Director, Board of Directors, South Carolina Cancer Center, 2002-2004
- Director, Board of Directors Mental Illness Recovery Center 1999 -2004
- Major, South Carolina State Guard, HQ, First Brigade 2005 -present
- Vice President, Board of Directors South Carolina Executive Institute Alumni   Association.
- Director, Board of Directors South Carolina Deputy Directors Organization, 2002-2004.

## HONORS AND CERTIFICATIONS

- Licensed Pilot, (Federal Aviation Administration)
- Graduate, South Carolina Executive Institute
- Graduate, Executive Leadership Institute (Harvard University)
- Graduate, Leadership South Carolina (University of South Carolina)
- Graduate, Facility Design and Construction (U.S. Department of Justice)
- Graduate, Project Blueprint Leadership Forum (United Way of America)
- Honorable Order of Arkansas Travelers
- Honorable Order of Kentucky Colonels
- President, Hand Educational Foundation
- Member, President's Cancer Panel, National Institute of Health
- Certified Rational Behavior Therapist

**Hobbies**

Aviation, Golf, Coin Collecting.

ADMH 01-05-00073

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOAN FAULK OWENS and<br>KAREN LYNN HUBBARD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:07-cv-650 |
| | ) | |
| STATE OF ALABAMA DEPT. OF<br>MENTAL HEALTH AND MENTAL<br>RETARDATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT HENRY ERVIN'S RESPONSES TO PLAINTIFFS' FIRST CONSOLIDATED DISCOVERY

COMES NOW Defendant Henry Ervin, by and through counsel, and responds to the

Plaintiff's First Consolidated Discovery as follows:

## OBJECTIONS TO DEFINITIONS

(B)    "You" - Counsel for Defendant objects to this definition as being overly broad and unduly burdensome and including descriptions of persons who could not or would not generally be considered within the definition of the word "you". The terms "agent," "experts," "witnesses at trial," "attorneys," and "people who have access to information" are all terms that are overly broad in this definition and that create a near impossibility of responding to discovery with the word "you" in that discovery as defined. The term "you" should be used in its common sense and Counsel respectfully states that any answer or response to any discovery item that contains the word "you" would include the party itself to whom the discovery is addressed and if the party to whom the discovery is addressed is the ADMH/MR, any employee of the party who could reasonably be expected to be included in that term.

(C)    "Document" and "documents" - Counsel for Defendant objects to the terms "document" and "documents" as defined in item (C) in these definitions and asserts that the definition as set forth in item (C) is overly broad and unduly burdensome. This definition calls for information that is irrelevant and not calculated to lead to the discovery of relevant information or evidence. The definition in item (C) would call for documents that are



protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. The term as defined would cause this Defendant to spend such an inordinate amount of money and time and would otherwise confuse the discovery process to the extent that the discovery itself would be fundamentally flawed and unfair. The terms "electronic, photographic or mechanical means" are vague and ambiguous and numerous other terms in this definition are vague and ambiguous to the extent that compliance with the definition would become intolerably burdensome, expensive and time-consuming and the production of information subject to this definition would be overly broad and would call for information that is not discoverable. Any attempt to separate, parse out or search for "documents" using each individual term in the definition would be unduly burdensome and extraordinarily time-consuming and expensive and would cause the response to discovery to be nearly impossible. Additionally, the use of this definition would not be possible with respect to numerous requests and would put the Defendant at an unfair disadvantage in attempting to respond to the discovery as submitted using this definition.

(D)     "Identify," "identity" or "identification" - (5). This Defendant objects to Definition (D)(5). There are terms in Definition (D)(5) which are ambiguous and vague and require clarification. The definition calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. The definition in (D)(5) might call for information that is subject to the attorney-client privilege, the executive privilege or the work product exception to the Rules of Discovery. The term "nature of the act" is vague and ambiguous. The term "joining in the act" is vague and ambiguous.

## OBJECTIONS TO
## INSTRUCTIONS

(A)     Counsel for Defendant objects to Instruction (A) to the extent that it seeks a reason for the inability to provide a complete answer. To the best of this Defendant's ability, a complete answer will be provided, however, the term "complete" can sometimes be a subject of controversy or concerning which there is a difference of opinion or an answer may be given by the Defendant in good faith believing it is complete which must be supplemented based upon newly remembered or discovered information. This instruction is inconsistent with the *Federal Rules of Civil Procedure* which considers and provides for the question of "completeness."

(B)     Counsel for Defendant objects to Instruction (B) to the extent that it seeks supplementation up until the time a Final Judgment is rendered in the case. If information is found which would be appropriate for supplementation of a prior response, then supplementation would be made, if possible, however, there could be times when supplementation would not be possible prior to the issuance of a Final Judgment. For example, counsel should not be required to supplement in the middle of the trial of a case when time is precious, even though, of course, in many situations informal supplementation can be and to the extent possible will be provided by way of advising counsel of the substance of newly discovered

information and/or the providing of a newly found document. Nevertheless, to the extent that this instruction provides that supplementation should be made up until the time of Final Judgment, this Defendant objects.

## RESPONSES TO INTERROGATORIES

**Interrogatory No. 1:** Please identify every individual who provided any answers or assistance for your response to these Interrogatories, including the individual's address, telephone number and, if applicable, position with the Alabama Department of Mental Health and Mental Retardation.

**Response:**    My lawyer assisted me in the process of answering by reviewing the questions with me and providing legal explanation to any questions I may have had.

**Interrogatory No. 2:** Please state your correct name, date of birth, social security number, driver's license number, residence address and work address.

**Objection of Counsel:**    **Counsel for Defendant objects to this interrogatory to the extent it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. Moreover, Defendant specifically objects to providing his Social Security Number and Driver's License Number in that provision of such information is or could lead to an invasion of privacy. My Social Security Number and Driver's License Number are confidential. Subject to and without waiving the foregoing objections, please see Response.**

**Response:**    My name is Henry Earl Ervin. My date of birth is December 27, 1944. My current address is 1600 Wakefield Drive, Tuscaloosa, AL 35405. I currently work at the Alabama Department of Mental Health located at 100 North Union Street, Montgomery, Alabama.

**Interrogatory No. 3:** Please provide a summary of your educational background including the names and addresses of all schools you have attended, the dates of attendance, all degrees awarded and areas of study or major.

**Response:**    a.    I attended Stillman College in Tuscaloosa, Alabama from September 1963 until November 1964 where I focused on the area of social sciences. I did not receive a degree from Stillman College.

b.    I attended Alabama State University from January 1968 until May 1971 where I majored in History and minored in social work. I received my Bachelor of Science degree from Alabama State University on May 28, 1971.

c.    I attended Nova University in Ft. Lauderdale, Florida from May 1974 until August 1976 where I studied public administration. I completed the

requirements for my Masters and Doctorate in Public Administration, however, I did not complete the comprehensive requirements.

**Interrogatory No. 4:** Please provide a summary of your employment history as an adult, including the names and addresses of the place of employment, the dates of employment, your immediate supervisor, and job positions held or areas of responsibility, or both.

**Response:**  Please see my resume which has been produced by my attorneys.

**Interrogatory No. 5:** Have you ever been a plaintiff or defendant in another lawsuit, whether civil, criminal, divorce, family, etc.? If so, please state the style of the case, including the court where filed, the substance of the claims, and the final outcome, if any.

**Objection of Counsel:**    **Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope. Moreover, Defendant objects to this request to the extent it not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific time frame and to information relevant to this claims and/or defenses presented in this litigation, this Defendant will respond to this request at that time.**

**Interrogatory No. 6:** Please identify all communications between you and Plaintiff Joan Faulk Owens concerning the incident and events made the basis of the Complaint, the date of such communications, the substance of such communications and all witnesses thereto.

**Objection of Counsel:**    **Counsel for Defendant objects to Interrogatory No. 6 on the basis that it is overly broad, unduly burdensome and requests information that is equally available and in possession of plaintiff Joan Faulk Owens. Moreover, due to the passage of time, this Defendant may not remember the date and exact subject matter of all communications with Ms. Owens concerning the incident and events made the basis of her Complaint.**

**Response:**    Subject to and without waiving the foregoing objections, I do remember announcing to all personnel department staff that we would be advertising and seeking applicants for the position of the Assistant Personnel Manager. Although, I do not remember the specific date of this staff meeting and any specific conversations or discussions with Ms. Owens during that particular staff meeting, I do believe Ms. Owens was present for the announcement.

Although, I do not remember the date, I do remember that Ms. Owens did approach me the same week sometime after the aforementioned staff meeting regarding the position announced. Our conversation was brief and concerned the specifications of the Assistant Manager's Position. Ms. Owens did express that she felt that she was put out of the running for this position because she did not possess a college degree, only a high school diploma. I then explained that it was determined

that this particular position did require a college degree and that the position would not contain a substitution provision.

I do not remember any other specific instances where I would have discussed the position and/or substitution provision with Ms. Owens. It is possible that Ms. Owens could have been present in a different staff meeting where the change in the substitution policy was discussed. Additionally, Ms. Owens often attended the facilities personnel managers' meetings where it is also possible that the change in the substitution provision was discussed.

**Interrogatory No. 7:** Please identify all communications between you and Plaintiff Karen Lynn Hubbard concerning the incident and events made the basis of the Complaint, the date of such communications, the substance of such communications and all witnesses thereto.

**Objection of Counsel:**    **Counsel for Defendant objects to Interrogatory No. 6 on the basis that it is overly broad, unduly burdensome and requests information that is equally available and in possession of plaintiff Karen Lynn Hubbard. Moreover, due to the passage of time, this Defendant may not remember the date and exact subject matter of all communications with Ms. Owens concerning the incident and events made the basis of her Complaint.**

**Response:**    Subject to and without waiving the foregoing objections, I do remember announcing to all personnel department staff that we would be advertising and seeking applicants for the position of the Assistant Personnel Manager. Although, I do not remember the specific date of this staff meeting Ms. Hubbard was present for the announcement. I specifically remember that when the position was announced and the specifications discussed, that Ms. Hubbard raised questions regarding whether or not the position would contain a substitution provision. She provided her opinion that substitution should be allowed. I explained that the JEC was undergoing a review of all exempt positions that were open on a case by case basis, particularly higher level positions, and making a determining of whether or not substitution should be allowed. I explained that because this position was a high level management position, that it had been determined that substitution would not be allowed.

At some point, although I do not remember the specific date, I was provided a pink "message slip" by Ms. Hubbard. I do believe this occurred prior to the previously discussed staff meeting. Ms. Hubbard had taken a message from the State Personnel Department confirming that a job code had been assigned to the Assistant Manager's position. I did not have any conversation with Ms. Hubbard regarding this message or the position at that time. I no longer have a copy of this message slip.

I do not remember any other specific instances where I would have discussed the position and/or substitution provision with Ms. Hubbard. It is possible that Ms. Hubbard could have been present in a different staff meeting where the change in the substitution policy was discussed. Additionally, Ms. Hubbard often attended the facilities personnel managers' meeting where it is also possible that the change in the substitution provision was discussed.

**Interrogatory No. 8:** Please identify all communications between you and anyone other than Joan Owens and Lynn Hubbard, concerning either Joan Owens or Karen Lynn Hubbard, or both, and the incident and events made the basis of the Complaint, giving the date of such communications, the substance of such communications and all witnesses thereto.

**Objection of Counsel:**      **Counsel for Defendant objects to Interrogatory No. 8 on the basis that it is overly broad, unduly burdensome, and not reasonably limited in time or scope. The Interrogatory is so broad that it is vague. Moreover, Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information which is relevant and/or admissible regarding the claims and defenses presented in this action. Specifically, Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the stated objections, please see the Response.**

**Response:**      Subject to and without waiving the foregoing objections, I do not remember each and every conversation and/or date of such conversations that I had concerning Ms. Owens or Ms. Hubbard and the incident and events made the basis of the Complaint.   However, I was involved with conversations regarding Ms. Owens' and Ms. Hubbard's concerns and/or complaints regarding this position with Commissioner Houston, Associate Commissioner Dillihay, June Lynn, and Marilyn Benson.

        I do remember speaking with Mr. Dillihay and June Lynn, Assistant to the Associate Commissioner, after the Central Office Personnel Staff Meeting wherein I announced the position of Assistant Personnel Manager to all Central Office Staff based on Ms. Owens' and Ms. Hubbard's reactions and questions regarding the position and its lack of substitution provision.  We discussed the concerns that were raised by Ms. Owens and Ms. Hubbard, but both agreed that due to the management level of this particular position and the increasing demands on the Personnel Department and overall need to strengthen the department as a whole, that this particular position did require a college degree.

        As part of my duties, I weekly meet with Commissioner Houston.  My meetings with the Commissioner are standing meetings and take place every Tuesday at 9:30. I do believe that in some of these meetings that we did discuss the position, the change in substitution provision and the concerns raised by Ms. Owens and Ms. Hubbard.  However, there was agreement that due to the management level of this particular position and the increasing demands on the Personnel Department and overall need to strengthen the department as a whole, that this particular position did require a college degree.  As a matter of general discussion during my weekly meetings with the Commissioner, we would continue ongoing discussions that could have involved this particular position.   I also believe that we discussed when to announce the position which was eventually determined to be announced when the new budget for the year 2006 would go into effect.

        I also did speak with June Lynn on a separate occasion.  I was informed by Ms. Lynn that Ms. Owens had approached her in her capacity as acting Associate Commissioner to change the

specifications allowing for substitution.. Ms. Lynn indicated that she explained to Ms. Owens that she could not do this and agreed that the position did require a college degree. During this time period, Mr. Dillihay had been temporarily reassigned to the Mental Illness Division due to the needs of that particular department at that time. Ms. Lynn was appointed acting Associated Commissioner in Mr. Dillihay's absence.

I reserve the right to supplement my response.

**Interrogatory No. 9:** Please provide a detailed list of your job responsibilities as the Director of Human Resources of the Department of Mental Health and Mental Retardation of the State of Alabama.

**Response:**     Please refer to my personnel file, which I understand has been produced in response to discovery sent to the Department as a whole.

**Interrogatory No. 10:**     Please describe in detail your meetings or communications, or both, with either Plaintiff Joan Faulk Owens and/or Plaintiff Karen Lynn Hubbard, concerning the creation of the specifications for the non-merit position of Departmental Assistant Personnel Manager, and any objection(s) made by Owens or Hubbard thereto.

**Objection of Counsel:**     Counsel for Defendant objects to this request on the basis that it is overly broad, unduly burdensome and requests information that is equally available and in possession of plaintiff Joan Faulk Owens and Karen Lynn Hubbard. Moreover, due to the passage of time, this Defendant may not remember the date and exact subject matter of all communications with Ms. Owens and Ms. Hubbard concerning the creation of the specifications for the non-merit position of Departmental Assistant Personnel Manager, and any objection(s) made by Owens or Hubbard .

**Response:**     Subject to and without waiving the foregoing objections, please see my responses to Interrogatories No. 6 and No. 7 which are incorporated and adopted herein by reference.

**Interrogatory No. 11:**     Please describe in detail any meetings, conversations, e-mails, correspondence, telephone conversations or any other methods of communication whatsoever, you had with any and all Defendants concerning the creation of the position of Departmental Assistant Personnel Manager, and the development of specifications and hiring process for filling such position.

**Objection of Counsel:**     Counsel for Defendant objects to Interrogatory No. 11 on the basis it is overly broad, unduly burdensome, not reasonably limited in time or scope. Moreover, Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information which is relevant and/or admissible regarding the claims and defenses presented in this action. Specifically, Defendant objects to this request in that it seeks

**information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the stated objections, please see the Response.**

**Response:**    Subject to the foregoing objections, I spoke with Commissioner Houston, Associate Commissioner Dillihay, June Lynn in her official capacity as Assistant to Associate Commissioner Dillihay and in her official capacity as Acting Associate Commissioner, Ms. Marilyn Benson, State Personnel, Mike Mathis, and Members of the JEC.

As I stated previously in my responses, I had a standing meeting with Commissioner Houston each Tuesday. As part of my general discussions with Mr. Houston on these days, we often discussed the strengths and weaknesses of the Personnel Department and ways to increase its effectiveness and meet the needs of the Department of Mental Health and all its many divisions. During these discussions, Mr. Houston was concerned with strengthening the department as a whole. We also discussed undertaking a wage and classification study. Due to the growing need to strengthen the department and the wage and classification study that was to be performed, we did discuss the creation of an Assistant Personnel Manager. I do believe that during some of these meetings, Mr. Dillihay was also present.

In my overall discussions with Commissioner Houston, Mr. Dillihay and Ms. Lynn, there was a consensus that due to the complexity of the Department of Mental Health, increasing demands on the personnel department and management level of the Assistant Manager Position, that a Bachelor's degree was needed and should be required for the position.

In order to establish the position, I did ask Marilyn Benson to assist me in gathering some research on comparable positions from other states as well as information on comparable positions from State Personnel. I also requested a Job Code number from State Personnel in order to establish the position, which Jackie Graham, Director of State Personnel approved.

Once I had reviewed the research compiled, I provided a copy of the specification for the position to Mr. Dillihay. Once the specification was complete, I forwarded the Form 40 to Mr. Dillihay and Finance to approve. Mr. Houston would then have approved the position.

Once the creation and establishment of the position had been approved by the Commissioner, the JEC did discuss and consider the timing of the announcement of the position. Based on the ending and beginning of the fiscal year, it was decided by the JEC to announce the position at the beginning of the fiscal year. As such, the first announcement was made on September 15, 2005.

Finally, I would have discussed the position, its specifications and the substitution issue with the Job Evaluation Committee. Under the direction of the Commissioner, the JEC was given the task and authority to review each and every position as announced to determine if substitution should be allowed and/or if substitution should apply to that position at all.

Additionally, it was my opinion and also determined in general discussions with Mr. Dillihay, Commissioner Houston and Ms. Lynn, that the grading of applications for this particular position should not be handled by Central Office Personnel due to the potential applicants in Central Office. I spoke with Mike Mathis, Personnel Manager at Partlow, requesting that he receive all applications for the position and be responsible for grading the applications and make the determination regarding which candidates were qualified for the position. I believe that Mr. Mathis also assisted in writing some of the interview questions for the panel. I have provided two emails from Mr. Mathis regarding the grading of applications in response to Plaintiffs' requests for production of documents.

I do remember having a specific conversation with Ms. Lynn discussing the makeup of the Interview Panel for this position. Ms. Lynn suggested using all Associate Commissioners for each division and/or facility and at least one individual from state personnel. I believe my conversations with Ms. Lynn were with her in her official capacity as Acting Associate Commissioner.

I do reserve the right to supplement this response.

**Interrogatory No. 12:**    Please describe in detail any meetings, conversations, e-mails, correspondence, telephone conversations or any other methods of communication whatsoever, you had with any individual not a defendant in this case, concerning the creation of the position of Departmental Assistant Personnel Manager, and the development of specifications and hiring process for filling such position.

**Objection of Counsel:**    Counsel for Defendant objects to Interrogatory No. 12 on the basis it is overly broad, unduly burdensome, not reasonably limited in time or scope. Moreover, Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information which is relevant and/or admissible regarding the claims and defenses presented in this action. Specifically, Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, please see the Response.

**Response:**    Please refer to my response to Interrogatory No. 11 which is incorporated by and adopted by reference herein.

**Interrogatory No. 13:**    Have you ever been warned, reprimanded, disciplined or otherwise subjected to any adverse employment action for any reason? If so, please state the following:

  a.    the type of adverse employment action taken, i.e., reprimand, warning, discipline, involuntary leave, etc.;
  b.    the date of such action; and
  c.    the reason for such action.

**Objection of Counsel:**    Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope. Moreover,

Defendant objects to this request to the extent it not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific time frame and to information relevant to this claims and/or defenses presented in this litigation, this Defendant will respond to this request at that time.

**Interrogatory No. 14:**    Identify the factual basis for any and all defenses you have asserted in your Answer to the Complaint filed by Joan Owens and Lynn Hubbard.

**Objection of Counsel:**    Counsel objects to this Interrogatory in that discovery has not been completed and this response cannot be fully made at this time.

**Interrogatory No. 15:**    Have you ever been accused of discrimination by anyone, whether employment or race related or otherwise? If your answer is affirmative, then state the following:

      a.    The name and address of the person making the accusation;
      b.    The date, nature and substance of the accusation;
      c.    Whether the accusation was investigated by anyone; and
      d.    The results of the investigation or resolution of the accusation, or both.

**Objection of Counsel: Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope. Moreover, Defendant objects to this request to the extent it not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific time frame and to information relevant to this claims and/or defenses presented in this litigation, this Defendant will respond to this request at that time.**

**Interrogatory No. 16:**    Have you ever been terminated, asked to resign or otherwise been compelled to leave (if not otherwise asked to leave) any past employment? If your answer is affirmative, please give the name of the employer and explain the basis for the termination, resignation, etc.

**Objection of Counsel: Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope. Moreover, Defendant objects to this request to the extent it not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific time frame and to information relevant to this claims and/or defenses presented in this litigation, this Defendant will respond to this request at that time.**

**Interrogatory No. 17:**    State the name, address, background training and work experience, including any specialties, of each person you intend to call or may call as a witness in the trial of this case.

      a.     State the substance of the testimony you expect to be given by each such witness; and

      b.     State on which claim(s) or issue(s) you propose to call each such witness.

**Objection of Counsel:**    **Counsel for Defendant objects to Interrogatory No. 17 because it is overly broad, unduly burdensome, and not reasonably limited in time or scope including a reasonable definition of similarity. Moreover, Counsel for Defendant objects to this request to the extent this request is not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. Counsel for Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, please see the Response.**

**Response:**    Other than myself and the other defendants listed in this action, I believe the following individuals may be called as witnesses in this matter:

      a.     June Lynn
              Ms. Lynn is Executive Assistant to the Associate Commissioner for Administration, David Bennett. At relevant time periods to this litigation, Ms. Lynn was the Executive Assistant to the Associate Commissioner of Administration Otha Dillihay. Also, she was at one time acting Associate Commissioner for Administration of the ADMH/MR.

      b.     David Bennett
              Mr. Bennett is currently the Associate Commissioner for Administration of the Alabama Department of Mental Health and Mental Retardation. Mr. Bennett was a member of the interview committee that evaluated and interviewed candidates for the position of ADMH/MR Assistant Personnel Director.

      c.     Paul Bisbee
              Mr. Bisbee was a member of the Job Evaluation Committee for the ADMH/MR at times relevant to this action.

      d.     Susan Chambers
              Ms. Chambers was a member of the Job Evaluation Committee for the ADMH/MR. Ms. Chambers was also Facilities Director for Greil Memorial Psychiatric Hospital. She is currently the Associate Commissioner for Mental Illness.

      e.     Charles Day
              Mr. Day was a member of the Job Evaluation Committee for the ADMH/MR.

f.   Jackie Graham
     Ms. Graham was the Deputy Director of the State Personnel Department at all times
     relevant to this action. She is currently Director of the State Personnel Department.

g.   Kent Hunt
     Mr. Hunt is the Associate Commissioner of the ADMH/MR Substance Abuse
     Division. Mr. Hunt is a member of the ADMH/MR Job Evaluation Committee and
     was also a member of the interview committee that evaluated and interviewed
     candidates for the position of ADMH/MR Assistant Personnel Director.

h.   Judith Johnston
     Ms. Johnston was a member of the Job Evaluation Committee. She was Director of
     Mental Retardation facilities until her retirement.

i.   Doug Lunsford
     Mr. Lunsford was a member of the interview committee that evaluated and
     interviewed candidates for the position of ADMH/MR Assistant Personnel Director.
     Mr. Lunsford is the Manager of Special Projects for the State Personnel
     Department.

j.   Mike Mathis
     Mr. Mathis is the Personnel Director for the Partlow Center in Tuscaloosa, Alabama
     which is a facility of the ADMH/MR. Mr. Mathis was responsible for advertising the
     position of Assistant Personnel Manager and responsible for evaluating applications.

k.   Eranell McIntosh-Wilson
     Ms. Wilson was the Associate Commissioner of the Division of Mental Retardation
     of the ADMH/MR at the time relevant to this action. She was also a member of the
     Job Evaluation Committee at ADMH and was a member of the interview committee
     that evaluated and interviewed candidates for the position of ADMH/MR Assistant
     Personnel Manager. Ms. Wilson is currently a Special Assistant to the
     Commissioner.

Please note that all individuals listed above are employees of the Department of Mental Health and
Mental Retardation or another State agency. As such, contact information has not been provided for
these individuals. Any contact of the above listed individuals should be done through my counsel
of record, Chip Nix and/or Brandy Price. Additionally, I do reserve the right to supplement this
witness list as discovery in this matter is ongoing.

**Interrogatory No. 18:**     If you expect to call or may call an expert witness in the trial of this
case, state with respect to each such expert the following:

a.   His or her name, residence address, telephone number and employer;

b.    The subject matter to which he or she is expected to testify;

c.    The substance of the facts and opinions to which he or she is expected to testify;

d.    A summary of the grounds for each opinion;

e.    His or her education and experience or other background which you contend qualifies such person to testify as an expert witness on the matters referred to in your answers to this Interrogatory; and

f.    List all publications, speeches, presentations, articles, or similar material ever made or written by said expert or experts.

**Response:**    My lawyers will provide a list of expert witnesses in accordance with the Federal Rules of Civil Procedure and/or any scheduling order entered in this action.  I have previously provided Plaintiff with a list of individuals believed to have knowledge regarding this matter in my Initial Disclosure Statement.  I do reserve the right to supplement my list as discovery continues.

**Interrogatory No. 19:**    Please identify all communications you have had with any representative of the Equal Employment Opportunity Commission ("EEOC") regarding the matter alleged in the Complaint, giving the date of the communication, the nature and substance of the communication, and the name and telephone number of the representative(s) with whom you communicated.

**Response:**    I have not personally had any communications with anyone at the EEOC.

**Interrogatory No. 20.**    Please identify all witnesses to any and all events alleged in the Complaint, and your defenses thereto, giving the name and the address of the witness, and the event or matter witnessed by each person identified.

**Response:**    I have previously provided a list of witnesses through my counsel of record in the Initial Disclosures filed in this matter.  Additionally, I provided information in response to Interrogatory No. 17. As previously stated, I do reserve the right to supplement my witness list as discovery is ongoing.

**Interrogatory No. 21:**    Please identify all persons who you believe may have any knowledge whatsoever regarding the claims made the basis of the Complaint or your defenses thereto, or both, giving the name and address of the person and the nature or extent of his or her knowledge.

**Response:**    I have previously provided list of witnesses through my counsel of record in the Initial Disclosures filed in this matter.  Additionally, I previously provided a list of witnesses in response to Interrogatory No. 17. As previously stated, I do reserve the right to supplement my witness list as discovery is ongoing.

## RESPONSES TO REQUESTS FOR PRODUCTION

**Request No. 1:**    All documents which pertain to or reference Joan Owens or Lynn Hubbard, or both.

**Objection of Counsel:**    Counsel for this Defendant objects to Request No. 1 in that it is **overly broad and unduly burdensome and calls for documents which are irrelevant or that are not calculated to lead to the discovery of relevant information or evidence. Further, Request No. 1 calls for documents that are protected by the attorney-client privilege, executive privilege and the work product exception to the Rules of Discovery.**

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 2:**    All documents which pertain to any and all events, matters and allegations made the basis of the Complaint.

**Objection of Counsel:**    Counsel for this Defendant objects to Request No. 2 in that it is **overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents. Additionally, Request No. 2 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.**

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 3:**    All documents which support or reference any and all defenses asserted by you or your Co-Defendants to the Complaint.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 3 in that it is overly **broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 3 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Additionally, discovery has only just begun and this request cannot be responded to until discovery is complete. Further, this request calls for documents that are potentially only in the possession of a Co-Defendant. Further, numerous documents of the ADMH/MR have been produced.**

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 4:**    All audiotapes, videotapes, or other recordings of any conversation which pertain to or reference Joan Owens or Lynn Hubbard, or both.

**Objection of Counsel:**    **Counsel for this Defendant objects to Request No. 4 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents. Additionally, Request No. 4 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.**

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 5:**    All audiotapes, videotapes, or other recordings of any conversation which pertain to or reference any and all events, matters and allegations made the basis of the Complaint.

**Objection of Counsel:**    **Counsel for this Defendant objects to Request No. 5 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents. Additionally, Request No. 5 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.**

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 6:**    All audiotapes, videotapes, or other recordings of any conversation which pertain to or reference any and all defenses asserted by your or your Co-Defendants to the Complaint.

**Objection of Counsel:**    **Counsel for Defendant objects to Request No. 6 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 6 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Additionally, discovery has only just begun and this request cannot be responded to until discovery is complete. Further, this request calls for documents that are potentially only in the possession of a Co-Defendant and, while this Defendant will produce documents that are not objectionable in this Defendant's possession or control that are responsive to this request, if any, this Defendant objects to producing or attempting to produce the described documents in the possession or control of any Co-Defendant.**

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 7:**    All documents which relate to or reference the creation and development of specifications for non-merit or merit employee positions, or both, with the Alabama Department of Mental Health and Mental Retardation.

**Objection of Counsel:**    **Counsel for Defendant objects to Request No. 7 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 7 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Additionally, this Request calls for documents concerning the "creation and development of specifications for non-merit or merit employee positions or both" which have no reference or relevance to the position in question in this case. Further, the request calls for the production of information that has no relationship to similar jobs to the one that is the subject of this case and said request has no time frame or time limitation with regard to it.**

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 8:**    All documents which relate to or reference the creation, development of specifications and filling of the position of Departmental Assistant Personnel Manager.

**Objection of Counsel:**    **Counsel for Defendant objects to Request No. 8 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 8 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Additionally, this Request calls for documents concerning the "creation and development of specifications for non-merit or merit employee positions or both" which have no reference or relevance to the position in question in this case. Further, the request calls for the production of information that has no relationship to similar jobs to the one that is the subject of this case and said request has no time frame or time limitation with regard to it.**

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 9:**    Any document relied upon, referred to, or identified in your Answers to Interrogatories served simultaneously herewith.

**Objection of Counsel:**    **Counsel for Defendant objects to Request No. 9 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 9 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.**

**Response:**    Subject to and without waiving the foregoing, please see my resume which has been produced. I did review a number of documents, all of which I understand from Counsel have been produced.

**Request No. 10:**    A copy of all documents that substantiate, concern or are related to your response to Plaintiffs' Interrogatories.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 10 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 10 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Further, because of the extreme breadth of the request for documents that substantiate, concern or relate to answers a response would require overly burdensome document review by counsel.

**Response:**    Subject to and without waiving the foregoing, please see my resume which has been produced. Further, I understand a substantial number of other documents have been produced.

**Request No. 11:**    All documents referenced, viewed, or relied upon in any way in the preparation of your answers to these Interrogatories.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 11 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 11 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.

**Response:**    Please see previous responses.

**Request No. 12:**    All documents which relate to or reference Marilyn Benson.

**Objection of Counsel:**    Counsel for this Defendant objects to Request No. 12 in that it is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Further, this request calls for documents that are protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. Additionally, this request contains no time restriction and no subject matter restriction or limitation. Further, this request is so broad that this Defendant could not respond because a search for any such information would involve so many employees of the Department and so many offices and divisions of the Department that it would be unduly burdensome to attempt to respond to the request as framed.

