IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOAN FAULK OWENS and )
KAREN LYNN HUBBARD, )
 )
 Plaintiffs, )
 )
v. ) 2:07-cv-650
 )
STATE OF ALABAMA DEPT. OF )
MENTAL HEALTH AND MENTAL )
RETARDATION, *et al.*, )
 )
 Defendants. )

### DEFENDANTS' MOTION TO STRIKE
### THE DEPOSITION TESTIMONY OF DAVID ROSS PETTY

COME NOW the Defendants herein, by and through counsel, and move the

Court to strike the submission of the Deposition of David Ross Petty, Plaintiff's

Exhibit "120",  to the Plaintiffs' Memorandum Brief in Opposition to these

Defendants' Motion to Summary Judgment and to request that the Court not

consider any testimony contained therein or quoted or cited in the Plaintiff's Brief,

and as grounds therefor, state the following:

1.    Mr. Petty's testimony consitutes "stray remarks" as discussed in

*Harrington v. Childrens Psychiatric Center, Inc.*, 2003 WL 23356396 (S.D. Fla.

2003).  In this regard counsel for the Defendants respectfully request the Court to

consider the following submission.

2.     At pages 5, 6, 7, and 8 of this deposition, counsel for the Defendants made a cautionary objection with regard to the Attorney-Client Privilege because counsel for the Defendants had determined the identity of Mr. Petty and, at that time, knew that Mr. Petty was the confidential assistant and secretary of June Lynn, the Administrative Assistant and Advisory Counsel to Associate Commissioner Dillihay. Ms. Lynn is a licensed attorney in the State of Alabama.  Again, on pages 19 and 20 of this deposition, the Defendants' dilemma concerning the Attorney-Client Privilege was again raised because of the lack of any prefatory testimony or predicate.

3.     On page 56 of Mr. Petty's deposition, beginning at line 21, the following questions and answers were given:

Q:   Do you know why you were subpoenaed to come here today to testify?

A:   I was contacted by Mr. Mozingo, I think it was day before yesterday, and he wanted to know if I could answer some questions.  He called me at my job.  And I was very uncomfortable because I don't want to be involved in anything ever.  And I told him, I said, I'm sorry, you know, I can't answer any questions, you know, and I said, unless I'm forced to.  And I left it at that.  And next thing I know I was subpoenaed.  I was contacted by him saying that I was going to be subpoenaed.

4.     Beginning on page 55, line 17 of Mr. Petty's deposition, the following questions and answers were made:

Q:   You met with Mr. Mozingo before this deposition; isn't that correct?

A:   I did meet him.

Q:    Did you meet with him?

A:    No.

Q:    Did you discuss this matter with him?

A:    No.

Q:    Have you discussed this matter with Ms. Hubbard?

A:    No.

Q:    Have you discussed this matter with Ms. Owens?

A:    Are you talking about the case specifics?  Tell me exactly what you're talking about.

Q:    Yeah.  I'm sorry.  I'm really talking about the questions - -

A:    And when?  When are you saying?

Q:    At any time.

A:    I have not talked about any specifics of any case with Ms. Hubbard or Ms. Lynn - - or Ms. Owens.  Excuse me.  Or Ms. Lynn.

Q:    Okay.  You haven't talked about any of the questions that have been asked of you today?

A:    No.

Q:    With anyone?

A:    No.  No.

5.    On page 17, Mr. Petty was asked about his service at the Department

of Mental Health and the period of time that he worked for June Lynn.  He testified

that the period was not constant or unbroken and that he went with Mr. Dillihay to be

Mr. Dillihay's secretary at Mental Illness when Mr. Dillihay was transferred there. At page 17, line 8, the following questions and answers begin:

Q:     So you served as Mr. Dillihay's assistant for a period of time then?

A:     That's correct.

Q:     And can you tell me roughly what the period of time was?

A:     It would be that same period of time that Ms. Lynn was acting associate. And I can't give you specific time frame, but like I said, it could be six to 10 months up to a year. I don't remember.

Q:     Was that in '04? '05?

A:     I think it was in '06.

