

# Auburn University

## Center for Governmental Services

hereby certifies that

### Marilyn Benson

has satisfactorily completed
Course II
Federal and State Laws
and is awarded this certificate of recognition
and merit



_Director_
**Center for Governmental Services**

May 12, 1995
_Date Awarded_

**DEFENDANT'S EXHIBIT**
42
tabbies





STATE OF ALABAMA

## DEPARTMENT OF MENTAL HEALTH
## AND MENTAL RETARDATION

200 INTERSTATE PARK DRIVE
POST OFFICE BOX 3710
MONTGOMERY, ALABAMA 36109-0710

FOB JAMES, JR.
GOVERNOR

R. EMMETT POUNDSTONE, III
COMMISSIONER

May 26, 1995

Ms. Marilyn Benson
Office of Personnel
Dept. of Mental Health/Mental Retardation
200 Interstate Park Drive
Montgomery, Alabama 36109

Dear Marilyn:

I wanted you to know how much I appreciate your assistance in helping prepare for the Wyatt trial. I know this case lasted for months and a great deal of effort was made to collect data, provide information, and continue with your day-to-day responsibilities. I am aware that requests were made for documents to be prepared and/or delivered in unrealistic time frames. If it were not for you and your willingness to go above and beyond the call of duty, this case could not have been presented as effectively as it was. I know you and many others worked extra hours including nights and weekends to ensure data was gathered and submitted on time.

You have my deepest appreciation, and this Department is certainly indebted to you for your dedication and hard work. We are so fortunate to have employees such as you in this Department.

Whatever the outcome of this case, please know that I am aware of the hard work and effort that was expended by conscientious employees such as you.

Sincerely,

R. Emmett Poundstone, III
Commissioner

REP,III:ez



**DEFENDANT'S EXHIBIT**
43

ADMH 01-03-00041



# STATE OF ALABAMA
## PERSONNEL DEPARTMENT
300 Folsom Administrative Building
Montgomery, Alabama 36130-2301
Telephone: (334) 242-3389 Fax (334) 242-1110



State Personnel Director
Halycon Vance Ballard

State Personnel Board
Joe Williamson
Joe Dickson
Dick Anderson
Ruth Harrell
Harry McMillan

July 7, 1995

Dear Applicant:

Your application for the Health Services Administrator II has been accepted.

The assessment center for this examination consists of five components: (1) a role play exercise which will be videotaped; (2) an oral presentation exercise which will also be videotaped; (3) a budget exercise; (4) a writing exercise, and (5) an in-basket exercise. A description of each component is enclosed.

You have been scheduled to participate in the budget exercise, the writing exercise, and the in-basket exercise on Monday, July 31, 1995 at the State Personnel Department, Room 319, Folsom Administrative Building, 64 North Union Street, Montgomery, AL in Training Rooms A & B. Free parking is available at Cramton Bowl just off Madison Avenue. You should arrive at 8:00 a.m. to check in. The first exercise will begin at 8:30 a.m. promptly. You will complete these three exercises on Monday. Please bring with you to the test site a calculator, a watch, picture identification, and this letter. Do not bring the type of calculator that utilizes tape. We will provide notepads, pens, and dictionaries for use during these exercises. Note: You may bring prepared information such as charts, graphs, etc. for the oral presentation.

The role play exercise and the oral presentation will take a total of approximately 70 minutes. You have been scheduled to take these two exercises at _____ a.m. on August ____, 1995. Please report to the State Personnel Department, Room 358. Parking is again available at Cramton Bowl. It will not be necessary to bring any reference materials with you, except for materials you wish to include in your oral presentation.

If you have any questions concerning this examination, please contact me at (334) 242-3529.

Sincerely,

Elizabeth Cole
Personnel Analyst

EC/lda
Enclosures



DEFENDANT'S EXHIBIT 44



# STATE OF ALABAMA
## PERSONNEL DEPARTMENT
300 Folsom Administrative Building
Montgomery, Alabama 36130-2301
Telephone: (334) 242-3389 Fax (334) 242-1110



State Personnel Director
Halycon Vance Ballard

State Personnel Board
Joe Williamson
Joe Dickson
Dick Anderson
Ruth Harrell
Harry McMillan

August 15, 1995

Marilyn Benson
Department of Mental Health
Montgomery, AL

Dear Ms. Benson:

Thank you for agreeing to participate as an assessor for the Health Service Administrator II examination. The rating process will take place August 16, 1995 through August 25, 1995 at State Personnel Department, Room 358, Folsom Administrative Building, 64 North Union Street, Montgomery, Al. Each day will begin at 8:30 a.m. and end at 5:00 p.m. Enclosed is a copy of the letter sent to scheduled candidates; forty-seven candidates participated in the assessment center. You do not need to bring any materials with you.

I look forward to working with you.

Sincerely,

Elizabeth Cole

Elizabeth Cole
Personnel Analyst

DEFENDANT'S
EXHIBIT
45
tabbies

ADMH 01-03-00039



# STATE OF ALABAMA
## PERSONNEL DEPARTMENT
300 Folsom Administrative Building
Montgomery, Alabama 36130-2301
Telephone: (334) 242-3389 Fax (334) 242-1110



**State Personnel Director**
Halycon Vance Ballard

**State Personnel Board**
Joe Williamson
Joe Dickson
Dick Anderson
Ruth Harrell
Harry McMillan

August 29, 1995

Butch King, Director
Department of Mental Health
100 North Union Street
PO Box 301410
Montgomery, AL 36130-1410

Dear Mr. King:

As per our telephone conversation, I am requesting your assistance in providing an assessor for the General Management Assessment Center examination. If work schedule permits, I would like for Marilyn Benson to participate as an assessor for this examination. The ratings are scheduled for September 18-27, 1995.

I appreciate your assistance with this request.

Sincerely,

Paul D. Thomas, Manager
Certification and Payroll Audit

PDT/CBK/bhj



DEFENDANT'S
EXHIBIT
46

ADMH 01-03-00038



## STATE OF ALABAMA

GOVERNOR'S OFFICE

MONTGOMERY 36130

FOB JAMES, JR.
GOVERNOR

May 16, 1997

Ms. Marilyn Benson
Mental Health Dept.
100 N. Union St., Suite 518
Montgomery, AL 36104

Dear Ms. Benson:

It is my pleasure to appoint you as a member of the Governor's Domestic Violence Advisory Council, effective May 16, 1997.

I appreciate your serving in this capacity, and I am confident you will render a valuable service to the citizens of Alabama.

With kind personal regards, I am

Sincerely,

Fob James, Jr.
Governor

FJ/ch



DEFENDANT'S
EXHIBIT
47

ADMH 01-03-00036

THE UNIVERSITY OF ALABAMA AT BIRMINGHAM
SCHOOL OF HEALTH RELATED PROFESSIONS

CERTIFICATE OF PARTICIPATION

MARILYN BENSON

ALABAMA DEPARTMENT OF MENTAL HEALTH AND RETARDATION

ATTENDED AND PRESENTED CAREER AND EMPLOYMENT INFORMATION TO STUDENTS, GRADUATES, AND FACULTY FOR

HEALTH CAREER OPPORTUNITY DAY

AND IS AWARDED THIS CERTIFICATE

ON

FEBRUARY 22, 2000

Helen Dees, Data Processing Specialist

Bernard Harris, Director of Student Services

DEFENDANT'S
EXHIBIT
48

ADMH 01-03-00029



**AUM**
Auburn University Montgomery
University Outreach

This certifies that

## Marilyn Benson

Attended the
AUM University Outreach
Centering on Solutions: Human Resources
Management Conference
on the 15th day of October 2002.

**DEFENDANT'S EXHIBIT**
49

ADMH 01-03-00030



# STATE OF ALABAMA
## PERSONNEL DEPARTMENT
300 Folsom Administrative Building
Montgomery, Alabama 36130-4100
Telephone: (334) 242-3389  Fax: (334) 242-1110



Tommy Flowers
State Personnel Director
Jackie Graham
Deputy Director

July 7, 2005

Marilyn B. Benson
Mental Health
HAND MAIL

Dear Marilyn B. Benson,

A consultant group, SHL, will be conducting job analysis meetings for the State of Alabama Personnel Department on the Personnel Assistant II classification. You as an incumbent or supervisor of someone in this class have been chosen to participate in the following meeting. The meeting should last between 2 and 4 hours. Below is listed the date, beginning time, and location of the meeting.

**July 22, 2005; 9:00 a.m.;**
**Alabama Department of Transportation**
**Conference Room 8**
**1409 Coliseum Blvd**
**Montgomery, Alabama**

Your attendance at this meeting is very important. If you have questions regarding the meeting you can contact Steve Dukes (353-3752) or Cindy Jackson (353-4008) with the State Personnel Department.

Sincerely,

Alice Ann Byrne
SPD General Counsel

C:　　Henry Ervin
　　　Supervisor of Marilyn B. Benson

DEFENDANT'S
EXHIBIT
50




STATE OF ALABAMA
**DEPARTMENT OF MENTAL HEALTH
AND MENTAL RETARDATION**
RSA UNION BUILDING
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410

BOB RILEY
GOVERNOR

JOHN HOUSTON
COMMISSIONER

# CERTIFICATE OF ATTENDANCE

The Alabama Department of Mental Health and Mental Retardation certifies that

## **Marilyn Benson**

has completed the following workshop, program, or inservice training session:

## **FAMILY AND MEDICAL LEAVE ACT (FMLA)**

Date(S)  10/20/2005   10/20/2005                    Event #:   981

Contact Hours        3

Certified By: _____

Commie Carter, Director
Office of Staff Development


_____

Signature of Participant

DEFENDANT'S
EXHIBIT
51

ADMH 01-03-00028

Form 40 - Revised 1/95

# POSITION CLASSIFICATION QUESTIONNAIRE
### STATE OF ALABAMA
Personnel Department

PCQ# ___8824171___

1. Employee's Name ___Joan Owens___ (For Dept Use Only)

2. Classification ___Personnel Spec. III___    5. Division or Bureau ___J.S. Tarwater___

3. Working Title ___Asst. Personnel Mgr.___    6. Section or Unit ___4070___

4. Department ___Mental Health___    7. Work Location (County) ___Elmore___

8. Name and title of immediate supervisor (person who assigns work) ___Sidney Cole, Personnel Mgr.___

9. Position is: full-time __X__, part-time _____, permanent _____, temporary _____.

10. SUPERVISION EXERCISED: Only complete this section if this position completes performance appraisals or actually participates in rating other employees. If the position functions as a lead worker and only assigns work, then list that responsibility on item 11B as a duty.

    a. Total number of employees that this position supervises: ___-0-___
    b. Percentage of time spent on supervision and related duties: ___-0-___
    c. If this position DIRECTLY supervises 5 or less employees, give names and titles. If this position DIRECTLY supervises more than 5 employees give the number and official classification of each.

| | |
|---|---|
| | |
| | |
| | |
| | |

    d. As a supervisor, does this position: (Check the activities performed)

| | | | |
|---|---|---|---|
| Make daily work assignments? | ☐ | Interview and make hiring recommendations? | ☒ |
| Approve and Disapprove leave requests? | ☒ | Recommend disciplinary actions? | ☒ |
| Reassign job duties on permanent basis? | ☐ | Prepare and conduct performance appraisals? | ☐ |

11. DESCRIPTION OF DUTIES PERFORMED:

    a. In one or two sentences, describe the major purpose of this position.

Enforce proper prodecures in hiring and following department policies
Serving in the capacity of Personnel Manager in her absence.

DEFENDANT'S
EXHIBIT
52
tabbies

ADMH_01-01-00217

b. Duty Statement:    *(Complete Column "C" first)*
    ● In column A, indicate PERCENTAGE of time spent on each duty (total should not exceed 100%).
    ● In column B, rate the duties as to their IMPORTANCE. VI-Very Important  I-Important  SI-Somewhat Important
    ● In column C, describe in detail each of the position's PERMANENT duties and responsibilities using your OWN
words.

| A % | B rating | C Description of Duties |
|---|---|---|
| 20% | VI | Assume the duties of the Personnel Manager in ~~her~~ his absence. |
| 3% | VI | Supervise the maintenance and security of personnel records. |
| 2% | I | Prepare reports for submission to MH Dept. Central Office. |
| 1% | VI | Coordinate the development and implementation of new employee forms. |
| 5% | VI | Coordinate the completion of documents regarding changes in existing employee information, notices of appointments, promotions, and demotio |
| 3% | SI | Answer incoming correspondence, as appropriate. |
| 2% | SI | Draft standard letters and memorandums for printing. |
| 3% | SI | Duplicate and distribute forms, letters, memos, etc., as appropriate. |
| 3% | SI | Review and distribute incoming mail, as appropriate. |
| 8% | VI | Assist & advise supervisors in personnel matters, including but not limited to pay and classification, leave records, disciplinary records, performance evaluations, scheduling, and planning. |
| 8% | VI | Counsel, advise, and assist employees on personnel topics. |
| 10% | I | Assist employees in matters related to Workmans Compensation. |
| 3% | SI | Screen incoming telephone calls and telephone inquires. |
| 2% | I | Develop personnel policies and procedures, as assigned. |
| 3% | VI | Monitor compliance with published personnel policies and procedures. |
| 2% | VI | Conduct orientation for new employees regarding personnel policies and procedures. |
| 5% | VI | Administers Due Process. |
| 5% | I | Enters data on employee records. (terminal) |
| 10% | I | Assist in Payroll preparation. |
| 2% | I | Monitor all Unemployment Compensation Claims, and attend hearings. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

(Attach additional sheets if necessary)

ADMH_01-01-00218

12. DECISION MAKING: Give example(s) of the more important decisions made while performing the duties of this position. Then list the possible effect of error(s) on the organization or general public.

Hiring individuals for specific jobs. (If employee not qualified, clients could receive improper training.) Conducting disciplinary hearings. (Employee could receive unfair actions.) Maintaining secure files. (confidential information on employees made public.)

13. FINANCIAL RESPONSIBILITY: If this position has responsibility for controlling and/or authorizing the expenditure of funds, please describe and indicate approximate amount controlled.

14. WORK GUIDELINES: (Only include written guidelines) List the specific laws, regulations, instructions, manuals, or procedures that must be followed in performing this job and describe how they are used.

| LIST ITEM | HOW USED |
|---|---|
| State of AL P&P | Hiring |
| MH/MR P & P | Hiring |
| Family Medical Leave | Counseling employees |
| FLSA | Insure proper Pay |
| OSHA | Maintaining Work Environment |
| ADA | Insure proper hiring |
| EEOC | Insure proper employee relations |

Exempt & Merit System Hiring

15. SUPERVISION RECEIVED:
How is this position's work reviewed? (Check one)
❑ Supervisor reviews most or all of work while it is being done.
❑ Supervisor spot checks work as it is being done.
❑ Supervisor reviews most or all of work after completion.
❑ Supervisor spot checks work after completion.
☒ Supervisor does not review work.
❑ Other. (describe fully)

16. WORK CONTACTS: With whom, outside of co-workers in this unit, must this position regularly come in contact?

| Who Contacted | How (Phone, in person, etc.) | Purpose of Contact | How Often |
|---|---|---|---|
| Central Office | Phone and in person | Instructions | 2 x day |
| State Personnel | Phone and in person | Instructions | 1 x day |
| Other Facilities | Phone and in person | Advise, transfers, hiring | 1 x wk |
| Employees | Phone and in person | Personnel Matters | 10 x day |
| Public | Phone and in person | Hiring, references | 12 x day |
| Risk Management | Phone | Workman's Comp. | 1 x day |

Dept. of Industrial Relations..Phone and in person...Unemployment Comp. 2 x mo.

ADMH_01-01-00219

17. EQUIPMENT USED: List any equipment used regularly. Give percent of time spent in operation of each. For vehicles and construction and maintenance equipment operated, indicate capacity, e.g., tonnage, yardage.

| | | % | | | % |
|---|---|---|---|---|---|
| Typewriter | 10 | % | | | % |
| Copier | 10 | % | | | % |
| Fax | 10 | % | | | % |
| Computer | 50 | % | | | |

a. Does this position require typing?
☐ NO
☒ YES--Give % of time spent in typing 10 %

b. Does this position require taking shorthand?
☒ NO
☐ YES--Give % of time spent in shorthand _____ %

## ITEMS TO BE COMPLETED BY IMMEDIATE SUPERVISOR AND/OR APPOINTING AUTHORITY

18. Are the statements of the employee accurate and complete? (Indicate inaccuracies and incomplete items)

19. If duties listed are for reallocation of position, what additional and/or more complex duties have been added to this position to warrant reallocation.

Conducts all Predisciplinary Conferences, and represents facility in appeal
Payroll Preparation.
Coordinates all Workman's Compensation Claims.

20. List any required licenses, registrations, certifications, or special requirements necessary to perform the job.

21. Check below the type of supervision provided by the immediate supervisor to this position.
☐ CLOSE/HANDS ON    or    ☐ GENERAL/ADMINISTRATIVE

22. Additional information and comments (additional sheets may be attached, if necessary).

| Item # | |
|---|---|
| | |
| | |
| | |
| | |

### VERIFICATION - READ CAREFULLY BEFORE SIGNING

I hereby certify that I have read the above and verify that it is , to the best of my knowledge, correct and accurate. I understand that disciplinary action could be taken against anyone who knowingly provides false information.

| _Joan F. Nivens_ | _1/3/97_ | _Personnel Spec. II_ | _(334)567-847_ |
|---|---|---|---|
| Signature of Incumbent | Date | | Telephone # (ATTNET) |
| _Sidney C. Cole_ | _1-3-97_ | _Staff Dev. Spec. II_ | _334-567 8471_ |
| Signature of Supervisor | Date | Title/Classification | Telephone # (ATTNET) |
| _Joith J. Johnston_ | _1/3/97_ | | |
| Signature of Appointing Authority | Date | | Telephone # (ATTNET) |

### QUESTIONNAIRES NOT SIGNED BY ALL PARTIES WILL BE RETURNED

ADMH_01-01-00220

**Otha R. Dillihay, Sr.**
**210 Hamptons Grant Ct.**
**Columbia, SC 29209**
**(803) 776-2651 (Home)**
**(334) 669-3694 (Cell)**

## WORK EXPERIENCE

| | |
|---|---|
| 2007 to Present | **Program/Policy Analyst Consultant, DC Government**<br>**Department on Disabilities Services**<br>**Washington, DC** |

Direct and coordinate Human Resource and Information Technology projects and work functions on behalf of the Director. Develop special projects and programs for the purpose of improving agency program operation, and services to customers. Identifies actual or potential problems areas and develops corrective actions to remedy deficiencies in program areas. Provide extensive liaison responsibilities between the Director, agency management and human resources staff. Assist in providing technical assistance and guidance in operations, policy and budgetary preparations.

2004 to 2007    **Associate Commissioner, Division of Administration**
**Alabama Department of Mental Health and Mental Retardation**
**Montgomery, Alabama**

Responsible for all aspects of administration, finance, Medicaid administration, human resources information technology, certification and support for a state agency that provides mental health services through a statewide delivery system. Develop administrative policy and provide management and oversight of contracts for community-based services, residential care, facility physical plant maintenance and support, child and adolescent programs and educational and treatment services. The agency employs approximately 3000 individuals and has a budget of $700 million dollars. Responsibilities include dealing effectively with boards and commissions, community based advocacy groups, organized labor, state, federal and local governments. Supervise the Departments of Finance, procurement Human Resources, Staff Development and Training, Information Systems, Certification, Contract Administration, and Capital improvement. I am knowledgeable of all federal and state regulations governing the operations of health facilities and of the JCAHO and CARF accreditation process.

2001 to 2004    **Director, Board of Directors Palmetto Health Alliance**
**Columbia, South Carolina**

Developed policy and directed the strategic planning, corporate and audit compliance for the largest hospital system in South Carolina. Member of the Executive Compensation, Finance and Community Services Committees.



DEFENDANT'S EXHIBIT 53
tabbies

1999 to 2003      **Deputy Director for Administration,**
**SC Dept. of Juvenile Justice**
**Columbia, South Carolina**

Responsible for the efficient management and supervision of all
Department of Juvenile Justice's administrative systems including:
Budget, Finance, Medicaid, Administration, Contracts, Grants
Administration, Engineering Physical Plant and Support Services, Finance,
Information Resource Technology, and Human Resources.
I directed an administrative infrastructure to support the agency's mission to
ensure accountability. I also managed the agency's $100 million budget and $13
million Medicaid Program. Directed the agency's HIPAA compliance program
and served as agency's legislative liaison.

1994 - 1999      **Hospital Administrator**
South Carolina Department of Mental Health
Columbia, South Carolina

Chief Operating Officer for a 288 bed psychiatric hospital and a 166 bed
medical/surgical hospital. Supervised the following departments:
Budget/Finance, Human Resources Medicaid Administration, Health Information
Services, Outpatient Clinics, Supply and Services, Safety/Risk Management,
Computer Services. Directed the hospitals' JCAHO, HIPAA and corporate
compliance programs.

1993 - 1994      **Director Hospital Mortgage Insurance Staff**
U.S. Department of Housing and Urban Development
Washington, D.C.

Developed policy and directed the activities for a bond insurance program for
hospitals and other health care facilities. Responsible for the management of a
five billion dollar bond portfolio for the US government. Bonds issued under the
program enabled the construction or renovation for health care facilities in the
U.S. and Puerto Rico.

1990 – 1993      **Business Manager/Chief Financial Officer**
Crafts-Farrow State Hospital
Columbia, South Carolina

1991      **Executive Assistant to the State Commissioner**
South Carolina Department of Mental Health
Columbia, South Carolina

1988 – 1989      **Project Coordinator/Director Continuity of Care**
G. Werber Bryan Psychiatric Hospital Columbia, South Carolina.

ADMH 01-05-00071

## EDUCATION

**Webster University**, St. Louis, Missouri, 1990
Masters Degree Business Administration

**South Carolina State University,** Orangeburg, South Carolina, 1988
Bachelor of Science Degree Business Administration

**University of South Carolina School of Law,** 1983-1985
Columbia, South Carolina

**Morehouse College**, Atlanta, Georgia, 1975
Economics

## LEADERSHIP TRAINING

**Leadership South Carolina,** 2003
University of South Carolina

**South Carolina Executive Institute,** 2001
South Carolina Budget and Control Board

**Executive Leadership Institute,** National Forum for Public Administrators, 1992
Harvard University

## BOARD SERVICE AND VOLUNTEER ACTIVITIES

- Director, Board of Directors, Palmetto Health Alliance, 2000-2004
- Trustee, Board of Trustees, Richland Memorial Hospital, 1999-2004
- Director, Board of Directors, Hospital Services Industries, Inc., 2000-2004
- Director, Board of Directors, South Carolina Cancer Center, 2002-2004
- Director, Board of Directors Mental Illness Recovery Center 1999 -2004
- Major, South Carolina State Guard, HQ, First Brigade 2005 -present
- Vice President, Board of Directors South Carolina Executive Institute Alumni    Association.
- Director, Board of Directors South Carolina Deputy Directors Organization, 2002-2004.

