IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOAN FAULK OWENS and KAREN LYNN HUBBARD, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) CASE NO- 2:07-cv-650 ) |
| STATE OF ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION; JOHN HOUSTON; OTHA DILLIHAY; HENRY R. ERVIN; and MARILYN BENSON, | ) ) ) ) ) ) |
| Defendants. | ) |

## MOTION TO STRIKE THE AFFIDAVIT OF EMMETT POUNDSTONE

COME NOW the Plaintiffs, Joan Owens and Lynn Hubbard, and move the Court to Strike the Affidavit of Emmett Poundstone, Defendants' Exhibit 56, contained in Document 56 filed in regards to the Defendants' Response to Plaintiffs' Memorandum Brief and Opposition to Defendants' Motion for Summary Judgment, and in support hereof state as follows:

1.   The Affidavit of Emmett Poundstone is due to be struck on the grounds that it is based substantially and/or entirely on legal conclusions, seeks to impeach the testimony of the Defendants, is inadmissible under the Federal Rules of Evidence, and seeks to introduce expert testimony from a witness whose identity and opinions have not been disclosed as required by Section 8 of the Court's Uniform Scheduling Order entered on or about October 12, 2007.

2.   Poundstone's Affidavit is marked as Defendant's Exhibit 56 and is contained in document number 56 filed by Defendants on August 5, 2008. Poundstone begins his affidavit by setting forth his legal education and legal experience. Poundstone states that he is a graduate of the

1

University of Alabama School of Law and that he has been a licensed practicing lawyer since 1973. According to Poundstone: "I maintain my law license and still practice law on behalf of my current employer, Southeastern Psychiatric Management, Inc." (Defendant's Exhibit 56 at p. 1).

    3.    Poundstone then spends the remainder of his affidavit identifying laws, regulations and lawsuits allegedly applicable to the Alabama Department of Mental Health & Mental Retardation ("the Department") and the Department's interpretation and application of such laws. Specifically, Poundstone's Affidavit states as follows:

| | |
|---|---|
| Page 3: | "I am knowledgeable concerning those laws . . . and I am aware of and know the interpretation by the ADMH of those laws." |
| Page 3 | "During and in the course of my work with the ADMH, I have closely worked with these laws." |
| Page 4 | "At all times during my involvement with the Department, the cited provisions have been construed, interpreted and acted upon ADMH as follows . . . ." |
| Page 4 | "ADMH has interpreted the statutory provisions . . . ." |
| Page 4-5 | Poundstone discusses various sections of the Alabama Code and litigation referenced as <u>Wyatt v. Stickney</u> and <u>United States of America, by John N. Mitchell, Attorney General v. John S. Frazer, et al.</u> |
| Page 5 | "The interpretation by the ADMH has been that the Commissioner has the authority to . . . ." |
| Page 5 | "The Commissioner has the right, power and authority to . . . ." |
| Page 6 | "The Department has exercised good faith in . . . ." |

| | |
|---|---|
| Page 6 | "The above-referenced interpretations are the interpretations of the ADMH . . .." |
| Page 6 | "The ADMH is not in any way subject to the rules and regulations of . . .." |
| Page 6 | "Those rules, regulations and policies do not change the statutory law in any way." |
| Page 6 | "The Commissioner of the Alabama Department of Mental Health and Mental Retardation is given broad powers . . .." |
| Page 7 | "The Commissioner has sole authority of . . .." |
| Page 8 | Discusses Vaughn v. Shannon, 758 F. 2d 1535 (11th Cir. 1985), and its alleged facts and holding.[1] |

---

[1] Vaughn involved a procedural due process claim where an employee filed suit regarding his reassignment within the Department. The Court held that the Plaintiff had no property interest in his position and therefore could not claim a procedural due process violation for his reassignment. 758 F. 2d at 1537. However, in Shows v. Morgan, 40 F. Supp. 2d 1345, 1357 (M.D. Ala. 1999), this Court recognized:

> [U]nlike a procedural due-process claim, an equal-protection claim may assert injury to, not only [plaintiff employee's] interest in continued employment, but also the terms and conditions of that employment, and his prospects for future employment. It is immaterial that [plaintiff] did not have a constitutionally protected property interest in his position as Acting Police Chief of the Town of Hayneville. The Constitution protects his right to be free from purposeful, race-based discrimination on the part of a prospective employer.

