IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOAN FAULK OWENS and KAREN LYNN HUBBARD, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 2:07-cv-650 ) |
| STATE OF ALABAMA DEPT. OF MENTAL HEALTH AND MENTAL RETARDATION, *et al.*, | ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION TO STRIKE
THE DEPOSITION TESTIMONY OF DAVID PETTY**

COME NOW the Defendants herein, by and through counsel, and in reply to the Plaintiffs' Opposition to Defendants' Motion to Strike the Deposition Testimony of David Petty state as follows:

1.  Counsel for the Defendants adamantly deny that the alleged statement or statements were ever made. Of course, the witness, David Petty, cannot actually say with any specificity what was said or when anything was said.

2.  The evidence in this case, which has been presented in the parties' position Briefs on Summary Judgment, deposition testimony and exhibits, is that Otha Dillihay was hired and became Associate Commissioner for Administration and Personnel in 2004. June Lynn was his Administrative Assistant and Advisory Attorney. On July 23, 2005, Mr. Dillihay officially took over the position of the Associate Commissioner of Mental Illness. Ms. Lynn became the acting Commissioner of Administration and Personnel (Defendants'

1

Exhibit 5 to Summary Judgment Brief, Affidavit of June Lynn, page 1, last two lines and page 2, first line.) Ms. Lynn started as the acting Associate Commissioner on July 23, 2005, and at the same time, Mr. Dillihay moved across the building with David Petty to Mental Illness. Commissioner Dillihay was the Associate Commissioner for Mental Illness until November 14, 2005, at which time he returned as Associate Commissioner of Administration and Personnel. (Defendants' Exhibit 5 to Summary Judgment Brief, Affidavit of June Lynn as previously cited.)

3. Mr. Petty confirms that he went with Mr. Dillihay completely to the opposite corner of the building (Plaintiffs' Exhibit "120", Deposition of David Petty, 39:1 through 40:13). Mr. Dillihay and Mr. Petty came back to Administration as of November 14, 2005. Mr. Petty resumed his position at the same desk where he was sitting and Mr. Dillihay resumed his position as Associate Commissioner. Ms. Lynn resumed her position as Assistant to Mr. Dillihay and Advisory Attorney. Therefore, the Plaintiffs' argument that the assertion or assertions had to have occurred prior to July 2005 is totally incorrect. If it is correct that all of these assertions occurred where Mr. Dillihay was speaking with Ms. Lynn or where Mr. Petty was at his desk in the Administration Division, then assertions could have been made after the hiring of Ms. Benson as the Departmental Assistant Personnel Manager. However, Mr. Petty testified as follows:

"Q: The conversations that you heard, were they always between Mr. Dillihay and Ms. Lynn?

A: I would think so. I would say yes. But maybe not exclusively.

Q: Did you hear more than one?

A:      I want to say yes. Maybe not - - Maybe not a conversation between Ms. Lynn and Mr. Dillihay, but I've heard statements and remarks. And other people around, you know - - You've got to remember I'm right outside of these offices." (Plaintiff's Exhibit "120", Deposition of David Petty, 46:17 through 47:4)

Mr. Dillihay and Mr. Petty left the ADMH at approximately the same time which was around February 2007. Therefore, the time frames simply do not match up. Further, Mr. Petty does not know the overall context of the conversation related to the alleged statement. (Plaintiffs' Exhibit "120", Deposition of David Petty, 54:6-11).

      4.      Additionally, the Associate Commissioner for Administration and Personnel at the time the first announcement for this position was released was June Lynn. This first release occurred on September 15, 2005. As per Ms. Lynn's Affidavit (Defendants' Exhibit 5, affidavit of June Lynn, page 2, last paragraph), Ms. Owens went directly to Ms. Lynn, who was acting Director of Administration and Personnel and specifically asked Ms. Lynn to put the substitution clause in the qualification section of the specs so she could apply. Ms. Lynn refused to do this. She indicated that the spec had already been finalized and that she agreed that a college graduate should occupy this position. Therefore, the last person concerning whom these Defendants are aware who had any opportunity to change the specification was June Lynn who is a white female. Any supposed or alleged assertions by Mr. Dillihay, irrespective of when, cannot in any way be related to this case.

      5.      The Plaintiffs cite Federal Rules of Evidence 801(d)(2)(a) and (d) as grounds for the consideration by the Court of Mr. Petty's testimony. However, even if this testimony were relevant, and these Defendants contend that it is not relevant, then Federal Rule of Evidence 403 should prevent the consideration of this testimony by the Court because there is very little in the way of real testimony concerning an assertion or assertions made

by Mr. Dillihay and the testimony is vague in the extreme. See *Thomas v. Clayton County, Georgia,* 94 F.Supp.2d 1330, 1334-35 (N.D. Ga. 2000). The rhetoric spoken by Mr. Petty, while untrue, is inflammatory rhetoric without reference to time or specificity of language. Yet, considering this testimony and inferring by it that Mr. Dillihay had these intentions which would be highly prejudicial to these Defendants.

