**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

JOAN FAULK OWENS and KAREN )
LYNN HUBBARD, )
 )
            Plaintiffs, )
 )
v. )                    Civil Action No.  2:07cv650-WHA
 )                                (WO)
STATE OF ALABAMA DEPT. OF )
MENTAL HEALTH AND MENTAL )
RETARDATION; JOHN HOUSTON, etc.; )
OTHA DILLIHAY, etc.; HENRY R. )
ERVIN, etc.; and MARILYN BENSON, etc.,)
 )
 )
            Defendants. )

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #36), filed by

Defendants, the State of Alabama Department of Mental Health and Mental Retardation

("ADMH"), John Houston, Henry Ervin, Otha Dillihay, and Marilyn Benson on June 27, 2008, a

Motion to Strike the Deposition Testimony of David Ross Petty (Doc. #54), Objections and

Motions to Strike contained within the Defendants' Reply brief (Doc. #55),[1] a Motion to Strike

the Affidavit of Emmett Poundstone (Doc. #60) filed by the Plaintiffs, a Motion to Strike

Affidavit of Judith Johnston (Doc. #65) filed by the Defendants, Defendants' Motion for

---

[1]  This Motion to Strike, contained within the Reply brief, is largely unnecessary because it is directed at legal argument.  There is, however, a reference to "favoritism" in the contentions of the Plaintiffs, Doc. # 52 at page 2, which may be an attempt to inject a new theory into the case.  The Amended Complaint in this case identifies only a personnel policy of requiring action without consideration of race, religion, national origin, color, age, sex of disability.  Amended Complaint at page 16.  To the extent that the Plaintiffs' brief references a state policy not identified in the Amended Complaint, and to the extent that the reference to favoritism is an attempt to untimely amend the Amended Complaint, it is due to be STRICKEN.

Extension of Deadline exhibit filing (Doc. #66),[2] and the Defendants' Motion to Amend/Correct Reply to Response to Motion (Doc. #62).[3]

The Plaintiffs, Joan Faulk Owens and Karen Lynn Hubbard, filed a Complaint in this case bringing claims for violation of federal and state law, specifically, claims for discrimination on the basis of race pursuant to Title VII of the Civil Rights Act of 1964, as amended, against the ADMH (Count I) and 42 U.S.C. § 1981 (Count II), violations of equal protection and due process as guaranteed by the United States Constitution against John Houston, Henry Ervin, Otha Dillihay, and Marilyn Benson (Count III), a claim of negligent breach of duty (Count IV), wanton breach of duty (Count V), willful breach of duty (Count VI), intentional interference with contractual and business relations (Count VII), conspiracy (Count VIII), and agency/respondeat superior (Count IX). The individual Defendants are sued in both their individual and official capcities.

For reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II.  <u>SUMMARY JUDGMENT STANDARD</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.

---

[2] This motion concerns exhibits which, while filed immediately after a timely filing, were filed shortly after midnight due to the size of the electronic files.  The motion is due to be GRANTED.

[3]  The Motion to Amend/Correct is due to be DENIED as untimely.

317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. *Chapman v. A1 Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000)(*en banc*).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the nonmovants:

Joan Fault Owens ("Owens") and Karen Lynn Hubbard ("Hubbard") (collectively "the Plaintiffs") are employees of the ADMH. The ADMH is a department of the State of Alabama. The Plaintiffs are employed as Personnel Specialists III in the Central Personnel Office. Both of the Plaintiffs are white and neither Plaintiff has a college degree. Defendant Marilyn Benson ("Benson") is also an employee of the ADMH who, at the time of the employment actions in question, also was employed as a Personnel Specialist III. Benson is African American and has a college degree. Owens, Hubbard, and Benson worked together in the same office. The Plaintiffs contend that they were denied promotion to a newly-created Departmental Assistant Personnel Manager position, which was awarded to Benson, on the basis of their race.

Defendant Otha Dillihay ("Dillihay") is an African American who initially served as Associate Commissioner for Administration and Personnel at ADMH from June 1, 2004 until July 23, 2005. In July 2005 he became the Associate Commissioner of Mental Illness, and then returned to his former position as Associate Commissioner for Administration and Personnel in November 2005. Dillihay no longer works for ADMH, but is instead employed in South Carolina.

Defendant Henry Ervin ("Ervin"), Director of Central Office Personnel, discussed the creation of Departmental Assistant Personnel Manager with Dillihay. This position had at one time been used by the ADMH, but was not longer in use and had to be re-created.

Benson, the African American employee ultimately awarded the position, was asked by

Ervin to do research in order to create the job specifications. Benson Dep. at page 134: 18-23. Benson submitted a draft of the specifications to Ervin. *Id.* at page 146: 20-22. The draft was returned to Benson with changes, including removal of a provision which would allow for the substitution of years of relevant work experience for the required college degree. The specifications also included a preference of master's degree in specified fields of study, as well as work experience in the public sector. *Id.* at page 147: 18-23. ADMH Commissioner John Houston ("Houston") reviewed the specification and approved the position with a requirement of a bachelor's degree without allowance for substitution of years of work experience.