**Response:**    Subject to and without waiving the foregoing objections, I do not personally have any documents which relate to or reference Marilyn Benson.  I understand numerous ADMH/MR documents have been produced.

**Request No. 13:**    All documents which relate to or reference Otha Dillihay.

**Objection of Counsel:**    Counsel for this Defendant objects to Request No. 13 in that it is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence.  Further, this request calls for documents that are protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.  Additionally, this request contains no time restriction and no subject matter restriction or limitation.  Further, this request is so broad that this Defendant could not respond because a search for any such information would involve so many employees of the Department and so many offices and divisions of the Department that it would be unduly burdensome to attempt to respond to the request as framed.

**Response:**    Subject to and without waiving the foregoing objections, I do not personally have any documents which relate to or reference Otha Dillihay.  I understand numerous ADMH/MR documents have been produced.

**Request No. 14:**    All documents which relate to or reference John Houston.

**Objection of Counsel:**    Counsel for this Defendant objects to Request No. 14 in that it is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence.  Further, this request calls for documents that are protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.  Additionally, this request contains no time restriction and no subject matter restriction or limitation.  Further, this request is so broad that this Defendant could not respond because a search for any such information would involve so many employees of the Department and so many offices and divisions of the Department that it would be unduly burdensome to attempt to respond to the request as framed.

**Response:**    Subject to and without waiving the foregoing objections, I do not personally have any documents which relate to or reference John Houston.  I understand numerous ADMH/MR documents have been produced.

**Request No. 15:**    All documents which relate to or reference any and all personnel decisions and actions you have taken concerning the Department of Human Resources of the Alabama Department of Mental Health and Mental Retardation.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 15 in that it is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Further, this request calls for documents that are protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. Additionally, this request contains no time restriction and no subject matter restriction or limitation. Further, this request is so broad that this Defendant could not respond because a search for any such information would involve so many employees of the Department and so many offices and divisions of the Department that it would be unduly burdensome to attempt to respond to the request as framed.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 16:**    All job specifications and job opening notices regarding positions with the Department of Human Resources of the Alabama Department of Mental Health and Mental Retardation for the past ten (10) years.

**Objection of Counsel:**    Counsel for this Defendant objects to Request No. 16 in that this request is overly broad and unduly burdensome. This request calls for irrelevant information that is not calculated to lead to the discovery of relevant information or evidence. Further, this request is not limited to a reasonable time and seeks specifications that are not similar to the specifications for the job in question in this case.

**Response:**    Subject to and without waiving the foregoing objections, I have none personally. I understand numerous ADMH/MR documents have been produced.

**Request No. 17:**    Your most recent resume or curriculum vitae.

**Response:**    Please see my resume which has been produced.

**Request No. 18:**    All documents submitted to or received from the Equal Employment Opportunity Commission.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 19:**    A copy of your file concerning the Equal Employment Opportunity Commission's investigation of the matters alleged in the Complaint.

**Objection of Counsel:**    Counsel for this Defendant objects to Request No. 19 in that this request is overly broad and unduly burdensome. It calls for information that is not relevant and not calculated to lead to the discovery of relevant or admissible information. Additionally,

this request calls for the production of material that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**   Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 20:**   Any and all reports, correspondence or documents which have been prepared by any person in connection with or relating to this lawsuit or the alleged incident(s) giving rise to this lawsuit.

**Objection of Counsel:**   Counsel for Defendant objects to Request No. 20 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**   Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 21:**   All documents reflecting communications between you and any person concerning or relating to the claims alleged in this action, including, without limitation, communications with any parties to this action, any governmental employees or agency representatives, media outlets, family members, business colleagues, your co-workers at the Alabama Department of Mental Health and Mental Retardation, or any representatives of such persons.

**Objection of Counsel:**   Counsel for Defendant objects to Request No. 21 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**   Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 22:**   Any written statements taken by you, your attorneys or your investigators from any and all witnesses to the events, matters and claims in the Complaint.

**Objection of Counsel:**   Counsel for this Defendant objects to Request No. 22 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that

is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:** Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 23:** Any and all photographs or videotapes of any alleged incident(s) or circumstances(s) giving rise to this lawsuit or relating to the events, matters and claims in the Complaint.

**Objection of Counsel:** Counsel for Defendant objects to Request No. 23 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:** Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 24:** Copies of any and all tape recordings, video cassette recordings or other magnetic media that may contain recordings of statements or accounts made by any person, including parties, pertaining or relating in any way to the events, matters and claims in the Complaint.

**Objection of Counsel:** Counsel for this Defendant objects to Request No. 24 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:** Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 25:** Any and all documents that were referenced, viewed, identified, or relied upon in anyway in the preparation of your answers to this Discovery, or that relate to the allegations in the Complaint and/or your defenses thereto.

**Objection of Counsel:** Counsel for this Defendant objects to Request No. 25 in that this request is duplicative. Additionally, this request is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Further, this request calls for information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules

of Discovery. Additionally, this request calls for information that can only be provided at the conclusion of discovery.

**Response:**    Subject to and without waiving the foregoing objections, please see my resume which has been provided. I understand numerous ADMH/MR documents have been produced.

**Request No. 26:**    Copies of any curriculum vitae of any expert witnesses you plan to call at the trial of this case.

**Response:**    My lawyers will provide a list of expert witnesses and any information regarding expert witnesses in accordance with the Federal Rules of Civil Procedure and/or any scheduling order entered in this action.

**Request No. 27:**    Copies of any and all reports rendered by any expert whom you have consulted or whom you expect to call as an expert witness at the trial of this case.

**Response:**    My lawyers will provide a list of expert witnesses and any information regarding expert witnesses in accordance with the Federal Rules of Civil Procedure and/or any scheduling order entered in this action.

**Request No. 28:**    A copy of all textbooks, journal articles, treatises, etc., being used in support of any opinions expressed in this case regarding the events, matters and allegations in the Complaint and/or your defenses thereto.

**Response:**    My lawyers will provide a list of expert witnesses and any information regarding expert witnesses in accordance with the Federal Rules of Civil Procedure and/or any scheduling order entered in this action.

**Request No. 29:**    A copy of all documents or other tangible items that you intend or expect to use as an exhibit at the trial of this matter.

**Objection of Counsel:**    Counsel for Defendant objects to this Request. At this time, discovery has only just begun. As such, it would be impossible to designate what exhibits I shall use at the trial of this matter at this time. A list of exhibits will be provided in accordance with the Federal Rules of Civil Procedure and/or any scheduling order entered in this action.

**Request No. 30:**    All documents from any Defendant in this case, regarding any events, matters and claims made the basis of the Complaint and/or your defenses thereto.

**Objection of Counsel:**    Discovery has only just begun and this request cannot be responded to until discovery is complete. Further, this request calls for documents that are potentially only in the possession of a Co-Defendant and, while this Defendant will produce documents that are not objectionable in this Defendant's possession or control that are

responsive to this request, if any, this Defendant objects to producing or attempting to produce the described documents in the possession or control of any Co-Defendant.

**Request No. 31:**    All documents which refer, relate to or pertain to your employment with the Alabama Department of Mental Health and Mental Retardation.

**Response:**    I have none personally. I do not know who keeps my personnel file.

**Request No. 32:**    All diaries, calendars, memos or other chronologies or summaries of events, written or otherwise, maintained by you or in your possession, relating or referring to any parties and/or events, matters or claims in the Complaint.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 32 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**    Subject to and without waiving the foregoing objection, none.

**Request No. 33:**    All court orders, complaints, petitions, judgments, releases, settlement agreements, or covenants asserting, disposing of, resolving or referring to any legal claim, or potential claim, made by or against you, or on behalf of you.

**Objection of Counsel:**    Counsel for Defendant objects to Interrogatory No. 33 in it is vague and ambiguous. Additionally, the request for production seeks information concerning "any legal claim". Specifically, Counsel for Defendant objects in that the interrogatory calls for information that is not relevant and not calculated to lead to the discovery of relevant or admissible information or evidence. The question makes no reference to any specific type of discrimination or discrimination claim and does not confine the question to similar suits or claims. Similarity is not defined in the question. Further, the use of the terms "complaint" and "claims" are vague, ambiguous and overly broad and are so broad that ostensibly even a casual or purely oral "accusation" or informal writing might qualify as an complaint or claim. It would be impossible for this Defendant to respond to such a vague, ambiguous and broad question. Additionally, the question seeks information for an infinite period of time. This is excessive and not narrowly tailored, as such it is overly broad and unduly burdensome. Additionally, this question calls for information that is protected by the attorney-client and executive privilege and by the work product exception to discoverable information. Moreover, the request seeks information that is potentially confidential. Finally, any formal lawsuit filed is a matter of public record and equally available to plaintiffs.

**Request No. 34:**    All documents received by or given to you from any local, state, or federal agency, office, department or official which refer, relate or pertain to any matter set forth in the Complaint, the allegations made therein and/or your defenses thereto.

**Objection of Counsel:**    **Counsel for Defendant objects to Request No. 34 in that this request is overly broad and unduly burdensome. This request calls for irrelevant information that is not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents that are protected by the attorney-client privilege, executive privilege and the work product exception to the Rules of Discovery. Additionally, this request cannot be responded to until discovery is completed in the case.**

**Response:**    Subject to and without waiving the foregoing objections, I have none personally.  I understand numerous ADMH/MR documents have been produced.

**Request No. 35:**    All documents which refer, relate or pertain to any and all charges, petitions, grievances, complaints or lawsuits ever filed by or against you concerning any alleged discrimination.

**Objection of Counsel:**    **Counsel for Defendant objects to Request No. 35 in that this request is overly broad and unduly burdensome. This request calls for irrelevant information that is not calculated to lead to the discovery of relevant information or relevant evidence. This request calls for documents that are protected by the attorney-client privilege, executive privilege and the work product exception to the Rules of Discovery. Additionally, this request does not limit the production to a reasonable time and does not describe what counsel for the Plaintiffs considers similar and does not limit the request to similar complaints or lawsuits within a reasonable period of time. Further, the terms "charges, petitions and grievances" may or may not relate to purely oral matters not put in writing or may relate to matters not kept for any length of time by this Defendant. Additionally, assuming the request were limited to similar complaints or lawsuits within a reasonable time or similar charges, petitions or grievances within a reasonable time, said items could possibly exist in personnel files or in other places that would require this Defendant to make an effort to locate said items that would be unduly burdensome.**

**Response:**    Subject to and without waiving the foregoing objections, I have none personally.

**Request No. 36:**    Please produce all of your personnel files and personnel records concerning your employment with any and all employers during the last twenty (20) years.

**Response:**    I personally do not have a copy of my personnel file.

**Request No. 37:**    Please produce your driver's license or a photocopy of same.

**Objection of Counsel:**    Confidential.

Page 24 of  26

**Request No. 38:**    Please produce all forms, applications, questionnaires, complaints, letters, filings or other documents you completed or provided to the EEOC regarding any claim of discrimination filed by or against you, and all documents which you received from the EEOC regarding same.

**Response:**    None.

*[signature]*

H.E. NIX, JR. (NIX007)
BRANDY F. PRICE (PRI079)
Counsel for Defendants

OF COUNSEL:
*Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.*
P.O. Box 4128
Montgomery, AL 36103-4128
334-215-8585
334-215-7101 - facsimile
cnix@nixholtsford.com
bprice@nixholtsford.com

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing instrument has been served (a) through the Court's e-filing system; (b) by placing a copy of same in the United States Mail, postage prepaid and properly addressed; and/or (c) by personal/firm e-mail to

| | |
|---|---|
| J. Flynn Mozingo, Esq.<br>*Melton, Espy & Williams, P.C.*<br>P. O. Drawer 5130<br>Montgomery, AL 36103-5130 | Courtney W. Tarver, Esq.<br>Deputy Atty. General and Gen. Counsel<br>Bureau of Legal Services<br>ADMH/MR<br>RSA Union Building<br>100 N. Union Street<br>Montgomery, AL 36130-1410 |

on this the _____ day of ___April_____, 2008.

_____
OF COUNSEL

## VERIFICATION

STATE OF <u>ALABAMA</u>

COUNTY OF <u>Montgomery</u>

PERSONALLY appeared before me, the undersigned authority in and for the said county and state, the within named Henry Ervin, who states upon his oath that he is duly authorized to execute Responses to Plaintiff's Interrogatories, in the matter styled *Joan Owens and Karen Lynn Hubbard v. State of Alabama Department of Mental Health and Mental Retardation, et al.* and being **2:07-cv-650**, in the United States District Court for the Middle District of Alabama, Northern Division. These responses are based upon and are limited by the records and information still in existence and located in the course of preparing of these answers. Upon information and belief and subject to the limitations set forth herein, the answers are true and correct as therein stated.

This the 24th day of March , 2008.

_____
Henry Ervin

SWORN TO and SUBSCRIBED before me this the 24th day of March , 2008.

_____
NOTARY PUBLIC
My commission expires: 2/11/2012

# HENRY E. ERVIN, SR.
1600 Wakefield Drive
Tuscaloosa, Alabama 35405
(205) 752-3414

## EDUCATIONAL DATA

**Graduate School:**    Nova University, Fort Lauderdale, Florida
Public Administration Program
Attended from May 1974 – December 1976

**Undergraduate School:**    Alabama State University, Montgomery, Alabama
Bachelor of Science Degree received June 1971

## PROFESSIONAL EXPERIENCE

- **October 1998 – Current:**    State of Alabama
Department of Mental Health and Mental Retardation

    **Job Title:**    **Director of Human Resources Management**

    **Duties Performed:** Plans, directs and monitors the Human Resources so that the application and interpretation of the rules and regulations for Personnel Administration, applicable labor relations and other areas of administration are equitably performed including the enforcement of State and Federal rules and regulations within the limits of applicable statutes, policies, labor relations, both State and Federal, Departmental Policy and Procedures and supervisory guidelines.
    Advises Departmental administrators and employees so that there is a clear understanding of the classification, recruitment and selection process, including the application and interpretation of the rules, regulations, Departmental and State Personnel Policies and Procedures, federal and State laws for Personnel Administration, Labor contracts, EEOC and ADA requirements, FMLA, Employee Injury Program and other applicable activities.
    Serves as Liaison to the State Personnel Department, Federal and other State Agencies so that the Department maintains a communication link and is adequately represented, including receiving and providing information on current developments and practices in employment and labor relations, participate in conducting investigations of certain complaints filed against Departmental employees. Performs mediation activities when necessary

ADMH 01-04-00329

- **December 1990 – October 1998:**  Thomasville Mental Health and Rehabilitation Center

  **Job Title:**  **Director of Human Resource Management**

  **Duties Performed:**  Responsible for day to day operations of the Thomasville Mental Health Rehabilitation Center's personnel office, including policies and procedures, quality improvement, curriculum development, budget, recruitment, selection, placement, position classification, personnel transactions, training, employee and labor relations, performance evaluations, employee counseling affirmative action and personnel records.  Responsible for planning, organizing, developing, coordinating and implementing a comprehensive personnel management program.  Provided frequent advice and recommendations to the director or administrative supervisor on personnel needs, rules, policies and participate in the overall management process of the facility.  Provided supervision for the employee health and volunteer services programs.  Supervision was exercised over clerical and professional staff performing specialized assignments.

- **September 1988 – December 1990:**  Alabama Department of Mental Health/Mental Retardation
  Thomasville, Alabama

  **Job Title:**  **Mental Health Facility Advocate**

  **Duties Performed:**  Received and conducted investigations of complaints related to alleged violations of patient rights in the Department of Mental Health facility at Thomasville Mental Health Rehabilitation Center using state mental health procedures and guidelines.

- **May 1987 – September 1988:**  Alabama Department of Mental Health/Mental Retardation
  Thomasville, Alabama

  **Job Title:**  **Hearing Officer**

  **Duties Performed:**  Served as Hearing Officer under an independent contract for the Alabama Department of Mental Health/Mental Retardation.  This required hearing cases which were presented by labor unions representing the non-management employees of the Department of Mental Health and rendering decisions on those cases.

- **September 1980 – April 1987:**   Alabama Department of Mental Health/Mental Retardation
Montgomery, Alabama

    **Job Title:**   **Director of Personnel Services**

**Duties Performed:** Responsible for the day to day operations at the State Department of Mental Health's central personnel office, including managing all aspects of employment, recruitment, wage and salary administration and coordinating the merit system hiring process with the State personnel department. This position also entailed supervising an office of 10 professional and clerical personnel and a budget of $300,000.

- **September 1977 – August 1980:**   The Ohio State University Hospitals & College of Medicine
Columbus, Ohio

    **Job Title:**   **Associate Director of Hospital Personnel**

**Duties Performed:** Planned and carried out policies relating to all phases of personnel activities. Coordinated, developed and implemented policies and programs covering employment, wage and classification, personnel budgets, orientation and placement, benefits and employee compensation. Coordinated meetings and contract negotiations with the hospital's seven labor unions. Exercised general supervision of the hospital's recruitment programs. Functional and administrative supervision was exercised over department management and supervisory staff (4-6).

Employment beyond 1980 includes the following:

| | |
|---|---|
| **March 1973 – 1977** | **Director of Personnel and Support Services**<br>Palm Beach County Community Mental Health Center, West Palm Beach, Florida |
| **October 1971 – 1973:** | **Personnel Manager**<br>Ohio Medical Indemnity (Blue Shield)<br>Worthington, Ohio |
| **June – October 1971:** | **Employment Specialist III**<br>Ohio Bureau of Employment Services<br>Columbus, Ohio |

## MILITARY SERVICE

**December 1965 – October 1967**    Served as an enlisted man (Grade E-5) in the Republic of Vietnam with the 199th Lt. Infantry Brigade. Honorably discharged form active duty October 24, 1967.

## PROFESSIONAL AND CIVIC ORGANIZATION AFFILIATIONS

Board Chairman – The Montgomery Community Housing Resource Board (1983 –December 1988)

A graduate of Leadership Montgomery – First Class in 1985

Past member of Montgomery County Personnel Association

Member of KAPPA ALPHA PSI Fraternity, Inc. (Life Member)

Member of Masonic Lodge 520, Linden, Alabama

Member and Board of Deacons, First Baptist Church of Linden, Linden, Alabama

A member of the Advisory Board for the Alabama Department Youth Services REACH Program.

Member of the Linden City School Board (1998 - 2005)

Member of the Review Board for the Alabama Department of Risk Management.

## REFERENCES

Available upon request.

ADMH 01-04-00333

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **JOAN FAULK OWENS** and<br>**KAREN LYNN HUBBARD,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **2:07-cv-650** |
| | ) |
| **STATE OF ALABAMA DEPT. OF** | ) |
| **MENTAL HEALTH AND MENTAL** | ) |
| **RETARDATION,** *et al.,* | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANT MARILYN BENSON'S RESPONSES TO
## PLAINTIFFS' FIRST CONSOLIDATED DISCOVERY

COMES NOW Defendant Marilyn Benson, by and through counsel, and responds to the

Plaintiff's First Consolidated Discovery as follows:

## OBJECTIONS TO
## DEFINITIONS

(B)   "You" - Counsel for Defendant objects to this definition as being overly broad and unduly burdensome and including descriptions of persons who could not or would not generally be considered within the definition of the word "you". The terms "agent," "experts," "witnesses at trial," "attorneys," and "people who have access to information" are all terms that are overly broad in this definition and that create a near impossibility of responding to discovery with the word "you" in that discovery as defined. The term "you" should be used in its common sense and Counsel respectfully states that any answer or response to any discovery item that contains the word "you" would include the party itself to whom the discovery is addressed and if the party to whom the discovery is addressed is the ADMH/MR, any employee of the party who could reasonably be expected to be included in that term.

(C)   "Document" and "documents" - Counsel for Defendant objects to the terms "document" and "documents" as defined in item (C) in these definitions and asserts that the definition as set forth in item (C) is overly broad and unduly burdensome. This definition calls for information that is irrelevant and not calculated to lead to the discovery of relevant information or evidence. The definition in item (C) would call for documents that are


DEFENDANT'S
EXHIBIT

protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. The term as defined would cause this Defendant to spend such an inordinate amount of money and time and would otherwise confuse the discovery process to the extent that the discovery itself would be fundamentally flawed and unfair. The terms "electronic, photographic or mechanical means" are vague and ambiguous and numerous other terms in this definition are vague and ambiguous to the extent that compliance with the definition would become intolerably burdensome, expensive and time-consuming and the production of information subject to this definition would be overly broad and would call for information that is not discoverable. Any attempt to separate, parse out or search for "documents" using each individual term in the definition would be unduly burdensome and extraordinarily time-consuming and expensive and would cause the response to discovery to be nearly impossible. Additionally, the use of this definition would not be possible with respect to numerous requests and would put the Defendant at an unfair disadvantage in attempting to respond to the discovery as submitted using this definition.

(D)     "Identify," "identity" or "identification" - (5). This Defendant objects to Definition (D)(5). There are terms in Definition (D)(5) which are ambiguous and vague and require clarification. The definition calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. The definition in (D)(5) might call for information that is subject to the attorney-client privilege, the executive privilege or the work product exception to the Rules of Discovery. The term "nature of the act" is vague and ambiguous. The term "joining in the act" is vague and ambiguous.

## OBJECTIONS TO
## INSTRUCTIONS

(A)     Counsel for Defendant objects to Instruction (A) to the extent that it seeks a reason for the inability to provide a complete answer. To the best of this Defendant's ability, a complete answer will be provided, however, the term "complete" can sometimes be a subject of controversy or concerning which there is a difference of opinion or an answer may be given by the Defendant in good faith believing it is complete which must be supplemented based upon newly remembered or discovered information. This instruction is inconsistent with the *Federal Rules of Civil Procedure* which considers and provides for the question of "completeness."

(B)     Counsel for Defendant objects to Instruction (B) to the extent that it seeks supplementation up until the time a Final Judgment is rendered in the case. If information is found which would be appropriate for supplementation of a prior response, then supplementation would be made, if possible, however, there could be times when supplementation would not be possible prior to the issuance of a Final Judgment. For example, counsel should not be required to supplement in the middle of the trial of a case when time is precious, even though, of course, in many situations informal supplementation can be and to the extent possible will be provided by way of advising counsel of the substance of newly discovered

information and/or the providing of a newly found document. Nevertheless, to the extent that this instruction provides that supplementation should be made up until the time of Final Judgment, this Defendant objects.

## RESPONSES TO INTERROGATORIES

**Interrogatory No. 1:** Please identify every individual who provided any answers or assistance for your response to these Interrogatories, including the individual's address, telephone number and, if applicable, position with the Alabama Department of Mental Health and Mental Retardation.

**Response:**    My lawyer assisted me in the process of answering by reviewing the questions with me and providing legal explanation to any questions I may have had.

**Interrogatory No. 2:**    Please state your correct name, date of birth, social security number, driver's license number, residence address and work address.

**Objection of Counsel:**    **Counsel for Defendant objects to this interrogatory to the extent it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. Moreover, Defendant specifically objects to providing his Social Security Number and Driver's License Number in that provision of such information is or could lead to an invasion of privacy. My Social Security Number and Driver's License Number are confidential. Subject to and without waiving the foregoing objections, please see Response.**

**Response:**    My full name is Marilyn Berry Benson. My date of birth is July 18, 1959. I currently work at the Alabama Department of Mental Health located at 100 North Union Street, Montgomery, Alabama.    My current residence address is 1078 16th Place, Alexander City, Alabama 35010.

**Interrogatory No. 3:**    Please provide a summary of your educational background including the names and addresses of all schools you have attended, the dates of attendance, all degrees awarded and areas of study or major.

**Response:**    I attended the Auburn University at Montgomery where I received my Master's Degree in Public Administration in 1987. In 1981, I graduated from Auburn University receiving my Bachelor's Degree in Health Services Administration. Also, please see my resume which I understand was produced by ADMH/MR, as well as my personnel file.

**Interrogatory No. 4:**    Please provide a summary of your employment history as an adult, including the names and addresses of the place of employment, the dates of employment, your immediate supervisor, and job positions held or areas of responsibility, or both.

**Objection of Counsel:**    **Counsel for Defendant objects to this request to the extent it is overly broad, not reasonably limited in time or scope and not reasonably limited to discover information relevant to the claims and/or defenses presented in this action.**

**Response:**    Please refer to my resume which my attorneys have produced in response to Ms. Owen's and Ms. Hubbard's requests for production of documents.

**Interrogatory No. 5:**    Have you ever been a plaintiff or defendant in another lawsuit, whether civil, criminal, divorce, family, etc.? If so, please state the style of the case, including the court where filed, the substance of the claims, and the final outcome, if any.

**Objection of Counsel:**    **Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope. Moreover, Counsel for Defendant objects to this request to the extent it not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific time frame and to information relevant to this claims and/or defenses presented in this litigation, this Defendant will respond to this request at that time.**

**Interrogatory No. 6:**    Please identify all communications between you and Plaintiff Joan Faulk Owens concerning the incident and events made the basis of the Complaint, the date of such communications, the substance of such communications and all witnesses thereto.

**Response:**    To the best of my knowledge and recollection at this time, I have not had any communications with the Plaintiff Joan Owens concerning the incident and events alleged in her Complaint.

**Interrogatory No. 7:**    Please identify all communications between you and Plaintiff Karen Lynn Hubbard concerning the incident and events made the basis of the Complaint, the date of such communications, the substance of such communications and all witnesses thereto.

**Response:**    To the best of my knowledge and recollection at this time, I have not had any communications with the Plaintiff Karen Lynn Hubbard concerning the incident and events that are the basis of her Complaint.

**Interrogatory No. 8:**    Please identify all communications between you and anyone other than Joan Owens and Lynn Hubbard, concerning either Joan Owens or Karen Lynn Hubbard, or both, and the incident and events made the basis of the Complaint, giving the date of such communications, the substance of such communications and all witnesses thereto.

**Objection of Counsel:**    **Counsel for Defendant objects to Interrogatory No. 8 on the basis that it is overly broad, unduly burdensome, and not reasonably limited in time or scope. The Interrogatory is so broad that it is vague. Moreover, Counsel for Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information which is relevant and/or admissible regarding the claims and defenses presented in this action. Specifically, Counsel for Defendant objects to this request in that it seeks information which**

Page 4 of 22

is protected by the attorney client privilege and/or work product doctrine. **Subject to and without waiving the stated objections, please see the Response.**

**Response:**     Subject to and without waiving the foregoing objections, I do not remember each and every conversation and/or date of such conversations that I had concerning Ms. Owens or Ms. Hubbard and the incident and events made the basis of the Complaint.

**Interrogatory No. 9:** Please provide a detailed list of your job responsibilities as Assistant Personnel Manager of Human Resources of the Department of Mental Health and Mental Retardation of the State of Alabama.

**Response:**     Please refer to my personnel file which has been produced by my attorneys in response to Interrogatories propounded to ADMH/MR.

**Interrogatory No. 10:**     Please describe in detail your meetings or communications, or both, with either Plaintiff Joan Faulk Owens and/or Plaintiff Karen Lynn Hubbard, concerning the creation of the specifications for the non-merit position of Departmental Assistant Personnel Manager, and any objection(s) made by Owens or Hubbard thereto.

**Response:**     To the best of my recollection at this time, I did not have any meetings or communications with either Ms. Joan Faulk Owens or Ms. Karen Lynn Hubbard concerning the creation of the specifications for the non-merit position of Departmental Assistant Personnel Manager or any objection(s) made by Owens or Hubbard.

**Interrogatory No. 11:**     Please describe in detail any meetings, conversations, e-mails, correspondence, telephone conversations or any other methods of communication whatsoever, you had with any and all Defendants concerning the creation of the position of Departmental Assistant Personnel Manager, and the development of specifications and hiring process for filling such position.

**Objection of Counsel:**     **Counsel for Defendant objects to Interrogatory No. 11 on the basis it is overly broad, unduly burdensome, not reasonably limited in time or scope. Moreover, Counsel for Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information which is relevant and/or admissible regarding the claims and defenses presented in this action. Specifically, Counsel for Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the stated objections, please see the Response.**

**Response:**     Subject to and without waiving the foregoing objections, I did speak with Henry Ervin in his capacity as Director of Personnel regarding conducting research on positions comparable to the Assistant Manager's position.

Additionally, I also remember speaking with Ms. June Lynn in her capacity as Acting Associate Commissioner regarding the specifications and qualifications for this specific position.

I also spoke to Joel Rose, Manager of Classifications for the Georgia Department of Mental Health in order to obtain comparable wage and classification information, including qualifications, on positions comparable to the Assistant Personnel Manager position to assist Mr. Ervin in obtaining information for this position. Mr. Rose referred me to the Georgia Department of Mental Health Website which contained the information I was seeking. In addition, I also researched the websites from Tennessee and Florida Departments of Mental Health for information. I did not personally speak to anyone at the Tennessee or Florida offices for assistance.

Although, I do not specifically remember having conversations with any particular member of the Job Evaluation Committee, I was present as scribe/secretary for meetings in which the substitution provision was discussed in general and in which the position for Assistant Departmental Personnel Manager position was discussed. Any such discussions would be reflected in the JEC minutes. It is my understanding that the JEC minutes are being produced by the ADMH/MR.

**Interrogatory No. 12:**    Please describe in detail any meetings, conversations, e-mails, correspondence, telephone conversations or any other methods of communication whatsoever, you had with any individual not a defendant in this case, concerning the creation of the position of Departmental Assistant Personnel Manager, and the development of specifications and hiring process for filling such position.

**Objection of Counsel:**    **Counsel for Defendant objects to Interrogatory No. 12 on the basis it is overly broad, unduly burdensome, not reasonably limited in time or scope. Moreover, Counsel for Defendant objects to this request to the extent it is not reasonably calculated to lead to the discovery of information which is relevant and/or admissible regarding the claims and defenses presented in this action. Specifically, Counsel for Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, please see the Response.**

**Response:**    Please refer to my response to Interrogatory No. 8 and No. 11 which is incorporated by and adopted by reference herein.

**Interrogatory No. 13:**    Have you ever been warned, reprimanded, disciplined or otherwise subjected to any adverse employment action for any reason? If so, please state the following:

    a.    the type of adverse employment action taken, i.e., reprimand, warning, discipline, involuntary leave, etc.;

    b.    the date of such action; and

    c.    the reason for such action.

**Objection of Counsel:**      Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope. Moreover, Counsel for Defendant objects to this request to the extent it not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific time frame and to information relevant to this claims and/or defenses presented in this litigation, this Defendant will respond to this request at that time.

**Interrogatory No. 14:**      Identify the factual basis for any and all defenses you have asserted in your Answer to the Complaint filed by Joan Owens and Lynn Hubbard.

**Objection of Counsel:**      Counsel for Defendant objects to this Interrogatory in that discovery has not been completed and this response cannot be fully made at this time.

**Interrogatory No. 15:**      Have you ever been accused of discrimination by anyone, whether employment or race related or otherwise? If your answer is affirmative, then state the following:

a.    The name and address of the person making the accusation;
b.    The date, nature and substance of the accusation;
c.    Whether the accusation was investigated by anyone; and
d.    The results of the investigation or resolution of the accusation, or both.