Q:     Are you certain about that?

A:     I'm not certain. I could be 2005. I just really can't remember. It was a long time ago. (See the affidavit of June Lynn where she gives the dates of this period of time as running between July 2005 and November 2005.)

6.     On pages 39 and 40 of Mr. Petty's deposition, he describes Mr. Dillihay's move from Associate Commissioner of Administration and Personnel to Associate Commissioner of Mental Illness. He describes the fact that he and Mr. Dillihay were located in an opposite corner of the building from the Personnel Department and the office of Associate Commissioner of Administration.

7.      Mr. Petty does not remember and has no idea when Mr. Dillihay allegedly made extremely vague remarks attributed to him by Mr. Petty.  (Plaintiffs' Exh. "120", p. 41:22 - p. 42:10.)

Q:      "If I understand you correctly, Mr. Petty, with respect to these communications you've testified to from Mr. Dillihay, you don't have any idea when they occurred?"

A:      "I could not say, sir.  I have no idea.  Just under the time that I was employed there."

Q:      "And would it be fair to say you don't remember the exact words of those conversations?"

A:      "The exact words that is - - No, I don't remember the exact wording."

Further, page 45, beginning at line 17:

Q:      "The conversations that you heard, were they always between Mr. Dillihay and Ms. Lynn?"

A:      "I would think so.  I would say yes.  But maybe not exclusively."

Q:      "Did you hear more than one?"

A:      "I want to say yes.  Maybe not - - Maybe not a conversation between Ms. Lynn and Mr. Dillihay, but I've heard statements and remarks and other people around, you know - - You've got to remember I'm right outside of these offices."

8.      Mr. Petty has testified to remarks that he claims he heard Mr. Dillihay make.  These were remarks of a racial nature.  There are several reasons to strike these remarks as follows:

a.   Mr. Petty has utterly no idea when the conversation occurred or how many conversations there were or who participated in the conversations. He simply says that it was some time during his tenure at the Department which was between November 2004 and sometime in 2007.

b.   He was located at a diagonal corner of the building for a period of time but cannot remember when that period of time was. However, from June Lynn's affidavit, we know that Mr. Dillihay transferred to Mental Illness and was there from July 2005 to November 11, 2005. September 15, 2005 was the date of the first announcement of this job. Another job announcement was made with a closing date of October 28. Mr. Petty was not in the office of the Associate Commissioner of Administration and Personnel during one of the most significant time frames in this case.

c.   Mr. Petty's testimony is unreliable, does not contain specifics of time and he does not know the wording of these conversations. Additionally, he does not know the context of the conversation. At page 54, beginning at line 6, the following question was asked:

Q:   "That's what you got from it. But do you know the context, the overall context and panorama of conversation that it related to?"

A:   "Well, I don't. But - - I'll leave it at that. No."

6

WHEREFORE, the undersigned respectfully requests that this motion be granted and no consideration of Mr. Petty's deposition testimony be given to it by the Court.

/s/H.E. Nix, Jr.
H.E. NIX, JR. (NIX007)
BRANDY F. PRICE (PRI079)
Counsel for Defendants

OF COUNSEL:
*Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.*
P.O. Box 4128
Montgomery, AL 36103-4128
334-215-8585
334-215-7101 - facsimile
cnix@nixholtsford.com
bprice@nixholtsford.com

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing instrument has been served (a) through the Court's e-filing system; (b) by placing a copy of same in the United States Mail, postage prepaid and properly addressed; and/or (c) by e-mail to

| | |
|---|---|
| J. Flynn Mozingo<br>*Melton, Espy & Williams, P.C.*<br>P. O. Drawer 5130<br>Montgomery, AL 36103-5130 | Courtney W.Tarver<br>Deputy Atty. General and Gen. Counsel<br>Bureau of Legal Services<br>Dept. of Mental Health<br> and Mental Retardation<br>RSA Union Building<br>100 N. Union Street<br>Montgomery, AL 36130-1410 |

on this the 4th day of August, 2008.

    /s/H.E. Nix, Jr.
OF COUNSEL