## HONORS AND CERTIFICATIONS

- Licensed Pilot, (Federal Aviation Administration)
- Graduate, South Carolina Executive Institute
- Graduate, Executive Leadership Institute (Harvard University)
- Graduate, Leadership South Carolina (University of South Carolina)
- Graduate, Facility Design and Construction (U.S. Department of Justice)
- Graduate, Project Blueprint Leadership Forum (United Way of America)
- Honorable Order of Arkansas Travelers
- Honorable Order of Kentucky Colonels
- President, Hand Educational Foundation
- Member, President's Cancer Panel, National Institute of Health
- Certified Rational Behavior Therapist

**Hobbies**

Aviation, Golf, Coin Collecting.

ADMH 01-05-00073

# HENRY E. ERVIN, SR.
1600 Wakefield Drive
Tuscaloosa, Alabama 35405
(205) 752-3414

## EDUCATIONAL DATA

**Graduate School:**        Nova University, Fort Lauderdale, Florida
Public Administration Program
Attended from May 1974 – December 1976

**Undergraduate School:**    Alabama State University, Montgomery, Alabama
Bachelor of Science Degree received June 1971

## PROFESSIONAL EXPERIENCE

- **October 1998 – Current:**    State of Alabama
Department of Mental Health and Mental Retardation

    **Job Title:**        **Director of Human Resources Management**

    **Duties Performed:** Plans, directs and monitors the Human Resources
    so that the application and interpretation of the rules and regulations for
    Personnel Administration, applicable labor relations and other areas of
    administration are equitably performed including the enforcement of State and
    Federal rules and regulations within the limits of applicable statutes, policies,
    labor relations, both State and Federal, Departmental Policy and Procedures and
    supervisory guidelines.
        Advises Departmental administrators and employees so that there is a
    clear understanding of the classification, recruitment and selection process,
    including the application and interpretation of the rules, regulations,
    Departmental and State Personnel Policies and Procedures, federal and State
    laws for Personnel Administration, Labor contracts, EEOC and ADA
    requirements, FMLA, Employee Injury Program and other applicable activities.
        Serves as Liaison to the State Personnel Department, Federal and other
    State Agencies so that the Department maintains a communication link and is
    adequately represented, including receiving and providing information on
    current developments and practices in employment and labor relations, participate
    in conducting investigations of certain complaints filed against Departmental
    employees. Performs mediation activities when necessary



DEFENDANT'S
EXHIBIT
54

ADMH 01-04-00329

- **December 1990 – October 1998:**    Thomasville Mental Health and Rehabilitation Center

    **Job Title:**                    **Director of Human Resource Management**

    **Duties Performed:** Responsible for day to day operations of the Thomasville Mental Health Rehabilitation Center's personnel office, including policies and procedures, quality improvement, curriculum development, budget, recruitment, selection, placement, position classification, personnel transactions, training, employee and labor relations, performance evaluations, employee counseling affirmative action and personnel records. Responsible for planning, organizing, developing, coordinating and implementing a comprehensive personnel management program. Provided frequent advice and recommendations to the director or administrative supervisor on personnel needs, rules, policies and participate in the overall management process of the facility. Provided supervision for the employee health and volunteer services programs. Supervision was exercised over clerical and professional staff performing specialized assignments.

- **September 1988 – December 1990:**    Alabama Department of Mental Health/Mental Retardation
    Thomasville, Alabama

    **Job Title:**                    **Mental Health Facility Advocate**

    **Duties Performed:** Received and conducted investigations of complaints related to alleged violations of patient rights in the Department of Mental Health facility at Thomasville Mental Health Rehabilitation Center using state mental health procedures and guidelines.

- **May 1987 – September 1988:**    Alabama Department of Mental Health/Mental Retardation
    Thomasville, Alabama

    **Job Title:**                    **Hearing Officer**

    **Duties Performed:** Served as Hearing Officer under an independent contract for the Alabama Department of Mental Health/Mental Retardation. This required hearing cases which were presented by labor unions representing the non-management employees of the Department of Mental Health and rendering decisions on those cases.

- **September 1980 – April 1987:**     Alabama Department of Mental Health/Mental Retardation
  Montgomery, Alabama

  **Job Title:**                              **Director of Personnel Services**

  **Duties Performed:**  Responsible for the day to day operations at the State Department of Mental Health's central personnel office, including managing all aspects of employment, recruitment, wage and salary administration and coordinating the merit system hiring process with the State personnel department. This position also entailed supervising an office of 10 professional and clerical personnel and a budget of $300,000.

- **September 1977 – August 1980:**     The Ohio State University Hospitals & College of Medicine
  Columbus, Ohio

  **Job Title:**                              **Associate Director of Hospital Personnel**

  **Duties Performed:**  Planned and carried out policies relating to all phases of personnel activities. Coordinated, developed and implemented policies and programs covering employment, wage and classification, personnel budgets, orientation and placement, benefits and employee compensation. Coordinated meetings and contract negotiations with the hospital's seven labor unions. Exercised general supervision of the hospital's recruitment programs. Functional and administrative supervision was exercised over department management and supervisory staff (4-6).

ADMH 01-04-00331

Employment beyond 1980 includes the following:

|  |  |
|---|---|
| **March 1973 – 1977** | **Director of Personnel and Support Services**<br>Palm Beach County Community Mental Health<br>Center, West Palm Beach, Florida |
| **October 1971 – 1973:** | **Personnel Manager**<br>Ohio Medical Indemnity (Blue Shield)<br>Worthington, Ohio |
| **June – October 1971:** | **Employment Specialist III**<br>Ohio Bureau of Employment Services<br>Columbus, Ohio |

## MILITARY SERVICE

**December 1965 – October 1967**    Served as an enlisted man (Grade E-5) in the Republic of Vietnam with the 199th Lt. Infantry Brigade.  Honorably discharged form active duty October 24, 1967.

## PROFESSIONAL AND CIVIC ORGANIZATION AFFILIATIONS

Board Chairman – The Montgomery Community Housing Resource Board (1983 –December 1988)

A graduate of Leadership Montgomery – First Class in 1985

Past member of Montgomery County Personnel Association

Member of KAPPA ALPHA PSI Fraternity, Inc.  (Life Member)

Member of Masonic Lodge 520, Linden, Alabama

Member and Board of Deacons, First Baptist Church of Linden, Linden, Alabama

A member of the Advisory Board for the Alabama Department Youth Services REACH Program.

Member of the Linden City School Board (1998 - 2005)

Member of the Review Board for the Alabama Department of Risk Management.

ADMH 01-04-00332

## REFERENCES

Available upon request.

ADMH 01-04-00333

**John M. Houston**
**Commissioner, Alabama Department**
**of Mental Health/Mental Retardation**

### EDUCATION

| | | | |
|---|---|---|---|
| 1971 | Auburn University | BA | |
| 1975 | University of Alabama | MSW | (Planning/Administration) |
| 1975 | University of Alabama | MA | (Special Education/Mental Retardation) |

### EXPERIENCE

**1986-PRESENT    STATE DEPARTMENT OF MENTAL HEALTH/MENTAL RETARDATION**

**Commissioner** (May 2005-Present) Responsible for the overall administration and management of the Department of Mental Health and Mental Retardation, including all state in-patient facilities and community contracted and certified programs.

**Executive Assistant to the Commissioner** (1995-Present)
Responsibilities include: serving as Departmental liaison to other state and federal agencies, including representing the Commissioner on councils, boards, or interagency committees; assisting the Commissioner in managing administrative assignments to appropriate department staff; negotiation or mediation activities with other agencies or community providers; providing assistance, as needed, on legislative activities and departmental and interagency planning activities; performing various administrative assignments such as general oversight of routine transactions with other executive branch offices; and serving as contact person for the Commissioner's Office with human services agencies, juvenile and other state court personnel, families, clients, advocates, and others who have complaints or concerns related to Departmental operations or services. Typicaly responsible for handling functions of the Commissioner's Office in the absence of the Commissioner.

During this time, assisted the Associate Commissioner for Administration with a review of essential functions and staffing needs in the Central Office. Served as the Public Information Officer for the Department on a temporty basis when that position was vacated and continue to handle media contacts when needed. Assumed responsibility for coordination of administrative functions of the Office of the Associate Commissioner for Mental Retardation Services when the Associate Commissioner was assigned to Partlow during the recent consolidation of MR facilities.

Interagency responsibilities include serving as the Commissioner's proxy on the *Alabama Children's Policy Council* (2000–present), *Department of Youth Services Board* (1987-1998, 1999-present), the *Child Abuse and Neglect Prevention Board (Children's Trust Fund)* (1995-present), the *Alabama Child Death Review Team* (2000-2003), the *State Children's Services Facilitation Team* (1993- present), and the *Governor's Interagency Coordinating Council for Early Intervention Services* (1986- present). Also served as Department's representative on the *Children's Health Insurance Program (CHIP) Work Group*, the *Joint Legislative Committee on Children in State Care/Interagency Subcommittee*, the *Family and Children Training System (FACTS)* and the *Interagency Subcommittee of the Joint Legislative Committee on Rural Transportation.*

**Acting Associate Commissioner for Administration**  (March 1999 – June 1999)



DEFENDANT'S
EXHIBIT
55

tabbies

General oversight and supervision of all organizational units of the Division of Administrative Services including Budget/Finance, Data Management, Technical Services/Certification, Personnel, and OBRA Screening. Provides assistance to the Commissioner with special projects, legislative activities, public speaking engagements, and representing the Commissioner at Executive or Legislative activities in the Commissioner's absence.

State Children Services Facilitation Team (SCSFT) (1993-Present) Appointed by the Commissioner as the DMH/MR representative of the *State Children Services Facilitation Team* (SCSFT). Elected to serve as Chairperson of the SCSFT in 1993-1994, 1996-1998, and 1999-2001. Responsibilities of the SCSFT include working with the Departments of Youth Services, Human Resources, Education, Public Health, Mental Health/Mental Retardation and representatives of the Association of Chief Juvenile Probation Officers regarding planning for and developing services for Multiple Needs Children (MNC) *(i.e., "children requiring services from two or more agencies and at risk of out-of-home placement or movement to a more restrictive placement").*

The State CSFT is responsible for developing policies and procedures for state and county SFTs, working with juvenile courts and county SFTs to plan for and coordinate services to MNC, and for securing and coordinating funding from various state and federal sources to provide needed services to these children. Responsibilities of the Chairperson include: presiding at monthly meetings of the SCSFT; providing general supervision of the State Multiple Needs Child Coordinator and SCSFT functions such as fiscal management of interagency accounts with contributions from five child-serving agencies; negotiation of collaborative interagency service and funding agreements to provide services to multiple needs children; representing the SCSFT on occasions such as collaborative planning or training activities, and in juvenile court proceedings or related activities.

Executive Assistant to Associate Commissioner/Mental Illness Division (1991-1994) In general, responsibilities in this position were very similar to those enumerated above with administrative responsibilities focused on MI Division activities and liaison responsibilities approximately equally divided between MI and Department wide concerns.

Executive Assistant to Associate Commissioner/Administrative Division (1986-1991)
Again, responsibilities in this position were very similar to those enumerated above. I was directly involved in Divisional planning, budget preparation and management, policy development and implementation, personnel and related matters and gained a detailed knowledge of all bureaus and offices in the Administrative Division. I was responsible for managing the Administrative Division in the Associate Commissioner's absence. During this time, I also coordinated an organizational review of all units (Bureaus, Sections, and Offices) within the Administrative Division to review essential functions, staffing requirements, and organizational relationships.

1980-1986        ALABAMA INSTITUTE FOR DEAF AND BLIND

Director, Sunbelt Regional Center: (1984-1986) Multi-state federally funded program providing technical assistance and fiscal management to state agencies providing services to multi-handicapped sensory impaired children. Negotiated technical assistance and service contracts with state agencies and prepared and submitted federal grant applications. Contract manager/fiscal administrator for 40+ programs in ten states. Served as liaison to program and agency finance staff in each state to assure implementation of program activities and monitor fund utilization. Utilization of federal funding increased from 72% to 98% during the first year.

**Director, Student Services, E. H. Gentry Technical Facility.** (1980-1984) Education/Rehabilitation facility for adult (16+) sensory impaired.  Student Services Department included social services, case management, dormitory/residential programs, recreation/extended day programs and management of all student financial accounts in adult programs.  Responsibilities included supervision of 20+ professional and clerical staff, program design and development, budget development and control, and grant development and management. Significant accomplishments included design and implementation of a facility wide case management system, and substantial expansion of extended day programs and recreational activities.

1979-1980    CETA MANAGEMENT COORDINATION PROJECT

**Research Associate** of a federally funded program providing technical assistance to state agencies, educational institutions regarding employment training programs. My responsibilities focused on programs serving individuals with disabilities.

1977-1979    CHATTANOOGA-HAMILTON CO. ASSN. FOR RETARDED CITIZENS

**Executive Director**  for private non-profit community based program providing services and advocacy for persons who are mentally retarded and for their families. Administrator/supervisor of program staff performing functions of public information/education, advocacy, individual and family counseling, crisis intervention, and emergency shelter.

1974  1977    BRYCE HOSPITAL, DEPARTMENT OF MH/MR

**Advocate/Director of Advocacy Services** for internal advocacy program for Bryce patients.  This position functioned under the supervision of the Hospital Director. Investigated patient complaints and/or supervised other advocacy staff in investigation of complaints regarding alleged abuse or other patient or family concerns; prepared reports of incident investigation and/or program review activities; developed data base of patient complaints and concerns and conducted analysis of issues by program area.

1971  1973    MENTAL RETARDATION SERVICES OF AL./UNIVERSITY OF ALABAMA

**Advocate/Coordinator of Advocacy** for clients in 60 bed residential MR program on campus of the University of Alabama.  Clients were residents of Partlow.    Investigated patient complaints and/or supervised other advocacy staff in investigation of complaints regarding alleged abuse or other patient or family concerns; performed program review activities; monitored caseload of individual client program plans.

*References furnished upon request.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **JOAN FAULK OWENS and** <br> **KAREN LYNN HUBBARD,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **v.** ) **2:07-cv-650** <br> ) <br> **STATE OF ALABAMA DEPT. OF** ) <br> **MENTAL HEALTH AND MENTAL** ) <br> **RETARDATION, et al.,** ) <br> ) <br> **Defendants.** ) | |

<u>**AFFIDAVIT OF EMMETT POUNDSTONE**</u>

STATE OF ALABAMA      )
                      )
COUNTY OF MONTGOMERY  )

Before me, the undersigned notary public, personally appeared Emmett Poundstone, who, after having been sworn, identified himself to me and gave the following testimony:

"My name is Emmett Poundstone and I am currently employed as Vice President for Development and Counsel for Southeastern Psychiatric Management, Inc. I am Caucasian. I have personal knowledge of the testimony in this affidavit. I attended law school at the University of Alabama from 1970 to 1973, at which time I graduated and took the bar exam. I was licensed to practice law in or around May 1973. I maintain my law license and still practice law on behalf of my current employer, Southeastern Psychiatric Management, Inc. I have served the Department of Mental Health for many years. My first job with the Department of Mental Health started in 1975. At that time, I was an Assistant

1



Attorney General. In or around 1979, I was appointed as the Administrative Assistant to the Commissioner, Glenn Ireland, and, also appointed Chief Counsel. After this, I served as Director of Legal and Administrative Services.  In 1984, I was appointed as the Associate Commissioner for Administration and Personnel. Personnel was one of the departments that was under my supervision as Associate Commissioner in this role. I left this position in or around 1988, however, in 1985 and 1986, I also served at the same time I was Associate Commissioner for Administration and Personnel as the Acting Commissioner of the ADMH in the temporary absence of the Commissioner. From 1988 to 1995, I served as Associate Commissioner for Mental Illness. From 1995 to 1996, I served as the Governor's appointed Commissioner of the Department of Mental Health and Mental Retardation.  From 1996 to 1997, I served as Deputy Commissioner to the Department and retired in November 1997.  However, I continued my activities with the Alabama Department of Mental Health and Mental Retardation. From 1998 to 2001, I was a member of the Board of Trustees for the Department. I have chaired a number of special task forces for the Department over the last few years, including the Acute Care Task Force and the Systems Reconfiguration Task Force.  Further, I currently serve on the Mental Illness Planning Council for the Department of Mental Health and Mental Retardation. I have served on that council for the Department for about three years.

My current work requires that I interact with the Alabama Department of Mental Health and Mental Retardation.  I remain active and knowledgeable concerning the work of this Department.

2

I have worked with the laws governing the Alabama Department of Mental Health and Mental Retardation ("ADMH") since 1975, even though the Department was renamed as the Department of Mental Health and Mental Retardation in 1984. I am knowledgeable concerning those laws in view of my prior and continued work with the ADMH and I am aware of and know the interpretation by the ADMH of those laws. Of course, ADMH is the State agency that operates pursuant to those laws. Those laws are the laws of the State agency, the ADMH. Attached hereto are *Code* Sections 22-50-1 through 22-50-25 and 22-50-40 through 22-50-42, *Code of Alabama* (1975). During and in the course of my work with the ADMH, I have closely worked with these laws. There is a section in the attached statutes cited as Section 22-50-11(19) which refers to the merit system rules and regulations and sets forth employees exempt from the merit system rules and regulations, including "physicians, surgeons, psychiatrists, psychologists, dentists, social workers, nurses and attorneys". Another provision of this law is Section 22-50-9, *Code of Alabama* (1975), which states as follows:

> "The Department of Mental Health and Mental Retardation through its commissioner is hereby authorized to act <u>in any prudent way</u> to provide mental health services and mental retardation services for the people of Alabama."

Further, Section 22-50-16, *Code of Alabama* (1975), which is also part of the attached statutory provisions provides that the Governor shall appoint the Mental Health and Mental Retardation Commissioner and that the Commissioner shall serve at the pleasure of the Governor. This section goes on to make the following statement:

> "The said Mental Health and Mental Retardation Commissioner so appointed <u>shall appoint all officers and employees</u> of the Department or he may authorize any superintendent, division or bureau head or other administrator

3

to select with <u>his approval</u> all staff members and employees, and shall fix the salaries of the officers and employees of the Mental Health and Mental Retardation Department, <u>without regard to any limitation established by law, unless such law passed hereafter</u> shall refer to the particular officer or employee of the Mental Health and Mental Retardation Department."

Additionally, Section 22-50-41, Code of Alabama (1975), states:

"Personnel policies may be established so as to include under the State merit system certain positions in the Department of Mental Health and Mental Retardation <u>and so as to exclude other positions</u>; however, employees of the Alabama Department of Mental Health and Mental Retardation and positions in such department which were under a merit system on September 30, 1965, or which are placed under a merit system by law after October 29, 1965, shall continue under such merit system unless any such position is abolished by the Alabama Department of Mental Health and Retardation."

I was employed by ADMH at the time most of these statutory provisions were passed by the legislature. I am familiar with the legislative history of the 1984 Act. I dealt with all of these statutory provisions during my tenure at ADMH and thereafter as part of my continued assistance to the Department. At all times during my involvement with the Department, the cited provisions have been construed, interpreted and acted upon by ADMH as follows:

1.     §22-50-11(19), *Code of Alabama* (1975), creates a partial list of eight categories of employee that must be considered exempt from the merit system. However, the list is a partial list and ADMH has interpreted the statutory provisions as a whole, based upon legislative history, court actions, the language of the provisions themselves, and necessity and practice, to give the Commissioner authority in the Central Office to appoint and hire employees, create and modify specifications and otherwise perform work prudent and necessary to the operation of ADMH.

4

2.     §22-50-16, *Code of Alabama* (1975), sets forth the powers of the Commissioner to include the appointment of officers and employees of the Department, whether or not he chooses to put in place a process or allow others to make recommendations to him for approval. The Commissioner has the right to appoint officers and employees "without regard to any limitation established by law, unless such law passed hereafter shall refer to the particular officer or employee. . . "

3.     The interpretation by the ADMH has been that the Commissioner has the authority to create exempt job classifications and the specifications for those job classifications for as long as I can remember. The Commissioner has the right, power and authority to set forth the qualifications, job duties, knowledge, skills and abilities and other job specifications with regard to a job classification, without regard to any recommendation made to him by any committee, employee or appointee.

For a very long period of time, the ADMH was under the direction of the United States District Court for the Middle District of Alabama in two different cases. One of those cases was *Wyatt, et al. v. Stickney*. The other case was *United States of America by John N. Mitchell, Attorney General v. John S. Frazer, et al., and The Alabama Department of Mental Health.* In those cases, the Court issued various specific rulings which materially affected the ADMH with regard to its operation, including the appointment and hiring of certain officers and employees. These rulings, along with the other exigencies of operating the Mental Health and Mental Retardation system in the State of Alabama, in connection with the very lengthy time frame for the creation of positions in the merit system and the lack of necessary merit classifications required by ADMH caused ADMH to use the powers

previously set forth in hiring certain personnel. The statutory provisions themselves primarily give rise to their interpretation. The Department has exercised good faith in attempting to adhere to the statutes set forth above. The above-referenced interpretations are the interpretations of the ADMH, the State agency charged with the responsibility executing these statutory provisions.

4.    The ADMH is not in any way subject to the rules and regulations of the Alabama State Personnel Department with regard to exempt employees, except that a new job classification must be registered with the State Personnel Department for various purposes related to pay. In all other ways, exempt employees are the sole province of the Commissioner of the Department of Mental Health and Mental Retardation by statute. Certain rules, regulations, and policies may be adopted with regard to the Alabama Department of Mental Health and Mental Retardation, however, those rules, regulations and policies are controlled by the state statutory law. Those rules, regulations and policies do not change the statutory law in any way. The Alabama Department of Mental Health and Mental Retardation is a Department that provides very broad and unusual services to the people of the state. The Department is charged with the care of mentally ill and mentally retarded persons and with services to people with substance abuse problems. The requirements of the Department are virtually unique in state government and the employment needs of the ADMH are unique to the Department. The Commissioner of the Alabama Department of Mental Health and Mental Retardation is given broad powers by the legislature for the purpose of allowing for the ordered and effective operation of the Department and the Department's role and function in the state.

6

5.    The ADMH has various committees that perform various functions and roles in assisting the Commissioner in operating the Department. However, those committees do not have the power to override the Commissioner or to control his discretionary authority to make prudent decisions for the best operation of the Department. For example, there is a committee called the Job Evaluation Committee within the ADMH. This committee cannot officially approve or reject any specific course of action with regard to jobs or employment. The committee is only allowed to review certain matters and make recommendations to the Commissioner concerning the matters considered. The Commissioner, however, can accept, reject or modify any recommendation from the Job Evaluation Committee. Further, the Commissioner has the power to create job classifications and to set the qualifications, job functions, the knowledge, skills and abilities and all other aspects of the job and any classification, specification or announcement written for the job. The Commissioner is not required to obtain approval from the Job Evaluation Committee or any other source before creating or implementing a job classification, specification or announcement. The Commissioner has sole authority of the official approval and the official conduct of the Department if the Commissioner sees fit to exercise this authority. I personally know of job classifications created by a Commissioner or Commissioners of ADMH that have never been examined or reviewed by the Job Evaluation Committee. In the course of conducting the business of the Department, the Commissioner must exercise the authority vested in the Commissioner by the Legislature of the State of Alabama for the proper functioning of the Department.

7

In fact, in the case of *Vaughn v. Shannon,* 758 F.2d 1535 (Eleventh Cir App. 1985), the Federal Court considered a civil rights case filed under 42 USC §1983 and 42 USC §1985 against the Alabama Department of Mental Health. Mr. Vaughn was an exempt employee of the Alabama Department of Mental Health. Vaughn had been terminated by ADMH. The Court held that Mr. Vaughn's position as Chief, Evaluation of Community Programs, was an exempt position which deprived him of the property interests that would entitle him to due process. The Eleventh Circuit Court of Appeals upheld the right of the Commissioner to create exempt positions pursuant to the statute and indicated that exempt employees do not enjoy the same rights as merit system employees.