Moreover, a property interest for purposes of substantive due process "exists if an employee has 'an individual entitlement grounded in state law, which cannot be removed except 'for cause,'" and where there is a "'mutually explicit understanding' with the employer that 'supports[s] a claim of entitlement.'" Id. at 1355. Based upon the evidence of record in this case and as further referenced herein and in their Memorandum Brief, Plaintiffs contend that their Fourteenth Amendment claim is based on a mutual understanding with all Defendants regarding their employment that Plaintiffs would be free from racial discrimination, favoritism, or preferential treatment regarding employment and advancement opportunities within the Department.

4. Poundstone's Affidavit is due to be struck because it is almost entirely composed of inadmissible legal opinions and conclusions which invade the province of the Court. In Avirgan v. Hull, 932 F. 2d 1572, 1577 (11th Cir. 1991), the Eleventh Circuit stated:

> A nonmoving party, opposing a motion for summary judgment supported by affidavits cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial. The evidence cannot consist of conclusory allegations or legal conclusions.

(citations omitted).

5. The evidentiary inadmissibility of legal opinions and conclusions was discussed in detail by the First Circuit Court of Appeals in Nieves-Villanueva v. Soto-Rivera, 133 F. 3d 92 (1st Cir. 1997), which stated:

> It is black-letter law that "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." . . . At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony, and we now join them as to the general rule.
>
> In our legal system, purely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge. Accordingly, expert testimony on such purely legal issues is rarely admissible. As the Second Circuit has noted, "The danger is that the jury may think that the 'expert' in the particular branch of the law knows more than the judge - surely an impermissible inference in our system of law."
>
> . . .
>
> Because the jury does not decide such pure questions of law, such testimony is not helpful to the jury and so does not fall within the literal terms of Fed. R. Evid. 702, which allows expert testimony "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.. . ." As the D.C. Circuit noted, "Expert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect.. . ." Burkhart, 112 F. 3d at 1212; see also Aguilar, 966 F. 2d 447 (expert legal opinion does not assist the factfinder under Rule 702). This is because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial. See Burkhart, 112 F. 3d at 1213 ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant

> legal standards."); 7 *Wigmore on Evidence* § 1952 (Chadbourne rev. 1978) ("It is not the common knowledge of the jury which renders the witness' opinion unnecessary, but the special legal knowledge of the judge."
>
> Similarly, Fed. R.Evid. 704(a), which removes the common-law bar on "otherwise admissible" testimony that "embraces an ultimate issue to be decided by the trier of fact," does not vitiate the rule against expert opinion on questions of law. . . . However, questions of law are not "to be decided by the trier of fact"; rather it is for the judge, not the lawyers or the witnesses, to inform the jury of the law applicable in the case and to decide any purely legal issue.

133 F. 3d at 99-100 (citations omitted in part).

6. The Plaintiffs have cited existing sections of the Alabama Administrative Code concerning the employment rules and regulations of the Department. For example, ALABAMA ADMINISTRATIVE CODE § 580-6-35.01 concerning the Department states:

> Classification pay plans for all positions and classified services within the Department of Mental Health and Mental Retardation shall be maintained in accordance with the State Merit System Act; ***therefore, the Department of Mental Health and Mental Retardation is hereby adopting by reference the standards of State Personnel referenced in the State Merit System Act***.

(emphasis added). Commissioner Houston has testified that the Department has established its own administrative guidelines governing the selection for exempt employees.

> Q.   Section 580-6-36-.02 states that the Department of Mental Health and Mental Retardation shall establish and promulgate guidelines governing the selection of exempt employees. Do you see that sentence?
>
> . . .
>
> A.   The department shall establish and promulgate such guidelines, yes.
>
> Q.   And has the department established and promulgated such guidelines?
>
> A.   Yes.

...

(Exhibit 111, Deposition of John Houston, p. 70, lines 14 through 19, p. 71, lines 5 through 9).[2]

    7.    Under the State Merit System Act, positions that are similar with respect to difficulty, responsibility, and character of work, which require generally the same kind and amount of training and expertise for proper performance, and merit approximately equal pay are allocated to the same class. ALA. ADMIN. CODE § 670-x-7-.04. The Defendants have testified that the Department of Mental Health uses its own classification system that classifies positions with respect to the difficulty, responsibility, character of work, and training and experience required for the position. Specifically, Defendant Otha Dillihay testified as follows:

> Q. Let me show you Personnel Manager III that I gave you to look at. Do you still have that in front of you?
>
> A. Yes.
>
> Q. What exhibit number is that?
>
> A. Twenty-four (24).
>
> Q. Do you see up at the top it says range 82?
>
> A. Yes.
>
> Q. What does that mean?
>
> A. ***That is the range that's been associated with that position for compensation and classification.***
>
> Q. Positions in the same classification, do they receive the same compensation? How does that work?
>
> A. Every position has a position number, a classification number and a compensation associated with it.. . .