6. Further, the deposition in this case was first noticed on July 21, 2008. The deposition was taken July 24, 2008. The discovery cutoff in this case was July 29, 2008. When the deposition was noticed, these Defendants had no idea what Mr. Petty would say. These Defendants went into the deposition without any ability to prepare to effectively cross-examine Mr. Petty or confront him as a witness. The idea that trials are held on an adversarial basis and that the parties are allowed a fair opportunity to confront the witnesses against them would be thwarted if Mr. Petty's testimony is allowed in this case. These Defendants did not have any adequate preparation to cross-examine Mr. Petty prior to this discovery deposition.

7. Federal Rules of Evidence 104(a) allows the admissibility of evidence to be determined by the court. The Court is not bound by the rules of evidence in making its determination. Fed. R. Evid. 104(a).

8. Federal Rules of Evidence Rule 701 speaks to the question of lay experts. Mr. Petty has not been listed as a lay expert pursuant to the Court's Scheduling Order. In fact, the Plaintiffs have not listed any expert witnesses. Yet, Mr. Petty is cited in the Plaintiffs' Opposition to have given his opinions with regard to his impression of what Mr. Dillihay meant when he said these things and what his philosophy and attitude were when

4

he said these things, even though Mr. Petty did not know what they were talking about. (Plaintiffs' Exhibit "120", Deposition of David Petty, 54:6-11). These Defendants state that such a statement is inadmissible because it is the classic type of evidence that is prohibited by Rule 701 in the absence of a sufficient predicate which is not established here. The Plaintiffs failed to list Mr. Petty as an expert witness and therefore, Defendants had no notice regarding Mr. Petty's expected testimony.

9. Additionally, even though the Plaintiffs do not cite Rule 803 as an exception, Rule 803 allows a declarant's statement into evidence if it shows the declarant's then existing state of mind, emotions, sensations or physical condition. However, this Rule does not allow for the admission of a statement of belief to prove the fact believed (like a statement that there were too many whites or not enough blacks in management positions.) [Fed. R. Evid. 803(3)].

10. Federal Rules of Evidence 403 permits the exclusion of evidence if its probative value is substantially outweighed by the danger of unfair prejudice. These Defendants plead due process or the failure to be given due process and the failure to truly cross-examine Mr. Petty. Allowing Mr. Petty's deposition into evidence in this case or considering any part of it, would violate these Defendants' due process rights to confrontation of Mr. Petty under just, fair and reasonable circumstances. As a result, the probative value of Mr. Petty's deposition is substantially outweighed by the unfair prejudice Defendants would suffer from the inclusion of this deposition.

11. In the alternative, if the Court believes Mr. Petty's testimony should be admissible as circumstantial evidence, Defendants contend the alleged statement made

by Otha Dillihay should be contstrued as a "stray remark." In their opposition to the Motion to Strike the Deposition Testimony of David Petty, Plaintiffs attempt to avoid acknowledging Mr. Dillihay's alleged statement is a "stray remark" by contending Mr. Dillihay was acting in a supervisory capacity. However, Plaintiffs are simply incorrect in asserting that statements made by a supervisor are admissible as direct evidence. Additional factors come into play when determining whether a statement constitutes direct evidence.

12.    In order to amount to direct evidence, a statement must: (1) be made by a decisionmaker; (2) specifically relate to the challenged employment decision; and (3) reveal blatant discriminatory animus. *Chambers v. Walt Disney World, Co.*, 132 F. Supp.2d 1356, 1364(M.D. Fla. 2001).

13.    Remarks made by non-decisionmakers do not constitute direct evidence of discrimination. *Id.* A "decisionmaker" is defined as a person involved in the challenged decision. *Trotter v. Bd. of Trustees*, 91 F.3d 1449, 1453-54 (11th Cir. 1996). However, the Court has narrowed its definition of a decisionmaker. "The mere fact that a management employee reviewed and evaluated the challenged decision and supplied (favorable or unfavorable) to the final decisionmaker does not elevate that employee to decisionmaker status absent evidence that the employee had authority to overrule the final decision." *Chambers, supra,* at 1364.

In the instant case, Mr. Dillihay would not be considered a "decisionmaker" as defined by the previous cases, since his involvement in the creation of the Departmental Assistant Personnel Manager position was to present Commissioner Houston with the job specification. Commissioner Houston was the only official in MHMR that had the authority

to approve the job specification. Once the job specification was presented, Mr. Dillihay did not have the authority to overrule Commissioner Houston's decision. As to the qualifications for the Departmental Assistant Personnel Manager position, Commissioner Houston stated:

> A: I'm more concerned about– I'm more concerned with the qualifications of the particular positions being appropriate than what might have been included in previous positions or drafts or formulations of job specs over the years. And I felt like having the opportunity to fill new positions in personnel that we would seek the most qualified and most professional folks. And often that includes some sort of threshold of a bachelor's or master's degree. And I felt it was appropriate that that threshold in this case would be a college degree.