On September 15, 2005, an announcement was sent out for the position of Departmental Assistant Personnel Manager. The announcement listed the qualification of a bachelor's degree in specified areas and did not contain a provision for substitution of work experience for a bachelor's degree. Also listed as qualifications were extensive experience in a management position, with preference toward persons with a master's degree in specified fields of study, work experience in the government/public sector, and work experience in a healthcare setting. A second announcement was made at a later time.

Plaintiff Owens informed June Lynn ("Lynn"), Acting Associate Commissioner, that she intended to apply for the position. Lynn told Owens she could not apply because she did not have a four-year degree from a college or university. Owens requested that a substitution provision be added to the announcement which would allow for substitution of years of work experience for years of education. Other positions with the ADMH had allowed for substitution of years of experience for degree requirements. Lynn told Owens that she could not add a substitution provision.

5

Ervin had all applications for the new position sent to Mike Mathis ("Mathis"), Personnel Director at W.D. Partlow Developmental Center. The following persons of the listed races submitted applications which were graded: Tracey Bailey, white; Benson, African-American; Commie Carter, African American; Danielle Coteat, African American; Jessica Eiland, white. The second announcement generated applications from Chadwick Bivins and Arylin Jenkins, who are both African American. Three applicants, Benson, Commie Carter, and Danielle Coteat, all of whom are African American, were interviewed for the position. The white applicants were not interviewed because they were not qualified for the position. Houston hired Benson as Departmental Assistant Personnel Manager on March 3, 2006.

## IV. <u>DISCUSSION</u>

### <u>Federal Claims</u>

#### A. Parties

The Defendants urge the court to grant summary judgment as to the federal claims brought against the individual defendants in their official capacities as being redundant of the claims against the ADMH, and as to the claims against the individual defendants in their individual capacities as being inappropriate under Title VII and § 1981.

The Plaintiffs do not bring claims against the individual defendants in their individual or official capacities under Title VII (Count I), only against the ADMH.

As to the § 1983 claims against the individual Defendants, the Eleventh Amendment prohibits § 1983 claims against the State of Alabama, including the ADMH, and for money damages against individual defendants in their official capacities. *Cross v. Alabama Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir.1995). The Eleventh

6

Amendment does not bar the Title VII claims against ADMH. *Id.* In addition, the Eleventh

Amendment does not generally prohibit suits against state officials seeking only prospective

injunctive or declaratory relief. *Florida Ass'n of Rehabilitation Facilities, Inc. v. State of Fla.*

*Dept. of Health and Rehabilitative Servs,* 225 F.3d 1208, 1220 (11th Cir. 2000).

Where the individuals are state actors, the § 1981 claims merge into the § 1983 claims.

*See Jett v. Dallas Indep. Sch. District*, 491 U.S. 701, 731, 735 (1989); *Butts v. County of Volusia*,

222 F.3d 891, 893-94 (11th Cir.2000) (holding that in a case involving state actors, there is no

liability under § 1981, and such claims merge into the § 1983 claims). Therefore, the claim in

Count II for race discrimination under § 1981 merges into the equal protection claim asserted in

Count III as a single race discrimination claim under § 1983.

Accordingly, the court will analyze the Title VII claim of both Plaintiffs asserted against

the ADMH only, and the §1983 claims asserted against the individual defendants in their

individual capacities and as asserted against the individual defendants in their official capacities

for prospective injunctive relief only.

> B. Race Discrimination under Title VII and the Equal Protection Clause

> 1. Evidence Identified as Direct Evidence by the Plaintiffs

The Plaintiffs contend that they have direct evidence of intent to discriminate in the form

of testimony of David Petty ("Petty"), a former Administrative Assistant at ADMH. In his

deposition, Petty testified that Dillihay said "something to the effect of this department has so

many white people in power positions, it needs more black people in these positions . . . ."

Plaintiffs' Exhibit 120 at pages 20:22-21:2. Petty stated that he could not testify to specific

instances or certain times or dates, but that the comments occurred on several occasions. *Id.* at

pages 26: 14-27: 1.

The testimony by Petty is the subject of a Motion to Strike, filed by the Defendants, wherein they have moved to strike the deposition testimony of Petty on the basis that it constitutes "stray" remarks. This argument, however, goes not to the admissibility of Petty's testimony, but whether the testimony constitutes direct evidence of discrimination. *See Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir.1998) (stating that stray remarks may "provide circumstantial evidence to support an inference of discrimination.").

In reply to the Plaintiffs' response to the Motion to Strike, the Defendants have asserted for the first time that the evidence should be excluded under Rule 403 as being too vague, and that they have been denied due process because the deposition of Petty was taken only five days before the end of discovery cut-off, and the Defendants were not aware that Petty would testify as he did. The Defendants further contend that Petty's testimony ought not be considered, as it is improper opinion evidence. Given the voluminous filings in this case to date, the court did not ask for additional briefing by the Plaintiffs in response to these arguments.

The court has carefully considered the testimony by Petty. Petty is an employee of the Defendants, testifying to what he personally heard Dillihay, an Associate Commissioner of the ADMH with input into the decision at issue, say. The statements he testified to, viewed in a light most favorable to the Plaintiffs, evidences a desire to employ more African Americans and fewer white persons in management positions with the ADMH. This evidence is probative of intent with regard to the challenged employment action and the court cannot conclude that the testimony is so vague as to require exclusion under Rule 403. The court also concludes that because the Defendants were given the opportunity to cross-examine Petty at the deposition,

there has been no denial of due process.   To the extent that Petty has offered an opinion rather than testifying as to his personal knowledge of Dillihay's comments, the court will not consider the evidence.   The Motion to Strike is, therefore, due to be DENIED.   The court turns, therefore, to the question of whether Petty's testimony should be considered direct evidence of discrimination.