**Objection of Counsel:**      Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope. Moreover, Counsel for Defendant objects to this request to the extent it not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific time frame and to information relevant to this claims and/or defenses presented in this litigation, this Defendant will respond to this request at that time.

**Interrogatory No. 16:**      Have you ever been terminated, asked to resign or otherwise been compelled to leave (if not otherwise asked to leave) any past employment? If your answer is affirmative, please give the name of the employer and explain the basis for the termination, resignation, etc.

**Objection of Counsel:**      Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, and is not reasonably limited in time or scope. Moreover, Counsel for Defendant objects to this request to the extent it not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. If Plaintiffs will narrow their request for information to a specific time frame and to information relevant to this claims and/or defenses presented in this litigation, this Defendant will respond to this request at that time.

**Interrogatory No. 17:**     State the name, address, background training and work experience, including any specialties, of each person you intend to call or may call as a witness in the trial of this case.

      a.     State the substance of the testimony you expect to be given by each such witness; and

      b.     State on which claim(s) or issue(s) you propose to call each such witness.

**Objection of Counsel:**     **Counsel for Defendant objects to Interrogatory No. 17 because it is overly broad, unduly burdensome, and not reasonably limited in time or scope including a reasonable definition of similarity. Moreover, Counsel for Defendant objects to this request to the extent this request is not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses presented in this action. Counsel for Defendant objects to this request in that it seeks information which is protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, please see the Response.**

**Response:**     Other than myself and the other defendants listed in this action, I believe the following individuals may be called as witnesses in this matter:

      a.     June Lynn
             Ms. Lynn is Executive Assistant to the Associate Commissioner for Administration, David Bennett. At relevant time periods to this litigation, Ms. Lynn was the Executive Assistant to the Associate Commissioner of Administration Otha Dillihay. Also, she was at one time acting Associate Commissioner for Administration of the ADMH/MR.

      b.     David Bennett.
             Mr. Bennett is currently the Associate Commissioner for Administration of the Alabama Department of Mental Health and Mental Retardation. Mr. Bennett was a member of the interview committee that evaluated and interviewed candidates for the position of ADMH/MR Assistant Personnel Manager.

      c.     Paul Bisbee
             Mr. Bisbee was a member of the Job Evaluation Committee for the ADMH/MR at times relevant to this action.

      d.     Susan Chambers
             Ms. Chambers was a member of the Job Evaluation Committee for the ADMH/MR. Ms. Chambers was also Facilities Director for Greil Memorial Psychiatric Hospital. She is currently the Associate Commissioner for Mental Illness.

      e.     Charles Day
             Mr. Day was a member of the Job Evaluation Committee for the ADMH/MR.

f.    Jackie Graham
      Ms. Graham was the Deputy Director of the State Personnel Department at all times
      relevant to this action. She is currently Director of the State Personnel Department.

g.    Kent Hunt
      Mr. Hunt is the Associate Commissioner of the ADMH/MR Substance Abuse
      Division. Mr. Hunt is a member of the ADMH/MR Job Evaluation Committee and
      was also a member of the interview committee that evaluated and interviewed
      candidates for the position of ADMH/MR Assistant Personnel Manager.

h.    Judith Johnston
      Ms. Johnston was a member of the Job Evaluation Committee. She was Director of
      Mental Retardation facilities until her retirement.

i.    Doug Lunsford
      Mr. Lunsford was a member of the interview committee that evaluated and
      interviewed candidates for the position of ADMH/MR Assistant Personnel Manager.
      Mr. Lunsford is the Manager of Special Projects for the State Personnel
      Department.

j.    Mike Mathis
      Mr. Mathis is the Personnel Director for the Partlow Center in Tuscaloosa, Alabama
      which is a facility of the ADMH/MR. Mr. Mathis was responsible for advertising the
      position of Assistant Personnel Manager and responsible for evaluating applications.

k.    Eranell McIntosh-Wilson
      Ms. Wilson was the Associate Commissioner of the Division of Mental Retardation
      of the ADMH/MR at the time relevant to this action. She was also a member of the
      Job Evaluation Committee at ADMH and was a member of the interview committee
      that evaluated and interviewed candidates for the position of ADMH/MR Assistant
      Personnel Manager.    Ms. Wilson is currently a Special Assistant to the
      Commissioner.

Please note that all individuals listed above are employees of the Department of Mental Health and
Mental Retardation or another State agency. As such, contact information has not been provided for
these individuals. Any contact of the above listed individuals should be done through my counsel
of record, Chip Nix and/or Brandy Price. Additionally, I do reserve the right to supplement this
witness list as discovery in this matter is ongoing.


**Interrogatory No. 18:**        If you expect to call or may call an expert witness in the trial of this
case, state with respect to each such expert the following:

a.  His or her name, residence address, telephone number and employer;
b.  The subject matter to which he or she is expected to testify;
c.  The substance of the facts and opinions to which he or she is expected to testify;
d.  A summary of the grounds for each opinion;
e.  His or her education and experience or other background which you contend qualifies such person to testify as an expert witness on the matters referred to in your answers to this Interrogatory; and
f.  List all publications, speeches, presentations, articles, or similar material ever made or written by said expert or experts.

**Response:**    My lawyers will provide a list of expert witnesses in accordance with the Federal Rules of Civil Procedure and/or any scheduling order entered in this action.

**Interrogatory No. 19:**    Please identify all communications you have had with any representative of the Equal Employment Opportunity Commission ("EEOC") regarding the matter alleged in the Complaint, giving the date of the communication, the nature and substance of the communication, and the name and telephone number of the representative(s) with whom you communicated.

**Response:**    I have not personally had any communications with anyone at the EEOC.

**Interrogatory No. 20.**    Please identify all witnesses to any and all events alleged in the Complaint, and your defenses thereto, giving the name and the address of the witness, and the event or matter witnessed by each person identified.

**Response:**    I have previously provided a list of witnesses through my counsel of record in the Initial Disclosures filed in this matter.  Additionally, I provided information in response to Interrogatory No. 17. As previously stated, I do reserve the right to supplement my witness list as discovery is ongoing.

**Interrogatory No. 21:**    Please identify all persons who you believe may have any knowledge whatsoever regarding the claims made the basis of the Complaint or your defenses thereto, or both, giving the name and address of the person and the nature or extent of his or her knowledge.

**Response:**    I have previously provided list of witnesses through my counsel of record in the Initial Disclosures filed in this matter.  Additionally, I previously provided a list of witnesses in response to Interrogatory No. 17. As previously stated, I do reserve the right to supplement my witness list as discovery is ongoing.

## RESPONSES TO REQUESTS FOR PRODUCTION

**Request No. 1:**    All documents which pertain to or reference Joan Owens or Lynn Hubbard, or both.

**Objection of Counsel:**    **Counsel for Defendant objects to Request No. 1 in that it is overly broad and unduly burdensome and calls for documents which are irrelevant or that are not calculated to lead to the discovery of relevant information or evidence. Further, Request No. 1 calls for documents that are protected by the attorney-client privilege, executive privilege and the work product exception to the Rules of Discovery.**

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 2:**    All documents which pertain to any and all events, matters and allegations made the basis of the Complaint.

**Objection of Counsel:**    **Counsel for Defendant objects to Request No. 2 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 2 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.**

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 3:**    All documents which support or reference any and all defenses asserted by you or your Co-Defendants to the Complaint.

**Objection of Counsel:**    **Counsel for Defendant objects to Request No. 3 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 3 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Additionally, discovery has only just begun and this request cannot be responded to until discovery is complete. Further, this request calls for documents that are potentially only in the possession of a Co-Defendant. Further, numerous documents of the ADMH/MR have been produced.**

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 4:**   . All audiotapes, videotapes, or other recordings of any conversation which pertain to or reference Joan Owens or Lynn Hubbard, or both.

**Objection of Counsel:**     **Counsel for Defendant objects to Request No. 4 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 4 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.**

**Response:**     Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 5:**     All audiotapes, videotapes, or other recordings of any conversation which pertain to or reference any and all events, matters and allegations made the basis of the Complaint.

**Objection of Counsel:**     **Counsel for Defendant objects to Request No. 5 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 5 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.**

**Response:**     Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 6:**     All audiotapes, videotapes, or other recordings of any conversation which pertain to or reference any and all defenses asserted by your or your Co-Defendants to the Complaint.

**Objection of Counsel:**     **Counsel for Defendant objects to Request No. 6 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents. Additionally, Request No. 6 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Additionally, discovery has only just begun and this request cannot be responded to until discovery is complete. Further, this request calls for documents that are potentially only in the possession of a Co-Defendant and, while this Defendant will produce documents that are not objectionable in this Defendant's possession or control that are responsive to this request, this Defendant objects to producing or attempting to produce the described documents in the possession or control of any Co-Defendant.**

**Response:**     Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 7:**    All documents which relate to or reference the creation and development of specifications for non-merit or merit employee positions, or both, with the Alabama Department of Mental Health and Mental Retardation.

**Objection of Counsel:**    **Counsel for Defendant objects to Request No. 7 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 7 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Additionally, this Request calls for documents concerning the "creation and development of specifications for non-merit or merit employee positions or both" which have no reference or relevance to the position in question in this case. Further, the request calls for the production of information that has no relationship to similar jobs to the one that is the subject of this case and said request has no time frame or time limitation with regard to it.**

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 8:**    All documents which relate to or reference the creation, development of specifications and filling of the position of Departmental Assistant Personnel Manager.

**Objection of Counsel:**    **Counsel for Defendant objects to Request No. 8 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 8 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Additionally, this Request calls for documents concerning the "creation and development of specifications for non-merit or merit employee positions or both" which have no reference or relevance to the position in question in this case. Further, the request calls for the production of information that has no relationship to similar jobs to the one that is the subject of this case and said request has no time frame or time limitation with regard to it.**

**Response:**    Subject to and without waiving the foregoing objections, to the best of my knowledge, none.

**Request No. 9:**    Any document relied upon, referred to, or identified in your Answers to Interrogatories served simultaneously herewith.

**Objection of Counsel:**    **Counsel for Defendant objects to Request No. 9 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 9 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.**

**Response:**    Subject to and without waiving the foregoing, please see my resume which has been produced. I did review a number of documents, all of which I understand from Counsel have been produced.

**Request No. 10:**    A copy of all documents that substantiate, concern or are related to your response to Plaintiffs' Interrogatories.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 10 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 10 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery. Further, because of the extreme breadth of the request for documents that substantiate, concern or relate to answers a response would require overly burdensome document review by counsel.

**Response:**    Subject to and without waiving the foregoing, please see my resume which has been produced. Further, I understand a substantial number of other documents have been produced.

**Request No. 11:**    All documents referenced, viewed, or relied upon in any way in the preparation of your answers to these Interrogatories.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 11 in that it is overly broad and unduly burdensome and calls for irrelevant documents and/or documents that are not calculated to lead to the discovery of relevant or admissible documents or information. Additionally, Request No. 11 calls for documents that are protected by the attorney-client privilege, the executive privilege and/or the work product exception to the Rules of Discovery.

**Response:**    Please see previous responses.

**Request No. 12:**    All documents which relate to or reference Henry Ervin.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 12 in that it is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Further, this request calls for documents that are protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. Additionally, this request contains no time restriction and no subject matter restriction or limitation. Further, this request is so broad that this Defendant could not respond because a search for any such information would involve so many employees of the Department and so many offices and divisions of the Department that it would be unduly burdensome to attempt to respond to the request as framed.

**Response:**    Subject to and without waiving the foregoing objections, I do not personally have any documents which relate to or reference Henry Ervin. I understand numerous ADMH/MR documents have been produced.

**Request No. 13:**    All documents which relate to or reference Otha Dillihay.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 13 in that it is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Further, this request calls for documents that are protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. Additionally, this request contains no time restriction and no subject matter restriction or limitation. Further, this request is so broad that this Defendant could not respond because a search for any such information would involve so many employees of the Department and so many offices and divisions of the Department that it would be unduly burdensome to attempt to respond to the request as framed.

**Response:**    Subject to and without waiving the foregoing objections, I do not personally have any documents which relate to or reference Otha Dillihay. I understand numerous ADMH/MR documents have been produced.

**Request No. 14:**    All documents which relate to or reference John Houston.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 14 in that it is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Further, this request calls for documents that are protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. Additionally, this request contains no time restriction and no subject matter restriction or limitation. Further, this request is so broad that this Defendant could not respond because a search for any such information would involve so many employees of the Department and so many offices and divisions of the Department that it would be unduly burdensome to attempt to respond to the request as framed.

**Response:**    Subject to and without waiving the foregoing objections, I do not personally have any documents which relate to or reference John Houston. I understand numerous ADMH/MR documents have been produced.

**Request No. 15:**    All documents which relate to or reference any and all personnel decisions and actions you have taken concerning the Department of Human Resources of the Alabama Department of Mental Health and Mental Retardation.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 15 in that it is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Further, this request calls for documents that are protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery. Additionally, this request contains no time restriction and no subject matter restriction or limitation. Further, this request is so broad that this Defendant could not respond because a search for any such information would involve so many employees of the Department and so many offices and divisions of the Department that it would be unduly burdensome to attempt to respond to the request as framed.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 16:**    All job specifications and job opening notices regarding positions with the Department of Human Resources of the Alabama Department of Mental Health and Mental Retardation [for] the past ten (10) years.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 16 in that this request is overly broad and unduly burdensome. This request calls for irrelevant information that is not calculated to lead to the discovery of relevant information or evidence. Further, this request is not limited to a reasonable time and seeks specifications that are not similar to the specifications for the job in question in this case.

**Response:**    Subject to and without waiving the foregoing objections, I have none personally. I understand numerous ADMH/MR documents have been produced.

**Request No. 17:**    Your most recent resume or curriculum vitae.

**Response:**    Please see my resume which has been produced.

**Request No. 18:**    All documents submitted to or received from the Equal Employment Opportunity Commission.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 19:**    A copy of your file concerning the Equal Employment Opportunity Commission's investigation of the matters alleged in the Complaint.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 19 in that this request is overly broad and unduly burdensome. It calls for information that is not relevant and not calculated to lead to the discovery of relevant or admissible information. Additionally,

this request calls for the production of material that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 20:**    Any and all reports, correspondence or documents which have been prepared by any person in connection with or relating to this lawsuit or the alleged incident(s) giving rise to this lawsuit.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 20 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 21:**    All documents reflecting communications between you and any person concerning or relating to the claims alleged in this action, including, without limitation, communications with any parties to this action, any governmental employees or agency representatives, media outlets, family members, business colleagues, your co-workers at the Alabama Department of Mental Health and Mental Retardation, or any representatives of such persons.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 21 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 22:**    Any written statements taken by you, your attorneys or your investigators from any and all witnesses to the events, matters and claims in the Complaint.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 22 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that

is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 23:**    Any and all photographs or videotapes of any alleged incident(s) or circumstances(s) giving rise to this lawsuit or relating to the events, matters and claims in the Complaint.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 23 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 24:**    Copies of any and all tape recordings, video cassette recordings or other magnetic media that may contain recordings of statements or accounts made by any person, including parties, pertaining or relating in any way to the events, matters and claims in the Complaint.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 24 in that this request is overly broad. Further, the request calls for the production of documents and information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents and information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules of Discovery.

**Response:**    Subject to and without waiving the foregoing objections, I have none in my personal possession. I understand numerous ADMH/MR documents have been produced.

**Request No. 25:**    Any and all documents that were referenced, viewed, identified, or relied upon in anyway in the preparation of your answers to this Discovery, or that relate to the allegations in the Complaint and/or your defenses thereto.

**Objection of Counsel:**    Counsel for Defendant objects to Request No. 25 in that this request is duplicative. Additionally, this request is overly broad and unduly burdensome and calls for information that is not relevant and not calculated to lead to the discovery of relevant information or evidence. Further, this request calls for information that is protected by the attorney-client privilege, the executive privilege and the work product exception to the Rules

of Discovery. **Additionally, this request calls for information that can only be provided at the conclusion of discovery.**

**Response:**    Subject to and without waiving the foregoing objections, please see my resume which has been provided. I understand numerous ADMH/MR documents have been produced.

**Request No. 26:**    Copies of any curriculum vitae of any expert witnesses you plan to call at the trial of this case.

**Response:**    My lawyers will provide a list of expert witnesses and any information regarding expert witnesses in accordance with the *Federal Rules of Civil Procedure* and/or any scheduling order entered in this action.

**Request No. 27:**    Copies of any and all reports rendered by any expert whom you have consulted or whom you expect to call as an expert witness at the trial of this case.

**Response:**    My lawyers will provide a list of expert witnesses and any information regarding expert witnesses in accordance with the *Federal Rules of Civil Procedure* and/or any scheduling order entered in this action.

**Request No. 28:**    A copy of all textbooks, journal articles, treatises, etc., being used in support of any opinions expressed in this case regarding the events, matters and allegations in the Complaint and/or your defenses thereto.

**Response:**    My lawyers will provide a list of expert witnesses and any information regarding expert witnesses in accordance with the *Federal Rules of Civil Procedure* and/or any scheduling order entered in this action.

**Request No. 29:**    A copy of all documents or other tangible items that you intend or expect to use as an exhibit at the trial of this matter.

**Objection of Counsel:**    **Counsel for Defendant objects to this Request. At this time, discovery has only just begun. As such, it would be impossible to designate what exhibits I shall use at the trial of this matter at this time. A list of exhibits will be provided in accordance with the *Federal Rules of Civil Procedure* and/or any scheduling order entered in this action.**

**Request No. 30:**    All documents from any Defendant in this case, regarding any events, matters and claims made the basis of the Complaint and/or your defenses thereto.

**Objection of Counsel:**    **Counsel for Defendant objects to this Request. At this time, discovery has only just begun and this request cannot be responded to until discovery is complete. Further, this request calls for documents that are potentially only in the possession of a Co-Defendant and, while this Defendant will produce documents that are not**

objectionable in this Defendant's possession or control that are responsive to this request, if any, this Defendant objects to producing or attempting to produce the described documents in the possession or control of any Co-Defendant.

**Request No. 31:**    All documents which refer, relate to or pertain to your employment with the Alabama Department of Mental Health and Mental Retardation.

**Response:**    I have none personally.  I do not know who keeps my personnel file.

**Request No. 32:**    All diaries, calendars, memos or other chronologies or summaries of events, written or otherwise, maintained by you or in your possession, relating or referring to any parties and/or events, matters or claims in the Complaint.

**Objection of Counsel:**    Counsel for Defendant objects to this request to the extent it is overly broad, unduly burdensome, not reasonably limited in time or scope and to the extent this request is not reasonably calculated to lead to the discovery of information relevant to the claims and/or defenses present in this action.  Subject to and without waiving these objections, please see Defendant's Response:

**Response:**    I have, through my attorneys, produced copies of my "to do" lists for the time frame relevant to this action.

**Request No. 33:**    All court orders, complaints, petitions, judgments, releases, settlement agreements, or covenants asserting, disposing of, resolving or referring to any legal claim, or potential claim, made by or against you, or on behalf of you.

**Objection of Counsel:**    Counsel for Defendant objects to Interrogatory No. 33 in it is vague and ambiguous.  Additionally, the request for production seeks information concerning "any legal claim".  Specifically, counsel for Defendant objects in that the interrogatory calls for information that is not relevant and not calculated to lead to the discovery of relevant or admissible information or evidence.  The question makes no reference to any specific type of discrimination or discrimination claim and does not confine the question to similar suits or claims.  Similarity is not defined in the question.  Further, the use of the terms "complaint" and "claims" are vague, ambiguous and overly broad and are so broad that ostensibly even a casual or purely oral "accusation" or informal writing might qualify as an complaint or claim.  It would be impossible for this Defendant to respond to such a vague, ambiguous and broad question.  Additionally, the question seeks information for an infinite period of time.  This is excessive and not narrowly tailored, as such it is overly broad and unduly burdensome.  Additionally, this question calls for information that is protected by the attorney-client and executive privilege and by the work product exception to discoverable information.  Moreover, the request seeks information that is potentially confidential.  Finally, any formal lawsuit filed is a matter of public record and equally available to plaintiffs.

**Request No. 34:**     All documents received by or given to you from any local, state, or federal agency, office, department or official which refer, relate or pertain to any matter set forth in the Complaint, the allegations made therein and/or your defenses thereto.

**Objection of Counsel:**     **Counsel for Defendant objects to Request No. 34 in that this request is overly broad and unduly burdensome. This request calls for irrelevant information that is not calculated to lead to the discovery of relevant information or evidence. Additionally, this request calls for documents that are protected by the attorney-client privilege, executive privilege and the work product exception to the Rules of Discovery. Additionally, this request cannot be responded to until discovery is completed in the case.**

**Response:**     Subject to and without waiving the foregoing objections, I have none personally.  I understand numerous ADMH/MR documents have been produced.

**Request No. 35:**     All documents which refer, relate or pertain to any and all charges, petitions, grievances, complaints or lawsuits ever filed by or against you concerning any alleged discrimination.

**Objection of Counsel:**     **Counsel for Defendant objects to Request No. 35 in that this request is overly broad and unduly burdensome. This request calls for irrelevant information that is not calculated to lead to the discovery of relevant information or relevant evidence. This request calls for documents that are protected by the attorney-client privilege, executive privilege and the work product exception to the Rules of Discovery. Additionally, this request does not limit the production to a reasonable time and does not describe what counsel for the Plaintiffs considers similar and does not limit the request to similar complaints or lawsuits within a reasonable period of time. Further, the terms "charges, petitions and grievances" may or may not relate to purely oral matters not put in writing or may relate to matters not kept for any length of time by this Defendant. Additionally, assuming the request were limited to similar complaints or lawsuits within a reasonable time or similar charges, petitions or grievances within a reasonable time, said items could possibly exist in personnel files or in other places that would require this Defendant to make an effort to locate said items that would be unduly burdensome.**

**Response:**     Subject to and without waiving the foregoing objections, I have none personally.

**Request No. 36:**     Please produce all of your personnel files and personnel records concerning your employment with any and all employers during the last twenty (20) years.

**Response:**     I personally do not have a copy of my personnel file.

**Request No. 37:**     Please produce your driver's license or a photocopy of same.

**Objection of Counsel:**     **Confidential.**

**Request No. 38:**    Please produce all forms, applications, questionnaires, complaints, letters, filings or other documents you completed or provided to the EEOC regarding any claim of discrimination filed by or against you, and all documents which you received from the EEOC regarding same.

**Response:**    None.

_____
H.E. NIX, JR. (NIX007)
BRANDY F. PRICE (PRI079)
Counsel for Defendants

OF COUNSEL:
*Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.*
P.O. Box 4128
Montgomery, AL 36103-4128
334-215-8585
334-215-7101 - facsimile
cnix@nixholtsford.com
bprice@nixholtsford.com

### CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing instrument has been served (a) through the Court's e-filing system; (b) by placing a copy of same in the United States Mail, postage prepaid and properly addressed; and/or (c) by personal/firm e-mail to

J. Flynn Mozingo, Esq.
*Melton, Espy & Williams, P.C.*
P. O. Drawer 5130
Montgomery, AL 36103-5130

Courtney W. Tarver, Esq.
Deputy Atty. General and Gen. Counsel
Bureau of Legal Services
ADMH/MR
RSA Union Building
100 N. Union Street
Montgomery, AL 36130-1410

on this the 2ᵈ day of April, 2008.

_____
OF COUNSEL

Page 22 of 22

## **VERIFICATION**

STATE OF <u>ALABAMA</u>

COUNTY OF <u>Montgomery</u>

PERSONALLY appeared before me, the undersigned authority in and for the said

county and state, the within named Marilyn Benson, who states upon her oath that she is duly

authorized to execute Responses to Plaintiff's Interrogatories, in the matter styled *Joan*

*Owens and Karen Lynn Hubbard v. State of Alabama Department of Mental Health and*

*Mental Retardation, et al.* and being **2:07-cv-650**, in the United States District Court for the

Middle District of Alabama, Northern Division. These responses are based upon and are

limited by the records and information still in existence and located in the course of preparing

of these answers. Upon information and belief and subject to the limitations set forth herein,

the answers are true and correct as therein stated.

This the 24th (BT) day of *March*, 2008.

_Marilyn Benson_
Marilyn Benson

SWORN TO and SUBSCRIBED before me this the 24th (BT) day of *March*, 2008.

[Seal]

_Caroline Thomas_
NOTARY PUBLIC
My commission expires: 2/11/2012

# Marilyn B. Benson

1078 16th Place
Alexander City, AL 35010
Home: (256) 409-1992   Cell: (334) 303-4134

---

**EDUCATION**

1987    Master's Degree in Public Administration
        *(Concentration in Personnel)*
        (Auburn University at Montgomery)

1981    Bachelor's Degree in Health Services Administration
        (Auburn University, Auburn, AL)

**EMPLOYMENT**

12/87-      Personnel Specialist, *Alabama Department of Mental Health/Mental*
Present     *Retardation, Montgomery, Alabama*

Assists with coordinating Personnel management activities for DMH/MR Central Office, seven facilities, and five Community Programs throughout the state. Responsibilities include coordinating recruitment, selection, and placement of direct care, administrative, technical, and service personnel. Responsibilities include examining positions, establishing, revising, deleting, combining classes, and making recommendations in order to comply with federal, state, and local guidelines of employment; also coordinate wage and salary information for non-merit classes, conduct surveys, analyzing positions and pay relationships, collecting, and ensuring the Department remains competitive in its development of solid wage, salary, and benefit schedules; attend career fairs and conventions to recruit the most qualified individuals to fill vacancies, conduct job analysis, gather subject matter experts, announce job vacancies, develop KSA's and conduct interviews. Other responsibilities include supervising and evaluating the work of clerical and technical support staff. Also provide technical assistance to department heads, and supervisors regarding personnel related matters on departmental employees. Responsible for carrying out functions of Human Resource Management in the absence of the Director.

08/84-      Planning Specialist, *Alabama Department of Mental Health/Mental*
11/87       *Retardation, Montgomery, Alabama*

Rendered technical services to mental health centers by conducting personnel and management studies to include developing complete personnel action plans. Conducted interviews with employees, developed and revised job descriptions. Also examined current classification system to determine if employees were appropriately classified. Developed policies and procedures, to include recruitment and affirmative action plans. Also responsible for conducting supervisory training for both performance appraisals and the employee assistance program; Assisted with identifying federal funding availability through grant resources and provided technical assistance by compiling information needed in order to meet deadlines.

Marilyn B. Benson
Page 2

08/83-
08/84
**Research Assistant**, *Alabama Department of Mental Health/Mental Retardation, Montgomery, Alabama*

Provided consultative services to various mental health centers throughout the state of Alabama. Responsible for writing, revising, and coordinating the development of various personnel policies and procedures, conducting performance appraisal training sessions and supervisory training for the Employee Assistance Program.

01/83-
08/84
**Office Manager**, *Neuropsychiatry Associates, Montgomery, Alabama*

Supervised the overall operation of a psychiatric clinic. Was responsible for maintaining financial reports, accounts receivable, purchasing of supplies and equipment, client billing, processing insurance claims, purchase orders, as well as the supervision to clerical and technical support staff.

## HUMAN RESOURCE TRAINING ACTIVITIES & EXPERIENCE

- Developed performance appraisal systems and conducted management studies for seven different Mental Health Centers in five locations throughout the state of Alabama. Activities included:
  1) Disseminating questionnaires
  2) Conducting interviews
  3) Reviewing job descriptions
  4) Compiling draft descriptions
  5) Providing overview of Performance Appraisal System
  6) Training of Supervisors
  7) Project Implementation

July 1983, Central Alabama Comprehensive Health Center, Tuskegee, AL
Developed Performance Appraisal Instrument to be utilized and incorporated into their supervisory training program.

October 1983, Jefferson Blount-St. Clair County Mental Health Center, Birmingham, AL
Established a Performance Appraisal Project Flow for JBS. Trained supervisors in the overview of the Performance Appraisal Instrument and legal implications by conducting interviews with employees, writing job descriptions and task statements.

Jan-March 1984, Chilton-Shelby Mental Health Center, Calera, AL
Established Performance Appraisal Training Program for Center Supervisors by reviewing existing appraisal instrument, establishing weights for Primary Job Functions, conducting appraisal interviews, and providing instructions for scoring appraisals.

April 1984, Mobile Community Mental Health Center, Mobile, AL
Administered Employee Attitude Surveys in order to recognize employee attitudes or problems that may have a bearing on productivity, absenteeism, turnover, and other related employee issues. After correlating and compiling data,

ADMH 04-00137

Marilyn B. Benson
Page 3

recommendations were made for improving overall staff morale and motivation.

May 1984, <u>Mobile Community Mental Health Center</u>, Mobile, AL
Established Performance Appraisal Instrument to be used at the Center. Trained supervisors in performance appraisal techniques and utilization.

August 1984, <u>Mobile Association for Retarded Citizens</u>, Mobile, AL
Analyzed current organizational structure by disseminating questionnaires and conducting interviews to determine whether jobs were appropriately classified and made recommendations accordingly.

August 1984, <u>Cahaba Regional Mental Health Center</u>, Selma, AL
Developed a performance appraisal system for supervisors at the Center. Interviewed employees, compiled questionnaires and conducted supervisory training.

September 1984, <u>Cherokee, Etowah, Dekalb County Mental Health Center</u>, Gadsden, AL
Participated in Staff Development Consultation with supervisors of Cherokee, Etowah, Dekalb County Mental Health Facility to implement a Performance Appraisal System.

September 1985, <u>The Bridge Alert Center</u>, Gadsden, AL
Conducted workshop on FES (Factor Evaluation System) training and utilization of Training and Experience Crediting. Supervisors were trained in the area of job analysis. The information was utilized in developing more accurate position descriptions.

October 1985, <u>Northwest Alabama Mental Health Center</u>, Jasper, AL
Developed a complete Personnel Action Plan by reviewing selection procedures, staff recruitment, evaluation of policies, and providing FES training for supervisors.

## <u>EMPLOYEE ASSISTANCE PROGRAM TRAINING AND EXPERIENCE</u>

This training involved visiting various Community Mental Health Centers, State Facilities, and private industries to provide technical assistance in areas as: 1) Marketing presentation, 2) Specific employee problems, 3) Program design, 4) Program problem resolution, 5) Contract negotiations, and 6) Management Training.

August 1985, <u>Cahaba Mental Health Center</u>, Selma, AL
Conducted training workshops to educate supervisors about the Employee Assistance Program, what it involved, who was eligible and the role they played.

September 1987, <u>Auburn University</u>, Auburn, AL
Conducted 15 supervisory training sessions that included 219 participants to include the President and Vice-President of the University. Supervisors were acquainted with troubled employees, how to recognize them and the roles they were responsible for playing in the referral process.

ADMH 04-00138

Marilyn B. Benson
Page 4

October 1987, <u>Alabama Criminal Justice Information Center</u>, Montgomery, AL.

Conducted a one-day workshop for supervisors by giving an overview of the program, identification of problem employees, and the referral process.

November 1987, <u>Fourth Annual Conference for Personnel Administration</u>, Auburn University at Montgomery, Montgomery, AL.