Further, the Affiant sayeth not.

*Emmett Poundstone*
EMMETT POUNDSTONE

STATE OF ALABAMA                    )
                                   )
COUNTY OF MONTGOMERY               )

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that Emmett Poundstone, whose name is signed to the foregoing, and who is known to me, acknowledged before me, on this day, that being informed of the contents of said document, he executed the same voluntarily on the day the same bears date.

Given under my hand and seal this _1st_ day of _August_, 2008.

[SEAL]

_Sara P. Morris_
NOTARY PUBLIC
My Commission Expires: _12-29-10_

- Chapter 50 DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION; BOARD OF TRUSTEES.
  - Article 1 General Provisions.
    - Section 22-50-1 Definitions.
    - Section 22-50-2 Department - Created; composition; divisions; offices.
    - Section 22-50-3 Department - Disposition of fees, receipts and income.
    - Section 22-50-4 Department - Public corporation.
    - Section 22-50-5 Board of trustees - Membership; officers; initial appointments; terms.
    - Section 22-50-6 Board of trustees - Subsequent appointments to board; vacancies.
    - Section 22-50-8 Board of trustees - Expenses of trustees.
    - Section 22-50-9 Department - Powers generally.
    - Section 22-50-10 Department - Termination of Alabama Mental Health Board; transfer of authority to department.
    - Section 22-50-11 Department - Additional and cumulative powers.
    - Section 22-50-12 Department - Legal division.
    - Section 22-50-13 Department - Annual report.
    - Section 22-50-14 Department - Requests for budget funds.
    - Section 22-50-15 Funds for essential functions.
    - Section 22-50-16 Mental Health and Mental Retardation Commissioner.
    - Section 22-50-17 Certificate or license required to operate facility for care or treatment of mental or emotional illness or services to mentally retarded.
    - Section 22-50-18 Commitment and release of incompetents, etc.
    - Section 22-50-19 Judicial review of final order or decision by department.
    - Section 22-50-20 Forms.
    - Section 22-50-21 Police officers for state mental health facilities or hospitals.
    - Section 22-50-22 Exemption of superintendent and physician of state mental health facilities from attending as witnesses.
    - Section 22-50-23 Penalties for violation of chapter, etc.
    - Section 22-50-24 Repeal of conflicting laws; certain laws not repealed.
    - Section 22-50-25 Mental Health Capital Outlay Oversight Commission; creation; membership; appointment; vacancy; meetings; quorum; appropriation for capital outlays and improvements; compensation; funding from oil and gas leases.
  - Article 2 Personnel Policies and Salary Schedules.
    - Section 22-50-40 Authority to establish personnel policies and salary schedules.
    - Section 22-50-41 Personnel policies - Inclusion or continuation of positions under merit system.
    - Section 22-50-42 Personnel policies - Continuation of positions not under merit system.
    - Section 22-50-43 Conflicting provisions of Section 22-50-11 repealed.
  - Article 3 Information, Records and Research Data.
    - Section 22-50-60 Purpose of article.
    - Section 22-50-61 Authority to receive data for research.
    - Section 22-50-62 Disclosure of information.
  - Article 4 Dementia Education and Training.
    - Section 22-50-70 Short title.
    - Section 22-50-71 Legislative findings.
    - Section 22-50-72 Development of educational programs and services for Alzheimer's disease; instructors and training.
    - Section 22-50-73 Promulgation of rules and regulations.
    - Section 22-50-74 Appropriation of funding; fees.
  - Article 5 Criminal History Background Information Regarding Direct Care Providers.

Section 22-50-1

**Definitions.**

For the purposes of this chapter, the following terms shall have the meanings respectively ascribed to them by this section:

(1) MENTAL HEALTH SERVICES. Diagnosis of, treatment of, rehabilitation for, follow-up care of, prevention of and research into the causes of all forms of mental or emotional illness, including, but not limited to, alcoholism, drug addiction, or epilepsy in combination with mental illness or mental retardation.

(2) MENTAL RETARDATION SERVICES. Evaluation for, amelioration of, habilitation for, prevention of, and research into the causes of mental retardation.

(3) PATIENTS. Those persons afflicted with mental or emotional illness.

(4) CLIENTS. Those persons identified as receiving or needing services for mental retardation.

(5) DEPARTMENT. The Department of Mental Health and Mental Retardation.

*(Acts 1965, No. 881, p. 1649, §9; Acts 1984, No. 84-242, p. 365, §1.)*

Case 2:07-cv-00650-WHA-TFM   Document 73-2   Filed 08/05/2008   Page 11 of 40

**Section 22-50-2**

**Department - Created; composition; divisions; offices.**

There shall be created and established a department of the state government to be known as the Department of Mental Health and Mental Retardation. The department shall be composed of the State Mental Health and Mental Retardation Commissioner and such divisions and administrative sections as the Mental Health and Mental Retardation Commissioner may direct. The principal offices of the department shall be located at the state capitol. The department shall perform the functions prescribed in this chapter.

*(Acts 1965, No. 881, p. 1649, §1; Acts 1984, No. 84-242, p. 365, §1.)*

**Section 22-50-3**

**Department - Disposition of fees, receipts and income.**

All fees, receipts, and income of the Department of Mental Health and Mental Retardation shall be paid over to a departmental treasurer, to be selected by the commissioner, or to a bank in lieu of the treasurer, as the commissioner may direct, and may be expended as authorized by the commissioner for support, maintenance, and operation of the state hospitals, Partlow State School and Hospital, and other institutions, services and programs subject to the jurisdiction and control of the department.

*(Acts 1965, No. 881, p. 1649, §20; Acts 1984, No. 84-242, p. 365, §1.)*

<u>Section 22-50-4</u>

**Department - Public corporation.**

The Governor and the Commissioner of Mental Health and Mental Retardation are hereby constituted a public corporation to be known as the Department of Mental Health and Mental Retardation.

*(Acts 1965, No. 881, p. 1649, §2; Acts 1984, No. 84-242, p. 365, §1.)*

**Section 22-50-5**

**Board of trustees - Membership; officers; initial appointments; terms.**

(a) In order to coordinate the activities of the Department of Mental Health and Mental Retardation and to advise with such department and to better acquaint the public with the needs and activities of such department, there is hereby created a board of trustees for the Department of Mental Health and Mental Retardation to be composed of 16 members. The Governor, the Commissioner of Mental Health and Mental Retardation, the Lieutenant Governor and the Speaker of the House of Representatives shall be ex-officio members of such board of trustees. The remaining 12 members shall be appointed by the Governor, one from each of the congressional districts and the remainder from the state at large. One of the state at large positions shall be selected from nominations offered by the association for retarded citizens of Alabama and one of the state at large positions shall be selected from nominations offered by the Mental Health Association of Alabama. All appointed trustees shall have demonstrated a concern for the programs and services provided by the Department of Mental Health and Mental Retardation and should represent a balance of primary interest areas or expertise.

(b) The Governor shall be chairman of the board of trustees and the Commissioner of Mental Health and Mental Retardation shall be the secretary. The board shall meet quarterly at a place to be designated by the chairman and may meet more frequently upon the call of the chairman, or a majority of the members.

(c) As soon as practicable after this section becomes law, the Governor shall appoint four members for a term of one year; four members for a term of two years; four members for a term of three years; all trustees shall take office effective upon appointment. No trustee shall serve more than three consecutive three year terms; provided, however, that trustees shall continue to serve until their successors have been appointed.

*(Acts 1965, No. 881, p. 1649, §§3, 7; Acts 1984, No. 84-242, p. 365, §1.)*

**Board of trustees - Subsequent appointments to board; vacancies.**

Subsequent appointments shall be made for a period of three years except that vacancies shall be filled by the Governor for the unexpired term only.

*(Acts 1965, No. 881, p. 1649, §4; Acts 1984, No. 84-242, p. 365, §1.)*

## Section 22-50-8

**Board of trustees - Expenses of trustees.**

The trustees shall receive $100.00 per day and mileage expenses while attending meetings of the board of trustees or while engaged in other official duties at the request of the Governor or board of trustees.

*(Acts 1965, No. 881, p. 1649, §6; Acts 1984, No. 84-242, p. 365, §1.)*

<u>Section 22-50-9</u>

**Department - Powers generally.**

The Department of Mental Health and Mental Retardation through its commissioner is hereby authorized to act in any prudent way to provide mental health services and mental retardation services for the people of Alabama.

*(Acts 1965, No. 881, p. 1649, §9; Acts 1984, No. 84-242, p. 365, §1.)*

Case 2:07-cv-00650-WHA-TFM    Document 56-2    Filed 08/05/2008    Page 18 of 40

**Section 22-50-10**

**Department - Termination of Alabama Mental Health Board; transfer of authority to department.**

Upon May 1, 1984, the Alabama Mental Health Board shall cease to exist and the powers and responsibilities shall be vested in the Department of Mental Health and Mental Retardation through its commissioner.

*(Acts 1965, No. 881, p. 1649, §8; Acts 1984, No. 84-242, p. 365, §1.)*

Section 22-50-11

**Department - Additional and cumulative powers.**

The Department of Mental Health and Mental Retardation is given hereby the following additional and cumulative powers through its commissioner:

(1) It is authorized and directed to set up state plans for the purpose of controlling and treating any and all forms of mental and emotional illness and any and all forms of mental retardation and shall divide the state into regions, districts, areas or zones, which need not be geographic areas, but shall be areas for the purpose of establishing priorities and programs and for organizational and administrative purposes in accordance with these state plans.

(2) It is designated and authorized to supervise, coordinate and establish standards for all operations and activities of the state related to mental health and mental retardation and the providing of mental health services and mental retardation services; and it is authorized to receive and administer any funds available from any source for the purpose of acquiring building sites for, constructing, equipping, maintaining or operating mental health centers, and community mental retardation programs or facilities or institutions for the purpose of providing mental health services and mental retardation services.

(3) It is hereby designated as the single state agency of the State of Alabama to receive and administer any and all funds available from any source for the purpose of training, research and education in regard to all forms of mental and emotional illness and all forms of mental retardation through its commissioner.

(4) It is hereby authorized to enter into contracts with any other state or federal agency or with any private person, organization or group capable of contracting if it finds such action to be in the public interest. However, a resident of Alabama shall not be transferred from a state institution or facility to any institution or facility outside the State of Alabama, by contract or otherwise; provided, that with the consent of the patient or client or the consent of the members of his immediate family, a resident of this state may be transferred to a mental hospital, mental retardation facility or other facility of another state.

(5) It may, in its discretion, develop a program for the care of aged patients and operate, in any area of the state, nursing homes which shall care for and treat patients that require primary treatment for their geriatric infirmities; such nursing homes operated by the department shall meet the standards duly promulgated by the State Board of Health and shall be licensed under its authority. The department is further authorized to transfer such geriatric patients to private nursing homes within the State of Alabama if it finds such action to be in the public interest; provided, that with the consent of the patient or client or the consent of the members of his immediate family a resident of this state may be transferred to a mental hospital, mental retardation facility, or other facility of another state.

(6) It is hereby authorized to appoint advisory councils as needed from among those leaders in disciplines concerned with mental and emotional illness and disciplines concerned with mental retardation or from the public generally to advise it in regard to plans, programs and regulations. The Mental Health and Mental Retardation commissioner is ex-officio chairman of these advisory councils and shall call meetings when advice is needed or when a majority of any such advisory council requests a meeting.

(7) The members of such advisory councils shall be entitled to be reimbursed for mileage expenses, not to exceed the amount prescribed by state law for attending meetings called by the Mental Health and

Mental Retardation Commissioner. Such sums as are necessary to meet these mileage expenses are hereby appropriated from the Alabama Special Mental Health and Mental Retardation fund and shall be paid on warrants signed by the Mental Health and Mental Retardation Commissioner.

(8) The Mental Health and Mental Retardation Department is hereby authorized and directed to establish and promulgate reasonable rules, policies, orders and regulations providing details of carrying out its duties and responsibilities, including bylaws for its own organization, government and procedures.

(9) It is authorized and directed to purchase or lease land or acquire property by eminent domain and to purchase, lease, rent, sell, exchange or otherwise transfer property, land, buildings or equipment in order to carry out its duties and responsibilities.

(10) It is authorized and directed to determine reasonable fees for services which it makes available to the public and it shall collect such fees unless, on application and investigation, it is determined that the person receiving such services is unable to pay the established fee, and in such case, such amount as he is able to pay will be collected.

(11) It is authorized and directed to establish and promulgate reasonable minimum standards for the construction and operation of facilities, including reasonable minimum standards for the admission, diagnosis, care, treatment, transfer of patients or clients and their records, and also including reasonable minimum standards for providing day care, outpatient care, emergency care, inpatient care and follow-up care when such care is provided for persons, with mental or emotional illness, or day care or residential care for persons who are mentally retarded.

(12) It is authorized to inspect any institution or facility providing any kind of treatment or care for those suffering from mental or emotional illness or mental retardation, and shall certify any such institution or facility which meets its minimum standards to the State Board of Health.

(13) The State Board of Health may issue a license to operate such facilities or institutions as may be established under the provisions of this chapter upon recommendation of the department and upon certification by said department that such facility or institution is in compliance with rules and regulations promulgated by said department and approved by said State Board of Health.

(14) It is authorized to establish and collect reasonable fees for necessary inspection services incidental to certification of compliance.

(15) It is authorized and directed to provide hearings for anyone claiming to be damaged by decisions of its employees or agents, and it may delegate the holdings of such hearings to administrative hearing officers. When a decision of an administrative hearing officer is adopted by the commissioner, the said decision then and there becomes a final decision and may be reviewed in the circuit court only upon a finding of the court that such decision was arbitrary, illegal or capricious.

(16) It may file and prosecute civil actions in any court in the name of the Mental Health and Mental Retardation Department to enforce this article and such rules and regulations as may be duly promulgated under authority of this article; such civil actions may include actions for an injunction to restrain any person, agency or organization from violating any provision of this article or any rule or regulation duly promulgated under authority of this article, and it may also, with the approval of the attorney general, authorize its legal counsel to attend to any other litigation which concerns the department.

(17) It is authorized to accept gifts, trusts, bequests, grants, endowments or transfers of property of any kind and shall prudently manage such property in accordance with the terms of such gifts or transfer of property and in accordance with sound financial principles.

(18) It is hereby authorized and directed to receive moneys coming to it by way of fees for services or by appropriations and shall prudently manage such moneys in accordance with sound financial principles.

(19) The employees of the department shall be governed by Personnel Merit System rules and regulations, the same as other employees in state service, as administered by the state's personnel department; provided, that such rules and regulations shall not be applicable to the appointment, tenure or compensation of physicians, surgeons, psychiatrists, psychologists, dentists, social workers, nurses and attorneys. Employees of the department on October 1, 1965, who have been so employed for six months immediately preceding such date, shall remain in their respective employments during good behavior; but nothing in this subdivision shall be construed to prevent or preclude the removal of an employee for cause in the manner provided by law.

(20) All offices, services, programs or other activities of the Alabama Mental Health Board are hereby made offices, services, programs or other activities of the Department of Mental Health and Mental Retardation, and the commissioner is hereby authorized to reorganize such offices, services, programs, or other activities so as to achieve economy and efficiency; and the said commissioner may establish bureaus, divisions, hospitals, clinics, mental health centers, mental retardation programs, alternative living arrangements for the mentally retarded, or other facilities for providing mental health services and mental retardation services, if he finds such action to be in the public interest.

(21) All purchases and construction and supply contracts of the department shall be made or let on a competitive bidding basis, and may be made through the state purchasing agent, or otherwise, as the commissioner may direct. No purchases, except for rights-of-way, shall be made from, nor shall any sales be made to, any member of the Legislature, any member of the Mental Health and Mental Retardation board of trustees hereby created or any other person holding an office of profit with the State of Alabama.

(22) The department is authorized, at its discretion, to provide funding to community or statewide programs for the prevention and/or treatment of epilepsy.

*(Acts 1965, No. 881, p. 1649, §§8, 10; Acts 1984, No. 84-242, p. 365, §1.)*

**Section 22-50-12**

**Department - Legal division.**

The commissioner may establish a legal division, which shall be under the direction of an attorney authorized to practice law in the State of Alabama, and it shall be his duty to conduct the legal affairs of the department. The commissioner may appoint other attorneys to assist him. The compensation of any such attorney shall be paid from the funds of the department. Attorneys appointed by the commissioner shall have the authority to represent the department and employees of the department in litigation concerning the department.

*(Acts 1965, No. 881, p. 1649, §13; Acts 1984, No. 84-242, p. 365, §1.)*

**Section 22-50-13**

**Department - Annual report.**

As near after the end of the fiscal years as possible, the department shall print and send to the Governor a report consisting of activities of the department, needs of facilities under its jurisdiction, mental health and mental retardation conditions in the state with respect to the extent to which needs are being met, plans for the future, financial report for the preceding year, and the names and addresses of the trustees; and a sufficient number of copies shall be printed to distribute to the members of the Legislature.

*(Acts 1965, No. 881, p. 1649, §17; Acts 1984, No. 84-242, p. 365, §1.)*

### Section 22-50-14

**Department - Requests for budget funds.**

Every budget period the department shall present to the Governor a request for funds based on projected needs for mental health and mental retardation services in the state, together with a budget showing the expenditure of such requested funds; and the Governor shall include in his appropriation bill a request for funds to meet the financial needs of the department.

*(Acts 1965, No. 881, p. 1649, §18; Acts 1984, No. 84-242, p. 365, §1.)*

### Section 22-50-15

**Funds for essential functions.**

Any state supported facility under the jurisdiction of the department providing services requiring on-premises residence of patients or clients, including, but not limited to, Bryce Hospital, Searcy Hospital, and Partlow State School and Hospital, shall be considered an essential function of the state, and funds allocated for the support of said state supported facilities shall not be subject to proration at any time a deficit occurs in the general funds.

*(Acts 1965, No. 881, p. 1649, §19; Acts 1984, No. 84-242, p. 365, §1.)*

Section 22-50-16

**Mental Health and Mental Retardation Commissioner.**

The Governor shall appoint the Mental Health and Mental Retardation Commissioner and shall fix his term of office and salary, such salary to be established without regard to any limitations now, or hereafter, established by law unless such law specifically refers to such Mental Health and Mental Retardation Commissioner. The commissioner shall serve at the pleasure of the Governor. The said Mental Health and Mental Retardation Commissioner so appointed shall appoint all officers and employees of the department or he may authorize any superintendent, division or bureau head, or other administrator to select with his approval all staff members and employees, and shall fix the salaries of the officers and employees of the Mental Health and Mental Retardation Department, without regard to any limitation established by law, unless such law passed hereafter shall refer to the particular officer or employee of the Mental Health and Mental Retardation Department. The commissioner may appoint an Associate Commissioner for Mental Illness, an Associate Commissioner for Mental Retardation and an Associate Commissioner for Administration and Personnel. The associate commissioners shall serve at the pleasure of the commissioner. The Mental Health and Mental Retardation Commissioner shall exercise supervision over all the officers and employees of the Mental Health and Mental Retardation Department and should any such officer or employee fail to perform faithfully any of the duties which are lawfully prescribed for him, or if he fails or refuses to observe or conform to any rule, regulation, or policy of the Mental Health and Mental Retardation Department, the Mental Health and Mental Retardation Commissioner may remove him from office.

*(Acts 1965, No. 881, p. 1649, §11; Acts 1984, No. 84-242, p. 365, §1.)*

Case 2:05-cv-00650-WHA-TFM    Document 26-2    Filed 08/05/2008

Section 22-50-17

**Certificate or license required to operate facility for care or treatment of mental or emotional illness or services to mentally retarded.**

No person, partnership, corporation, or association of persons shall operate a facility or institution for the care or treatment of any kind of mental or emotional illness or services to the mentally retarded as defined in this chapter, without being certified by the department or licensed by the State Board of Health; provided that nothing in this section shall be construed so as to require a duly authorized physician, psychiatrist, psychologist, social worker or Christian Science practitioner to obtain a license for treatment of patients in his private office, unless he keeps two or more patients in his office for continuous periods of 24 hours or more in one week.

*(Acts 1965, No. 881, p. 1649, §12; Acts 1984, No. 84-242, p. 365, §1.)*

**Section 22-50-18**

**Commitment and release of incompetents, etc.**

Nothing contained in this chapter shall change or alter the methods, means or procedures provided by law before the enactment of this chapter for the commitment or release of any person alleged to be non compos mentis, incompetent, mentally ill or emotionally disturbed. No person shall be committed to any institution established pursuant to the provisions of this chapter without his consent or except by due process of law in a court of competent jurisdiction.

*(Acts 1965, No. 881, p. 1649, §13A.)*

Section 22-50-19

**Judicial review of final order or decision by department.**

Any person who has been legally damaged by a final order or decision of the Mental Health and Mental Retardation Department may have a review of such decision in the circuit court, provided a sworn complaint is filed within 15 days of the date of such order or decision, charging that such order or decision was arbitrary, illegal or capricious; and provided further that security be given to cover court costs and costs of preparing the record of the proceedings before the Mental Health and Mental Retardation Department, should the said order be upheld by the court.

*(Acts 1965, No. 881, p. 1649, §15; Acts 1984, No. 84-242, p. 365, §1.)*

Section 22-50-20

**Forms.**

The Mental Health and Mental Retardation Department shall prescribe forms for probate judges to use which would give information deemed necessary by the department about prospective patients or clients.

*(Acts 1965, No. 881, p. 1649, §16; Acts 1984, No. 84-242, p. 365, §1.)*

**Section 22-50-21**

## Police officers for state mental health facilities or hospitals.

The State Mental Health Officer may appoint or employ one or more suitable persons to act as police officers to arrest intruders, trespassers and persons guilty of improper or disorderly conduct on the property of state mental health facilities or hospitals. Such officers shall be charged with all the duties and invested with all the powers of police officers and may eject trespassers from the hospital grounds, buildings or lands or arrest them and may, without warrant, arrest any person guilty of abuse of a patient, of a misdemeanor or disorderly conduct, of stealing or injuring property or other offenses committed on the lands or premises of the hospitals and take such person before a district court judge or other officer charged with trial of such offenders, before whom, upon proper affidavit charging the offense, the person so arrested shall be tried and, if found guilty, convicted as in cases of persons brought before such a court on a warrant. Such police officer shall have authority to summon a posse comitatus.

*(Code 1896, §2570; Code 1907, §876; Code 1923, §1461; Code 1940, T. 45, §227.)*

Case 2:07-cv-00650-WHA-TFM    Document 75-2    Filed 08/05/2008

Section 22-50-22

**Exemption of superintendent and physician of state mental health facilities from attending as witnesses.**

Neither the superintendent nor a physician of a state mental health facility or hospital shall be compelled to attend as a witness to testify as an expert in any case or on any question of insanity or psychological medicine in the state; provided, that he shall certify, in writing, within 10 days after the service of the summons, that his absence from the facility or hospital, in his best judgment, will interfere with his professional duties and the welfare of the patients under his care. But defendants in criminal cases and the state by the consent of the defendant and, in civil cases, either party may take the deposition of the superintendent or of any of the physicians as to all matters involving his or their expert opinion when such testimony is admissible.