---

[2] All exhibits referred to herein, except for Plaintiffs' Exhibit 122 attached hereto, were filed with the Court in support of Plaintiffs' Memorandum Brief in Opposition to Defendants' Motion for Summary Judgment.

Q. Why does the classification system work, could you educate me on that, what that means?

A. What does the classification system do?

Q. Yes, sir.

A. You have a requisite job that is to perform certain duties. That position is classified, is given a range and compensation level.

Q. Do you classify jobs based upon the nature of the duties that they perform? In other words, jobs that where you perform similar duties to other jobs would all be in one classification?

A. Generally that is a good rule of thumb.

. . .

Q. . . . Does the classification system, there are compensation ranges in the classification system, correct?

A. Yes.

Q. Does the compensation correlate to the difficulty, complexity or demands of a job?

A. I don't know if you say that as the correlation. Compensation relates to the classification of the job. So the job is classified based on what it does and then compensation is established for it.

Q. But in establishing compensation there has to be some correlation to what the job does, correct?

A. Yes, sir.

Q. Like you wouldn't pay a secretary more than you might pay the in-house lawyer, right? There is a correlation between the - - -

A. Yes.

Q. - - - the nature of the work that they do, the complexity of the work that they do?

A. Yes.

> Q. And the skills that have to be employed, correct?
>
> A. Yes.
>
> . . .
>
> Q. . . . But generally there is a correlation then in compensation with the complexity, the demands, the nature of the work performed, correct?
>
> A. Yes, sir.
>
> Q. There is also a correlation between the qualifications for a job and the nature of that job, i.e. the complexity, the skills required, the demands, correct?
>
> A. Yes.

(Exhibit 110, Exhibit Deposition of Otha Dillihay, p. 272 line 17 through p. 275, line 13) (emphasis added).

8. There are positions within the Department that are filled solely by appointment. For example, Defendant Houston, who is a career employee of the Department, was appointed Commissioner by Governor Bob Riley. (Exhibit 111, Deposition of John Houston, p. 6, lines 15 through 22; p. 22, lines 2 through 5). The Associate Commissioner positions, one of which was once held by Defendant Dillihay, are appointed positions filled by the Commissioner. (Exhibit 111, Deposition of John Houston, p. 18, line 15 through p. 19, line 1). However, other positions in the Department are either merit positions, or exempt positions established under the Department's own classification system and subject to open and competitive employment.

9. For example, § 580-6-36-.05 of the ALA. ADMIN. CODE concerning the Department provides that the Department will employ individuals to exempt positions only through an open and competitive process. Defendant Houston testified that this indeed is the policy of the Department

and that the position of Departmental Assistant Personnel Manager currently held by Defendant Benson was to be filled by open and competitive employment.

> Q. If you'll look at Section 560-6-36-.05 where it says exempt selection. I'm going to read the first sentence. The Department of Mental Health, Mental Retardation will employ individuals to exempt positions only through an open and competitive process. Did I read that correctly?
>
> A. Yes.
>
> Q. Is that the policy and practice of the Alabama Department of Mental Health?
>
> A. It is the common practice of the Department of Mental Health.
>
> . . .
>
> Q. Was the job of Assistant Department Personnel Manager filled through open and competitive process?
>
> A. The assistant personnel manager, yes.
>
> Q. That being the position held by Marilyn Benson?
>
> A. That's correct.
>
> Q. Was the job created to be filled by open and competitive process?
>
> A. That was always the understanding that I had.
>
> . . .
>
> Q. The position of Departmental Assistant Personnel Manager in central personnel, is that a position where the employee would serve at the pleasure of the personnel manger?
>
> A. In the sense that we used that, no.
>
> Q. And in the sense that we are using it - - because I think you and I are talking about the same thing - - you have to have open competition for that position; correct?
>
> A. That's how it was handled, yes.