(Plaintiffs' Exhibit "111", Deposition of Commissioner Houston, 137:8-20).

It is apparent from Commissioner Houston's testimony that he made the decision in this case and Mr. Dillihay did not. Instead, Mr. Dillihay merely supplied the necessary information for Commissioner Houston to approve the job specification. As a result, Mr. Dillihay cannot be considered to be a decisionmaker and thus his alleged statement would be considered a "stray remark."

14. Next, the decisionmaker's statement must specifically relate to the challenged employment decision. *Burrell v. Board of Trustees of Georgia Military College*, 125 F.3d 1390, 1394 (11th Cir. 1997). Additionally, the requirement ensures temporal proximity to the adverse decision. *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, (11th Cir. 1997).

Here, the Plaintiffs are unable to prove when these alleged statements were made. In the Plaintiffs' response, they contend that Mr. Petty was hired in November 2004. (Plaintiffs' Exhibit "120", Deposition of David Petty, 11:23 through 12:9). Mr. Petty then testified he ceased working for June Lynn once Mr. Dillihay transferred to Associate

Commissioner of the Mental Illness Division. (Plaintiffs' Exhibit "120", Deposition of David Petty, 17:1-10). Mr. Dillihay was transferred on July 23, 2005. (Plaintiffs' Exhibit "110", Deposition of Otha Dillihay, 112:22 through 113:4). As a result of these circumstances, the Plaintiffs contend the alleged statements made by Mr. Dillihay would have occurred sometime between Mr. Petty's hiring and Mr. Dillihay's transfer. (Plaintiffs' Response to Motion to Strike Deposition Testimony of David Petty, p.7, ¶8).

The Plaintiffs are unable to make this assumption. In his deposition, Mr. Petty stated the following:

> Q: How long– When the statement was made, how long was that before you left the department in 2007?
>
> A: I can't answer that because I don't recall the exact date or the time frame that the statement was made. I just know the statement was made.

(Plaintiffs' Exhibit "120", Deposition of David Petty, 23:7-11). Plaintiffs assert these alleged statements must have occurred during the time Mr. Dillihay worked in the Central Personnel Office. However, Mr. Petty could only testify that these alleged statements occurred "just under the time that I was employed there." (Plaintiffs' Exhibit "120", Deposition of David Petty, 41:22-23 through 42:1-5). Mr. Petty was employed at MH/MR from November 2004 until 2007. These alleged statements could have been made two years following the approval of the job specification. As such, Plaintiffs are unable to show the temporal proximity relationship to the challenged employment decision.

15. Finally, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of a [a protected trait]. *Carter v. City of Miami*, 870 F.2d

8

578, 580-581 (11th Cir. 1989). "Evidence that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence." *Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir. 1999).

In his deposition, Mr. Petty admits that he does not even know the context the alleged statement was related to. (Plaintiffs' Exhibit "120", Deposition of David Petty, 54:6-11). The alleged statement or statements can be subjected to several different interpretations. Since the alleged statement can be subjected to more than one interpretation, Plaintiffs are unable to prove the alleged statement or statements reveal a blatant discriminatory animus. As such, Plaintiffs are unable to prove the alleged statements made by Mr. Dillihay constitute direct evidence.

WHEREFORE, these Defendants respectfully request that the Court grant the Defendants' Motion to Strike the Deposition Testimony of David Petty.

/s/H.E. Nix, Jr.
H.E. NIX, JR. (NIX007)
BRANDY F. PRICE (PRI079)
Counsel for Defendants

OF COUNSEL:
*Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.*
P.O. Box 4128
Montgomery, AL 36103-4128
334-215-8585
334-215-7101 - facsimile
cnix@nixholtsford.com
bprice@nixholtsford.com

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing instrument has been served (a) through the Court's e-filing system; (b) by placing a copy of same in the United States Mail, postage prepaid and properly addressed; and/or (c) by e-mail to

| | |
|---|---|
| J. Flynn Mozingo<br>*Melton, Espy & Williams, P.C.*<br>P. O. Drawer 5130<br>Montgomery, AL 36103-5130 | Courtney W. Tarver<br>Deputy Atty. General and Gen. Counsel<br>Bureau of Legal Services<br>Dept. of Mental Health<br> and Mental Retardation<br>RSA Union Building<br>100 N. Union Street<br>Montgomery, AL 36130-1410 |

on this the 18th day of August, 2008.

                                                    /s/H.E. Nix, Jr.
                                                    OF COUNSEL