In the context of employment discrimination cases, direct evidence of intent to discriminate is evidence which, if believed, proves the existence of a discriminatory motive without inference, and evidence which merely suggests that the employer acted with a discriminatory motive is circumstantial evidence.   *See, e.g., Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086-87 (11th Cir. 2004); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989); *see also Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir.1999).   Direct evidence of discrimination is evidence which reflects a discriminatory attitude correlating to the discrimination complained of by the employee.   *Wilson*, 376 F.3d at 1086.   "Therefore, remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard*, 161 F.3d at 1330.   Moreover, direct evidence is composed of "only the most blatant remarks, whose intent could be nothing other than to discriminate" on the basis of some impermissible factor.   *Carter*, 870 F.2d at 582.

The Plaintiffs state that Dillihay was directly involved in the creation of the position of Departmental Assistant Personnel Manager and crafted and approved the specification and qualifications for the position along with Ervin and Houston.   The Plaintiffs also state that statements attributed to Dillihay would have been made during the time frame at issue because

9

Petty was hired in November 2004, and Dillihay was transferred in July 2005. The Defendants, however, dispute this timing, stating that Dillihay and Petty left the ADMH in 2007, so that the remarks Petty allegedly overheard could have been made after the decision to hire Benson.

The Plaintiffs cite Eleventh Circuit cases in support of their argument that Dillihay's statements are direct evidence of discrimination, one of which is *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 922 (11th Cir. 1990), in which a statement by a manager involved in filing a new supervisor's position that "if it was his company, he wouldn't hire any black people," was direct evidence of discrimination.

The difficulty in concluding in this case that Dillihay's statements are similar enough to those in *Alton Packaging,* or other cases, to constitute direct evidence is that Dillihay's statement is a step removed from the employment action that the Plaintiffs challenge. This case does not present a traditional employment discrimination challenge wherein a plaintiff applies for a position for which he or she is qualified and is denied that position. In this case, the Plaintiffs contend that the qualification they lacked was only required because the position was created with the intent to exclude the Plaintiffs from applying, because of their race. Dillihay's statement is not direct evidence because it does not speak directly to the challenged action, that is the qualifications for the position, therefore, it requires an inference to prove intent to discriminate with regard to the challenged action. The evidence will, however, be considered as circumstantial evidence of intent.

### 2. Plaintiffs' Circumstantial Evidence of Intent

When analyzing the Plaintiffs' circumstantial evidence of intent to discriminate, the same analysis applies to the Plaintiffs' claims under Title VII and the equal protection clause. *Abel v.*

10

*Dubberly*, 210 F.3d 1334, 1338 & n.3 (11th Cir. 2000) (stating Title VII and § 1983 claims have the same elements). Where, as here, a plaintiff seeks to prove intentional discrimination on the basis of race by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Cmty Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 147 (2000).

Traditionally, a prima facie case of discrimination requires a showing that the plaintiff (1) is a member of a protected class (2) was qualified for the position, (3) applied for the position, (4) was rejected and the employer continued to seek applicants with her qualifications. *Rioux v. City of Atlanta, Ga.,* 520 F.3d 1269, 1276 n.6 (11th Cir. 2008).

The Defendants moved for summary judgment stating that the Plaintiffs failed to establish a claim for race discrimination because they cannot establish a prima facie case. The

Defendants stated that the Plaintiffs cannot demonstrate that they were qualified for the position at issue because they did not have college degrees, and the job requirements included a college degree, with no substitution of experience.   The Defendants further state that there was no adverse employment action because the Plaintiffs could not qualify for the job.  Finally, the Defendants state that the person given the position, Benson, is not similarly-situated, because she has the longest tenure in the Central Personnel Office and has a bachelor's degree and a master's degree.  Of course, all of these contentions revolve around the requirement of a college degree, which is the very action challenged by the Plaintiffs.

The United States Supreme Court and the Eleventh Circuit Court of Appeals have repeatedly emphasized that the requisite showings that make up a prima facie case are not meant to be rigid or inflexible.  *See, e.g., Burdine*, 450 U.S. at 253 n.6;  *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999) (collecting cases).  The Eleventh Circuit has recently reiterated that "[p]resenting a prima facie case is not onerous as it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Rioux,* 520 F.3d at 1275.  The court further explained that a prima facie case can be established even if a plaintiff does not satisfy the traditional elements of the prima facie case where the plaintiff can come "forward with 'other evidence of discrimination.'" *Id.* at 1277 (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997); *Hunter v. Mobis Alabama, LLC*, 559 F. Supp.2d 1247, 1255 (M.D. Ala. 2008); *see also White v. Verizon South, Inc.*, 299 F. Supp. 2d 1235, 1241 (M.D. Ala. 2003).  Accordingly, the court will examine all of the evidence pointed to by the Plaintiffs to determine whether they have come forward with enough "other evidence of discrimination" to meet their burden in establishing a prima facie case.