Made Conference presentation on the Employee Assistance Program for Participants of the Personnel Administration Conference. An overview of EAP was given as well as how to identify workers with personal problems that could possibly affect their on the job performance.

## PROFESSIONAL ACTIVITIES

- Facilitator/planner for Governor's Task Force on Domestic Violence and Abuse
- Licensed and Ordained Baptist Minister
- Co-Pastor of GAP Fellowship Church, Inc in Alexander City, AL

## REFERENCES

Available Upon Request

ADMH 04-00139

OFFICE OF THE GOVERNOR

BOB RILEY
GOVERNOR



STATE CAPITOL
MONTGOMERY, ALABAMA 36130

(334) 242-7100
FAX: (334) 242-0937

February 1, 2005

Mr. John Houston
Post Office Box 65
Coosada, Alabama 36020

Dear John,

By this letter I hereby appoint you Acting Commissioner of the Department of Mental Health and Mental Retardation. Your appointment is effective immediately. I understand your social security number is ███████████.

Thank you for your willingness to serve in my Administration. I am confident that you will render a valuable service to the citizens of Alabama.

Sincerely,

Bob Riley
Governor

cc: Tommy Flowers
    Dannie Shockley
    Becca Crawford
    Toby Roth

RRR:srr



DEFENDANT'S
EXHIBIT
10

In the United States District Court

State of For the Middle District of Alabama

County of Northern Division


JOAN FAULK OWENS AND KAREN     )
LYNN HUBBARD,                  )
                               )
                  PLAINTIFFS,  )
                               )
versus                         ) 2:07-cv-650-WHA
                               )
STATE OF ALABAMA DEPARTMENT OF )
MENTAL HEALTH AND MENTAL       )
RETARDATION, ET AL,            )
                               )
                  DEFENDANTS.  )
_____)

- - -

The Deposition of Otha Dillihay, Sr.

- - -

Hampton Inn
822 Gervais Street
Columbia, South Carolina
Saturday, June 7, 2008
9:45 a.m. - 5:45 p.m.


     In behalf of the attorneys for the Plaintiffs, the
deposition of the above-named witness was taken
before me, Judith H. Hayes, Certified Court Reporter and
Notary Public in and for the State of South Carolina,
pursuant to re-notice to take deposition duces tecum in the
above-entitled cause pending in the above-named court.



DEFENDANT'S
EXHIBIT
11

I N D E X

Examination:                                           Page No.:

 By Mr. Mozingo                                             5


      P L A I N T I F F S'   E X H I B I T S

 Exhibit No.:                               Page Reference:

 Exhibit No. 1  (Re-notice to take Deposition
   duces tecum)                                           6
 Exhibit No. 2   (Resume)                                 8
 Exhibit No. 3   (Center for HealthCare
   Governance - Speaker)                                 35
 Exhibit No. 4   (Photo of Otha Dillihay)                47
 Exhibit No. 5   (Columbia Businessmen to
   Fight AIDS in Africa)                                 57
 Exhibit No. 6   (Chapter Members - Kappa
   Alpha Psi)                                            59
 Exhibit No. 7   (Richland One Departments)              86
 Exhibit No. 8   (Application for Employment)            96
 Exhibit No. 9   (Central Office Outlook)               105
 Exhibit No. 10  (Preappraisal)                         109
 Exhibit No. 11  (7/22/05 letter from John Houston)     112
 Exhibit No. 12  (Preappraisal)                         121
 Exhibit No. 13  (1/18/07 memo to John Houston)         124
 Exhibit No. 14  (Responses to Plaintiffs' First
   Consolidated Discovery)                              198
 Exhibit No. 15  (Title:  Equal Employment
   Opportunity)                                         161
 Exhibit No. 16  (Title:  Nepotism)                     164
 Exhibit No. 17  (Title:  Job Evaluation Committee)     166
 Exhibit No. 18  (Request to Fill Exempt Position
   on Staffing Plan)                                    167
 Exhibit No. 19  (Departmental Assistant Personnel
   Manager)                                             153
 Exhibit No. 20  (Announcement of Intent to Fill
   a Non-Merit Position)                                159
 Exhibit No. 21  (Minutes of Job Evaluation
   Committee Meeting 10/15/04)                          254
 Exhibit No. 22  (Minutes of Job Evaluation
   Committee Meeting 2/24/05)                           256
 Exhibit No. 23  (3/15/05 Memorandum from
   Henry E. Ervin)                                      263
 Exhibit No. 24  (Personnel Manager III)                264
 Exhibit No. 25  (Minutes of the Job Evaluation
   Committee 6/10/05)                                   275

In the United States District Court

State of For the Middle District of Alabama

County of Northern Division

JOAN FAULK OWENS AND KAREN )
LYNN HUBBARD,                )
                            )
        PLAINTIFFS, )
                            )
versus                      ) 2:07-cv-650-WHA
                            )
STATE OF ALABAMA DEPARTMENT OF   )
MENTAL HEALTH AND MENTAL    )
RETARDATION, ET AL,         )
                            )
        DEFENDANTS.)
_____

- - -

The Deposition of Otha Dillihay, Sr.

- - -

Hampton Inn
822 Gervais Street
Columbia, South Carolina
Saturday, June 7, 2008
9:45 a.m. - 5:45 p.m.


In behalf of the attorneys for the Plaintiffs, the
deposition of the above-named witness was taken
before me, Judith H. Hayes, Certified Court Reporter and
Notary Public in and for the State of South Carolina,
pursuant to re-notice to take deposition duces tecum in the
above-entitled cause pending in the above-named court.

**Appearing in behalf of the Plaintiffs:**

Melton, Espy & Williams, P.C.
P.O. Drawer 5130
Montgomery, Alabama 36103-5130

By:  J. Flynn Mozingo, Esq.

**Appearing in behalf of the Defendants:**

Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.
P.O. Box 4128
Montgomery, Alabama 36103-4128

By:  H.E. Nix, Jr., Esq.

**Appearing in behalf of the Defendant Alabama
Department of Mental Health/Mental Retardation:**

Courtney W. Tarver, Esq.
Bureau of Legal Services ADMH/MR
RSA Union Building, 100 North Union Street
Montgomery, Alabama 36130

Also Present:  Joan Faulk Owens
               Karen Lynn Hubbard

I N D E X

Examination:                        Page No.:

By Mr. Mozingo                          5

PLAINTIFFS' EXHIBITS

Exhibit No.:            Page Reference:

Exhibit No. 1  (Re-notice to take Deposition
  duces tecum)
Exhibit No. 2  (Resume)                      8
Exhibit No. 3  (Center for HealthCare
  Governance - Speaker)                     35
Exhibit No. 4  (Photo of Otha Dillihay)     47
Exhibit No. 5  (Columbia Businessmen to
  Fight AIDS in Africa)                     57
Exhibit No. 6  (Chapter Members - Kappa
  Alpha Psi)                                59
Exhibit No. 7  (Richland One Departments)   86
Exhibit No. 8  (Application for Employment)  96
Exhibit No. 9  (Central Office Outlook)    105
Exhibit No. 10 (Preappraisal)              109
Exhibit No. 11 (7/22/05 letter from John Houston) 112
Exhibit No. 12 (Preappraisal)              121
Exhibit No. 13 (1/18/07 memo to John Houston) 124
Exhibit No. 14 (Responses to Plaintiffs' First
  Consolidated Discovery)                  198
Exhibit No. 15 (Title:  Equal Employment
  Opportunity)                             161
Exhibit No. 16 (Title:  Nepotism)          164
Exhibit No. 17 (Title:  Job Evaluation Committee) 166
Exhibit No. 18 (Request to Fill Exempt Position
  on Staffing Plan)                        167
Exhibit No. 19 (Departmental Assistant Personnel
  Manager)                                 153
Exhibit No. 20 (Announcement of Intent to Fill
  a Non-Merit Position)                    159
Exhibit No. 21 (Minutes of Job Evaluation
  Committee Meeting 10/15/04)              254
Exhibit No. 22 (Minutes of Job Evaluation
  Committee Meeting 2/24/05)               256
Exhibit No. 23 (3/15/05 Memorandum from
  Henry E. Ervin)                          263
Exhibit No. 24 (Personnel Manager III)     264
Exhibit No. 25 (Minutes of the Job Evaluation
  Committee 6/10/05)                       275

Exhibit No.: (Continued)       Page Reference:

Exhibit No. 26 (Staff Development Specialist II) 277
Exhibit No. 27 (Minutes of the Job Evaluation
  Committee 7/22/05)                       277
Exhibit No. 28 (Minutes of the Job Evaluation
  Committee 1/12/06)                       278
Exhibit No. 29 (Administrator V)           279
Exhibit No. 30 (Minutes of the Job Evaluation
  Committee Meeting 6/26/06)               282
Exhibit No. 31 (Personnel Specialist II)   284
Exhibit No. 32 (Minutes of the Personnel
  Manager's Meeting 7/18/05)               285
Exhibit No. 33 (Minutes of the Job Evaluation
  Committee 2/14/07)                       286
Exhibit No. 34 (Proposal to Conduct a Wage and
  Classification Study)                    249
Exhibit No. 35 (1/18/06 letter from Courtney
  Tarver to U.S. E.E.O.C.)                 189
Exhibit No. 36 (5/31/06 letter from Courtney
  Tarver to U.S. E.E.O.C.)                 196
Exhibit No. 37 (E.E.O.C. Determination)    197
Exhibit No. 38 (National Forum for Black
  Public Administrators - History)          49
Exhibit No. 39 (National Forum for Black
  Public Administrators - Who We Are)       50
Exhibit No. 40 (Richland One Administration) 87
Exhibit No. 41 (6/14/05 Memorandum to John
  Houston from Henry E. Ervin re Dept. Asst.
  Personnel Manager)                       133
Exhibit No. 42 (Re-Announcement of Intent to
  Fill a Non-Merit Position)               160

Page 66

1    applied. I said that that's what I was going
2    to do when I got the announcement in my hand
3    before I read it and there was no clause in
4    it, so I would have applied immediately.
5    Q. All right. You would get the announcement and
6    apply. Now, in the normal course of things,
7    where would you send an application to on a
8    job like this?
9            MR. MOZINGO: Let me just object to
10           the form of the question.
11           Obviously, we contend there was
12           no normal course of things. So
13           if you want to try to ask her
14           what she -- how she thinks she
15           would go about applying, I think
16           that would be a different
17           question.
18   Q. Do you know that mike Mathis was the person --
19   A. That accepted the applications.
20   Q. That's right. Do you know him?
21   A. Very well.
22   Q. How do you know Mike Mathis?
23   A. He's the Personnel Director at Partlow

Page 67

1    Developmental Center.
2    Q. Do you believe Mike Mathis is a good personnel
3       director?
4    A. Yes.
5    Q. Do you believe he's a fair person as a
6       personnel director?
7    A. Yes.
8    Q. Do you believe he's qualified to grade
9       applications for a job of this type?
10   A. Yes.
11   Q. Do you believe that he would honestly evaluate
12      the applications for the job once they were
13      received by him?
14   A. Yes.
15      I'm not contending that the interview
16   process was not done correctly. What I am
17   contending, I was denied the opportunity to
18   even apply, sir. I'm not contending anything
19   that Mike did was wrong or the interview
20   process was wrong. I'm contending that I
21   never was able to even get to that point.
22   Q. I know.
23   A. Okay.

Page 68

1    Q. Just bear with me, though. Okay?
2    A. Yes, sir.
3    Q. This is important.
4       Now, assume that Mike Mathis looked at
5    your application and your qualifications.
6    When you apply -- When a person applies for a
7    job and it's clear that they're going to need
8    substitution in order to get that job, do they
9    have to make a request for substitution in the
10   application or does that come later?
11   A. They don't have to request it.
12   Q. They do not?
13   A. No, sir.
14   Q. How does it come about that a person is
15   considered for substitution?
16   A. You fill out the application, and you fill it
17   out as completely as you can. And when Mike
18   graded those applications, he would have
19   looked at my application and he would have
20   figured up how many years of experience I had
21   in personnel.
22   Q. All right.
23   A. That's what he would have done.

Page 69

1    Q. Now, as of November 15, 2005, how many years
2    of experience did you have in personnel?
3            MR. MOZINGO: Are you asking with
4            the State or in her career?
5            MR. NIX: Well, with the State
6            first.
7            MR. MOZINGO: Okay.
8    A. I came on board December the 31st of 1990.
9    Q. All right.
10   A. Sir, I'm so nervous, I can't figure. I think
11   around 15 years at that point in time with the
12   State.
13   Q. When did you come into a personnel position of
14   the type necessary to be allowed for
15   substitution?
16   A. When I came to work with the State, but I also
17   was the Personnel Director of Elmore Community
18   Hospital.
19   Q. When was that? You had other private
20   experience is what you're saying?
21   A. Yes, sir.
22   Q. Okay. Is private experience counted in the
23   substitution aspect of the thing?

18 (Pages 66 to 69)

1  like manufacturing, what is involved in that, waste
2  management systems, our environment, our state agencies'
3  budgeting, all of the components of leading a large
4  organization.
5      Q.    Did the South Carolina Leadership Institute
6  specifically have Human Resource seminars?
7      A.    I don't recall exactly what they -- Human
8  Resources was part of the training program. I don't know
9  which ones, what their curriculum consisted of, but I do
10 recall in those programs studying Human Resource
11 Management.
12     Q.    Was the South Carolina Leadership Institute
13 similar to Leadership South Carolina in the way that the
14 leadership program was formatted or conducted? What I am
15 getting at is I have participated in leadership programs
16 too, and at least the ones that I've participated in you
17 may have an individual from a certain industry or
18 government agency come speak about the needs affecting
19 whether it be the state or---
20     A.    No. It was a little more involved than that. We
21 get case studies, we had reports we had to complete, we had
22 projects that we worked on. We had professors who came
23 down from Harvard and other universities including the
24 University of South Carolina. This was a course
25 curriculum.

1      Q.    The Leadership Institute?
2      A.    Well, now there is South Carolina Executive
3  Institute and then there is Leadership South Carolina.
4      Q.    But the Executive Institute actually had a course
5  curriculum?
6      A.    Yes. I believe they both did.
7      Q.    You believe they both did?
8      A.    Yes.
9      Q.    Did Leadership South Carolina have Human Resource
10 courses or seminars?
11     A.    Again, I don't recall their curriculum
12 specifically, but I do recall taking course work in Human
13 Resources.
14     Q.    Besides those two entities that you have
15 mentioned, have you attended any other leadership training
16 programs?
17     A.    Yes. Well, Project Blueprint, that was one also
18 as a member of the American Association of Health Service
19 Executives. I have attended numerous seminars on Human
20 Resource and Hospital Management, Budgeting, Finance.
21     Q.    So you feel like you have a lot of knowledge in
22 the area of Human Resources?
23     A.    It depends on what day you ask that question,
24 Mr. Mozingo.
25     Q.    I'm asking it today, Saturday, June 7, 2008.

1      A.    I feel myself adequately prepared to hold the
2  position of Chief Human Resource Officer for the school
3  district that I work for. I feel that I am fully
4  qualified.
5      Q.    And that is your present capacity, Human Resource
6  Officer?
7      A.    Chief Human Resource Officer, yes.
8      Q.    Richland County, explain to me how the school
9  system is organized. I am not familiar like with the
10 District One concept. Richland County is where Columbia is
11 located, correct?
12     A.    Yes.
13     Q.    Columbia, South Carolina?
14     A.    Parts of Columbia.
15     Q.    Parts of Columbia.
16     A.    Parts.
17     Q.    Explain to me then generally how the school
18 system in this county is organized.
19     A.    Our system at Richland One?
20     Q.    No. I want the big picture of the school system
21 so I will understand where Richland One fits in the big
22 picture.
23     A.    I think first you have to have an understanding
24 of Columbia. If we are talking about the Statistical
25 Metropolitan Area that involves Columbia, not just talking

1  about those areas within the city limits. The SMA of
2  Columbia encompasses Lexington, Saluda, Eastover, Pelion, a
3  lot of different areas around what we know as Columbia. In
4  Richland County there are several school districts.
5  Richland County School District One is the largest of those
6  school districts. It comprises of 50 schools from K
7  through 12, adult programs, career development programs,
8  those types of things.
9          We have over 23,000 students, we have
10 approximately over four thousand employees, 2,200 teachers,
11 and the balance of that is in support staff being operated
12 by a Board of School Commissioners who is elected both at
13 large and on a district basis throughout the county.
14         And Richland Two is a school district that
15 if you took Columbia and took the city part of Columbia,
16 that would be Richland One, and then if you took, say, from
17 what are some of the outlying areas going back towards the
18 Winnsboro city limit lines would be Richland Two, and then
19 if you go to the west you have Lexington Four and Five, and
20 then you also have a small combined district that was part
21 of a planned unit development exercise from some time ago
22 that is called Lexington-Richland and they have a number.
23         So you have got these school districts that
24 kind of handle the periphery, and then you have got school
25 districts that handles all of the schools that are sort of

1  qualifications for that position?

2      A.    Yes.

3      Q.    Were you involved in determining the necessary

4  skills and aptitude for that position?

5      A.    I was aware of it. I left that up to our

6  personnel people.

7      Q.    What did you leave up to the personnel people?

8      A.    Well, I wanted, one of things we wanted them to

9  do was compare like positions in other jurisdictions, see

10  what they would do and then tell us how that would fit with

11  the State's personnel system, how it should be designed.

12              (Plaintiffs' Exhibit No. 41 was

13              pre-marked for identification.)

14      Q.    Let me show you what's been marked Plaintiffs'

15  Exhibit 41. Let me show you what's been marked Plaintiffs'

16  41. I will represent to you that this is a memorandum

17  letter from Henry Ervin to John Houston proposing the

18  creation of the Departmental Assistant Personnel Manager

19  position. It's dated June 14, 2005, and if you look on the

20  next page, according to this, you were copied, or you would

21  have received a copy of this. Did you receive a copy of

22  it?

23      A.    I don't know.

24      Q.    Have you seen Plaintiffs' Exhibit 41 before?

25      A.    I don't know. I may have. I am not sure.

1      Q.    You cannot recall?

2      A.    No, sir.

3      Q.    I am going to give you an opportunity to read

4  over Plaintiffs' 41. And this is my question for you when

5  you finish reading over it: This memorandum letter gives

6  reasons for the creation of Departmental Assistant

7  Personnel Manager, okay, and I want you to read it for

8  yourself and see what those reasons are. And let me know

9  when you are done.

10      A.    (Reading document.)

11              (Break at 1 p.m.)

12              (Back on the record at 1:05 p.m.)

13  BY MR. MOZINGO:

14      Q.    When we had left off, Mr. Dillihay, I had asked

15  you if you would read Plaintiffs' 41 for me.

16      A.    Yes.

17      Q.    Have you read that exhibit?

18      A.    Yes.

19      Q.    Do you agree with me that that exhibit appears to

20  give reasons for the creation of the position of

21  Departmental Assistant Personnel Manager?

22      A.    Yes.

23      Q.    Do you know of any additional reasons to support

24  the creation of that position other than those set forth in

25  Plaintiffs' Exhibit 41?

1      A.    Yes.

2      Q.    Tell me what they are.

3      A.    There were two that were identified fairly early

4  on. One was as we look to the makeup and organization of

5  the Human Resources Department, that organizational

6  structure appeared to be a little flat, and by flat I meant

7  as far as chain of command was concerned. Having people

8  trained and addressed in authority to take over in times of

9  shortages or emergencies or what have you.

10              Secondly, looking forward, I think I shared

11  with you earlier we did an analysis of our employee base

12  and realized that a huge percentage of the Department's

13  employee base was retirement eligible at that particular

14  time. I don't recall what the percentage was, but it was a

15  large double digit number of those people who were

16  eligible. Mr. Ervin, who was the H.R. Director, happened

17  to be one of those people. Mr. Ervin was, in my opinion,

18  eligible to retire, eligible to retire on age and he may

19  have been eligible on length of service. I knew that he

20  had some health issues, I knew that he lived in Tuscaloosa

21  and was wanting to get closer to his new wife, and having

22  been retirement eligible, it was, in my opinion, my

23  responsibility to look forward in that organization to see

24  how we would continue operations in that area should

25  Mr. Ervin suddenly not be available to us for whatever

1  reason. And that was one of the other components that was

2  used to determine the need to have that level of

3  supervision developed.

4      Q.    So you wanted to lay the groundwork for

5  Mr. Ervin's absence?

6      A.    I wanted to lay the groundwork for the efficient

7  and continual management of personnel functions.

8      Q.    When Mr. Ervin left?

9      A.    When he left?

10      Q.    Correct.

11      A.    When he left, while he was there, or any of that,

12  but I knew if I had got someone, the same way I plan for

13  everything, I try to put redundancy plans in place and if

14  for some reason he suddenly was not available to us

15  management operations had to continue in that area.

16      Q.    So one reason for the creation of this position

17  that you knew of back when the idea of creating it was

18  being discussed, was that the Department, you needed

19  preparation for the continuance of the work of the

20  Department upon Mr. Ervin's retirement.

21      A.    No. Not upon his retirement.

22      Q.    Or Mr. Ervin not being there?

23      A.    If he is not there we have got to still operate,

24  and I needed to have some assurances that we had an

25  organizational structure that could provide for me those

1  Mr. Ervin was retirement eligible, had health issues, lived
2  out of town, a need for some built-in redundancy and
3  overall efficiency of the Department.  That is what---
4     A.    And a need to create a career development path
5  within the H.R. Department.
6     Q.    A need to create a career development path?
7     A.    Maybe that's not -- maybe a more well defined
8  career development path.  I don't know what all the
9  positions were, but you could start out, say, at a clerk's
10 level and from the clerk you had the head of H.R.  In
11 between were several other positions.  Those positions
12 weren't necessarily lined out and graded in a promotion and
13 classification process that said you could start at step
14 one and end at step five, and you could come in
15 legitimately if you met all the qualifications and were
16 successful in being the hired candidate for that, that it
17 would be possible for someone to come to the organization,
18 start at the lower ranks and end up at the higher ranks the
19 same way at the Department our last two Commissioners have
20 done that.  They have started out at very low ranks and
21 educated themselves and promoted themselves through the
22 process to Commissioner.
23     Q.    And I wrote that down.  Need to create a career
24 or more well-defined career path.  Any other reason?
25     A.    If it comes to me, I'll certainly---

1     Q.    You'll let me know, right?
2     A.    Yes.
3     Q.    Did you have any discussions with Mr. Ervin about
4  the preparation of Plaintiffs' Exhibit 41?
5     A.    I don't recall having any.  I had general
6  discussions as you see in the memo about the various
7  elements within that, but I don't recall one that was
8  specifically related to the development of this document.
9     Q.    The reasons that you have just given me---
10    A.    Yes.
11    Q.    ---that I have written down here, go over them
12 again any time you want, the reasons that I have written
13 down, did you ever share those reasons with Mr. Ervin prior
14 to the creation of Plaintiffs' Exhibit 41?
15    A.    I don't recall.  I certainly would have shared
16 some of those.  I am not certain that I would have shared
17 all of them.  I am particularly clear on the fact that I
18 did not discuss with him his health issues personally,
19 although I was aware of them.  But I did not want him to
20 feel that in any way we were moving to get him out of the
21 organization or wanted him to feel uncomfortable in any
22 way.  So we had generally broad discussions about the
23 creation of this position, some of my reasoning, some of
24 the Commissioner's reasoning in wanting to establish this
25 position and some of the benefits that would be derived as

1  a result of having that position.
2     Q.    Do you recall any specific discussions with
3  Mr. Ervin about the creation of that position---
4     A.    I don't recall any specific discussions.
5     Q.    Let me finish my question.  Do you recall any
6  specific discussions with Mr. Ervin about the creation of
7  that position prior to his preparing Plaintiffs' Exhibit
8  41?
9     A.    I don't recall any specific discussions that I
10 had with him.
11    Q.    Do you recall any specific discussions with
12 Mr. Ervin about the creation of that position after his
13 preparing Plaintiffs' Exhibit 41?
14    A.    I don't recall any specific discussion, no, sir.
15    Q.    So as we sit here today, you, Otha Dillihay,
16 cannot recall any specific discussions with Henry Ervin
17 about the creation of the Assistant Personnel Department
18 Manager?
19    A.    Not specifically, no, sir.
20    Q.    Any recollection that you have of discussions
21 with Mr. Ervin about the creation of that position would be
22 recollections in general?
23    A.    Yes.
24    Q.    Is that correct?
25    A.    Yes, sir.

1     Q.    But you cannot recall when those discussions
2  would have occurred?
3     A.    I not only cannot recall when, I can't recall the
4  specific content of the discussions themselves.
5     Q.    Mr. Dillihay, help me out if you will about in
6  walking me through the process of the creation of a new
7  position with Mental Health.  I want to make sure I
8  understand this process and make sure I'm clear on it.  The
9  creation of this new job of Departmental Assistant
10 Personnel Manager, was it proposed by you or Mr. Ervin or
11 by someone else?
12    A.    I don't recall.
13    Q.    When a new job is proposed, is it generally
14 proposed from within the Department where the job may be
15 desired or is it generally proposed somewhere else in the
16 management pyramid we've discussed?
17    A.    I really don't recall how we did it in Alabama
18 specifically, but I am sure that new job requests came up
19 both internally, they also came up as a matter of course of
20 the political process between the Mental Health authorities
21 in the community and the Department.  They may see a need
22 for a specific type of position.  They also were created by
23 the affirmation and awarding of various grants that the
24 Department received.  We could write a grant for a
25 particular endeavor and a result of that grant funding

1 would result in the creation of a new position, so there is
2 a number of different ways that the idea and the initiation
3 for a new position would have been created at that
4 Department.
5      Q.   During your employment with Mental Health, did
6 the position of Departmental Assistant Personnel Manager
7 ever receive any grant funding -- let me ask it a better
8 way.
9           Did the Department ever receive any grant
10 funding that necessitated or required the creation of that
11 position?
12      A.   I don't recall any.
13      Q.   And you do not know who proposed the creation of
14 this job, that being the Departmental Assistant Personnel
15 Manager.
16      A.   No, sir. Not specifically.
17      Q.   Could it have been you?
18      A.   I don't recall. As I said, I don't recall who
19 did it. We had a lot of discussion about the Department,
20 how it was set up. When that decision was made and who
21 actually said I think we ought to create this position, I
22 don't recall who did it. And keep in mind these were
23 conversations that have been going on through the course of
24 my employment.
25      Q.   But, for the record, you do not recall if you

COLUMBIA TRANSCRIPTS, INC.
803/356-1990
800/923-8899

146

1 could have been the person who proposed the creation of
2 this position?
3      A.   I don't recall specifically, no, sir.
4      Q.   Who do you believe proposed it?
5      A.   I don't recall. I don't know. It could have
6 been John, Henry, me, June. I don't know.
7      Q.   But for this position to be created at some point
8 in that process, it's my understanding that you as
9 Assistant Commissioner of the Administrative Division had
10 to approve that creation.
11      A.   Well, I don't think I approved the creation.
12 What I did was make recommendations to the Commissioner for
13 the creation of that position. The Commissioner had the
14 appointing authority for Central Office, not the Associate
15 for Admin.
16      Q.   Since you can't recall, maybe let's work around
17 some assumptions and see if this helps any. Let's assume
18 Henry Ervin had the idea for the position. Okay? Assuming
19 Henry Ervin had the idea, would he approach you first about
20 his idea and get your approval or would he approach someone
21 else?
22      A.   I don't know. I have no idea.
23      Q.   Do you know if he approached you first?
24      A.   No. I don't know.
25      Q.   When you were working for the Department of

COLUMBIA TRANSCRIPTS, INC.
803/356-1990
800/923-8899

1 Mental Health did Henry Ervin ever propose the creation of
2 a new position?
3      A.   A new position?
4      Q.   Correct.
5      A.   When you say propose?
6      Q.   Correct.
7      A.   Did he get -- I don't know. I don't know. I
8 mean there are thousands of personnel actions that went
9 across my desk over the course of that time, so I don't
10 recall specifically which ones he would have been directly
11 involved in. Again, if it were something that was created
12 as a result of something external to the organization like
13 a grant award, it might look like Henry proposed it, but it
14 was a part of a process.
15      Q.   But when I say proposed the creation of a new
16 position, am I being ambiguous there, does that have more
17 than one meaning to you?
18      A.   Creation of a new position?
19      Q.   Of a new position.
20      A.   Yes. It is an ambiguous term. You could be
21 promoted from one position to another doing similar work,
22 but because of the additional duties we may have to create
23 a new position for you to assume a salary and grade that
24 would be commensurate with your new duties. That would be
25 the creation of a new job. We would have to get a position

COLUMBIA TRANSCRIPTS, INC.
803/356-1990
800/923-8899

148

1 number, we would have to go through the process of doing
2 it. So as I said, many, many positions were created in
3 that Department and dissolved within that Department given
4 the ongoing cost and review of what was needed to make the
5 Department function.
6      Q.   But you did testify that during your tenure with
7 the Department that many positions were created?
8      A.   I would imagine that they were.
9      Q.   Well, that's what you just said.
10      A.   Well, we had like, I think, about six thousand
11 employees. I don't recall how many, but I would imagine
12 there were a lot of positions that were created
13 throughout that Department.
14      Q.   During your tenure with the Department, did Henry
15 Ervin ever propose the creation of a new position?
16      A.   I thought I just answered that.
17      Q.   You didn't.
18      A.   I didn't?
19      Q.   No.
20      A.   Let me answer it again. As a part of the
21 process, and Henry Ervin being the Director of Human
22 Resources, those processes would bubble up and emanate
23 through his position. On paper, if you look, it will look
24 as if Henry Ervin is recommending for approval to the
25 Commissioner that this new position be created. I don't

COLUMBIA TRANSCRIPTS, INC.
803/356-1990
800/923-8899

# DEPOSITION OF HENRY E. ERVIN

## June 10, 2008

## Pages 1 through 318

## PREPARED BY:

**Haislip, Ragan, Green, Starkie & Watson, P.C.**
566 South Perry Street
Post Office Box 62
Montgomery, AL  36104
Phone: (334) 263-4455
Fax: (334) 263-9167
E-mail: haislipragan@charter.net

DEFENDANT'S
EXHIBIT
tabbies
_12_

Deposition of Henry E. Ervin                                                  June 10, 2008

**Page 1**

```
1        IN THE UNITED STATES DISTRICT COURT
2       FOR THE MIDDLE DISTRICT OF ALABAMA
3                NORTHERN DIVISION
4
5   JOAN FAULK OWENS and KAREN
    LYNN HUBBARD,
6
7        Plaintiffs,
                                CIVIL ACTION NO.
8   vs.              2:07-cv-650-WHA
    STATE OF ALABAMA DEPARTMENT
9   OF MENTAL HEALTH AND MENTAL
10  RETARDATION, et al.,
11       Defendants.
12
         * * * * * * * * * * * * * *
13
14
         DEPOSITION OF HENRY E. ERVIN, taken
15
    pursuant to stipulation and agreement before Lyn
16
    Daugherty, ACCR #66, Certified Court Reporter and
17
    Commissioner for the State of Alabama at Large, in
18
    the Law Offices of Nix, Holtsford, Gilliland,
19
    Higgins & Hitson, 4001 Carmichael Road, Suite 300,
20
    Montgomery, Alabama, on Tuesday, June 10th, 2008,
21
    commencing at approximately 10:30 a.m.
22
         * * * * * * * * * * * * * *
23
```

**Page 2**

```
1              APPEARANCES
2   FOR THE PLAINTIFFS:
3   Mr. J. Flynn Mozingo
    MELTON, ESPY & WILLIAMS
4   Attorneys at Law
    255 Dexter Avenue
5   Montgomery, Alabama 36104
6
7   FOR THE DEFENDANTS:
8   Mr. H.E. Nix, Jr.
    NIX, HOLTSFORD, GILLILAND, HIGGINS & HITSON
9   Attorneys at Law
    4001 Carmichael Road, Suite 300
9   Montgomery, Alabama 36106
10
    Mr. Courtney W. Tarver
11  Deputy Attorney General and General Counsel
    Bureau of Legal Services
12  ADMH/MR
    RSA Union Building
13  100 North Union Street
    Montgomery, Alabama 36130
14
    ALSO PRESENT: Ms. Joan Owens
15           Ms. Lynn Hubbard
             Mr. David Bennett
16
         * * * * * * * * * * * * *
17
18
         EXAMINATION INDEX
19
20  HENRY E. ERVIN
21    BY MR. MOZINGO . . . . . . . . . . 6
22
         (Index continued on next page)
23
```

**Page 3**

```
1              EXHIBIT INDEX
2                         PAGE
    Plaintiff
3
    43  Notice of deposition          10
4
    44  Defendant Henry Ervin's responses to   12
5       plaintiffs' first consolidated discovery
6   45  E-mail dated November 7, 2007 from Lynn  19
        Hubbard to David Bennett and Henry Ervin
7
    46  Job specifications from Departmental    21
8       Assistant Personnel Manager
9   47  Job announcement for Departmental       46
        Assistant Personnel Manager
10
    48  Employee performance preappraisal for   118
11      Marilyn Benson for the period 3/4/2006
        to 9/3/2006
12
    49  Memo dated February 3, 2005 to Jackie   238
13      Graham from Henry Ervin
14  50  Memo dated June 14, 2005 to John Houston 239
        from Henry Ervin
15
    51  Request to fill exempt position on      244
16      staffing plan
17  52  Draft job announcement for Departmental 249
        Assistant Personnel Manager
18
    53  Log entries for central office -        254
19      administration
20  54  List of where exempt job announcements  257
        are sent
21
    55  Invoice from The Tuscaloosa News        259
22
23       (Index continued on next page)
```

**Page 4**

```
1   56  Employee performance appraisal for      269
        period 1/1/2005 to 1/1/2006
2
    57  Employee performance appraisals for     279
3       Marilyn Benson
4   58  Employee performance appraisals for Lynn 285
        Hubbard
5
    59  Employee performance appraisals for Joan. 294
6       Owens
7
8
9
10
11       * * * * * * * * * * * * *
12
```

Deposition of Henry E. Ervin                                                    June 10, 2008

---

Page 37

1    Assistant Personnel Manager, Plaintiffs'
2    Exhibit 46 would have served as the basis
3    for the preparation of the job
4    announcement?
5         MR. NIX: I object to the form.
6    A.  It could have.
7    Q.  Well, did it?
8         MR. NIX: Object to the form.
9    A.  I'm almost certain that parts of that was
10   on the announcement.
11   Q.  Can you vary -- Can the announcement vary
12   from the job specification?
13   A.  Yes.
14   Q.  It can?
15   A.  Yes.
16   Q.  In what way?
17   A.  Well, there are some things on the
18   announcement that are not on here that
19   would be part of the announcement that's
20   not on the job spec. Preferences, the
21   experience factor. I'm not real certain
22   that that's not on there, but that could be
23   another factor.