*(Code 1896, §2571; Code 1907, §875; Code 1923, §1460; Code 1940, T. 45, §226.)*

Section 22-50-23

**Penalties for violation of chapter, etc.**

Any person, partnership, corporation or association that violates the provisions of this chapter or any regulations promulgated under authority delegated to the Mental Health and Mental Retardation Department, and after due notice served by registered or certified mail or personally, shall be liable to pay a penalty of $50.00 per day for each day of such violation. Any officer or any employee of the Mental Health and Mental Retardation Department, or any other person who shall allow, assist, or abet in the escape of any patient or client confined by court action under the authority of the Mental Health and Mental Retardation Department shall be guilty of a misdemeanor, and, upon conviction, shall be punished by a fine not exceeding $100.00, and he may be punished by imprisonment in the county jail or at hard labor for the county, not exceeding 90 days, the imprisonment to be at the discretion of the judge trying or presiding over the trial of the case. Any member of the Legislature, any member of the Mental Health and Mental Retardation Department, or any holder of any office of profit with the state who takes any contract for work or services of the Mental Health and Mental Retardation Department or any of its agencies, or is employed in any way under such contract, or sells any goods or supplies to the Mental Health and Mental Retardation Department or any of its agencies or is in any wise pecuniarily interested in any such contract or sale, as principal or agent, must, on conviction, be fined not less than $50.00 nor more than $1,000.00 and also forfeit his office.

*(Acts 1965, No. 881, p. 1649, §14; Acts 1984, No. 84-242, p. 365, §1.)*

<u>Section 22-50-24</u>

**Repeal of conflicting laws; certain laws not repealed.**

All laws or parts of laws, local, special or general, in conflict with this chapter are hereby specifically repealed. However, nothing in this chapter shall be construed to repeal Article 2 of Chapter 26 of Title 36 of this Code.

*(Acts 1965, No. 881, p. 1649, §21.)*

**Mental Health Capital Outlay Oversight Commission; creation; membership; appointment; vacancy; meetings; quorum; appropriation for capital outlays and improvements; compensation; funding from oil and gas leases.**

(a) There is hereby created the Mental Health Capital Outlay Oversight Commission to consist of the Lieutenant Governor, Speaker of the House, Governor, Finance Director, the State Mental Health Officer, and six members each from the House of Representatives and Senate, appointed by the Speaker of the House and Lieutenant Governor, respectively. The members so appointed shall serve until their successors are appointed at the next regular session of the Legislature following the regular session in which they were elected. In the event of the death or resignation of any member appointed from the Senate or the House of Representatives his successor shall be appointed from the same body and such successor appointed to the vacancy shall serve for the unexpired term remaining of the member he was appointed to succeed. The original members shall serve until the end of their elected terms. Each subsequent appointment shall be for the full four-year legislative term. A chairman and vice chairman shall be elected from among its members. The commission shall hold an organizational meeting at the state capital within 10 days after May 27, 1981. Thereafter the commission shall meet, from time to time, at the call of the chairman, vice chairman, or upon the request of five or more members, with notice and procedure as prescribed by the rules of the commission. The commission shall adopt its own rules of procedure and transaction of business, except as otherwise herein provided.

(b) A majority of the members shall constitute a quorum for the purpose of transacting any business or the performance of any authorized duties. Each of the ex officio and appointed members shall have voting privileges.

(c) The commission shall approve and supervise any capital outlay or capital improvement for the Department of Mental Health and Mental Retardation made pursuant to the provisions of this section.

(d) The sum of $65,000,000.00, or so much thereof as may become available, as herein provided, is hereby appropriated from the general fund of the State Treasury, to the use of the Department of Mental Health and Mental Retardation for capital outlays and capital improvements. Such appropriation shall be released only upon resolution duly adopted by the commission, recommending and ordering the transfer, the use or expenditure of the amount, and upon the terms so recommended; and the state Comptroller shall draw a warrant in such amount and for such purposes upon receipt of a certified copy of the resolution signed by the chairman or vice chairman. These moneys shall remain in the general fund until such time as said commission authorizes all or parts of the aforementioned appropriation. All interest accrued from these funds shall remain in the general fund. Any moneys remaining from the aforementioned appropriation not authorized for release by the commission as of October 1, 1983 shall revert to the general fund. Such supplemental appropriations made pursuant to this section shall be in addition to any other appropriation heretofore or hereinafter provided by law for the Department of Mental Health and Mental Retardation.

(e) The commission shall keep full and complete minutes in writing of its proceedings and every action taken shall be by written resolution.

(f) Each legislative member of the commission shall be entitled to his regular legislative compensation, per diem and travel expenses for each day he attends a meeting or conducts business of the commission which shall be paid out of any funds herein appropriated, on warrants drawn on the state Comptroller upon requisition signed by the commission's chairman or vice chairman.

(g) It is the intent of the Legislature that funds accruing to the state from oil and gas leases, although co-mingled with other funds in the general fund of the state treasury for investment purposes, shall be considered as a separate fund for purposes of appropriations. All principal and interest accruing from the leases shall remain in the State Treasury until specifically and unconditionally appropriated by the Legislature. It is further the intent of the Legislature that funds appropriated in this bill shall come from said oil and gas lease funds.

*(Acts 1981, No. 81-770, p. 1326, §7.)*

http://www.legislature.state.al.us/CodeofAlabama/1975/22-50-40.htm

**Section 22-50-40**

## Authority to establish personnel policies and salary schedules.

The Alabama Department of Mental Health and Mental Retardation is hereby authorized to establish personnel policies and salary schedules for all of its employees, and such policies and schedules shall not be limited by Section 36-6-5 or by any other provisions of law, unless such a law enacted after October 29, 1965, shall refer specifically to the employees of the Alabama Department of Mental Health and Mental Retardation.

*(Acts 1965, 3rd Ex. Sess., No. 9, p. 214, §1.)*

Section 22-50-41

**Personnel policies - Inclusion or continuation of positions under merit system.**

Personnel policies may be established so as to include under the State Merit System certain positions in the Department of Mental Health and Mental Retardation and so as to exclude other positions; however, employees of the Alabama Department of Mental Health and Mental Retardation and positions in such department which were under a merit system on September 30, 1965, or which are placed under a merit system by law after October 29, 1965, shall continue under such merit system unless any such position is abolished by the Alabama Department of Mental Health and Mental Retardation.

*(Acts 1965, 3rd Ex. Sess., No. 9, p. 214, §2.)*

<u>Section 22-50-42</u>

**Personnel policies - Continuation of positions not under merit system.**

Positions in the Department of Mental Health and Mental Retardation and employees of the Alabama Department of Mental Health and Mental Retardation not under the State Merit System on October 29, 1965, shall continue not under such merit system until placed under such State Merit System by the Alabama Department of Mental Health and Mental Retardation or by law specifically placing such positions or employees under a merit system.

*(Acts 1965, 3rd Ex. Sess., No. 9, p. 214, §3.)*

Section 22-50-43

**Conflicting provisions of Section 22-50-11 repealed.**

Any part of Section 22-50-11 in conflict with this article is hereby specifically repealed.

*(Acts 1965, 3rd Ex. Sess., No. 9, p. 214, §4.)*

EEOC Form 161 (3/98)    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Joan E. Owens<br>319 Ross Road<br>Wetumpka, AL 36092 | From: | U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br>BIRMINGHAM DISTRICT OFFICE<br>Ridge Park Place<br>1130 22nd Street South, Suite 2000<br>Birmingham, AL 35205-1130 |
|---|---|---|---|

RECEIVED
JUL 2006
DMH/MR
Legal Division

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2006-01123 | Lula Bell, Investigator | (205) 212-2074 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Beverly B. Hinton for*      7/10/06

Bernice Williams-Kimbrough, District Director    (Date Mailed)

Enclosure(s)

cc:    **Courtney W. Tarver**

DEFENDANT'S EXHIBIT
57

ADMH 05-00057

EEOC Form 161 (3/98)    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Karen Hubbard<br>2534 Poplar Street<br>Montgomery, AL 36107 | From: *U. S. EQUAL EMPLOYMENT*<br>*OPPORTUNITY COMMISSION -*<br>*BIRMINGHAM DISTRICT OFFICE*<br>*Ridge Park Place*<br>*1130 22nd Street South, Suite 2000*<br>*Birmingham, AL 35205-1130* |
|---|---|

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2006-01138 | Lula Bell, Investigator | (205) 212-2074 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Beverly B. Hinten for*    7/10/06

Bernice Williams-Kimbrough, District Director    (Date Mailed)

Enclosure(s)

cc:    **Courtney W. Tarver**

DEFENDANT'S
EXHIBIT
58

ADMH 05-00185

# APPLICATION FOR EMPLOYMENT

**Exempt Classification**

RETURN TO

ADDRESS ON ANNOUNCEMENT

## AN EQUAL OPPORTUNITY EMPLOYER

GENERAL INSTRUCTIONS

Complete all portions of this appli- cation that are applicable to you and the position for which you are applying. Failure to do so may result in your not being considered for the position for which you are applying. Type or print clearly in ink.

---

Full
Name  Elliott        James (Jim)        H
        Last           First           Middle

Social Security
Number ████████

Address  2603 Southbury Circle
         Street                          Apt #
         Vestavia Hills    Al    35216
         City             State    Zip Code

If you are applying for a specific current vacancy, please give position title and announcement #  _In-House #136_
_M. H. Personnel Manager III_

Telephone    Home: (205 ) ████████

Number    Office: ( 205)  █████████

Legal
Residence    Vestavia Hills    Jefferson    Al
             City             County       State
Place of
Birth    Vestavia Hills    Jefferson    Al
         City             County       State

Minimum annual salary
you would consider _____

---

## LOCATIONS

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of non-merit vacancies at those facilities in which you express and interest. Please indicate below at which of our facilities you would consider employment. You will only be sent announcements of openings at facilities when you check. After one year and after each succeeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your application will be destroyed.

### Mental Illness Facilities

( X) Bryce Hospital --- Tuscaloosa, AL
(  ) Searcy Hospital --- Mt. Vernon, AL
(  ) Harper Geriatric Psychiatry Center --- Tuscaloosa, AL
(  ) North Alabama Regional Hospital --- Decatur, AL
(  ) Thomasville MH Rehab Center --- Mt. Vernon, AL
(  ) Hardin Secure Medical Facility --- Tuscaloosa, AL
(  ) Greil Psychiatric Hospital --- Montgomery, AL

### Mental Retardation Services

(  ) William D. Partlow Developmental Center --Tuscaloosa, AL
(  ) Region I --- Decatur, AL
(  ) Region IIE --- Birmingham, AL
(  ) Region IIW --- Tuscaloosa, AL
(  ) Region III --- Daphne, AL
(  ) Region IV --- Wetumpka, AL

### ICF Nursing Homes

(  ) Alice Kidd --- Tuscaloosa, AL

(  ) Central Administrative Offices --- Montgomery, AL

(See map on last page for locations of facilities)

### REFFERAL

Where did you learn about the job for which you applied or about the Department's application procedure?

_____ Internet
_____ Voluntary Walk-in
_____ State Employment Service
_____ College Career Day
_____ DMH/MR Employee
_____ Newspaper Ad
_____ Professional Journal Ad
_____ Radio/TV Ad
_____ Private Employment Agency
_____ State Personnel Department
_____ Professional Convention
_____ Friend/Relative
_____ Responded to Announcement of Vacancy
_____ Other --- Please explain

**DEFENDANT'S EXHIBIT**
tabbies
59

Are you willing to accept shift work during evening and night hours? Yes (  )   No (  )

Are you available to work    Full Time  X    Part Time
Temporary _____

The Alabama Department of Mental Health and Mental Retardation is an Equal Opportunity Employer. It does not discriminate with respect to race, color, religion, national origin, gender, age or disability.

---

PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION

ADMH 10-00121

## EDUCATION

High School graduate or GED?  (x) Yes  ( ) No      Be as specific as possible about degree and major.

| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did you Graduate? | Degree and Date | Major |
|---|---|---|---|---|---|---|
| College Undergraduate | University of Montevallo Montevallo, Al | 1976 | 1978 | Yes | BS May 1978 | Social Work |
| College Undergraduate | University of Alabama Birmingham, Alabama | 1975 | 1976 | No | | |
| College Graduate | | | | | | |
| College Graduate | | | | | | |
| Vocational Business | | | | | | |

Circle Highest Grade Completed

High School    9    10    11    12        College    13    14    15    ( 16 )        Graduate School    17    18    19

If you attended college in pursuit of either an under-Graduate to graduate degree and did not obtain such, Please indicate how many hours were received toward the degree.

Sem. Hrs. _____

Qtr. Hrs. _____

Please include the appropriate transcript with this Application where applicable.

Please include copies of professional certificates/license, date, and state issued when applicable

_____

_____

_____

## EMPLOYER/PROFESSIONAL REFERENCES

List three reliable persons, not relatives, who know you well enough to give information about your professional/educational background

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| Gary Rasbury | 4436 Red Crest Circle Gardendale, Al 35071 | 205-~~███~~ | Insurance Agent |
| Wayne Thrailkill | P.O. Box 36 Leeds, Al 35209 | ~~███-████~~ | Retired from State Employment Service |
| Sally Grier | 3661 Jackson Rd. Millbrook ,Al 36054 | ~~████~~ | Retired DMH/MR |

Have you ever been involuntarily terminated or forced to resign from a position?          ( ) Yes     ( X ) No

Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment)     ( ) Yes     ( X ) No

**If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.**

Have you filed an application with this department before?     ( X ) Yes     ( ) No.    If yes, give date and facility name:

Date    1994??    *2004*    Facility Name    Glenn Ireland Developmental Center, *Partlow Dev. Center*

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? (X) Yes ( ) No. If not a citizen of the U.S. Give Visa type/status _____. (Proof of U.S. citizenship or Immigration status will be required upon employment.)

ADMH 10-00122

Revised 11/01

## WORK HISTORY
### THIS SECTION MUST BE COMPLETED REGARDLESS WHETHER OR NOT A RESUME IS ATTACHED

Beginning with you PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

| 1. Current of Last Employer | | | | | Your Official Job Title | |
|---|---|---|---|---|---|---|
| DMH/MR Bryce Hospital | | | | | Personnel Specialist III | |

| Address/Zip Code | | | Telephone Number | Type of Business | |
|---|---|---|---|---|---|
| 200 University Blvd. Tuscaloosa, Al 35405 | | | 205. | M.I. Hospital | |

| FROM Month 12 Year 1996 | TO Month Year | Total Months 94 | Fulltime ( X ) Part Time ( ) Hours per week ____ | Name of Supervisor David Bennett | Ending Salary ____ per ____ | May we contact current employer? ( X ) Yes ( ) No |
|---|---|---|---|---|---|---|

| Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving |
|---|---|---|
| 1 Personnel Specialist, 1 ASA, 1 Acct. Assistant | Computer | Promotional opportunity |

Currently serving as Acting Human Resource Director. Duties include; assisting Department heads with recruiting and other personnel related issues following State Personnel and DMH/MR rules and regulations. Make recommendations to the Hospital Director regarding suspensions and dismissals. Approve written reprimands prepared by Department heads. Review position request forms. Review job announcements. Supervise the Payroll department. Make recommendations to the Hospital Director regarding  employees request for donated sick, military and leave without pay.Prepare responses for EEOC Represent management in disciplinary hearings, complaint/grievance hearings and State Personnel  hearings. Serve as chairperson for Bryce/Harper policy and procedure committee. Serve also as chairperson for Reasonable Accommodation Committee for Bryce ,Alice Kidd and Harper Center. Assist employees with benefits (retirement, health insurance, workers compensation,etc)Conduct training on policies/procedures, performance appraisals and progressive Discipline. Other assignments; conduct hostile work environment investigations for DMH/MR,and assist with Facilities as they downsize.

| 2. Employer | | | | | Your Official Job Title | |
|---|---|---|---|---|---|---|
| Glenn Ireland Developmental Center | | | | | Personnel Specialist III | |

| Address/Zip Code | | Telephone Number | Type of Business | |
|---|---|---|---|---|
| 91 Black Creek Road Tarrant, Al 35217 | | N/A | MR Facility | |

| FROM Month 10 Year 89 | TO Month 12 Year 96 | Total Months 86 | Fulltime ( X ) Part Time ( ) Hours per week ____ | Name of Supervisor Tommy Judd | Ending Salary Unknown $____ per ____ |
|---|---|---|---|---|---|

| Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving |
|---|---|---|
| 1-Acct. Clerk, 1 ASA, 1Personnel Assistant | Computers | Facility Closed |

Describe your Duties in Detail:

Interview, screen and select applicants for entry level and professional positions. Tested and graded applicants for Mental Health Worker I positions. Prepared disciplinary letters and represented management in disciplinary hearings. Developed and revised facility policies. Assisted employees with FMLA, retirement, health insurance, and workers compensation. Served as as the Employee Assistant Program coordinator. Prepared reports for Facility Director. Served as chairperson of the IRC. Maintained staffing plan for facility and worked closely with finance director in personnel budget issues. Worked closely with department heads on personnel issues (ex. staffing, policies, discipline, etc.). Conducted training classes on policies, procedures, performance appraisals, and progressive discipline. Assisted staff during Title XIX surveys. Served as acting Personnel Director (May 1992-November 1993).

ADMH 10-00123

| 3. Employer | | | | | Your Official Job Title | | |
|---|---|---|---|---|---|---|---|
| Glenn Ireland II Developmental Center | | | | | Staff Development Specialist | | |

| Address/Zip Code | | | | | Telephone Number | Type of Business | |
|---|---|---|---|---|---|---|---|
| 91 Black Creek Road | | | | | | MR Facility | |

| FROM | | TO | | Total Months | Fulltime ( X ) Part Time ( ) | Name of Supervisor | Ending Salary |
|---|---|---|---|---|---|---|---|
| Month 10 | Year 88 | Month 10 | Year 89 | 12 | Hours per week _____ | Peggy Williams | $ _____ per _____ |

| Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving |
|---|---|---|
| 0 | Computer, video equipment | Promotion to Personnel |

Describe your Duties in Detail:

Conducted new employee orientation and annual training classes with staff. Developed video training films. Helped with various facility functions. Worked with department heads on training issues. Assist staff during surveys.

| 4. Employer | | | | | Your Official Job Title | | |
|---|---|---|---|---|---|---|---|
| National Bank of Commerce | | | | | Personnel Specialist | | |

| Address/Zip Code | | | | | Telephone Number | Type of Business | |
|---|---|---|---|---|---|---|---|
| 1927 1ˢᵗ Ave. North. Bham, Al | | | | | | Bank | |

| FROM | | TO | | Total Months | Fulltime ( x ) Part Time ( ) | Name of Supervisor | Ending Salary |
|---|---|---|---|---|---|---|---|
| Month 5 | Year 88 | Month 10 | Year 88 | 5 | Hours per week _____ | Kathy Knight | $ _____ per _____ |

| Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving |
|---|---|---|
| 0 | | Accepted position with Ireland |

Describe your Duties in Detail:

Interviewed and tested applicants. Screened and referred applicants (entry to mid-level) to department heads. Prepared reports and assisted the Personnel Manager with EEOC responses, employee complaints and employee hearings.

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release to copy thereof, within on year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME _____    SOCIAL SECURITY # _____
(No Initials)                              (Signature)

FULL NAME _____    CURRENT ADDRESS _____
                          (Typed or Printed Name)

DATE OF BIRTH _____ PLACE OF BIRTH _____    _____

WITTNESS _____    TITLE _____    DATE _____

## CERTIFICATE/SIGNATURE

### Must be signed in ink by applicant

I certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

Signed_____    DATE_____

ADMH 10-00124

## WORK HISTORY

THIS SECTION MUST BE COMPLETED REGARDLESS WHETHER OR NOT A RESUME IS ATTACHED

Beginning with you PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

| 1. Current of Last Employer | | | | | | Your Official Job Title | | | |
|---|---|---|---|---|---|---|---|---|---|
| Alabama State Employment. Service | | | | | | Employment Service Local Rep. | | | |

| Address/Zip Code | | | | Telephone Number | Type of Business | | |
|---|---|---|---|---|---|---|---|
| P.O. Box 36   Leeds, Al | | | | | State Employment Agency | | |

| FROM | | TO | | Total Months | Fulltime ( x )  Part Time ( ) | Name of Supervisor | Ending Salary | May we contact current employer? |
|---|---|---|---|---|---|---|---|---|
| Month | Year | Month | Year | | Hours per week _____ | | $ ____ per | ( X ) Yes ( ) No |
| 5 | 87 | 5 | 88 | 12 | | | | |

| Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving |
|---|---|---|
| 0 | | Temporary Employment. |

Describe your Duties in Detail:

Interview, screen and refer applicants on various entry level and mid-level positions. Developed jobs with local employers, wrote job descriptions for job bank. Assisted applicants with job applications. Prepared reports for manager. Maintained and. purged files.

| 2. Employer | | | | | | Your Official Job Title | | |
|---|---|---|---|---|---|---|---|---|
| National Speech and Hearing | | | | | | Personnel Director | | |

| Address/Zip Code | | | | Telephone Number | Type of Business | | |
|---|---|---|---|---|---|---|---|
| Company out of Business | | | | | Speech and Hearing Service | | |

| FROM | | TO | | Total Months | Fulltime ( )  Part Time ( ) | Name of Supervisor | Ending Salary |
|---|---|---|---|---|---|---|---|
| Month | Year | Month | Year | | Hours per week __40____ | | |
| 11 | 86 | 5 | 87 | 5 | | | $ _____ per yr |

| Number/Title of Employees you Supervised | Equipment you Operated | Reason for Leaving |
|---|---|---|
| 1 clerical, 1 payroll | | Company went out of business |

Responsible for the day to day operation of the personnel department. Recruited applicants from the 11 states company served. Wrote and prepared job descriptions. Conducted new employee orientation. Provided input and made recommendations to the Vice-President on various projects. Negotiated health and benefit package for company. Revised and developed policies. Assisted with budget for department.

ADMH 10-00125

Revised 11/01

**3. Employer**
Alabama Goodwill Industries

**Your Official Job Title**
Human Resource Manager

**Address/Zip Code**
Greensprings HWY B'ham, Al

**Telephone Number**

**Type of Business**
Non-profit

| FROM | | TO | | Total Months | Fulltime ( X ) Part Time ( ) | Name of Supervisor | Ending Salary |
|------|------|------|------|------|------|------|------|
| Month | Year | Month | Year | 44 | Hours per week | | $            per |
| 3 | 83 | 11 | 86 | | | | |

**Number/Title of Employees you Supervised**
4 –clerical 3 Rehab counselors, 3 support

**Equipment you Operated**

**Reason for Leaving**
Better position

**Describe your Duties in Detail:**

Supervised 3 departments. Responsible for day to day operation of personnel department that provided services to 150 + employees. Prepared EEOC, Wage and hour reports. Interviewed, screened, and selected applicants for entry level and professional positions. Coordinated safety program. Negotiated contract for health and other benefits. Coordinator for the Commission of Accreditation of Rehabilitation Facilities (CARF).Prepared disciplinary letters and conducted disciplinary hearings. Conducted new employee orientation. Worked on special assignments from the Executive Director. Planned and negotiate Rehabilitation annual grant (State funding)

**4. Employer**
Vocational Rehab. (CODE Project)

**Your Official Job Title**
Placement Specialist

**Address/Zip Code**
Program no longer exists

**Telephone Number**

**Type of Business**
CETA Program

| FROM | | TO | | Total Months | Fulltime ( X ) Part Time ( ) | Name of Supervisor | Ending Salary |
|------|------|------|------|------|------|------|------|
| Month | Year | Month | Year | 36 | Hours per week   40 | Peggy Anderson | $            per |
| 6 | 79 | 3 | 82 | | | | |

**Number/Title of Employees you Supervised**
1 Clerical

**Equipment you Operated**

**Reason for Leaving**
Grant Program

**Describe your Duties in Detail:**

Developed training slots for disabled adults. Screened clients and made referrals for training positions. Served as an assistant to the Director. Worked closely with rehabilitation counselors and other rehabilitation agencies to place clients in training positions with companies. Wrote job descriptions, training outlines and contract agreements with employers.