9

> . . .
>
> Q.   And that is unlike the position of either commissioner or associate commissioner in that the - - well, in the case of associate commissioner, you don't have to accept applications. You can already have somebody in mind and appoint them to that position; correct?
>
> A.   That's correct.

(Deposition of John Houston, p. 81, line 15 through p. 82, line 3; p. 83, line 19 through p. 84, line 6; p. 68 lines 13 through 23; p. 69, lines 13 through 23).

10.   Similarly, the State Merit System prohibits discrimination against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action because of race, sex, national origin, age, handicap or any other non-merit factor. (ALA. ADMIN. CODE § 670-x-4-.01)  Again, Defendants testified that the Department has similar requirements (see e.g., Plaintiffs' Exhibits 15, 16, 105) and that it would violate the Department's rules to preselect or to provide an employee a competitive advantage in the hiring process.  Commissioner Houston testified:

> Q.   Is it your practice or policy to preselect employees for available exempt positions?
>
> A.   No.
>
> . . .
>
> Q.   And your signature is also on the policy marked Plaintiffs' Exhibit 15 [providing that the Department will recruit, employ, promote, and conduct all administrative practices without regard to race, religion, national origin, etc.]; correct?
>
> A.   It's on all the policies.
>
> . . .
>
> Q.   And does your signature reflect that you approved that policy?

> A. That's correct.
>
> Q. And was it the policy of the Department of Mental Health in 2004, 2005 and 2006 that employees of the department would not be subjected to any form of discrimination or favoritism?
>
> A. Correct.
>
> Q. If the job of assistant personnel - - department personnel manager was created for Marilyn Benson, would that violate any one of the policies we've just discussed?
>
> A. I would think so. That's a hypothetical. Yes.
>
> Q. And if the qualifications and/or specifications for the job of Assistant Departmental Personnel Manager were formulated especially for Marilyn Benson, that, too, would violate the policies we've just discussed; correct?
>
> . . .
>
> A. . . . [I]f there were a preconceived notion to bypass the regular hiring practices to place someone in - - more favorably in that position, then that would be a violation of this policy.
>
> Q. And my clients are alleging - - these are their allegations - - that the qualifications and specifications for the job held by Marilyn Benson, the Departmental Assistant Personnel Manager, were specifically designed for her. Those are their allegations. Now, if those allegations were true, would that violate the policies we've just discussed?
>
> . . .
>
> A. Hypothetically, if they were designed for a particular individual to give them a competitive edge or with the intent to bypass or ignore the process, than that would be a violation of policy.

(Deposition of John Houston, (Deposition of John Houston, p. 58 lines 7 through 9; p. 100, lines 8 through 10; p. 100, line 14 through p. 101, line 11; p. 101, line 17 through p. 102, line 7; p. 102, lines 12 through 16).

11. In offering legal opinions and conclusions, Poundstone's Affidavit seeks to impeach the testimony of the Defendants regarding the Department's employment related rules and regulations discussed above. For example, Poundstone's statement on page 6 of his Affidavit, that "exempt employees are the sole province of the Commissioner," directly contradicts the testimony of Commissioner Houston. According to Houston, the Department, and he personally, have adopted rules and regulations governing employment matters within the Department and, pursuant to such rules and regulations, the Department cannot preselect employees for competitive positions and cannot design jobs around employees or to give select employees a competitive advantage. Therefore, Poundstone's impeachment is improper. As held by the Seventh Circuit in United States v. Kane, 944 F.2d 1406, 1411 (7th Cir. 1991):

> It is an abuse of Rule 607 for the prosecution to call a witness from which it expects no useful evidence:
>
>> just so it [can] introduce hearsay evidence against the defendant in the hope that the jury [will] miss the subtle distinction between impeachment and substantive evidence - or, if it [doesn't] miss it, [will] ignore it.
>
> United States v. Webster, 734 F. 2d 1191, 1192 (7th Cir. 1984). Impeachment of one's own witness cannot be permitted where employed as a mere subterfuge to present to the jury evidence not otherwise admissible. United States v. Morlang, 531 F. 2d 183, 190 (4th Cir. 1975).