As discussed previously, the Plaintiffs' theory in this case is that the position of Department Assistant Personnel Manager was designed so that Benson would be hired into that position, and that the position was designed to be given to Benson, rather than the Plaintiffs who worked with Benson, because she is African American and the Plaintiffs are white.

To demonstrate that the position was designed for Benson, the Plaintiffs have pointed to the circumstances of the creation of the position. The evidence of Benson's involvement includes testimony that Benson was asked by Ervin to do research in order to create the job specification. Plaintiffs' Exhibit 109 at page 134: 18-23. Plaintiffs also submit evidence that Benson submitted a draft of the specifications to Ervin, *id.* at page 146: 20-22, and that when the draft of the specifications was returned to Benson, the substitution clause was removed. *Id.* at page 147: 18-23.

The Plaintiffs also point to evidence that the job specifications mirrored Benson's qualifications. The Plaintiffs point first to the fact that Benson had a college degree, and that the Plaintiffs do not. The Plaintiffs also point out that one of the knowledge, skills, and abilities outlined in the job specifications is the ability to research grants and funding sources. The Plaintiffs state that Benson has that ability, because she worked as a planning specialist for ADMH, but that she has never researched or written grants while employed in the Central Office, and that there is no need for her to because ADMH has an Office of Policy and Planning. Plaintiffs' Exhibit 109 at page 204: 2-11. The Defendants do not appear to have disputed, or otherwise responded, to this contention. The Plaintiffs present evidence that Benson's qualifications matched the specifications so precisely, that when Benson's application for the position was evaluated, she scored 10 for qualifications, the highest score possible. Plaintiffs'

13

Exhibit 109 at page 166: 12- 15.  Benson testified that her score of 10 is "higher than normally."
*Id.*  According to the Plaintiffs, the next highest score of the other applicants who were
considered qualified for the position scored 5.  *See* Plaintiffs' Exhibit 115.

As evidence that the position was designed to exclude the Plaintiffs from applying on the
basis of their race, the Plaintiffs point to the statements by Dillihay testified to by Petty.  As set
forth above, in his deposition, Petty testified that Dillihay said "something to the effect of this
department has so many white people in power positions, it needs more black people in these
positions . . . ."  Plaintiffs' Exhibit 120 at pages 20:22-21:2.

The Defendants have argued that this evidence is irrelevant because Dillihay was not the
only, or the final, decision maker in this case.  The Defendants concede in brief, however, that it
was at the suggestion of Dillihay that ADMH decided to create a new position to assist Ervin.
Doc. # 55 at page 71.   Benson also stated that while typing up the announcements and the job
specifications she talked with Ervin and Dillihay.  Plaintiffs' Exhibit 109 at 152: 21- 153: 1.
Benson testified that Dillihay was a "very hands-on person" and would ask periodically about
the status of Benson's work on the announcements and specifications.  *Id.* at page 55: 12-15.
When asked whether Dillihay ever directed her to include or exclude anything from the job
specifications, such as the substitution provision, Benson responded that she did not know
"where the decision was made," but that the job specifications were reviewed by Ervin, Dillihay,
June Lynn, Courtney Tarver, and Houston.  *Id.* at page 154: 16-23.  Benson also testified that
Ervin encouraged her to apply for the position after the position was announced.  *Id.* at page 159:
4-16.

The Defendants point to Houston as the ultimate decision maker and cite testimony from

14

Houston that he would not have approved the position without the requirement of a college degree.[4] This aspect of the Defendants' evidence presents a closer question as to evidence of intent in this case.

Although the parties have not argued that this case should be analyzed under a "cat's paw" theory of intent, that analysis appears to be most applicable. In a "cat's paw," situation the person bearing discriminatory animus is the true decision maker, and "the titular 'decision maker' is a mere conduit for ... discriminatory animus." *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir.1998), *cert. denied*, 528 U.S. 930 (1999). In a "cat's paw" factual scenario, the causal link between the animus of a subordinate and the decision maker's decision is severed if "instead of merely tacitly approving or otherwise 'rubber stamping' another's adverse recommendation or allegations, the decision maker conducts an 'independent investigation' into the allegations against the plaintiff." *Jackson v. Mid-America Apartment Communities,* 325 F. Supp. 2d 1297, 1302 (M.D. Ala. 2004) (quoting *Iduoze v. McDonald's Corp.*, 268 F. Supp. 2d 1370, 1375 (N.D. Ga. 2003)).

Of course, the factual situation in this case is somewhat unlike a traditional "cat's paw"

---

[4] In their brief in support of the Motion for Summary Judgment, the Defendants have argued that this testimony by Houston is relevant to show that the employer would have made the same decision absent discriminatory intent within the context of a claim of direct evidence of discrimination. *See* Doc. #47 at page 27. As previously discussed, this court has concluded that this case is one of circumstantial evidence, not direct evidence, of discrimination. The court has not analyzed the testimony of Houston as a defense to a circumstantial evidence case because in that context it is an affirmative defense, and it was not pled in the Defendants' Answer to the Amended Complaint. *Harrell v. University of Montevallo,* 673 F. Supp. 430, 437 (N.D. Ala. 1987)(analyzing cases and concluding that Mt. Healthy defense is an affirmative defense; and that by having failed to plead it the defense was waived). As discussed herein, it is the court's conclusion that a reasonable jury could either accept, or reject, this testimony by Houston.

scenario because the person with the alleged animus is not alleged to have made a recommendation with respect to hiring a particular employee, but rather as to specifications for a newly-created position, so there is not a traditional investigation of facts by the decision maker for the court to examine. The court will, however, examine the evidence the Plaintiffs have pointed to as evidence as to Houston's "investigation" of the creation of the specifications Houston ultimately approved.