Page 38

1    Q.  Anything else?
2    A.  That's about it.
3    Q.  So preferences and experience can vary
4    between the job announcement and the job
5    specification; is that correct?
6    A.  The preference can. I take it back on the
7    qualifications and the experience because
8    it's -- it's on the job spec and it must be
9    on the announcement too.
10   Q.  So the preference can vary; is that
11   correct?
12   A.  Well, you can have your preference in terms
13   of putting that on the announcement, yes.
14   You don't have a preference on the spec
15   itself.
16   Q.  Okay. Can the experience vary?
17   A.  Not from the job spec itself.
18   Q.  Other than preferences, can anything else
19   vary between the job announcement and the
20   job specification?
21   A.  I don't know if you want to vary too much,
22   but I can't say for certain that you're
23   going to -- I just don't recall looking at

Page 39

1    an announcement and looking at a job spec
2    and seeing that it's a major difference in
3    terms of variations.
4    Q.  Okay. I'm not sure I understand your
5    answer. And I'm not even sure if it's --
6    A.  I don't --
7    Q.  -- responsible to ask, so let me ask it
8    again. Other than preferences, can
9    anything else vary between the job
10   announcement and the job specification?
11   A.  First of all, I don't do these on a regular
12   basis; okay? I don't develop the
13   announcements on a regular basis. I review
14   them for content. And I don't necessarily
15   go back and try to compare and see is it
16   meeting everything that's on the job spec
17   as opposed to what's on the announcement.
18   I generally look over it and that's it.
19   Q.  Is it your testimony that other than
20   preferences the job specification is
21   allowed to vary from the job announcement?
22   A.  I didn't say that.
23   Q.  Well, I'm asking is that your testimony?

Page 40

1    A.  I said -- I think I said specifically that
2    preferences was the thing that I remember
3    as being added to the announcement that
4    might not be on the job specification.
5    Q.  And you did. And I wrote that down. And
6    I'm trying to find out other than
7    preferences can anything else vary between
8    the job announcement and the job
9    specification?
10        MR. NIX: And let me object to the
11        form because it's been asked
12        and he answered it.
13        MR. MOZINGO: No, he hasn't.
14        MR. NIX: Yeah, he did.
15        MR. MOZINGO: He hasn't.
16        MR. NIX: He did.
17        MR. MOZINGO: He hasn't answered
18        can anything else. That is
19        the question and that's
20        why I'm asking it.
21        MR. NIX: He's only answered it
22        three or four times, Flynn.
23        He answered it. He answered

Page 265

```
1     he felt more than one person should be
2     asking questions.  You know, in other
3     words, it should be more participatory from
4     the interview panel.
5  Q. Anything else you recall about that one
6     criticism?
7  A. And probably the other piece I remember
8     specifically had to do with the questions
9     not being connected to the KSAs.
10 Q. And can you please explain what a KSA is?
11 A. Knowledge, skills and abilities.  In other
12    words, the questions should be coinciding.
13    When you set them up, there should be a
14    question that relates to a particular
15    knowledge, skill and ability on the
16    assessment sheet.
17 Q. Back in 2004 you had three Personnel
18    Specialists III working under you in the
19    central personnel office; correct?
20 A. Yes.
21 Q. And the three were Marilyn Benson, Joan
22    Owens and Lynn Hubbard; correct?
23 A. Yes.
```

Page 266

```
1  Q. And all three answered to you; correct?
2  A. That's correct.
3  Q. Did all three assist you in the performance
4     of your duties and functions?
5  A. All three performed duties that I asked
6     them to perform in terms of what their
7     roles were.  And basically that was all
8     different because, you know, everybody has
9     got a skill level that you try to play
10    into.
11 Q. I understand.  What was Marilyn Benson's
12    skill level?
13 A. I think the classification system in
14    general, her knowledge of the system in
15    general, because she had been in central
16    office longer than anybody else and just
17    knew the players and knew the system, wrote
18    well.
19 Q. Had Marilyn Benson ever worked anywhere
20    with mental health besides central
21    personnel office?
22 A. Yes.
23 Q. Where?
```

Page 267

```
1  A. Planning and staff development.
2  Q. Was that before you became Departmental
3     Personnel Manager?
4  A. No.  In fact, I was personnel manager at
5     that time.
6  Q. Where was the office of planning personnel
7     and staff located?
8  A. The first office that I remember was 135
9     South Union.  The second one was Interstate
10    Park.
11 Q. But it was located here in Montgomery?
12 A. Yeah.
13 Q. Did Marilyn Benson ever work in any of the
14    department's health care facilities?
15 A. She worked in community mental health
16    centers.  She -- You mean one of our state
17    facilities is what you're talking about?
18 Q. Yes, sir.
19 A. Other than going to the facilities in the
20    state.
21 Q. As part of her central personnel
22    responsibilities --
23 A. Yeah.  Uh-huh (positive response).
```

Page 268

```
1  Q. -- did she -- she would have worked or gone
2     to --
3  A. Yes.
4  Q. -- the facilities; correct?
5  A. Yes.
6  Q. My question is, then, did Marilyn Benson
7     ever work as -- work in the capacity as a
8     personnel manager at any Department of
9     Mental Health facility?
10 A. Well, we all rotated for a period of three
11    months to those facilities that -- when we
12    were looking at consolidating.  That was
13    Greil and Tarwater.  So we had like a
14    three-month schedule that we were working.
15    That included me, Joan, Lynn, Marilyn,
16    Suzanne Bledsoe, Rebecca Taylor.  We all
17    rotated back and forth because everybody
18    had a skill level that we were performing
19    at those facilities.
20 Q. Did Marilyn Benson ever work in the
21    capacity of personnel manager at either
22    Greil or Tarwater?
23 A. Personnel manager?  No.  Not in the
```

# DEPOSITION OF JOAN OWENS

## June 2, 2008

## Pages 1 through 261

## PREPARED BY:

**Haislip, Ragan, Green, Starkie & Watson, P.C.**
**566 South Perry Street**
**Post Office Box 62**
**Montgomery, AL  36104**
**Phone: (334) 263-4455**
**Fax: (334) 263-9167**
**E-mail: haislipragan@charter.net**



DEFENDANT'S
EXHIBIT
13



**Page 1**

1   IN THE UNITED STATES DISTRICT COURT
2   FOR THE MIDDLE DISTRICT OF ALABAMA
3   NORTHERN DIVISION
4
5   JOAN FAULK OWENS and
    KAREN LYNN HUBBARD,
6
        Plaintiffs,
7
    Vs.              CIVIL ACTION NO.
8                    2:07-CV-650
    STATE OF ALABAMA DEPT. OF
9   MENTAL HEALTH AND MENTAL
    RETARDATION, et al.,
10
        Defendants.
11
12
13      * * * * * * * * * * * *
14
15      DEPOSITION OF JOAN OWENS, taken pursuant to
16  stipulation and agreement before Lisa J. Green, CCR,
17  ACCR # 334, Registered Professional Reporter and
18  Commissioner for the State of Alabama at Large, in the
19  Law Offices of Melton, Espy & Williams, 255 Dexter
20  Avenue, Montgomery, Alabama on Monday, June 2, 2008,
21  commencing at approximately 9:40 a.m.
22
23      * * * * * * * * * * * *

**Page 2**

1       APPEARANCES
2
3   FOR THE PLAINTIFF:
4   Mr. J. Flynn Mozingo
    MELTON, ESPY & WILLIAMS
5   Attorneys at Law
    255 Dexter Avenue
6   Montgomery, Alabama
7
    FOR THE DEFENDANT:
8
    Mr. H. E. Nix, Jr.
9   NIX, HOLTSFORD, GILLILAND,
        HIGGINS & HITSON
10  Attorneys at Law
    Suite 300
11  4001 Carmichael Road
    Montgomery, AL 36106
12
    Mr. Courtney W. Tarver
13  Deputy Attorney General and
        General Counsel
14  Bureau of Legal Services
    ADMH/MR
15  RSA Union Building
    100 North Union Street
16  Montgomery, Alabama
17
    ALSO PRESENT:
18
    Ms. Lynn Hubbard
19  Ms. Marilyn Benson
    Mr. Henry Ervin
20
21
22
23

**Page 3**

1       EXAMINATION INDEX
2
    JOAN OWENS
3       BY MR. NIX . . . . . . . . . . . . .   5
        BY MR. MOZINGO . . . . . . . . . . . 256
4       BY MR. NIX. . . . . . . . . . . . . 258
5
        DEFENDANT'S EXHIBIT INDEX
6
    1   Internet Use Policy              8
7
    2   Departmental Assistant Personnel Manager   100
8       announcements
    3   6/16/06 Proposal to Conduct a Wage and    115
9       Classification Study
10
    4   11/30/07 Job Classification Structure -   117
11      Final Report
12  5   6/30/05 Exempt Selection Procedure   178
13  6   EEOC Charge filed by Joan Owens   210
14  7   7/10/06 letter to Joan Owens from Lula Bell   213
15  8   Undated letter to Emanuel Smith, Esquire   215
        from Joan Owens
16
    9   Undated letter to Bernice         217
17      Williams-Kimbrough from Joan Owens
18  10  Attachment to Joan Owens' submission for   219
        reconsideration
19
    11  Notice of Intent to Reconsider for Joan   220
20      Owens
21  12  Dismissal and Notice of Rights for Joan   227
        Owens
22
    13  Announcement Log for 2005         229
23

**Page 4**

1       STIPULATION
2       It is hereby stipulated and agreed by and
3   between counsel representing the parties that the
4   deposition of JOAN OWENS is taken pursuant to the
5   Federal Rules of Civil Procedure and that said
6   deposition may be taken before Lisa J. Green,
7   Registered Professional Reporter and Commissioner for
8   the State of Alabama at Large, without the formality
9   of a commission, that objections to questions other
10  than objections as to the form of the question need
11  not be made at this time but may be reserved for a
12  ruling at such time as the said deposition may be
13  offered in evidence or used for any other purpose by
14  either party provided for by the Statute.
15      It is further stipulated and agreed by and
16  between counsel representing the parties in this case
17  that the filing of said deposition is hereby waived
18  and may be introduced at the trial of this case or
19  used in any other manner by either party hereto
20  provided for by the Statute regardless of the waiving
21  of the filing of the same.
22      It is further stipulated and agreed by and
23  between the parties hereto and the witness that the

Page 2

```
 1            APPEARANCES
 2
 3   FOR THE PLAINTIFF:
 4   Mr. J. Flynn Mozingo
     MELTON, ESPY & WILLIAMS
 5   Attorneys at Law
     255 Dexter Avenue
 6   Montgomery, Alabama
 7
     FOR THE DEFENDANT:
 8
     Mr. H. E. Nix, Jr.
 9   NIX, HOLTSFORD, GILLILAND,
     HIGGINS & HITSON
10   Attorneys at Law
     Suite 300
11   4001 Carmichael Road
     Montgomery, AL 36106
12
     Mr. Courtney W. Tarver
13   Deputy Attorney General and
       General Counsel
14   Bureau of Legal Services
     ADMH/MR
15   RSA Union Building
     100 North Union Street
16   Montgomery, Alabama
17
     ALSO PRESENT:
18
     Ms. Lynn Hubbard
19   Ms. Marilyn Benson
     Mr. Henry Ervin
20
21
22
23
```

Page 3

```
 1         EXAMINATION INDEX
 2
     JOAN OWENS
 3     BY MR. NIX . . . . . . . . . . . .   5
       BY MR. MOZINGO . . . . . . . . . . . 256
 4     BY MR. NIX . . . . . . . . . . . .  258
 5
         DEFENDANTS'S EXHIBIT INDEX
 6
     1   Internet Use Policy              8
 7
     2   Departmental Assistant Personnel Manager    100
 8       announcements
 9   3   6/16/06 Proposal to Conduct a Wage and     115
         Classification Study
10
     4   11/30/07 Job Classification Structure -    117
11       Final Report
12   5   6/30/05 Exempt Selection Procedure    178
13   6   EEOC Charge filed by Joan Owens       210
14   7   7/10/06 letter to Joan Owens from Lula Bell   213
15   8   Undated letter to Emanuel Smith, Esquire  215
         from Joan Owens
16
     9   Undated letter to Bernice            217
17       Williams-Kimbrough from Joan Owens
18   10  Attachment to Joan Owens' submission for    219
         reconsideration
19
     11  Notice of Intent to Reconsider for Joan    220
20       Owens
21   12  Dismissal and Notice of Rights for Joan    227
         Owens
22
     13  Announcement Log for 2005            229
23
```

Page 4

```
 1            STIPULATION
 2        It is hereby stipulated and agreed by and
 3   between counsel representing the parties that the
 4   deposition of JOAN OWENS is taken pursuant to the
 5   Federal Rules of Civil Procedure and that said
 6   deposition may be taken before Lisa J. Green,
 7   Registered Professional Reporter and Commissioner for
 8   the State of Alabama at Large, without the formality
 9   of a commission, that objections to questions other
10   than objections as to the form of the question need
11   not be made at this time but may be reserved for a
12   ruling at such time as the said deposition may be
13   offered in evidence or used for any other purpose by
14   either party provided for by the Statute.
15        It is further stipulated and agreed by and
16   between counsel representing the parties in this case
17   that the filing of said deposition is hereby waived
18   and may be introduced at the trial of this case or
19   used in any other manner by either party hereto
20   provided for by the Statute regardless of the waiving
21   of the filing of the same.
22        It is further stipulated and agreed by and
23   between the parties hereto and the witness that the
```

Page 5

```
 1   signature of the witness to this deposition is hereby
 2   waived.
 3
 4          * * * * * * * * * * * * *
 5
 6            JOAN OWENS
 7        The witness, after having first been duly
 8   affirmed to speak the truth, the whole truth and
 9   nothing but the truth testified as follows:
10            EXAMINATION
11   BY MR. NIX:
12   Q.   Would you state your name for the record,
13        please.
14   A.   Joan Faulk Owens.
15   Q.   What is your birthday, Ms. Owens?
16   A.   January the 18th, 1947.
17   Q.   What is your job?
18   A.   Personnel Specialist III.
19   Q.   And where do you work?
20   A.   Department of Mental Health, State of Alabama.
21   Q.   In what department?
22   A.   Personnel, human resources.
23   Q.   How long have you worked in the personnel or
```

Page 6

```
1    human resources department at Mental Health
2    central office?
3         MR. MOZINGO:  Just the central
4         office?
5         MR. NIX:  Yeah.
6    Q.  Well, now, I know that you've been back and
7         forth to some places; isn't that right?
8    A.  Yes, sir.  I began my work at central office
9         in 1999, and this is 2008.
10   Q.  Before that, you were at a couple of
11        facilities doing personnel?
12   A.  Before that, I was Personnel Director at Greil
13        Hospital for six months, and before that I was
14        Personnel Specialist at J. S. Tarwater in
15        Wetumpka for eight, nine years.
16   Q.  And you are the Joan Faulk Owens that is a
17        plaintiff -- one of the plaintiffs in Owens
18        and Hubbard versus the Alabama Department of
19        Mental Health and Mental Retardation and four
20        individuals, Commissioner John Houston,
21        Mr. Henry Ervin, Mr. Otha Dillihay, and
22        Ms. Marilyn Benson?
23   A.  Yes, I am.
```

Page 7

```
1    Q.  And that's the case we're here about today.
2         And I want to ask you some questions,
3         Ms. Owens, about the case.  Okay?
4    A.  Yes, sir.
5    Q.  If you don't understand anything that I ask
6         you, please just let me know, ask me to
7         rephrase it or whatever.  I'll be glad to.
8    A.  Yes, sir.
9    Q.  No reason for you to have to try to answer a
10        question you do not understand.  I don't want
11        you to do that, so please tell me if you don't
12        understand it.
13   A.  Yes, sir.
14   Q.  If I can explain a question better, I'll try
15        to do that.  I just want us to have a meeting
16        of the minds about what we're talking about.
17        Okay?
18   A.  Yes, sir.
19   Q.  Now, this is a deposition that's taken
20        pursuant to the Federal Rules of Civil
21        Procedure.  Back in the middle ages when I
22        practiced -- first started practicing law, I
23        learned that you have to ask -- or at least at
```

Page 8

```
1    that time you did, you ask the witness whether
2    at the conclusion of this deposition after our
3    court reporter, Ms. Green, types it up and has
4    it finished and everything, whether you want
5    to read it and sign it after making certain
6    clerical corrections if there are any clerical
7    corrections to be made, or you may waive the
8    right to do that.  And if you waive the right,
9    then the deposition will simply be used as is
10   without your reviewing it.
11        MR. MOZINGO:  Waive it.
12   A.  Waive.
13   Q.  Okay.  You waive that.  Thank you very much.
14        (Defendant's Exhibit 1 was marked for
15        identification.)
16   Q.  Let me show you Defendant's Exhibit Number 1,
17        please, ma'am.  I'll just ask you to tell me
18        what that is for the record.
19   A.  That is saying that I will only use the
20        Internet on my computer at work for business
21        purposes.
22   Q.  Okay.  And is that your signature down there?
23   A.  Yes, it is.
```

Page 9

```
1    Q.  What is the date of that signature?
2    A.  January 27th, 2000.
3         MR. MOZINGO:  Let me make this
4         statement for the record.
5         Obviously no objection regarding
6         the exhibit, but Exhibit 1
7         speaks for herself, so -- I
8         mean, it speaks for itself.
9              So to the extent her
10        testimony may be adding to
11        Exhibit 1, it does speak for
12        itself and she was simply
13        paraphrasing.
14        MR. NIX:  I was just asking her
15             understanding, but that's fine.
16   Q.  Let me just read a few parts of this for you.
17        Okay?  It says something about a policy,
18        Policy 40-10, Internet Use.  Have you read
19        that policy, the policy that relates to
20        Internet use?  Do you recall?
21   A.  I'm sure I have at some point in time.
22   Q.  Okay.  It says:  I understand that I am
23        required to accept responsibility for use of
```

Page 65

1    A.  I feel that I have been a very good employee,
2         a very good employee, and I am embarrassed of
3         the fact that my employer did not want me in
4         that position because of my race, not because
5         of something that I did.  I have done nothing,
6         sir, and it is embarrassing to me that someone
7         would treat me that way.
8    Q.  All right.  Is that your complete answer?
9    A.  Yes.
10   Q.  Now, let me ask you this.  Let's just assume
11        for a minute, okay, that the process is done
12        over completely.  We're just making that
13        assumption.  Okay?  I'm not agreeing that it
14        should be.  Okay?  I'm just saying, let's you
15        and I in this discussion assume that the
16        process of developing the specs, announcing
17        the job, grading the applications, doing all
18        the other stuff that has to be done to get the
19        right person for the job, if that's going to
20        be done all over again, okay, can you go
21        through with me, you know, what you would do
22        assuming that there is a substitution clause.
23   A.  I would have filled out an application and

Page 66

1         applied.  I said that that's what I was going
2         to do when I got the announcement in my hand
3         before I read it and there was no clause in
4         it, so I would have applied immediately.
5    Q.  All right.  You would get the announcement and
6         apply.  Now, in the normal course of things,
7         where would you send an application to on a
8         job like this?
9              MR. MOZINGO:  Let me just object to
10             the form of the question.
11             Obviously, we contend there was
12             no normal course of things.  So
13             if you want to try to ask her
14             what she -- how she thinks she
15             would go about applying, I think
16             that would be a different
17             question.
18   Q.  Do you know that Mike Mathis was the person --
19   A.  That accepted the applications.
20   Q.  That's right.  Do you know him?
21   A.  Very well.
22   Q.  How do you know Mike Mathis?
23   A.  He's the Personnel Director at Partlow

Page 67

1         Developmental Center.
2    Q.  Do you believe Mike Mathis is a good personnel
3         director?
4    A.  Yes.
5    Q.  Do you believe he's a fair person as a
6         personnel director?
7    A.  Yes.
8    Q.  Do you believe he's qualified to grade
9         applications for a job of this type?
10   A.  Yes.
11   Q.  Do you believe that he would honestly evaluate
12        the applications for the job once they were
13        received by him?
14   A.  Yes.
15        I'm not contending that the interview
16        process was not done correctly.  What I am
17        contending, I was denied the opportunity to
18        even apply, sir.  I'm not contending anything
19        that Mike did was wrong or the interview
20        process was wrong.  I'm contending that I
21        never was able to even get to that point.
22   Q.  I know.
23   A.  Okay.

Page 68

1    Q.  Just bear with me, though.  Okay?
2    A.  Yes, sir.
3    Q.  This is important.
4              Now, assume that Mike Mathis looked at
5         your application and your qualifications.
6         When you apply -- When a person applies for a
7         job and it's clear that they're going to need
8         substitution in order to get that job, do they
9         have to make a request for substitution in the
10        application or does that come later?
11   A.  They don't have to request it.
12   Q.  They do not?
13   A.  No, sir.
14   Q.  How does it come about that a person is
15        considered for substitution?
16   A.  You fill out the application, and you fill it
17        out as completely as you can.  And when Mike
18        graded those applications, he would have
19        looked at my application and he would have
20        figured up how many years of experience I had
21        in personnel.
22   Q.  All right.
23   A.  That's what he would have done.

Page 69

1    Q. Now, as of November 15, 2005, how many years
2       of experience did you have in personnel?
3              MR. MOZINGO: Are you asking with
4              the State or in her career?
5              MR. NIX: Well, with the State
6              first.
7              MR. MOZINGO: Okay.
8    A. I came on board December the 31st of 1990.
9    Q. All right.
10   A. Sir, I'm so nervous, I can't figure. I think
11      around 15 years at that point in time with the
12      State.
13   Q. When did you come into a personnel position of
14      the type necessary to be allowed for
15      substitution?
16   A. When I came to work with the State, but I also
17      was the Personnel Director of Elmore Community
18      Hospital.
19   Q. When was that? You had other private
20      experience is what you're saying?
21   A. Yes, sir.
22   Q. Okay. Is private experience counted in the
23      substitution aspect of the thing?

Page 70

1    A. Yes, sir, I would count it. I was a personnel
2       director.
3    Q. All right. So Mike would take your
4       experience -- look at your experience, and he
5       would say, okay, Ms. Owens has X number of
6       years of experience in personnel?
7    A. Yes.
8    Q. Now, are there any parameters about the type
9       of experience you have to have in order for it
10      to be counted as substitution?
11   A. It would need to -- if the job is in
12      personnel, it would need to be in personnel.
13      It would be -- it would need to be the same
14      type. You couldn't use nursing experience for
15      a personnel job.
16   Q. Okay. So he would determine that you had X
17      number of years in personnel?
18   A. Many.
19   Q. And he would determine that you did not have a
20      bachelor's degree, right?
21   A. True.
22   Q. How far did you go in school?
23   A. I have a high school education, diploma, and I

Page 71

1       also have a business school with Manpower
2       Training Center in Montgomery.
3    Q. Can you tell me what the business school is?
4    A. Well, I attended from August of '65 through
5       July of '66, and it was in business. And it
6       was a school that the government and state --
7       I don't know what type school that was. But
8       it didn't cost money to go, because I couldn't
9       afford to go to another school. So I was able
10      to go to that, and I completed that.
11   Q. Okay. Did you get a certificate of any kind?
12   A. Yes, I did. I graduated from that.
13   Q. And they gave you a certificate of completion?
14   A. Completion, yes, sir.
15   Q. And what did you learn in that course?
16   A. Well, we had business English, business math,
17      business law, business machines, speed
18      reading. I can't think of any more.
19   Q. Okay. You do not consider that, though, a
20      bachelor's degree, do you?
21   A. No, sir.
22   Q. So in terms of the educational requirements,
23      clearly you did not meet the bachelor's

Page 72

1       degree?
2    A. I did not have the four-year degree.
3    Q. So with Mike seeing that, okay, with Mike
4       Mathis seeing that, then what would he do?
5    A. He would have taken my years of experience and
6       substituted -- at that point in time, they had
7       changed the substitution clause from one year
8       of experience to one year of education, they
9       changed it to two years of experience to one
10      year of education. So I would have had to
11      have had eight years of experience, which
12      clearly I've got.
13   Q. To overcome the four-year degree?
14   A. Yes, sir.
15   Q. All right.
16   A. Then I would have had to have had six more
17      years, because I think the application asked
18      for extensive which is, I think, about six
19      more years. I don't know. But I clearly have
20      enough, sir. I have many years of experience
21      in personnel.
22   Q. What about a master's degree? Do you have a
23      master's degree?

# ...ICATION FOR EMPLOYME...
## ...Exempt Classification

RETURN TO
State of Alabama
Department of Mental Health
and Mental Retardation
J. S. Tarwater Developmental Center
P.O. Box 657
Wetumpka, Alabama 36092-0657
(205) 567-8471

**GENERAL INSTRUCTIONS**
Complete all portions of this appli-
cation that are applicable to you and
the position for which you are apply-
ing. Failure to do so may result in your
not being considered for the position
for which you applying. Type or print
clearly in ink.

## AN EQUAL OPPORTUNITY EMPLOYER

Full Name _Owens_ _Joan_ _F._
Last / First / Middle

Social Security Number ▓▓▓▓▓▓▓▓

Address _319 Ross Rd._
House or Apartment No. / Street
_Wetumpka, AL     36092_
City / State / Zip Code

If you are applying for a specific current vacancy, please give position title: _Personnel Manager I_

Telephone Number    Home: _(334) 567-7724_
                    Office: _(334) 567-8471_

Legal Residence _Wetumpka, Elmore AL_
City / County / State

Place of Birth _Birmingham Jefferson AL_
City / County / State

Minimum annual salary you would consider: _____

## LOCATIONS

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of vacancies for which you qualify at those facilities in which you express an interest. Please indicate below at which of our facilities you would con- sider employment. You will only be sent announcements of openings at facilities which you check. After one year and after each succeeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your appli- cation will be destroyed. You will not be sent announcements of positions for which you exceed the qualifications unless you request such.

**Mental Illness Facilities**

( ) Bryce Hospital — Tuscaloosa, AL
( ) Searcy Hospital — Mt. Vernon, AL
( ) Eufaula Adolescent Center — Eufaula, AL
( ) North Alabama Regional Hospital — Decatur, AL
( ) Thomasville Adult Adjustment Center — Thomasville, AL
( ) Hardin Secure Medical Facility — Tuscaloosa, AL
(✓) Greil Psychiatric Hospital — Montgomery, AL

**Mental Retardation Facilities**

( ) William D. Partlow Developmental Center — Tuscaloosa, AL
( ) Albert P. Brewer Developmental Center — Mobile, AL
( ) Lurleen B. Wallace Developmental Center — Decatur, AL
( ) J. S. Tarwater Developmental Center — Wetumpka, AL
( ) Glenn Ireland Developmental Center — Birmingham, AL

( ) **Central Administrative Offices— Montgomery, AL**

(See map on last page for locations of facilities)

**REFERRAL**
Where did you learn about the job for which you applied, or about the Department's application procedure?

_____ Voluntary Walk-in
_____ State Employment Service
_____ College Career Day
_____ DMH/MR Employee
_____ Newspaper Ad
_____ Professional Journal Ad
_____ Radio/TV Ad
_____ Private Employment Agency
_____ State Personnel Department
_____ Professional Convention
_____ Friend/Relative
__✓__ Responded to Announcement of Vacancy
_____ Other — Please explain:

Are you willing to accept shift work during evening and night hours?  Yes ( )  No (✓)

Are you available to work ✓ Full Time _____ Part Time _____ Temporary?