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release to copy thereof, within on year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact the as indicated below.

FULL NAME _James H Elliott Jr_          SOCIAL SECURITY # ▓▓▓▓▓▓
(No Initials)          (Signature)

FULL NAME _James H. Elliott Jr._          CURRENT ADDRESS 2603 Southbury Cir
(Typed or Printed Name)

DATE OF BIRTH ▓▓▓▓▓   PLACE OF BIRTH B'ham          Vestavia Hills, AL 35216

WITNESS _____          TITLE _____          DATE _____

## CERTIFICATE/SIGNATURE

**Must be signed in ink by applicant**

I certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

ADMH 10-00126



**APPLICATION FOR EMPLOYMENT**
Exempt Classification

RECEIVED
SEP 16 2005
HUMAN RESOURCES BUREAU

ADDRESS ON ANNOUNCEMENT

GENERAL INSTRUCTIONS
Complete all portions of this application that are applicable to you and the position for which you are applying. Failure to do so may result in your not being considered for the position for which you applying. Type or print clearly in ink.

## AN EQUAL OPPORTUNITY EMPLOYER

Full Name: **VILAMAA    KRISTOPHER    T**
Last    First    Middle

Social Security Number: ~~████~~

Address: **147 E 5TH STREET**    Apt. #
Street

**PRATTVILLE    AL    36067**
City    State    Zip Code

## LOCATIONS

Your application will be retained in our non-merit recruitment files for one year, and you will be notified of non-merit vacancies at those facilities in which you express an interest. Please indicate below at which of our facilities you would consider employment. You will only be sent announcements of openings at facilities which you check. After one year and after each succeeding year, you will need to contact this office and request that your application remain in our active files and/or submit an updated application. Failure to do so will result in your name being removed from our mailing list and your application will be destroyed.

### Mental Illness Facilities
( ) Bryce Hospital — Tuscaloosa, AL
( ) Searcy Hospital — Mt. Vernon, AL
( ) Harper Geriatric Psychiatry Center — Tuscaloosa, AL
( ) North Alabama Regional Hospital — Decatur, AL
( ) Thomasville MH Rehab Center — Thomasville, AL
( ) Hardin Secure Medical Facility — Tuscaloosa, AL
( ) Greil Psychiatric Hospital — Montgomery, AL

### Mental Retardation Facilities
( ) William D. Partlow Developmental Center — Tuscaloosa, AL
( ) Albert P. Brewer Developmental Center — Mobile, AL
( ) Lurleen B. Wallace Developmental Center — Decatur, AL
( ) J. S. Tarwater Developmental Center — Wetumpka, AL

### ICF Nursing Homes
( ) Alice Kidd — Tuscaloosa, AL
( ) S.D. Allen — Tuscaloosa, AL
( ) Claudette Box — Mt. Vernon, AL

(✓) Central Administrative Offices— Montgomery, AL

(See map on last page for locations of facilities)

---

If you are applying for a specific current vacancy, please give position title and announcement # **05-3B**
**ADMINISTRATOR V**
**SA INFORMATION SERVICES DIRECTOR**

Telephone Number: Home: ~~████~~  Office: ~~████~~

Legal Residence: **PRATTVILLE    AUTAUGA    AL**
City    County    State

Place of Birth: **MUNCIE    IN**
City    County    State

Minimum annual salary you would consider: ~~████~~

### REFERRAL
Where did you learn about the job for which you applied, or about the Department's application procedure?

_____ Voluntary Walk-in
_____ State Employment Service
_____ College Career Day
__✓__ DMH/MR Employee
_____ Newspaper Ad
_____ Professional Journal Ad
_____ Radio/TV Ad
_____ Private Employment Agency
_____ State Personnel Department
_____ Professional Convention
_____ Friend/Relative
_____ Responded to Announcement of Vacancy
_____ Other — Please explain:

**DEFENDANT'S EXHIBIT**
**60**
tabbies

Are you willing to accept shift work during evening and night hours? Yes ( )  No (✓)

Are you available to work __✓__ Full Time _____ Part Time _____ Temporary?

The Alabama Department of Mental Health and Mental Retardation is an Equal Opportunity Employer. It does not discriminate with respect to race, color, religion, national origin, gender, age, or disability.

---

**PLEASE DO NOT OMIT SIGNATURE AND AUTHORITY TO RELEASE INFORMATION BLOCK ON BACK OF APPLICATION**

## WORK HISTORY
### THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME' IS ATTACHED

Beginning with your PRESENT or most recent employment, list in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your specific duties as they relate to the duties of the position for which you are applying. (Attach additional sheets if necessary). Please account for or explain any gaps in employment.

updated (50)

**1. Current or Last Employer** AL DEPT OF ECONOMIC & COMM. AFFAIRS
**Your Official Job Title** PROGRAM MANAGER / PED 1/11

**Address/Zip Code** POST OFFICE BOX 5690, MONTGOMERY, 36103
**Telephone Number** 334-353-1744
**Type of Business** STATE AGENCY

| FROM | | TO | | Total Months | Fulltime (✓) Parttime ( ) | Name of Supervisor | Ending Salary | May we contact current employer? |
|---|---|---|---|---|---|---|---|---|
| Month 11 | Year 01 | Month | Year | 45 | Hours per week 40 | JIM QUINN | $▓▓▓ per yr | ✓ Yes ( ) No |

**Number/Title of Employees you supervised** O
**Equipment You Operated** COMPUTER, TELEPHONE
**Reason for Leaving** STILL EMPLOYED

**Describe your Duties in Detail:** SEE ATTACHED

**2. Employer** COUNCIL ON SUBSTANCE ABUSE - NCADD
**Your Official Job Title** DIRECTOR OF PROGRAMS

**Address/Zip Code**
**Telephone Number** ▓▓▓▓▓
**Type of Business** NON-PROFIT

| FROM | | TO | | Total Months | Fulltime (✓) Parttime ( ) | Name of Supervisor | Ending Salary | |
|---|---|---|---|---|---|---|---|---|
| Month 11 | Year 00 | Month 11 | Year 01 | 12 | Hours per week 40 | ALICE MURPHY | $▓▓▓ per year | |

**Number/Title of Employees you supervised** 15 - PREV. SPEC, ACATA COOR.
**Equipment You Operated** COMPUTER, TELEPHONE
**Reason for Leaving** STATE JOB OFFER

**Describe your Duties in Detail:** SEE ATTACHED

**Alabama Department of Economic and Community Affairs**
**Program Manager/Planning and Economic Development Specialist I/II**

Describe your duties in detail:
I currently serve as Project Director for the Alabama Unified Prevention System, Alabama's State Incentive Grant (SIG) from the Center for Substance Abuse Prevention (CSAP). The SIG is a $9 million grant to improve the state's substance abuse prevention system and assist communities in improving their local systems to address the problem. I also manage another federal grant program from the US Department of Education, the Governor's portion of the Safe and Drug-Free Schools and Communities Program. Both of these grants are focused on the prevention of substance abuse. As part of the management of these programs, I have developed grant applications, grant review processes, policies, procedures and guidelines to govern these programs. I work extremely independently in these tasks and must set my own deadlines for most tasks.

My duties include understanding and meeting all state and federal regulations that govern the grant programs and communicating how they apply to programs in the field. I also have had to acquire extensive knowledge about Alabama's public substance abuse prevention and treatment service delivery system to develop effective strategies to increase their coordination. I also use word processing and spreadsheet software on a daily basis to assist me in effectively achieving my job objectives.

I have also done an extensive amount of training in grant writing, navigating the state funding system, community coalition-building and other subjects. This position has required constant monitoring of many projects, both at the state and local level.

In the last year or two I have increasingly been involved in initiatives to increase the availability of data and incorporating data into decision-making. I am very familiar with the development of the state and national outcome measures (NOMS) and their importance to the substance abuse field in the coming years.

**Council on Substance Abuse-NCADD**
**Director of Programs**

Describe your duties in detail:
My duties at the Council on Substance Abuse included direct supervision of 15 staff members, including prevention specialists and a coalition coordinator. I was responsible for scheduling of prevention programming as well as ensuring compliance with the Department of Mental Health certification standards for prevention programs.

I oversaw the day-to-day operation of the agency as well as contact with the media. I supervised conference planning and ensured that all aspects of conference planning were conducted appropriately, from development of the brochure and solicitation of speakers and attendees, to planning and use of conference space as well as operations of the conference event itself.

I worked with a number of substance abuse prevention professionals across the state to accomplish coalition objectives. I also conducted training on a media awareness curriculum at several sites around the state. I assisted in moving the agency toward utilizing a science-based curriculum that was more effective in achieving the outcomes the agency desired as well as accessing partners who would assist the agency in accomplishing its goals.

| 3. Employer | | | | | Your Official Job Title | |
|---|---|---|---|---|---|---|
| Address/Zip Code | | | | | Telephone Number | Type of Business |
| FROM Month Year | TO Month Year | Total Months | Fulltime (  ) Parttime (  ) Hours per week | | Name of Supervisor | Ending Salary $ ___ per ___ |
| Number/Title of Employees you Supervised | | | Equipment you Operated | | | Reason for Leaving |

Describe your Duties in Detail:

| 4. Employer | | | | | Your Official Job Title | |
|---|---|---|---|---|---|---|
| Address/Zip Code | | | | | Telephone Number | Type of Business |
| FROM Month Year | TO Month Year | Total Months | Fulltime (  ) Parttime (  ) Hours per week | | Name of Supervisor | Ending Salary $ ___ per ___ |
| Number/Title of Employees you Supervised | | | Equipment you Operated | | | Reason for Leaving |

Describe your Duties in Detail

## AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN: I hereby authorize the Security Division or Personnel Office of the Alabama Department of Mental Health/Mental Retardation bearing this release or copy thereof, within one year of this date, to obtain any information in your files pertaining to my previous employment, educational records and/or transcripts, licenses, certifications, or conviction records. I hereby authorize you to release such records or information upon the request of the bearer of this release document. The information you supply will be used principally as a basis for an investigation to determine my qualifications for employment with the Alabama Department of Mental Health/Mental Retardation. I hereby release you as custodian of such records from any and all liability damages which may result to me, my heirs or family because of compliance with this authorization and request to release information, or any attempt to comply with it. Should there be any question as to the validity or authenticity of this release, you may contact me as indicated below.

FULL NAME _Kristopher T. Vilm_ (Signature)
(No Initials)

FULL NAME _KRISTOPHER JAPANI VILAMAA_ (Typed or Printed Name)

SOCIAL SECURITY # ~~_____~~

CURRENT ADDRESS _147 E 5TH STREET_
_PRATTVILLE, AL 36067_

DATE OF BIRTH ~~_____~~  PLACE OF BIRTH _Muncie, IN_

WITNESS _Melissa Hays Alamoa_  TITLE _Teacher - Wetumpka Jct State 9/15/05_

## CERTIFICATE/SIGNATURE

**Must be signed in ink by applicant**

I Certify that all statements on or attached to this application are true and correct to the best of my knowledge. I understand that any false statements may cause me to be refused the opportunity of employment or cause my employment to be immediately terminated without recourse to due process or protection provided by law.

Signed _Kristopher T. Vilm_     DATE _9/9/05_

2/01

ADMH 11-00030

BE IT KNOWN THAT THE TRUSTEES OF

# PURDUE UNIVERSITY

UPON NOMINATION OF THE FACULTY OF THE

SCHOOL OF LIBERAL ARTS

HAVE GRANTED TO

## KRISTOPHER TAPANI VILAMAA

THE DEGREE OF

## BACHELOR OF ARTS

IN RECOGNITION OF THE FULFILLMENT OF THE

REQUIREMENTS OF THAT DEGREE

AWARDED AT WEST LAFAYETTE IN THE STATE OF INDIANA

MAY 6, 2000.



PRESIDENT OF THE UNIVERSITY

CHAIRMAN OF THE TRUSTEES

ADMH 11-00031



The Alabama Alcohol and Drug Abuse Association

certifies that

Kristopher Vilamaa

has demonstrated the knowledge, skills and professional competencies
of a

Associate Prevention Specialist

PR-209-APS
Certificate Number

May 28, 2003
Date of Issue

President of AADAA

July 30, 2004
Expiration Date

ADMH 11-00032

## EDUCATION

High school graduate or GED? ( ✓ ) Yes    ( ) No     Be as specific as possible about degree and major.

| Type of School | Name and Address | From Mo/Yr | To Mo/Yr | Did You Graduate? | Degree and Date | Major |
|---|---|---|---|---|---|---|
| College Undergraduate | PURDUE UNIVERSITY | 8/95 | 5/00 | YES | B.A. 5/00 | POLITICAL SCIENCE |
| College Undergraduate | | | | | | |
| College Graduate | | | | | | |
| College Graduate | | | | | | |
| Vocational Business | | | | | | |

Circle Highest Grade Completed

High School   9   10   11   12   College   13   14   15   (16)   Graduate School   17   18   19

If you attended college in pursuit of either an under-graduate or graduate degree and did not obtain such, please indicate how many hours were received toward the degree.

Please include the appropriate transcript with this application where applicable.

Sem Hrs _____
Qtr. Hrs _____

Please include copies of professional certificates/license, date, and state issued when applicable

ASSOCIATE PREVENTION SPECIALIST

## EMPLOYER/PROFESSIONAL REFERENCES

List three reliable persons, not relatives, who know you well enough to give information about your professional/educational background.

| Name | Address/Zip Code | Telephone Number | Occupation |
|---|---|---|---|
| PENNY DEAVERS-TRAYWICK | 1572 SUNSTONE DR. McLEAN, VA 22102 | ~~████~~ | CONTRACTOR |
| JIMMY FRY | 613 GULF SHORES PKWY GULF SHORES, AL 36542 | ~~████~~ | ATTORNEY |
| DR. SUE ADAMS | 3316 GORDON PERSONS BLDG MONTGOMERY, AL 36130-2101 | ~~████~~ | EDUCATION ADMIN. |

Have you ever been involuntarily terminated or forced to resign from a position?                    ( ) Yes    ( ✓ ) No

Have you ever been convicted of a felony or other law violation, other than minor traffic violations during the last seven years? (Conviction will not necessarily disqualify applicant from employment)                    ( ) Yes    ( ✓ ) No

If you answered "Yes" to any of the above questions, attach an explanation on a separate sheet.

Have you filed an application with this Department before?        ( ) Yes    ( ✓ ) No.    If yes, give date and facility name:

Date _____ Facility Name _____

Are you a citizen of the U.S. or otherwise legally eligible to work in this country? ( ✓ ) Yes    ( ) No. If not a citizen of the U.S. give Visa type/status _____ . (Proof of U.S. citizenship or Immigration status will be required upon employment.)

Date when you are available to begin work:   2 WEEKS AFTER OFFER OF EMPLOYMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOAN FAULK OWENS and<br>KAREN LYNN HUBBARD, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) 2:07-cv-650-WHA-TFM<br>) |
| STATE OF ALABAMA DEPT. OF<br>MENTAL HEALTH AND MENTAL<br>RETARDATION, *et al.*, | )<br>)<br>)<br>) |
| Defendants. | ) |

### DECLARATION OF COMMISSIONER JOHN M. HOUSTON

I am John M. Houston, Commissioner for the Alabama Department of Mental Health and Mental Retardation (hereinafter referred to as DMH/MR). I am over the age of nineteen, otherwise competent to testify in a court of law, and I have personal knowledge of the information contained in this declaration. Pursuant to the federal law that allows me to give a declaration in a lawsuit, I declare under penalty of perjury that the information contained in this declaration is true and correct to my knowledge and recollection.

I have been employed by DMH/MR in various capacities for over twenty years. Most of that time, in the last twenty years, was spent as the Executive Assistant to either the Associate Commissioner for Administration, Associate Commissioner for the Mental Illness Division or, primarily, the Commissioner, until I was appointed as Acting Commissioner in February, 2005, then Commissioner approximately half a year later.



DEFENDANT'S
EXHIBIT
61

Through my various capacities at DMH/MR, I am familiar with many aspects of the exempt classification system that is fairly unique to DMH/MR in state government in Alabama. Authority for establishment of that system and hiring under it is provided in DMH/MR's authorization statute and ultimately rests with the Commissioner of DMH/MR.

The position at issue in this lawsuit, that of Departmental Assistant Personnel Manager (DAPM), is an exempt classification. Until it was reestablished in 2005, the position had existed in DMH/MR's exempt system in primarily, the 1980's. When it existed back then, it was filled by individuals who possessed college degrees and had experience in human resources management. The last two people to occupy such a position were Butch King, the current human resources director for the Alabama Department of Human Resources, and before him, Henry Ervin, DMH/MR's current Manager of Employee Relations and DMH/MR's immediate past Director of Human Resources. The DAPM was apparently abolished in the in the late 1980's or early 1990's, likely for fiscal reasons. The position was reestablished during my tenure as Commissioner, to add a level of supervision and support between the director of human resources and other human resources staff members to effectuate better efficiencies and to have a clear and consistent person in the chain of command of the Human Resources Department in the absence of its director. One of the major functions of the position was to coordinate and oversee implementation of a long-needed, contemporary wage and classification study to modernize, improve the quality of, and compensation for DMH/MR's workforce.

The reestablishment of the Departmental Assistant Personnel Manager position

for DMH/MR was essentially among the first, new, senior-level management job

specifications, outside of clinical or medical positions, to be established and filled in the

Central Office of DMH/MR in many years, since the exempt classification system was

authorized. The job specification and announcement for the position were created

without allowing for substitution of experience for a college degree. Many professional

positions within DMH/MR have historically required a college degree, due largely to

state licensure requirements for those professionals and to court-ordered standards

created in the landmark *Wyatt v. Stickney* case affecting DMH/MR (and many other

national legal and clinical frameworks) since the 1970's. Many higher-level

administrative positions within DMH/MR have required a college degree also, but, based

upon the earlier, 1985 wage and class study recommendations provided to DMH/MR,

virtually all allowed substitution of experience for college education on generally a one

year to one year basis. Today, such free substitution of experience in lieu of education

has become unnecessary in filling higher-level management positions and potentially

compromises the quality of that applicant pool. Accordingly, to improve the quality of

the modern needed workforce, the Job Evaluation Committee, an advisory body for the

Commissioner to assist in operating the exempt classification system, had discussed and

begun to recommend more valuation of college degrees than DMH/MR had exhibited in

the past. As an example, it recommended and I approved moving from a year-for-a-year

substitution standard for experience in lieu of a degree, to one that requires that

experience be increased to two years for every one-year of college required. Moreover,

the Committee generally recommended and I concurred with the general proposition that

3

we should discontinue the practice of allowing substitution of experience for education

for particularly, higher-level administrative positions within DMH/MR.

A wage and classification study had been recommended before the Departmental
Assistant Personnel Manager position was created and that study has recently been
completed. It is the first wage and classification study of DMH/MR's exempt system,
since the first one was done over two decades ago and it is currently being reviewed by
DMH/MR's management. It was also the first opportunity DMH/MR had in many years
to address in a comprehensive way, the realities of today's job marketplace and
DMH/MR's current needs; having broader numbers of available college-educated
managers. The study was done by a private consulting firm with experience in such
public and private human resources systems and studies, the SEGAL Group; the awardee
following a request-for-proposals-process. Numerous job specifications were rewritten
following surveys and research done on DMH/MR's mission and functions by the
SEGAL Group. The study results were then reviewed by a human resources committee
made up of the DMH/MR's personnel managers to refine the results, based upon their
experience, to meet the mission, recruiting and retention needs that are faced by
DMH/MR on a daily basis. As a result, approximately one-hundred and thirty (130) of
approximately one-hundred and eighty (180) new job specifications require a college
degree and do not allow for substitution of experience for a degree. While these job
specifications are being reviewed prior to implementation of the wage and class
recommendations, the primary focus of that review is on the wage factors and their
impact on DMH/MR's budget. That is because of concerns about a potential declaration
of state budget proration, given the state of the economy and the related collection of

adequate revenues in the upcoming fiscal year, sufficient to fund Alabama's approved budget. Wage increases are recommended for many of the classifications in the study which could significantly place DMH/MR over its budget if the study is fully implemented. While some job specifications might be modified following DMH/MR management's current review, no appreciable modification of the specifications is anticipated regarding allowance of substitution of experience for college degree requirements. There is some substitution allowed in a few of the 130 specifications for experience for masters degrees when the aspirants already have bachelors degrees, but in those instances, the bachelor-level degrees are not substitutable by using experience. At least partial implementation of the wage and class study's recommendations is likely to occur by the end of the first quarter of fiscal year 2009, which begins October 1, 2008.

The individual specifications recommended by SEGAL and the personnel managers, that accompany this declaration, are true and correct copies of those documents that were received and are maintained in the normal course of business by DMH/MR. While the Commissioner has the authority to modify the specifications as the needs of DMH/MR arise and change, and while I reserve that right for any given position, these specifications serve as the primary guideline for any position announced for hiring in DMH/MR's exempt classification system.

Done this the 4th day of August 2008.


_____
John M. Houston, Commissioner
DMH/MR

# STATE OF ALABAMA
# APPLICATION FOR EXAMINATIO

RETURN TO
STATE PERSONNEL DEPARTMENT
MONTGOMERY, ALABAMA 36130

## AN EQUAL OPPORTUNITY EMPLOYER

DO NOT WRITE IN THIS SPACE

3 01 PM '97  Jan 22   4 02 PM '97

**General Instructions**

A separate application is required for each job. **Do not write in** shaded areas. Complete all parts of the application. Applications not properly completed will be returned.

**10198** Examination For Which You Are Applying (one per application)   Option (if applicable)

Administrative Support Assistant III – 10198

### ENTER SOCIAL SECURITY NUMBER BELOW.

File

| Full Name | Karen | Lynn | Hubbard |
|---|---|---|---|
| | First | Middle | Last |

| Address | 2534 Poplar Street | | |
|---|---|---|---|
| | House or Apartment Number | Street | |
| | Montgomery | AL | Montgomery | 36107 |
| | City | State | County | Zip Code |

Telephone Number: Home ( 334 )265-1470    Work ( 334 )242-3136
                        Area Code                    Area Code

The following information is required for governmental reporting or recordkeeping purposes:

Date of Birth  2   20   58   Sex (check one)  1. ( ) Male   2. (x) Female
              (Month) (Day) (Year)

Race (check one)  1. (X) White   2. ( ) Black   3. ( ) Hispanic   4. ( ) Asian or Pacific Islander   5. ( ) American Indian or Alaskan Native

---

### EDUCATION: CIRCLE THE HIGHEST GRADE OF SCHOOL COMPLETED.

1  2  3  4  5  6  7  8  9  10  11  12  (GED)  College  1  ②  3  4  Graduate  1  2  3  4

PROVIDE INFORMATION ON ALL SCHOOLS ATTENDED.  SPECIFY UNDERGRADUATE OR GRADUATE WORK.

| Name and Location of School | Dates of Attendance Month/Year From | To | Credit Hours Sem. | Qtr. | Did You Graduate? Yes | No | Type of Degree and Date | Major |
|---|---|---|---|---|---|---|---|---|
| Auburn University at Montgomery | 9/76 | 2/79 | | 100 | | X | N/A | English |

#### PROFESSIONAL LICENSE OR CERTIFICATE

| License/Certificate Issued By | Field/Trade/Specialization | License/Certificate No. | Issue Date | Expiration Date |
|---|---|---|---|---|
| | | | | |
| | | | | |

LIST COURSES (AND HOURS) WHICH ARE PARTICULARLY RELATED TO THE POSITION  (attach additional sheets, if needed).