12. So to in this case, Defendants have introduced the legal opinions and conclusions of Poundstone, which are clearly inadmissible, to obscure, confuse or otherwise minimize the admissions of the Defendants and especially the admission of Commissioner Houston. According to Commissioner Houston, creating the Assistant Departmental Personnel Manager position for and around Benson, or to give her a competitive advantage, as a result of racial motivation or other

preference, is a violation of the Department's rules, regulations and policies. Thus, Poundstone's Affidavit is an abuse of Rule 607 and a subterfuge.

13.     Accordingly, Poundstone's Affidavit regarding the law and legal interpretations concerning the employment authority and practices of the Department are inadmissable legal opinions and conclusions, and improper impeachment of the Defendants' own testimony. Thus, Poundstone's Affidavit is inadmissible as a matter of law and should be struck in its entirety.

14.     Furthermore, Poundstone's Affidavit fails to lay a predicate for his testimony. According to Poundstone he retired from the Department in 1997, approximately seven (7) to eight (8) years prior to the events underlying the Plaintiffs' Complaint in 2005 and 2006. Poundstone does not state that he has any personnel knowledge of the events underlying the Complaint or the acts or omissions of the Department and Defendants with respect to the Plaintiffs' claims. Moreover, Commissioner Houston was not appointed Interim Acting Commissioner of the Department by Governor Riley until February 2005, seven years after Poundstone's retirement. Thus, Poundstone's Affidavit fails to establish a proper predicate that he is knowledgeable of the Department's or Commissioner Houston's employment related rules, regulations, policies, acts, etc. during the time of the events underlying the Plaintiffs' claims.

15.     In addition, to the extent that Poundstone's Affidavit is allegedly offered as opinion testimony by a lay witness, a lay witness cannot give testimony based on "scientific, technical or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Poundstone's Affidavit is clearly based on his alleged legal opinions and conclusions arising from his alleged legal knowledge concerning events of which he has no first-hand knowledge. Thus, Poundstone is not a law witness within Rule 701.

16.     Furthermore, to the extent that the Affidavit testimony is expert testimony pursuant to Rule 702, the Defendants have never identified Emmett Poundstone as an expert witness as required by the Court's Uniform Scheduling Order. Pursuant to Section 8 of the Court's Uniform Scheduling Order, the Defendants were obligated to identify any person who would be used at trial to present evidence under Rules 701, 702, 703 and 704, on or before May 15, 2008. The Defendants did not identify Emmett Poundstone but, instead identified Dr. Maury A. Buster, whose Affidavit has not been offered in support of the Defendants' Motion for Summary Judgment. (See Exhibit 122 attached hereto). Thus, Poundstone's Affidavit is prejudicial to the Plaintiffs since they have not had an opportunity to cross-examine Poundstone on his opinions.[3]

17.     Accordingly, Poundstone's Affidavit is untimely and inadmissible as set forth herein.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs move to strike the Affidavit of Emmett Poundstone as set forth above and request such relief from the Court as they are due and entitled.

---

[3] In addition to Poundstone's disclosure violating the Court's Uniform Scheduling Order, Document Numbers 56, 57 and 58, were all filed in violation of the Court's Order concerning summary judgment. Specifically, on July 2, 2008, the Court entered an Order (document 43) setting forth scheduling deadlines regarding Defendants' Motion for Summary Judgment. According to the Order, the Plaintiffs had until July 28, 2008, to respond to the Defendants' Motion for Summary Judgment and the Defendants had until August 4, 2008 to submit their reply. The Defendants' Response to Plaintiffs' Memorandum Brief in Opposition to Defendants' Motion for Summary Judgment was filed at 11:59 p.m. on August 4, 2008. Documents Numbered 56, 57 and 58, were all filed on August 5, 2008. The Affidavit of Emmett Poundstone is contained in Document Number 56. Accordingly, based upon the Court's Order, Documents 56, 57, and 58 are all untimely and the Defendants have not offered any excusable neglect for failing to file the documents on August 4 as required by the Court's Order. Thus, Document Numbers 56, 57, and 58 are subject to be struck by the Court *sua sponte*.