The Plaintiffs have presented evidence which they argue show that Houston was not the genesis of the provision requiring a college degree without substitution, but that he relied on others who suggested that provision, and that Houston did not investigate fully whether the position was tailored to provide an advantage to Benson.

With respect to the creation of the position, Houston testified in his deposition that he did not make any changes in the specifications for Departmental Assistant Personnel Manager and that he was either presented with the specification sheet by Ervin or Dillihay, but that he believed it was Dillihay. Defendants' Exhibit 32 at page 114:15- 115:8. Houston also testified that he did not know who formulated the knowledge, skills, and abilities section of the position. *Id.* at page 115: 14-16. He also testified that he thought he discussed the qualifications with Dillihay. *Id.* at page 118: 11-14. When asked about the omission of the substitution provision, Houston testified that he did not know whose idea it was to leave a substitution clause out and that he "approved the qualifications as they were presented." *Id.* at page 124: 9-10.

When asked whether he relied on Dillihay's assurance that the position was not written for Benson, Houston answered that they "discussed the fact that a concern had been raised and discussed the qualifications and the process and focused on that. I'm not concerned today that it

was written for Marilyn." *Id.* at page 122: 11-17. Houston also testified that when Hubbard raised a concern about the substitution provision, he was "distracted" and was uncertain about what she was asking, except that she wanted him to be alert that something was coming through his office, and that that turned out to be the job specification for the position. *Id.* at page 130: 3-15. Houston further stated that he never discussed with anyone who formulated the knowledge, skills, and abilities section of the specifications. *Id.* at page 115: 14-16. When asked whether he discussed the qualifications with anyone, Houston said that he had no specific recollection, but he expected that he probably did discuss them with Dillihay. *Id.* at page 118: 11-14. Houston also testified that he did not discuss the drafting of the knowledge, skills, and abilities or qualifications with Dillihay as giving Benson "a particular advantage, and I don't view them as giving her a particular advantage." *Id.* at page 121: 12-16. When asked what he did other than talking to Dillihay to make sure the position was not written to give Benson a preference, Houston testified that he considered the document in its entirety to see the requirements reflected what was needed and "whether or not someone may have intended to write it for a particular person would have been secondary . . . ." *Id.* at page 133: 6-20.

The evidence set forth above, viewed in a light most favorable to the non-movant, reasonably could be viewed as calling into doubt Houston's testimony that at the time he approved the specifications, he would not have approved them without the requirement of the college degree, or any testimony that the position was not created for Benson. In other words, it calls into doubt whether the connection between the person with the alleged bias and the ultimate decision maker was sufficiently severed so as to insulate the decision from the intent to discriminate. As stated above, the establishment of a prima facie case is not intended to be

17

onerous.   Based on the evidence that Dillihay, who played a central role in creating the position

at issue, made statements regarding the races of persons in positions of power at ADMH,

combined with the evidence concerning the circumstances of the creation of the position, the

court concludes that the Plaintiffs have established a prima facie case of discrimination on the

basis of race.[5]

As the articulated reason for the employment action in question, the Defendants state in

their brief that the sole reason the Plaintiffs were not hired by ADMH is that they failed to

qualify for the Departmental Assistant Personnel Manager position due to their lack of the

required college degree.   Doc. #47 at page 36.   The Defendants also state in their brief that

because Benson has more experience and a better educational background, she is the better

candidate.

As to the second reason stated in the brief, it is apparently undisputed that the Plaintiffs

were not allowed to apply for, and, therefore, were not evaluated or considered in the process of

hiring for the position in question.   An employer may not satisfy its burden of production by

offering a justification which the employer either did not know or did not consider at the time the

decision was made.   *Turnes v. AmSouth Bank, NA,*  36 F.3d 1057, 1061 (11th Cir. 1994).

Therefore, the court will only consider the first articulated reason.

---

[5]  The court notes that the Defendants state that on July 22, 2005, the Job Evaluation
Committee ("JEC") approved the position for recommendation to the Commissioner to be
announced  at the beginning of the fiscal year.   It is apparently undisputed, however, that
Houston had already approved the position, and that he did not consider approval of the JEC
necessary for him to do so.   Doc. #55 at page 71.   There is no contention by the Defendants that
the JEC was the final decision maker in the case.   In fact, the Plaintiffs argue that evidence
regarding the submission to the JEC is evidence of pretext, because the submission was only
made once the Plaintiffs had voiced a complaint.

The Defendants have pointed to evidence to support for the first articulated reason, that the Plaintiffs did not meet the minimum qualification. To meet their burden of establishing pretext, the Plaintiffs have responded with evidence of Dillihay's comments, discussed above in the court's examination of the totality of the circumstances view of the evidence in determining that there is a prima facie case of discrimination. "A decision maker's discriminatory comment which may not qualify as direct evidence of discrimination may constitute circumstantial evidence which could assist a jury in disbelieving the employer's proffered reasons for the adverse action." *Steger v. General Elec. Co.,* 318 F.3d 1066, 1079 (11th Cir. 2002). While Dillihay may not have been the only decision maker, biases of one who influences a challenged personnel decision can be probative in an employment discrimination case. *Holifield*, 115 F.3d at 1563-64.