**The Alabama Department of Mental Health and Mental Retardation is an Equal Opportunity Employer. It does not discriminate with respect to race, color, religion, national origin, sex, age, or disability.**

**PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO** ...BLOCK ON BACK OF APPLICATION



**DEFENDANT'S EXHIBIT 14**

ADMH 01-01-00011

## EDUCATION

High school graduate or GED? (✓) Yes    ( ) No     Be as specific as possible about degree and major.

| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did You Graduate? | Degree and Date | Major |
|---|---|---|---|---|---|---|
| College Undergraduate | | | | | | |
| College Undergraduate | | | | | | |
| College Graduate | | | | | | |
| College Graduate | | | | | | |
| Vocational Business | Manpower Training Center, Montg. AL | 08/65 | 07/66 | yes | | Business |

Circle Highest Grade Completed

High School   9   10   11   (12)   College   13   14   15   16   Graduate School   17   18   19

| If you attended college in pursuit of either an under-graduate or graduate degree and did not obtain such, please indicate how many hours were received toward the degree; | Sem Hrs. _____  Qtr. Hrs. _____ | Professional certificates/licenses, date and state where issued: _____ _____ _____ |
|---|---|---|

## REFERENCES

List three reliable persons, not relatives or present employer, who know you well enough to give information about your professional/educational background.

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| Dr. Levi Harris | Albert P. Brewer Ctr, Mobile, AL 36689-0467 | (334) 633-0400 | Director |
| Sally Grier | 3661 Jackson Rd. Millbrook AL 36054 | (334) 285-9124 | Retired Personnel Mgt. |
| Anne Evans | 104 Coosada Dr, Montg. AL 36117 | (334) 271-3821 | Mental Health Central Data Processing |

---

Have you ever been involuntarily terminated or forced to resign from a position?    ( ) Yes   (✓) No

Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment)    ( ) Yes   (✓) No

**If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.**

---

Have you filed an application with this Department before?    (✓) Yes   ( ) No.   If yes, give date and facility name:

Date 1990 _____ Facility Name J. S. Tarwater _____

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? (✓) Yes   ( ) No. If not a citizen of the U.S. give Visa type/status _____ . (Proof of U.S. citizenship or Immigration status will be required upon employment.)

Date when you are available to begin work: after sufficient notice (J.S. Tarwater)

## EDUCATION

High school graduate or GED? (✓) Yes    ( ) No    Be as specific as possible about degree and major.

| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did You Graduate? | Degree and Date | Major |
|---|---|---|---|---|---|---|
| College Undergraduate | | | | | | |
| College Undergraduate | | | | | | |
| College Graduate | | | | | | |
| College Graduate | | | | | | |
| Vocational Business | Man power Training Center, Monta, AL | 08/65 | 11/66 | yes | | Business |

Circle Highest Grade Completed

High School    9    10    11    (12)    College    13    14    15    16    Graduate School    17    18    19

If you attended college in pursuit of either an undergraduate or graduate degree and did not obtain such, please indicate how many hours were received toward the degree;    Sem. Hrs. _____    Qtr. Hrs. _____

Professional certificates/licenses, date and state where issued:
_____

## REFERENCES

List three reliable persons, not relatives or present employer, who know you well enough to give information about your professional/educational background.

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| Dr. Levi Harris | Albert P. Brewer Ctr, Mobile, AL 36689-0467 | (334)633-0400 | Director |
| Sally Grier | 3661 Jackson Rd. Millbrook, AL 36054 | (334)285-9124 | Retired Personnel Mgt. |
| Anne Evans | 104 Coosada Dr, Monty, AL 36117 | (334)271-3821 | Mental Health Central Data Processing |

Have you ever been involuntarily terminated or forced to resign from a position?    ( ) Yes    (✓) No

Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment)    ( ) Yes    (✓) No

**If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.**

Have you filed an application with this Department before?    (✓) Yes    ( ) No.    If yes, give date and facility name:

Date 1990    Facility Name J.S. Tarwater

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? (✓) Yes    ( ) No. If not a citizen of the U.S. give Visa type/status _____. (Proof of U.S. citizenship or Immigration status will be required upon employment.)

Date when you are available to begin work: after sufficient notice (J.S. Tarwater)

ADMH 01-01-00013

**WORK HISTORY**

**THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME' IS ATTACHED**

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

| 1. Current or Last Employer | Your Official Job Title |
|---|---|
| J. S. Tarwater | Personnel Spec. III |
| Address/Zip Code | Telephone Number | Type of Business |
| P.O. Box 670, Wetumpka, AL 36092 | 567-8471 | Facility for Mentally Retarded |

| FROM | TO | Total Months | Fulltime (✓) Parttime ( ) | Name of Supervisor | Ending Salary | May we contact current employer? |
|---|---|---|---|---|---|---|
| Month 12 Year 90 | Month 12 Year 98 | 95 | Hours per week 40 | Tommy Tidd | $ ___ per week | ( ) Yes (✓) No |

Number/Title of Employees you Supervised — Equipment you Operated: Computer, typewriter, copier, fax

Reason for Leaving: Promotion

Describe your Duties in Detail: Copy of Form 40 attached (1996, 1997, 1998)

| 2. Employer | Your Official Job Title |
|---|---|
| Central AL Med. Center | Personnel Director |
| Address/Zip Code | Telephone Number | Type of Business |
| 1201 Company St. Wetumpka, AL 36092 | (334) 567-4311 | Hospital |

| FROM | TO | Total Months | Fulltime (✓) Parttime ( ) | Name of Supervisor | Ending Salary |
|---|---|---|---|---|---|
| Month 11 Year 69 | Month 12 Year 90 | 253 | Hours per week 40 | Christine Trimble, Adm. | $ ___ per hr. |

Number/Title of Employees you Supervised: Supervised as directed by Adm.

Equipment you Operated: General Office Machines

Reason for Leaving: Benefits (Retirement)

Describe your Duties in Detail:

Interviewed applicants for vacancies. Hired independently as well as assisted department heads. Developed and maintained personnel records, served as an advisor in matters of personnel policy and procedure, and labor interpretations. Placed ads in local newspapers for recruiting purposes. Maintained yearly criteria based job evaluations, as required by JCAHO. Conducted disciplinary action and termination. Held exit interviews. Worked with Unemployment Compensation.

I started in the business office, and held numerous positions, the last 4 years of employment I served as the Personnel Director.

Central Alabama Medical Center was JCAHO accredited.

ADMH 01-01-00014

3. Employer _____   Your Official Job _____

Address/Zip Code _____

Telephone Number _____   Type of Business _____

| FROM | | TO | | Total Months | Fulltime ( ) Parttime ( ) | Name of Supervisor | Ending Salary |
|------|--|----|--|------|------|------|------|
| Month | Year | Month | Year | | Hours per week _____ | | $ _____ per _____ |

Number/Title of Employees you Supervised _____   Equipment you Operated _____   Reason for Leaving _____

Describe your Duties in Detail:

4. Employer _____   Your Official Job Title _____

Address/Zip Code _____

Telephone Number _____   Type of Business _____

| FROM | | TO | | Total Months | Fulltime ( ) Parttime ( ) | Name of Supervisor | Ending Salary |
|------|--|----|--|------|------|------|------|
| Month | Year | Month | Year | | Hours per week _____ | | $ _____ per _____ |

Number/Title of Employees you Supervised _____   Equipment you Operated _____   Reason for Leaving _____

Describe your Duties in Detail:

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release or copy thereof, within one year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME _____ (No Initials) (Signature)   SOCIAL SECURITY # _____

FULL NAME _____ (Typed or Printed Name)   CURRENT ADDRESS _____

DATE OF BIRTH __/__/__ PLACE OF BIRTH _____

WITNESS _____   TITLE _____   DATE _____

## CERTIFICATE/SIGNATURE

**Must be signed in ink by applicant**

I certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

Signed X _Joann T. Owens_   DATE X 12/8/98

ADMH 01-01-00015

# APPLICATION FOR PROFESSIONAL EMPLOYMENT
### Exempt Classification
RETURN TO: **RECEIVED**
Address on Announcement

NOV - 2 1990

S. TARWATE
ONNEL OFF



**GENERAL INSTRUCTIONS:**

Complete all portions of this application that are applicable to you and the position for which you are applying. Failure to do so may result in your not being considered for the position for which you are applying. **Type** or **print clearly** in ink.

| | | | |
|---|---|---|---|
| Full Name | Joan First | F. Middle | Owens Last |

Title of Position For Which You Are Applying

Personnel ~~Asst.~~ Sp. II

| Address | 319 Ross Rd. | | |
|---|---|---|---|
| | House or Apartment No | Street | |
| | Wetumpka, AL | 36092 | |
| | City | State | Zip Code |

| Date of Birth | | | Telephone Number |
|---|---|---|---|
| Mo. | Day | Yr. | Home: 567-7724 |
| 01 | 18 | 47 | Office: ~~567-4311~~ |

| Legal Residence | Wetumpka | Elmore | AL |
|---|---|---|---|
| | City | County | State |

Place of Birth

| Birmingham | Jefferson | AL |
|---|---|---|
| City | County | State |

Social Security Number ▬▬▬▬▬

NOTE: This Department is an equal opportunity employer. To comply with Federal reporting requirements we must maintain statistics on employment of protected classes.

| Sex (Check one) | Age | Race (Check one) |
|---|---|---|
| 1. [ ] Male | | [X] White [ ] Black [ ] Hispanic |
| 2. [X] Female | 43 | [ ] Other _____ |

**EDUCATION**  High school graduate or GED? [X] Yes  [ ] No

If no, circle highest grade completed:  1  2  3  4  5  6  7  8  9  10  11  12

| Name and location of business, correspondence, or vocational school attended: | FROM (Mo.) (Yr.) | TO (Mo.) (Yr.) | Did you Graduate? | Area of Study | Degree |
|---|---|---|---|---|---|
| Manpower of Montgomery, AL | 08 65 | 07 66 | Yes | | |

| Name and location of Colleges and Universities Attended | FROM (Mo.) (Yr.) | TO (Mo.) (Yr.) | Did you Graduate? | Field(s) of Study Major(s)  Minor(s) | Degree and Date |
|---|---|---|---|---|---|
| n/a | | | | | |

Graduate or Professional School

| If you attended college, but did not graduate, show credit received  Sem. hrs. _____  Qtr. hrs. _____ | List professional certificate(s) or license(s) and state where issued _____ |
|---|---|

List below courses included in your education which are particularly related to the duties or qualifications of the position for which you are applying.

| Subjects | Sem. hrs. | Qtr. hrs. | Subjects | Sem. hrs. | Qtr. hrs |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

**CERTIFICATE** (Must be signed in ink by applicant):

I certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

Signed  *Joan F. Owens*                    Date  12/31/90

ADMH 01-01-00017

**REFERENCES**

List three reliable persons, not relatives or present employer, who know you well enough to give information about you.

| Name | Address | Occupation |
|------|---------|------------|
| Wayne Stoddard | 302 Gunter Ave. Wetumpka, Alabama | Personnel Director |
| Leonard Hill | 107 Kim Ct. Wetumpka, Alabama | Pastor |
| Bertha Knox | Wetumpka, Alabama | J.S. Tarwater |

| | | |
|---|---|---|
| Do you have any physical handicaps or health problems that would keep you from doing the kind of work for which you are making application? | [ ] Yes | [X] No |
| Have you ever been involuntarily terminated or forced to resign from a position? | [ ] Yes | [X] No |
| Have you ever been convicted of a law violation other than a minor traffic violation? | [ ] Yes | [X] No |

**If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.**

## WORK HISTORY

### THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME' IS ATTACHED

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary)

| 1 Current or Last Employer | Your Official Job Title |
|---|---|
| Central Alabama Medical Center | Personnel Director |

| Address | Type of Business |
|---|---|
| 1201 Company St. Wetumpka, Alabama | Hospital |

| FROM Month Year | TO Month Year | Total Months | If part-time, number of hours per week | Beginning Salary | Ending Salary | May we contact employer? |
|---|---|---|---|---|---|---|
| 11 69 | 11 90 | 252 | | $ ▓▓▓ per hr. | $ ▓▓▓ per hr. | [X] Yes [ ] No |

| Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving |
|---|---|---|
| Supervise as directed by Adm. | General Office | Benefits (Retirement) |

Describe your Duties in Detail:
see attached

Job duties beginning in 1986.

| 2. Employer | Your Official Job Title |
|---|---|
| | |

| Address | Type of Business |
|---|---|
| | |

| FROM Month Year | TO Month Year | Total Months | If part-time, number of hours per week | Beginning Salary | Ending Salary |
|---|---|---|---|---|---|
| | | | | $ ____ per ____ | $ ____ per ____ |

| Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving |
|---|---|---|
| | | |

Describe your Duties in Detail:

## REFERENCES

List three reliable persons, not relatives or present employer, who know you well enough to give information about you.

| Name | Address | Occupation |
|---|---|---|
| Wayne Stoddard | 302 Gunter Ave. Wetumpka, Alabama | Personnel Director |
| Leonard Hill | 107 Kim Ct. Wetumpka, Alabama | Pastor |
| Bertha Knox | Wetumpka, Alabama | J.S. Tarwater |

| | | |
|---|---|---|
| Do you have any physical handicaps or health problems that would keep you from doing the kind of work for which you are making application? | [ ] Yes | [X] No |
| Have you ever been involuntarily terminated or forced to resign from a position? | [ ] Yes | [X] No |
| Have you ever been convicted of a law violation other than a minor traffic violation? | [ ] Yes | [X] No |

**If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.**

## WORK HISTORY

**THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME' IS ATTACHED**

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary)

| 1. Current or Last Employer: Central Alabama Medical Center | Your Official Job Title: Personnel Director |
|---|---|

Address: 1201 Company St. Wetumpka, Alabama | Type of Business: Hospital

FROM 11 69 | TO 11 90 | Total Months 252 | Beginning Salary $ per hr. | Ending Salary $ per hr. | May we contact employer? [X] Yes [ ] No

Number/Title of Employees you Supervised: Supervise as directed by Adm. | Equipment you Operated: General Office | Reason for Leaving: Benefits (Retirement)

Describe your Duties in Detail: see attached
Job duties beginning in 1986.

| 2. Employer | Your Official Job Title |
|---|---|

Address | Type of Business

FROM | TO | Total Months | Beginning Salary | Ending Salary

Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving

Describe your Duties in Detail:

ADMH 01-01-00019

| 3. Employer | | | | Your Official Job Title | | |
|---|---|---|---|---|---|---|

| Address | | | | Type of Business | | |
|---|---|---|---|---|---|---|

| FROM Month  Year | TO Month  Year | Total Months | If part-time, number of hours per week _____ | Beginning Salary  $ _____ per _____ | Ending Salary  $ _____ per _____ | |
|---|---|---|---|---|---|---|

| Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving |
|---|---|---|

Describe your Duties in Detail:

| 4. Employer | | | | Your Official Job Title | | |
|---|---|---|---|---|---|---|

| Address | | | | Type of Business | | |
|---|---|---|---|---|---|---|

| FROM Month  Year | TO Month  Year | Total Months | If part-time, number of hours per week _____ | Beginning Salary  $ _____ per _____ | Ending Salary  $ _____ per _____ | |
|---|---|---|---|---|---|---|

| Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving |
|---|---|---|

Describe your Duties in Detail:

| 5 Employer | | | | Your Official Job Title | | |
|---|---|---|---|---|---|---|

| Address | | | | Type of Business | | |
|---|---|---|---|---|---|---|

| FROM Month  Year | TO Month  Year | Total Months | If part-time, number of hours per week _____ | Beginning Salary  $ _____ per _____ | Ending Salary  $ _____ per _____ | |
|---|---|---|---|---|---|---|

| Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving |
|---|---|---|

Describe your Duties in Detail:

ADMH 01-01-00020

## AVAILABILITY

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of any vacancies for which you qualify at those facilities in which you express an interest. Please indicate below at which of our facilities you would consider employment. You will only be sent announcements of openings at those facilities which you check. After one year and after each suceeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your application will be destroyed.



### Mental Illness Facilities

[  ] Bryce State Hospital — Tuscaloosa, AL

[  ] Searcy State Hospital — Mt. Vernon, AL

[  ] Eufaula Adolescent Adjustment Center — Eufaula, AL

[  ] North Alabama Regional Hospital — Decatur, AL

[  ] Thomasville Adult Adjustment Center — Thomasville, AL

[  ] Hardin Secure Medical Facility — Tuscaloosa, AL

[  ] Greil Psychiatric Hospital — Montgomery, AL

### Mental Retardation Facilities

[  ] Partlow State School & Hospital — Tuscaloosa, AL

[  ] Albert P. Brewer Developmental Center — Mobile, AL

[  ] Lurleen B. Wallace Developmental Center — Decatur, AL

[ X ] I.S.Tarwater Developmental Center — Wetumpka, AL

[  ] Glenn Ireland Developmental Center — Birmingham, AL

[  ] Central Administrative Offices — Montgomery, AL

What is the minimum annual salary that you would consider? ___negotiable___

Are you willing to accept shift work during evening and night hours? Yes [  ]    No [X]

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN:

I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health and Mental Retardation bearing this release or copy thereof, within six (6) months of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, arrests and/or conviction records and any medical record reflecting treatment or care for any illness or disability sustained by me within the past three (3) years. I hereby authorize you to release such records or information upon request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications, suitability and fitness for employment with the Alabama Department of Mental Health and Mental Retardation. I hereby release you as the custodian of such records from any and all liability damages which may result to me, my heirs or family, because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME _____
(No Initials Please)          Signature

FULL NAME: _____
(Typed or Printed Name)

DATE OF BIRTH _____

PLACE OF BIRTH _____

WITNESS: _____ TITLE _____

SOCIAL SECURITY NUMBER _____

CURRENT ADDRESS _____

_____

DATE _____

DATE _____

ADMH 01-01-00021

# DEPOSITION OF LYNN HUBBARD

## June 3, 2008

## Pages 1 through 213

## PREPARED BY:

**Haislip, Ragan, Green, Starkie & Watson, P.C.**
**566 South Perry Street**
**Post Office Box 62**
**Montgomery, AL 36104**
**Phone: (334) 263-4455**
**Fax: (334) 263-9167**
**E-mail: haislipragan@charter.net**

DEFENDANT'S
EXHIBIT

_15_

tabbies



Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
 2        FOR THE MIDDLE DISTRICT OF ALABAMA
 3               NORTHERN DIVISION
 4
 5    JOAN FAULK OWENS and
      KAREN LYNN HUBBARD,
 6
          Plaintiffs,
 7
      Vs.              CIVIL ACTION NO.
 8                      2:07-CV-650
      STATE OF ALABAMA DEPT. OF
 9    MENTAL HEALTH AND MENTAL
      RETARDATION, et al.,
10
          Defendants.
11
12
13        * * * * * * * * * * * * *
14
15        DEPOSITION OF LYNN HUBBARD, taken pursuant to
16    stipulation and agreement before Lisa J. Green, CCR,
17    ACCR # 334, Registered Professional Reporter and
18    Commissioner for the State of Alabama at Large, in the
19    Law Offices of Melton, Espy & Williams, 255 Dexter
20    Avenue, Montgomery, Alabama on Tuesday, June 3, 2008,
21    commencing at approximately 10:25 a.m.
22
23        * * * * * * * * * * * * *
```

Page 2

```
 1          APPEARANCES
 2
 3    FOR THE PLAINTIFF:
 4    Mr. J. Flynn Mozingo
      MELTON, ESPY & WILLIAMS
 5    Attorneys at Law
      255 Dexter Avenue
 6    Montgomery, Alabama
 7
      FOR THE DEFENDANT:
 8
      Mr. H. E. Nix, Jr.
 9    NIX, HOLTSFORD, GILLILAND,
          HIGGINS & HITSON
10    Attorneys at Law
      Suite 300
11    4001 Carmichael Road
      Montgomery, AL  36106
12
      Mr. Courtney W. Tarver
13    Deputy Attorney General and
          General Counsel
14    Bureau of Legal Services
      ADMH/MR
15    RSA Union Building
      100 North Union Street
16    Montgomery, Alabama
17
      ALSO PRESENT:
18
      Ms. Joan Owens
19    Ms. Marilyn Benson
      Mr. Henry Ervin
20
21
22
23
```

Page 3

```
 1          EXAMINATION INDEX
 2
      LYNN HUBBARD
 3      BY MR. NIX . . . . . . . . . . . .   5
 4
 5          EXHIBIT INDEX
 6
                                         MAR
 7    DEFENDANT'S EXHIBIT
      14   Charge of Discrimination for Karen Hubbard   101
 8
      15   Dismissal and Notice of Rights for Karen    103
 9       Hubbard
10    16   DMH/MR Internet Use Policy               130
11    17   11/6 Fax Transmittal Sheet with attached   184
         11/6/06 letter to Sherry Guenster from
12       Karen Hubbard
13    18   9/25/06 letter to Emanuel Smith from Karen   189
         Hubbard
14
      19   10/4/06 letter to Karen Hubbard from      189
15       Bernice Williams-Kimbrough
16    20   9/18/06 letter to Bernice             192
         Williams-Kimbrough from Karen Hubbard with
17       attachments
18    21   Notice of Intent to Reconsider for Karen    192
         Hubbard
19
      22   Notice of Right to Sue Within 90 Days     193
20
21
22
23
```

Page 4