---

### CERTIFICATE

I affirm that all statements on or attached to this application are true and correct to the best of my knowledge.  I know that any false statements may cause me to be denied the chance for testing, to be removed from a register, or released from employment.  I have no prior knowledge of the examination.  I will not discuss the test I have taken.  I further authorize the release of all relevant prior employment, military service and criminal records.  If employed I agree, consistent with applicable laws, to receive compensatory time off in lieu of overtime compensation for any overtime hours worked.

Signature  Karen L. Hubbard    Date  1/21/97

During the application process, your name may be removed from a register for any valid reason.

DEFENDANT'S EXHIBIT 62

ADMH 01-02-00016

Rheem Manufacturing Company

**Your Official Job Title**
Production Control Data Operator

Address
2600 Gunter Park Dr. E, Montgomery, AL 36109

**Type of Business**
Manufacturing

| FROM | | TO | | Total Months | Number of Hours Per Week | Beginning Salary | Ending Salary | May we contact your employer? |
|------|------|------|------|------|------|------|------|------|
| Month | Year | Month | Year | | | | | |
| 3 | 84 | 2 | 85 | 11 | 40 | $ ____ Per yr | $ ____ er yr | ( x ) Yes  ( ) No |

Number/Title of Employees You Supervised
On a Continuing Basis          N/A

**Equipment You Operated**
PC, printers, burster, & decollator

Name, Title and Telephone Number
of Supervisor  Jim Cole, Production Control Mgr, 279-8930

**Reason for Leaving**
Better environment & opportunity

Describe Your Duties in Detail
Monitor automated personal computer system in the printing of federally required labeling specifications.  Print and prepare cards and labels for use on the production line.  Trouble-shoot the system, its software, & peripherals to avoid delays in the plant production schedule. Manually modify software for emergency printing of labels and cards damaged on the line so units would not be delayed for shipping.  This was a self-acquired skill which prevented delays in shipment that were previously unavoidable.

---

**7. Employer**
Rheem Manufacturing Company

**Your Official Job Title**
Clerk

Address
2600 Gunter Park Dr. E, Montgomery, AL 36109

**Type of Business**
Manufacturing

| FROM | | TO | | Total Months | Number of Hours Per Week | Beginning Salary | Ending Salary | May we contact your employer? |
|------|------|------|------|------|------|------|------|------|
| Month | Year | Month | Year | | | | | |
| 5 | 81 | 2 | 84 | 33 | 40 | $ ____ Per yr | $ ____ er yr | ( x ) Yes  ( ) No |

Number/Title of Employees You Supervised
On a Continuing Basis          N/A

**Equipment You Operated**
printers, burster, & decollator

Name, Title and Telephone Number
of Supervisor  Jim Cole, Production Control Mgr, 279-8930

**Reason for Leaving**
Promotion

Describe Your Duties in Detail
Monitor automated personal computer system in the printing of federally required labeling specifications.  Print and prepare cards and labels for use on the production line.  Sole operator responsible for having these materials available for the next day's production schedule.

---

| Employer | | | | | | | Your Official Job Title | |
|------|------|------|------|------|------|------|------|------|
| Address | | | | | | | Type of Business | |

| FROM | | TO | | Total Months | Number of Hours Per Week | Beginning Salary | Ending Salary | May we contact your employer? |
|------|------|------|------|------|------|------|------|------|
| Month | Year | Month | Year | | | | | |
| | | | | | | $ ____ Per ____ | $ ____ Per ____ | ( ) Yes  ( ) No |

Number/Title of Employees You Supervised
On a Continuing Basis

**Equipment You Operated**

Name, Title and Telephone Number
of Supervisor

**Reason for Leaving**

Describe Your Duties in Detail

---

USING THE ABOVE FORMAT, SHOW OTHER EXPERIENCE BY USING ADDITIONAL SHEETS.

Kindercare Learning Centers, Inc.

Your Official Job Title
Computer Room Supervisor

Address
2400 Presidents Dr., Montgomery, AL 36116

Type of Business
Service

| FROM | | TO | | Total Months | Number of Hours Per Week | Beginning Salary | Ending Salary | May we contact your employer? |
|---|---|---|---|---|---|---|---|---|
| Month | Year | Month | Year | 26 | 40+ | $ ~~~~~ per yr | $ ~~~~~ per yr | ( x ) Yes  ( ) No |
| 11 | 88 | 1 | 91 | | | | | |

Number/Title of Employees You Supervised
On a Continuing Basis    11 Computer Operators & 1 tape librarian

Equipment You Operated
PC, A12 & A17 Unisys Mainframe & peripheral

Name, Title and Telephone Number
of Supervisor    Wayne Murphy, Operations Mgr, 277-5090

Reason for Leaving
lay off - see attached

Describe Your Duties in Detail
Handle all supervisory functions for computer room personnel: vacation schedules, shift
assignments, performance appraisals, interviews, hiring, training, etc. Act as liaison between
data processing and all other departments: Provide customer service for all software and
hardware problems encountered by mainframe users, datacom hookups, terminal configurations, etc.
Develop and maintain instructional documentation for computer operators.

---

4. Employer
Kindercare Learning Centers, Inc.

Your Official Job Title
Lead Computer Operator

Address
2400 Presidents Dr., Montgomery, AL 36116

Type of Business
Service

| FROM | | TO | | Total Months | Number of Hours Per Week | Beginning Salary | Ending Salary | May we contact your employer? |
|---|---|---|---|---|---|---|---|---|
| Month | Year | Month | Year | 27 | 40+ | $ ~~~~~ per yr | $ ~~~~~ per yr | (X) Yes  ( ) No |
| 8 | 86 | 11 | 88 | | | | | |

Number/Title of Employees You Supervised
On a Continuing Basis    3 Computer Operators

Equipment You Operated
PC, Unisys Mainframes & peripheral equip.

Name, Title and Telephone Number
of Supervisor    Wayne Murphy, Operations Mgr, 277-5090

Reason for Leaving
promotion

Describe Your Duties in Detail
Schedule pre-approved jobs for assigned shift, contact appropriate personnel in response to
hardware or software problems, and initiate service, follow up with key personnel in regard
to delays in the schedule, follow through outstanding problems until resolved, verify quality
of all printed materials before distribution, verify correct distribution and maintain
accurate distribution lists for all reports.

---

5. Employer
Kindercare Learning Centers, Inc.

Your Official Job Title
Computer Operator

Address
2400 Presidents Dr., Montgomery, AL 36116

Type of Business
Service

| FROM | | TO | | Total Months | Number of Hours Per Week | Beginning Salary | Ending Salary | May we contact your employer? |
|---|---|---|---|---|---|---|---|---|
| Month | Year | Month | Year | 16 | 40+ | $ ~~~~~ per yr | $ ~~~~~ per yr | (X) Yes  ( ) No |
| 3 | 85 | 7 | 86 | | | | | |

Number/Title of Employees You Supervised
On a Continuing Basis    N/A

Equipment You Operated
Unisys Mainframe & peripheral equipment

Name, Title and Telephone Number
of Supervisor    Wayne Murphy, Operations Mgr, 277-5090

Reason for Leaving
Promotion

Describe Your Duties in Detail
Monitor all equipment related to large mainframe system and its peripheral equipment: process
jobs from nightly schedule, process & distribute all printed reports. Perform system and
application back ups. Maintain tape library.

6. USING THE ABOVE FORMAT, SHOW OTHER EXPERIENCE BY USING ADDITIONAL SHEETS.

If you need special testing aids and/or services in order to accommodate a disability or health problem, please indicate here:

Have you ever been involuntarily terminated, discharged, forced or asked to resign from any job?   (X) Yes   ( ) No

If you answered Yes to the above question, attach an explanation on a separate sheet noting any mitigating or extenuating circumstances.

Have you ever been convicted of a misdemeanor or felony crime?   ( ) Yes   (X) No

If you answered Yes to the above question, list in the space below all prior misdemeanor and felony convictions and any extenuating or mitigating circumstances regarding such convictions. If necessary, you may use a separate sheet or sheets and attach to application.

NOTE: A CRIMINAL CONVICTION WILL NOT NECESSARILY BE A BAR TO CONSIDERATION FOR EMPLOYMENT, EXCEPT THAT A FELONY CONVICTION WILL BAR EMPLOYMENT IN A LAW ENFORCEMENT JOB; THE DISCLOSURE OF A MISDEMEANOR CONVICTION WILL NOT AUTOMATICALLY RESULT IN DISQUALIFICATION. CRIMINAL HISTORIES WILL BE SUBMITTED TO THE NATIONAL CRIME INFORMATION CENTER (NCIC) FOR VERIFICATION. FAILURE TO DISCLOSE A CONVICTION MAY BE CONSIDERED AS GROUNDS FOR DISQUALIFICATION. FOR THESE REASONS, APPLICANTS SHOULD BE CAREFUL TO DISCLOSE ALL CRIMINAL CONVICTIONS.

## WORK HISTORY
### THIS SECTION MUST BE COMPLETED REGARDLESS OF WHETHER OR NOT A RESUME' IS ATTACHED.

Begin with your PRESENT or most recent employment. List in REVERSE ORDER periods of employment. Each time you changed jobs or your title changed should be listed as a separate period. Describe in detail your duties. (Attach additional sheets if needed.)

**1. Current or Last Employer**
Dept. of Mental Health/Retardation, Personnel
Address
100 N Union St., Montgomery, AL 36130-1410

Your Official Job Title: Administrative Support Assistant I
Type of Business

| FROM | | TO | | Total Months | Number of Hours Per Week |
|---|---|---|---|---|---|
| Month | Year | Month | Year | | |
| 11 | 94 | Current | | 22+ | 40 |

Beginning Salary: Bwkly   Ending Salary: Bwkly
May we contact your employer? ( ) Yes   (X) No

Number/Title of Employees You Supervised On a Continuing Basis: N/A

Equipment You Operated: PC, typewriter, copier & fax

Name, Title and Telephone Number of Supervisor: Sue Smitherman, Office Mgr(Personnel Asst I)   242-3112

Reason for Leaving: N/A

Describe Your Duties in Detail:
Use word processor to type correspondence and to create forms, charts, graphs, etc. Maintain/ update all hard copy files and computer database information for exempt job applicants. Prepare and distribute exempt job announcements and job opportunities list. Calculate leave balances, compile necessary information, and type Form 11's. Type other forms as requested. Distribute and maintain file on merit job announcements. Perform specified GHRS transactions. Assist public in inquiries regarding employment opportunities. General office tasks such as handling the phones, distributing mail, general filing, etc.

**2. Employer**
Dept. of Mental Health/Retardation, MR Division
Address
100 N Union St., Montgomery, AL 36130-1410

Your Official Job Title: Clerk Typist II
Type of Business

| FROM | | TO | | Total Months | Number of Hours Per Week |
|---|---|---|---|---|---|
| Month | Year | Month | Year | | |
| 12 | 91 | 11 | 94 | 35 | 40 |

Beginning Salary: Bwkly   Ending Salary: Bwkly
May we contact your employer? (x) Yes   ( ) No

Number/Title of Employees You Supervised On a Continuing Basis: N/A

Equipment You Operated: PC, dictaphone, typewriter, copier & fax

Name, Title and Telephone Number of Supervisor: Janet Goodwin, Office Mgr(MH Adm Asst VII)   242-3704

Reason for Leaving: Better opportunity for advancement

Describe Your Duties in Detail:
Receive visitors; distribute mail; compile and distribute weekly office schedule for all division employees; type forms; create forms; transcribe dictation; file, retrieve, and purge documents; utilize new and upgraded office equipment and software applications. Trained new employees in shared duties.

ADMH 01-02-00019

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOAN FAULK OWENS and KAREN    )
LYNN HUBBARD,    )
    )
    Plaintiffs,    )
    )
v.    )    CASE NO- 2:07-cv-650-WHA
    )
STATE OF ALABAMA DEPARTMENT    )
OF MENTAL HEALTH AND MENTAL    )
RETARDATION, et al.    )
    )
    Defendants.    )
    )

## PLAINTIFF KAREN LYNN HUBBARD'S RESPONSE TO DEFENDANT'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiff Karen Lynn Hubbard, by and through counsel, responds to Defendants' First Interrogatories and Requests for Production as follows:

### GENERAL OBJECTIONS

Plaintiff Karen Lynn Hubbard objects to Defendants' First Interrogatories and Requests for Production of Documents to the extent that they would require the communication of information subject to the attorney-client privilege or information comprised of attorney work product or any other privilege such as the communication of information in anticipation of litigation.

The response of Plaintiff Karen Lynn Hubbard to Defendants' First Interrogatories and Requests for Production of Documents are made solely for the purpose of this action. Each response is subject to all objections concerning relevance, materiality and admissibility, and further, as to any all objections and grounds which would require the exclusion of any response of Defendants' First


DEFENDANT'S EXHIBIT
63

Interrogatories and Requests for Production of Documents at the time of trial and/or a hearing on the merits, all such objections and grounds are expressly reserved and may be interposed as such time.

## INTERROGATORIES

**Interrogatory No.1:**  Please state your full name, current physical residence/address, date of birth, Social Security Number, and Driver's License Number:

**Answer:**     Karen Lynn Hubbard, 124 West Wareingwood Drive, Montgomery, AL 36109; February 20, 1958.  Plaintiff objects to providing her Social Security Number and Driver's License Number in that this information is confidential and could lead to an invasion of privacy nor is it reasonably calculated to lead to the discovery of information relevant to the claims presented in this in this action.

**Interrogatory No. 2:** Please list, chronologically, each and every employer for whom you have worked, up to and including the date of these interrogatory answers, and for each employer listed, please provide the following information:

> a.      the name of your immediate supervisor;
>
> b.      your position/title;
>
> c.      a brief description of your duties;
>
> d.      the time frame (by month and year), in which you worked for this employer;
>
> e.      the employer's address;
>
> f.      the employer's telephone number; and
>
> g.      the reason you left each employer.

Please execute and return to us with your responses an employer authorization form, a copy of which is attached hereto, for all employers.

**Answer:**     Plaintiff objects to this interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  However, without waiving these objections, Plaintiff states as follows:

> (1)     **Rheem Manufacturing Company;**
>
> > a.      **Jim Cole;**

b.     Clerk and Production Control Data Operator;

c.     Monitored automated personal computer system in the printing of federally required labeling specifications for use in the plant's production line.    Trouble-shoot the system, software and peripherals to avoid delay in plant production schedule. Manually modify software for emergency printing of labels damaged on the production line to avoid delays in shipping;

d.     5/81 through 2/85;

e.     2600 Gunter Park Drive, E., Montgomery, AL 36109;

f.     334-279-8930;

g.     I left this employer for an improved work environment and better opportunity for career development and advancement.

(2)     Kindercare Learning Centers, Inc.;

a.     Wayne Murphy;

b.     Lead Computer Operator and Computer Room Supervisor;

c.     Monitored all equipment of large mainframe system; process jobs from nightly schedule; process and distribute all printed reports; perform system and application backups; maintain tape library; schedule jobs for assigned shift, initiate service for hardware and software programs; handled all supervisory functions for computer room personnel, including shift assignments, performance appraisals, interviewing new hires; training new hires; acted as liaison between date processing and all other departments; developed and maintained instructional documentation for computer operators

d.     53/85 through 1/91;

e.     2400 Presidents Drive, Montgomery, AL 36116;

f.     334-277-5090;

g.     I was let go from this company due to corporate financial difficulties.

3.    State of Alabama Department of Mental Health and Mental Retardation;

    a.    Janet Goodwin; Sue Simtherman; Anthony Dykes; Henry Ervin; and Marilyn Benson;

    b.    Clerk Typist II; Clerk Typist II/Administrative Support Assistant I; Administrative Support Assistant III; and Personnel Specialists II.

    c.    Compile and distribute weekly office schedule; type forms; create forms; prepare correspondence; transcribe dictation; filing; retrieve and purge documents; train new hires; prepare, maintain and distribute exempt job announcements and employment opportunities list; maintain and update all database files on exempt positions, calculate leave and prepare personnel transaction paperwork; perform GHRS transactions; coordinated the performance appraisal system for Central Office, track probationary and final appraisals in compliance with state guidelines; processing annual raises; and coordinated the Exempt Applicant Tracking System. In addition to these duties, from July, 2002, until May, 2001,I served at both the Tarwater Developmental Center and Greil Hospital overseeing all human resources functions at those facilities. From May 2001, until January, 2004, I served as the Human Resources Director for Greil Hospital while also performing my duties in the Central Office.

Plaintiff objects to signing an employer authorization form on the ground that it is not reasonably calculated to lead to the discovery of information relevant to the claims presented in this lawsuit. Plaintiff further states that all prior employment information applicable to me was verified by my current employer prior to my employment with the State Department of Mental Health and Mental Retardation.

Interrogatory No. 3: Please list chronologically, the names and addresses of any and all schools, colleges, universities, educational institutes, and vocational/educational training centers

Answer:
    (1)    Stanhope Elmore High School;
    (2)    Auburn University at Montgomery.

Additionally I have attended numerous trainings, seminars, workshops, clinics and other type classes in performing my duties for Rheem Manufacturing, Kindercare and the State of Alabama Department of Mental Health and Mental Retardation.

**Interrogatory No. 4:** Identify all civil, criminal or administrative actions, (collectively "action") in which you have been involved either as a litigant or witness, up to the date of these interrogatory answers, the subject of which was the same or similar to the instant case filed by you for the last five (5) years. For each, please state:

a.    the style of each action;

b.    the civil action or cause number of each and the identity of the Court or other forum where filed;

c.    the injury or damage claimed in each action;

d.    whether you gave a deposition or testified at a trial or hearing associated with each and, if so, produce same; and

e.    the current status and/or outcome of each action.

**Answer:**    **Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, not reasonably limited in time and scope and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, any and all information responsive to this request would be a matter of public record and already available to the Defendants.**

**Interrogatory No. 5:** Please state the name of each and every expert witness you intend to call at the trial of this cause, and for each, please:

a.    provide a detailed CV for each which includes, without limitation, said expert's qualifications, the full case style with court identity of each case in which said expert has given testimony by deposition, at trial or by affidavit and all publications authored in whole or in part by said expert;

b.    all opinions of said witness;

c.    a detailed statement of the facts upon which said opinions are based;

d.    a citation to chapter, section, paragraph, and/or page of each and every treatise, study, standard, rule, law, regulation, compilation, analysis, article and any other published and/or circulated item in any way referred to by said expert in refreshing the expert's knowledge or in forming said opinions.

**Answer:**    **This information will be supplied by my attorneys in accordance with the Rules**

of Federal Procedure and the Court's Scheduling Order.

<u>Interrogatory No. 6:</u>  Please identify the individuals from whom you learned the information alleged in paragraph 21 of your complaint.  For each individual, please provide that individual's name, address, and telephone number.

<u>Answer:</u>

(1)     Margaret Leak, State of Alabama Personnel Department, 64 N. Union Street, Montgomery, AL 36102; 334-242-3389;

(2)     Rebecca Taylor Burell, Partlowe Development Center, 1700 University Boulevard, Tuscaloosa, AL 35406; 205-553-4550.

<u>Interrogatory No. 7:</u> Please provide a list of all individuals whom you believe have knowledge of, about or relevant to any and all allegations asserted in your complaint and the defenses of the defendants.  For each individual listed, please provide:

a.     the individual's name, address, telephone number and place of employment;

b.     a description or summary of the information and/or knowledge of each individual.

Answer:     Other than myself, Plaintiff Joan Owens, and the named Defendants, I believe the following individuals may have some knowledge of the matters asserted in my Complaint:

(1)

a.     Margaret Leak,   State of Alabama Personnel Department, 64 N. Union Street,  Montgomery, AL 36102; 334-242-3389;

b.     Plaintiff objects to this interrogatory because it is ambiguous, vague and requires her to speculate and know the thought processes or knowledge of a particular individual, which she is incapable of doing;

(2)     a.     Rebecca Taylor Burell, Partlowe Development Center, 1700 University Boulevard, Tuscaloosa, AL 35406; 205-553-4550.

b.     Please see Answer 7. (1) b. above.

(3)     a.     Gena Watts, Department of Mental Health and Mental Retardation, Central Office, 100 N. Union Street, Montgomery, AL 36130; 334-242-3112;

b.     Please see Answer 7. (1) b. above.

(4)  a.    Jodi Roy, Department of Mental Health and Mental Retardation, Central Office, 100 N. Union Street, Montgomery, AL 36130; 334-242-3112;

     b.    Please see Answer 7. (1) b. above.

(5)  a.    David L. Bennett, Department of Mental Health and Mental Retardation, Central Office, 100 N. Union Street, Montgomery, AL 36130; 334-242-3112;

     b.    Please see Answer 7. (1) b. above.

(6)  a.    Judith S. Johnson, 187 Lee Road. 820, Opelika, AL 36801; 334-745-2429;

     b.    Please see Answer 7. (1) b. above.

Plaintiff reserves the right to supplement this answer as discovery continues in this matter.

**Interrogatory No. 8:** Please provide a list of all individuals who work or have worked at the Alabama Department of Mental Health and Mental Retardation with whom you have had any communications or conversations regarding the position of Assistant Director of the Personnel Department, the substitution policy of the ADMH/MR regarding the position in question, or any important or material fact or issue regarding claims you make in this litigation and any of the "facts" that you have asserted in your Complaint. If any individual is no longer at the department, please provide a current address and phone number for that individual.

**Answer:**    **Please see Answers No. 6 and 7 above. Additionally I talked with Commissioner John Houston and former Associate Commissioner Otha Dillihay specifically about the substitution of experience for education policy.**

Plaintiff reserves the right to list additional witnesses as discovery proceeds in this matter.

**Interrogatory No. 9:** Please provide a list of all individuals with whom you have had any communications or conversations regarding the position of Assistant Director of the Personnel Department, the substitution policy of the ADMH/MR regarding the position in question, or any important or material fact or issue regarding claims you make in this litigation and any of the "facts" that you have asserted in your Complaint. For each individual listed, please provide a current address and phone number.

**Answer:**    **Please see Answers No. 6, 7 and 8 above.**

Plaintiff reserves the right to list additional witnesses as discovery proceeds in this matter.