Respectfully submitted this the 7th day of August, 2008.

    s/J. Flynn Mozingo
J. Flynn Mozingo (MOZ003)
Attorney for Plaintiffs
Melton, Espy & Williams, P.C.
P. O. Drawer 5130
Montgomery, AL   36103-5130
Telephone:    (334) 263-6621
Facsimile:    (334) 263-7525
fmozingo@mewlegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have filed the foregoing electronically with Clerk of the Court using the ECF/CM system and a copy of the foregoing will be served on the below listed counsel of record via such system on this the 7th  day of August, 2008:

| | |
|---|---|
| H.E. NIX, JR. | COURTNEY W. TARVER |
| Nix, Holtsford, Gilliland, | Deputy Atty. General and Gen. Counsel |
| Higgins & Hitson, P.C. | Bureau of Legal Services |
| Post Office Box 4128 | ADMH/MR |
| Montgomery, AL 36103-4128 | RSA Union Building |
| | 100 N. Union Street |
| | Montgomery, AL 36130 |

  s/J. Flynn Mozingo
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOAN FAULK OWENS and<br>KAREN LYNN HUBBARD,<br><br>    Plaintiffs,<br><br>v.<br><br>STATE OF ALABAMA DEPT. OF<br>MENTAL HEALTH AND MENTAL<br>RETARDATION, *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   2:07-cv-650<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DESIGNATION OF EXPERT WITNESSES

COME NOW the Defendants and designate the following individual or individuals as potential or possible expert witness/es in this case. In view of the fact that the Plaintiffs have not designated any experts, the named individual or individuals may not be needed or used. However, in an abundance of caution, these Defendants identify the following:

    1.    Maury A. Buster

        (1)    Dr. Buster is an employee of the Alabama Personnel Department, State of Alabama. Dr. Buster has not performed any analysis of facts in this case and currently has not formed any opinions or written any report regarding this case. Dr. Buster does know that this case is pending.

        (2)    Attached to this designation is a copy of Dr. Buster's resume which includes facts about Dr. Buster which relate to his fields of expertise and his qualifications in these fields. This resume includes facts about Dr. Buster's education, experience, professional memberships, publications, presentations, professional activities and consulting. Dr. Buster has previously given testimony in or related to lawsuits, including one or more of the lawsuits listed in the consulting section of the resume. Dr. Buster is not being compensated. If Dr. Buster reviews and analyzes data or information and forms opinions in this

Plaintiffs' Exhibit 122

        case as a consultant to the instant Defendants, he will do so as an employee of the State and will not receive any additional compensation. If Dr. Buster gives a deposition or other testimony by way of initiation of the Plaintiffs in any form, he must charge an hourly rate to the Plaintiffs plus expenses, if any.

    (3)    If it becomes necessary for Dr. Buster to consult with these Defendants and express any opinions regarding the case that will be used by these Defendants at a trial in this case, this Designation shall be appropriately supplemented as per Rule 26 (a)(2)(D) FRCP. Discovery in this case has not proceeded very far. These Defendants needed and were kindly allowed additional time to respond to the Plaintiffs' written discovery. These Defendants on March 27, 2008 submitted written discovery to the Plaintiffs and responses have not yet been received. The parties have been and are currently trying to establish dates for an initial round of depositions which will be depositions of the parties. No depositions have been taken at this time. If these Defendants need to seek the expert opinions of Dr. Buster about issues that arise in this matter, these Defendants will supplement this Designation.

2.    Rule 701 Testimony

    (1)    These Defendants are unaware at this time of any Rule 701 testimony that may be necessary in the trial of this case. This Designation will be supplemented as appropriate pursuant to Rule 26(a)(2)(D) FRCP.

Respectfully submitted on this the _15th_ day of May, 2008.

                                                  H.E.Nix, Jr. (ASB-6988-X54H)
                                                  Brandy F. Price (ASB-4691-A63P)
                                                  Counsel for the Defendants

OF COUNSEL:
*Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.*
Post Office Box 4128
Montgomery, Alabama 36103-4128
(334) 215-8585
(334) 215-7101 facsimile
cnix@nixholtsford.com

bprice@nixholtsford.com

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing instrument has been served (a) through the Court's e-filing system; (b) by placing a copy of same in the United States Mail, postage prepaid and properly addressed; and/or (c) by personal/firm e-mail to

| | |
|---|---|
| J. Flynn Mozingo<br>*Melton, Espy & Williams, P.C.*<br>P. O. Drawer 5130<br>Montgomery, AL 36103-5130 | Courtney W. Tarver, Esq.<br>Deputy Atty. General and Gen. Counsel<br>Bureau of Legal Services<br>Dept. of Mental Health and Mental Retardation<br>RSA Union Building<br>100 N. Union Street<br>Montgomery, AL 36130-1410 |

on this the 15th day of May, 2008.

_____
OF COUNSEL