In meeting its burden of producing evidence of pretext, the plaintiff may include the previously produced prima facie evidence, provided the totality of evidence is "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman*, 229 F.3d at 1024. (citations omitted). The court recognizes that "a plaintiff may not in all cases merely rest on the laurels of her prima facie case. . . ." *Standard*, 161 F.3d at 1334. The Plaintiffs, however, have pointed to additional evidence to support their argument that the proffered reason is pretextual.

The Plaintiffs contend that the position of Assistant Department Personnel Manager did not require a college degree. Ordinarily, the court would not find such an argument probative of pretext as it is not the responsibility, or right, of the court to decide what a wise business decision by the employer would have been. *See Alexander v. Fulton Cty, Ga.*, 207 F.3d 1303,

19

1341 (11th Cir. 2000).   The Plaintiffs have, however, cited to Dillihay's deposition in which he

was asked whether, for the position of Departmental Assistant Personnel Manager, there could

be a highly qualified person who does not have the required degree, and whether it is possible to

have highly qualified people based upon working experience alone and Dillihay answered "yes."

Plaintiffs' Exhibit 110, page 220: 5-11.   Houston similarly was asked whether it was possible

for an individual to do the job without a degree and he answered, "perhaps."  Plaintiffs' Exhibit

111, page 211: 15-18.  Therefore, there is some evidence that people involved in the decision-

making process did not necessarily view a college degree as a requirement.  That, of course, does

not mean that an employer might not be justified in requiring a college degree, but in the context

of this case, it appears to the court to be evidence which a reasonable juror could consider in

determining whether the qualification of a college degree with no substitution for experience was

pretextual.

       The Plaintiffs also contend that there are thirteen similar positions in the ADMH which

allow for substitution of experience for a college degree.  The Plaintiffs further state that many

of those positions were modified after the Departmental Assistant Personnel Manager position

was created, but they still allow for substitution.  The Plaintiffs also point to two individuals, Jim

Elliott and Christopher Vilamaa, who the Plaintiffs state were promoted to management

positions using substitution during the same period that the position at issue was created.  *See*

Plaintiffs' Exhibit 23.  The Plaintiffs finally point out that Ervin himself holds a position that he

was only qualified for using substitution.

       The Defendants respond that the Plaintiffs have not compared relative experience of the

thirteen listed positions, and that the modifications made were to knowledge, skills, and abilities,

not qualifications.  The Defendants' only response to the evidence regarding Elliot and Vilamaa is that both have bachelor's degrees.  The Defendants otherwise do not take issue with the Plaintiffs' argument on this point.  Defendants' Reply, Doc. #55,  at page 69.  The Plaintiffs' evidence is that Elliott was promoted from a PS III position (the same as the position held by the Plaintiffs) to Personnel Manager III which required a four-year college degree in "Personnel Management, Business Administration, Public Administration, or related field."  Plaintiffs' Exhibit 103.  Elliot's bachelor's degree is in social work, Plaintiffs' Exhibit 118, which is not a related field, according to Hubbard's affidavit.  Plaintiffs' Exhibit 113 at ¶ 8.  Vilamaa's position, Administrator V, requires a Master's Degree.  Plaintiffs' Exhibit 88.   Vilamaa has only a bachelor's degree.  Defendants' Exhibit 60.  Accordingly, there is at least a question of fact as to whether these individuals were allowed to apply for and received these positions using substitution during the same period that the personnel position was created which did not allow for substitution.

The Plaintiffs also call into question the Defendants' reliance on a Wage and Class Study.  Doc. 55 at page 54.  The Defendants have stated that the lack of the substitution provision was due to the anticipated Wage and Class study.  The Plaintiffs dispute that the Wage and Class study played any role in the creation of the job at issue.  They state that the study was conducted in 2007, but the position into which Benson was hired was created in 2005.  The Defendants' evidence substantiates that the wage and classification study was presented to ADMH in November 2007.  Defendants' Exhibit 5, page 5.   Although the Defendants have made the argument that the Departmental Assistant Personnel Management position was just the first in a process of modernization, the court concludes that a reasonable jury could either accept

21

or reject that argument in the context of the evidence regarding the timing of the Wage and Class study, and the evidence regarding promotions of Vilamaa and Elliott. Therefore, this evidence also appears to be relevant to a reasonable juror's determination of whether the specifications of the position at issue were a pretext for excluding the Plaintiffs on the basis of race.

The court recognizes that the parties have focused a significant portion of their argument, and submitted voluminous exhibits, on the question of whether the Defendants violated state policies in their creation of the position. It is, of course, the law that a court can consider whether an employer's own policies were violated in evaluating whether an articulated reason is pretext. The Plaintiffs rely in part on the affidavit of Judith Johnston to establish pretext in this case. The Defendants have relied on an affidavit from Emmett Poundstone. These affidavits are the subject of two pending Motions to Strike. The Defendants specifically point to paragraphs 10, 13, 21, 22, and 23 of Judith Johnston's affidavit as being irrelevant, and improper expert opinion. The Plaintiffs state that Emmett Poundstone gives improper legal opinion.