```
 1             STIPULATION
 2        It is hereby stipulated and agreed by and
 3    between counsel representing the parties that the
 4    deposition of LYNN HUBBARD is taken pursuant to the
 5    Federal Rules of Civil Procedure and that said
 6    deposition may be taken before Lisa J. Green,
 7    Registered Professional Reporter and Commissioner for
 8    the State of Alabama at Large, without the formality
 9    of a commission, that objections to questions other
10    than objections as to the form of the question need
11    not be made at this time but may be reserved for a
12    ruling at such time as the said deposition may be
13    offered in evidence or used for any purpose by
14    either party provided for by the Statute.
15        It is further stipulated and agreed by and
16    between counsel representing the parties in this case
17    that the filing of said deposition is hereby waived
18    and may be introduced at the trial of this case or
19    used in any other manner by either party hereto
20    provided for by the Statute regardless of the waiving
21    of the filing of the same.
22        It is further stipulated and agreed by and
23    between the parties hereto and the witness that the
```

Deposition of Lynn Hubbard

June 3, 2008

Page 13

1    know her maiden name.
2    Q.  Do they have children over 19?
3    A.  She has a child by a previous marriage who --
4        her name is Mimi, and she's mentally disabled.
5    Q.  Okay.  Did you say his wife's name is Vickie
6        or Mimi?
7    A.  Mimi is the daughter.  Vickie is his wife.
8        Now, he has children from a previous marriage.
9    Q.  Are they over 19?
10   A.  Yes, and there's a bunch of them.  They're
11       not -- not all of them are his.  He married a
12       woman that had kids, so he ended up with eight
13       kids also.
14   Q.  How many of them live around this area?
15   A.  Dennis Hubbard is his son, and he lives in
16       Millbrook or Prattville, one or the other.
17       I'm not sure where.
18   Q.  Okay.  Keep going just on the children that
19       live in this area that are over 19.
20   A.  His stepdaughter, Barbara.
21       MR. MOZINGO:  If you would like for
22       me to have her prepare a list
23       for you to kind of expedite it,

Page 14

1        I'll be glad to.  It's up to
2        you.
3        MR. NIX:  That's great if you don't
4        mind doing that.  I mean, I was
5        going to ask also about aunts
6        and uncles, that kind of stuff.
7        I just want to get a complete --
8        pretty close family tree so I'll
9        know how to --
10       MR. MOZINGO:  Since it's late
11       starting and she's apparently
12       related to every third person in
13       Montgomery --
14       MR. NIX:  That's true.
15       MR. MOZINGO:  -- we'll just do that
16       to move us along.
17   Q.  Do you attend church anywhere?
18   A.  I do.
19   Q.  Where do you go to church?
20   A.  Frazer.
21   Q.  I thought your face looked a little familiar.
22   A.  I'm not a member, and I've only been going
23       very recently.  I'm a member of a Sunday

Page 15

1        school class there.  Volunteer some
2        information.
3    Q.  What class do you go to?
4    A.  Women in Christ.
5    Q.  Who teaches that class?
6    A.  Vivian somebody.
7    Q.  There's so many people over there, it's hard
8        to remember.  All right.  So you attend
9        Frazer.
10       Are you a member of any organizations or
11       entities?
12   A.  Huh-uh.  (Negative response.)  No, sir.  I'm
13       sorry.
14   Q.  Any clubs?
15   A.  No, sir.
16   Q.  Just church.  Work, church, and home?
17   A.  Yes.
18   Q.  What is your birth date?
19   A.  February 20, 1958.
20   Q.  And you are the Karen Lynn Hubbard that's the
21       plaintiff in this lawsuit --
22   A.  Yes, sir.
23   Q.  -- that we're here about today; is that right?

Page 16

1    A.  Yes, sir.
2    Q.  When did you first become employed with the
3        Department of Mental Health?
4    A.  December 31st of 1991.
5    Q.  What did you do?
6    A.  I was a Clerk Typist in the Mental Retardation
7        division.
8    Q.  What was your next job?
9    A.  The classification actually changed to
10       Administrative Support Assistant in Mental
11       Retardation, and then I transferred to the
12       Personnel Office.
13   Q.  Whendid you transfer to Personnel?
14   A.  I was only in Mental Retardation a year to two
15       years.  I can't say.  I've looked, and I know,
16       but I can't -- I haven't memorized it.  I'm
17       sorry.
18   Q.  Since '92 or '93 --
19   A.  Yes.
20   Q.  -- that you transferred?
21   A.  I would think.
22   Q.  Transferred to the Central Office Personnel?
23   A.  Yes, sir.

4 (Pages 13 to 16)

Deposition of Lynn Hubbard                                                                June 3, 2008

Page 17

1   Q.  Who was your boss then?
2   A.  My supervisor was Sue Smitherman.
3   Q.  What was your job at that time?
4   A.  I was clerical support to the Personnel
5       Specialist and also to Sue Smitherman if she
6       needed anything done.  But basically, I did
7       technical support for the Personnel
8       Specialist.
9   Q.  How long did you have that job?
10  A.  I was promoted to Administrative Support
11      Assistant III ... I don't know what year it
12      was.
13  Q.  Just give me a ballpark.  Why don't you do
14      that?
15  A.  You think that's easy until you get here and
16      ask me something.
17  Q.  I know.  It's not as easy as you think
18      sometimes, is it?
19  A.  Butch is already gone.  Henry was there.
20         MR. ERVIN:  '98?  '97, '98.
21  A.  I would be guessing between '96, '97, '98.  I
22      don't know.
23  Q.  You were put in what position at that time?

Page 18

1   A.  ASA III.  Administrative Support Assistant
2       III.
3   Q.  Administrative Support Assistant III.  All
4       right.
5   A.  You know what.  That's not true.
6   Q.  That's not true?
7   A.  I was already an ASA III, I think, when Henry
8       came.  I'm sorry.
9   Q.  That's all right.
10         MR. MOZINGO:  Just to the best of
11            your memory.  I mean, it's not a
12            test.
13  Q.  It's really not.
14  A.  I would say that I was in Personnel maybe
15      three to four years when I was promoted, maybe
16      five years, to Administrative Support
17      Assistant III.
18  Q.  Okay.
19  A.  I get tangled up with that and my other
20      promotion sometimes.
21  Q.  What was your next job after Administrative
22      Support Assistant III?
23  A.  Personnel Specialist III.

Page 19

1   Q.  When did you become a Personnel Specialist
2       III?
3   A.  July 1st of 2001.
4   Q.  Okay.
5   A.  I think it's 2001.  2000, 2001, but I'm going
6       with 2001.
7   Q.  One.  That's your story and you're sticking to
8       it.
9          I have all that information.  I just
10      wanted to go through it and just kind of get a
11      ballpark for the --
12  A.  Okay.
13  Q.  -- for the dates and the lay of the land.
14         . . Now, there came a time when there was an
15      announcement for a job called Departmental
16      Assistant Personnel Manager.
17  A.  Uh-huh.  (Positive response.)
18  Q.  Correct?
19  A.  Yes.
20  Q.  Now, and by the way, Ms. Hubbard, I want to
21      make sure that this was on the record, too.
22      Isn't it correct that yesterday when I asked
23      Ms. Owens questions in a deposition just like

Page 20

1       this that you were present for that deposition?
2   A.  That's correct.
3   Q.  And you listened to my questions? .  .
4   A.  I did.
5   Q.  And you heard her answers; isn't that correct?
6   A.  I did.
7   Q.  And you heard her say that in the course of
8       the two of you filing complaints with the
9       Equal Employment Opportunity Commission, that
10      you conversed together, talked, compared
11      notes, that sort of thing.  Is she correct
12      about that?
13  A.  I had disagreements with her in the way that
14      she worded things that she said, so can you
15      ask me the question, like, specifically to
16      what you're referring to?
17  Q.  Well, how about doing it this way.  I believe
18      her testimony was that during the course of
19      time when the two of you were preparing to
20      file a charge against the Alabama Department
21      of Mental Health and Mental Retardation
22      relative to the job of the Departmental
23      Assistant Personnel Manager and the fact that

# APPLICATION FOR EXAMINATION

RETURN TO
STATE PERSONNEL DEPARTMENT
MONTGOMERY, ALABAMA 36130

AN EQUAL OPPORTUNITY EMPLOYER

RECEIVED

Nov 1 05 AM '91

STATE
PERSONNEL DEPARTMENT

ENTER SOCIAL SECURITY NUMBER HERE

**GENERAL INSTRUCTIONS**

A separate application is required for each job. Do not write in shaded areas. Type or print clearly in dark ink and sign. Complete all parts of the application form. Applications not properly completed will be returned.

Full Name: **Karen Lynn Hubbard**

Title of Examination for Which you are Applying: **Typist II**

Address: **2534 Poplar Street**

Option (if Applicable)

City: **Montgomery**  State: **Al**  County: **Montgomery**  Zip Code: **36107**

Date of Birth: **02 20 58**

Telephone Number: Home **(205) 265-1470**   Office **N/A**

Sex (Check One)
1. | Male
2. |X| Female

Race (Check One)
1. |X| White
5. | American Indian or Alaskan Native
2. | Black
3. | Hispanic
6. | Other
4. | Asian or Pacific Islander

**EDUCATION**

High School Graduate or GED? |X| Yes | No   If No, circle highest grade completed   1 2 3 4 5 6 7 8 9 10 11 12

Name and location of high school attended: **Stanhope Elmore High - Millbrook, Al**

| FROM (Mo) (Yr) | TO (Mo) (Yr) | Did you Graduate? | Date of Graduation | |
|---|---|---|---|---|
| 09 70 | 05 76 | Yes | 05/1976 | senior |

Name and location of Colleges and Universities Attended

| | FROM (Mo) (Yr) | TO (Mo) (Yr) | Did you Graduate? | Fields of Study Majors / Minors | | Degree and Date |
|---|---|---|---|---|---|---|
| **Auburn University At Montgomery** | 09/76 | 02/79 | no | **English** | **Sociology** | n/a |

Name and location of business, correspondence or vocational school attended

If you attended college, but did not graduate, show credit received Sem. hrs. _____ Qtr. hrs. **100**

List professional certificate or license if applicable _____

List below courses included in your education which are particularly related to the duties of this position.

| Subjects | Sem hrs | Qtr hrs | Subjects | Sem hrs | Qtr |
|---|---|---|---|---|---|
| | | | | | |

## COMPLETE THIS SECTION IF YOU ARE CLAIMING VETERAN'S PREFERENCE

If you claim Veteran's Preference, check the type below. Attach copies (which will not be returned) of the required documents to your application to support your claim.

1. | Veteran (5 points) — Requires DD214 or document showing dates of service and type of discharge. **If this has been submitted previously & is on file with this office, you may disregard this requirement.**
2. | Disabled Veteran (10 points) — Requires DD214 or other document as above & letter of disability from VA dated within last 6 months. V.A. letter must be kept updated until register **Is established or you lose the extra 5 points.**
3. | Veteran's widow (10 points) — Requires DD214 or other document as above & marriage & death certificates. Cannot be claimed if widow remarries.
4. | Disabled Veteran's wife (10 points) — Requires DD214 or other document as above & V.A. letter of disability dated within last 6 months. Cannot be claimed unless still married to disabled veteran.
5. | Permanently Disabled Veteran (10 points) — Requires DD214 or other document as above indicating veteran is permanently disabled; or DD214 or other document & V.A. letter indicating permanent disability

## COMPLETE THIS SECTION IN ORDER TO BE SCHEDULED FOR WRITTEN EXAMS

Written exams will be given periodically in any of the cities listed below for which a sufficient number of applicants express preference. Indicate by number your 1st, 2nd, and 3rd choices.

01 | Alexander City
02 | Andalusia
03 | Birmingham
04 | Decatur
05 | Dothan
06 | Anniston
07 | Linden
08 | Mobile
09 | Montgomery
10 | Selma
11 | Sheffield
12 | Tuscaloosa

If you qualify, you will receive a notice showing the place and time you are to report for the exam.

## CERTIFICATE (Must be signed in ink by applicant):

I certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statement may cause me to be refused the opportunity of examination or employment. I further authorize the release of all relevant prior employment, military service and criminal records. If employed I agree, consistent with applicable laws, to receive compensatory time off in lieu of overtime compensation for any overtime hours worked.

Signed **K. Lynn Hubbard**   Date _____

**DEFENDANT'S EXHIBIT 16**

ADMH 01-02-00115

DO NOT WRITE IN THIS SPACE

# STATE OF ALABAMA
## APPLICATION FOR EXAMINATION

RETURN TO
STATE PERSONNEL DEPARTMENT
MONTGOMERY, ALABAMA 36130

AN EQUAL OPPORTUNITY EMPLOYER

**General Instructions**

A separate application is required for each job. **Do not write in shaded areas.** Complete all parts of the application. Applications not properly completed will be returned.

| Examination For Which You Are Applying (one per application) | Option (if applicable) |
|---|---|
| 10198 | |

Administrative Support Assistant III – 10198

## ENTER SOCIAL SECURITY NUMBER BELOW.

*File*

| Full Name | Karen | Lynn | Hubbard |
|---|---|---|---|
| | First, | Middle | Last |

| Address | 2534 Poplar Street | | |
|---|---|---|---|
| | House or Apartment Number | Street | |
| | Montgomery | AL | Montgomery | 36107 |
| | City | State | County | Zip Code |

Telephone Number: Home ( 334 ) 265-1470      Work ( 334 ) 242-3136
                        Area Code                        Area Code

**The following information is required for governmental reporting or recordkeeping purposes:**

Date of Birth    2    20    58        Sex (check one)  1. ( ) Male   2. (x) Female
               (Month) (Day) (Year)

Race (check one)  1. (X) White   2. ( ) Black   3. ( ) Hispanic   4. ( ) Asian or Pacific Islander   5. ( ) American Indian or Alaskan Native

---

## EDUCATION: CIRCLE THE HIGHEST GRADE OF SCHOOL COMPLETED.

1  2  3  4  5  6  7  8  9  10  11  12  (GED)   College  1  (2)  3  4   Graduate  1  2  3  4

### PROVIDE INFORMATION ON ALL SCHOOLS ATTENDED.   SPECIFY UNDERGRADUATE OR GRADUATE WORK.

22

| Name and Location of School | Dates of Attendance Month/Year From | To | Credit Hours Sem. | Qtr. | Did You Graduate? Yes | No | Type of Degree and Date | Major |
|---|---|---|---|---|---|---|---|---|
| Auburn University at Montgomery | 9/76 | 2/79 | | 100 | | X | N/A | English |

### PROFESSIONAL LICENSE OR CERTIFICATE

| License/Certificate Issued By | Field/Trade/Specialization | License/Certificate No. | Issue Date | Expiration Date |
|---|---|---|---|---|
| | | | | |

LIST COURSES (AND HOURS) WHICH ARE PARTICULARLY RELATED TO THE POSITION (attach additional sheets, if needed).

---

## CERTIFICATE

I affirm that all statements on or attached to this application are true and correct to the best of my knowledge. I know that any false statements may cause me to be denied the chance for testing, to be removed from a register, or released from employment. I have no prior knowledge of the examination. I will not discuss the test I have taken. I further authorize the release of all relevant prior employment, military service and criminal records. If employed I agree, consistent with applicable laws, to receive compensatory time off in lieu of overtime compensation for any overtime hours worked.

Signature _Karen L. Hubbard_    Date _1/21/97_

**During the application process, your name may be removed from a register for any valid reason.**

ADMH 01-02-00133



## State of Alabama
## Department of Mental Health and Mental Retardation

NUMBER:    60-22

SUBJECT:   Personnel/Payroll
TITLE:     Job Evaluation Committee

EFFECTIVE: 4/7/89        REVIEWED:        CHANGED: 3/5/05

RESPONSIBLE
OFFICE:    Division of Administration/Personnel

APPROVED:

**I.    POLICY:**

The Department of Mental Health/Mental Retardation will establish a Job Evaluation Committee to maintain its exempt classification and pay structure.

**II.    STANDARDS:**

1.    The Committee will be responsible for making recommendations to the Commissioner on the following issues:

    a.    Revisions to classification specifications.
    b.    Establishment of new job classifications.
    c.    Salary range adjustments in assigned classifications.
    d.    Substitution of training and experience for established minimum qualification requirements.

2.    The Committee will consist of nine members. Membership shall include:

    a.    The Department's Personnel Director who shall Chair the committee.
    b.    One member appointed by the Associate Commissioner for Administration or designee.
    c.    One member appointed by the Associate Commissioner for Mental Illness.
    d.    One member appointed by the Associate Commissioner for Mental Retardation.
    e.    One member appointed by the Associate Commissioner of Substance Abuse Services.



DEFENDANT'S EXHIBIT
17

ADMH 04-00078



DMH/MR Policy 60-22

    f.    One member appointed by the Commissioner for the Office of the Commissioner.

    g.    The Associate Commissioner for Mental Illness Services or designee

    h.    The Associate Commissioner for Mental Retardation Services or designee

    i.    The Associate Commissioner for Substance Abuse Services or designee

3.    The job evaluation committee shall be appointed or re-appointed for two (2) year terms.

4.    The committee shall meet at least quarterly or as necessary. .

5.    Issues to be reviewed by the Committee will be submitted by the Commissioner or by an Appointing Authority through the appropriate Associate Commissioner.

6.    Issues to be reviewed shall be submitted at least two (2) weeks prior to a scheduled meeting.

7.    Minutes of the Job Evaluation Committee meeting will be distributed to the Commissioner, Associate Commissioners, and Facility/Office Directors.

8.    Exempt Classification Pay Distribution Notices will be distributed to Associate Commissioners, Facility Directors, and Facility Personnel Managers upon approval by the Commissioner.

ADMH 04-00079

## MINUTES OF THE
## JOB EVALUATION COMMITTEE MEETING
## HELD
## July 22, 2005

Members Present:     Henry Ervin
                     Kent Hunt
                     John Zeigler
                     Judith Johnston
                     Eranell Wilson
                     June Lynn
Also Attending:      Kathleen Brantley

Members Absent:      Otha Dillihay
                     Paul Bisbee

Committee chairman began the meeting by noting this was the first meeting since the committee has been charged with additional responsibilities of reviewing all positions announced since the implementation of new hiring guidelines.

**The first item to be considered was a substitution of experience on Kathy Cason (Rec. Activity Specialist I – North Ala. Regional).** There was also an additional request to hire Ms. Cason beyond the minimum steps allowed. It was noted that the Committee does not have that responsibility; it is done solely at the approval of the Commissioner.

**The second item: Review of the revised job specifications for the Community Service Specialist series.** Old and new specs were handed out for Committee members to compare. It was noted that no change in salary range recommendations were made on the CSS I and CSS II series, however the new qualifications for the CSS III now allow a bachelor's level individual to qualify with experience. Recommendations were made to increase the ranges for the CSS III from range 72 to 74, the CSS IV from range 77 to 78 and the CSS V from 80 to 82. These recommendations were made based upon when funding becomes available. A motion was made to approve the specs as revised. Another motion was made to approve the pay ranges when funding is available. Both motions were seconded and approved. It was also noted that if anyone is hired in the interim, they would be hired at the current pay range.

There was discussion about whether or not a financial analysis had been done before making the proposed salary range increases. It was noted that because these positions are so unique, there are no positions in which to make a comparison.



DEFENDANT'S
EXHIBIT
tabbies
*18*

ADMH 02-00044

Commissioner Houston addressed the group and thanked everyone for their willingness to accept the added responsibility of reviewing all the new positions under the new hiring guidelines.    He mentioned two positions that he would like to fill, Fiscal Mgr. IV, and Administrator VII, but he stated that he did not have any intentions of acting on either one of them in the immediate future.  He really wanted to get input from the Committee as to what their recommendations would be regarding both positions.

There was discussion about filling any new positions until the beginning of the fiscal year.  Eranell Wilson recommended that there be no additions to the already existing deficit.

**Each Committee member was given a list of positions to be considered.  Requests were reviewed by facility, starting with Bryce:**
All Bryce requests were approved with the exception of the Plant Maintenance Worker.  The committee voted and approved to hold this position until the next meeting.

There was discussion about many security officers getting their certifications and leaving the department as soon as they are certified.  It was suggested that we come up with a policy that would require them to stay a certain length of time before they were able to transfer somewhere else.

Judith recommended that the facilities provide more detailed information when submitting letters of justification for their positions.  She volunteered to work on outlining more specific details which would be useful in helping the committee.    It was also noted that it might be necessary to get the facility director on the phone during the actual meetings to answer additional questions that the committee may have regarding the need to replace their positions, particularly if they have been vacant for some time.

**The request from Griel for a MH Security Officer I was withdrawn from consideration.**

**North Alabama Regional' s request for a Plant Maintenance Worker was approved.**

**Partlow's requests were all approved.**

**Searcy's requests were all approved with the exception of (2) ASA I's, Material Manager II, and (2) Staff Development Specialist I's that were put on hold.  There was discussion regarding the Staff Development Specialist positions, and the Staff Dev. Spec. IV was approved.**

**Taylor Hardin Secure Medical's positions were all approved with the exception of (2) Security Officer positions:  (Don Fowler & Roy Swartz).**

**Central Office positions were all approved.  There was discussion regarding the Fiscal Manager IV (Budget Officer), the Administrator VII, and the Assistant Dept.**

2

**Personnel Manager positions.** There was discussion about announcing the Assistant Dept. Personnel Manager position until the beginning of the fiscal year. Due to the nature of these positions, there was concern about how facilities would perceive announcing new positions at a time when new hiring restrictions are being imposed.

A motion was made and a vote was taken to approve announcing the positions. The discretion on when to announce the Fiscal Mgr. IV and Administrator VII would be left up to the Commissioner. It was voted to delay announcing the Asst. Dept. Personnel Director until the beginning of the fiscal year.

There was discussion about the Contract Office position (Accounting Assistant). Kathleen expressed her concern about whether an individual in this position would be qualified to do fiscal inventory.

**There were 12 new positions in Substance Abuse to be considered.** Kent mentioned that his entire office was being restructured. Some of the current staff would be able to qualify for the newly created positions. If the individuals were selected to fill the positions, their old positions would be abolished. After lengthy discussion, all the positions were approved.

There was a motion to adjourn until the August meeting.

Minutes submitted by: _____

Marilyn B. Benson

Minutes approved by: _____

Henry E. Ervin

3

# Personnel Specialist III

*Job Code: H3000*                                        *Pay Range: 75*

**Definition:**

    This is specialized administrative work assisting in the direction of human resource management activities for a mental health facility or at the Central Personnel Office.

    Employees in this class assist in the direction of a human resource management program of extensive size, scope and complexity. Employees perform such responsible human resource management activities such as recruitment, selection, placement, and classification and pay, requiring close adherence to rules and regulations of the State Personnel Board and to special federal and state laws and regulations. Other employees participate in assigned phases of personnel work in the Central Personnel Office of the Department. Supervision is exercised over subordinate personnel assistants and/or clerical staff engaged in processing and handling a variety of personnel transactions. Employees work with relative independence making decisions on routine matters, but problems encountered or more difficult work are referred to the immediate supervisor or HR Director who makes assignments, and evaluates work through conferences and reviews of completed tasks.

**Examples of Work Performed:** (Any one position may not include all of the duties listed, nor do the examples cover all of the duties, which may be performed.)

- Supervises and coordinates recruitment, selection, and placement of personnel
- Supervises and coordinates the processing of various personnel actions to include appointments, demotions, promotions, reclassifications, retirements, transfers, reallocations, and pre-disciplinary hearings
- Provide technical assistance to department heads/facility directors, associate commissioners, the commissioner and/or HR director regarding various HR related matters
- Announces vacancies and determines if experience and education indicated on applicants meets minimum qualifications
- Confers with supervisors, managers, and other professionals in developing policies, programs, and procedures for effective coordination of HR services
- Schedules and conducts interviews of candidates



DEFENDANT'S
EXHIBIT
*19*

ADMH 01-06-00119

Personnel Specialist III
Continued

- Confers with state personnel, other agencies within or out of state regarding activities as they relate to HR
- Represent HR and serve on various committees as assigned

**Knowledge, Skills, and Abilities:**
- Knowledge of Federal and state Laws, rules, and regulations pertaining to human resource management
- Knowledge of State Personnel policies, rules, and regulations
- Knowledge of Federal rules and guidelines relating to recruitment, selection, and placement
- Knowledge of interviewing and counseling techniques
- Ability to plan, organize, direct, and evaluate the work of others
- Ability to read and interpret various federal and state guidelines and regulations
- Ability to communicate effectively both orally and in writing
- Ability to oversee, supervise, and/or coordinate various HR activities and functions
- Ability to work independently
- Ability to gather, correlate, and analyze facts and recommend solutions
- Ability to meet, interact, and effectively work with supervisors, associates, division heads, employees, state and local officials, and the general public

**Qualifications:**

Graduation from a four-year college or university with a major in human resource management, business administration, public administration or a related field.    Must have **extensive** (72 months or more) professional personnel management experience in a state agency or equivalent professional personnel management experience.    Must also have **experience** (24 months or more) in a supervisory capacity.

Other directly related education and/or work experience may be substituted for all or part of these basic requirements.

9/06

2

ADMH 01-06-00120



**DEPARTMENT OF MENTAL HEALTH
AND MENTAL RETARDATION**

RSA UNION BUILDING
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410

BOB RILEY
GOVERNOR

KATHY E. SAWYER
COMMISSIONER

February 3, 2005

<u>MEMORANDUM</u>

TO:        Ms. Jackie Graham
           Deputy Director of State Personnel

FROM:      Henry E. Ervin *HE*
           Director/ Human Resource Management
           DMH/MR

RE:        Establishing Exempt Positions

We are hereby requesting to establish job codes for the following new exempt positions
at the ranges as indicated below:

| <u>Title</u> | <u>Job Code</u> | <u>Range</u> | <u>PCO#</u> |
|---|---|---|---|
| Health Facilities Manager | A3300 | 80 | 8813338 |
| Departmental Assistant Personnel Manager | H5500 | 80 | 8813339 |

Thank you for your assistance in helping us expedite this request.

HEE/mbb

~~Accepted:~~
~~Approved:~~           _Jackie Graham_
                        Jackie Graham, Deputy Director State Personnel

Date:        _____

RECEIVED
FEB 17 2005
HUMAN RESOURCES
BUREAU



DEFENDANT'S
EXHIBIT
20

ADMH 02-00166



STATE OF ALABAMA
## DEPARTMENT OF MENTAL HEALTH
## AND MENTAL RETARDATION
RSA UNION BUILDING
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410



JOHN HOUSTON
COMMISSIONER

BOB RILEY
GOVERNOR

June 14, 2005

## M E M O R A N D U M

**TO:**   John M. Houston
          DMH/MR Acting Commissioner

**FROM:**  Henry E. Ervin
           Director of Human Resources

**RE:**   Dept. Asst. Personnel Manager

Due to recent Consolidation and Closure of DMH/MR facilities, it has become necessary to re-assess overall personnel management functions and devote more energy in developing meaningful HR management programs that positively affect and enhance morale and career development among the departments approximately 3000 employees. As you are aware, Central Office Personnel has expanded its area of responsibility in that we are now responsible for managing all personnel records and all employee transactions for Community Service Employees.   In addition, newly created positions (MH Specialists) with the Substance Abuse Division and (Interpreters) with the Deaf Services Division now fall under the HR Management Bureau.

In order to better align classifications that reflect actual duties and responsibilities with appropriate salary ranges, it is being recommended that a Wage and Classification Study be conducted for FY '05.  The current antiquated structure has been in place for the past twenty years and has far out lived it's ability to provide the necessary equity and consistency that our pay and classification system needs.  This is also an opportunity for us to completely over-haul existing class specifications.

In addition, we will be investigating the possibility of utilizing grant funding, whether federal or other alternative sources to assist us in this effort.   It is for these reasons, it is being proposed that a Departmental Assistant Personnel Manager (Range 80) be created. This individual will be fully involved with the Wage and Classification Study, and assist



DEFENDANT'S
EXHIBIT
21

ADMH 02-00162

with the development of a work-force succession plan to address the issues of a projected 30% of the workforce who will be eligible to retire within the next two to three years. This position will also provide direct supervision to all HR office clerical and paraprofessional staff while assisting the Director with the day to day operations and management of other ensuing HR projects. We also feel that the creation of this position will help to facilitate a more hands on approach and foster greater interaction amongst facility directors and personnel managers.

We appreciate your immediate attention in helping us expedite this request. Let us know if you have additional questions or concerns.


HEE/

cc:    Otha Dillihay
       Assoc. Commissioner/Administration

ADMH 02-00163

**MINUTES OF THE
JOB EVALUATION COMMITTEE MEETING
HELD MAY 4, 2005**

**May 4, 2005**

Members Present:     Henry Ervin
                     Paul Bisbee
                     Kent Hunt
                     John Zeigler
                     Judith Johnston
                     Eranell Wilson

Henry began the meeting with the request from Partlow requesting reallocation of Harry
Vance, Psychological Assistant, Johnny Bodiford, Psychological Assistant, and Susan
Davis, Psychological Assistant to Habilitation Treatment Coordinator I. After a
discussion of the duties of Habilitation Treatment Coordinator I, Kent Hunt questioned
why the Committee had been ask to do a reallocation. Kent said the Committee has not
been doing reallocations in the past. Henry asked everyone to look at the agenda, Item
III "Modification of JEC Policy "to reflect reallocation as part of the Committees'
responsibilities. Henry said he wants all reallocations to be brought before the JEC. Kent
Hunt made the motion to reallocate the Psychological Assistants to the classification of
Habilitation Treatment Coordinator I. Paul Bisbee seconded and the Committee approved
the item.

Henry requested the reallocation of Catheryn Townsend, Mental Health Specialist III to
Fiscal Manager III. Henry reported that a desk audit had been completed and her
classification warranted it to be changed to Fiscal Manager III. Paul Bisbee and Eranell
Wilson said Fiscal Manager III's in the Facilities are much more complex than the duties
of the Contract Office. Judith said Fiscal Manager III in Facilities deal with much more
than contracts. Kent Hunt asked if another classification would be more appropriate.
Henry concurred that the audit did not reflect a Fiscal Manager III.

Henry requested the reallocation of Sheila Grant, Administrator III and Joe Stringer,
Administrator III to Administrator IV. Eranell asked whom they reported to, and their
job description. After a discussion, Kent made the motion to reallocate and Eranell
seconded, the item passed.

Henry recommended to the Committee that substitution of experience for education in the
exempt hiring process be change.   Presently the substitution is 1 year of work
experience for 1 year of education. The recommended change would be: a. Recommend 2
years of work related experience for 1 year of education earned/achieved  b. 8 years of



DEFENDANT'S
EXHIBIT
22

ADMH 02-00171



directly related work experience for required 4 year degree (Bachelor's) Henry said it was the right thing to do. Judith Johnston asked if it would be the same for a Masters. Henry said it would be the same. Eranell made a motion and Paul seconded, the Committee approved the change.

Paul Bisbee brought up the problem of finding Psychological Associates I's. Judith Johnston said we need to look at the series and re-do like the Quality Assurance classification was changed. Paul Bisbee said he would have some one work on changes.

John Zeigler moved to adjourn, Committee adjourned.

Minutes submitted by: _____
                              Joan Owens

Minutes approved by: _____
                            Henry E. Ervin



STATE OF ALABAMA
### DEPARTMENT OF MENTAL HEALTH
### AND MENTAL RETARDATION
RSA UNION BUILDING
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410



JOHN HOUSTON
COMMISSIONER

BOB RILEY
GOVERNOR

## ANNOUNCEMENT OF INTENT TO FILL A NON-MERIT POSITION
### EQUAL OPPORTUNITY EMPLOYER

**JOB TITLE:**   Departmental Assistant   **NUMBER:**   05-27
Personnel Manager

**JOB CODE:**   H5500   **DATE:**   9/15/05

**SALARY RANGE:** 80 ($46,820- $71,380)   **POS#:**   8813339

**JOB LOCATION:**   **Department of Mental Health**
**And Mental Retardation**
**100 North Union Street**
**Montgomery, Ala. 36130**

**QUALIFICATIONS:** Bachelor's degree in Human Resource Management/Personnel Management, Business Administration, Public Administration, or related field. **Extensive experience (72 months or more)** working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity.
*Preference will be given to individuals with:*
> *Master's degree in any of the above specified fields of study.*
> *Work experience in the governmental/public sector*
> *Work experience in a healthcare setting*

**KIND OF WORK:**   Assists with day to day operation in planning, organizing, developing, coordinating, and implementing a comprehensive personnel management program for the Department of Mental Health and Mental Retardation. Coordinates efforts to include various personnel functions, such as recruitment, selection, job placement, position classification, employee training, performance appraisals, and affirmative action. Research and identify grant funding sources to assist coordinating efforts regarding Wage and Classification Studies. Maintains on-going classification and pay information from governmental agencies and private sector. Advises Director of Human Resources and assists in making recommendations to department heads, administrators, supervisors, and employees on rules, regulations, and proper personnel procedures concerning such matters as performance evaluations, promotions, demotions, transfers, and dismissals. Conducts and/or attends staff meetings, state personnel meetings, or personnel officer meetings. Gathers information and prepares budget for the Central Office Personnel Division and monitors expenditures. Coordinates various supervisory training for departmental Personnel Officers and makes oral presentations as needed.

DEFENDANT'S
EXHIBIT
23

ADMH 02-00159

Departmental Assistant
Personnel Manager
#05-27
Page 2

Serves in the absence of the Director of Human Resources by providing assistance regarding personnel and administrative functions and serves on various committees and task forces as assigned. Supervises clerical and para-professional staff assigned to Human Resources and conducts performance evaluations.