**Interrogatory No. 10:**    Please list each and every licensed medical professional (*this includes but is not limited to medical doctors, hospitals, chiropractors, psychologist, psychiatrists, licensed professional counselors and therapists of any kind, including, but not limited to, physical therapists, drug and/or alcohol rehabilitation counselors and/or therapists, and any and all other types or kinds of counselors and/or therapists*) that has treated you **for any reason** in the last 15 years. For each provider listed, please provide the following information:

     a.     the name of the medical professional providing treatment;

     b.     the name of the hospital, facility, medical center, medical group, company or institute where you received treatment;

     c.     the address (*including city, state and zip code*);
     d.     the telephone number of the facility; and

     e.     state whether the treatment received was related to this incident.

Please execute and return to us with your responses the HIPAA compliant Health Information Authorization, a copy of which is attached hereto, for all medical providers.

**Answer:**    **Plaintiff objects to this interrogatory on the ground that it seeks confidential and personal information that is protected by Federal law and that it is overly broad, unduly burdensome, not reasonably limited in time, scope or subject matter, and not reasonably calculated to lead to the discovery of admissible evidence. However, without waiving this objection, Plaintiff has been under the care of Dr. Kathy Lindsey and would agree to the entry of a HIPAA Order if such Order is reasonably limited in time and scope with regards to the Plaintiff's claims in this case.**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**Request for Production No. 1:**    Please provide a copy of your income tax returns and W-2 forms for the past five years.

**Response:**    **Plaintiff objects to this request on the grounds that Plaintiff's W-2 statements are already in the possession of the Defendant Alabama Department of Mental Health and Mental Retardation, the Plaintiff's employer who issues such statements. Plaintiff objects to producing her income tax returns on the grounds that the request is overly broad, unduly burdensome and not reasonably calculated to lead the discovery of admissible evidence.**

**Request for Production No. 2:**     Please produce all documents, including, but not limited to, doctor's notes, doctor's reports, statements, invoices, bills, insurance claims and records of payment for medical examination, treatment, testing or diagnosis that form part of Plaintiff's claim for emotional distress/mental anguish or for damages of any kind in this case.

**Response:**     **Plaintiff objects to this interrogatory on the ground that it seeks confidential and personal information that is protected by Federal law and that it is overly broad, unduly burdensome, not reasonably limited in time, scope or subject matter, and not reasonably calculated to lead to the discovery of admissible evidence. However, without waiving this objection, Plaintiff has been under the care of Dr. Kathy Lindsey and would agree to the entry of a HIPAA Order if such Order is reasonably limited in time and scope with regards to the Plaintiff's claims in this case.**

**Request for Production No. 3:**     Please produce any and all documents, notes, memoranda, audio tapes and/or audio recordings of any kind whatsoever related or referring to the telephone call referenced in paragraph 20 of your Complaint.

**Response:**     **Plaintiff has no documents or recording in her possession responsive to this request.**

**Request for Production No. 4:**     Please produce any and all documents, notes, memoranda, audio tapes and/or audio recordings of any kind whatsoever related or referring to your inquiry regarding the Departmental Assistance Personnel Manager position and other allegations referenced in paragraph 21 of your Complaint.

**Response:**     **Plaintiff has no documents or recording in her possession responsive to this request.**

**Request for Production No. 5:**     Please produce any and all documents, notes, memoranda, audio tapes and/or audio recordings of any kind whatsoever related or referring to the allegations and/or assertions referenced in paragraph 22 of your Complaint regarding and relating to the Substitution policy.

**Response:**     **To the extent Plaintiff personally possesses any such documents, they would have been produced with the Plaintiffs' Initial Disclosures in this case or are otherwise produced herewith.**

**Request for Production No. 6:**     Please produce any and all documents, notes, memoranda, audio tapes and/or audio recordings of any kind whatsoever related to or referring to the meeting(s) with Commissioner Houston referenced in paragraphs 23 and 24 of Plaintiffs' Complaint.

**Response:**     **Plaintiff has no documents or recording in her possession responsive to this request.**

**Request for Production No. 7:**    Please produce any and all documents, notes, memoranda, correspondence which support or are related to your belief that Ms. Benson received preferential treatment.

**Response:    Plaintiff objects to this Request for Production on the grounds that it is vague, ambiguous, and confusing. However, without waiving these objections, to the extent Plaintiff personally possesses any such documents they would have been produced with the Plaintiffs' Initial Disclosure in this case or are otherwise produced therewith.**

**Request for Production No. 8:**    Please produce any and all documents, notes, memoranda, correspondence, related to any complaints you made to any individual at the Alabama Department of Mental Health and Mental Retardation citing specific instances in which Ms. Benson allegedly received "preferential treatment" while working at the Department of Mental Health and Mental Retardation.

**Response:    To the extent Plaintiff personally possesses any such documents, they would have been produced with the Plaintiffs' Initial Disclosure in this case or are otherwise produced herewith.**

**Request for Production No. 9:**    Please produce any and all documents, notes, memoranda, correspondence which support, evidence or are related to your belief that the position of Assistant Director of the Personnel Department was specifically created for Ms. Marilyn Benson.

**Response:    See Plaintiff's Response to Request for Production No. 8 herein.**

**Request for Production No. 10:**    Please provide copies of any and all documents in your possession regarding the position of Assistant Personnel Director and or the substitution policy including but not limited to, audio recordings, e-mail, notes, memos, correspondence, and letters to and from any individual with any relationship with the Alabama Department of Mental Health and Mental Retardation including but not limited to any and all past and present employees, agents, representatives, of the Alabama Department of Mental Health and Mental Retardation.

**Response:    Please see Response to Request for Production No. 9 above.**

**Request for Production No. 11:**    Please provide copies of any and all documents in your possession regarding the position of Assistant Personnel Director and or the substitution policy including but not limited to, audio recordings, e-mail, notes, memos, correspondence, and letters to and from any individual with any relationship with any state or federal agency including, but not limited to any and all past and present employees, agents, representatives, of the said state or federal agency.

**Response:    Please see Response to Request for Production No. 9 above.**

**Request for Production No. 12:**    Please provide a copy of any of your personal notes, memorandum, diaries, calendars, "to do" lists that reference, mention, refer to any the allegations, incidents, conversations, events, positions and individuals referenced in your Complaint.

**Response:**    **Plaintiffs has no documents or recordings in her possession responsive to this request.**

**Request for Production No. 13:**    Please provide copies of any and all documents, including but not limited to e-mail, correspondence, notes, memoranda, audio recordings, and any other document, item or thing whether on electronic, magnetic, paper or any other media to and/or from and/or with and/or regarding, or related to any and all individuals with any relationship with the Alabama Department of Mental Health and Mental Retardation including, but not limited to, any all past and present employees, agents, and/or representatives of the Department of Mental Health and Mental Retardation, which in way relates to your work and/or performance as an employee at the Alabama Department of Mental Health and Mental Retardation in any way whatsoever.

**Response:**    **Plaintiff objects to this request on the grounds that it is vague, ambiguous, and confusing, overly broad, unduly burdensome, is not reasonably limited in time and scope, and is not reasonable calculated to lead to the discovery of admissible evidence.**

**Request for Production No. 14**    Please provide copies of any and all documents, items, and things including without limitation, correspondence, notes, memorandum, recordings and/or transcriptions of recordings of conversations whether in person, by telephone or any other means, that you or anyone acting on your behalf had with, made, sent, received, kept and/or took regarding and/or relative to and/or with Marilyn Benson, Henry Ervin, Otha Dillihay, Commissioner John Houston, June Lynn, and/or any current employee at the Department of Mental Health and Mental Retardation, including but not limited to, those individuals listed in your initial disclosures.

**Response:**    **Plaintiff objects to this request on the grounds that it is vague, confusing, ambiguous, overly broad, unduly burdensome, is unreasonably limited in time and scope and is not reasonable calculated to lead to the discovery of admissible evidence. To the extent Plaintiff has any documents responsive to this request in her possession such documents would have been produced with the Plaintiffs' Initial Discovery in this case.**

**Request for Production No. 15:**    Please produce a copy of any and all audio tapes, video tapes, digital recordings and recorded statements and/or transcriptions of audio tapes, video tapes, and/or recorded statements and/or recordings and transcriptions of conversations, whether in person, by telephone or other means, of or from any current or former employees, agent or representative of the Alabama Department of Mental Health and Mental Retardation related to the position of the Assistant Personnel Director and/or the substitution policy.

**Response:**    **Plaintiff objects to this request that it seeks information protected by the**

attorney client and attorney work product privileges. However, without waiving this objection, Plaintiff currently has no recordings or documents in her possession that are responsive to this request.

**Request for Production No. 16:**    Please produce copies of any and all of your written and/or transcribed notes and/or recordings of any and all discussions, conversations, meeting, phone, conversation, conference, committee meeting(s), staff meeting(s), personnel manager's meeting(s), relating to, regarding or referring to individuals referenced in your complaint, including, but not limited to the Defendants in this matter and/or June Lynn and/or any individual whom you have listed in your initial disclosures or in response to Interrogatory Nos. 6 and 7.

**Response:**    See Plaintiff's response to Request for Production No. 14.

**Request for Production No. 17:**    Please produce any and all documents, including but not limited to notes, correspondence, memoranda, and/or e-mail related to the Alabama Department of Mental Health and Mental Retardation's substitution policy and/or any changes or revisions to the Department's substitution policy.

**Response:**    To the extent any such documents exists, they would have been produced with the Plaintiffs' Initial Disclosures in this case and are otherwise produced herewith.

**Request for Production No. 18:**    Please produce any and all document, including but not limited to notes, correspondence, memoranda, and/or e-mail related to the position of Assistant Personnel Director.

**Response:**    Please see Response to Request for Production No. 17 above.

**Request for Production No. 19:**    Please produce any and all documents you have that evidence correspondence or communications with or from any Defendant in this action.

**Response:**    Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly burdensome, and not reasonably limited in time and scope and  it is not reasonably calculated to lead to the discovery of admissible evidence.

**Request for Production No. 20:**    Please produce any and all documents you have that reference, refer or relate to any Defendant in this action.

**Response:**    Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly burdensome, and not reasonably limited in time and scope and is not reasonably calculated to lead to the discovery of admissible evidence.

**Request for Production No. 22:**    All discs, electronic media, recordings of any kind that you have downloaded, taken from, transferred from or kept in any other way at your home or any other

location off the premises of ADMH/MR within the last seven (7) years of or related to documents, data or information from any source at or of ADMH/MR.

**Response:**    Plaintiff objects to this Request on the grounds that it is vague, ambiguous, confusing and unduly burdensome.   To the extent Plaintiff understands the Request for Production, Plaintiff has no documents or recordings in her possession responsive to this request.

**Request for Production No. 23:**    All documents, notes, memoranda, correspondence, audio tapes, audio recordings, disks, and/or electronic media of any kind that you contend show or demonstrate other "conduct" or "activity" that is the same or similar to the "conduct" or "activity" you complaint about in this case.

**Response:**    Plaintiff objects to this request on the grounds that it is vague, ambiguous, confusing, overly broad, unduly burdensome, not reasonably limited in time and scope and not reasonably calculated to lead to the discovery of admissible evidence.

**Request for Production No. 24:**    Please produce copies of any and all transcripts from any and all educational, professional, and vocational training institutions that you have attended.

**Response:**  Plaintiff objects to this interrogatory on the ground vague, ambiguous, confusing, overly broad, unduly burdensome, not reasonably limited in time and scope and not reasonably calculated to lead to the discovery of admissible evidence.   However, without waiving this objection, to the best of Plaintiff's knowledge any documents responsive to this request have previously been provided to the State Department of Mental Health and Mental Retardation in the regular course of Plaintiff's employment and would be a part of the Plaintiff's employment file.  Moreover, see the documents produced herewith.

_Karen L. Hubbard_
KAREN LYNN HUBBARD

SWORN TO and subscribed before me on this the 28th day of _May_, 2008.

_____
NOTARY PUBLIC
My Commission Expires: _6/24/09_

Page 13

s/J. Flynn Mozingo
J. Flynn Mozingo (MOZ003)
Attorney for Plaintiffs
Melton, Espy & Williams, P.C.
P. O. Drawer 5130
Montgomery, AL  36103-5130
Telephone:    (334) 263-6621
Facsimile:     (334) 263-7525
fmozingo@mewlegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served on the below listed counsel of record via USPS, properly addressed and postage prepaid on this 6th day of _____, 2008:

H.E. NIX, JR.
Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.
Post Office Box 4128
Montgomery, AL 36103-4128

__s/J. Flynn Mozingo__
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOAN FAULK OWENS and KAREN )
LYNN HUBBARD, )
           )
    Plaintiffs, )
           )
v. )     CASE NO- 2:07-cv-650-WHA
           )
STATE OF ALABAMA DEPARTMENT )
OF MENTAL HEALTH AND MENTAL )
RETARDATION, et al. )
           )
    Defendants. )
           )

## PLAINTIFF JOAN FAULK OWENS' RESPONSE TO DEFENDANT'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiff Joan Faulk Owens, by and through counsel, responds to Defendants' First Interrogatories and Requests for Production as follows:

### GENERAL OBJECTIONS

Plaintiff Joan Owens objects to Defendants' First Interrogatories and Requests for Production of Documents to the extent that they would require the communication of information subject to the attorney-client privilege or information comprised of attorney work product or any other privilege such as the communication of information in anticipation of litigation.

The response of Plaintiff Joan Owens to Defendants' First Interrogatories and Requests for Production of Documents are made solely for the purpose of this action. Each response is subject to all objections concerning relevance, materiality and admissibility, and further, as to any all objections and grounds which would require the exclusion of any response of Defendants' First

Page 1



Interrogatories and Requests for Production of Documents at the time of trial and/or a hearing on the

merits, all such objections and grounds are expressly reserved and may be interposed as such time.

## INTERROGATORIES

**Interrogatory No.1:**  Please state your full name, current physical residence/address, date of birth, Social Security Number, and Driver's License Number:

**Answer:**      **Joan Faulk Owens, 319 Ross Road, Wetumpka, AL 36092; January 18, 1947. Plaintiff objects to providing her Social Security Number and Driver's License Number in that this information is confidential and could lead to an invasion of privacy nor is it reasonably calculated to lead to the discovery of information relevant to the claims presented in this in this action.**

**Interrogatory No. 2:** Please list, chronologically, each and every employer for whom you have worked, up to and including the date of these interrogatory answers, and for each employer listed, please provide the following information:

        a.     the name of your immediate supervisor;

        b.     your position/title;

        c.     a brief description of your duties;

        d.     the time frame (by month and year), in which you worked for this employer;

        e.     the employer's address;

        f.     the employer's telephone number; and

        g.     the reason you left each employer.

Please execute and return to us with your responses an employer authorization form, a copy of which is attached hereto, for all employers.

**Answer:**      **Plaintiff objects to this interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  However, without waiving these objections, Plaintiff states as follows:**

    (1)    **Elmore Community Hospital;**
          a.    **Christine Trumble;**

b.     Personnel Manager;

c.     I began my employment in the business office and held numerous positions until 1978 when I became the Personnel and Payroll Officer. My responsibilities included interviewing and hiring new employees, maintaining personnel records, advisor of policies and procedures, recruiting, performing job evaluations as prescribed by JCAHO, conducting disciplinary actions and terminations, attending Unemployment Compensation hearings, responsible for payroll, time cards, data entry, filing monthly, quarterly and yearly payroll taxes, member of the Executive Board, responsible for the pharmacy, housekeeping, respiratory and dietary departments.

d.     November, 1969 through December, 1990;

e.     500 Hospital Drive, Wetumpka, AL 36092;

f.     334-567-4311;

g.     I left this job to take a position with the State with better benefits.

(2)     J S Tarwater, State of Alabama Department of Mental Health and Mental Retardation;

a.     Judith Johnson;

b.     I began a Personnel Specialist (assistant personnel director) and ended my employment at Tarwater as a Personnel Specialist III;

c.     My duties included recruitment, testing, interviewing, merit system administration, exempt administration, covering for all office employees in their absences, and being in charge during the absence of the Personnel Director, Acting Personnel Director for three months; conducted pre-disciplinary hearings, and payroll.

d.     December, 1990 through January, 1999;

e.     This facility is closed;

f.     N/A;

g.     Began new position as Personnel Director of Greil Hospital.

(3)  Greil Memorial Psychiatric Hospital;

    a.  Susan Chambers;

    b.  Personnel Director;

    c.  coordinated and conducted recruitment, interviewed and completed selection process, administered MHW I examinations, scored tests, administered the merit system process, oversaw the maintenance of employee personnel files, coordinated and conducted employee complaint proceedings, processed and supervised terminations, resignations, and dismissals, oversaw workman's compensation, military leave and donated sick leave, provided staff and department heads with accurate job related information, advised employees on personnel issues including benefits, and supervised facility payroll.

    d.  January, 1999 through September 1999;

    e.  2140 Upper Wetumpka Road, Montgomery, AL 36107;

    f.  334-262-0363;

    g.  In September, 1999, for cost saving purposes, the Personnel Offices of Greil and J. S. Tarwater were consolidated and I was laterally transferred to the Central Office. I assumed duties at the Central Office and traveled to Greil and J. S. Tarwater as the acting Personnel Director.

(4)  Department of Mental Health and Retardation Central Office;

    a.  Henry Ervin;

    b.  Personal Specialist III;

    c.  coordinated and conducted recruitment, interviewed and completed selection process, administered MHW I examinations, scored tests, administered the merit system process, oversaw the maintenance of employee personnel files, coordinated and conducted employee complaint proceedings, processed and supervised terminations, resignations, and dismissals, oversaw workman's compensation, military leave and donated sick leave, provided staff and department heads with accurate job related information, advised employees on personnel issues including

benefits, and supervised facility payroll. In 2002 I was appointed to the task force assigned to downsize the Brewer Bayside facility in Mobile. In 2004 I helped close J.S. Tarwater and in 2004 I was appointed to the task force assigned to close the Brewer facility in Daphne.

d.      September, 1999 to the present;

e.      100 Union Street, Montgomery, AL 36130-1410;

f.      334-242-3454

g.      N/A.

Plaintiff objects to signing an employer authorization form on the ground that it is not reasonably calculated to lead to the discovery of information relevant to the claims presented in this lawsuit. Plaintiff further states that all prior employment information applicable to me was verified by my current employer prior to my employment with the State Department of Mental Health and Mental Retardation.

**Interrogatory No. 3:** Please list chronologically, the names and addresses of any and all schools, colleges, universities, educational institutes, and vocational/educational training centers

**Answer:**
(1)    Wetumpka High School;
(2)    Manpower Training Center, Montgomery ,AL.

Additionally I have attended numerous trainings, seminars, workshops, clinics and other type classes in performing my duties for Elmore Community Hospital and the State of Alabama Department of Mental Health and Mental Retardation.

**Interrogatory No. 4:** Identify all civil, criminal or administrative actions, (collectively "action") in which you have been involved either as a litigant or witness, up to the date of these interrogatory answers, the subject of which was the same or similar to the instant case filed by you for the last five (5) years. For each, please state:

a.      the style of each action;

b.      the civil action or cause number of each and the identity of the Court or other forum where filed;

c.      the injury or damage claimed in each action;

d.      whether you gave a deposition or testified at a trial or hearing

Page 5

associated with each and, if so, produce same; and

e.    the current status and/or outcome of each action.

**Answer:**    Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, not reasonably limited in time and scope and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, any and all information responsive to this request would be a matter of public record and already available to the Defendants.

**Interrogatory No. 5:** Please state the name of each and every expert witness you intend to call at the trial of this cause, and for each, please:

a.    provide a detailed CV for each which includes, without limitation, said expert's qualifications, the full case style with court identity of each case in which said expert has given testimony by deposition, at trial or by affidavit and all publications authored in whole or in part by said expert;

b.    all opinions of said witness;

c.    a detailed statement of the facts upon which said opinions are based;

d.    a citation to chapter, section, paragraph, and/or page of each and every treatise, study, standard, rule, law, regulation, compilation, analysis, article and any other published and/or circulated item in any way referred to by said expert in refreshing the expert's knowledge or in forming said opinions.

**Answer:**    This information will be supplied by my attorneys in accordance with the Rules of Federal Procedure and the Court's Scheduling Order.

**Interrogatory No. 6:** Please provide a list of all individuals whom you believe have knowledge of, about or relevant to any and all allegations asserted in your complaint and the defenses of the defendants. For each individual listed, please provide:

a.    the individual's name, address, telephone number and place of employment;

b.    a description or summary of the information and/or knowledge of each individual.

**Answer:**    Other than myself, Plaintiff Lynn Hubbard, and the named Defendants, I believe the following individuals may have some knowledge of the matters asserted in my Complaint:

Page 6

(1)
    a.    Rebecca Taylor Burell, Partlowe Development Center, 1700 University Boulevard, Tuscaloosa, AL 35406; 205-553-4550.

    b.    Plaintiff objects to this interrogatory because it is ambiguous, vague and requires her to speculate and know the thought processes or knowledge of a particular individual, which she is incapable of doing;

(3)
    a.    Gena Watts, Department of Mental Health and Mental Retardation, Central Office, 100 N. Union Street, Montgomery, AL 36130; 334-242-3112;

    b.    Please see Answer 7. (1) b. above.

(4)
    a.    Jodi Smith, Department of Mental Health and Mental Retardation, Central Office, 100 N. Union Street, Montgomery, AL 36130; 334-242-3112;

    b.    Please see Answer 7. (1) b. above.

(5)
    a.    Judith S. Johnson, 187 Lee Road. 820, Opelika, AL 36801; 334-745-2429;

    b.    Please see Answer 7. (1) b. above.

Plaintiff reserves the right to supplement this answer as discovery continues in this matter.

**Interrogatory No. 7:** Please provide a list of all individuals who work or have worked at the Alabama Department of Mental Health and Mental Retardation with whom you have had any communications or conversations regarding the position of Assistant Director of the Personnel Department, the substitution policy of the ADMH/MR regarding the position in question, or any important or material fact or issue regarding claims you make in this litigation and any of the "facts" that you have asserted in your Complaint. If any individual is no longer at the department, please provide a current address and phone number for that individual.

**Answer:**    Please see my Answer to Interrogatory No. 6 above.

Plaintiff reserves the right to list additional witnesses as discovery proceeds in this matter.

**Interrogatory No. 8:** Please provide a list of all individuals with whom you have had any communications or conversations regarding the position of Assistant Director of the Personnel Department, the substitution policy of the ADMH/MR regarding the position in question, or any

important or material fact or issue regarding claims you make in this litigation and any of the "facts" that you have asserted in your Complaint. For each individual listed, please provide a current address and phone number.

<u>Answer:</u>    **Please see Answers No. 6 and 7 above.**

**Plaintiff reserves the right to list additional witnesses as discovery proceeds in this matter.**

<u>Interrogatory No. 9:</u> Please list each and every licensed medical professional (*this includes but is not limited to medical doctors, hospitals, chiropractors, psychologist, psychiatrists, licensed professional counselors and therapists of any kind, including, but not limited to, physical therapists, drug and/or alcohol rehabilitation counselors and/or therapists, and any and all other types or kinds of counselors and/or therapists*) that has treated you **for any reason** in the last 15 years. For each provider listed, please provide the following information:

        a.    the name of the medical professional providing treatment;

        b.    the name of the hospital, facility, medical center, medical group, company or institute where you received treatment;

        c.    the address (*including city, state and zip code*);

        d.    the telephone number of the facility; and

        e.    state whether the treatment received was related to this incident.

Please execute and return to us with your responses the HIPAA compliant Health Information Authorization, a copy of which is attached hereto, for all medical providers.

<u>Answer:</u>    **Plaintiff objects to this interrogatory on the ground that it seeks confidential and personal information that is protected by Federal law and that it is overly broad, unduly burdensome, not reasonably limited in time, scope or subject matter, and not reasonably calculated to lead to the discovery of admissible evidence. However, without waiving this objection, Plaintiff has been under the care of Dr. Bipin Kumar and would agree to the entry of a HIPAA Order if such Order is reasonably limited in time and scope with regards to the Plaintiff's claims in this case.**

### REQUESTS FOR PRODUCTION OF DOCUMENTS

<u>Request for Production No. 1:</u>    Please provide a copy of your income tax returns and W-2 forms for the past five years.

<u>Response:</u>    Plaintiff objects to this request on the grounds that Plaintiff's W-2 statements are

Page 8

already in the possession of the Defendant Alabama Department of Mental Health and Mental Retardation, the Plaintiff's employer who issues such statements. Plaintiff objects to producing her income tax returns on the grounds that the request is overly broad, unduly burdensome and not reasonably calculated to lead the discovery of admissible evidence.

<u>Request for Production No. 2:</u>     Please produce all documents, including, but not limited to, doctor's notes, doctor's reports, statements, invoices, bills, insurance claims and records of payment for medical examination, treatment, testing or diagnosis that form part of Plaintiff's claim for emotional distress/mental anguish or for damages of any kind in this case.

<u>Response:</u>     Plaintiff objects to this interrogatory on the ground that it seeks confidential and personal information that is protected by Federal law and that it is overly broad, unduly burdensome, not reasonably limited in time, scope or subject matter, and not reasonably calculated to lead to the discovery of admissible evidence. However, without waiving this objection, Plaintiff has been under the care of Dr. Bipin Kumar and would agree to the entry of a HIPAA Order if such Order is reasonably limited in time and scope with regards to the Plaintiff's claims in this case.

<u>Request for Production No. 3:</u>     Please produce any and all documents, notes, memoranda, audio tapes and/or audio recordings of any kind whatsoever related or referring to the telephone call referenced in paragraph 20 of your Complaint.

<u>Response:</u>     Plaintiff has no documents or recording in her possession responsive to this request.

<u>Request for Production No. 4:</u>     Please produce any and all documents, notes, memoranda, audio tapes and/or audio recordings of any kind whatsoever related or referring to your inquiry regarding the Departmental Assistance Personnel Manager position and other allegations referenced in paragraph 21 of your Complaint.

<u>Response:</u>     Plaintiff has no documents or recording in her possession responsive to this request.

<u>Request for Production No. 5:</u>     Please produce any and all documents, notes, memoranda, audio tapes and/or audio recordings of any kind whatsoever related or referring to the allegations and/or assertions referenced in paragraph 22 of your Complaint regarding and relating to the Substitution policy.

<u>Response:</u>     To the extent Plaintiff personally possesses any such documents, they would have been produced with the Plaintiffs' Initial Disclosures in this case or are otherwise produced herewith.

**Request for Production No. 6:**    Please produce any and all documents, notes, memoranda, audio tapes and/or audio recordings of any kind whatsoever related to or referring to the meeting(s) with Commissioner Houston referenced in paragraphs 23 and 24 of Plaintiffs' Complaint.

**Response:**    **Plaintiff has no documents or recording in her possession responsive to this request.**

**Request for Production No. 7:**    Please produce any and all documents, notes, memoranda, correspondence which support or are related to your belief that Ms. Benson received preferential treatment.

**Response:**    **Plaintiff objects to this Request for Production on the grounds that it is vague, ambiguous, and confusing. However, without waiving these objections, to the extent Plaintiff personally possesses any such documents they would have been produced with the Plaintiffs' Initial Disclosure in this case or are otherwise produced therewith.**

**Request for Production No. 8:**    Please produce any and all documents, notes, memoranda, correspondence, related to any complaints you made to any individual at the Alabama Department of Mental Health and Mental Retardation citing specific instances in which Ms. Benson allegedly received "preferential treatment" while working at the Department of Mental Health and Mental Retardation.

**Response:**    **To the extent Plaintiff personally possesses any such documents, they would have been produced with the Plaintiffs' Initial Disclosure in this case or are otherwise produced herewith.**

**Request for Production No. 9:**    Please produce any and all documents, notes, memoranda, correspondence which support, evidence or are related to your belief that the position of Assistant Director of the Personnel Department was specifically created for Ms. Marilyn Benson.

**Response:**    **See Plaintiff's Response to Request for Production No. 8 herein.**

**Request for Production No. 10:**    Please provide copies of any and all documents in your possession regarding the position of Assistant Personnel Director and or the substitution policy including but not limited to, audio recordings, e-mail, notes, memos, correspondence, and letters to and from any individual with any relationship with the Alabama Department of Mental Health and Mental Retardation including but not limited to any and all past and present employees, agents, representatives, of the Alabama Department of Mental Health and Mental Retardation.

**Response:**    **Please see Response to Request for Production No. 9 above.**

**Request for Production No. 11:**    Please provide copies of any and all documents in your possession regarding the position of Assistant Personnel Director and or the substitution policy

including but not limited to, audio recordings, e-mail, notes, memos, correspondence, and letters to and from any individual with any relationship with any state or federal agency including, but not limited to any and all past and present employees, agents, representatives, of the said state or federal agency.

**Response:**    **Please see Response to Request for Production No. 9 above.**

**Request for Production No. 12:**    Please provide a copy of any of your personal notes, memorandum, diaries, calendars, "to do" lists that reference, mention, refer to any the allegations, incidents, conversations, events, positions and individuals referenced in your Complaint.

**Response:**    **Plaintiff has no documents in her possession responsive to this request.**

**Request for Production No. 13:**    Please provide copies of any and all documents, including but not limited to e-mail, correspondence, notes, memoranda, audio recordings, and any other document, item or thing whether on electronic, magnetic, paper or any other media to and/or from and/or with and/or regarding, or related to any and all individuals with any relationship with the Alabama Department of Mental Health and Mental Retardation including, but not limited to, any all past and present employees, agents, and/or representatives of the Department of Mental Health and Mental Retardation, which in way relates to your work and/or performance as an employee at the Alabama Department of Mental Health and Mental Retardation in any way whatsoever.

**Response:**    **Plaintiff objects to this request on the grounds that it is vague, ambiguous, and confusing, overly broad, unduly burdensome, is unreasonably limited in time and scope and it is not reasonable calculated to lead to the discovery of admissible evidence.**

**Request for Production No. 14**    Please provide copies of any and all documents, items, and things including without limitation, correspondence, notes, memorandum, recordings and/or transcriptions of recordings of conversations whether in person, by telephone or any other means, that you or anyone acting on your behalf had with, made, sent, received, kept and/or took regarding and/or relative to and/or with Marilyn Benson, Henry Ervin, Otha Dillihay, Commissioner John Houston, June Lynn, and/or any current employee at the Department of Mental Health and Mental Retardation, including but not limited to, those individuals listed in your initial disclosures.

**Response:**    **Plaintiff objects to this request on the grounds that it is vague, confusing, ambiguous, overly broad, unduly burdensome, is unreasonably limited in time and scope and is not reasonable calculated to lead to the discovery of admissible evidence. To the extent Plaintiff has any documents responsive to this request in her possession such documents would have been produced with the Plaintiffs' Initial Discovery in this case.**

**Request for Production No. 15:**    Please produce a copy of any and all audio tapes, video tapes, digital recordings and recorded statements and/or transcriptions of audio tapes, video tapes, and/or

recorded statements and/or recordings and transcriptions of conversations, whether in person, by telephone or other means, of or from any current or former employees, agent or representative of the Alabama Department of Mental Health and Mental Retardation related to the position of the Assistant Personnel Director and/or the substitution policy.

**Response:**    **Plaintiff objects to this request that it seeks information protected by the attorney client and attorney work product privileges. However, without waiving this objection, Plaintiff currently has no recordings or documents in her possession that are responsive to this request.**

**Request for Production No. 16:**    Please produce copies of any and all of your written and/or transcribed notes and/or recordings of any and all discussions, conversations, meeting, phone, conversation, conference, committee meeting(s), staff meeting(s), personnel manager's meeting(s), relating to, regarding or referring to individuals referenced in your complaint, including, but not limited to the Defendants in this matter and/or June Lynn and/or any individual whom you have listed in your initial disclosures or in response to Interrogatory Nos. 6 and 7.

**Response:**    **See Plaintiff's response to Request for Production No. 14.**

**Request for Production No. 17:**    Please produce any and all documents, including but not limited to notes, correspondence, memoranda, and/or e-mail related to the Alabama Department of Mental Health and Mental Retardation's substitution policy and/or any changes or revisions to the Department's substitution policy.

**Response:**    **To the extent any such documents exists, they would have been produced with the Plaintiffs' Initial Disclosures in this case and or otherwise produced herewith.**

**Request for Production No. 18:**    Please produce any and all document, including but not limited to notes, correspondence, memoranda, and/or e-mail related to the position of Assistant Personnel Director.

**Response:**    **Please see Response to Request for Production No. 17 above.**

**Request for Production No. 19:**    Please produce any and all documents you have that evidence correspondence or communications with or from any Defendant in this action.

**Response:**    **Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly burdensome, and not reasonably limited in time and scope and it is not reasonably calculated to lead to the discovery of admissible evidence.**

**Request for Production No. 20:**    Please produce any and all documents you have that reference, refer or relate to any Defendant in this action.

<u>Response:</u>    Plaintiff objects to this interrogatory on the ground that it is overly broad, unduly burdensome, and not reasonably limited in time and scope and is not reasonably calculated to lead to the discovery of admissible evidence.

<u>Request for Production No. 22:</u>    All discs, electronic media, recordings of any kind that you have downloaded, taken from, transferred from or kept in any other way at your home or any other location off the premises of ADMH/MR within the last seven (7) years of or related to documents, data or information from any source at or of ADMH/MR.

<u>Response:</u>    Plaintiff objects to this Request on the grounds that it is vague, ambiguous, confusing and unduly burdensome.  To the extent Plaintiff understands the Request for Production, Plaintiff has no documents or recordings in her possession responsive to this request.

<u>Request for Production No. 23:</u>    All documents, notes, memoranda, correspondence, audio tapes, audio recordings, disks, and/or electronic media of any kind that you contend show or demonstrate other "conduct" or "activity" that is the same or similar to the "conduct" or "activity" you complain about in this case.

<u>Response:</u>    Plaintiff objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, not reasonably limited in time and scope and not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, see the documents produced herewith.

JOAN FAULK OWENS

SWORN TO and subscribed before me
on this the 28th day of ____May____,
2008.

_____
NOTARY PUBLIC
My Commission Expires: ___6/24/09___

s/J. Flynn Mozingo
J. Flynn Mozingo (MOZ003)
Attorney for Plaintiffs
Melton, Espy & Williams, P.C.
P. O. Drawer 5130
Montgomery, AL  36103-5130
Telephone:    (334) 263-6621
Facsimile:    (334) 263-7525
fmozingo@mewlegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been served on the below listed counsel of record via USPS, properly addressed and postage prepaid on this 6th day of _____, 2008:

H.E. NIX, JR.
Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.
Post Office Box 4128
Montgomery, AL 36103-4128

__s/J. Flynn Mozingo__
OF COUNSEL





STATE OF ALABAMA
## DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION
North Alabama Regional Hospital
4218 HIGHWAY 31 SOUTH
DECATUR, ALABAMA 35603

PHONE (256) 560-2200
DIRECTOR'S FAX (256) 560-2203

BOB RILEY
GOVERNOR

JOHN HOUSTON
COMMISSIONER

## MEMORANDUM

Date:       March 3, 2008

To:         Mr. David Bennett
            Associate Commissioner of Administration

From:       Greg Ethridge
            Personnel Director/NARH

Re:         Manager of Employee Relations

I have completed the assessment of the applications for the above position. There were a total of 26 applicants that I reviewed. I have completed an array of the individuals who qualified as well as those who did not in my assessment. I have included notes on some of the applications to note certain points considered in my assessment and to be able to refresh my memory in the event there are questions. Marilyn can remove these notes that I have attached. I have made copies of the grading sheets, the array, and the first page of each applicant for myself in case you have questions.

If you have questions, or need further assistance, please call me.



DEFENDANT'S
EXHIBIT
65

ADMH_04-00238

## ARRAY OF APPLICANTS

JOB TITLE: <u>Manager of Employee Relations</u>        PCQ # <u>8813389</u>

<u>POINTS:</u>  (From Applicant Evaluation Form)        NAME

| | |
|---|---|
| 8 | Shirley Davis |
| 6 | Henry Ervin |
| 6 | Jeffery Evans |
| 6 | Tim Hicks |
| 3 | Phillip Herron |
| 3 | Tonya Neal |
| 1 | Greg Dreveny |

### NOT QUALIFIED:

Angela Atchison
Peggy Carden
Karlos Commings
Randall Crowell
Timothy Daniel
Harry "Keith" Fields
Nirmal Gill
Eva Mae Greene
Robert Griffin
Cynthia Harris
Deidra Howard
Phillip O'Leary
Felecia Robinson-Humphrey
Eresheia Straughter
Sheila Taylor
Virginia Way
Queen Marie White
Thomasine Williams
Lillian Wilson

ADMH_04-00239




STATE OF ALABAMA
### DEPARTMENT OF MENTAL HEALTH
### AND MENTAL RETARDATION
**RSA UNION BUILDING**
100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410

BOB RILEY
GOVERNOR

JOHN M. HOUSTON
COMMISSIONER

## ANNOUNCEMENT OF INTENT TO FILL A NON-MERIT POSITION
## (AN EQUAL OPPORTUNITY EMPLOYER)

**ANNOUNCEMENT NUMBER:** 07-39

**JOB TITLE:** Manager of Employee Relations

**JOB CODE:** H6500     **POSITION:** 8813389

**SALARY RANGE:** 84($66,760 - $101,839)    **DATE:** 12/07/07

**JOB LOCATION:** Partlow Developmental Center
1700 University Blvd.
Tuscaloosa, Al. 35406-1730

---

**QUALIFICATIONS:** Graduation from a four-year college or university with a Bachelor's degree in Human Resource Management/Personnel Management, Business Administration, Public Administration, a Social Science or Human Service field. Extensive experience (72 months or more) professional personnel management conducting employee mediation activities and investigations of harassment/discrimination allegations. Must also have experience (24 months or more) in a supervisory capacity.

**KIND OF WORK:** This is highly responsible administrative work in developing, recommending, and implementing policies and procedures relating to employee relations activities for the Alabama Department of Mental Health and Mental Retardation. An employee in this classification works to resolve employee grievances and complaints where initial supervisory process has not been successful; coordinates the department's mediation program by serving as a member of the management negotiation team; advises management on proper interpretation and application of union contracts, and assists with the coordination of Equal Employment Opportunity (EEO) goals designed to encourage diversity within the workforce. Supervision may be exercised over clerical, technical, and/or professional staff in performing these activities. An employee in this classification reports to the Associate Commissioner for Administration, who evaluates work for adherence to program goals and effectiveness of results.

ADMH_04-00241

Announcement #07-39
Manager of Employee Relations

## REQUIRED KNOWLEDGE, SKILLS, AND ABILITIES:

- Knowledge of State and Federal personnel rules and policies governing public agencies
- Knowledge of principles and practices of conflict resolution and management; Thorough knowledge of investigative (including documentation and written reporting), interviewing and counseling techniques
- Ability to manage an alternative dispute resolution program
- Ability to mediate disputes and identify acceptable alternative solutions
- Ability to interpret state and federal rules and regulations
- Ability to maintain confidentiality of sensitive information
- Ability to communicate and convey ideas and support conclusions and recommendations in an effective manner both orally and in writing.
- Ability to investigate and analyze factual information, document and report findings and recommend alternative solutions.
- Ability to meet and work effectively with departmental officials, employees, administrative officials, labor union, employee groups, and the general public

**METHOD OF SELECTION:** Applicants will be rated on the basis of an evaluation of their education, training, and experience and should provide adequate work history identifying experiences related to the duties and minimum qualifications as above mentioned. All relevant information is subject to verification. *Security Clearances will be conducted on prospective applicants being given serious consideration.*

**HOW TO APPLY:** Use an official Application for Professional Employment (Exempt Classification) which may be obtained from this office, any Department of Mental Health/Retardation office or visit the website at: **www.mh.alabama.gov** work experience detailed on the application form will be considered. Additional sheets, if needed, should be in the same format as the application. Resumes will not be accepted in lieu of an official application. Applications should be returned to: *HUMAN RESOURCE MANAGEMENT, DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION, P.O. BOX 301410 RSA UNION BUILDING, 100 NORTH UNION STREET, MONTGOMERY, ALA. 36130.*

COPIES OF LICENSE/CERTIFICATIONS SHOULD BE FORWARDED WITH YOUR APPLICATION OR FURNISHED DURING INTERVIEW. *AN OFFICIAL COPY OF ACADEMIC TRANSCRIPTS IS REQUIRED AND MUST BE FORWARDED BY THE COLLEGE OR UNIVERSITY TO THE PERSONNEL DEPARTMENT AT THE ABOVE ADDRESS.*

*DEADLINE FOR RECEIVING APPLICATIONS:*     *JANUARY 4, 2008*

ADMH_04-00242

# INTERVIEW SCHEDULE

## Manager of Employee Relations (#07-39)

### Thursday May 1st and Friday May 2nd, 2008
### Bryce Hospital
### Tuscaloosa

**Panelists:** Mr. Herb Pauley, Mr. Richard Cosby, Ph.D., Mr. Joey Kreauter, Ms. Pat Martin, and Ms. Barbara V. Spencer, Ph.D.

| Thursday May 1st | | | Friday May 2nd | |
|---|---|---|---|---|
| 9:30   am | Phillip Herron | | 9:30    am | David Huddleston |
| 10:15 am | Henry Ervin | | 10:15   am | Shirley Davis |
| 11:00 am | Greg Dreveny | | 11:00   am | Jeffery Evans |
| | Break for Lunch | | | Break for Lunch |
| 1:30 pm | Tim Hicks (cancelled) | | 1:30    pm | Tonya Neal |

ADMH_04-00252

## QUESTIONS FOR
## MANAGER OF EMPLOYEE RELATIONS
### #07-39

1) We are the Alabama Department of Mental Health and Mental Retardation. From what you know about our department, the type of services that we render and the clientele that we serve, share with us your understanding of a Manager of Employee Relations  B) Why are you interested in this position?

2) What do you see as key competencies needed in your current position and how could you exercise them in this position?

3) Our Department is unique in that it employs both merit and exempt employees. Can you discuss the extent of your knowledge of Personnel rules and regulations and how they may differ under the merit -vs- exempt system as it addresses the following areas:
   - ➢ Progressive discipline
   - ➢ Due process
   - ➢ Employee complaint procedures
   - ➢ Sexual harassment

4) A major portion of this job is to provide counsel and direction to management and personnel in the process of resolving conflicts, problems, and grievances, can you share a situation where you had to convince top management regarding a decision which was unpopular with employees?  And if so, how did you handle it?

5) There are some obvious differences from the standpoint of working for public -- vs- private entities, can you share some similarities and differences that affect state and federal laws and regulations as they pertain to Human resource management.

6) *Mediation* and *negotiation* are two key terms which help to define the Manager of Employee Relations position for which you are applying.  Share with us what experience you have had in negotiating contracts and working with labor unions.

7) The ability to quickly diffuse even the most volatile situation is critical.  Can you describe an incident which challenged you the most as you intervened between two or more opposing parties, and what was the outcome?

8) Tell us about your management style and how many employees you have been responsible for supervising and the length of time you supervised them.

9) Give us an example of a time when an employee would not do what you asked them to do, and what did you do to elicit their cooperation?

ADMH_04-00263

10) Tell us how you would handle a situation like this if you were faced with it: "An angry employee has just stormed into your office because they are extremely upset with their performance evaluation. As a matter of fact it is significantly lower than the previous year and as a result this employee will not be eligible to receive any increase in pay because of his/her score. He/She has demanded that you put him/her on top priority. You are in the middle of a major project for the Associate Commissioner and really do not have time to accommodate them. How do you handle a situation like this?

11) Give us an example of a time when you thought you had "it all nailed down" but you missed an important detail which fell through the cracks. How did you handle this situation?

12) Can you give an example of a time when you conducted a hostile work investigation and it did not result in better working conditions and what would you have done differently?

13) Your role as Manager of Employee Relations requires that you be a member of the management negotiation team. Tell us about a time where you disagreed with the objectives or direction of a team you were on, and how did you handle the situation.

14) Show the candidate a list of essential job functions and ask whether or not accommodations are needed.

15) It is the policy of the department to check with your current and two previous working supervisors, would you have any objections to us doing that.

16) Have you submitted required transcripts to the HR Office?

17) If you were selected to fill this position, what would be your minimum acceptable salary? And when would you be able to start?

Manager of Employee Relations    5/1/08 and 5/2/08

| Rater | Spencer | Pauley | Kreauter | Martin | Cosby | Avg |
|---|---|---|---|---|---|---|
| | | | | | | |
| Applicants | | | | | | |
| Phillip Herron | 2 | 18 | 13 | 0 | 15 | 9.6 |
| Henry Ervin | 33 | 27 | 22 | 33 | 29 | 28.8 |
| Greg Dreveny | 13 | 17 | 8 | 31 | 18 | 17.4 |
| David Huddleston | 27 | 25 | 20 | 21 | 23 | 23.2 |
| Shirley Davis | 8 | 19 | 14 | 29 | 15 | 17.0 |
| Jeffrey Evans | 6 | 26 | 15 | 30 | 16 | 18.6 |
| Tonya Neal | 19 | 18 | 6 | 7 | 15 | 13.0 |
| | | | | | | |
| | | | | | | |
| Tim Hicks(Withdrew) | | | | | | |
| | | | | | | |
| Ranking of Applicants based on scores | | | | | | |
| Henry Ervin | 28.8 | | | | | |
| David Huddleston | 23.2 | | | | | |
| Jeffrey Evans | 18.6 | | | | | |
| Greg Dreveny | 17.4 | | | | | |
| Shirley Davis | 17.0 | | | | | |
| Tonya Neal | 13.0 | | | | | |
| Phillip Herron | 9.6 | | | | | |

ADMH_04-00344



STATE OF ALABAMA

**DEPARTMENT OF MENTAL HEALTH
AND MENTAL RETARDATION**

RSA UNION BUILDING

100 N. UNION STREET
POST OFFICE BOX 301410
MONTGOMERY, ALABAMA 36130-1410



BOB RILEY
GOVERNOR

JOHN M. HOUSTON
COMMISSIONER

May 23, 2008

Mr. Henry E. Ervin
1600 Wakefield Drive
Tuscaloosa, AL. 35405

Dear Henry:

This letter is to confirm your appointment as Manager of Employee Relations with the Alabama Department of Mental Health and Mental Retardation effective July 1, 2008.

Because this is a voluntary demotion, your pay range will be reduced to Range 84 step 18 ($4243.30 semi-monthly and $101,839.20 annually). In accordance with Departmental Personnel rules and regulations, you will be required to serve a minimum of six months in a working test period in your new classification.

Congratulations on your appointment. It will be a pleasure working with you in this capacity. I am confident that you will demonstrate the same dedication and leadership as you have always shown.

Sincerely,

David L. Bennett
Associate Commissioner
For Administration

DLB/mbb

cc:    Employee File
       Commissioner John Houston

ADMH_04-00347