The ultimate question in this case is whether precluding the Plaintiffs from applying for the newly-created position was an intentional discrimination on the basis of race, rather than merely whether pre-selecting Benson, if that occurred, was a violation of ADMH rules. Although in the usual case a violation of internal policies may be evidence of pretext, in this case, the evidence appears to be the Defendants relied on state statutory law in determining the procedures to follow. The parties have presented evidence, characterized by each side as expert opinion, describing the applicable rules. A good faith departure from internal policies would not appear to be even minimally probative of intent. *Cf. Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995) ( "Pretext is not demonstrated by showing simply that the employer was

mistaken." ).  In any event, at this point in the proceedings, the court is satisfied that there are

sufficient factual issues to create a question of fact as to pretext for the jury even without

considering this evidence.[6]   Therefore, the Motions to Strike testimony of Judith Johnston and

Emmet Poundstone are due to be DENIED as moot.

In summary, under the Defendants' view of the evidence discussed above, even accepting

that Dillihay made statements evidencing a racial bias in management positions in the

department, because Houston was the final decision maker, and because Houston testified that he

approved and intended for the specification not allowing for substitution, Dillihay's alleged bias

played no role in the decision.  When the evidence presented by the Plaintiffs which establishes

their prima facie case, combined with the Plaintiffs' additional evidence, is viewed in a light

most favorable to the Plaintiffs, however, the Defendants' true motive in formulating the job

specifications for Departmental Assistant Personnel Manager is called into question.  The trier of

fact will have to determine whether the Plaintiffs' being denied the opportunity to apply for the

position of Departmental Assistant Personnel Manager was due to their race.  Summary

judgment is, therefore, due to be DENIED as to the Title VII claim against the ADMH and the §

1983 claim asserted under the Fourteenth Amendment for denial of equal protection as against

the individual defendants in their individual capacities and in their official capacities for

prospective injunctive relief only.

### C.  Procedural Due Process

---

[6]  If the Plaintiffs intend to rely on evidence regarding compliance with state law at trial, the parties are encouraged to address those evidentiary issues through motions in limine at the earliest possible time.  If filed before the pretrial hearing in this case, the court will take these matters up then.

The Plaintiffs attempt to clarify the nature of a claim asserted in Count III of their Amended Complaint as a claim under the Fourteenth Amendment to the United States Constitution. The Plaintiffs contend that the Defendants have engaged in arbitrary and capricious conduct against the Plaintiffs.

The Defendants present evidence that the Plaintiffs' positions are positions exempt from the merit system and that the position to which they applied is also an exempt position. The Eleventh Circuit has held that positions exempt from the merit system do not confer a property interest that entitles an employee to due process. *Vaughn v. Shannon*, 758 F.2d 1535 (11th Cir. 1985).

Upon order of the court allowing for an additional response to this argument, the Plaintiffs have argued that the *Vaughn* case is no longer controlling because the ADMH has decided to afford due process to exempt positions.

A public employee has a property interest in employment if "existing rules or understandings that stem from an independent source such as state law create a legitimate claim of entitlement." *Ross v. Clayton County, Ga.,* 173 F.3d 1305, 1307 (11th Cir.1999) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577-78, (1972)). The existence of a property right in an aspect of public employment generally "is made by reference to laws, regulations, or personnel policies." *Nolin v. Douglas County*, 903 F.2d 1546, 1553 (11th Cir.1990).

The scope of due process articulated in the policy provided by the Plaintiffs to the court is as follows:

> Due process is defined as the employee's right to be presented with the charges that are being considered against him/her, and an effective opportunity to submit

24

> his/her response to these charges orally and in writing to the appointing authority.
> Even though there is no legal requirement, the Department has determined that
> due process will be afforded to exempt, Form 8, and probationary employees as
> well as classified employees. Therefore, departmental employees may not be
> suspended or terminated without due process.

Plaintiffs' Exhibit 123, page 52, § 3.2. The policy goes on to outline the procedure

required, which includes being notified in writing of the charges against an employee and being

provided a conference. *Id.*

It is still unclear to the court what the exact nature of the Plaintiffs' due process claim is.

The Plaintiffs have never alleged that there was a violation of personnel policy section 3.2, set

out above. Instead, they have alleged that the Plaintiffs were discriminated against on the basis

of race, and in attempting to prove that claim, have pointed to various alleged violations of

policies other than the due process policy quoted above. If the Plaintiffs are arguing that they

had a procedural due process right in the procedure for promotions, no property interest has been

established by the personnel policy because it covers only terminations and suspensions. *See*

*Grant v. Bullock County Bd. Of Educ.*, 895 F. Supp. 1494, 1505 (M.D. Ala. 1995)(finding no

procedural due process right in promotion of a public employee where there is no statute or rule

to support a claim of entitlement to the promotion); *cf. International Ass'n of Firefighters, Local*

*2069 v. City of Sylacauga*, 436 F. Supp. 482 (N.D. Ala. 1977) (acknowledging a property interest

in a procedure which was established by statutory entitlement).[7] Therefore, even though section

3.2 appears to provide procedural due process protections not afforded at the time of the *Vaughn*

---

[7] If the Plaintiffs are arguing that it was a violation of due process because Benson was
selected based on favoritism, as previously discussed, favoritism was not identified as a basis for
any claim in this case in the Amended Complaint and is not being considered in this case.

25

decision, the protections afforded in that policy are not applicable in this case. Summary judgment is, therefore, due to be GRANTED as to the due process claims.

State Law Claims

The Plaintiffs have brought state law claims of negligence, wantonness and willful breach of duty, intentional interference with contractual and business relations, conspiracy, and respondeat superior. The Plaintiffs' claims arise from their contention that the Defendants intentionally violated Department rules, regulations, and policies by creating the Departmental Assistant Personnel Manager position. The Plaintiffs also respond to the Defendants' assertion of state law immunity under *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), that the Defendants have acted willfully, maliciously, illegally, fraudulently, in bad faith and beyond their authority or under a mistaken interpretation of the law. The Defendants have argued in their brief that the rules and regulations relied on by the Plaintiffs do not establish that the Defendants violated any state law policies because those rules and regulations conflict with statutory enactments. The Defendants contend that state personnel rules and regulations do not apply to the Plaintiffs' positions. The Plaintiffs respond that the state personnel rules and regulations are incorporated into the ADMH exempt positions. To support their positions, each side has offered affidavit evidence which the other side has challenged as constituting improper legal opinion.

A district court may decline to exercise supplemental jurisdiction over a state law claim joined with a claim over which the court has original jurisdiction under specific circumstances, including when the state claim raises a novel or complex issue of state law, or when the state claim substantially predominates over the claim over which the court has original jurisdiction. 28 U.S.C. § 1367(c)(1)&(2).

26

Generally, state tort claims are not considered novel or complex. *See Parker v. Scrap Metal Processors, Inc.,* 468 F.3d 733, 743 (11th Cir. 2006). This case does not merely present issues of state tort law, however. Instead, the Plaintiffs seek to recover in tort for perceived breaches of state law, including personnel policies. It is apparent, therefore, that resolution of the state law claims would require interpretation of state law and its interaction with ADMH policies. This interpretation of state law causes the Plaintiffs' state law claims to involve complex issues of state law. The court, therefore, declines to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c)(1),(2). *See Eagletech Commc'ns Inc. v. Citigroup, Inc.*, No. 07-60668-CIV, 2008 WL 3166533 at *17 (S.D. Fla. June 27, 2008) (declining supplemental jurisdiction over state law claims in part because the claims require an interpretation of several state laws); *American Soc. of Consultant Pharmacists v. Patla,* 138 F. Supp. 2d 1062, 1073 (N.D. Ill. 2001) (declining supplemental jurisdiction where "claim would require determinations of state law regarding decisions by state officials that, even if they fall within our judicial province, are as a matter of comity better left to state courts."). The state law claims will be dismissed without prejudice.

## V. CONCLUSION

This is an atypical case which does not neatly fall into traditional employment discrimination analysis. Complicating the case is a myriad of issues which although raised, are not necessary for the resolution of the Motion for Summary Judgment, at least with regard to the federal claims. Nevertheless, the court is convinced that there are substantial questions of material fact which preclude summary judgment as to the Plaintiffs' Title VII and § 1983 equal protection claims. Those questions, which will have to be resolved by the trier of fact, are as

follows: one, whether the Departmental Assistant Personnel Director position was designed to exclude the Plaintiffs from that position on the basis of their race and, if so, two, whether the ultimate decision to approve the position was independent of any discriminatory intent in the creation of the position. Accordingly, it is hereby ORDERED as follows:

1.  The Defendants' Motion for Summary Judgment (Doc. #36) is DENIED as to the Title VII claims of each Plaintiff against the ADMH (Count I) and the § 1983 claims asserted against the individual Defendants only in Count II and Count III which merge into a claim under the Fourteenth Amendment for denial of equal protection as against the individual defendants in their individual capacities and in their official capacities for prospective injunctive relief only.

2.  The Defendants' Motion for Summary Judgment (Doc. #36) is GRANTED as to, and judgment is entered in favor of the Defendants and against the Plaintiffs, Joan Fault Owens and Karen Lynn Hubbard, on the procedural due process claims (Count III).

3.  The court declines to exercise supplemental jurisdiction over the state law claims and they are DISMISSED without prejudice (Counts IV-IX).

4.  The Motion to Strike the testimony of David Petty (Doc. #54) is DENIED.

5.  The Motion to Strike which is contained within Document # 55 is GRANTED as to the Plaintiffs' statement in brief that the Defendants violated a policy against favoritism and DENIED in all other aspects as MOOT.

6.  The Motion to Strike the affidavit of Emmett Poundstone (Doc. #60) is DENIED as moot.

7.  The Motion to Amend/Correct (Doc. #62) is DENIED as untimely.

8.  The Motion to Strike the affidavit of Judith Johnston (Doc. #65) is DENIED as

28

moot.

    9.  The Motion for Extension of Exhibit filing (Doc. #66) is GRANTED.

    10.  This case will proceed to trial on the Plaintiffs' race discrimination claims under Title VII against the ADMH (Count I) and under the equal protection clause against Houston, Dillihay, Ervin, and Benson in their individual capacities, and in their official capacities for prospective injunctive relief only (Count II as merged with Count III).

    Done this 29th day of August, 2008.


                        /s/ W. Harold Albritton
                        W.  HAROLD ALBRITTON
                        SENIOR UNITED STATES DISTRICT JUDGE