**REQUIRED KNOWLEDGE, SKILLS, AND ABILITIES:**  Thorough knowledge of Department of Mental Health and Mental Retardation rules and regulations. Thorough knowledge of classification, recruitment, selection, placement, employee training, and staff development. Thorough knowledge of the principles and practices of public personnel administration, regarding applicable rules, regulations, policies, and ability to interpret state and federal rules and regulations. Ability to plan, organize, direct, and evaluate the work of others. Thorough knowledge of interviewing techniques. Ability to advise and make recommendations regarding employment selection procedures. Ability to make presentations and convey ideas and opinions effectively, both orally and in writing. Ability to gather, correlate, and analyze facts, and recommend solutions. Ability to provide technical assistance in the area of expertise. Ability to research and identify grants and funding resources. Ability to conduct and coordinate various meetings and chair committees. Ability to establish and maintain effective working relationships with departmental personnel at all levels and with employees in other departments as well as the general public.

**METHOD OF SELECTION:**  Applicants will be rated on the basis of an evaluation of their training, experience and education, and should provide adequate work history identifying experiences related to the duties and minimum qualifications mentioned above. All relevant information is subject to verification.

**HOW TO APPLY:** Use an official application for Professional Employment (Exempt Application), which may be obtained from this office, other Department of Mental Health and Mental Retardation facility Personnel Offices, or at www.mh.state.al.us.  **Only work experience detailed on the application form will be considered.**  Additional sheets, if needed, should be in the same format as the application.  **Resumes will not be accepted in lieu of an official application.**

## ALL APPLICATIONS SHOULD BE RETURNED TO:
**W.D. Partlow Developmental Center**
**Attention: Mr. Mike Mathis (Personnel Director)**
**1700 University Blvd.**
**Tuscaloosa, Ala. 35406-1730**
**DEADLINE FOR SUBMITTING APPLICATIONS:** September 30, 2005.

**COPIES** of licenses/certifications if applicable should be forwarded/furnished during interview, an official copy of your academic transcripts must be forwarded by the college or university to the personnel office at the above address.

ADMH 02-00160

ASSESSMENT FOR
DEPARTMENTAL ASSISTANT PERSONNEL MANAGER
February 28, 2006

Panelists: Eranell Wilson, Susan Chambers, Kent Hunt,
& David, Bennett, Doug Lunsford

|  | Marilyn Benson | Commie Carter | Danielle Coteat |
|---|---|---|---|
| Wilson | 32 | 24 | 7 |
| Chambers | 27 | 21 | 10 |
| Hunt | 32 | 26 | 8 |
| Lunsford | 35 | 27 | 6 |
| Bennett | 38 | 28 | 10 |
| Total | 164 | 126 | 41 |
| Average | 32.8 | 25.2 | 8.2 |

Ranking of Candidates:
1. Marilyn Benson
2. Commie Carter
3. Danielle Coteat



DEFENDANT'S
EXHIBIT
24
tabbies



**STATE OF ALABAMA**
## DEPARTMENT OF MENTAL HEALTH
## AND MENTAL RETARDATION
**RSA UNION BUILDING**
**100 N. UNION STREET**
**POST OFFICE BOX 301410**
**MONTGOMERY, ALABAMA 36130-1410**



BOB RILEY
GOVERNOR

JOHN M. HOUSTON
COMMISSIONER

March 3, 2006

Ms. Marilyn B. Benson
1078 16th Place
Alexander City, Alabama 35010

Dear Marilyn,

We are pleased to confirm your appointment to the classification of Departmental
Assistant Personnel Manager in the Central Office, Bureau of Human Resources
Management. This appointment will be effective March 4, 2006.

Your rate of pay will be ████████ semi-monthly (Salary Range 80, Step 10). In
accordance with State Personnel Procedures, you will be required to serve a minimum
six-month probationary period.

Congratulations on your new promotion. It will be a pleasure working with you in this
capacity. I am confident that you will demonstrate the same dedication and leadership as
you have always shown.

Sincerely,

Henry E. Ervin
Director of Human Resources

DEFENDANT'S
EXHIBIT
tabbies®
25

ADMH 01-03-00009

**DEPARTMENT OF MENTAL HEALTH
AND MENTAL RETARDATION**

RSA UNION BUILDING
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410



KATHY E. SAWYER
COMMISSIONER

BOB RILEY
GOVERNOR

February 3, 2005

## MEMORANDUM

**TO:** Ms. Jackie Graham
Deputy Director of State Personnel

**FROM:** Henry E. Ervin *HE*
Director/ Human Resource Management
DMH/MR

**RE:** Establishing Exempt Positions

We are hereby requesting to establish job codes for the following new exempt positions at the ranges as indicated below:

| Title | Job Code | Range | PCQ# |
|-------|----------|-------|------|
| Health Facilities Manager | A3300 | 80 | 8813338 |
| Departmental Assistant Personnel Manager | H5500 | 80 | 8813339 |

Thank you for your assistance in helping us expedite this request.

HEE/mbb

~~Approved~~ Accepted: *Jackie Grahan*
Jackie Graham, Deputy Director State Personnel

Date: _____

RECEIVED
FEB 17 2005
HUMAN RESOURCES BUREAU

DEFENDANT'S
EXHIBIT
26

ADMH 02-00166

ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION

REQUEST TO FILL EXEMPT POSITION ON STAFFING PLAN

| Administration | Personnel – 4065 | Dept. Asst. Personnel Manager H5500 |
|---|---|---|
| Division Name | Section Code | Class Title & Code |

| Employment Type | ( X )  Permanent | ( )  Temporary | ( )  Part-time Permanent |
|---|---|---|---|
| | ( )  Conditional | | ( )  Part-time Temporary |

| PCQ# | Previous Incumbent, If Any | Reasons For Leaving | Date Left |
|---|---|---|---|
| 8813339 | New Position | | |

Remarks:

N/A
_____          _____
                                          DATE

_____   12 June 05      _____
ASSOCIATE COMMISSIONER             DATE            ACTING COMMISSIONER          DATE
Otha R. Dillihay                                   John M. Houston

_____                   Position was included on the EB09
Henry E. Ervin, Director         Date              As approved by the State Finance
Human Resource Management                          Director/Budgetary Authority

                                                   _____  6/10/05
                                                   Terese N. Toby                    Date

DEFENDANT'S
EXHIBIT
tabbies®
27

Form 100                                           Revised
                                                   12/01/2004

ADMH 04-00013

**The Tuscaloosa News**
315 28th Ave. P.O. Box 20587
Tuscaloosa, Alabama 35402-0587
TEL (205) 722-0111   FAX (205) 722-0119
FED ID# 63-0509923

The Montgomery Times Company

| 11/01/05 - 11/30/05 | STATE MENTAL HEALTH DEPT. | | |
|---|---|---|---|
| TOTAL AMOUNT DUE | UNAPPLIED AMOUNT | TERMS OF PAYMENT | |
| 1,256.52 | | NET 10 | |
| CURRENT NET AMOUNT DUE | 30 DAYS | 60 DAYS | OVER 90 DAYS |
| 197.14 | 780.59 | .00 | 278.79 |

| INVOICE # | PAGE # | BILLING DATE | EDI MS ACCOUNT # | REMITTANCE ADDRESS |
|---|---|---|---|---|
| 229985 | 1 | 11/30/05 | 24902302 | |

(404)0003298
63083609330

THE TUSCALOOSA NEWS
PO BOX 116477
ATLANTA GA 30368-6477

01-30-06

3-30-01

mailed

STATE MENTAL HEALTH DEPT.
PO BOX 301410
MONTGOMERY AL  36130-1410

## PLEASE DETACH AND RETURN UPPER PORTION WITH YOUR REMITTANCE

| DATE | NEWSPAPER REFERENCE | DESCRIPTION-OTHER COMMENTS/CHARGES | SAU SIZE BILLED UNITS | TIMES RUN RATE | GROSS AMOUNT | NET AMOUNT |
|---|---|---|---|---|---|---|
| 10/31 | | BALANCE FORWARD | | | | 1,829.15 |
| 11/02 | 60057962 | Payment on Account | | | | -769.77 |
| 10/30 | 290290 | CurrentOpeningAlabama Dept o | 1x227.9L | 9 | | 197.14 |
| | 11/05 | LDO# 6-081/M. Benson | 342L | | | |
| | | 2260 480893 | | | | |
| | | betty beck | | | | |

RAN    10-30-05 THRU  11-5-05

404-4065
0800-04

205-722-0156

5d

MINIMUM FINANCE CHARGE $.50.
THANK YOU FOR YOUR ADVERTISING!!!

## STATEMENT OF ACCOUNT AGING OF PAST DUE AMOUNTS

| CURRENT NET AMOUNT DUE | 30 DAYS | 60 DAYS | OVER 90 DAYS | UNAPPLIED AMOUNT | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|
| 197.14 | 780.59 | .00 | 278.79 | | 1,256.52 |

**The Tuscaloosa News**
315 28th Ave. P.O. Box 20587
Tuscaloosa, Alabama 35402-0587
TEL  (205) 722-0111   FAX  (205) 722-0119   FED ID: 63-0509923

*UNAPPLIED AMOUNTS ARE INCLUDED IN TOTAL AMOUNT DUE

| INVOICE # | BILLING PERIOD | BILLED ACCOUNT NUMBER | ADVERTISEMENT NUMBER | ADVERTISEMENT NAME |
|---|---|---|---|---|
| 229985 | 11/01/05 - 11/30/05 | 24902302 | | STATE MENTAL HEALTH |

DEFENDANT'S
EXHIBIT
28
exhibit

ADMH 08-00005

## Mathis, Mike

| | |
|---|---|
| **From:** | Mathis, Mike |
| **Sent:** | Wednesday, October 05, 2005 5:07 PM |
| **To:** | Houston, John |
| **Subject:** | Dept. Assistant Personnel Manager, Application Assessments |

Henry Ervin asked that I email you this information once I completed the assessment of the five applications I received for the aforementioned position. The applications received and assessment of the applications are listed below.

Sincerely,
Mike Mathis
Personnel Director
Partlow Development Center

Results:
Marilyn Benson -- Meets minimum qualification requirements
Commie Carter -- Meets minimum qualification requirements
Danielle Coteat -- Meets minimum qualification requirements
Tracey Bailey -- Does not meet minimum qualification requirements
Jessica Eiland -- Does not meet minimum qualification requirements



10/5/2005

ADMH 04-00001

DEPARTMENT OF MENTAL HEALTH / MENTAL RETARDATION
APPLICATION EVALUATION FORM

*Marilyn Benson*
Applicant Name

Departmental Assist Personnel Mgr / H5500
Position Title / Job Code

*05-27*
Announcement #

*9/30/05*
Closing Date

*9/29/05*
Date Received

*8813339*
Positions #

*10/5/05*
Date Evaluated

*M. Mathis*
Rater's Name

## MINIMUM QUALIFICATIONS REQUIREMENTS FOR POSITION

**Qualification:**

**Applicant's Training / Education:**    **Meets Requirements** ( *yes* )
Bachelor's degree in Human Resource Management / Personnel Management, Business Administration, Public Administration, or related field.

**Applicant's Experience:**    **Meets Requirements** ( *yes* )
Extensive (72 months or more) working in a professional personnel management position, plus experience (24 months or more) in a supervisory capacity.

**Licensure / Certification:**    **Meets Requirements** *N/A*    **Date Verified** _____

**Special Requirements:**    **Meets Requirements** *N/A*    **Date Verified** _____

**Meets Minimum Qualification Requirements:** _*yes*_

**Preference Will Be Given To Individuals With:**
- Master's degree in any of the above specified fields of study.
- Work experience in the governmental / public sector.
- Work experience in a healthcare setting.

| | |
|---|---|
| **Meets Minimum Qualification Requirements (1 point)** | *1* |
| **Additional Specific / Related Education (2 points)** | *2* |
| Required Degree _BS yes_  Additional Related Degree _MS yes_ | |
| **Additional Specific / Related Experience (5 points)** | *5* |
| Total Related Experience – Required Experience =Additional Related Experience (/12) | |
| One Point For Each Full Year of Additional Related Experience Up to Maximum of 5 | |
| **Preference Points** | *2* |
| Work experience in preferred area:    1 to 5 years = 1 point    6 to 10 years = 2 points | |
| MS Degree = 2 points | |

**OVERALL RATING:** *10*

**Interview:**    Date: _____    Time: _____

DEFENDANT'S EXHIBIT
30

ADMH 04-00190

CLASS TITLE: _Dept Assist Personnel Mgr_    CODE: _H 5500_

NAME: _Marilyn Benson_

DEGREE SUBJECT: _BS- Hos/Health Admin    MS - Public Admin_

DEGREE LEVEL / DATE RECEIVED: _BS/81    MS/87_

TOTAL QUALIFIED, POST DEGREE WORK EXPERIENCE: _~~214M~~ 214 M_

PROFESSIONAL LICENSURE: _____

WORK EXPERIENCE WORKSHEET:

1.) QUALIFIED = Ⓨ N   YRS/MON = _214 M_   _Personnel Spec III_
_DMH/MR CO_    _12/87 - Current_
_(assists coor of Personnel Mgmt activities for DMHCO,_
_facilities & Com Programs in state -_

2.) QUALIFIED = Y Ⓝ   YRS/MON = _39_   _8/84 -11/87_
_DMH/MR CO    Planning Spec_
_Conducted Mgmt studies & Super Training_

3.) QUALIFIED = Y -- N   YRS/MON = _____

4.) QUALIFIED = Y -- N   YRS/MON = _____

5.) QUALIFIED = Y -- N   YRS/MON = _____

ADMH 04-00191

## APPLICATION FOR EMPLOYMENT
### Exempt Classification



ADDRESS ON ANNOUNCEMENT

**GENERAL INSTRUCTIONS**
Complete all portions of this application that are applicable to you and the position for which you are applying. Failure to do so may result in your not being considered for the position for which you applying. Type or print clearly in ink.

### AN EQUAL OPPORTUNITY EMPLOYER

Full Name **BENSON     MARILYN     B.**

Social Security Number **XXX-XX-**

Address **1078 16TH PLACE**

**ALEXANDER CITY     AL.     35010**

If you are applying for a specific current vacancy, please give position title and annoucement # **05-27**

**DEPARTMENTAL ASSISTANT**
**PERSONNEL MANAGER**

Telephone Number Home: **256  409-1992**   Office: **334  242-3120**

Legal Residence **ALEXANDER CITY   TALLAPOOSA   AL**

Place of Birth **ALEXANDER CITY   TALLAPOOSA   AL.**

Minimum annual salary you would consider: **NEGOTIABLE**

### LOCATIONS

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of non-merit vacancies at those facilities in which you express an interest. Please indicate below at which of our facilities you would consider employment. You will only be sent announcements of openings at facilities which you check. After one year and after each succeeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your application will be destroyed.

**Mental Illness Facilities**
( ) Bryce Hospital — Tuscaloosa, AL
( ) Searcy Hospital — Mt. Vernon, AL
( ) Harper Geriatric Psychiatry Center — Tuscaloosa, AL
( ) North Alabama Regional Hospital — Decatur, AL
( ) Thomasville MH Rehab Center — Thomasville, AL
( ) Hardin Secure Medical Facility — Tuscaloosa, AL
( ) Greil Psychiatric Hospital — Montgomery, AL

**Mental Retardation Facilities**
( ) William D. Partlow Developmental Center — Tuscaloosa, AL
( ) Albert P. Brewer Developmental Center — Mobile, AL
( ) Lurleen B. Wallace Developmental Center — Decatur, AL
( ) J. S. Tarwater Developmental Center — Wetumpka, AL

**ICF Nursing Homes**
( ) Alice Kidd — Tuscaloosa, AL
( ) S.D. Allen — Tuscaloosa, AL
( ) Claudette Box — Mt. Vernon, AL
(X) Central Administrative Offices— Montgomery, AL

(See map on last page for locations of facilities)

**REFERRAL**
Where did you learn about the job for which you applied, or about the Department's application procedure?

____ Voluntary Walk-in
____ State Employment Service
____ College Career Day
____ DMH/MR Employee
____ Newspaper Ad
____ Professional Journal Ad
____ Radio/TV Ad
____ Private Employment Agency
____ State Personnel Department
____ Professional Convention
____ Friend/Relative
____ Responded to Announcement of Vacancy
____ Other — Please explain:

Are you willing to accept shift work during evening and night hours?  Yes ( )  No (X)

Are you available to work  X  Full Time ____ Part Time ____ Temporary?

The Alabama Department of Mental Health and Mental Retardation is an Equal Opportunity Employer. It does not discriminate with respect to race, color, religion, national origin, gender, age, or disability.

**PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION**

ADMH  04-00192

## EDUCATION

High school graduate or GED? (X) Yes  ( ) No        Be as specific as possible about degree and major.

| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did You Graduate? | Degree and Date | Major |
|---|---|---|---|---|---|---|
| College Undergraduate | CENTRAL ALA. COMMUNITY COLLEGE ALEXANDER CITY, AL. | 76 | 78 | YES. | ASSOCIATE DEGREE '78 | HOSPITAL HEALTH |
| College Undergraduate | AUBURN UNIVERSITY AUBURN, ALABAMA | 78 | 81 | YES | BACHELORS '81 | ADMINISTRATION |
| College Graduate | AUM AT MONTGOMERY, AL. | 85 | 87 | YES | MASTER'S '87 | PUBLIC ADMINISTRATION |
| College Graduate | | | | | | |
| Vocational Business | | | | | | |

Circle Highest Grade Completed

High School    9    10    11    (12)        College    13    14    15    (16)        Graduate School    17    (18)    19

If you attended college in pursuit of either an under-graduate or graduate degree and did not obtain such, please indicate how many hours were received toward the degree:        Sem. Hrs _____    Qtr. Hrs _____

Please include the appropriate transcript with this application where applicable.

Please include copies of professional certificates/license, date, and state issued when applicable.

_____
_____
_____
_____

## EMPLOYER/PROFESSIONAL REFERENCES

List three reliable persons, not relatives, who know you well enough to give information about your professional/educational background.

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| ARMAREHEA BROCK | 4212 BEARDSLEY DR. MONTGOMERY, AL 36109 | 244-9935 | RETIRED STATE EMPLOYEE |
| ETHEL OLDHAM | 5739 PINE BROOK MONTGOMERY, AL 36117 | 274-9806 | MICROBIOLOGIST |
| HENRY ERVIN | 100 N. UNION STREET MONTGOMERY, AL | 242-3112 | HR DIRECTOR DMH/MR |

Have you ever been involuntarily terminated or forced to resign from a position?        ( ) Yes    (X) No

Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment)        ( ) Yes    (X) No

If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.

Have you filed an application with this Department before?    (X) Yes    ( ) No.        If yes, give date and facility name:

Date _____ Facility Name _____

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? (X) Yes    ( ) No. If not a citizen of the U.S. give Visa type/status _____ . (Proof of U.S. citizenship or Immigration status will be required upon employment.)

Date when you are available to begin work: _____ IMMEDIATELY _____

ADMH 04-00193

## WORK HISTORY
### THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME IS ATTACHED

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

| 1. Current or Last Employer | Your Official Job Title |
|---|---|
| DMH/MR | PERSONNEL SPECIALIST III |

| Address/Zip Code | Telephone Number | Type of Business |
|---|---|---|
| 100 N. UNION ST. | 242-3112 | |

| FROM | TO | Total Months | Fulltime (X) Parttime ( ) | Name of Supervisor | Ending Salary | May we contact current employer? |
|---|---|---|---|---|---|---|
| 12 87 | CURRENT | 214 | Hours per week 40 | HENRY ERVIN | BW | (X) Yes ( ) No |

| Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving |
|---|---|---|
| (2) PERSONNEL ASST II's (1) ASA I | COMPUTER/FAX/COPIER | N/A |

Describe your Duties in Detail: ASSIST IN RECRUITMENT, SELECTION, AND PLACEMENT OF DIRECT CARE, ADMIN-
ISTRATIVE, TECHNICAL, AND SERVICE PERSONNEL AT CENTRAL OFFICE, SEVEN
FACILITIES, AND FIVE REGIONAL OFFICES.

PLEASE SEE ATTACHED RESUME FOR DETAILED
WORK EXPERIENCE ———→

| 2. Employer | Your Official Job Title |
|---|---|
| DMH/MR | PLANNING SPECIALIST |

| Address/Zip Code | Telephone Number | Type of Business |
|---|---|---|
| 800 INTERSTATE PARK | | |

| FROM | TO | Total Months | Fulltime (X) Parttime ( ) | Name of Supervisor | Ending Salary |
|---|---|---|---|---|---|
| 8 84 | 11 87 | 39 | Hours per week | PHILLIP JOHNSON | $ ___ per ___ |

| Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving |
|---|---|---|
| | COMPUTER | PROMOTION |

Describe your Duties in Detail: RENDERED TECHNICAL ASSISTANCE TO COMMUNITY MENTAL
HEALTH CENTERS BY CONDUCTING MANAGEMENT STUDIES AND SUPERVISORY
TRAINING.

PLEASE SEE ATTACHED RESUME FOR
DETAILED WORK EXPERIENCE ———→

ADMH 04-00194

| 3 Employer | DMH/MR | | Your Official Job Title RESEARCH ASSISTANT | |
|---|---|---|---|---|

Address/Zip Code **200 INTERSTATE PARK**

Telephone Number | Type of Business

FROM **8 83** TO **8 84** Total Months **12** | Fulltime (X) Parttime ( ) Hours per week **40**

Name of Supervisor **INGRAM GOMILLION**

Ending Salary $ per

Number/Title of Employees you Supervised **N/A**

Equipment you Operated **COMPUTER/COPIER**

Reason for Leaving **PROMOTION**

Describe your Duties in Detail:

PROVIDED CONSULTATIVE SERVICES TO COMMUNITY MENTAL HEALTH CENTERS; CONDUCTED INTERVIEWS, WROTE AND AMENDED POLICIES AND PROCEDURES.

PLEASE SEE ATTACHED RESUME FOR DETAILED WORK EXPERIENCE →

4. Employer **NEUROPSYCHIATRY ASSOCIATES**

Your Official Job Title **OFFICE MANAGER**

Address/Zip Code **OPELIKA & MONTG. OFFICE (PINES)**

Type of Business **PSYCHIATRIC CLINIC**

FROM **1 83** TO **8 84** Total Months **19** | Fulltime (X) Parttime ( ) Hours per week

Name of Supervisor **DR. CHESTER JENKINS**

Ending Salary $ per MO.

Number/Title of Employees you Supervised

Equipment you Operated **COMPUTER/COPIER**

Reason for Leaving **MOVED**

Describe your Duties in Detail: COORDINATED OFFICE FUNCTIONS FOR PSYCHIATRIC CLINIC.

— PLEASE SEE ATTACHED RESUME →

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release or copy thereof, within one year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME (No Initials) *[signature]*

FULL NAME (Typed or Printed Name) **MARILYN B. BENSON**

SOCIAL SECURITY # XXX-XX-

CURRENT ADDRESS **1078 16th Place**

DATE OF BIRTH **7/18/59** PLACE OF BIRTH **TALLAPOOSA CTY.** **Alexander City, AL.**

WITNESS *[signature]* TITLE **Director, DD Council** DATE **9/29/05**

## CERTIFICATE/SIGNATURE

**Must be signed in ink by applicant**

I Certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

Signed *[signature]* DATE **9/29/05**

2/01

# ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION

## APPLICANT DATA RECORD

DATE: *9/27/05*

To help this Department evaluate our efforts as an Equal Opportunity Employer, we are requesting that you complete the following items of personal information. Your answers to these questions will be used only to study recruiting and employment patterns, and to furnish necessary information for government reports. We appreciate your cooperation.

This sheet will be separated from the employment application upon receipt, and will be maintained in a separate file. It will, in no way, affect consideration for possible employment with the Alabama Department of Mental Health and Mental Retardation.

## PLEASE PRINT

NAME  **BENSON**           **MARILYN**           **B.**
      Last               First                 Middle

ADDRESS  **1078 16TH PLACE    ALEXANDER CITY    AL.    35010**
         Street             City              State  Zip Code

SOCIAL SECURITY NUMBER ██████████

TITLE OF POSITIONS APPLIED
FOR AND DATE APPLIED:

RACE:

( ) Caucasian             (X) Black

( ) American Indian       ( ) Asian/Pacific Islander

( ) Hispanic              ( ) Non-Resident Alien

( ) Other _____

GENDER: ( ) Male   (X) Female

AGE: **46**   Birthdate **7/18/59**

VETERAN: ( ) Yes   (X) No

ADMH  04-00196

## STATE FACILITIES

★ 4. North Alabama
■ 10. Wallace

● 12. Alice Kidd
★ 1. Bryce        ● 13. S.D. Allen
    ★ 3. Harper
★ 6. Secure Medical
■ 8. Partlow    ■ 11. Tarwater
        ★ 7. Greil
        ▲ Central Office

★ 5. Thomasville

    ● 14. Claudette Box
★ 2. Searcy

■ 9. Brewer

★ **MENTAL ILLNESS FACILITIES**

1. Bryce Hospital — Tuscaloosa, AL
2. Searcy Hospital — Mt. Vernon, AL
3. Harper Geriatric Psychiatry Center — Tuscaloosa, AL
4. North Alabama Regional Hospital — Decatur, AL
5. Thomasville MH Rehab Center — Thomasville, AL
6. Hardin Secure Medical Facility — Tuscaloosa, AL
7. Greil Psychiatric Hospital — Montgomery, AL

■ **MENTAL RETARDATION FACILITIES**

8. William D. Partlow Developmental Center — Tuscaloosa, AL
9. Albert P. Brewer Developmental Center — Mobile, AL
10. Lurleen B. Wallace Developmental Center — Decatur, AL
11. J. S. Tarwater Developmental Center — Wetumpka, AL

● **ICF NURSING HOMES**

12. Alice Kidd — Tuscaloosa, AL
13. S.D. Allen — Tuscaloosa, AL
14. Claudette Box — Mobile, AL

▲ **CENTRAL ADMINISTRATIVE OFFICES** — Montgomery, AL

CONTINUE ON TO BACK PAGE ————————————————————→

PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION

# Marilyn B. Benson
1078 16th Place
Alexander City, AL. 35010
Home: (256) 409-1992   Cell: (334) 303-4134

## EDUCATION

**1987**   Master's Degree in Public Administration
(*Concentration in Personnel*)
(Auburn University at Montgomery)

**1981**   Bachelor's Degree in Health Services Administration
(Auburn University, Auburn, AL)

## EMPLOYMENT

**12/87-**   Personnel Specialist, *Alabama Department of Mental Health/Mental*
**Present**   *Retardation, Montgomery, Alabama*

Assists with coordinating Personnel management activities for DMH/MR Central Office, seven facilities, and five Community Programs throughout the state. Responsibilities include coordinating recruitment, selection, and placement of direct care, administrative, technical, and service personnel. Responsibilities include examining positions, establishing, revising, deleting, combining classes, and making recommendations in order to comply with federal, state, and local guidelines of employment; also coordinate wage and salary information for non-merit classes, conduct surveys, analyzing positions and pay relationships, collecting, and ensuring the Department remains competitive in its development of solid wage, salary, and benefit schedules; attend career fairs and conventions to recruit the most qualified individuals to fill vacancies, conduct job analysis, gather subject matter experts, announce job vacancies, develop KSA's and conduct interviews. Other responsibilities include supervising and evaluating the work of clerical and technical support staff. Also provide technical assistance to department heads, and supervisors regarding personnel related matters on departmental employees. Responsible for carrying out functions of Human Resource Management in the absence of the Director.

**08/94-**   Planning Specialist, *Alabama Department of Mental Health/Mental*
**11/87**   *Retardation, Montgomery, Alabama*

Rendered technical services to mental health centers by conducting personnel and management studies to include developing complete personnel action plans. Conducted interviews with employees, developed and revised job descriptions. Also examined current classification system to determine if employees were appropriately classified. Developed policies and procedures, to include recruitment and affirmative action plans. Also responsible for conducting supervisory training for both performance appraisals and the employee assistance program; Assisted with identifying federal funding availability through grant resources and provided technical assistance by compiling information needed in order to meet deadlines.

Marilyn B. Benson
Page 2

| | |
|---|---|
| 08/83-<br>08/84 | **Research Assistant**, *Alabama Department of Mental Health/Mental Retardation, Montgomery, Alabama* |

Provided consultative services to various mental health centers throughout the state of Alabama. Responsible for writing, revising, and coordinating the development of various personnel policies and procedures, conducting performance appraisal training sessions and supervisory training for the Employee Assistance Program.

| | |
|---|---|
| 01/83-<br>08/84 | **Office Manager**, *Neuropsychiatry Associates, Montgomery, Alabama* |

Supervised the overall operation of a psychiatric clinic. Was responsible for maintaining financial reports, accounts receivable, purchasing of supplies and equipment, client billing, processing insurance claims, purchase orders, as well as the supervision to clerical and technical support staff.

## HUMAN RESOURCE TRAINING ACTIVITIES & EXPERIENCE

- Developed performance appraisal systems and conducted management studies for seven different Mental Health Centers in five locations throughout the state of Alabama. Activities included:

    1) Disseminating questionnaires
    2) Conducting interviews
    3) Reviewing job descriptions
    4) Compiling draft descriptions
    5) Providing overview of Performance Appraisal System
    6) Training of Supervisors
    7) Project Implementation

July 1983, Central Alabama Comprehensive Health Center, Tuskegee, AL
    Developed Performance Appraisal Instrument to be utilized and incorporated into their supervisory training program.

October 1983, Jefferson Blount-St. Clair County Mental Health Center, Birmingham, AL
    Established a Performance Appraisal Project Flow for JBS. Trained supervisors in the overview of the Performance Appraisal Instrument and legal implications by conducting interviews with employees, writing job descriptions and task statements.

Jan-March 1984, Chilton-Shelby Mental Health Center, Calera, AL
    Established Performance Appraisal Training Program for Center Supervisors by reviewing existing appraisal instrument, establishing weights for Primary Job Functions, conducting appraisal interviews, and providing instructions for scoring appraisals.

April 1984, Mobile Community Mental Health Center, Mobile, AL
    Administered Employee Attitude Surveys in order to recognize employee attitudes or problems that may have a bearing on productivity, absenteeism, turnover, and other related employee issues. After correlating and compiling data,

ADMH 04-00199

Marilyn B. Benson
　　　Page 3

---

recommendations were made for improving overall staff morale and motivation.

May 1984, <u>Mobile Community Mental Health Center</u>, Mobile, AL
　　　Established Performance Appraisal Instrument to be used at the Center. Trained supervisors in performance appraisal techniques and utilization.

August 1984, <u>Mobile Association for Retarded Citizens</u>, Mobile, AL
　　　Analyzed current organizational structure by disseminating questionnaires and conducting interviews to determine whether jobs were appropriately classified and made recommendations accordingly.

August 1984, <u>Cahaba Regional Mental Health Center</u>, Selma, AL
　　　Developed a performance appraisal system for supervisors at the Center. Interviewed employees, compiled questionnaires and conducted supervisory training.

September 1984, <u>Cherokee, Etowah, Dekalb County Mental Health Center</u>, Gadsden, AL
　　　Participated in Staff Development Consultation with supervisors of Cherokee, Etowah, Dekalb County Mental Health Facility to implement a Performance Appraisal System.

September 1985, <u>The Bridge Alert Center</u>, Gadsden, AL
　　　Conducted workshop on FES (Factor Evaluation System) training and utilization of Training and Experience Crediting. Supervisors were trained in the area of job analysis. The information was utilized in developing more accurate position descriptions.

October 1985, <u>Northwest Alabama Mental Health Center</u>, Jasper, AL
　　　Developed a complete Personnel Action Plan by reviewing selection procedures, staff recruitment, evaluation of policies, and providing FES training for supervisors.

## EMPLOYEE ASSISTANCE PROGRAM TRAINING AND EXPERIENCE

This training involved visiting various Community Mental Health Centers, State Facilities, and private industries to provide technical assistance in areas as: 1) Marketing presentation, 2) Specific employee problems, 3) Program design, 4) Program problem resolution, 5) Contract negotiations, and 6) Management Training.

August 1985, <u>Cahaba Mental Health Center</u>, Selma, AL
　　　Conducted training workshops to educate supervisors about the Employee Assistance Program, what it involved, who was eligible and the role they played.

September 1987, <u>Auburn University</u>, Auburn, AL
　　　Conducted 15 supervisory training sessions that included 219 participants to include the President and Vice-President of the University. Supervisors were acquainted with troubled employees, how to recognize them and the roles they were responsible for playing in the referral process.

ADMH 04-00200

** TOTAL PAGE.12 **

Marilyn B. Benson
Page 4

October 1987, <u>Alabama Criminal Justice Information Center</u>, Montgomery, AL

Conducted a one-day workshop for supervisors by giving an overview of the
program, identification of problem employees, and the referral process.

November 1987, <u>Fourth Annual Conference for Personnel Administration</u>, Auburn
University at Montgomery, Montgomery, AL
Made Conference presentation on the Employee Assistance Program for
Participants of the Personnel Administration Conference. An overview of EAP was
given as well as how to identify workers with personal problems that could
possibly affect their on the job performance.

## PROFESSIONAL ACTIVITIES

- Facilitator/planner for Governor's Task Force on Domestic Violence and Abuse
- Licensed and Ordained Baptist Minister
- Co-Pastor of GAP Fellowship Church, Inc in Alexander City, AL

## REFERENCES

Available Upon Request

Received Time May. 7. 2:19PM

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 420-2006-01138 |
| | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Karen Hubbard | (334) 265-1470 HB | 02-20-1958 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2534 Poplar Street, Montgomery, AL 36107 | 396-1552 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| AL DEPT OF MENTAL HEALTH | 500 or More | (334) 242-3112 |

| Street Address | City, State and ZIP Code |
|---|---|
| Post Office Box 301410, 100 North Union Street, Montgomery, AL 36130 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 09-15-2005 | 09-15-2005 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On September 15, 2005, I was denied the opportunity to apply for the promotional position of Departmental Assistant Personnel Manager. In the past every announcement in personnel stated that other directly related education and/or experience may be substituted for all or part of the basic requirements upon approval on the Job Evaluation Committee. The announcement for the position of which I am complaining was not written in such a manner. It is my belief that the job announcement for this position was written to fit the educational background of a Black employee assigned to the same job classification as me.

I believe that I was discriminated against in violation of Title VII of the 1964 Civil Rights Act, as amended because of my race, White.

RECEIVED
EEOC

BIRMINGHAM DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| X 3/11/06  X Karen L. Hubbard | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 420-2006-01123 |
| | | and EEOC |

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mrs. Joan E. Owens | (334) 567-7724 | 01-18-1947 |

Street Address — City, State and ZIP Code

319 Ross Road, Wetumpka, AL 36092

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| AL DEPT OF MENTAL HEALTH | 500 or More | (334) 242-3112 |

Street Address — City, State and ZIP Code

Post Office Box 301410, 100 North Union Street, Montgomery, AL 36130

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address — City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 09-15-2005    Latest 09-15-2005

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with the employer named above as a Personnel Specialist II on December 31, 1990. On September 15, 2005, I was denied the opportunity to apply for the position of Departmental Assistant Personnel Management which would have been a promotion for me. In the past every announcement in personnel stated that other directly related education and/or experience may be substituted for all or part of the basic requirements upon approval of the Job Evaluation Committee. The announcement for the position of which I am complaining was not written in such a manner. It is my belief that this job announcement was written to fit the educational background of a Black employee assigned to my job classification.

I believe that I was discriminated against in violation of Title VII of the 1964 Civil Rights Act, as amended because of my race, White.

RECEIVED
EEOC

MAR 3 2006

BIRMINGHAM DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Mar 03, 2006 _____  *Joan E. Owens*<br>Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

Received Time May. 7. 2:19PM

EEOC Form 5 (5/01)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 420-2006-01138 |
| | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Karen Hubbard | (334) 265-4470 LHG | 02-20-1958 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2534 Poplar Street, Montgomery, AL 36107 | 396-1652 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| AL DEPT OF MENTAL HEALTH | 500 or More | (334) 242-3112 |

| Street Address | City, State and ZIP Code |
|---|---|
| Post Office Box 301410, 100 North Union Street, Montgomery, AL 36130 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 09-15-2005    Latest: 09-15-2005
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On September 15, 2005, I was denied the opportunity to apply for the promotional position of Departmental Assistant Personnel Manager. In the past every announcement in personnel stated that other directly related education and/or experience may be substituted for all or part of the basic requirements upon approval on the Job Evaluation Committee. The announcement for the position of which I am complaining was not written in such a manner. It is my belief that the job announcement for this position was written to fit the educational background of a Black employee assigned to the same job classification as me.

I believe that I was discriminated against in violation of Title VII of the 1964 Civil Rights Act, as amended because of my race, White.

RECEIVED
EEOC

BIRMINGHAM DISTRICT OFFICE

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| X 3/11/06   X Karen L. Hubbard  Date   Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

DEFENDANT'S
EXHIBIT
31
tables

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>420-2006-01123<br>and EEOC |
|---|---|---|

State or local Agency, if any

| Name (Indicate Mr., Ms., Mrs.)<br>Mrs. Joan E. Owens | Home Phone (Incl. Area Code)<br>(334) 567-7724 | Date of Birth<br>01-18-1947 |
|---|---|---|

Street Address    City, State and ZIP Code
319 Ross Road, Wetumpka, AL 36092

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>AL DEPT OF MENTAL HEALTH | No. Employees, Members<br>500 or More | Phone No. (Include Area Code)<br>(334) 242-3112 |
|---|---|---|

Street Address    City, State and ZIP Code
Post Office Box 301410, 100 North Union Street, Montgomery, AL 36130

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address    City, State and ZIP Code

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.) | Earliest 09-15-2005    Latest 09-15-2005<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with the employer named above as a Personnel Specialist II on December 31, 1990. On September 15, 2005, I was denied the opportunity to apply for the position of Departmental Assistant Personnel Management which would have been a promotion for me. In the past every announcement in personnel stated that other directly related education and/or experience may be substituted for all or part of the basic requirements upon approval of the Job Evaluation Committee. The announcement for the position of which I am complaining was not written in such a manner. It is my belief that this job announcement was written to fit the educational background of a Black employee assigned to my job classification.

I believe that I was discriminated against in violation of Title VII of the 1964 CIVIL RIGHTS Act, as amended because of my race, White.

RECEIVED
EEOC

MAR 3 2006

BIRMINGHAM DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Mar 03, 2006      _Joan E. Owens_<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |